COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
TRAVIS LEBLANC (251097)
(tleblanc@cooley.com)
KATHLEEN R. HARTNETT (314267)
(khartnett@cooley.com)
BENJAMIN H. KLEINE (257225)
(bkleine@cooley.com)
DANIELLE C. PIERRE (300567)
(dpierre@cooley.com)
JOSEPH D. MORNIN (307766)
(jmornin@cooley.com)
EVAN G. SLOVAK (319409)
(eslovak@cooley.com)
KELSEY R. SPECTOR (321488)
(kspector@cooley.com)
101 California Street, 5th Floor
San Francisco, California 94111-5800
Telephone:     +1 415 693 2000
Facsimile:      +1 415 693 2222

Attorneys for Defendant
ZOOM VIDEO COMMUNICATIONS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| *IN RE: ZOOM VIDEO COMMUNICATIONS INC. PRIVACY LITIGATION*,<br><br><br>This Documents Relates To:<br>All Actions | Master Case No. 5:20-cv-02155-LHK<br><br>**DEFENDANT ZOOM VIDEO COMMUNICATIONS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:          February 4, 2021<br>Time:          1:30 p.m.<br>Courtroom:   8, 4th Floor<br>Judge:         Hon. Lucy H. Koh |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED ........................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

I.  INTRODUCTION ............................................................................................................. 1

II.  BACKGROUND ............................................................................................................... 2

    A.  Zoom's Videoconferencing Services ................................................................... 2

    B.  Plaintiffs' Allegations ........................................................................................... 3

III.  MOTION TO DISMISS STANDARD .............................................................................. 4

IV.  ARGUMENT .................................................................................................................... 4

    A.  Section 230 Bars Plaintiffs' Claims to the Extent They Are Predicated on Unwanted Meeting Intrusions. ............................................................................. 4

        1.  Zoom is a quintessential interactive computer service. ............................ 5

        2.  Plaintiffs seek to hold Zoom liable as the publisher of content supplied by the meeting intruders. ........................................................... 5

        3.  Zoom does not contribute to the development of the meeting intrusions. ................................................................................................. 7

    B.  Plaintiffs' Claims All Fail Because Plaintiffs Do Not Allege They Have Suffered Personal Harm Caused By Zoom. ......................................................... 7

        1.  Plaintiffs fail to allege personal harm from alleged data sharing. ............... 7

        2.  Plaintiffs fail to allege personal harm from Zoom's alleged misrepresentations and omissions concerning encryption. ....................... 8

        3.  Plaintiffs fail to allege personal harm caused by Zoom from meeting intrusions. ................................................................................... 9

    C.  Plaintiffs Fail to State a Claim for Invasion of Privacy Under the California Constitution (Count 1). ........................................................................ 9

        1.  Plaintiffs have not adequately specified any material over which they have a legally protected privacy interest. ......................................... 10

        2.  Plaintiffs have not adequately alleged a reasonable expectation of privacy. ..................................................................................................... 11

        3.  Plaintiffs fail to allege conduct by Zoom that constituted an egregious breach of social norms. ............................................................ 11

        4.  The two institutional Plaintiffs may not maintain this claim. ................... 12

    D.  Plaintiffs' Negligence Claims Should Be Dismissed (Count 2). ......................... 12

        1.  The economic loss rule bars Plaintiffs' claim to the extent they seek recovery for financial injury. ........................................................... 12

        2.  Plaintiffs fail sufficiently to plead the elements of negligence. ............... 14

    E.  Plaintiffs Cannot State a Claim for Breach of an Implied Contract (Count 3). ........................................................................................................................ 16

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

**DEFENDANT ZOOM'S MOTION TO DISMISS
THE CONSOLIDATED AMENDED COMPLAINT
MASTER CASE NO. 5:20-CV-02155-LHK**

**TABLE OF CONTENTS**

Page

F.     Plaintiffs' Claim for Breach of the Implied Covenant Fails (Count 4)................ 17

G.     Plaintiffs Cannot State a Claim for Violation of the CDAFA (Count 8)............. 18

H.     Plaintiffs' Fraud-Based Claims Should Be Dismissed (UCL, CLRA, Fraudulent Concealment; Counts 6, 7, 9). ........................................... 19

    1.     All Plaintiffs but Hartmann are not "consumers" under the CLRA......... 19

    2.     Plaintiff Hartmann's CLRA claim for damages should be dismissed. ............................................................................... 20

    3.     The non-purchasing Plaintiffs cannot maintain a UCL claim.................. 20

    4.     Plaintiffs fail to plead with Rule 9(b) particularity. .................................. 21

    5.     Plaintiffs otherwise fail to state a claim under the UCL. .......................... 24

        a.     Plaintiffs fail to state a claim under the UCL's "unlawful" prong. ....................................................................... 24

        b.     Plaintiffs fail to state a claim under the UCL's "unfair" prong. ....................................................................... 24

I.     Plaintiffs Cannot Maintain a Claim for Unjust Enrichment (Count 5). ............... 25

V.     CONCLUSION ............................................................................................................. 25

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

4

**Cases**

5

*Aas v. Super. Ct.*,
    24 Cal. 4th 627 (2000) ........................................................................................................ 15

6

7

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
    802 F. Supp. 2d 1070 (N.D. Cal. 2011) ............................................................................ 25

8

*In re Apple & ATTM Antitrust Litig.*,
    No. C 07-05152, 2010 WL 3521965 (N.D. Cal. July 8, 2010) .......................................... 18

9

10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................... 4, 18

11

*Baba v. Hewlett-Packard Co.*,
    No. C 09-05946, 2010 WL 2486353 (N.D. Cal. June 16, 2010) ........................................ 24

12

13

*Banga v. Equifax Info. Servs. LLC*,
    No. 14-CV-03038, 2015 WL 3799546 (N.D. Cal. June 18, 2015) ................................. 10, 11

14

*Barnes v. Yahoo!, Inc.*,
    570 F.3d 1096 (9th Cir. 2009)........................................................................................ 5, 6, 7

15

16

*Batzel v. Smith*,
    333 F.3d 1018 (9th Cir. 2003) ............................................................................................... 6

17

*Be In, Inc. v. Google Inc.*,
    No. 12-CV-03373, 2013 WL 5568706 (N.D. Cal. Oct. 9, 2013)................................... 16, 17

18

19

*Bell Atl. Corp v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................ 4

20

21

*Belluomini v. Citigroup, Inc.*,
    No. CV 13-01743, 2013 WL 3855589 (N.D. Cal. July 24, 2013) ...................................... 11

22

*Bem v. Stryker Corp.*,
    No. C 15-2485, 2015 WL 4573204 (N.D. Cal. July 29, 2015) ........................................... 14

23

24

*Birdsong v. Apple, Inc.*,
    590 F.3d 955 (9th Cir. 2009)................................................................................................. 21

25

*Brodsky v. Apple Inc.*,
    No. 19-CV-00712, 2019 WL 4141936 (N.D. Cal. Aug. 30, 2019) ...................................... 18

26

27

*Burnell v. Marin Humane Soc'y*,
    No. CV 14-5635, 2015 WL 6746818 (N.D. Cal. Nov. 5, 2015)........................................... 15

28

Cooley LLP
Attorneys at Law
San Francisco

iii

**Defendant Zoom's Motion to Dismiss
The Consolidated Amended Complaint
Master Case No. 5:20-cv-02155-LHK**

1

**TABLE OF AUTHORITIES**
Continued

2

Page(s)

3

*Cal. Grocers Ass'n v. Bank of Am.*,
4    22 Cal. App. 4th 205 (1994)............................................................................................ 20

5    *Campbell v. Facebook Inc.*,
     77 F. Supp. 3d 836 (N.D. Cal. 2014) ............................................................................. 21
6
     *Carafano v. Metrosplash.com, Inc.*,
7    339 F.3d 1119 (9th Cir. 2003)........................................................................................... 4

8    *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
     222 Cal. App. 3d 1371 (1990)......................................................................................... 17
9
     *Castillo v. Seagate Tech., LLC*,
10   No. 16-cv-01958, 2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) .................................. 13

11   *Cattie v. Wal-Mart Stores, Inc.*,
12   504 F. Supp. 2d 939 (S.D. Cal. 2007)............................................................................. 20

13   *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
     20 Cal. 4th 163 (1999) .................................................................................................... 24
14
     *Davidson v. Apple, Inc.*,
15   No. 16-cv-04942, 2017 WL 976048 (N.D. Cal. Mar. 14, 2017)...................................... 22

16   *Dent v. Nat'l Football League*,
17   902 F.3d 1109 (9th Cir. 2018).......................................................................................... 14

18   *Doe v. MySpace*,
     528 F.3d 413 (5th Cir. 2008)............................................................................................. 6
19
     *Dohrmann v. Intuit, Inc.*,
20   No. 20-15466, 2020 WL 4601254 (9th Cir. Aug. 11, 2020).................................................. 16

21   *Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of Cal.*,
22   SA CV 15-0736, 2016 WL 6892140 (C.D. Cal. Nov. 22, 2016)..................................... 16

23   *Dyroff v. Ultimate Software Grp., Inc.*,
     934 F.3d 1093 (9th Cir. 2019)........................................................................................... 5
24
     *Elias v. Hewlett-Packard Co.*,
25   903 F. Supp. 2d 843 (N.D. Cal. 2012) ............................................................................ 25

26   *Ellsworth v. U.S. Bank, N.A.*,
27   908 F. Supp. 2d 1063 (N.D. Cal. 2012) .......................................................................... 16

28   *In re Facebook Privacy Litig.*,
     572 F. App'x 494 (9th Cir. 2014) ............................................................................. 19, 21

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

**DEFENDANT ZOOM'S MOTION TO DISMISS**
**THE CONSOLIDATED AMENDED COMPLAINT**
**MASTER CASE NO. 5:20-CV-02155-LHK**

**TABLE OF AUTHORITIES**
Continued

Page(s)

*In re Facebook Privacy Litig.*,
   791 F. Supp. 2d 705 (N.D. Cal. 2011) ................................................................. 21

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
   521 F.3d 1157 (9th Cir. 2008) (en banc)........................................................ 4, 6, 7

*Fed. Agency of News LLC v. Facebook*,
   432 F. Supp. 3d 1107 (N.D. Cal. 2020) ................................................................. 5

*Fields v. Wise Media, LLC*,
   No. C 12-05160, 2013 WL 3812001 (N.D. Cal. July 19, 2013) ............................ 14

*Fish v. Aviation*,
   No. 18-cv-06671, 2019 WL 690286 (N.D. Cal. Feb. 19, 2019) ............................ 20

*Fraley v. Facebook, Inc.*,
   830 F. Supp. 2d 785 (N.D. Cal. 2011) ................................................................. 25

*Frezza v. Google Inc.*,
   No. 12-CV-00237, 2012 WL 5877587 (N.D. Cal. Nov. 20, 2012) ........................ 19

