COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
TRAVIS LEBLANC (251097)
(tleblanc@cooley.com)
KATHLEEN R. HARTNETT (314267)
(khartnett@cooley.com)
BENJAMIN H. KLEINE (257225)
(bkleine@cooley.com)
DANIELLE C. PIERRE (300567)
(dpierre@cooley.com)
JOSEPH D. MORNIN (307766)
(jmornin@cooley.com)
EVAN G. SLOVAK (319409)
(eslovak@cooley.com)
KELSEY R. SPECTOR (321488)
(kspector@cooley.com)
101 California Street, 5th Floor
San Francisco, California 94111-5800
Telephone:     +1 415 693 2000
Facsimile:     +1 415 693 2222

Attorneys for Defendant
ZOOM VIDEO COMMUNICATIONS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| *IN RE: ZOOM VIDEO COMMUNICATIONS INC. PRIVACY LITIGATION*,<br><br><br>This Documents Relates To:<br><u>All Actions</u> | Master Case No. 5:20-cv-02155-LHK<br><br>**DEFENDANT ZOOM VIDEO COMMUNICATIONS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        February 4, 2021<br>Time:        1:30 p.m.<br>Courtroom:   8, 4th Floor<br>Judge:       Hon. Lucy H. Koh |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF CONTENTS**
(continued)

**Page(s)**

NOTICE OF MOTION AND MOTION TO DISMISS ............................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ....................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

I.     INTRODUCTION ................................................................. 1

II.    BACKGROUND ...................................................................... 3

    A.    Zoom's Videoconferencing Services ................................................ 3

    B.    Plaintiffs' Allegations ............................................................... 3

III.   MOTION TO DISMISS STANDARD ................................................................. 4

IV.   ARGUMENT .................................................................................. 4

    A.    Section 230 Bars All of Plaintiffs' Claims to the Extent They Are
Predicated on Unwanted Meeting Disruptions. .......................................... 4

        1.    Zoom is a quintessential interactive computer service. .................. 5

        2.    Plaintiffs impermissibly seek to hold Zoom liable as the
publisher of content supplied by the meeting disruptors. ............... 6

        3.    Zoom does not contribute to meeting disruptions.......................... 8

    B.    Plaintiffs' Claims All Fail Because Plaintiffs Do Not Allege That
Zoom Harmed Plaintiffs.................................................................. 8

        1.    Plaintiffs fail to allege personal harm from alleged data
sharing. ........................................................................ 8

        2.    Plaintiffs fail to allege personal harm caused by Zoom from
meeting disruptions. ........................................................... 9

        3.    Plaintiffs fail to allege personal harm from Zoom's alleged
misrepresentations and omissions concerning encryption. ........... 10

    C.    Plaintiffs Fail to State a Claim for Invasion of Privacy Under the
California Constitution or Common Law (Count 1). ................................ 10

        1.    Plaintiffs have not alleged an actionable intrusion into any
material over which they have a legally protected privacy
interest. ....................................................................... 11

        2.    Plaintiffs fail to allege that Zoom's purported disclosure of
device data constituted an egregious breach of social norms. ...... 12

        3.    The two institutional Plaintiffs may not maintain privacy
claims. ........................................................................ 13

    D.    Plaintiffs' Negligence Claims Should Be Dismissed (Count 2). ............. 13

        1.    The economic loss rule bars Plaintiffs' claim to the extent
they seek recovery for financial injury.................................... 13

        2.    Plaintiffs fail to plead the elements of negligence. ....................... 15

    E.    Plaintiffs Cannot State a Claim for Breach of an Implied Contract
(Count 3). ............................................................................... 17

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFENDANT ZOOM'S MOTION
TO DISMISS THE FAC
MASTER CASE NO. 5:20-CV-02155-LHK

**TABLE OF CONTENTS**
(continued)

Page(s)

F.    Plaintiffs' Claim for Breach of the Implied Covenant Fails (Count 4). ................................................................................................ 18

G.    Plaintiffs Cannot State a Claim for Violation of the CDAFA (Count 8). ................................................................................................ 19

H.    Plaintiffs' Fraud-Based Claims Should Be Dismissed (UCL, CLRA, Fraudulent Concealment; Counts 6, 7, 9)Counts 6, 7, 9). ............ 20

    1.    Plaintiffs fail to plead with Rule 9(b) particularity. ...................... 20

    2.    Most of the Plaintiffs cannot bring claims under the CLRA or UCL. .................................................................................. 22

    3.    The four remaining Plaintiffs' CLRA damages claims fail. ......... 23

    4.    Plaintiffs otherwise fail to state a claim under the UCL. .............. 24

        a.    Plaintiffs fail to state a claim under the UCL's "unlawful" prong................................................................ 24

        b.    Plaintiffs fail to state a claim under the UCL's "unfair" prong. ................................................................ 24

I.    Plaintiffs' Unjust Enrichment and Quasi-Contract Claims Fail (Count 5). ................................................................................................ 25

V.    CONCLUSION ................................................................................................ 25

Cooley LLP
Attorneys at Law
San Francisco

ii

Defendant Zoom's Motion
to Dismiss the FAC
Master Case No. 5:20-cv-02155-LHK

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

4

**Cases**

5

*Aas v. Super. Ct.*,
   24 Cal. 4th 627 (2000) ................................................................................................ 16

6

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
   802 F. Supp. 2d 1070 (N.D. Cal. 2011) ...................................................................... 25

7

8

*In re Apple & ATTM Antitrust Litig.*,
   No. C 07-05152, 2010 WL 3521965 (N.D. Cal. July 8, 2010) .................................... 20

9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................... 4, 19

10

11

*Baba v. Hewlett-Packard Co.*,
   No. C 09-05946, 2010 WL 2486353 (N.D. Cal. June 16, 2010) ................................. 24

12

13

*Banga v. Equifax Info. Servs. LLC*,
   No. 14-CV-03038, 2015 WL 3799546 (N.D. Cal. June 18, 2015) .............................. 11

14

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009) .......................................................................... 5, 6, 7

15

16

*Batzel v. Smith*,
   333 F.3d 1018 (9th Cir. 2003) .................................................................................. 6

17

18

*Be In, Inc. v. Google Inc.*,
   No. 12-CV-03373, 2013 WL 5568706 (N.D. Cal. Oct. 9, 2013) ................................. 18

19

*Bell Atl. Corp v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................. 4

20

21

*Belluomini v. Citigroup, Inc.*,
   No. CV 13-01743, 2013 WL 3855589 (N.D. Cal. July 24, 2013) ............................... 12

22

23

*Bem v. Stryker Corp.*,
   No. C 15-2485, 2015 WL 4573204 (N.D. Cal. July 29, 2015) .................................... 16

24

25

*Brodsky v. Apple Inc.*,
   No. 19-CV-00712, 2019 WL 4141936 (N.D. Cal. Aug. 30, 2019) .............................. 19

26

*Burnell v. Marin Humane Soc'y*,
   No. CV 14-5635, 2015 WL 6746818 (N.D. Cal. Nov. 5, 2015) .................................. 16

27

28

*Cal. Grocers Ass'n, Inc. v. Bank of Am.*,
   22 Cal. App. 4th 205 (1994) ..................................................................................... 23

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEFENDANT ZOOM'S MOTION
TO DISMISS THE FAC
MASTER CASE NO. 5:20-CV-02155-LHK

1

## TABLE OF AUTHORITIES
(continued)

2

**Page(s)**

3

*Carafano v. Metrosplash.com, Inc.,*

4
    339 F.3d 1119 (9th Cir. 2003)..................................................................................... 5

5

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.,*
    222 Cal. App. 3d 1371 (1990)..................................................................................... 19

6

*Castillo v. Seagate Tech., LLC,*

7
    No. 16-cv-01958, 2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) ......................... 14

8

*Cattie v. Wal-Mart Stores, Inc.,*

9
    504 F. Supp. 2d 939 (S.D. Cal. 2007)........................................................................ 23

10

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,*
    20 Cal. 4th 163 (1999) ................................................................................................ 24

11

*Davidson v. Apple, Inc.,*

12
    No. 16-cv-04942, 2017 WL 976048 (N.D. Cal. Mar. 14, 2017)............................ 21

13

*Dent v. Nat'l Football League,*

14
    902 F.3d 1109 (9th Cir. 2018)................................................................................... 15

15

*Doe v. Internet Brands, Inc.,*
    824 F.3d 846 (9th Cir. 2016)....................................................................................... 7

16

*Doe v. Internet Brands, Inc.,*

17
    No. CV 12-3626, 2016 U.S. Dist. Lexis 192144 (C.D. Cal. Nov. 14, 2016)........................ 15

18

*Doe v. Kik Interactive, Inc.,*

19
    No. 20-60702, 2020 WL 5156641 (S.D. Fla. Aug. 31, 2020)................................... 8

20

*Doe v. MySpace, Inc.,*
    528 F.3d 413 (5th Cir. 2008)....................................................................................... 7

21

*Dohrmann v. Intuit, Inc.,*

22
    823 F. App'x 482 (9th Cir. 2020) .............................................................................. 17

23

*Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of Cal.,*
    SA CV 15-0736, 2016 WL 6892140 (C.D. Cal. Nov. 22, 2016)........................... 18

24

*Dyroff v. Ultimate Software Grp., Inc.,*

25
    No. 17-cv-05359, 2017 WL 5665670 (N.D. Cal. Nov. 26, 2017), *aff'd*, 934

26
    F.3d 1093 (9th Cir. 2010)........................................................................................... 15

27

*Dyroff v. Ultimate Software Grp., Inc.,*
    934 F.3d 1093 (9th Cir. 2019)..................................................................................... 5

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

**DEFENDANT ZOOM'S MOTION
TO DISMISS THE FAC
MASTER CASE NO. 5:20-CV-02155-LHK**

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Elias v. Hewlett-Packard Co.*,

4

903 F. Supp. 2d 843 (N.D. Cal. 2012) ................................................................. 25

5

*Ellsworth v. U.S. Bank, N.A.*,
908 F. Supp. 2d 1063 (N.D. Cal. 2012) ............................................................... 17

6

*In re Facebook Internet Tracking Litig.*,

7

263 F. Supp. 3d 836 (N.D. Cal. 2017) ................................................................. 11

8

*In re Facebook Privacy Litig.*,

9

572 F. App'x 494 (9th Cir. 2014) ......................................................................... 22

10

*In re Facebook Privacy Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) ................................................................. 23

11

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,

12

521 F.3d 1157 (9th Cir. 2008) (en banc) ......................................................... 5, 6, 8

13

*Fed. Agency of News LLC v. Facebook, Inc.*,

14

432 F. Supp. 3d 1107 (N.D. Cal. 2020) ................................................................. 5

15

*Fields v. Wise Media, LLC*,
No. C 12-05160, 2013 WL 3812001 (N.D. Cal. July 19, 2013) ........................... 15

