December 7, 2020

Honorable Susan van Keulen
United States Magistrate Judge
San Jose Courthouse, Courtroom 6 – 4th Floor
280 South 1st Street, San Jose, CA 95113

Re: Joint Statement Regarding Discovery Disputes, *In re Zoom Video Communications, Inc. Privacy Litigation*, No. 5:20-cv-02155-LHK (N.D. Cal.)

Dear Judge van Keulen:

In accordance with this Court's Civil and Discovery Referral Matters Standing Order, Plaintiffs and Defendant Zoom Video Communications, Inc. ("Zoom"), respectfully submit this Joint Statement regarding two discovery disputes that, after the parties' extensive meet-and-confer, require the Court's resolution, which are discussed in detail below. On August 7, 2020, the Court entered its Case Management Order (Dkt. 117), setting the close of fact discovery on August 28, 2021, which is in 264 days.

## I.  PLAINTIFFS' STATEMENT

### A. Patent Model Optional Provisions are Unwarranted and Would Prejudice Plaintiffs

Zoom insists that the parties adopt *optional* provisions from the Northern District's Model Protective Order for "Patent Cases"[1]—even though this lawsuit does not in any way concern a patent dispute. Plaintiffs object to these inapplicable, onerous, and unreasonable restrictions because they would give Zoom unwarranted advantage and control in the litigation. First, the optional provisions give Zoom the power to effectively veto Plaintiffs' chosen expert or consultant (collectively, "Experts"). Second, the optional provisions require Plaintiffs to disclose their Experts' identities long before Rule 26 requires disclosures of Experts who may testify at trial, and includes non-testifying Experts. By insisting on the *optional* provisions of a *patent* protective order model, Zoom seeks to prejudice Plaintiffs and gain an unfair advantage limiting and forcing disclosure of Plaintiffs' litigation strategy. Plaintiffs respectfully request that the Court decline to impose the unfair restrictions. Plaintiffs' proposed Protective Order is attached as **Exhibit 1**, and Zoom's proposal is attached as **Exhibit 2**; each shows changes from the other in redline form.

Under the Federal Rules, Zoom has no right to learn the identities of non-testifying Experts absent exceptional circumstances. *See* Fed. R. Civ. P. 26(a)(2) (requiring disclosure only of specially retained experts who may testify at trial) & 26(b)(4)(D) (excluding information concerning expert consultants not expected to testify at trial from scope of discovery absent "exceptional circumstances"); *In re Pizza Time Theatre Sec. Litig.*, 113 F.R.D. 94, 97–98 (N.D. Cal. 1986) (refusing to include such provisions regarding Experts in protective order under "exceptional circumstances" standard). Here, there are no exceptional circumstances. These Rules exist to protect the fundamental principle that Parties have a right to dictate their own litigation strategy, *e.g.* to freely retain and consult

---

[1] The Expert restrictions on which Zoom insists appear in this District's Model Protective Order for "Patent Cases" and, *even then*, are "Optional as deemed appropriate in case-specific circumstances." N.D. Cal. Model Protective Order for "Patent Cases" at ¶ 7.3 (emphasis added). In comparison, Footnote 7 (at page 10) provides an alternative to Zoom's demand: "information or items may be disclosed to an Expert without disclosure of the identity of the Expert as long as the Expert is not a current officer, director, or employee of a competitor of a Party or anticipated to become one." Given the circumstances of this case, this would be the appropriate provision.

1

with Experts without disclosure or approval of an opposing party. The Rules also contemplate anonymity for non-testifying Experts, which should be respected absent exceptional circumstances. Zoom's demands strip away these protections. Unlike patent litigation between competitors, where such requirements are effectively mutual and do not prejudice one party, only Plaintiffs would have restrictions imposed on whom they may retain as Experts, and only Zoom would have an effective veto power over them. Further, the consumer-plaintiffs here have neither the *means* nor the *motivation* to use such material for their own commercial gain, as a competitor would.[2]

Plaintiffs have no intention of hiring an Expert who will misuse confidential information. Under Zoom's onerous proposals, Plaintiffs would not even know if they could work with an Expert until after a 14-day objection period has run, at which point Plaintiffs would be left scrambling to find an alternative, whom Zoom may nonetheless veto again. Zoom will control the timing, content, and persons related to the successful investigation of facts supporting Plaintiffs' claims. Such control would materially impair Plaintiffs' prosecution of their case.