*Gitson v. Trader Joe's Co.*,
   No. 13-cv-01333, 2014 WL 1048640 (N.D. Cal. Mar. 14, 2014)........................... 23

*Goddard v. Google, Inc.*,
   640 F. Supp. 2d 1193 (N.D. Cal. 2009) ................................................................. 7

*Gonzales v. Uber Techs., Inc.*,
   305 F. Supp. 3d 1078 (N.D. Cal. 2018) ............................................................... 18

*In re Google Android Consumer Privacy Litig.*,
   No. 11-MD-02264, 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013)........................ 13

*In re Google Assistant Privacy Litig.*,
   No. 19-CV-04286, 2020 WL 2219022 (N.D. Cal. May 6, 2020) .............................. 10, 11, 21

*Green v. Am. Online*,
   318 F.3d 465 (3d Cir. 2003)................................................................................... 6

*Greystone Homes, Inc. v. Midtec, Inc.*,
   168 Cal. App. 4th 1194 (2008)............................................................................ 13

*Herskowitz v. Apple Inc.*,
   940 F. Supp. 2d 1131 (N.D. Cal. 2013) ............................................................... 25

*Hill v. Nat'l Collegiate Athletic Ass'n*,
   7 Cal. 4th 1 (1994) ................................................................................... 9, 11, 12

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

1

**TABLE OF AUTHORITIES**
Continued

2

**Page(s)**

3

*Hill v. Roll Int'l Corp.*,
    195 Cal. App. 4th 1295 (2011) .............................................................................. 25

4

*Hodges v. Apple Inc.*,
    No. 13-CV-01128, 2013 WL 4393545 (N.D. Cal. Aug. 12, 2013) ........................ 24

5

6

*Holly v. Alta Newport Hosp., Inc.*,
    No. 2:19-cv-07496, 2020 WL 1853308 (C.D. Cal. Apr. 10, 2020) ........................ 15

7

8

*InfoStream Grp., Inc. v. Paypal, Inc.*,
    No. C 12-748, 2012 WL 3731517 (N.D. Cal. Aug. 28, 2012) ................................ 23

9

10

*In re iPhone App. Litig.*,
    No. 11-MD-02250, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) .......... 15, 18, 21

11

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................................ 12

12

13

*J'Aire Corp. v. Gregory*,
    24 Cal. 3d 799 (1979) ............................................................................................ 13

14

*Jane Doe No. 1 v. Backpage.com, LLC*,
    817 F.3d 12 (1st Cir. 2016) ...................................................................................... 6

15

16

*Kalitta Air, L.L.C. v. Central Tex. Airborne Sys., Inc.*,
    315 F. App'x 603 (9th Cir. 2008) .......................................................................... 13

17

18

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .......................................................................... 22, 24

19

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310 (2011) ........................................................................................... 21

20

21

*Laster v. T-Mobile USA, Inc.*,
    407 F. Supp. 2d 1181 (S.D. Cal. 2005), *aff'd*, 252 F. App'x 777 (9th Cir. 2007) ................. 20

22

23

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................................................... *passim*

24

*Marcus v. Apple Inc.*,
    No. C 14-03824, 2015 WL 151489 (N.D. Cal. Jan. 8, 2015) ................................ 25

25

26

*Mega RV Corp. v. HWH Corp.*,
    225 Cal. App. 4th 1318 (2014) .............................................................................. 14

27

*Moreno v. Hanford Sentinel, Inc.*,
    172 Cal. App. 4th 1125 (2009) .............................................................................. 12

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vi

**DEFENDANT ZOOM'S MOTION TO DISMISS
THE CONSOLIDATED AMENDED COMPLAINT
MASTER CASE NO. 5:20-CV-02155-LHK**

1

**TABLE OF AUTHORITIES**
Continued

2

**Page(s)**

3

*Navarro v. Block,*
   250 F.3d 729 (9th Cir. 2001)............................................................................ 4

4

5

*Neubronner v. Milken,*
   6 F.3d 666 (9th Cir. 1993)............................................................................ 22

6

*Phillips v. Apple Inc.,*
   No. 15-CV-04879, 2016 WL 1579693 (N.D. Cal. Apr. 19, 2016) .................................. 22, 23

7

8

*Pirozzi v. Apple Inc.,*
   913 F. Supp. 2d 840 (N.D. Cal. 2012) ........................................................ 23

9

10

*R Power Biofuels, LLC v. Chemex LLC,*
   No. 16-cv-00716, 2016 WL 6663002 (N.D. Cal. Nov. 11, 2016) .................................. 12, 13

11

*Roling v. E*Trade Sec., LLC,*
   756 F. Supp. 2d 1179 (N.D. Cal. 2010) ........................................................ 17

12

13

*Sanchez v. Lending Tree LLC,*
   No. 10CV1593, 2010 WL 3983390 (S.D. Cal. Oct. 12, 2010) ...................................... 14

14

15

*SCC Acquisitions, Inc. v. Super. Ct.,*
   243 Cal. App. 4th 741 (2015) .................................................................. 12

16

*Schauer v. Mandarin Gems of Cal., Inc.,*
   125 Cal. App. 4th 949 (2005)................................................................... 19

17

18

*Schwarzkopf v. Int'l Bus. Machines, Inc.,*
   No. C 08-2715, 2010 WL 1929625 (N.D. Cal. May 12, 2010) ............................................ 16

19

20

*Scott-Codiga v. Cty. of Monterey,*
   No. 10-CV-05450, 2011 WL 4434812 (N.D. Cal. Sept. 23, 2011) ...................................... 10

21

22

*Sikhs for Justice "SFJ," Inc. v. Facebook, Inc.,*
   144 F. Supp. 3d 1088 (N.D. Cal. 2015) ........................................................ 7

23

*Sion v. SunRun, Inc.,*
   No. 16-cv-05834, 2017 WL 952953 (N.D. Cal. Mar. 13, 2017)........................................ 15

24

25

*Smith v. State Farm Mutual Auto. Ins. Co.,*
   93 Cal. App. 4th 700 (2001)................................................................... 24

26

*Smith v. Super. Ct.,*
   10 Cal. App. 4th 1033 (1992)................................................................... 19

27

28

*Snapkeys, Ltd. v. Google LLC,*
   442 F. Supp. 3d 1196 (N.D. Cal. 2020) ........................................................ 17

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
Continued

Page(s)

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    903 F. Supp. 2d 942 (S.D. Cal. 2012) ................................................. 15

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    996 F. Supp. 2d 942 (S.D. Cal. 2014) (*Sony II*) ......................... 13, 14, 15

*Stratton Oakmont, Inc. v. Prodigy Servs. Co.*,
    1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995) ................................. 6

*Sunbelt Rentals v. Victor*,
    43 F. Supp. 3d 1026 (N.D. Cal. 2014) ................................................ 18

*Terpin v. AT&T Mobility, LLC*,
    399 F. Supp. 3d 1035 (C.D. Cal. 2019) ......................................... 14, 15

*Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*,
    315 F. Supp. 3d 1147 (C.D. Cal. 2018) .............................................. 18

*Ting v. AT&T*,
    319 F.3d 1126 (9th Cir. 2003) ............................................................ 19

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ............................................................ 22

*Von Grabe v. Sprint PCS*,
    312 F. Supp. 2d 1285 (S.D. Cal. 2003) .............................................. 20

*Williams v. Apple, Inc.*,
    449 F. Supp. 3d 892 (N.D. Cal. 2020) ............................................... 24

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) ............................................. 9, 11

*Yunker v. Pandora Media, Inc.*,
    No. 11-CV-03113, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ........ 13

*Zbitnoff v. Nationstar Mortg., LLC*,
    No. C 13-05221, 2014 WL 1101161 (N.D. Cal. Mar. 18, 2014) ........... 10

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) ............................................................... 4

**Statutes**

Communications Decency Act, 47 U.S.C. § 230 ................................... *passim*

Cooley LLP
Attorneys at Law
San Francisco

viii

DEFENDANT ZOOM'S MOTION TO DISMISS
THE CONSOLIDATED AMENDED COMPLAINT
MASTER CASE NO. 5:20-CV-02155-LHK

1

**TABLE OF AUTHORITIES**
**Continued**

2

Page(s)

3

California Business & Professions Code
    § 17204 ................................................................................................................ 21

4

California Civil Code

5

    § 1761(d) ............................................................................................................ 19

6

    § 1782(a) ............................................................................................................ 20

7

California Penal Code
    § 502 .................................................................................................................. 18

8

**Other Authorities**

9

Federal Rules of Civil Procedure

10

    12(b)(6) ............................................................................................................ 1, 4

11

    9(b) ................................................................................................. 21, 22, 25

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ix

DEFENDANT ZOOM'S MOTION TO DISMISS
THE CONSOLIDATED AMENDED COMPLAINT
MASTER CASE NO. 5:20-CV-02155-LHK

1

**NOTICE OF MOTION AND MOTION TO DISMISS**

2      PLEASE TAKE NOTICE that on February 4, 2021, at 1:30 p.m. or as soon thereafter as

3 this motion may be heard before the Honorable Judge Lucy H. Koh in Courtroom 8 of the United

4 States District Court for the Northern District of California, 280 South First Street, San Jose,

5 California, 4th Floor, Defendant Zoom Video Communications, Inc. ("Zoom") will and hereby

6 does move the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the

7 Consolidated Amended Class Action Complaint ("CAC") filed by Plaintiffs (ECF No. 114). Zoom

8 moves to dismiss on the basis that the CAC fails to state claims on which relief may be granted.

9 This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of

10 Points and Authorities, the Request for Judicial Notice filed herewith, all pleadings and papers on

11 file in this matter, and other matters as may be presented to the Court.

12

**STATEMENT OF ISSUES TO BE DECIDED**

13      Whether the CAC states a claim upon which relief may be granted.

14

**MEMORANDUM OF POINTS AND AUTHORITIES**

15 **I.    INTRODUCTION**

16      In an effort to capitalize on Zoom's explosive growth during the COVID-19 pandemic,

17 Plaintiffs seek to hold Zoom liable on behalf of a nationwide class under a scattershot array of

18 loosely related factual and legal theories, largely drawn from sensationalist news reports. None

19 states a claim on which relief may be granted, and the CAC should be dismissed in full.

20      Prior to becoming a ubiquitous tool for video chats and meetings during the pandemic,

21 Zoom's platform—founded in 2011 with the mission of making video and remote communications

22 frictionless—was primarily designed for business customers and institutions, which are typically

23 armed with dedicated IT departments and resources. Virtually overnight, the pandemic transformed

24 the profile of Zoom's users. Zoom is now used not only by its established business customer base,

25 but also by individuals, families, schools, churches, government agencies, and others seeking to

26 connect and remain operational during the pandemic's stay-in-place paradigm.