16

*Fish v. Aviation*,

17

No. 18-cv-06671, 2019 WL 690286 (N.D. Cal. Feb. 19, 2019) ........................... 23

18

*Fraley v. Facebook, Inc.*,

19

830 F. Supp. 2d 785 (N.D. Cal. 2011) ................................................................. 25

20

*Frezza v. Google Inc.*,
No. 12-CV-00237, 2012 WL 5877587 (N.D. Cal. Nov. 20, 2012) ...................... 23

21

*Gitson v. Trader Joe's Co.*,

22

No. 13-cv-01333, 2014 WL 1048640 (N.D. Cal. Mar. 14, 2014)......................... 21

23

*Goddard v. Google, Inc.*,

24

640 F. Supp. 2d 1193 (N.D. Cal. 2009) ................................................................. 8

25

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) ............................................................... 19

26

*In re Google Android Consumer Privacy Litig.*,

27

No. 11-MD-02264, 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013)...................... 14

28

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ........................................................... 11, 18

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

**DEFENDANT ZOOM'S MOTION
TO DISMISS THE FAC
MASTER CASE NO. 5:20-CV-02155-LHK**

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

3

4

*Green v. Am. Online,*
318 F.3d 465 (3d Cir. 2003) ............................................................................................. 7

5

*Greystone Homes, Inc. v. Midtec, Inc.,*
168 Cal. App. 4th 1194 (2008) ........................................................................................ 14

6

7

*Hartmann v. Zoom Video Commc'ns, Inc.,*
No. 5:20-cv-02620-LHK (filed April 15, 2020) ............................................................. 24

8

9

*Hernandez v. Hillsides, Inc.,*
47 Cal. 4th 272 (2009) .................................................................................................... 12

10

*Herrick v. Grindr, LLC,*
306 F. Supp. 3d 579 (S.D.N.Y. 2018), *aff'd* 765 F. App'x 586 (2d Cir. 2019) ...................... 7

11

12

*Herskowitz v. Apple Inc.,*
940 F. Supp. 2d 1131 (N.D. Cal. 2013) .......................................................................... 25

13

14

*Hill v. NCAA,*
7 Cal. 4th 1 (1994) ................................................................................................... 12, 13

15

*Hill v. Roll Int'l Corp.,*
195 Cal. App. 4th 1295 (2011) ....................................................................................... 25

16

17

*Hodges v. Apple Inc.,*
No. 13-CV-01128, 2013 WL 4393545 (N.D. Cal. Aug. 12, 2013) ....................................... 24

18

19

*Holly v. Alta Newport Hosp., Inc.,*
No. 2:19-cv-07496, 2020 WL 1853308 (C.D. Cal. Apr. 10, 2020) ...................................... 17

20

*Hunt v. Wash. State Apple Advert. Comm'n,*
432 U.S. 333 (1977) ....................................................................................................... 17

21

22

*InfoStream Grp., Inc. v. Paypal, Inc.,*
No. C 12-748, 2012 WL 3731517 (N.D. Cal. Aug. 28, 2012) ............................................. 21

23

*Ion Equip. Corp. v. Nelson,*
110 Cal. App. 3d 868 (1980) .......................................................................................... 13

24

25

*In re iPhone App. Litig.,*
No. 11-MD-02250, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ........................... 16, 20, 23

26

27

*In re iPhone Application Litig.,*
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........................................................................... 13

28

*J'Aire Corp. v. Gregory,*
24 Cal. 3d 799 (1979) ..................................................................................................... 14

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vi

**DEFENDANT ZOOM'S MOTION
TO DISMISS THE FAC
MASTER CASE NO. 5:20-CV-02155-LHK**

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Jane Doe No. 1 v. Backpage.com, LLC,*
  817 F.3d 12 (1st Cir. 2016) .......................................................................................... 7

*Kalitta Air, L.L.C. v. Cent. Tex. Airborne Sys., Inc.,*
  315 F. App'x 603 (9th Cir. 2008) .............................................................................. 14

*Kearns v. Ford Motor Co.,*
  567 F.3d 1120 (9th Cir. 2009)................................................................................... 20

*Klayman v. Zuckerberg,*
  753 F.3d 1354 (D.C. Cir. 2014) ................................................................................ 15

*Laster v. T-Mobile USA, Inc.,*
  407 F. Supp. 2d 1181 (S.D. Cal. 2005), *aff'd*, 252 F. App'x 777 (9th Cir. 2007) ................. 23

*Low v. LinkedIn Corp.,*
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...................................................... *passim*

*Marcus v. Apple Inc.,*
  No. C 14-03824, 2015 WL 151489 (N.D. Cal. Jan. 8, 2015) ................................. 25

*Mega RV Corp. v. HWH Corp.,*
  225 Cal. App. 4th 1318 (2014)................................................................................... 15

*Moreno v. Hanford Sentinel, Inc.,*
  172 Cal. App. 4th 1125 (2009) .................................................................................. 13

*Neubronner v. Milken,*
  6 F.3d 666 (9th Cir. 1993).......................................................................................... 21

*Phillips v. Apple Inc.,*
  No. 15-CV-04879, 2016 WL 1579693 (N.D. Cal. Apr. 19, 2016) ......................... 21

*Pirozzi v. Apple Inc.,*
  913 F. Supp. 2d 840 (N.D. Cal. 2012) ...................................................................... 22

*R Power Biofuels, LLC v. Chemex LLC,*
  No. 16-cv-00716, 2016 WL 6663002 (N.D. Cal. Nov. 11, 2016) .......................... 13

*Roling v. E\*Trade Sec., LLC,*
  756 F. Supp. 2d 1179 (N.D. Cal. 2010) .................................................................... 18

*Rutherford Holdings, LLC v. Plaza Del Rey,*
  223 Cal. App. 4th 221 (2014)..................................................................................... 25

*Sanchez v. Lending Tree LLC,*
  No. 10CV1593, 2010 WL 3983390 (S.D. Cal. Oct. 12, 2010) ............................... 15

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*SCC Acquisitions, Inc. v. Super. Ct.*,
    243 Cal. App. 4th 741 (2015).............................................................................. 13

4

5

*Schauer v. Mandarin Gems of Cal., Inc.*,
    125 Cal. App. 4th 949 (2005).............................................................................. 22

6

*Schwarzkopf v. Int'l Bus. Machines, Inc.*,
    No. C 08-2715, 2010 WL 1929625 (N.D. Cal. May 12, 2010) ............................ 17

7

8

*Sikhs for Justice "SFJ," Inc. v. Facebook, Inc.*,
    144 F. Supp. 3d 1088 (N.D. Cal. 2015) ................................................................. 8

9

10

*Sion v. SunRun, Inc.*,
    No. 16-cv-05834, 2017 WL 952953 (N.D. Cal. Mar. 13, 2017)............................ 16

11

*Smith v. State Farm Mutual Auto. Ins. Co.*,
    93 Cal. App. 4th 700 (2001)................................................................................ 24

12

13

*Smith v. Super. Ct.*,
    10 Cal. App. 4th 1033 (1992).............................................................................. 20

14

15

*Snapkeys, Ltd. v. Google LLC*,
    442 F. Supp. 3d 1196 (N.D. Cal. 2020) ............................................................... 19

16

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    903 F. Supp. 2d 942 (S.D. Cal. 2012) .................................................................. 16

17

18

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    996 F. Supp. 2d 942 (S.D. Cal. 2014) ................................................... 14, 15, 16

19

20

*Stratton Oakmont, Inc. v. Prodigy Services Co.*,
    1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995)................................................... 6

21

*Sunbelt Rentals, Inc. v. Victor*,
    43 F. Supp. 3d 1026 (N.D. Cal. 2014) ................................................................. 19

22

23

*Tarasoff v. Regents of Univ. of Cal.*,
    17 Cal.3d 425 (1976) .......................................................................................... 15

24

25

*Terpin v. AT&T Mobility, LLC*,
    399 F. Supp. 3d 1035 (C.D. Cal. 2019)................................................................ 16

26

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
    315 F. Supp. 3d 1147 (C.D. Cal. 2018)................................................................ 19

27

28

*Ting v. AT&T*,
    319 F.3d 1126 (9th Cir. 2003) ............................................................................ 23

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

3

4

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .................................................................................. 20

5

*Von Grabe v. Sprint PCS*,
312 F. Supp. 2d 1285 (S.D. Cal. 2003) ..................................................................... 23

6

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ........................................................................ 12

7

8

*Yunker v. Pandora Media, Inc.*,
No. 11-CV-03113, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ........................... 14

9

*Zeran v. Am. Online, Inc.*,
129 F.3d 327 (4th Cir. 1997) ....................................................................................... 5

10

11

**Statutes**

12

47 U.S.C. § 230 ............................................................................................................ *passim*

13

Cal. Bus. & Prof. Code § 17204 .......................................................................................... 23

14

Cal. Civ. Code
§ 1761(d) ............................................................................................................ 22
§ 1782(a) ............................................................................................................ 23
§ 3294 .................................................................................................................. 20

15

16

17

Cal. Pen. Code § 502 ................................................................................................... 19, 20

18

**Other Authorities**

19

Federal Rule of Civil Procedure
9(b) ..................................................................................................................... 21
12(b)(6) ............................................................................................................. 1, 4

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE that on February 4, 2021, at 1:30 p.m. or as soon thereafter as this motion may be heard before the Honorable Judge Lucy H. Koh in Courtroom 8 of the United States District Court for the Northern District of California, 280 South First Street, San Jose, California, 4th Floor, Defendant Zoom Video Communications, Inc. ("Zoom") will and hereby does move the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the First Amended Consolidated Class Action Complaint ("FAC") filed by Plaintiffs (ECF No. 126). Zoom moves to dismiss on the basis that the FAC fails to state claims on which relief may be granted. This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice filed herewith, all pleadings and papers on file in this matter, and other matters as may be presented to the Court.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether the FAC states a claim upon which relief may be granted.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

In an effort to capitalize on Zoom's explosive growth during the COVID-19 pandemic, Plaintiffs seek to hold Zoom liable on behalf of a nationwide class under a scattershot array of loosely related factual and legal theories, largely drawn from sensationalist news reports. The FAC is Plaintiffs' third attempt to state claims upon which relief may be granted, but they still fail to do so.[1]  Instead, the FAC largely recycles the same flawed claims as Plaintiffs' original consolidated complaint ("CAC") (ECF No. 114) with a few minor additional factual allegations. None fixes the basic problems with their approach, including their failure to allege any personal harm caused by Zoom. This inadequate amendment in the face of Zoom's initial motion to dismiss confirms that Plaintiffs do not have violations of California law to pursue. The FAC should be dismissed in full.