Plaintiffs' proposal, which Zoom refused, was that the parties use the Court's model protective order for "Standard Cases"—*e.g.*, a consumer class action like this one—which includes no such restrictions. Plaintiffs continue to believe that this District's model protective order for standard cases is sufficient here, but in an effort to compromise, agreed to the model for "Patent Cases" save the disputed provisions concerning Experts. Plaintiffs have agreed on broad restrictions on whom they may retain as an Expert: "Any Expert may not be a past or current employee of Zoom or of a competitor of Zoom and, at the time of retention, must not anticipate becoming an employee of a competitor of Zoom." (Exhibit 1 at ¶ 2.7.) Nonetheless, Zoom insists that Plaintiffs submit information akin to that normally disclosed through the procedures in Rule 26(a)(2) followed by a 14-day objection period. (Exhibit 2 at ¶ 7.4.). Plaintiffs believe this is because Zoom is not so much concerned with the employees of competitors—who will certainly never see this information—but rather that Zoom wants to prevent anyone who has ever been critical of Silicon Valley's cavalier attitude toward customer privacy from providing Plaintiffs' their insight.

The prejudice to Plaintiffs presented by Zoom's onerous provisions regarding Experts is not hypothetical. A dispute currently exists over whether Zoom will allow Plaintiffs' proposed Expert Ashkan Soltani (*see* <https://ashkansoltani.org/> (last visited Dec. 5, 2020)), to view material that Zoom will designate Highly Confidential/AEO materials.

Plaintiffs made a variety of efforts at compromise, first proposing that such objectionable procedures regarding Experts apply only to disclosure of source code. Zoom not only rejected that compromise, but responded by excluding source code *altogether* from the scope of the protective order and inserted language that would require *yet another* protective order to be negotiated and entered prior to disclosure of source code. Plaintiffs then proposed that the Parties strictly curtail the definition of "Highly Confidential" information such that the objectionable procedures only to a substantially restricted body of documents, but Zoom again refused.

Plaintiffs respectfully submit that, given the context here (a consumer class action) and the real prejudice threatened by Zoom's position, the Court should not impose on Plaintiffs the optional early Expert disclosure requirements advocated by Zoom.

---

[2] This is not a case where disclosure to Plaintiffs' counsel or their Experts (who cannot be employees of a competitor) amounts to disclosure to a party involved in "competitive decision making." *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) (quoting *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 n.3 (Fed.Cir.1984)).

239495804 v2

### B. Clawing Back Documents at Any Time Without Justification Should not be Allowed

The parties have negotiated an agreed order under Federal Rules of Evidence 502(d) and (e), but have not agreed on one term: Zoom insists that Plaintiffs must agree that it can claw back documents it claims are privileged following their production during discovery in this *litigation at any time*, without any showing of inadvertence, even if Plaintiffs have spent countless hours reviewing and preparing to use Defendants' clawed-back documents. Rather than agreeing that Defendants should have this right at *any time*, Plaintiffs agree that Defendants may claw back documents without justification within 30 days following their production. Plaintiffs' proposed FRE 502 Order is attached as **Exhibit 3**, and Defendant's proposed FRE 502 Order, is attached as **Exhibit 4**; each shows changes from the other in redline form. Zoom, as a sophisticated business litigant with one of the nation's top law firms as its counsel, cannot reasonably ask for more than 30 days claw back and shift the burden on Plaintiffs to be at-the-ready for Zoom's claw back request months, if not years, after Zoom produced the documents. Under Plaintiffs' proposal, documents that Zoom might seek to claw back after 30 days would be governed by FRE 502(b). *See* Exhibit 3 at ¶ 6. Zoom would be able to claw back such documents provided it could show the disclosure was inadvertent, that it took steps to prevent disclosure, and to rectify the error. *See* Fed. R. Evid. 502(b).

Similar restrictions have been included in FRE 502 Orders entered in this District, including in consumer Class Actions against technology class actions in this very Court. *See In re Yahoo! Customer Data Security Breach Litig.*, No. 16-MD-02752-LHK, Dkt. 76 at ¶ 3(a)(i). Zoom has not demonstrated prejudice from a similar provision here, nor that Plaintiffs are required to agree to such a provision under FRE 502(e) or other authority.

In addition, Zoom refuses to include the title of withheld documents in its privilege logs, and seeks to replace language stating FRE 502(a) applies to documents a party uses to support a claim or defense with language requiring a waiver of privilege to be made in an unambiguous writing. Plaintiffs respectfully request that the Court enter Plaintiffs' proposed order (Exhibit 3).

## II.    DEFENDANT'S POSITION

### A. The Northern District Model Order's Provision Governing Disclosure of Highly Confidential/AEO Material to Experts Should Be Adopted.