27      Facing skyrocketing growth in use, Zoom has worked tirelessly since the pandemic's onset

28 to keep its services operational and secure, while developing and deploying extensive privacy and

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFENDANT ZOOM'S MOTION TO DISMISS
THE CONSOLIDATED AMENDED COMPLAINT
MASTER CASE NO. 5:20-CV-02155-LHK

1   security enhancements to address new challenges caused by the massive uptick in non-corporate

2   usage.   Zoom tackled these challenges quickly, directly, and—critically—in an open and

3   transparent manner.  Zoom did not follow the traditional playbook.  Rather, Zoom and its CEO held

4   weekly townhalls ("Ask Eric Anything" webinars) in which the company candidly discussed its

5   efforts to enhance privacy and security.  Further, unlike many internet companies, Zoom primarily

6   generates revenue by selling subscriptions and does not sell its users' data for any purposes.

7   Against this background, Plaintiffs—apparently new users of Zoom during the pandemic—

8   seek to hold Zoom liable for a host of alleged issues on behalf of a nationwide class.  Plaintiffs'

9   claims center on three main categories of conduct:  (1) Zoom's alleged unauthorized data sharing

10   with Facebook, LinkedIn, and other third parties through widely used functionalities designed to

11   integrate those platforms with numerous applications like Zoom; (2) Zoom's alleged

12   misrepresentations about its encryption protocols; and (3) Zoom's alleged failure to prevent

13   unwanted meeting disruptions by third parties—*i.e.*, "Zoombombings."

14   What is striking is that, despite alleging that Zoom "jeopardized millions of consumers'

15   privacy" (CAC ¶ 115), no Plaintiff alleges that Zoom jeopardized any of their own personal data

16   through alleged sharing with a third party.  Similarly, no Plaintiff alleges that they ever received,

17   reviewed, or relied upon any specific Zoom representations concerning encryption.  And Plaintiffs

18   cannot hold Zoom responsible for meeting intrusions by independent, wrongfully acting third

19   parties, including because the Communications Decency Act, 47 U.S.C. § 230 ("Section 230" or

20   "CDA") immunizes Zoom for such third-party content.  In short, Plaintiffs fail to allege facts

21   sufficient to show cognizable harm to any Plaintiff and otherwise fail sufficiently to plead the

22   elements of the nine causes of action at issue.  Thus, the CAC should be dismissed with prejudice.

23   **II.    BACKGROUND[1]**

24   **A.    Zoom's Videoconferencing Services**

25   Zoom offers "[s]implified video conferencing and messaging across any device." (CAC

26   ¶ 57.)  Although one need not register with Zoom to join a Zoom meeting, Zoom offers various

---

[1] Zoom does not concede the legal or factual bases of liability alleged in the CAC and reserves all rights to deny any and all liability in this matter.  However, for the purposes of this motion to dismiss, Plaintiffs' allegations must be taken as true.

Cooley LLP
Attorneys at Law
San Francisco

2

**Defendant Zoom's Motion to Dismiss
The Consolidated Amended Complaint
Master Case No. 5:20-cv-02155-LHK**

tiers of membership for registered users, including Basic, Pro, Business, and Enterprise, with the subscription costs ranging in price based on tier from free to $19.99 per month per license.  (*Id.* ¶ 58.)  Zoom's "published privacy policy" is common to all subscription levels.  (*Id.*)

Arranging a Zoom meeting is intentionally straightforward—a host (who must be a registered user) generates a meeting link and circulates it to the intended participants.  (CAC ¶ 61.)  Where a user has already installed the Zoom application ("App") on their device, clicking on the meeting link directs the user to the Zoom App associated with that device to join the meeting.  (*Id.* ¶ 63.)  Alternatively, participants may join a meeting from their computer via web browser, or from their telephone as a voice-only participant, without the need to download the Zoom App.  (*Id.*)

**B.     Plaintiffs' Allegations**

The eleven named Plaintiffs—nine individuals (including one minor) and two entities— allege that on unspecified dates, each of them accessed Zoom's services and that all but the minor Plaintiff "registered with Zoom as a user."  (CAC ¶¶ 17, 20, 24, 26, 28-29, 32, 35, 38, 42, 45, 49).

Plaintiffs claim they used Zoom's services in reliance on Zoom's representations regarding the privacy and security of its services, namely with respect to encryption.  (*Id.* ¶¶ 18-19, 21, 25, 27, 29, 33-34, 39, 43, 46, 50.)  Plaintiffs do not identify any specific representations they allegedly reviewed or when they allegedly reviewed them.  (*Id.* ¶¶ 17-51.)

Plaintiffs allege that Zoom engaged in the unauthorized transmission of users' personal and private information through widely-used integration functionalities with third-party platforms, including Facebook (via the iOS app), Google (via unspecified means), and LinkedIn (via its Sales Navigator feature).  (*Id.* ¶¶ 5, 65-98.)  Plaintiffs do not allege how any such transmission poses risk or harm to them (or what that harm might be).  Rather, Plaintiffs speculate that such arrangements are "used to target and profile them with unwanted and/or harmful content."  (*Id.* ¶ 6.)  Nowhere do Plaintiffs allege what if any information of *theirs* was disclosed.  (*Id.* ¶¶ 17-51.)

Plaintiffs also allege that Zoom failed to prevent meeting intrusions by third party bad actors who spew hateful, disturbing, and offensive content.  (*Id.* ¶¶ 9, 36-37, 40-41, 44, 48, 141-47.)  Plaintiffs acknowledge that these actors are not associated with Zoom or its services.  (*Id.* ¶ 141.)

Cooley LLP
Attorneys at Law
San Francisco

3

Defendant Zoom's Motion to Dismiss
The Consolidated Amended Complaint
Master Case No. 5:20-cv-02155-LHK

Finally, Plaintiffs contort press articles and Zoom's Privacy Policy (CAC ¶ 120) to allege that Zoom engages in "unauthorized interception and use of video sessions, chats, and transcripts," (*id.* at p. 32 (capitalization removed)), speculating that Zoom "may" use this content to train "chat-bots"—allegations that have no factual support in the sources cited by Plaintiffs.  (*Id.* ¶¶122-27.)

Plaintiffs seek to represent a nationwide class of all Zoom users as well as a minor sub-class (*id.* ¶¶ 158-61) and to apply California's statutory and common law nationwide.

### III.   MOTION TO DISMISS STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to save a claim from dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rather, where "there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory," the claim must be dismissed.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

### IV.   ARGUMENT

#### A.   Section 230 Bars Plaintiffs' Claims to the Extent They Are Predicated on Unwanted Meeting Intrusions.[2]

Under Section 230 of the CDA, Plaintiffs cannot hold Zoom liable for unwanted meeting intrusions committed by malicious third parties—a phenomenon that affects many online video and text chat services, including those, like Zoom, with extensive security features to prevent such intrusions.  Section 230 "immunizes providers of interactive computer services against liability arising from content created by third parties." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc).  This immunity is "robust" and reflects Congress's "policy choice not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003) (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330-31 (4th Cir. 1997)).

[2] Plaintiffs' invasion of privacy (Count 1) and negligence (Count 2) claims are explicitly predicated on meeting intrusions (CAC ¶¶ 176, 184), and are thus barred in part by Section 230.  To the extent Plaintiffs seek to predicate other claims on meeting intrusions, those claims are also barred.

Under Section 230(c)(1), "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).  This provision grants immunity to "(1) a provider or user of an interactive computer service (2) whom plaintiff seeks to treat . . . as a publisher or speaker (3) of information provided by another information content provider." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009).  Under this well-established test, Plaintiffs' claims are barred under Section 230 to the extent that Plaintiffs seek to hold Zoom liable for third-party meeting intrusions.

### 1. Zoom is a quintessential interactive computer service.

Zoom is an "interactive computer service," defined by Section 230 as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2).  Courts interpret this term "expansively," with websites and online messaging boards being the "prototypical service[s] qualifying for CDA immunity." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019).  As the video equivalent of an online messaging board, Zoom indisputably qualifies as an interactive computer service.  (*See* CAC ¶¶ 2, 4 ("Zoom is a supplier of video conferencing services" that has hundreds of millions of online users)); *see also, e.g.*, *Fed. Agency of News LLC v. Facebook*, 432 F. Supp. 3d 1107, 1117 (N.D. Cal. 2020) (Facebook, as "'a web-based platform' or service with '2.2 billion monthly users,'" was "unquestionably an interactive computer service").

### 2. Plaintiffs seek to hold Zoom liable as the publisher of content supplied by the meeting intruders.

Plaintiffs seek to hold Zoom liable as a publisher, rendering Section 230 applicable.  "What matters is not the name of the cause of action" but instead "whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes*, 570 F.3d at 1101-02.  Under the CDA, "publication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Id.*

Here, Plaintiffs attempt to hold Zoom liable for alleged harm from content posted by third parties during meeting intrusions, which Plaintiffs describe as "bad actors hijack[ing] Zoom videoconferences, displaying pornography, screaming racial epitaphs [sic], or engaging in similarly

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFENDANT ZOOM'S MOTION TO DISMISS
THE CONSOLIDATED AMENDED COMPLAINT
MASTER CASE NO. 5:20-CV-02155-LHK

1    despicable conduct." (CAC ¶ 9.) Plaintiffs allege that Zoom should have done more to prevent

2    these meeting intrusions from occurring. (*Id.* ¶¶ 176, 184.)

3          This theory of liability runs headlong into Section 230, because it hinges on the prevention

4    or blocking of user-generated content.[3] Courts must "scrutinize particularly closely any claim that

5    can be boiled down to the failure of an interactive computer service to edit or block user-generated

6    content that it believes was tendered for posting online, as that is the very activity Congress sought

7    to immunize." *Roommates*, 521 F.3d at 1172 n.32 (citation omitted). Zoom is "perforce immune

8    under section 230" for any claim that "can be boiled down to deciding whether to exclude material

9    that third parties seek to post online." *Id.* at 1170-71; *Barnes*, 570 F.3d at 1102 (same).

10         Thus, numerous courts have held—in reasoning directly applicable here—that, pursuant to

11   Section 230, platforms may not be held liable for failing to block unwanted users from accessing

12   the site and undertaking malicious actions, even where plaintiffs have argued they seek only to

13   impose liability for inadequate security or failing to police users or content. For example, in *Doe*

14   *v. MySpace*, 528 F.3d 413 (5th Cir. 2008*)*, a minor was sexually assaulted by someone she met on

15   MySpace and sued, alleging that MySpace "failed to implement basic safety measures" and was

16   "negligent for not taking more precautions." *Id.* at 416, 421. The court held that Section 230 barred

17   the claim because it sought to hold MySpace liable in its "publishing, editorial, and/or screening

18   capacities." *Id.* at 420; *see also Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 21 (1st Cir.

19   2016) (collecting cases where courts "rejected claims that attempt to hold website operators liable

20   for failing to provide sufficient protections to users from harmful content created by others.");

21   *Green v. Am. Online*, 318 F.3d 465, 470 (3d Cir. 2003) (barring claims under Section 230 based on

22   receiving computer virus and derogatory comments in an AOL chatroom, despite plaintiff's

23   framing as AOL's "fail[ing] to properly police its network for content transmitted by its users").