Prior to becoming a ubiquitous tool for video chats and meetings during the pandemic, Zoom's platform—founded in 2011 with the mission of making video and remote communications frictionless—was primarily designed for business customers and institutions, which are typically

---

[1] Prior to the FAC and CAC, most Plaintiffs also filed individual, pre-consolidation complaints.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**DEFENDANT ZOOM'S MOTION TO
DISMISS THE FAC
MASTER CASE NO. 5:20-CV-02155-LHK**

1    armed with dedicated IT departments.  Virtually overnight, the pandemic dramatically expanded

2    the number of Zoom users and added categories of consumers well beyond its established business

3    customer base—including individuals, families, schools, churches, government agencies, and

4    others seeking to connect and remain operational during the pandemic's stay-in-place paradigm.

5         Facing skyrocketing growth in use, Zoom has worked tirelessly since the pandemic's onset

6    to keep its services operational and secure, while developing and deploying extensive privacy and

7    security enhancements to address new challenges caused by the massive uptick in non-corporate

8    usage.   Zoom tackled these challenges quickly, directly, and—critically—in an open and

9    transparent manner.  Zoom did not follow the traditional playbook.  Rather, Zoom and its CEO held

10   weekly townhalls ("Ask Eric Anything" webinars) in which the company candidly discussed its

11   efforts to enhance privacy and security.   Further, unlike the "data-brokerage strategy" Plaintiffs

12   claim other internet companies have (*see, e.g.*, FAC ¶ 117), Zoom's business model is based on

13   generating revenue by selling subscriptions, not user data.

14        Against this background, Plaintiffs—apparently new users of Zoom during the pandemic—

15   seek to hold Zoom liable for an assortment of alleged issues on behalf of an unsustainable

16   nationwide class.  Plaintiffs' claims center on three main categories of conduct: (1) Zoom's alleged

17   unauthorized data sharing with third parties—namely Facebook, Google, and LinkedIn—through

18   widely available functionalities designed to integrate those platforms with numerous applications

19   like Zoom; (2)  Zoom's alleged failure to prevent unwanted meeting disruptions by third parties—

20   *i.e.*, "Zoombombings;"  and (3) Zoom's alleged misrepresentations about its encryption protocols.

21        The FAC is Plaintiffs' third attempt to state their claims.  Yet again, they strike out.  No

22   Plaintiff alleges that Zoom jeopardized any of their own personal data through alleged sharing with

23   a third party.  And Plaintiffs cannot hold Zoom responsible for meeting disruptions by independent,

24   wrongfully acting third parties, including because the Communications Decency Act, 47 U.S.C.

25   § 230 ("Section 230" or "CDA") immunizes Zoom for such third-party content.   Finally, no

26   Plaintiff alleges that they ever received, reviewed, or relied upon any specific Zoom representations

27   concerning encryption.  In short, Plaintiffs fail to allege facts sufficient to show cognizable harm

28   to any Plaintiff and otherwise fail sufficiently to plead the elements of the nine causes of action at

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANT ZOOM'S MOTION TO
DISMISS THE FAC
MASTER CASE NO. 5:20-CV-02155-LHK

issue.  The FAC should be dismissed in full, with prejudice.

## II.        BACKGROUND[2]

### A.        Zoom's Videoconferencing Services

Zoom offers "[s]implified video conferencing and messaging across any device." (FAC ¶ 65.)  Although one need not register with Zoom to join a Zoom meeting, Zoom offers various tiers of membership for registered users, including Basic, Pro, Business, and Enterprise, with the subscription costs ranging in price based on tier from free to $19.99 per month per license.  (*Id.* ¶ 66.)[3]  Zoom's "published privacy policy" applies to both free and paying users.  (*Id.*)

Arranging a Zoom meeting is intentionally straightforward—a host (who must be a registered user) generates a meeting link and circulates it to the intended participants.  (FAC ¶ 69.)  Where a user has already installed the Zoom application ("App") on their device, clicking on the meeting link directs the user to the Zoom App associated with that device to join the meeting.  (*Id.* ¶ 71.)  Alternatively, participants may join a meeting from their computer via web browser, or from their telephone as a voice-only participant, without the need to download the Zoom App.  (*Id.*)

### B.        Plaintiffs' Allegations

The operative Complaint is now the FAC, which is largely the same as its predecessor CAC (ECF No. 114), to which Plaintiffs did not respond, instead filing the FAC.  The fourteen named Plaintiffs—twelve individuals (including one minor) and two entities—allege that on unspecified dates, each of them accessed Zoom's services and that all but the minor Plaintiff "registered with Zoom as a user."  (FAC ¶¶ 18, 22, 26, 30, 34-35, 40, 44, 47, 51, 54, 57, 59.)

Plaintiffs claim that Zoom engaged in the unauthorized transmission of users' personal and private information through widely available integration functionalities with third-party platforms, including Facebook (via the iOS app), Google (via the Android app), and LinkedIn (via its Sales Navigator feature ("SNAP")).  (FAC ¶¶ 5, 73-127.)  Plaintiffs also allege, in passing and with no details, transfer of user data from Zoom to "hotjar, Zendesk, AdRoll, Bing, and others."  (*Id.* ¶ 128.)

---

[2] Zoom does not concede the alleged legal or factual bases of liability and reserves all rights to deny liability in this matter.  However, for present purposes, Plaintiffs' allegations must be taken as true.
[3] As indicated on Zoom's website, the Basic, Pro, and Business offerings can be purchased "off the shelf" through an online sign-up flow, whereas Enterprise accounts are obtained through contacting Zoom and negotiating an arrangement with Zoom.

1    Plaintiffs do not allege how any such transmission poses risk or harm to them (or what that harm

2    might be).  Rather, Plaintiffs speculate that such arrangements are "used to target and profile them

3    with unwanted and/or harmful content."  (*Id.* ¶ 6.)  Nowhere do Plaintiffs allege that any

4    information of *theirs* was disclosed or that Zoom harmed Plaintiffs in any way.  (*Id.* ¶¶ 17-59.)

5         Plaintiffs  allege that Zoom failed to prevent meeting disruptions by third-party bad actors.

6    (FAC ¶¶ 9, 37-38, 41-42, 45, 49, 173-183.)  Plaintiffs acknowledge that these disruptive actors and

7    their alleged content are not associated with Zoom or its services.  (*Id.* ¶ 173.)

8         Plaintiffs also allege they used Zoom's services in reliance on Zoom's representations

9    regarding the privacy and security of its services, namely with respect to encryption.  (*Id.* ¶¶ 18-19,

10   22-23, 26, 28, 30, 34-35, 40, 44, 47, 51, 54, 57, 59.)  Plaintiffs do not identify any specific

11   representations they allegedly reviewed or when they allegedly reviewed them.  (*Id.* ¶¶ 17-59.)

12        Finally, Plaintiffs contort press articles and Zoom's Privacy Policy to allege that Zoom

13   engages in "unauthorized interception and use of video sessions, chats, and transcripts," speculating

14   that Zoom "may" use this content to train "chat-bots"—allegations that have no factual support in

15   the sources cited by Plaintiffs.  (FAC ¶¶ 149-158) (capitalization removed).

16        Plaintiffs seek to represent a nationwide class of all Zoom users, or alternatively, a minor

17   sub-class (*id.* ¶¶ 190-193), and to apply California's statutory and common law nationwide.

18   **III.   MOTION TO DISMISS STANDARD**

19        To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that

20   is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007).  "Threadbare recitals

21   of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to

22   save a claim from dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

23   **IV.   ARGUMENT**

24       **A.   Section 230 Bars All of Plaintiffs' Claims to the Extent They Are Predicated on
             Unwanted Meeting Disruptions.[4]**

25

26        Under Section 230 of the CDA, Zoom is immune for liability arising from unwanted

27

28   _____
     [4] Plaintiffs' invasion of privacy (Count 1) and negligence (Count 2) claims are explicitly predicated
     on meeting disruptions (FAC ¶¶ 208, 216) and are barred in that respect by Section 230.  To the

Cooley LLP
Attorneys at Law
San Francisco

4

DEFENDANT ZOOM'S MOTION TO
DISMISS THE FAC
MASTER CASE NO. 5:20-CV-02155-LHK

meeting disruptions committed by third parties—a phenomenon that affects many online video and text chat services, including those, like Zoom, with extensive security features to prevent such disruptions.  Section 230 "immunizes providers of interactive computer services against liability arising from content created by third parties." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc).  This immunity is "robust" and reflects Congress's "policy choice not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003) (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330-31 (4th Cir. 1997)).

Under Section 230(c)(1), "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  This provision grants immunity to "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat . . . as a publisher or speaker (3) of information provided by another information content provider." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009).  Under this well-established test, Plaintiffs' claims are barred to the extent that Plaintiffs seek to hold Zoom liable for third-party meeting disruptions. *See id.* at 1102-06 (affirming dismissal of negligent undertaking claim as barred by Section 230).

### 1.     Zoom is a quintessential interactive computer service.

Zoom is an "interactive computer service," defined by Section 230 as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server."  47 U.S.C. § 230(f)(2).  Courts interpret this term "expansively," with websites and online messaging boards being the "prototypical service[s] qualifying for CDA immunity." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019).  As the video equivalent of an online messaging board and chatroom, Zoom indisputably qualifies as an interactive computer service.  (*See* FAC ¶¶ 2, 4 ("Zoom is a supplier of video conferencing services" that has hundreds of millions of users)); *see, e.g., Fed. Agency of News LLC v. Facebook*,

---

extent other claims are also (inexplicitly) based on meeting disruptions, those claims are also barred in that respect.

1   *Inc.*, 432 F. Supp. 3d 1107, 1117 (N.D. Cal. 2020) (Facebook, as "a 'web-based platform or service'

2   with '2.2 billion monthly users,'" was "unquestionably an interactive computer service"). Plaintiffs

3   impermissibly seek to hold Zoom liable as the publisher of content supplied by the meeting

4   disruptors.

5         Section 230 applies because Plaintiffs' meeting disruption claims seek to hold Zoom liable

6   as a publisher of content supplied by the disrupters.  "What matters is not the name of the cause of

7   action" but instead "whether the cause of action inherently requires the court to treat the defendant

8   as the 'publisher or speaker' of content provided by another."  *Barnes*, 570 F.3d at 1101-02.

9         Here, Plaintiffs attempt to hold Zoom liable for alleged harm from content posted by third

10   parties during meeting disruptions, which Plaintiffs describe as "bad actors hijack[ing] Zoom

11   videoconferences, displaying pornography, screaming racial epitaphs [sic], or engaging in similarly

12   despicable conduct."  (FAC ¶ 9.)  Plaintiffs allege that Zoom (1) should have done more to prevent

13   and (2) failed to warn users about these meeting disruptions.  (*Id.* ¶¶ 177, 181, 216.)  Neither of

14   these arguments permits liability against Zoom under Section 230.