Zoom respectfully submits that the Court should enter Zoom's proposed protective order in this case (**Exhibit 2**). Zoom's proposed order includes the standard procedure for disclosing Highly Confidential/AEO materials to the parties' experts, as set forth in Section 7.4 of the Northern District's Model Protective Order for Litigation Involving Patents, Highly Sensitive Information and/or Trade Secrets ("Model").[3] As this Court recently observed in rejecting arguments nearly identical to Plaintiffs' contentions here, Plaintiffs' argument that Section 7.4 should not be included is contrary to "innumerable decisions in this District" holding that "section 7.4 is inherently reasonable" in the context of a class action like this one. *In re Google Assistant Privacy Litig.*, No. 19-cv-04286, 2020 WL 4698810, at *1 (N.D. Cal. Aug. 13, 2020) (citing *Ibrahim v. Dept. of Homeland Sec.*, 669 F.3d 983, 999 (9th Cir. 2012) (describing such protections as "commonplace")). *In re Google Assistant* is directly on-point here, yet Plaintiffs fail to acknowledge (and make no attempt to distinguish) the case.

Plaintiffs' entire argument against Section 7.4's expert disclosure provisions is framed on a fallacy: that the Model is *only* for patent cases. To the contrary, the title and substance of the Model both make clear it is for litigation involving "patents, ***highly sensitive information and/or trade secrets***," *see* Model (emphasis added), and there is a separate patent-specific model order that applies

---

[3] *See* Model at https://www.cand.uscourts.gov/forms/model-protective-orders (last accessed on December 4, 2020).

239495804 v2

as a default in patent cases under the Local Rules.[4]  Discovery in this case is certain to include Zoom's "highly sensitive information and/or trade secrets."  Plaintiffs have already requested discovery about numerous highly technical and extremely sensitive topics, including the methods by which Zoom encrypts meeting data and secures its meetings.  *See* Exhibit 5 (RFPs No. 17, 19-20, 26, 30, 53-55).[5]  Any disclosure of information about such security procedures and protocols must be granted the highest possible protections as allowing this information to fall into the wrong hands could seriously harm Zoom and its users.  In addition, discovery into Zoom's business will also involve information that would risk serious competitive injury to Zoom if it were to fall into a competitor's hands.  Thus, before Zoom's AEO is handed over to Plaintiffs' experts and the bell cannot be unrung, Zoom should be permitted to know who Plaintiffs' proposed experts are, what work they have done, and for whom.

Plaintiffs' other arguments against the expert disclosure provisions are meritless.  Plaintiffs claim Section 7.4's expert disclosure procedures are "optional," but this misreads the Model Order: Section 7.4's provisions regarding expert disclosure presumptively apply to AEO material, and it is instead the Section 7.4 provisions regarding **source code** that are optional.  Plaintiffs also argue that Section 7.4 is inappropriate because "absent exceptional circumstances," Zoom is not entitled to learn the identity of Plaintiffs' non-testifying experts under Federal Rule of Civil Procedures 26.  This Court recently and correctly rejected this argument.  *See In re Google Assistant Privacy Litig.*, 2020 WL 4698810 at *2 ("[T]his Court disagrees that Rule 26 prohibits the discovery of the identity of experts.").  The over-30-year-old *Pizza Time* case cited by Plaintiffs on this point not only predates the Model but concerned a situation—unlike here—where the protecting party's "competitors apparently already have at least some of the kind of information that is in issue here." 113 F.R.D. at 99.  The risk of harm from disclosure of Zoom's sensitive business information is the same for all experts, testifying or not.  *See Ibrahim*, 669 F.3d at 999 ("The risk is simply too great that someone in such an adverse position will be tempted to misuse sensitive information for a purpose other than the litigation.").

Plaintiffs also now propose, for the first time and in a footnote, *see supra* n.1 (citing Model n.7), the Model's alternative provision for disclosing protected material to experts.  This provision is not sufficiently protective of Zoom's most sensitive business information—including information about its encryption and meeting security—as this Court recognized in rejecting the reasoning of one case that modified the standard pre-disclosure identification of experts provision in the Model.  *See In re Google Assistant Privacy Litig.*, 2020 WL 4698810, at *2 (rejecting the rationale in *Corley v. Google, Inc.*, No. 16-cv-00473-LHK (HRL), 2016 WL 3421402 (N.D. Cal. June 22, 2016), and explaining that "[a] party should have an opportunity to vet someone who is going to have access to their 'extremely sensitive' confidential information, the disclosure of which creates a substantial risk of harm").  Indeed, because Plaintiffs' proposal narrowly applies only to an expert who is a past, current, or anticipated future "employee" of a competitor, it would allow all AEO documents to be shown to a proposed expert who is actively consulting with, advising, or being paid by a Zoom competitor.