24         Dismissal is warranted for the same reason here. Although Plaintiffs attempt to frame their

25   _____

26   [3] Congress passed Section 230 to address the imposition in *Stratton Oakmont, Inc. v. Prodigy Servs. Co.*, 1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995), of liability on an online platform for failing to screen and control content. In *Stratton*, the court held Prodigy liable for defamatory comments

27   posted on its bulletin boards by a user in part because Prodigy *advertised its practice of monitoring content on its boards* and because it actively screened messages postings. Congress enacted Section

28   230 to immunize such services from liability for failing to fully prevent inappropriate content from being posted. *See Batzel v. Smith*, 333 F.3d 1018, 1029 (9th Cir. 2003) (summarizing history).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

**DEFENDANT ZOOM'S MOTION TO DISMISS
THE CONSOLIDATED AMENDED COMPLAINT
MASTER CASE NO. 5:20-CV-02155-LHK**

allegations in terms of an alleged failure to provide reasonable security, Plaintiffs essentially seek to hold Zoom liable for failing to block or remove third-party intruders' content.  (*See* CAC ¶¶ 176, 184.)  As the Ninth Circuit has recognized, "removing content is something publishers do," and imposing "liability on the basis of such conduct necessarily involves treating the liable party as a publisher of the content it failed to remove."  *Barnes*, 570 F.3d at 1103.  Section 230 accordingly bars Plaintiffs from seeking to hold Zoom liable for meeting intrusions.

### 3.    Zoom does not contribute to the development of the meeting intrusions.

That meeting intrusions are passively displayed confirms Section 230's applicability.  "The CDA immunizes an interactive computer service provider that 'passively displays content that is created entirely by third parties.'"  *Sikhs for Justice "SFJ," Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1094 (N.D. Cal. 2015) (quoting *Roommates*, 521 F.3d at 1162); *see* 47 U.S.C. § 230(c)(1). The CAC acknowledges that meeting intrusions involve third-party content that Zoom does not help develop.  (CAC ¶¶ 9, 36-37, 40-41, 44, 48, 141-47); *see Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1196-97 (N.D. Cal. 2009) (providing "neutral tools" insufficient).  Because Zoom plays no alleged role whatsoever in developing the offensive content, but instead engages in the quintessential type of publisher activity that Section 230 immunizes, the Court should dismiss all of Plaintiffs' claims to the extent they are predicated on meeting intrusions.  *See supra* n.2.

### B.    Plaintiffs' Claims All Fail Because Plaintiffs Do Not Allege They Have Suffered Personal Harm Caused By Zoom.

Each of Plaintiffs' nine causes of action requires the allegation of some form of personal harm to *them* to be viable.  Yet Plaintiffs have failed to plead such harm under any of their three factual theories, instead relying on vague allegations of injury to Zoom users generally or other non-cognizable harm.  Plaintiffs' failure to allege their own personal harm requires dismissal.

### 1.    Plaintiffs fail to allege personal harm from alleged data sharing.

Plaintiffs' first factual theory is that Zoom allegedly unlawfully transmitted user data from Zoom to third parties—namely Facebook (CAC ¶¶ 5, 65-75), Google (*id.* ¶¶ 82-84), and LinkedIn (*id.* ¶¶ 93-98).  (*See* CAC ¶ 176 (Count 1, Invasion of Privacy); ¶ 184 (Count 2, Negligence); ¶ 199 (Count 3, Breach of Implied Contract); ¶ 208 (Count 4, Implied Covenant); ¶ 218 (Count 6, Unfair

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFENDANT ZOOM'S MOTION TO DISMISS
THE CONSOLIDATED AMENDED COMPLAINT
MASTER CASE NO. 5:20-CV-02155-LHK

1    Competition Law (UCL); ¶¶ 246-251 (Count 8, California Computer Fraud and Abuse Act

2    (CDAFA).)[4]  Yet, Plaintiffs fail to plead any facts indicating that *their* data was subject to any

3    alleged unauthorized disclosure: they do not plead that they used Zoom on any particular interface

4    (such as an iOS device, which is the only interface through which the Facebook SDK allegedly

5    operates (*id.* ¶ 5), or a device that does not restrain the alleged Google permissions, as Plaintiffs

6    concede some devices do (*id.* 84)); that they ever were in a meeting in which LinkedIn Sales

7    Navigator was activated or that they sought anonymity in such a meeting; or that any of the

8    allegedly shared data was private (*id.* ¶¶ 17-51).  As explained further below with respect to the

9    harm required for each cause of action at issue, Plaintiffs' failure to allege any data disclosure

10   specific to *them* requires dismissal of all claims to the extent they rely on alleged data-sharing with

11   third parties.  *See infra* Sections IV.C.1-3, IV.D.1-2, IV.E & n.10, IV.F, IV.G & n.11, IV.H.1-4.

12              **2.      Plaintiffs fail to allege personal harm from Zoom's alleged**
                **misrepresentations and omissions concerning encryption.**
13

14        Plaintiffs' second factual theory is that Zoom allegedly deceived Plaintiffs into believing

15   that it provided end-to-end encryption when it allegedly did not and thus failed to provide adequate

16   security.  (*See* CAC ¶ 176 (Count 1, Invasion of Privacy); ¶ 184 (Count 2, Negligence); ¶ 196

17   (Count 3, Implied Contract); ¶¶ 207-208 (Count 4, Implied Covenant); ¶ 218 (Count 6, UCL); ¶ 236

18   (Count 7, CLRA); ¶ 258 (Count 9, Fraudulent Concealment).)[5]  Yet Plaintiffs do not identify any

19   specific representation or omission by Zoom about encryption—or any other security feature—that

20   they relied on in using or purchasing Zoom's services.  (*Id.* ¶¶ 17-51.)  Instead, they concede that

21   they are *required* to use Zoom and thus that the reason they use Zoom has nothing to do with

22   encryption or security-related representations.  (*Id.* ¶ 15 ("many people including Plaintiffs

23   nonetheless *are required to use Zoom* for work, school, or other purposes").)  Plaintiffs likewise

24   fail to allege that the alleged encryption deficiencies caused *them* any harm, such as any interception

---

[4] Plaintiffs' Unjust Enrichment (Count 5), Consumer Legal Remedies Act (CLRA) (Count 7), and
Fraudulent Concealment (Count 9) claims do not appear to be based on alleged data sharing with
third parties, but in any event also require Plaintiff-specific injury that Plaintiffs fail to plead.
[5] Plaintiffs' Unjust Enrichment (Count 5) and CDAFA (Count 8) claims do not appear to be based
on alleged actions or omissions regarding encryption, but in any event also require Plaintiff-specific
injury that Plaintiffs fail to plead.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFENDANT ZOOM'S MOTION TO DISMISS
THE CONSOLIDATED AMENDED COMPLAINT
MASTER CASE NO. 5:20-CV-02155-LHK

of their information.  (*Id.* ¶¶ 17-51.)  Finally, all but four Plaintiffs admit that they used Zoom for free and thus cannot allege that they incurred any costs or other detriment as a result of Zoom's alleged misrepresentations.  (*Id.*)  Thus, as explained below with respect to the harm required for each cause of action at issue, Plaintiffs' failure to allege any representation or harm specific to *them* regarding encryption requires dismissal of all claims to the extent they rely on alleged wrongdoing regarding encryption.  *See infra* Sections IV.C.1-3, IV.D.1-2, IV.E & n.10, IV.F, IV.H.1-4.

### 3. Plaintiffs fail to allege personal harm caused by Zoom from meeting intrusions.

Plaintiffs' final factual theory is based on Zoom's alleged failure to prevent unwanted third-party intruders from displaying offensive content in Zoom meetings and displaying offensive content.  (CAC ¶¶ 9, 36-37, 40-41, 44, 48, 141-47.)  As explained above, *see supra* Section IV.A, Section 230 bars liability against Zoom under any cause of action under this theory.  Plaintiffs also have failed to allege cognizable injury caused by Zoom based on meeting intrusions: they have not shown that Zoom (as opposed to independent third parties) caused the alleged harm, *see supra* Section IV.A; *infra* Section IV.C.3 (Invasion of Privacy), and they have not sufficiently alleged any cognizable damage, including emotional distress, *see infra* Section IV.D.2 (Negligence).

### C. Plaintiffs Fail to State a Claim for Invasion of Privacy Under the California Constitution (Count 1).[6]

The California Constitution "sets a 'high bar' for establishing an invasion of privacy claim."  *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014) (citation omitted).  A plaintiff must allege "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy."  *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 39-40 (1994).  Plaintiffs fail to meet this high bar.

---

[6] Plaintiffs' cause of action appears to be brought under the California Constitution. (*See* CAC at p. 47.) While it contains a passing reference to the California Consumer Privacy Act (CCPA) (*id.* ¶ 178), Plaintiffs do not plead a CCPA claim (indeed, that claim was dropped from the pre-CAC versions of the underlying individual actions). Zoom thus responds to the claim as arising only under the California Constitution.  To the extent Plaintiffs intend also to bring a common law invasion of privacy claim, the claim is subject to "similarly high standards" and fails for the same reasons. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFENDANT ZOOM'S MOTION TO DISMISS
THE CONSOLIDATED AMENDED COMPLAINT
MASTER CASE NO. 5:20-CV-02155-LHK

1

      **1.**      **Plaintiffs have not adequately specified any material over which they have a legally protected privacy interest.**

2

3           Plaintiffs have failed to adequately allege the disclosure of material in which they have a

4  legally protected privacy interest.  To plead invasion of privacy under the California Constitution,

5  a plaintiff must "specif[y] the material defendants released to the public in enough detail for the

6  Court to determine whether it might conceivably fall within a recognized privacy interest protected

7  by the [California] constitution." *Scott-Codiga v. Cty. of Monterey*, No. 10-CV-05450, 2011 WL

8  4434812, at *7 (N.D. Cal. Sept. 23, 2011); *see Zbitnoff v. Nationstar Mortg., LLC*, No. C 13-05221,

9  2014 WL 1101161, at *4 (N.D. Cal. Mar. 18, 2014) (dismissing where "Plaintiff d[id] not identify

10  exactly what private information defendants are alleged to have disclosed").

11          Plaintiffs allege generally that Zoom disclosed unspecified users' information when those

12  unspecified users accessed certain third-party applications and/or services (CAC ¶¶ 5, 65-98), but

13  do not allege that Zoom disclosed *their* information in particular to any third party (*id.* ¶¶ 17-51).