15         ***First***, to the extent Plaintiffs' meeting disruption claims hinge on the prevention or blocking

16   of user-generated content, that theory of liability runs headlong into Section 230.[5]  Courts must

17   "scrutinize particularly closely any claim that can be boiled down to the failure of an interactive

18   computer service to edit or block user-generated content that it believes was tendered for posting

19   online, as that is the very activity Congress sought to immunize."  *Roommates*, 521 F.3d at 1172

20   n.32 (citation omitted).  Zoom is "perforce immune under section 230" for any claim that "can be

21   boiled down to deciding whether to exclude material that third parties seek to post online."  *Id.* at

22   1170-71; *Barnes*, 570 F.3d at 1102 (same).

23         Thus, numerous courts have held—in reasoning directly applicable here—that, pursuant to

24   Section 230, platforms may not be held liable for failing to block unwanted users from accessing

---

[5] Congress passed Section 230 to address the imposition of liability on an online platform for failing to screen and control content. *Stratton Oakmont, Inc. v. Prodigy Services Co.*, 1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995).  In *Stratton*, the court held Prodigy liable for defamatory comments posted on its bulletin boards by a user in part because Prodigy *advertised its practice of monitoring content on its boards* and because it actively screened message postings.  Congress enacted Section 230 to immunize such services from liability for failing to fully prevent inappropriate content from being posted.  *See Batzel v. Smith*, 333 F.3d 1018, 1029 (9th Cir. 2003) (summarizing history).

Cooley LLP
Attorneys at Law
San Francisco

6

Defendant Zoom's Motion to
Dismiss the FAC
Master Case No. 5:20-cv-02155-LHK

the site and undertaking malicious actions, even where plaintiffs have argued they seek only to impose liability for inadequate security or failing to police users.  For example, in *Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008*)*, a minor was sexually assaulted by someone she met on MySpace and sued, alleging that MySpace "failed to implement basic safety measures" and was "negligent for not taking more precautions."  *Id.* at 416, 421.  The court held that Section 230 barred the claim because it sought to hold MySpace liable in its "publishing, editorial, and/or screening capacities."  *Id.* at 420; *see also Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 21 (1st Cir. 2016) (finding immunity and collecting cases where courts "rejected claims that attempt to hold website operators liable for failing to provide sufficient protections to users from harmful content created by others."); *Green v. Am. Online*, 318 F.3d 465, 470 (3d Cir. 2003) (barring claims under Section 230 based on receiving computer virus and derogatory comments in an AOL chatroom, despite plaintiff's framing as AOL's "fail[ing] to properly police its network for content transmitted by its users").

As in these cases, although Plaintiffs attempt to frame their allegations in terms of an alleged failure to provide reasonable security, in substance Plaintiffs seek to hold Zoom liable for failing to block or remove third-party intruders' content.  (*See* FAC ¶¶ 208, 216.)  As the Ninth Circuit has recognized, "removing content is something publishers do," and imposing "liability on the basis of such conduct necessarily involves treating the liable party as a publisher of the content it failed to remove."  *Barnes*, 570 F.3d at 1103 (finding immunity).

***Second***, Plaintiffs cannot avoid Section 230 with cursory allegations that Zoom "fail[ed] to warn users of the risk of Zoombombing."  (FAC ¶¶ 216-217.)  Where, as here, the alleged liability is based on alleged harm from on-platform third-party content, Section 230 applies regardless of whether Plaintiffs characterize their claim as a "failure to warn."  *Cf. Doe v. Internet Brands, Inc.*, 824 F.3d 846, 851-52 (9th Cir. 2016) (holding that "failure to warn" claim was not barred by Section 230 where claim did not treat the platform as a "'publisher or speaker' of content someone posted on the [website]" and where the third-party wrongdoers "are not alleged to have posted" anything themselves); *see Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 588, 592 (S.D.N.Y. 2018), *aff'd* 765 F. App'x 586 (2d Cir. 2019) (failure to warn "about user-generated content itself" was "inextricably related to" defendant's "publishing functions" and was accordingly barred by Section

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

**DEFENDANT ZOOM'S MOTION TO
DISMISS THE FAC
MASTER CASE NO. 5:20-CV-02155-LHK**

230); *Doe v. Kik Interactive, Inc.*, No. 20-60702, 2020 WL 5156641, at *8 (S.D. Fla. Aug. 31, 2020) (similar).

### 2.      Zoom does not contribute to meeting disruptions.

Section 230 is also applicable because Zoom's platform merely displays third-party content. "The CDA immunizes an interactive computer service provider that 'passively displays content that is created entirely by third parties.'" *Sikhs for Justice "SFJ," Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1094 (N.D. Cal. 2015) (quoting *Roommates*, 521 F.3d at 1162); *see also* 47 U.S.C. § 230(c)(1).  The FAC acknowledges, as it must, that meeting disruptions consist of third-party content that Zoom does not develop.  (FAC ¶¶ 9, 37-38, 41-42, 45, 49, 55, 173-79); *see also Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1196-97 (N.D. Cal. 2009) (providing "neutral tools" insufficient to remove Section 230 immunity).  Because Zoom plays no alleged role whatsoever in developing the third-party content displayed on its platform (let alone any offensive content from third-party bad actors), but instead engages in the quintessential type of publisher activity that Section 230 immunizes, the Court should dismiss all of Plaintiffs' claims (including Counts 1 and 2) to the extent they are predicated on meeting disruptions.  *See supra* n.4.

### B.      Plaintiffs' Claims All Fail Because Plaintiffs Do Not Allege That Zoom Harmed Plaintiffs.

Each of Plaintiffs' nine causes of action requires the allegation of some form of personal harm to Plaintiffs to be viable.  Yet, despite having added three new Plaintiffs and a few new allegations, Plaintiffs have still failed to plead such harm under any of their three factual theories, instead relying on vague allegations of injury to Zoom users generally or other non-cognizable harm.  Plaintiffs' failure to allege their own personal harm requires dismissal.

### 1.      Plaintiffs fail to allege personal harm from alleged data sharing.

Plaintiffs' first factual theory is that Zoom allegedly unlawfully transmitted user data from Zoom to Facebook (FAC ¶¶ 5, 73-105), Google (*id.* ¶¶ 106-110), and LinkedIn (*id.* ¶¶ 122-127). (*See* FAC ¶ 208 (Count 1, Invasion of Privacy); ¶ 216 (Count 2, Negligence); ¶ 233 (Count 3, Breach of Implied Contract); ¶ 242 (Count 4, Implied Covenant); ¶ 248 (Count 5, Unjust Enrichment/Quasi-Contract); ¶ 253 (Count 6, Unfair Competition Law (UCL); ¶¶ 282-287 (Count

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFENDANT ZOOM'S MOTION TO
DISMISS THE FAC
MASTER CASE NO. 5:20-CV-02155-LHK

8, California Computer Fraud and Abuse Act (CDAFA).)[6]  Yet, Plaintiffs fail to plead any facts indicating that *their* data was disclosed without authorization or that they were harmed as a result.

Specifically, they do not plead that they used Zoom in a way that implicates the alleged dating sharing—such as using the iOS app (the only interface through which the Facebook SDK allegedly operates (FAC ¶ 5)), or the Android app on a device that does not restrain the alleged Google permissions, as Plaintiffs concede some devices do (*id.* ¶ 110).  Nor do they allege that the Google Firebase Analytics SDK actually sent any Plaintiffs' information to Google; that they ever were in a meeting in which LinkedIn SNAP was activated or that they sought anonymity in such a meeting; or that any of their allegedly shared data was private (*id.* ¶¶ 17-59).

Plaintiffs also do not plead any cognizable harm that they personally suffered because of the alleged data sharing.  For example, Plaintiffs allege that they must now more closely monitor their personal information and that this information is now less valuable (FAC ¶ 221), but they fail to offer sufficient allegations connecting any alleged sharing to those purported harms; indeed, such a connection is implausible given the benign nature of the technical device data allegedly shared.

As explained further below with respect to the harm required for each cause of action at issue, Plaintiffs' failure to allege any data disclosure specific to *them* requires dismissal of all claims to the extent they rely on alleged data-sharing with third parties.  *See infra* Sections IV.C.1-3, IV.D.1-2, IV.E & n.13, IV.F, IV.G, IV.H.1-4.

### 2. Plaintiffs fail to allege personal harm caused by Zoom from meeting disruptions.

Plaintiffs' second factual theory is based on Zoom's alleged failure to prevent, and/or warn users about, unwanted third parties displaying offensive content in Zoom meetings.  (FAC ¶¶ 9, 37-38, 41-42, 45, 49, 55, 173-83.)  As explained above, *see supra* Section IV.A, Section 230 bars liability against Zoom under any cause of action under this theory.  Plaintiffs also have failed to allege cognizable injury caused by Zoom based on meeting disruptions: they have not shown that Zoom (as opposed to independent third parties) caused the alleged harm, *see supra* Section IV.A;

---

[6] Plaintiffs' Consumer Legal Remedies Act (CLRA) (Count 7) and Fraudulent Concealment (Count 9) claims do not appear to be based on alleged data sharing with third parties, but in any event also require Plaintiff-specific injury that Plaintiffs fail to plead.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFENDANT ZOOM'S MOTION TO
DISMISS THE FAC
MASTER CASE NO. 5:20-CV-02155-LHK

*infra* Section IV.C.3 (Invasion of Privacy), and they have not sufficiently alleged any cognizable damage, including emotional distress, *see infra* Section IV.D.2 (Negligence).

### 3. Plaintiffs fail to allege personal harm from Zoom's alleged misrepresentations and omissions concerning encryption.

Plaintiffs' final factual theory is that Zoom allegedly deceived Plaintiffs into believing that it provided end-to-end encryption when it allegedly did not and thus failed to provide adequate security.  (*See* FAC ¶ 208 (Count 1, Invasion of Privacy); ¶ 215 (Count 2, Negligence); ¶ 230 (Count 3, Implied Contract); ¶¶ 241-42 (Count 4, Implied Covenant); ¶ 248 (Count 5, Unjust Enrichment/Quasi-Contract); ¶ 253 (Count 6, UCL); ¶ 272 (Count 7, CLRA); ¶ 294 (Count 9, Fraudulent Concealment).)[7]  Yet Plaintiffs do not identify any specific representation or omission by Zoom about encryption—or any other security feature—that they relied on when purchasing or using Zoom's services.  (*Id.* ¶¶ 17-59.)  Instead, Plaintiffs admit that they used Zoom because they were required to.  (*Id.* ¶ 15 ("many people including Plaintiffs nonetheless *are required to use Zoom* for work, school, or other purposes" (emphasis added)).)  Plaintiffs' use of Zoom thus concededly has nothing to do with reliance on encryption- or security-related representations.