In short, Plaintiffs' proposed approach of relying on Plaintiffs alone to assess whether their experts meet the protective order's criteria of who may view AEO material is the very scenario that Section 7.4 was "designed" to prevent.  *Gradillas Court Reporters, Inc. v. Cherry Bekaert, LLP*, No. 18-mc-80064-KAW, 2018 WL 2197544, at *7 (N.D. Cal. May 14, 2018) (rejecting plaintiff's modifications to

---

[4] *See* Patent Local Rule 2-2 Interim Model Protective Order at https://www.cand.uscourts.gprotective-orders (last accessed on December 4, 2020).

[5] Plaintiffs' First Set of Requests for Production (RFPs) are attached as Exhibit 5.  Zoom does not concede that this discovery is warranted, and has objected to the proper scope, if any, of such discovery.  Zoom attaches these RFPs to show the extensive breadth and scope of discovery that plaintiffs seek and the need for the reasonable protections provided by the Model.

239495804 v2

Section 7.4 because they undermined the "producing party's ability to approve or object to the disclosure of highly confidential information to an expert").

Finally, Plaintiffs' claim of prejudice is unfounded. To begin with, Section 7.4 applies only to discovery that is marked "Highly Confidential/AEO." Further, the proposed protective order allows Plaintiffs both to challenge Zoom's "Highly Confidential/AEO" designations, *see* Section 6, and to challenge any objection by Zoom to disclosure of "Highly Confidential/AEO Material" to Plaintiffs' experts, with Zoom bearing the burden of establishing harm, *see* Section 7.4(c). There also is no basis for Plaintiffs' speculation that Zoom will unreasonably object to Plaintiffs' experts; Plaintiffs falsely state there is a dispute about disclosure to one of their experts, but Plaintiffs have made no disclosure under the Protective Order to assess, so there is no dispute (as Zoom has told Plaintiffs).

**B. Orders Allowing for Clawback Protections Without Rigid Time Limits are Routinely Entered Within this District and Elsewhere.**

Zoom has proposed a Rule 502(d) stipulation addressing inadvertently disclosed privileged material,[6] which would not impose a clawback deadline given that inadvertent disclosures often occur without immediate detection in cases involving large volumes of electronic information. *See* **Exhibit 4.** In contrast, Plaintiffs' proposal for a 30-day deadline for clawback of such material defeats the purpose of having a clawback provision and does not accord with standard practice in this District, which is to allow clawback upon discovery of a privileged document. *See, e.g.*, *In re Google Assistant Privacy Litig.*, Dkt. No. 85 at 5 (allowing parties to assert privilege "at any time" after production); *Facebook, Inc. v. Online NIC, Inc.*, No. 5:19-cv-07071-SVK, ECF No. 37 (N.D. Cal. Feb. 18, 2020) (same); *Roley v. Google, LLC*, No. 5:18-cv-07537-BLF, ECF No. 55 (N.D. Cal. June 26, 2019) (same); *Batra v. Popsugar, Inc.*, No. 4:18-cv-03752-HSG, ECF No. 56 (N.D. Cal. April 30, 2019) (similar).

Plaintiffs' proposal is also contrary to the purpose of Rule 502, which is to enable litigants to minimize the "extraordinary costs" of e-discovery "without risking broad waiver of privilege." *Arconic Inc. v. Novelis Inc.*, No. CV 17-1434, 2019 WL 911417, at *3 (W.D. Pa. Feb. 26, 2019). Plaintiffs' proposal would, in practice, require Zoom to conduct an immediate, costly, and burdensome post-production review of all documents to avoid waiving privilege—precisely what Rule 502 seeks to prevent. *See* Fed. R. Evid. 502, advisory committee notes, subdivision (b) ("The rule does not require the producing party to engage in a post-production review to determine whether any [protected material] has been produced by mistake."). In contrast, Plaintiffs' claim that Zoom's proposal would burden Plaintiffs fails, as an inability to use Zoom's privileged information is no burden at all. Finally, Plaintiffs provide no argument to support their two other objections to Zoom's proposed 502 order, which lack merit. Zoom's proposed language requiring waivers to be in writing provides clarity regarding the intentional waiver required under Rule 502. And Zoom's proposed fields for a privilege log comply with Rule 26 and will provide Plaintiffs with ample information needed to assess privilege, including descriptions of the documents and the basis for asserting privilege. Accordingly, Zoom requests that the Court enter the Rule 502(d) Order attached as **Exhibit 4.**

239495804 v2

---

[6] Federal Rule of Evidence 502(d) provides: "A federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court — in which event the disclosure is also not a waiver in any other federal or state proceeding."

239495804 v2