14  This failure requires dismissal.  *See, e.g.*, *Banga v. Equifax Info. Servs. LLC*, No. 14-CV-03038,

15  2015 WL 3799546, at *11 (N.D. Cal. June 18, 2015) (dismissing California constitutional privacy

16  claim where plaintiff "has not adequately alleged what, if any, offensive and objectionable facts

17  about her were disclosed to third parties"); *Low*, 900 F. Supp. 2d at 1025 (dismissing California

18  constitutional privacy claim where plaintiffs alleged *possible* misuse of their data; "it is not clear

19  that anyone has actually done so, or what information, precisely, these third parties have obtained").

20  In short, no Plaintiff "allege[s] a specific injury" with respect to a legally protected privacy interest.

21  *Zbitnoff*, 2014 WL 1101161, at *4.

22          Further, with respect to alleged disclosures via the LinkedIn Sales Navigator, Plaintiffs'

23  claim fails because they do not identify any meetings they attended in which LinkedIn Sales

24  Navigator was activated or allege that any nonpublic LinkedIn information was disclosed.  *See In*

25  *re Google Assistant Privacy Litig.*, No. 19-CV-04286, 2020 WL 2219022, at *19 (N.D. Cal. May

26  6, 2020) (dismissing California constitutional privacy claim where plaintiffs did not identify

27  specific conversations allegedly intercepted and recorded).

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFENDANT ZOOM'S MOTION TO DISMISS
THE CONSOLIDATED AMENDED COMPLAINT
MASTER CASE NO. 5:20-CV-02155-LHK

**2. Plaintiffs have not adequately alleged a reasonable expectation of privacy.**

Plaintiffs' invasion of privacy claim also fails because they have not alleged a reasonable expectation of privacy in any alleged information at issue. Plaintiffs simply characterize, without any elaboration or factual support, the purportedly disclosed information as "private," "personal," and "confidential" (CAC ¶ 179.) Yet the few descriptions Plaintiffs elsewhere provide of the information allegedly at issue indicates that it is technical device data or publicly available information (*see id.* ¶¶ 69-70, 74, 82, 94)—not private, personal, or confidential information. *See Banga*, 2015 WL 3799546, at *11 (dismissing California constitutional privacy claim where plaintiff "has not adequately alleged what, if any, offensive and objectionable facts about her were disclosed"). And with respect to LinkedIn Sales Navigator, Plaintiffs do not allege that they sought anonymity while using Zoom (*id.* ¶ 95) and thus have failed to allege a reasonable expectation of privacy. *See Yahoo Mail Litig.*, 7 F. Supp. 3d at 1041 (dismissing California constitutional privacy claims as "fatally conclusory" because plaintiffs alleged that their "emails were 'private' without alleging any facts related to what particular emails Yahoo intercepted, or the content within particular emails"); *see also Google Assistant Privacy Litig.*, 2020 WL 2219022, at *19.

**3. Plaintiffs fail to allege conduct by Zoom that constituted an egregious breach of social norms.**

Plaintiffs also have not alleged any conduct by Zoom amounting to an egregious breach of social norms, as required for an invasion of privacy claim under the California Constitution. This claim requires "conduct by defendant constituting a serious invasion of privacy"—*i.e.*, "sufficiently serious in [its] nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill*, 7 Cal. 4th at 37, 40.

Under established case law, "[e]ven disclosure of very personal information has not been deemed an 'egregious breach of social norms' sufficient to establish a constitutional right to privacy." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1038; *accord Belluomini v. Citigroup, Inc.*, No. CV 13-01743, 2013 WL 3855589, at *6 (N.D. Cal. July 24, 2013). As noted in the preceding section, Plaintiffs appear to base their invasion of privacy claim on alleged disclosure of non-

Cooley LLP
Attorneys at Law
San Francisco

11

DEFENDANT ZOOM'S MOTION TO DISMISS
THE CONSOLIDATED AMENDED COMPLAINT
MASTER CASE NO. 5:20-CV-02155-LHK

sensitive device and profile data to third parties Facebook, Google, and LinkedIn.  (*E.g.,* CAC ¶¶ 69-70, ¶ 74 (device data, including IP address and iOS Advertiser ID, which are widely shared by internet users), ¶ 82 (application and device data), ¶ 94 (LinkedIn profile data).)   Courts routinely hold that allegations regarding the disclosure of similar data is insufficient to establish an "egregious breach."  *See, e.g.*, *Low*, 900 F. Supp. 2d at 1025 (dismissing California constitutional privacy claim based on alleged disclosure of users' numeric LinkedIn IDs and browsing histories; "[e]ven disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy claim"); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012)  (dismissing California constitutional privacy claims based on alleged disclosure of each user's address, location, unique device identifier, gender, age, time zone, and information about app usage); *Moreno v. Hanford Sentinel, Inc.*, 172 Cal. App. 4th 1125, 1130 (2009) (concerning postings on MySpace.com: "[a] matter that is already public or that has previously become part of the public domain is not private").

Finally, to the extent Plaintiffs base their invasion of privacy claim on alleged unwanted meeting intrusions (CAC ¶¶ 9, 36-37, 40-41, 44, 48, 141-147, 176), those allegations do not implicate "conduct *by defendant* constituting a serious invasion of privacy."  *Hill*, 7 Cal. 4th at 40 (emphasis added).  Rather, according to Plaintiffs, the alleged meeting intrusions were committed by third-party bad actors who deliberately sought to circumvent  Zoom's security features.  (CAC ¶¶ 9, 36-37, 40-41, 141-47.)  These actions cannot constitute "egregious breaches" by Zoom.

### 4. The two institutional Plaintiffs may not maintain this claim.

The two institutional Plaintiffs—Saint Paulus and Oak Life—do not have California constitutional privacy rights, requiring dismissal of their claims.  *See SCC Acquisitions, Inc. v. Super. Ct.*, 243 Cal. App. 4th 741, 755-56 (2015) ("corporations do not have a right of privacy protected by the California Constitution," which "protects the privacy rights of 'people' only").

### D. Plaintiffs' Negligence Claims Should Be Dismissed (Count 2).

#### 1. The economic loss rule bars Plaintiffs' claim to the extent they seek recovery for financial injury.

Plaintiffs cannot recover damages for economic injury under their negligence claim because

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

**DEFENDANT ZOOM'S MOTION TO DISMISS
THE CONSOLIDATED AMENDED COMPLAINT
MASTER CASE NO. 5:20-CV-02155-LHK**

"[u]nder the economic loss rule, 'purely economic losses are not recoverable in tort.'"  *R Power Biofuels, LLC v. Chemex LLC*, No. 16-cv-00716, 2016 WL 6663002, at *4 (N.D. Cal. Nov. 11, 2016) (citation omitted).  This rule applies unless a plaintiff specifically alleges "(1) personal injury, (2) physical damage to property, (3) a 'special relationship' existing between the parties, or (4) some other common law exception to the rule, recovery of purely economic loss is foreclosed." *Kalitta Air, L.L.C. v. Central Tex. Airborne Sys., Inc.*, 315 F. App'x 603, 605 (9th Cir. 2008). Plaintiffs plead purely economic losses and do not allege any of the exceptions.

Plaintiffs' negligence claim focuses on alleged financial loss related to monitoring for fraudulent activity and the lost value of their private information (CAC ¶ 188), thus triggering the rule.  *See, e.g.*, *Castillo v. Seagate Tech., LLC*, No. 16-cv-01958, 2016 WL 9280242, at *5-6 (N.D. Cal. Sept. 14, 2016) (dismissing negligence claim as "[n]ot one of the plaintiffs suffered personal injury as a result of the data breach, and the damages they seek to recovery are economic in nature"). [7] The alleged compromise of Plaintiffs' personal information (CAC ¶ 188) is not property damage. *See In re Google Android Consumer Privacy Litig.*, No. 11-MD-02264, 2013 WL 1283236, at *4 (N.D. Cal. Mar. 26, 2013) (holding that alleged compromise of PII is not property damage for purposes of economic loss rule); *Yunker v. Pandora Media, Inc.*, No. 11-CV-03113, 2013 WL 1282980, at *4 (N.D. Cal. Mar. 26, 2013).

Plaintiffs have likewise not alleged a "special relationship" with Zoom to avoid application of the economic loss rule, under which the following six factors apply:

> (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm.

*J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 804 (1979); *see In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 969 (S.D. Cal. 2014) (*Sony II*) (rejecting claim of special relationship based on "everyday consumer transactions").  The first factor does not favor an exception, as Plaintiffs are among "millions" they allege are similarly situated.  (CAC ¶ 115.)

---

[7] While Plaintiffs also assert that they suffered emotional distress, Plaintiffs cannot recover for any such injury in this case.  *See infra* Section IV.C.2.b.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFENDANT ZOOM'S MOTION TO DISMISS
THE CONSOLIDATED AMENDED COMPLAINT
MASTER CASE NO. 5:20-CV-02155-LHK

1    *See Greystone Homes, Inc. v. Midtec, Inc.*, 168 Cal. App. 4th 1194, 1230-31 (2008) (a "special

2    relationship" does not exist where plaintiffs "were no different from any other purchaser of the

3    *same product*"); *Fields v. Wise Media, LLC*, No. C 12-05160, 2013 WL 3812001, at *5 (N.D. Cal.

4    July 19, 2013).  With respect to the second, third, and fourth factors, as explained above, *see supra*

5    Section IV.B, Plaintiffs fail to specify what information of *theirs* was allegedly "compromised" by

6    Zoom or "obtained by third parties without [their] consent" (CAC ¶ 186), and Plaintiffs' alleged

7    injuries thus are too speculative to support the exception.  *See Sony II*, 996 F. Supp. 2d at 970-71.

8    Finally, the fifth and sixth factors also weigh against a special relationship, as courts generally

9    attach moral blame only to conduct that is "reckless or purposeful," *Mega RV Corp. v. HWH Corp.*,

10   225 Cal. App. 4th 1318, 1342 (2014), and Plaintiffs do not allege such conduct here.  Nor is there

11   a need to deter; Zoom has existing incentives to maintain its "relationship with [its users], [limit

12   its] financial liability, [and protect its] reputation" by attending to security and privacy.  *Id.*

13                  **2.       Plaintiffs fail sufficiently to plead the elements of negligence.**

14            Plaintiffs' negligence claim also fails sufficiently to plead the well-established elements:

15   (1) a legal duty of care, (2) breach of that duty, (3) that the breach proximately caused the plaintiff's

16   injuries, and (4) damages.  *Dent v. Nat'l Football League*, 902 F.3d 1109, 1117 (9th Cir. 2018).

17   Plaintiffs' conclusory allegations regarding breach, causation, and damages are insufficient.

18            ***First***, Plaintiffs fail to allege that any harm allegedly suffered was (1) caused by Zoom's

19   (2) breach of a duty owed.  *See Sony II*, 996 F. Supp. 2d at 964.  The CAC contains no non-

20   conclusory factual allegations indicating that Zoom did not employ reasonable security measures

21   (*e.g.*, CAC ¶ 184), and thus fails to plead a breach.  *See Sanchez v. Lending Tree LLC*, No.