Plaintiffs likewise fail to allege that the alleged encryption deficiencies caused *them* any harm, such as any interception of their information.  (*Id.* ¶¶ 17-59.)  And half of the Plaintiffs admit that they used Zoom for free, and thus cannot allege that they even purchased a Zoom account, let alone incurred any costs or other detriment as a result of Zoom's alleged misrepresentations.  (*Id.*)  Thus, as explained below with respect to the harm required for each cause of action at issue, Plaintiffs' failure to allege any representation or harm specific to *them* regarding encryption requires dismissal of all claims to the extent they rely on alleged wrongdoing regarding encryption.  *See infra* Sections IV.C.1-3, IV.D.1-2, IV.E & n.13, IV.F, IV.H.1-4.

### C. Plaintiffs Fail to State a Claim for Invasion of Privacy Under the California Constitution or Common Law (Count 1).

"The California Constitution and the common law set a high bar for an invasion of privacy

---

[7] Plaintiffs' CDAFA (Count 8) claim does not appear to be based on alleged actions or omissions regarding encryption, but it would also require Plaintiff-specific injury that Plaintiffs fail to plead.

Cooley LLP
Attorneys at Law
San Francisco

10

Defendant Zoom's Motion to
Dismiss the FAC
Master Case No. 5:20-cv-02155-LHK

claim." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012).  To state a claim for invasion of privacy under the California Constitution, Plaintiffs must allege "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy." *Id.* at 1024 (citation omitted).  Similarly, to state a common law claim for invasion of privacy, "Plaintiff[s] must allege: (1) intrusion into a private place, conversation or matter (2) in a manner *highly offensive to a reasonable person*." *Id.* at 1025 (citation omitted).  Where, as here, both claims are alleged, "courts conduct a combined inquiry that considers '(1) the nature of any intrusion upon reasonable expectations of privacy, and (2) the offensiveness or seriousness of the intrusion.'" *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 846 (N.D. Cal. 2017) (citation omitted).[8]

### 1.    Plaintiffs have not alleged an actionable intrusion into any material over which they have a legally protected privacy interest.

Plaintiffs have failed to allege any facts at all regarding any private data of theirs that they contend Zoom disclosed to any third party, FAC ¶¶ 17-59, and therefore have failed to allege that Zoom committed an actionable intrusion.  ***First***, Plaintiffs do not allege that their own data was disclosed.  Instead, Plaintiffs conclusorily allege that Zoom disclosed the device data of other unspecified users (not Plaintiffs) when those other users accessed certain third-party applications and/or services (FAC ¶¶ 5, 73-128).  This is fatally insufficient.  *See, e.g.*, *Banga v. Equifax Info. Servs. LLC*, No. 14-CV-03038, 2015 WL 3799546, at *11 (N.D. Cal. June 18, 2015) (dismissing invasion of privacy claim where plaintiff "has not adequately alleged what, if any, offensive and objectionable facts about her were disclosed to third parties"); *Low*, 900 F. Supp. 2d at 1025 (similar).  And with respect to alleged disclosure via the LinkedIn SNAP, Plaintiffs' claim fails because they do not identify any meetings they attended in which LinkedIn SNAP was activated or allege that any nonpublic LinkedIn information was disclosed.  *See In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 829-30 (N.D. Cal. 2020) (dismissing invasion of privacy claim where

---

[8] While Plaintiffs' invasion of privacy claim contains a passing reference to the California Consumer Privacy Act (FAC ¶ 210), Plaintiffs do not plead such a claim (indeed, that claim was dropped in the CAC after having appeared in previous of Plaintiffs' individual complaints).  Zoom thus responds to the claim as arising only under the California Constitution and common law.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   plaintiffs did not identify specific conversations allegedly intercepted and recorded).

2   **Second**, Plaintiffs do not allege that legally protected data was disclosed.  Instead, Plaintiffs

3   simply characterize, without any elaboration or factual support, the purportedly disclosed device

4   data as "private," "personal," and "confidential" (FAC ¶ 211).  Yet the few descriptions Plaintiffs

5   elsewhere provide of the data allegedly at issue indicates that it is technical device data or publicly

6   available information (*see id.* ¶¶ 78-79, 86, 123)—not private, personal, or confidential

7   information.  And with respect to LinkedIn SNAP, Plaintiffs do not allege that they sought

8   anonymity while using Zoom.  (FAC ¶ 124.)  Such allegations are insufficient.  *See In re Yahoo*

9   *Mail Litig.*, 7 F. Supp. 3d 1016, 1041 (N.D. Cal. 2014) (dismissing invasion of privacy claims as

10  "fatally conclusory" because plaintiffs alleged that their "emails were 'private' without alleging

11  any facts related to what particular emails Yahoo intercepted, or the content within particular

12  emails"); *see also Google Assistant Privacy Litig.*, 457 F. Supp. 3d at 829-30.[9]

13              2.      **Plaintiffs fail to allege that Zoom's purported disclosure of device data**
14                      **constituted an egregious breach of social norms.**

15          Plaintiffs also have not alleged any conduct by Zoom amounting to an egregious breach of

16  social norms, as required for "[a]ctionable invasions of privacy."  *Hernandez v. Hillsides, Inc.*, 47

17  Cal. 4th 272, 295 (2009); *Hill v. NCAA*, 7 Cal. 4th 1, 37, 40 (1994).  Under established case law,

18  "[e]ven disclosure of very personal information has not been deemed an 'egregious breach of social

19  norms." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1038; *accord Belluomini v. Citigroup, Inc.*, No.

20  CV 13-01743, 2013 WL 3855589, at *6 (N.D. Cal. July 24, 2013).  As noted in the preceding

21  section, Plaintiffs appear to base their invasion of privacy claims on alleged disclosure of non-

22  sensitive device and profile data to third parties Facebook, Google, and LinkedIn.  (*E.g.*, FAC

23  ¶¶ 78-79 (device data, including IP address and iOS Advertiser ID, which are widely shared by

24  internet users), ¶ 86 (application and device data), ¶ 123 (LinkedIn profile data).)  Courts routinely

25  hold that allegations regarding the disclosure of similar data is insufficient to establish an

26  "egregious breach."  *See, e.g.*, *Low*, 900 F. Supp. 2d at 1025 (dismissing California constitutional

27
28  [9] Plaintiffs also baldly assert that Zoom transmits user data generally "to hotjar, Zendesk, AdRoll, Bing, and others," FAC ¶ 128, but allege no particulars of what data is transmitted or how or when these transmissions occur.  These conclusory allegations are insufficient to support a claim.

**DEFENDANT ZOOM'S MOTION TO
DISMISS THE FAC
MASTER CASE NO. 5:20-CV-02155-LHK**

and common law privacy claims based on alleged disclosure of users' numeric LinkedIn IDs and browsing histories; "[e]ven disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy claim"); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (dismissing California constitutional privacy claim based on alleged disclosure of each user's address, location, unique device identifier, gender, age, time zone, and information about app usage); *Moreno v. Hanford Sentinel, Inc.*, 172 Cal. App. 4th 1125, 1130 (2009) (concerning postings on MySpace.com: "[a] matter that is already public or that has previously become part of the public domain is not private").

Finally, to the extent Plaintiffs base their invasion of privacy claim on alleged unwanted meeting disruptions (FAC ¶¶ 9, 37–38, 41–42, 45, 49, 173–79, 208), those allegations do not implicate "conduct *by defendant* constituting a serious invasion of privacy." *Hill*, 7 Cal. 4th at 40 (emphasis added). Rather, according to Plaintiffs, the alleged meeting disruptions were committed by third-party bad actors who deliberately sought to circumvent Zoom's security features. (FAC ¶¶ 9, 37–38, 41–42, 173–79.) These actions cannot constitute "egregious breaches" by Zoom.

### 3.     The two institutional Plaintiffs may not maintain privacy claims.

The two institutional Plaintiffs—Saint Paulus and Oak Life—do not have privacy rights under the California constitution or common law, requiring dismissal of their claims. *See SCC Acquisitions, Inc. v. Super. Ct.*, 243 Cal. App. 4th 741, 755-56 (2015) ("corporations do not have a right of privacy protected by the California Constitution," which "protects the privacy rights of 'people' only"); *Ion Equip. Corp. v. Nelson*, 110 Cal. App. 3d 868, 878-79 (1980) ("[A] corporation cannot bring a cause of action for common law invasion of privacy").

### D.     Plaintiffs' Negligence Claims Should Be Dismissed (Count 2).

#### 1.     The economic loss rule bars Plaintiffs' claim to the extent they seek recovery for financial injury.

Plaintiffs cannot recover damages for economic injury under their negligence claim because "[u]nder the economic loss rule, 'purely economic losses are not recoverable in tort.'" *R Power Biofuels, LLC v. Chemex LLC*, No. 16-cv-00716, 2016 WL 6663002, at *4 (N.D. Cal. Nov. 11,

Cooley LLP
Attorneys at Law
San Francisco

13

**Defendant Zoom's Motion to
Dismiss the FAC
Master Case No. 5:20-cv-02155-LHK**

2016) (citation omitted).  This rule applies unless a plaintiff specifically alleges "(1) personal injury, (2) physical damage to property, (3) a 'special relationship' existing between the parties, or (4) some other common law exception to the rule."  *Kalitta Air, L.L.C. v. Cent. Tex. Airborne Sys., Inc.*, 315 F. App'x 603, 605 (9th Cir. 2008).  Plaintiffs plead purely economic losses and do not allege any of the exceptions.

Plaintiffs' negligence claim focuses on alleged (and fatally speculative) financial loss related to monitoring for fraudulent activity and the lost value of their device data.  (FAC ¶ 221.) These do not amount to property damage.  *See In re Google Android Consumer Privacy Litig.*, No. 11-MD-02264, 2013 WL 1283236, at *4 (N.D. Cal. Mar. 26, 2013) (holding that even alleged compromise of PII is not property damage for purposes of economic loss rule); *Yunker v. Pandora Media, Inc.*, No. 11-CV-03113, 2013 WL 1282980, at *4 (N.D. Cal. Mar. 26, 2013).[10]  Thus, the economic loss rule is triggered and bars Plaintiffs' claim.  *See, e.g., Castillo v. Seagate Tech., LLC*, No. 16-cv-01958, 2016 WL 9280242, at *5-6 (N.D. Cal. Sept. 14, 2016) (dismissing negligence claim as "[n]ot one of the plaintiffs suffered personal injury as a result of the data breach, and the damages they seek to recover are economic in nature").

Plaintiffs have likewise not alleged a "special relationship" with Zoom to avoid application of the economic loss rule, under which the following six factors apply:

> (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm.