22   10CV1593, 2010 WL 3983390, at *2 (S.D. Cal. Oct. 12, 2010) (allegation that defendant breached

23   duty to protect personal information "is a conclusory statement and is therefore insufficient to

24   establish the 'breach' element of a negligence cause of action").  This failure also means that

25   Plaintiffs have failed sufficiently to allege that Zoom caused the alleged harm.  *See Bem v. Stryker

26   Corp.*, No. C 15-2485, 2015 WL 4573204, at *1 (N.D. Cal. July 29, 2015) (dismissing negligence

27   claim where failed to plead facts showing the defendant was negligent or how any such negligence

28   caused or contributed to any specified injury); *Sony II*, 996 F. Supp. 2d at 964 (same); *Terpin v.*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFENDANT ZOOM'S MOTION TO DISMISS
THE CONSOLIDATED AMENDED COMPLAINT
MASTER CASE NO. 5:20-CV-02155-LHK

1   *AT&T Mobility, LLC*, 399 F. Supp. 3d 1035, 1044 (C.D. Cal. 2019) (same).[8]

2         ***Second***, Plaintiffs fail to allege "appreciable, nonspeculative, present injury"—"an essential

3   element" for a negligence claim.  *Aas v. Super. Ct.*, 24 Cal. 4th 627, 646 (2000).  Plaintiffs assert

4   that Zoom "expos[ed them] to a heightened, imminent risk of unauthorized access to their private

5   and personal data and conversations, fraud, theft, and other financial harm."  (CAC ¶ 188.)  Such a

6   "threat of future harm" is insufficient.  *In re Sony Gaming Networks & Customer Data Sec. Breach*

7   *Litig.*, 903 F. Supp. 2d 942, 963 (S.D. Cal. 2012); *see, e.g.*, *In re iPhone App. Litig.*, No. 11-MD-

8   02250, 2011 WL 4403963, at *4-5, *9 (N.D. Cal. Sept. 20, 2011) (similar).

9         Plaintiffs' allegations of present harm fare no better.  They allege that they "must now more

10  closely protect their private and personal data," but have not alleged actual purchase of any service

11  or other incurred costs (CAC ¶ 188), or that such self-inflicted costs based on hypothetical harms

12  are reasonably necessary.  *See, e.g.*, *Sony II*, 996 F. Supp. 2d at 970 (because plaintiff "failed to

13  allege why [monitoring] costs were reasonably necessary," he failed to meet "th[e] high burden"

14  necessary to recover such costs).  Plaintiffs also assert that their personal information is less

15  valuable today (CAC ¶ 188), but they do not allege any facts showing "how [they were] foreclosed

16  from capitalizing on the value of [their] personal data."  *See Low*, 900 F. Supp. 2d at 1032.

17        Plaintiffs also allege (with respect to meeting intrusions) that "interruption of their most

18  private conversations" caused "emotional distress" (CAC ¶ 188),  but do not specify the "nature or

19  extent of [any named plaintiff's] emotional suffering."  *Burnell v. Marin Humane Soc'y*, No. CV

20  14-5635, 2015 WL 6746818, at *19 (N.D. Cal. Nov. 5, 2015).  Such allegations are insufficient.

21  *Id.*; *see, e.g.*, *Sion v. SunRun, Inc.*, No. 16-cv-05834, 2017 WL 952953, at *2 (N.D. Cal. Mar. 13,

22  2017) ("[Plaintiff] states that she suffered mental and emotional distress as a result of Defendant's

23  invasion of Plaintiff's privacy, but offers no specific facts about *how* she suffered those damages."

24  (citation omitted)); *Holly v. Alta Newport Hosp., Inc.*, No. 2:19-cv-07496, 2020 WL 1853308, at

25  *6 (C.D. Cal. Apr. 10, 2020).

26

27

28

---

[8] To the extent Plaintiffs' negligence claim is based on the alleged disclosure of user information to third parties (CAC ¶ 184), the causal connection is especially weak because, as discussed above in Section IV.B, Plaintiffs have not alleged that Zoom disclosed any of *their* personal information.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

**DEFENDANT ZOOM'S MOTION TO DISMISS**
**THE CONSOLIDATED AMENDED COMPLAINT**
**MASTER CASE NO. 5:20-CV-02155-LHK**

1

### E.    Plaintiffs Cannot State a Claim for Breach of an Implied Contract (Count 3).

Plaintiffs may not maintain an implied contract claim because an express written agreement—Zoom's terms of service ("TOS")—control.  Where an express written agreement exists, it "sets the boundaries for any implied contract." *Schwarzkopf v. Int'l Bus. Machines, Inc.*, No. C 08-2715, 2010 WL 1929625, at *8 (N.D. Cal. May 12, 2010); *see also Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1086 (N.D. Cal. 2012) ("implied terms should never be read to vary express terms" (citation omitted)).  Zoom's TOS control the parties' relationship and pertain to the subject matter at issue, requiring dismissal of the implied contract claim.

Plaintiffs allege that they and Zoom entered into implied contracts "whereby [Zoom] agreed to and was obligated to take reasonable steps to secure and safeguard [their private and personal] information." (CAC ¶ 195.)  However, all Plaintiffs other than M.F. allege that they "registered" accounts with Zoom to "use[] Zoom's services." (CAC ¶¶ 17, 20, 24, 29, 32, 35, 38, 42, 45, 49.) In so doing, they affirmatively agreed that Zoom's TOS would govern the parties' relationship by clicking on a "I Confirm" box placed next to a hyperlink to the TOS.  (Decl. of Jacqueline Hill ("Hill Decl.") at ¶ 4); *see also Dohrmann v. Intuit, Inc.*, No. 20-15466, 2020 WL 4601254, at *1-2 (9th Cir. Aug. 11, 2020) (holding that terms were enforceable where users had to click on an "I agree" box placed next to a hyperlink of the agreement).  Plaintiffs seek to ignore the TOS entirely in the CAC (although they do invoke the Zoom Privacy Policy incorporated by the TOS, CAC ¶¶ 99-113)).  But, as explained more fully in Zoom's Request for Judicial Notice, the doctrine of incorporation by reference exists precisely to prevent a plaintiff "from defeating a motion to dismiss by artful pleading instead of attaching the essential documents." *Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of Cal.*, SA CV 15-0736, 2016 WL 6892140, at *22 (C.D. Cal. Nov. 22, 2016). The Court therefore can and should consider the TOS.

The TOS contain an integration clause stating that "[t]his Agreement embodies the entire understanding and agreement between the Parties . . . and supersedes any and all prior understandings and agreements." (Hill Decl., Ex. 1 ¶ 20.4.)  This alone precludes a finding of an implied contract. *See, e.g.*, *Be In, Inc. v. Google Inc.*, No. 12-CV-03373, 2013 WL 5568706, at *6 (N.D. Cal. Oct. 9, 2013).  The TOS also pertain directly to the subject matter of Plaintiffs' implied

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEFENDANT ZOOM'S MOTION TO DISMISS
THE CONSOLIDATED AMENDED COMPLAINT
MASTER CASE NO. 5:20-CV-02155-LHK

contract claim and therefore preclude it.  **First**, the TOS expressly govern the steps Zoom agreed to undertake to protect users' personal and private information.  (*See* TOS ¶ 5 ("Zoom will maintain reasonable physical and technical safeguards to prevent unauthorized disclosure of or access to Content, in accordance with industry standards.").)  **Second**, Zoom's Privacy Policy, which is incorporated by reference into the TOS (TOS ¶ 19), expressly governs the scope of Zoom's permissible use of users' information (Hill Decl., Ex. 5 at 3 ("[T]hird party service providers, and advertising partners [may] automatically collect some information about [users] when [they] use [its] Products."); Ex. 3 at 2-7 (discussing data sharing with third parties).).  Because the TOS and incorporated Privacy Policy pertain to the precise subject matter that Plaintiffs now claim is covered by an implied contract (CAC ¶¶ 192-195), the implied contract claim fails.  *See, e.g.*, *Be In, Inc.*, 2013 WL 5568706, at *6 (dismissing with prejudice plaintiff's implied contract claim where an express contract covered the same subject matter); *Roling v. E*Trade Sec., LLC*, 756 F. Supp. 2d 1179, 1189 (N.D. Cal. 2010) ("the existence of an express contract indisputably precludes allegations regarding an implied contract for the same subject matter").[9]

## F.    Plaintiffs' Claim for Breach of the Implied Covenant Fails (Count 4).

Plaintiffs' breach of implied covenant claim should be dismissed as duplicative of the breach of implied contract claim.  *See Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990) *as modified on denial of reh'g* (Oct. 31, 2001) ("If the allegations [of a breach of implied covenant claim] do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated"); *Snapkeys, Ltd. v. Google LLC*, 442 F. Supp. 3d 1196, 1211 (N.D. Cal. 2020) (dismissing implied covenant claim with prejudice as duplicative of plaintiff's breach of contract claim because the same allegations were "at the heart" of both claims).  The alleged "breaches" underlying Plaintiffs' implied covenant claim are identical to those underlying the breach of implied contract claim, and that claim thus fails.  (*See* CAC ¶¶ 196, 208.)

---

[9] Even if Plaintiffs could allege the existence of an implied contract and any alleged breach, their claim fails due to the absence of damages:  most Plaintiffs paid nothing to use Zoom's free services, and for those who did pay, they have not and cannot allege a price premium for privacy protections.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEFENDANT ZOOM'S MOTION TO DISMISS
THE CONSOLIDATED AMENDED COMPLAINT
MASTER CASE NO. 5:20-CV-02155-LHK

G.      **Plaintiffs Cannot State a Claim for Violation of the CDAFA (Count 8).**

Plaintiffs fail to state a claim for relief under the CDAFA, Cal. Penal Code § 502, "an anti-hacking statute intended to prohibit the unauthorized use of any computer system for improper or illegitimate purpose[s]."  *Sunbelt Rentals v. Victor*, 43 F. Supp. 3d 1026, 1032 (N.D. Cal. 2014). Plaintiffs conclusorily allege that Zoom violated seven CDAFA provisions (CAC ¶¶ 246-51), each of which requires Zoom to have acted "without permission."  *See* Cal. Penal Code §§ 502(c)(1)(B), (c)(2), (c)(3), (c)(6), (c)(7), (c)(8), (c)(13).  This claim fails for several reasons.

To begin with, the CAC fails adequately to allege the requisite harm for each claimed violation because, as discussed above, *see supra* Section IV.B, Plaintiffs have not alleged that Zoom disclosed any of *their* personal information.  *See* Cal. Penal Code § 502(e)(1) (authorizing CDAFA civil actions only for persons "who suffer[] damage or loss").