*J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 804 (1979); *see In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 969 (S.D. Cal. 2014) (*Sony II*) (rejecting claim of special relationship based on "everyday consumer transactions").  The first factor does not favor an exception, as Plaintiffs are among "millions" they allege are similarly situated.  (FAC ¶ 146.) *See Greystone Homes, Inc. v. Midtec, Inc.*, 168 Cal. App. 4th 1194, 1230-31 (2008) (a "special relationship" does not exist where plaintiffs "were no different from any other purchaser of the

---

[10] While Plaintiffs also assert that they suffered emotional distress, Plaintiffs cannot recover for any such injury in this case.  *See infra* Section IV.D.2.

Cooley LLP
Attorneys at Law
San Francisco

14

Defendant Zoom's Motion to
Dismiss the FAC
Master Case No. 5:20-cv-02155-LHK

*same product*"); *Fields v. Wise Media, LLC*, No. C 12-05160, 2013 WL 3812001, at *5 (N.D. Cal. July 19, 2013).  With respect to the second, third, and fourth factors, Plaintiffs fail to specify what information of *theirs* was allegedly "compromised" by Zoom or "obtained by third parties without [their] consent," (FAC ¶ 219); *see supra* Section IV.B, and Plaintiffs' alleged injuries thus are too speculative to support the exception.  *See Sony II*, 996 F. Supp. 2d at 970-71.  Finally, the fifth and sixth factors also weigh against a special relationship, as courts generally attach moral blame only to conduct that is "reckless or purposeful," *Mega RV Corp. v. HWH Corp.*, 225 Cal. App. 4th 1318, 1342 (2014), and Plaintiffs do not allege such conduct here.  Nor is there a need to deter; Zoom has existing incentives to maintain its "relationship with [its users], [limit its] financial liability, [and protect its] reputation" by attending to security and privacy.  *Id.*

### 2.   Plaintiffs fail to plead the elements of negligence.

Plaintiffs' negligence claim also fails sufficiently to plead the well-established elements: (1) a legal duty of care, (2) breach of that duty, (3) that the breach proximately caused the plaintiff's injuries and (4) damages.  *Dent v. Nat'l Football League*, 902 F.3d 1109, 1117 (9th Cir. 2018). Plaintiffs' conclusory allegations regarding these elements are insufficient.

***First***, Plaintiffs fail to allege that any harm allegedly suffered was (i) caused by Zoom's (ii) breach of a duty owed.  *See Sony II*, 996 F. Supp. 2d at 964.  The FAC contains no non-conclusory factual allegations indicating that Zoom did not employ reasonable security measures (*e.g.*, FAC ¶ 216), and thus fails to plead a breach.  *See Sanchez v. Lending Tree LLC*, No. 10CV1593, 2010 WL 3983390, at *2 (S.D. Cal. Oct. 12, 2010) (allegation that defendant breached duty to protect personal information "is a conclusory statement and is therefore insufficient to establish the 'breach' element").[11]  This failure also means that Plaintiffs have failed sufficiently to allege that

---

[11] Plaintiffs' negligence claim likewise fails to the extent it is based on Zoom's alleged failure to warn about meeting disruptions.  (FAC ¶ 216.)  Not only is such a claim barred by Section 230, *see supra* Section IV.A.2, but California law imposes a duty to warn a potential victim of third-party harm only where the defendant has a "special relationship to either the person whose conduct needs to be controlled or . . . to the foreseeable victim of that conduct."  *Tarasoff v. Regents of Univ. of Cal.*, 17 Cal.3d 425, 435 (1976).  Plaintiffs have alleged neither, and the claim thus fails. *See Dyroff v. Ultimate Software Grp., Inc.*, No. 17-cv-05359, 2017 WL 5665670, at *14-15 (N.D. Cal. Nov. 26, 2017), *aff'd*, 934 F.3d 1093 (9th Cir. 2010); *see also Doe v. Internet Brands, Inc.*, No. CV 12-3626, 2016 U.S. Dist. Lexis 192144, at *12 (C.D. Cal. Nov. 14, 2016) (concluding, on remand from the Ninth Circuit, that plaintiff's failure to warn claim failed due to lack of duty); *Klayman v. Zuckerberg*, 753 F.3d 1354, 1359-60 (D.C. Cir. 2014).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFENDANT ZOOM'S MOTION TO
DISMISS THE FAC
MASTER CASE NO. 5:20-CV-02155-LHK

Zoom caused the alleged harm.  *See Bem v. Stryker Corp.*, No. C 15-2485, 2015 WL 4573204, at *1 (N.D. Cal. July 29, 2015) (dismissing negligence claim where plaintiff failed to plead facts showing defendant was negligent or how any such negligence caused or contributed to any specified injury); *Sony II*, 996 F. Supp. 2d at 964 (same); *Terpin v. AT&T Mobility, LLC*, 399 F. Supp. 3d 1035, 1044 (C.D. Cal. 2019) (same).

**Second**, Plaintiffs fail to allege "appreciable, nonspeculative, present injury"—"an essential element" for a negligence claim.  *Aas v. Super. Ct.*, 24 Cal. 4th 627, 646 (2000).  Plaintiffs assert that Zoom "expos[ed them] to a heightened, imminent risk of unauthorized access to their private and personal data and conversations, fraud, theft, and other financial harm."  (FAC ¶ 221.)  Such a "threat of future harm" is insufficient.  *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 963 (S.D. Cal. 2012); *see, e.g.*, *In re iPhone App. Litig.*, No. 11-MD-02250, 2011 WL 4403963, at *4-5, *9 (N.D. Cal. Sept. 20, 2011) (similar).

Plaintiffs' allegations of present harm fare no better.  They allege that they "must now more closely protect their private and personal data," but have not alleged actual purchase of any service or other incurred costs (FAC ¶ 221), much less that such self-inflicted costs based on hypothetical harms stemming from the alleged disclosure of other unspecified users' *technical device data* would be reasonably necessary.  *See, e.g.*, *Sony II*, 996 F. Supp. 2d at 970 (because plaintiff "failed to allege why [monitoring] costs were reasonably necessary," he failed to meet "th[e] high burden" necessary to recover such costs).  Plaintiffs also assert that their personal information is less valuable today (FAC ¶ 221), but they do not allege any facts showing "how [they were] foreclosed from capitalizing on the value of [their] personal data," *see Low*, 900 F. Supp. 2d at 1032, which here amounts to nothing more than device data.

Plaintiffs also allege (with respect to meeting disruptions) that "interruption of their most private conversations" caused "emotional distress" (FAC ¶ 221), but do not specify the "nature and extent of [any named plaintiff's] emotional or mental suffering."  *Burnell v. Marin Humane Soc'y*, No. CV 14-5635, 2015 WL 6746818, at *19 (N.D. Cal. Nov. 5, 2015).  Such allegations are insufficient.  *Id.*; *see, e.g.*, *Sion v. SunRun, Inc.*, No. 16-cv-05834, 2017 WL 952953, at *2 (N.D. Cal. Mar. 13, 2017) ("[Plaintiff] states that she suffered mental and emotional distress as a result

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEFENDANT ZOOM'S MOTION TO
DISMISS THE FAC
MASTER CASE NO. 5:20-CV-02155-LHK

of Defendant's invasion of Plaintiff's privacy, but offers no specific facts about *how* she suffered

those damages." (internal quotations and citation omitted)); *Holly v. Alta Newport Hosp., Inc.*, No.

2:19-cv-07496, 2020 WL 1853308, at *6 (C.D. Cal. Apr. 10, 2020).[12]

**E.    Plaintiffs Cannot State a Claim for Breach of an Implied Contract (Count 3).**

Plaintiffs may not maintain an implied contract claim because an express written

agreement—Zoom's terms of service ("TOS")—controls.  Where an express written agreement

exists, it "sets the boundaries for any implied contract." *Schwarzkopf v. Int'l Bus. Machines, Inc.*,

No. C 08-2715, 2010 WL 1929625, at *8 (N.D. Cal. May 12, 2010); *see also Ellsworth v. U.S.

Bank, N.A.*, 908 F. Supp. 2d 1063, 1086 (N.D. Cal. 2012) ("implied terms should never be read to

vary express terms" (citation omitted)).  Zoom's TOS control the parties' relationship and pertain

to the subject matter at issue, requiring dismissal of the implied contract claim.

Plaintiffs allege that they and Zoom entered into implied contracts whereby Zoom "agreed

to and was obligated to take reasonable steps to secure and safeguard [their private and personal]

information."  (FAC ¶ 228.)  However, all Plaintiffs other than M.F. allege that they "registered"

accounts with Zoom to "use[] Zoom's services."  (FAC ¶¶ 18, 21, 25, 30, 33, 36, 39, 44, 46, 51,

54, 57, 59.)  In so doing, they affirmatively agreed that Zoom's TOS would govern the parties'

relationship by clicking on a "Confirm" box placed next to a hyperlink to the TOS.  (ECF No. 121-

1, Decl. of Jacqueline Hill ("Hill Decl.") ¶ 4); *see also Dohrmann v. Intuit, Inc.*, 823 F. App'x 482,

483-84 (9th Cir. 2020) (holding terms were enforceable where users had to click on an "I agree"

box placed next to a hyperlink of the agreement).  Outside of the bald statement that the alleged

implied contract was "separate and apart from Zoom's terms of service," FAC ¶ 228, Plaintiffs seek

to ignore the TOS entirely in the FAC.  But, as explained more fully in Zoom's Request for Judicial

Notice, the doctrine of incorporation by reference exists precisely to prevent a plaintiff "from

---

[12] To the extent the two institutional Plaintiffs—Saint Paulus and Oak Life—seek to pursue negligent emotional distress claims based on harm their congregants allegedly suffered (FAC ¶ 221, n.91), the FAC fails sufficiently to establish their ability to bring such claims.  *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) (to establish representational standing, plaintiff must show that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested required the participation of individual members in the lawsuit").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEFENDANT ZOOM'S MOTION TO
DISMISS THE FAC
MASTER CASE NO. 5:20-CV-02155-LHK

1  defeating a motion to dismiss by artful pleading instead of attaching the essential documents." *Dual*

2  *Diagnosis Treatment Ctr., Inc. v. Blue Cross of Cal.*, SA CV 15-0736, 2016 WL 6892140, at \*22

3  (C.D. Cal. Nov. 22, 2016).  The Court therefore can and should consider the TOS.