Plaintiffs' CDAFA allegations also fail because they "merely track[] the language of the statute itself, without providing facts to substantiate the claimed legal conclusions."  *Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*, 315 F. Supp. 3d 1147, 1175 (C.D. Cal. 2018); (*see* CAC ¶¶ 246-251.)  Such a "threadbare recital" is wholly insufficient.  *Iqbal*, 556 U.S. at 678; *see Brodsky v. Apple Inc.*, No. 19-CV-00712, 2019 WL 4141936, at *9 (N.D. Cal. Aug. 30, 2019) (dismissing CDAFA allegations that "merely parrot the language of the [CDAFA]"); *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1090 (N.D. Cal. 2018) (dismissing "boilerplate" CDAFA claims).

The CAC also does not sufficiently allege that Zoom accessed Plaintiffs' computer systems "without permission," given that they voluntarily installed Zoom's software and used its services. (CAC ¶¶ 17-51.)  This requires dismissal.  *See In re Apple & ATTM Antitrust Litig.*, No. C 07-05152, 2010 WL 3521965, at *7 (N.D. Cal. July 8, 2010) ("Voluntary installation runs counter to . . . [the CDAFA]'s requirement that the act was 'without permission.' " (citation omitted)).

Plaintiffs' Section 502(c)(8) "computer contaminant" claim also fails because Plaintiffs do not allege that Zoom's software is a "computer contaminant," defined to include "viruses or worms" (Cal. Pen. Code § 502(b)(12)), as well as "other malware that usurps the normal operation of the computer or computer system."  *In re iPhone Application Litig.*, 2011 WL 4403963, at *12-13.  Plainly, Zoom's software, which is voluntarily installed and trusted by "million[s]" of users

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

DEFENDANT ZOOM'S MOTION TO DISMISS
THE CONSOLIDATED AMENDED COMPLAINT
MASTER CASE NO. 5:20-CV-02155-LHK

around the world (CAC ¶¶ 15, 64), cannot satisfy that definition.

Finally, Plaintiffs baldly claim that they are entitled to punitive or exemplary damages based on "oppression, fraud, or malice as defined in Cal. Civil Code § 3294." (CAC ¶ 255.)  Because the CDAFA claim fails, and because Plaintiffs provide no explanation or evidence for this allegation, their request for punitive damages should be stricken.  *See Smith v. Super. Ct.*, 10 Cal. App. 4th 1033, 1041-42 (1992) (directing trial court to strike assertions that defendants "acted with oppression, fraud or malice" because they were based solely on "conclusory allegations").

**H.    Plaintiffs' Fraud-Based Claims Should Be Dismissed (UCL, CLRA, Fraudulent Concealment; Counts 6, 7, 9).**

**1.    All Plaintiffs but Hartmann are not "consumers" under the CLRA.**

Plaintiffs Gmerek, Johnston, M.F., Jimenez, Saint Paulus, Cundle, Oak Life, Simins, Brice, and Gormezano (*i.e.*, all but Hartmann) may not maintain CLRA claims because none is a "consumer"—*i.e.*, "an *individual* who seeks or acquires, by *purchase or lease*, any goods or services for personal, family, or household purposes."  Cal. Civ. Code § 1761(d) (emphasis added).

First, Plaintiffs Gmerek, Johnston, M.F., Jimenez, Cundle, Brice, and Gormezano admit that they used Zoom's services for free and do not allege to have paid for them.  (CAC ¶¶ 20, 24, 26, 28, 32, 45, 49.)  Thus, they did not "purchase or lease" Zoom's services and are not "consumers" who may maintain a CLRA claim.  *See In re Facebook Privacy Litig.*, 572 F. App'x 494, 494 (9th Cir. 2014) (affirming dismissal of CLRA claims for failure to allege "obtain[ing] anything from Facebook 'by purchase,' or by a 'consumer transaction'"); *see also Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal. App. 4th 949, 960 (2005).  Second, Plaintiffs Saint Paulus, Oak Life, and Simins allege to have purchased Zoom's services solely for business purposes.  (CAC ¶¶ 35, 38, 42, 44.)  Thus, they are not "consumers" who may maintain a CLRA claim.  *See Frezza v. Google Inc.*, No. 12-CV-00237, 2012 WL 5877587, at *4 (N.D. Cal. Nov. 20, 2012) (dismissing CLRA claims because transaction was "for business purposes" and business purchasers "do not qualify as 'consumers' protected under the CLRA").

Finally, the two institutional Plaintiffs—Saint Paulus and Oak Life—may not bring CLRA claims because corporations are not "consumers" eligible to pursue a CLRA claim.  *See Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003) ("[T]he CLRA does not apply to commercial or

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

DEFENDANT ZOOM'S MOTION TO DISMISS
THE CONSOLIDATED AMENDED COMPLAINT
MASTER CASE NO. 5:20-CV-02155-LHK

1    government contracts, or to contracts formed by nonprofit organizations and other non-commercial

2    groups."); *see also Cal. Grocers Ass'n v. Bank of Am.*, 22 Cal. App. 4th 205, 217-18 (1994).

3                  **2.      Plaintiff Hartmann's CLRA claim for damages should be dismissed.**

4           Plaintiff Hartmann's claim for damages under the CLRA should be dismissed for failure to

5    provide pre-suit notice of her claim to Zoom.  The CLRA requires that "[t]hirty days or more prior

6    to the commencement of an action for damages," the consumer must "[n]otify the person alleged

7    to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of

8    the particular alleged violations of Section 1770."  Cal. Civ. Code § 1782(a).  The notice "shall be

9    in writing and shall be sent by certified or registered mail, return receipt requested, to the place

10   where the transaction occurred or to the person's principal place of business within California."  *Id.*

11          Hartmann has failed to provide the requisite notice, and her CLRA damages claim thus

12   cannot stand.  The CAC baldly alleges that Plaintiff Hartmann provided Zoom with "notice of the[]

13   CLRA violations" alleged in the CAC.  (CAC ¶ 240.)  She does not attach the alleged notice and

14   Zoom has not located any such notice.  Moreover, her pre-consolidation complaint did not include

15   a CLRA claim but relied solely on a different state's consumer protection law.[10]   Plaintiff

16   Hartmann's CLRA claim for damages is therefore properly dismissed with prejudice.  *See, e.g.*,

17   *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1196 (S.D. Cal. 2005), *aff'd*, 252 F. App'x

18   777 (9th Cir. 2007) (dismissing CLRA damages claim with prejudice for lack of notice); *Fish v.

19   Aviation*, No. 18-cv-06671, 2019 WL 690286, at *6 (N.D. Cal. Feb. 19, 2019) (dismissing CLRA

20   damages claim for failure to comply with 30-day notice requirement); *Von Grabe v. Sprint PCS*,

21   312 F. Supp. 2d 1285, 1304 (S.D. Cal. 2003) (dismissing CLRA damages claim with prejudice

22   based on plaintiff's failure to timely deliver statutory notice in the proper form); *Cattie v. Wal-Mart

23   Stores, Inc.*, 504 F. Supp. 2d 939, 950 (S.D. Cal. 2007) (similar).

24                 **3.      The non-purchasing Plaintiffs cannot maintain a UCL claim.**

25          Plaintiffs Gmerek, Johnston, M.F., Jimenez, Cundle, Brice and Gormezano may not bring

26   suit under the UCL because they do not allege a loss of money or property.  UCL claims may be

27

28   ---

[10] *See Hartmann v. Zoom Video Commc'ns, Inc.*, No. 5:20-cv-02620-LHK (filed April 15, 2020, ECF No. 1 ¶¶ 50-57 (alleging violations of the Maryland Consumer Protection Act).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

DEFENDANT ZOOM'S MOTION TO DISMISS
THE CONSOLIDATED AMENDED COMPLAINT
MASTER CASE NO. 5:20-CV-02155-LHK

1   maintained only "by a person who has suffered injury in fact and has lost money or property as a

2   result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *Kwikset Corp. v. Super. Ct.*, 51

3   Cal. 4th 310, 324 (2011); *see also Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009)

4   (dismissing UCL claims for failure to allege "lost money or property").  Plaintiffs allege a loss of

5   money or property based on (1) an alleged loss of their "private and personal data," and/or (2)

6   "payments" they allegedly made to Zoom that they otherwise would not have made but for Zoom's

7   alleged deception.  (CAC ¶¶ 223, 225.)  Neither of these is sufficient for Plaintiffs Gmerek,

8   Johnston, M.F., Jimenez, Cundle, Brice, and Gormezano to maintain a UCL claim.

9         The loss (or loss of value) of "personal information" does not constitute lost money or

10   property under the UCL.  *See, e.g.*, *In re Facebook Privacy Litig.*, 572 F. App'x at 494 (affirming

11   dismissal of UCL claim for lack of lost money or property, where plaintiffs alleged the disclosure

12   of their personal information and the lost sales value of that information); *In re iPhone Application*

13   *Litig.*, 2011 WL 4403963, at *14 (dismissing UCL claim, noting that "[n]umerous courts have held

14   that a plaintiff's 'personal information' does not constitute money or property under the UCL");

15   *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) (dismissing UCL claim,

16   noting that "courts have consistently rejected . . . a broad interpretation of 'money or property'"

17   that would include "a property interest in [plaintiffs'] personal information").

18         In addition, and as explained above concerning the CLRA, Plaintiffs Gmerek, Johnston,

19   M.F., Jimenez, Cundle, Brice and Gormezano used Zoom's services for free and do not allege to

20   have paid for them, meaning no loss of money or property.  (CAC ¶¶ 20, 24, 26, 28, 32, 45, 49);

21   *see also In re Facebook Privacy Litig.*, 572 F. App'x at 494 (affirming dismissal of UCL claim,

22   where plaintiffs alleged that they used services free of charge); *In re Google Assistant Privacy*

23   *Litig.*, 2020 WL 2219022, at *27 (dismissing plaintiffs' overpayment claims where plaintiffs failed

24   to allege that they paid any money for free services).  Finally, any contention that Plaintiffs'

25   "personal information constitutes a form of 'payment'" to Zoom (*cf.* CAC ¶ 225) "is unsupported

26   by law."  *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 717 (N.D. Cal. 2011).

27         **4.     Plaintiffs fail to plead with Rule 9(b) particularity.**

28         Plaintiffs' UCL, CLRA, and fraudulent concealment claims (the "fraud-based claims") are

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

DEFENDANT ZOOM'S MOTION TO DISMISS
THE CONSOLIDATED AMENDED COMPLAINT
MASTER CASE NO. 5:20-CV-02155-LHK

all based on Zoom's alleged course of conduct fraudulently "misrepresent[ing]" or "omitt[ing]" information about the privacy and security features of its services.  (CAC ¶¶ 215-242, 257-262.) Thus, "the pleading . . . *as a whole* must satisfy the particularity requirement of Rule 9(b)."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation omitted; emphasis added).  Unless Plaintiffs allege "the 'who, what, when, where, and how' of the misconduct charged" and what is false or misleading, *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted), their claims must be dismissed.  *See Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (affirming dismissal with prejudice where plaintiff failed to, inter alia, "specify such facts as the times, dates, places").  Plaintiffs' allegations do not meet this standard.