4        The TOS contain an integration clause stating that "[t]his Agreement embodies the entire

5  understanding and agreement between the Parties . . . and supersedes any and all prior

6  understandings and agreements."  (Hill Decl., Ex. 1 ¶ 20.4.)  This alone precludes a finding of an

7  implied contract.  *See, e.g.*, *Be In, Inc. v. Google Inc.*, No. 12-CV-03373, 2013 WL 5568706, at \*6

8  (N.D. Cal. Oct. 9, 2013).  The TOS also pertain directly to the subject matter of Plaintiffs' implied

9  contract claim and therefore preclude it.  ***First***, the TOS expressly govern the steps Zoom agreed

10  to undertake to protect users' personal and private information.  (*See* Hill Decl., Ex. 1 ¶ 5 ("Zoom

11  will maintain reasonable physical and technical safeguards to prevent unauthorized disclosure of

12  or access to Content, in accordance with industry standards.").)  ***Second***, Zoom's Privacy Policy,

13  which is incorporated by reference into the TOS (*id.* ¶ 19), expressly governs the scope of Zoom's

14  permissible use of users' information (Hill Decl., Ex. 5 at 3 ("[T]hird party service providers, and

15  advertising partners [may] automatically collect some information about [users] when [they] use

16  [its] Products[.]"); Ex. 3 at 2-7 (discussing data sharing with third parties)).  Because the TOS and

17  incorporated Privacy Policy pertain to the precise subject matter that Plaintiffs now claim is covered

18  by an implied contract (FAC ¶¶ 225-230), the implied contract claim fails.  *See, e.g.*, *Be In, Inc.*,

19  2013 WL 5568706, at \*6 (dismissing with prejudice plaintiff's implied contract claim where an

20  express contract covered the same subject matter); *Roling v. E\*Trade Sec., LLC*, 756 F. Supp. 2d

21  1179, 1189 (N.D. Cal. 2010) ("the existence of an express contract indisputably precludes

22  allegations regarding an implied contract for the same subject matter").[13]

23      **F.**    **Plaintiffs' Claim for Breach of the Implied Covenant Fails (Count 4).**

24        Plaintiffs' breach of implied covenant claim should be dismissed as duplicative of the

25

26  [13] Even if Plaintiffs could allege the existence of an implied contract and any alleged breach, their
claim fails due to the absence of damages: half of them paid nothing to use Zoom's free services,

27  and for those who did pay, they have not (and cannot) allege "they actually provided consideration
for the [privacy protections] they claim were not provided." *In re Google Assistant Privacy Litig.*,

28  457 F. Supp. 3d at 834 (rejecting breach of contract claim where plaintiffs did not allege they paid
any fee or price premium for privacy protections) (citation omitted).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

breach of implied contract claim.  *See Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990) as modified on denial of reh'g (Oct. 31, 2001) ("If the allegations [of an implied covenant claim] do not go beyond the statement of a mere contract breach . . . they may be disregarded as superfluous as no additional claim is actually stated"); *Snapkeys, Ltd. v. Google LLC*, 442 F. Supp. 3d 1196, 1210-11 (N.D. Cal. 2020) (dismissing with prejudice plaintiff's implied covenant claim where it "rel[ies] on the same alleged acts, [and] simply seek[s] the same damages or other relief already claimed in a companion contract cause of action").  The alleged "breaches" underlying the implied covenant claim are identical to those underlying the breach of implied contract claim, and that claim thus fails.  (*See* FAC ¶¶ 230, 242.)

### G.  Plaintiffs Cannot State a Claim for Violation of the CDAFA (Count 8).

Plaintiffs fail to state a claim for relief under the CDAFA, Cal. Penal Code § 502, "an anti-hacking statute intended to prohibit the unauthorized use of any computer system for improper or illegitimate purpose[s]."  *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1032 (N.D. Cal. 2014).  Plaintiffs conclusorily allege that Zoom violated seven CDAFA provisions (FAC ¶¶ 282-287), each of which requires Zoom to have acted "without permission." *See* Cal. Penal Code §§ 502(c)(1)(B), (c)(2), (c)(3), (c)(6), (c)(7), (c)(8), (c)(13).  This claim fails for several reasons.

To begin with, the FAC fails adequately to allege the requisite harm for each claimed violation because, as discussed above, *see supra* Section IV.B, Plaintiffs have not alleged that Zoom disclosed any of *their* personal information.  *See* Cal. Penal Code § 502(e)(1) (authorizing CDAFA civil actions only for persons "who suffer[] damage or loss").

Plaintiffs' CDAFA allegations also fail because they "merely track[] the language of the statute itself, without providing facts to substantiate the claimed legal conclusions." *Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1175 (C.D. Cal. 2018); (*see* FAC ¶¶ 282-287.)  Such a "[t]hreadbare recital[]" is wholly insufficient.  *Iqbal*, 556 U.S. at 678; *see Brodsky v. Apple Inc.*, No. 19-CV-00712, 2019 WL 4141936, at *9 (N.D. Cal. Aug. 30, 2019) (dismissing CDAFA allegations that "merely parrot the language of the [CDAFA]"); *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1090 (N.D. Cal. 2018) (dismissing "boilerplate" CDAFA claims).

The FAC also does not sufficiently allege that Zoom accessed Plaintiffs' computer systems

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

DEFENDANT ZOOM'S MOTION TO
DISMISS THE FAC
MASTER CASE NO. 5:20-CV-02155-LHK

1   without permission, given that they voluntarily installed Zoom's software and used its services.

2   (FAC ¶¶ 17-59.)  This requires dismissal.  *See In re Apple & ATTM Antitrust Litig.*, No. C 07-

3   05152, 2010 WL 3521965, at *7 (N.D. Cal. July 8, 2010) ("Voluntary installation runs counter

4   to . . . [the CDAFA]'s requirement that the alleged act was 'without authorization.'" (citation

5   omitted)).

6       Plaintiffs' Section 502(c)(8) "computer contaminant" claim also fails because Plaintiffs do

7   not allege that Zoom's software is a "computer contaminant," defined to include "viruses or

8   worms" (Cal. Pen. Code § 502(b)(12)), as well as "other malware that usurps the normal operation

9   of the computer or computer system." *In re iPhone Application Litig.*, 2011 WL 4403963, at *12-

10  13. Plainly, Zoom's software, which is voluntarily installed and trusted by "million[s]" of users

11  around the world (FAC ¶ 72), cannot satisfy that definition.

12      Finally, Plaintiffs baldly claim that they are entitled to punitive or exemplary damages based

13  on "oppression, fraud, or malice as defined in Cal. Civil Code § 3294."  (FAC ¶ 291.)  Because the

14  CDAFA claim fails, and because Plaintiffs provide no explanation or evidence for this allegation,

15  their request for punitive damages should be stricken.  *See Smith v. Super. Ct.*, 10 Cal. App. 4th

16  1033, 1041-42 (1992) (directing trial court to strike assertions that defendants "acted with

17  oppression, fraud or malice" because they were based solely on "conclusory allegations").

18  **H.    Plaintiffs' Fraud-Based Claims Should Be Dismissed (UCL, CLRA, Fraudulent
        Concealment; Counts 6, 7, 9)Counts 6, 7, 9).**

19

20      **1.    Plaintiffs fail to plead with Rule 9(b) particularity.**

21      Plaintiffs' UCL (unlawful, fraudulent, and unfair prongs), CLRA, and fraudulent

22  concealment claims (the "fraud-based claims") are all based on Zoom's alleged course of conduct

23  fraudulently "misrepresent[ing]" or "omitt[ing]" information about the privacy and security

24  features of its services.  (FAC ¶¶ 250-278, 293-298.)  Thus, "the pleading . . . *as a whole* must

25  satisfy the particularity requirement of Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125

26  (9th Cir. 2009) (citation omitted; emphasis added).  Unless Plaintiffs allege "'the who, what, when,

27  where, and how' of the misconduct charged" and what is false or misleading, *Vess v. Ciba-Geigy*

28  *Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted), their claims must be dismissed.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

**DEFENDANT ZOOM'S MOTION TO
DISMISS THE FAC
MASTER CASE NO. 5:20-CV-02155-LHK**

*See Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (affirming dismissal with prejudice where plaintiff failed to, inter alia, "specify such facts as the times, dates, places"). Plaintiffs' allegations do not meet this standard.

**First**, while Plaintiffs' fraud-based claims are premised on Zoom's allegedly false and misleading statements and omissions (FAC ¶¶ 250-278, 293-298), Plaintiffs do not devote any portion of the 71-page FAC to identifying the specific statements by Zoom they claim to have read (if any) or when and where they saw those statements (if at all). Instead, Plaintiffs each formulaically assert that Zoom purported to promise all users various privacy and security features, including that it "adequately protects users' personal information." (*Id.* ¶¶ 18, 22, 26, 28, 30, 34-35, 40, 44, 47, 51, 54, 57, 59.) Such threadbare allegations are insufficient. *See Phillips v. Apple Inc.*, No. 15-CV-04879, 2016 WL 1579693, at *8 (N.D. Cal. Apr. 19, 2016) (dismissing plaintiffs' UCL and fraud claims for failure to "plead that they viewed or heard any representations or omissions by Apple"); *Davidson v. Apple, Inc.*, No. 16-cv-04942, 2017 WL 976048, at *9-10 (N.D. Cal. Mar. 14, 2017) (dismissing fraudulent concealment claims for similar reasons).

**Second**, "actual reliance" is required for Plaintiffs' fraud-based claims, *see Phillips*, 2016 WL 1579693 at *7, but Plaintiffs do not plead when, where, or how the alleged misrepresentations and omissions were made to them—"a far cry from the factual allegations required by courts to sufficiently plead reliance." *Gitson v. Trader Joe's Co.*, No. 13-cv-01333, 2014 WL 1048640, at *8 (N.D. Cal. Mar. 14, 2014); *see also Low*, 900 F. Supp. 2d at 1027. Indeed, Plaintiffs' conclusory allegations of reliance fail as they are directly contradicted by their allegations that they are "required" to use Zoom for "work, school, or other purposes[.]" (FAC ¶¶ 15, 145.) *See InfoStream Grp., Inc. v. Paypal, Inc.*, No. C 12-748, 2012 WL 3731517, at *10 (N.D. Cal. Aug. 28, 2012) (plaintiffs' assertion of reliance was "directly contradicted by plaintiffs' allegation" elsewhere).

In addition, half of the named Plaintiffs do not allege they paid any money for Zoom's services (FAC ¶¶ 21, 25, 27, 29, 33, 46, 50) and thus could not have suffered any harm from Zoom's alleged fraud. (*See id.* ¶ 296 (claiming that but for the alleged fraudulent concealment, Plaintiffs "would not otherwise have purchased or [would have] paid significantly [less]" for Zoom's services); *see also id.* ¶ 259.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

DEFENDANT ZOOM'S MOTION TO
DISMISS THE FAC
MASTER CASE NO. 5:20-CV-02155-LHK

1
       ***Third***, Plaintiffs fail to allege how Zoom's purported "promises" to protect their personal

2
information are false as to them.  As explained above, the FAC generically alleges that certain third-

3
party applications and services collected users' personal information, but Plaintiffs fail to plead any

4
details regarding which applications and/or services collected *their* personal information.  *See supra*

5
Section IV.B.  "These particulars need to be alleged to state" fraud-based claims under the UCL,

6
CLRA, and common law.  *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012).

7
       The decision in *Pirozzi* is instructive with respect to these multiple inadequacies.  There,

8
the plaintiff alleged that "[n]otwithstanding Apple's representations regarding its protection of

9
users' personal information and the security of [its] operating system, 'Apple-approved apps have

10
downloaded and/or copied users' private [information].'"  *Id.* at 845.  In dismissing UCL, CLRA,

11
and common law fraud claims, the court explained that although the plaintiff generically claimed

12
that she "relied" upon the purported privacy and security representations by Apple, "she fail[ed] to

13
provide the particulars of *her own* experience reviewing or relying upon any of those statements."