**First**, while Plaintiffs' fraud-based claims are premised on Zoom's allegedly false and misleading statements (CAC ¶¶ 215-242, 257-262), Plaintiffs do not devote any portion of the 62-page CAC to identifying the specific content of the statements they claim to have read (if any) or when and where they saw those statements (if at all).  Instead, Plaintiffs each formulaically assert that Zoom purported to promise all users various privacy and security features, including that it "adequately protects users' personal information."  (CAC ¶¶ 18, 21, 25, 27, 29, 33-34, 39, 43, 46, 50).  Such threadbare allegations are insufficient.  *See Phillips v. Apple Inc.*, No. 15-CV-04879, 2016 WL 1579693, at *8 (N.D. Cal. Apr. 19, 2016) (dismissing plaintiffs' UCL and fraud claims for failure to "plead that they viewed or heard any representations or omissions by Apple").

**Second**, with respect to alleged omissions, because Plaintiffs do not sufficiently allege what statements by Zoom they reviewed (if any), there is no alleged nexus between the alleged fraudulent concealment and Plaintiffs' use of Zoom, in further violation of Rule 9(b).  *See Davidson v. Apple, Inc.*, No. 16-cv-04942, 2017 WL 976048, at *9-10 (N.D. Cal. Mar. 14, 2017) (dismissing fraudulent concealment claims absent allegations that plaintiffs "reviewed or were exposed to any" statements, *i.e.*, "the who, what, when, and where" of the allegedly fraudulent omissions).  In addition, seven out of the eleven named Plaintiffs do not allege they paid any money for Zoom's services (CAC ¶¶ 20, 24, 26, 28, 32, 45, 49) and thus could not have suffered any harm from Zoom's alleged fraud. (*See id.* ¶ 260 (claiming that but for the alleged fraudulent concealment, Plaintiffs "would not otherwise have purchased or [would have] paid significantly [less]" for Zoom's services).)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

DEFENDANT ZOOM'S MOTION TO DISMISS
THE CONSOLIDATED AMENDED COMPLAINT
MASTER CASE NO. 5:20-CV-02155-LHK

1    ***Third***, "actual reliance" is required for Plaintiffs' fraud-based claims, *see Phillips*, 2016

2    WL 1579693 at *7, but Plaintiffs do not plead when, where, or how the alleged misrepresentations

3    and omissions were made to them—"a far cry from the factual allegations required by courts to

4    sufficiently plead reliance." *Gitson v. Trader Joe's Co.*, No. 13-cv-01333, 2014 WL 1048640, at

5    *8 (N.D. Cal. Mar. 14, 2014); *see also Low*, 900 F. Supp. 2d at 1027.  Plaintiffs' conclusory reliance

6    allegations also fail because they are directly contradicted by allegations that Plaintiffs are

7    "required" to use Zoom for "work, school, or other purposes." (CAC ¶ 15.)  *See InfoStream Grp.,*

8    *Inc. v. Paypal, Inc.*, No. C 12-748, 2012 WL 3731517, at *10 (N.D. Cal. Aug. 28, 2012) (plaintiffs'

9    assertion of reliance was "directly contradicted by plaintiffs' allegation" elsewhere).

10    ***Fourth***, Plaintiffs fail to allege how Zoom's purported "promises" to protect their personal

11    information are false as to them.  As explained, the CAC generically alleges that certain third-party

12    applications and services collected users' personal information, but Plaintiffs fail to plead any

13    details regarding which applications and/or services collected *their* personal information.  *See supra*

14    Section IV.B.  "These particulars need to be alleged to state" fraud-based claims under the UCL,

15    CLRA, and common law.  *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012).

16    The decision in *Pirozzi* is instructive with respect to these multiple inadequacies.  There,

17    the plaintiff alleged that "notwithstanding Apple's representations regarding its protection of users'

18    personal information and the security of [its] operating system, 'Apple-approved apps have

19    downloaded and/or copied users' private [information].'"  *Id.* at 845.  In dismissing UCL, CLRA,

20    and common law fraud claims, the court explained that although the plaintiff generically claimed

21    that she "relied" upon the purported privacy and security representations by Apple, "she fail[ed] to

22    provide the particulars of *her own* experience reviewing or relying upon any of those statements."

23    *Id.* at 850 (emphasis added).  Moreover, "[n]owhere in the [complaint did] Plaintiff specify when

24    she was exposed to the statements or which ones she found material to her decisions to purchase

25    an Apple Device or App."  *Id.*  "Additionally, though the [complaint] identifie[d] a number of Apps

26    which allegedly downloaded other users' private information, Plaintiff [did] not identify which

27    Apps, if any, allegedly downloaded *her* personal information."  *Id.* (emphasis added).  Plaintiffs'

28    fraud-based claims here suffer from the same deficiencies and, therefore, should be dismissed.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

DEFENDANT ZOOM'S MOTION TO DISMISS
THE CONSOLIDATED AMENDED COMPLAINT
MASTER CASE NO. 5:20-CV-02155-LHK

1

**5.      Plaintiffs otherwise fail to state a claim under the UCL.**

2

**a.      Plaintiffs fail to state a claim under the UCL's "unlawful" prong.**

3      No predicate violation supports Plaintiff's "unlawful" prong UCL claim, which thus must

4  be dismissed.  Because the UCL's unlawful prong "borrows violations of other laws and treats them

5  as unlawful practices that the unfair competition law makes independently actionable," *Cel-Tech*

6  *Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (citations omitted), if there

7  is no violation of the predicate law, there can be no actionable claim under the UCL's "unlawful"

8  prong.  *Smith v. State Farm Mutual Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001).

9      To the extent Plaintiffs seek to rely on the other causes of action in this case (CAC ¶ 220),

10  as discussed above, these claims all fail, and thus the unlawful prong claim fails.  Plaintiffs also

11  seek to predicate their unlawful claim on alleged violations of The Children's Online Privacy

12  Protection Act ("COPPA"), The Online Privacy Protection Act, the California Invasion of Privacy

13  Act, and the Health Insurance Portability and Accountability Act.  Plaintiffs' mere listing of these

14  statutes without any factual tether between them and their own experiences is insufficient: "[i]f

15  plaintiffs wish to base a UCL 'unlawfulness' claim on any one statute," they must "plead with

16  particularity how the facts of this case pertain to [those] specific statute[s]."  *Baba v. Hewlett-*

17  *Packard Co.*, No. C 09-05946, 2010 WL 2486353, at *6 (N.D. Cal. June 16, 2010) (dismissing

18  UCL "unlawful" claim where factual allegations "are tied with insufficient particularity" to statutes

19  generally mentioned); *Hodges v. Apple Inc.*, No. 13-CV-01128, 2013 WL 4393545, at *7 (N.D.

20  Cal. Aug. 12, 2013) (same).[11]

21

**b.      Plaintiffs fail to state a claim under the UCL's "unfair" prong.**

22      Plaintiffs' "unfair" prong claim fails because it is based on the same alleged facts as the

23  deficient "fraudulent" prong claim.  *See Kearns*, 567 F.3d at 1127 (refusing to separately consider

24  "unfair" prong claim based on the same facts as "fraudulent" prong claim); *Williams v. Apple, Inc.*,

25  449 F. Supp. 3d 892, 910 (N.D. Cal. 2020) ("[W]hen plaintiffs' unfair prong claim[] overlap[s]

26  entirely with their claims of fraud, the plaintiffs' unfair prong claim cannot survive if the fraudulent

27

28

---

[11] Disconnected from Plaintiffs' UCL claim are several paragraphs of the CAC discussing COPPA, but they do not indicate how any particular Plaintiff's experience with Zoom meets the requirements for a COPPA violation.  (CAC ¶¶ 152-57.)

Cooley LLP
Attorneys at Law
San Francisco

24

**Defendant Zoom's Motion to Dismiss
The Consolidated Amended Complaint
Master Case No. 5:20-cv-02155-LHK**

1  prong claim fails." (quotation marks and citations omitted)).

2      Even were independent analysis of the "unfair" prong claim required, Plaintiffs' allegations

3  are conclusory and require dismissal.  The CAC does not tether Plaintiffs' unfair prong claim to

4  any specific public policy; nor does it even attempt to describe why Zoom's conduct is immoral,

5  unethical, oppressive, unscrupulous, or substantially injurious to consumers.   (CAC ¶ 221.)[12]

6  "Without more, such unsupported assertions fail to meet the particularity required under FRCP

7  9(b)."  *Marcus v. Apple Inc.*, No. C 14-03824, 2015 WL 151489, at *4 (N.D. Cal. Jan. 8, 2015);

8  *see also Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 858 (N.D. Cal. 2012) (dismissing

9  unfair prong claim because although plaintiff "ma[de] conclusory statements that [defendant's]

10  conduct is unfair, he [did] not reference any established public policy that [defendant's] actions

11  have violated or claim that the conduct is immoral, unethical, oppressive, or unscrupulous").

12      **I.      Plaintiffs Cannot Maintain a Claim for Unjust Enrichment (Count 5).**

13      Plaintiffs' "unjust enrichment claim does not properly state an independent cause of action

14  and must be dismissed."  *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 815 (N.D. Cal. 2011)

15  (citing, *inter alia*, *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011) ("Unjust enrichment

16  is not a cause of action, just a restitution claim")).  It also is "merely duplicative of statutory or tort

17  claims," *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D.

18  Cal. 2011)—here, the CLRA and UCL claims seeking restitution and other relief.

19  **V.      CONCLUSION**

20      Zoom respectfully requests that this Court dismiss the CAC in its entirety with prejudice.

21

22

23

24

25
_____
26  [12] *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1145-46 (N.D. Cal. 2013) (describing "(1) the tethering test, which requires that the public policy which is a predicate to . . . the unfair [claim] be tethered to specific constitutional, statutory, or regulatory provisions" and "(2) the balancing test,

27  which examines whether the challenged business practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of

28  the defendant's conduct against the gravity of the harm to the alleged victim." (quotation marks and citations omitted)).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25

DEFENDANT ZOOM'S MOTION TO DISMISS
THE CONSOLIDATED AMENDED COMPLAINT
MASTER CASE NO. 5:20-CV-02155-LHK

1

Dated:  September 14, 2020

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
MICHAEL G. RHODES (116127)
TRAVIS LEBLANC (251097)
KATHLEEN R. HARTNETT (314267)
BENJAMIN H. KLEINE (257225)
DANIELLE C. PIERRE (300567)
JOSEPH D. MORNIN (307766)
EVAN G. SLOVAK (319409)
KELSEY R. SPECTOR (321488)


By:  */s/ Michael G. Rhodes*
       Michael G. Rhodes (116127)

Attorneys for Defendant
ZOOM VIDEO COMMUNICATIONS, INC.

233749400

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

26

DEFENDANT ZOOM'S MOTION TO DISMISS
THE CONSOLIDATED AMENDED COMPLAINT
MASTER CASE NO. 5:20-CV-02155-LHK