14
*Id.* at 850 (emphasis added).  Moreover, "[n]owhere in the [complaint did] Plaintiff specify when

15
she was exposed to the statements or which ones she found material to her decisions to purchase

16
an Apple Device or App."  *Id.*  "Additionally, though the [complaint] identifie[d] a number of Apps

17
which allegedly downloaded other users' private information, Plaintiff [did] not identify which

18
Apps, if any, allegedly downloaded *her* personal information."  *Id.* (emphasis added).  Plaintiffs'

19
fraud-based claims here are similarly deficient and should be dismissed.

20
       **2.**     **Most of the Plaintiffs cannot bring claims under the CLRA or UCL.**

21
       Plaintiffs Gmerek, Johnston, M.F., Jimenez, Cundle, Brice, and Gormezano (collectively

22
"non-purchasing Plaintiffs") may not maintain CLRA claims because they all allege they used

23
Zoom's services for free (FAC ¶¶ 21, 25, 27, 29, 33, 46, 50) and therefore none is a "consumer"—

24
*i.e.*, "an *individual* who seeks or acquires, by *purchase or lease*, any goods or services for personal,

25
family, or household purposes."  Cal. Civ. Code § 1761(d) (emphasis added); *See In re Facebook*

26
*Privacy Litig.*, 572 F. App'x 494, 494 (9th Cir. 2014) (affirming dismissal of CLRA claims for

27
failure to allege "obtain[ing] anything from Facebook 'by purchase,' or by a 'consumer

28
transaction'" (quoting *Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal. App. 4th 949, 960 (2005)).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

**DEFENDANT ZOOM'S MOTION TO
DISMISS THE FAC
MASTER CASE NO. 5:20-CV-02155-LHK**

Case 5:20-cv-02155-LHK   Document 134   Filed 12/02/20   Page 33 of 36

The lack of purchase also forecloses the non-purchasing Plaintiffs' UCL cause of action because they do not (and cannot) allege a loss of "money or property," Cal. Bus. & Prof. Code §17204. *See In re Facebook Privacy Litig.*, 572 F. App'x at 494 (affirming dismissal of UCL claim, where plaintiffs alleged that they used services free of charge). While these Plaintiffs allege they lost their "private and personal data," such loss (or loss of value) does not constitute lost money or property under the UCL. *See, e.g.*, *In re iPhone Application Litig.*, 2011 WL 4403963, at *14 (dismissing UCL claim, noting that "[n]umerous courts have held that a plaintiff's 'personal information' does not constitute money or property under the UCL"); *see also In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 717 (N.D. Cal. 2011) (any contention that "personal information constitutes a form of 'payment' . . . is unsupported by law.").

In addition, Plaintiffs Saint Paulus, Oak Life, and Simins allege to have purchased Zoom's services solely for business purposes (FAC ¶¶ 36, 39, 43, 45), and thus may not maintain a CLRA claim. *See Frezza v. Google Inc.*, No. 12-CV-00237, 2012 WL 5877587, at *4 (N.D. Cal. Nov. 20, 2012) (dismissing CLRA claims because transaction was "for business purposes" and business purchasers "do not qualify as 'consumers' protected under the CLRA").

Finally, the two institutional Plaintiffs—Saint Paulus and Oak Life—may not bring CLRA claims because corporations are not "consumers" eligible to pursue a CLRA claim. *See Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003); *Cal. Grocers Ass'n, Inc. v. Bank of Am.*, 22 Cal. App. 4th 205, 217-18 (1994).

### 3. The four remaining Plaintiffs' CLRA damages claims fail.

The four remaining Plaintiffs—Hartmann, Hirshberg, Garcia, and Doyle—did not provide the required pre-suit notice of their claims to Zoom, and their CLRA damages claim should thus be dismissed. Cal. Civ. Code § 1782(a) (requiring notice "in writing" at least "[t]hirty days or more prior to the commencement of an action for damages"); *see Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1196 (S.D. Cal. 2005), *aff'd*, 252 F. App'x 777 (9th Cir. 2007) (dismissing CLRA damages claim with prejudice for lack of notice); *Fish v. Aviation*, No. 18-cv-06671, 2019 WL 690286, at *6 (N.D. Cal. Feb. 19, 2019) (similar); *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1304 (S.D. Cal. 2003); *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 950 (S.D. Cal. 2007).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

DEFENDANT ZOOM'S MOTION TO
DISMISS THE FAC
MASTER CASE NO. 5:20-CV-02155-LHK

While the FAC baldly alleges that "Plaintiffs' counsel" (on behalf of unspecified Plaintiffs) supposedly provided Zoom with "notice of the[] CLRA violations" alleged in the FAC (FAC ¶ 276), Plaintiffs do not attach the alleged notice, and Zoom has not located any such notice.[14]

### 4.    Plaintiffs otherwise fail to state a claim under the UCL.

#### a.    Plaintiffs fail to state a claim under the UCL's "unlawful" prong.

No predicate violation supports Plaintiff's "unlawful" prong UCL claim, which thus must be dismissed.  Because the UCL's unlawful prong "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable," *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotations and citations omitted), if there is no violation of the predicate law, there can be no actionable claim under the UCL's "unlawful" prong.  *Smith v. State Farm Mutual Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001).

To the extent Plaintiffs seek to rely on the other causes of action in this case (FAC ¶ 255), as discussed above, these claims all fail, and thus the unlawful prong claim fails.  Plaintiffs also seek to predicate their unlawful claim on alleged violations of The Children's Online Privacy Protection Act ("COPPA"), The Online Privacy Protection Act, the California Invasion of Privacy Act, and the Health Insurance Portability and Accountability Act.  Plaintiffs' mere listing of these statutes without any factual tether between them and their own experiences is insufficient: "[i]f plaintiffs wish to base a UCL 'unlawfulness' claim on any one statute," they must "plead with particularity how the facts of this case pertain to [those] specific statute[s]."  *Baba v. Hewlett-Packard Co.*, No. C 09-05946, 2010 WL 2486353, at *6 (N.D. Cal. June 16, 2010); *Hodges v. Apple Inc.*, No. 13-CV-01128, 2013 WL 4393545, at *7 (N.D. Cal. Aug. 12, 2013) (same).[15]

#### b.    Plaintiffs fail to state a claim under the UCL's "unfair" prong.

Plaintiffs' "unfair" prong claim is conclusory and requires dismissal.  The FAC does not

---

[14] Moreover, Plaintiff Hartmann's pre-consolidation complaint did not include a CLRA claim but relied solely on a different state's consumer protection law.  *See Hartmann v. Zoom Video Commc'ns, Inc.*, No. 5:20-cv-02620-LHK (filed April 15, 2020, ECF No. 1 ¶¶ 50-57 (alleging violations of the Maryland Consumer Protection Act)).
[15] Disconnected from Plaintiffs' UCL claim are several paragraphs of the FAC discussing COPPA, but they do not indicate how any particular Plaintiff's experience with Zoom meets the requirements for a COPPA violation.  (FAC ¶¶ 184-89.)

**DEFENDANT ZOOM'S MOTION TO DISMISS THE FAC
MASTER CASE NO. 5:20-CV-02155-LHK**

1  tether Plaintiffs' unfair prong claim to any specific public policy; nor does it even attempt to

2  describe why Zoom's conduct is immoral, unethical, oppressive, unscrupulous, or substantially

3  injurious to consumers.  (FAC ¶ 256.)[16]  "Without more, such unsupported assertions fail."  *Marcus*

4  *v. Apple Inc.*, No. C 14-03824, 2015 WL 151489, at *4 (N.D. Cal. Jan. 8, 2015); *see also Elias v.*

5  *Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 858 (N.D. Cal. 2012) (dismissing unfair prong claim

6  because although plaintiff "ma[de] conclusory statements that [defendant's] conduct is unfair, he

7  [did] not reference any established public policy that [defendant's] actions have violated or claim

8  that the conduct is immoral, unethical, oppressive, or unscrupulous").

9         **I.     Plaintiffs' Unjust Enrichment and Quasi-Contract Claims Fail (Count 5).**

10        Plaintiffs' "unjust enrichment claim does not properly state an independent cause of action

11 and must be dismissed."  *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 815 (N.D. Cal. 2011)

12 (citing, inter alia, *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011) ("Unjust enrichment

13 is not a cause of action, just a restitution claim")).  It also is "merely duplicative of statutory or tort

14 claims," *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D.

15 Cal. 2011)—here, the CLRA and UCL claims seeking restitution and other relief.  Plaintiffs'

16 attempt to recover in quasi-contract does not change this result—it is merely duplicative of their

17 breach of implied contract claim, and fails for the same reason: Zoom's TOS.  *See supra* Section

18 IV.E; *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014) ("an action

19 based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a

20 valid express contract covering the same subject matter.").

21 **V.     CONCLUSION**

22        Zoom respectfully requests that this Court dismiss the FAC in its entirety with prejudice.

23

24

25 ───────────────

26 [16] *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1145-46 (N.D. Cal. 2013) (describing "(1) the tethering test, which requires that the public policy which is a predicate to . . . the unfair [claim] be

27 tethered to specific constitutional, statutory, or regulatory provisions and (2) the balancing test, which examines whether the challenged business practice is immoral, unethical, oppressive,

28 unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." (internal quotation marks and citations omitted)).

Cooley LLP
Attorneys at Law
San Francisco

25

**Defendant Zoom's Motion to
Dismiss the FAC
Master Case No. 5:20-cv-02155-LHK**

1

Dated:  December 2, 2020

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
MICHAEL G. RHODES (116127)
TRAVIS LEBLANC (251097)
KATHLEEN R. HARTNETT (314267)
BENJAMIN H. KLEINE (257225)
DANIELLE C. PIERRE (300567)
JOSEPH D. MORNIN (307766)
EVAN G. SLOVAK (319409)
KELSEY R. SPECTOR (321488)


By:  /s/ *Michael G. Rhodes*
        Michael G. Rhodes (116127)

Attorneys for Defendant
ZOOM VIDEO COMMUNICATIONS,
INC.

239204016

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

26

DEFENDANT ZOOM'S MOTION TO
DISMISS THE FAC
MASTER CASE NO. 5:20-CV-02155-LHK