1
2
3
4
5
6
7
8
9
10
11

COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
TRAVIS LeBLANC (251097)
(tleblanc@cooley.com)
KATHLEEN R. HARTNETT (314267)
(khartnett@cooley.com)
BENJAMIN H. KLEINE (257225)
(bkleine@cooley.com)
DANIELLE C. PIERRE (300567)
(dpierre@cooley.com)
JOSEPH D. MORNIN (307766)
(jmornin@cooley.com)
EVAN G. SLOVAK (319409)
(eslovak@cooley.com)
KELSEY R. SPECTOR (321488)
(kspector@cooley.com)
101 California Street, 5th Floor
San Francisco, California 94111-5800
Telephone:     +1 415 693 2000
Facsimile:     +1 415 693 2222

12
13

Attorneys for Defendant
ZOOM VIDEO COMMUNICATIONS, INC.

14

UNITED STATES DISTRICT COURT

15

NORTHERN DISTRICT OF CALIFORNIA

16

SAN JOSE DIVISION

17
18
19
20
21
22
23
24

| | |
|---|---|
| *IN RE: ZOOM VIDEO COMMUNICATIONS INC. PRIVACY LITIGATION*,<br><br><br>This Documents Relates To:<br><u>All Actions</u> | Master Case No. 5:20-cv-02155-LHK<br><br>**DEFENDANT ZOOM VIDEO COMMUNICATIONS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date:         February 4, 2021<br>Time:         1:30 p.m.<br>Courtroom: 8, 4th Floor<br>Judge:       Hon. Lucy H. Koh |

25
26
27
28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**TABLE OF CONTENTS**

2

                                                                                                  **Page**

3    I.      INTRODUCTION ......................................................................................................... 1

4    II.     ARGUMENT ................................................................................................................. 1

     A.      Section 230 Bars Plaintiffs' Meeting Disruption Claims......................................... 1

5            1.      Zoom is an interactive computer service (first Section 230 element)......... 1

6            2.      Plaintiffs seek to hold Zoom liable as a publisher or speaker of
                     third-party content (second and third Section 230 elements)...................... 2

7    B.      Plaintiffs' Claims Fail Because They Do Not Plausibly Allege Personal
             Harm........................................................................................................................... 4

8    C.      Plaintiffs Fail to State a Claim for Invasion of Privacy Under the California
9            Constitution or Common Law ................................................................................... 4

10   D.      Plaintiffs Fail to State a Claim for Negligence ....................................................... 6

             1.      The economic loss rule bars Plaintiffs' claims ........................................... 6

11           2.      Plaintiffs have failed to plead the elements of negligence.......................... 7

12   E.      Plaintiffs Cannot State a Claim for Breach of an Implied Contract...................... 10

13   F.      Plaintiffs' Claim for Breach of the Implied Covenant Fails ................................. 11

     G.      Plaintiffs Fail to State a Claim for Violation of CDAFA...................................... 11

14   H.      Plaintiffs' Fraud-Based Claims Fail (UCL, CLRA, Fraudulent
15           Concealment) .......................................................................................................... 12

             1.      Plaintiffs fail to plead fraud with particularity under Rule 9(b)............... 12

16           2.      Plaintiffs improperly bring a CLRA claim for damages........................... 13

17           3.      The non-purchasing Plaintiffs may not bring UCL claims ....................... 14

18           4.      Plaintiffs fail to state a claim under UCL's unlawful and unfair
                     prongs........................................................................................................ 14

19   I.      Plaintiffs' Unjust Enrichment Claim Fails ............................................................. 15

20   III.    CONCLUSION ........................................................................................................... 15

21

22

23

24

25

26

27

28

FIRM NAME
ATTORNEYS AT LAW
OFFICE ADDRESS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aas v. Super Ct.*,
   24 Cal. 4th 627 (2000) ................................................................................................ 9, 10

*In re Anthem, Inc. Data Breach Litig.*,
   162 F. Supp. 3d 953 (N.D. Cal. 2016) .............................................................................. 15

*Aron v. U-Haul Co. of Cal.*,
   143 Cal. App. 4th 796 (2006) ........................................................................................... 14

*Arroyo v. Chattem, Inc.*,
   926 F. Supp. 2d 1070 (N.D. Cal. 2012) ............................................................................ 13

*Astiana v. Hain Celestial Group, Inc.*,
   783 F.3d 753 (9th Cir. 2015) ............................................................................................. 15

*Baba v. Hewlett-Packard Co.*,
   No. C 09-05946, 2010 WL 2486353 (N.D. Cal. June 16, 2010) ........................................ 14

*Banga v. Equifax Info. Servs. LLC*,
   No. 14-cv-03038, 2015 WL 3799546 (N.D. Cal. June 18, 2015) ....................................... 4

*Batzel v. Smith*,
   333 F.3d 1018 (9th Cir. 2003) ............................................................................................. 2

*Carpenter v. United States*,
   138 S. Ct. 2206 (2018) ........................................................................................................ 5

*Castillo v. Seagate Tech., LLC*,
   No. 16-cv-01958, 2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) ...................................... 7

*Coulter v. Bank of Am.*,
   28 Cal. App. 4th 923 (1994) ............................................................................................... 6

*Doe v. GTE Corp.*,
   347 F.3d 655 (7th Cir. 2003) ............................................................................................... 2

*Doe v. Internet Brands*,
   824 F.3d 846 (9th Cir. 2016) ............................................................................................... 8

*Doe v. Internet Brands*,
   No. CV 12-3626, 2016 U.S. Dist. Lexis 192144 (C.D. Cal. Nov. 14, 2016) ...................... 8

*Doe v. MySpace, Inc.*,
   528 F.3d 413 (5th Cir. 2008) ............................................................................................... 3

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

**DEFENDANT ZOOM'S REPLY
ISO MOTION TO DISMISS FAC
MASTER CASE NO. 5:20-CV-02155-LHK**

*Dryoff v. Ultimate Software Grp., Inc.*,
934 F.3d 1093 (9th Cir. 2019)................................................................................................ 2

*Dyroff v. Ultimate Software Grp., Inc.*,
No. 17-cv-05359, 2017 WL 5665670 (N.D. Cal. Nov. 26, 2017), *aff'd*, 934
F.3d 1093 (9th Cir. 2010)...................................................................................................... 9

*Ehret v. Uber Techs., Inc.*,
68 F. Supp. 3d 1121 (N.D. Cal. 2014) ................................................................................ 12

*In re Facebook Internet Tracking Litig.*,
263 F. Supp. 3d 836 (N.D. Cal. 2017) .......................................................................*passim*

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .................................................................................. 9

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020).......................................................................................... 6, 11

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
521 F.3d 1157 (9th Cir. 2008) .............................................................................................. 1

*Fed. Agency of News LLC v. Facebook, Inc.*,
432 F. Supp. 3d 1107 (N.D. Cal. 2020) ............................................................................... 2

*Fields v. Twitter, Inc.*,
217 F. Supp. 3d 1116 (N.D. Cal. 2016) ............................................................................... 2

*Gitson v. Trader Joe's Co.*,
No. 13-cv-01333, 2014 WL 1048640 (N.D. Cal. Mar. 14, 2014)...................................... 13

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .................................................................................. 5

*Green v. Am. Online (AOL)*,
318 F.3d 465 (3d Cir. 2003).............................................................................................. 2, 3

*Herrick v. Grindr, LLC*,
306 F. Supp. 3d 579 (S.D.N.Y. 2018), *aff'd* 765 F. App'x 586 (2d Cir. 2019) ...................... 8

*Herskowitz v. Apple Inc.*,
940 F. Supp. 2d 1131 (N.D. Cal. 2013) ............................................................................. 15

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........................................................................ 5, 11

*Jane Doe No. 1 v. Backpage.com, LLC*,
817 F.3d 12 (1st Cir. 2016)................................................................................................... 3

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

**DEFENDANT ZOOM'S REPLY**
**ISO MOTION TO DISMISS FAC**
**MASTER CASE NO. 5:20-CV-02155-LHK**

*La Asociacion De Trabajadores De Lake Forest v. City of Lake Forest*,
No. SA CV 07-250, 2008 WL 11411732 (C.D. Cal. Aug. 18, 2008), *aff'd sub nom.*, 624 F.3d 1083 (9th Cir. 2010)................................................................ 9, 10

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...................................................... 4, 9

*Marolda v. Symantec Corp.*,
672 F. Supp. 2d 992 (N.D. Cal. 2009) .......................................................... 13

*Nevarez v. Forty Niners Football Co.*,
No. 16-cv-07013, 2017 WL 3492110 (N.D. Cal. Aug. 15, 2017) ......................................... 11

*Nunes v. Twitter, Inc.*,
194 F. Supp. 3d 959 (N.D. Cal 2016) ............................................................. 3

*Oestreicher v. Alienware Corp.*,
544 F. Supp. 2d 964 (N.D. Cal. 2008) ........................................................... 15

*Philips v. Ford Motor Co.*,
No. 14-CV-02989, 2015 WL 4111448 (N.D. Cal. July 7, 2015)................................... 12, 13

*Pirozzi v. Apple Inc.*,
913 F. Supp. 2d 840 (N.D. Cal. 2012) ........................................................... 13

*R Power Biofuels, LLC v. Chemex LLC*,
No. 16-CV-00716, 2016 WL 6663002 (N.D. Cal. Nov. 11, 2016)................................... 6, 7

*Sanchez v. Lending Tree LLC*,
No. 10CV1593, 2010 WL 3983390 (S.D. Cal. Oct. 12, 2010) .................................... 8

*SCC Acquisitions, Inc. v. Superior Court*,
243 Cal. App. 4th 741 (2015) ..................................................................... 6

*Tarasoff v. Regents of Univ. of Cal.*,
17 Cal. 3d 425 (1976) ............................................................................... 9

*Tietsworth v. Sears*,
720 F. Supp. 2d 1123 (N.D. Cal. 2010) ............................................... 8, 11, 14

*In re Yahoo! Inc. Customer Data Security Breach Litigation*,
313 F. Supp. 3d 1113 (N.D. Cal. 2018) ......................................................... 7

**Statutes**

47 U.S.C. § 230................................................................................... 1, 2

Cal. Pen. Code § 502............................................................................. 11

Cooley LLP
Attorneys at Law
San Francisco

## I.   INTRODUCTION

Plaintiffs' Opposition to Zoom's Motion to Dismiss only underscores the failings of the First Amended Complaint ("FAC").  The Opposition fails to refute (and, in many cases, fails to address) Zoom's arguments and cited authority, instead pointing to various readily distinguishable cases inapplicable here.  Among other flaws, Plaintiffs improperly seek to hold Zoom liable for third-party content, fail to allege harm from the non-sensitive technical device data they claim was shared, and fail to identify any misrepresentations or omissions they relied upon surrounding end-to-end encryption.  In short, Plaintiffs' Opposition confirms that they have pled nothing more than cursory, abstract, and hyperbolic complaints about Zoom's practices, rather than the specific allegations of cognizable harm required to support their claims.  Dismissal should be granted.

## II.   ARGUMENT

### A.   Section 230 Bars Plaintiffs' Meeting Disruption Claims.

Plaintiffs' meeting disruption claims seek to hold Zoom liable for content presented by third parties in Zoom meetings and are thus barred by Section 230.  *See Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1172 n.32 (9th Cir. 2008) (explaining that "any claim that can be boiled down to the failure of an interactive computer service to edit or block user-generated content that it believes was tendered for posting online" is "the very activity Congress sought to immunize" (citation omitted)).  Plaintiffs' attempts to evade Section 230 fail. To the contrary, each of the elements of Section 230 immunity is plainly met.[1]

#### 1.   Zoom is an interactive computer service (first Section 230 element).

Plaintiffs' argument that Zoom is not an interactive computer service ("ICS")—the first Section 230 element—has no support.  An ICS is defined to be "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server[.]"  47 U.S.C. § 230(f)(2).  Zoom's videoconferencing platform—which connects multiple users with one another through a computer service—clearly meets this definition.

---

[1] Plaintiffs incorrectly state that Zoom "suggest[ed] that Plaintiffs' invasion of privacy and negligence claims are premised solely on Zoombombing [sic]."  Opp. at 3 n.2.  In fact, Zoom has explained that, although those are the only claims *explicitly* predicated in part on meeting disruptions, Section 230 applies to any meeting disruption theory of liability.  *See* Mot. at 4 n.4.

Cooley LLP
Attorneys at Law
San Francisco

1

DEFENDANT ZOOM'S REPLY
ISO MOTION TO DISMISS FAC
MASTER CASE NO. 5:20-CV-02155-LHK

Plaintiffs do not address the obvious fit between Zoom and the statutory language, instead arguing that Zoom is not an ICS because its users do not post publicly.  Opp. at 3-4.[2]  Plaintiffs' argument lacks authority and is contradicted by the numerous cases in which "courts have applied the CDA to bar claims predicated on a defendant's transmission of **nonpublic** messages[.]"  *Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1128-29 (N.D. Cal. 2016) (emphasis added) (applying Section 230 immunity to Twitter's Direct Messaging); *Batzel v. Smith*, 333 F.3d 1018, 1031 (9th Cir. 2003) (granting Section 230 immunity to defendant for claims arising from third-party content in email); *Dryoff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097-98 (9th Cir. 2019) (similar).

Plaintiffs also make the unsupported argument that Zoom is not an ICS because it is a "modern-day telephone utility[.]"  Opp. at 4.  But whatever similarities may exist do not alter that Zoom is an ICS.  Indeed, courts have analogized online services to telephone services in reasoning that Section 230 **applies**.  *See Green v. Am. Online (AOL)*, 318 F.3d 465, 469 (3d Cir. 2003) (granting immunity, noting that "[c]hat rooms are a modern-day analog to yesteryear's telephone party lines and allow individual parties to 'talk' to [many] parties at one time"); *Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003) ("Just as the telephone company is not liable as an aider and abettor for tapes or narcotics sold by phone, . . . so a web host cannot be classified as an aider and abettor of criminal activities conducted through access to the Internet.").[3]

### 2.   Plaintiffs seek to hold Zoom liable as a publisher or speaker of third-party content (second and third Section 230 elements).

Plaintiffs' theories of liability based on meeting disruptions also unquestionably seek to hold Zoom liable as a publisher or speaker of third-party content—the second two elements for Section 230's applicability.  *See* Mot. at 6.  Plaintiffs do not dispute that the allegedly harmful content at issue was posted by third parties and that Zoom played no role in authoring it.

---

[2] Plaintiffs' argument ignores that many Zoom meetings (like the church services offered by Plaintiff Saint Paulus Lutheran Church) are held publicly, and much of the content on sites like LinkedIn and Facebook is *non*-public and instead only shared with contacts.

[3] Nor does Plaintiffs' erroneous argument that "the number of users is irrelevant under Section 230" refute that Zoom is an ICS.  Opp. at 4.  The number of users is relevant because an ICS is defined as connecting "multiple users to a computer server[.]"  47 U.S.C. § 230(f)(2).  As a "web-based platform or service" with millions of users, Zoom "unquestionably" meets the definition of an ICS. *See Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1117 (N.D. Cal. 2020).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

**DEFENDANT ZOOM'S REPLY
ISO MOTION TO DISMISS FAC
MASTER CASE NO. 5:20-CV-02155-LHK**

Instead, Plaintiffs argue that Section 230 does not apply because Plaintiffs "seek to hold Zoom liable for its failure to provide security and safeguards to prevent meeting intrusions," not as a publisher or speaker of content. Opp. at 5. Courts routinely reject such attempts to skirt Section 230. Mot. at 6-7; *see, e.g.*, *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 21 (1st Cir. 2016); *Green*, 318 F.3d at 470. Plaintiffs offer no reason to disregard this precedent.[4] Plaintiffs argue that Zoom's cited cases involved public posting, but, as discussed above, Section 230 and case law make no such distinction. *See supra* § II.A.1. Plaintiffs also attempt to distinguish *Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008), noting that "the plaintiff alleged MySpace should have excluded *the plaintiff*, who lied about her age, from using the social network, not the assailant." Opp. at 5. But it does not matter under Section 230 whether the content is the plaintiff's or a third party's, and Plaintiffs cite no contrary authority. *MySpace* characterized the allegations that ran afoul of Section 230 as "MySpace failed to implement basic safety measures to prevent sexual predators," i.e., third parties, "from communicating with minors[.]" 528 F.3d at 416. Likewise here, Plaintiffs allege that Zoom "fail[ed] to provide security and safeguards to prevent meeting intrusions." Opp. at 5. Plaintiffs' efforts to plead around Section 230 by framing the allegations as a failure to provide "security and safeguards"—as opposed to a failure to "monitor content"—should be rejected.

Plaintiffs' unexplained citation of *Nunes v. Twitter, Inc.*, 194 F. Supp. 3d 959 (N.D. Cal 2016) only underscores why Plaintiffs' claim is about third-party content. In *Nunes*, plaintiff sought to hold Twitter liable under the Telephone Consumer Protection Act (TCPA) for sending text messages to users. *Id.* at 961. The court concluded that Twitter was not immune under Section 230 because it was Twitter's act of sending the text message that was alleged to have violated the TCPA. *Id.* at 968. In stark contrast, here it is the harmful nature of the content generated by third parties—not the fact of the transmission by Zoom—that forms the basis of Plaintiffs' claims.

In short, because Zoom is an ICS and Plaintiffs seek to hold Zoom liable as a publisher or speaker of third-party content that Zoom did not contribute to, the elements of Section 230

---

[4] Plaintiffs seek to distract by citing an irrelevant criminal complaint against a former Zoom employee, incorrectly suggesting that the employee's alleged conduct somehow shows that Zoom plays a direct role in "Zoombombings." Opp. at 2, 5-6. Plaintiffs' "Zoombombing" theory of liability has nothing to do with the allegations in that unrelated matter.

Cooley LLP
Attorneys at Law
San Francisco

3

DEFENDANT ZOOM'S REPLY
ISO MOTION TO DISMISS FAC
MASTER CASE NO. 5:20-CV-02155-LHK

immunity apply here to bar Plaintiffs' meeting disruption claims.

### B. Plaintiffs' Claims Fail Because They Do Not Plausibly Allege Personal Harm.

Zoom's Motion demonstrated that no Plaintiff has plausibly alleged personal harm under any theory of liability.  Mot. at 8-10.  Instead, the FAC makes only general allegations about harms that may be suffered, without tethering those claims to Plaintiffs themselves (as opposed to other users).  Plaintiffs' Opposition does nothing to change this conclusion.  Opp. at 2-3.  The Court should accordingly dismiss the FAC.

### C. Plaintiffs Fail to State a Claim for Invasion of Privacy Under the California Constitution or Common Law.

Plaintiffs' Opposition confirms that they fail to meet the "high bar" to adequately plead an invasion-of-privacy claim.  *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012); Mot. at 10.  They fail to allege (1) a personal intrusion upon reasonable expectations of privacy or (2) an intrusion that constitutes an egregious breach of social norms.  *See In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 846 (N.D. Cal. 2017).

**First**, Plaintiffs do not allege that Zoom disseminated or misused any of ***their*** information to a third party, let alone any extremely sensitive information.  *See* Mot. at 11-12; *Banga v. Equifax Info. Servs. LLC*, No. 14-cv-03038, 2015 WL 3799546, at *11 (N.D. Cal. June 18, 2015) (dismissing invasion of privacy claim where plaintiff "has not adequately alleged what, if any, offensive and objectionable facts about her were disclosed to third parties").  The only third parties specifically alleged are Facebook, Google, and LinkedIn.[5]  With respect to the Facebook SDK, although Plaintiffs argue that "*everyone* who uses Zoom's application integrating the [Facebook] SDK" had their data disclosed to Facebook, Opp. at 6, nowhere does the FAC allege that *Plaintiffs* themselves used a version of the Zoom application that contained the SDK, which only affected iOS app users.  *See* FAC ¶¶ 5, 17-59; Mot. at 11-12.  Plaintiffs' failure to plead their own use of an application incorporating the Facebook SDK requires dismissal.  Nor does the FAC plead facts

---

[5] Plaintiffs list, without more, a few other third parties that allegedly received Zoom user data, but this conclusory allegation—which does not plead what data is at issue or how these third parties allegedly received it—is facially inadequate to support any claim.  *See* FAC ¶ 128 ("Zoom also sends personal data about their users to hotjar, Zendesk, AdRoll, Bing, and others.").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

**DEFENDANT ZOOM'S REPLY
ISO MOTION TO DISMISS FAC
MASTER CASE NO. 5:20-CV-02155-LHK**

allowing an inference that *Plaintiffs'* data—as opposed to some other users' data—was allegedly disclosed to Google or LinkedIn.[6]  Instead of providing facts allowing an inference that they were personally impacted, Plaintiffs claim, incorrectly, that they can sufficiently allege an invasion of privacy claim without these details.  Opp. at 6; *cf.* Mot. at 11-12; *see also In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 816, 829-30 (N.D. Cal. 2020) (dismissing invasion of privacy and wiretap claims where plaintiffs did not allege that any of the alleged "recordings covered Plaintiffs' communications rather than the communications of unnamed third parties").

**Second**, courts regularly dismiss invasion of privacy claims at the pleading stage where, as here, the alleged information is not sensitive—which includes the location information alleged by Plaintiffs.  Opp. at 10; FAC ¶¶ 5, 78, 122–127, 106–110; *see also* Mot. at 12-13.  For example, in *iPhone Application Litigation*, this Court found that disclosure of  "unique device identifier number[s], personal data, and geolocation information" is "routine commercial behavior" that falls far short of the "egregious breach" required to state an invasion-of-privacy claim.  *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012).

Plaintiffs' Opposition offers no basis to disregard the holdings in *iPhone Application Litigation* and Zoom's other on-point authority, *see* Mot. at 12-13, instead incorrectly arguing that *Carpenter v. United States* and *Facebook Internet Tracking* are "the relevant authority."  Opp. at 10-11.  They are not.  *Carpenter* addressed the "narrow" question of "whether the Government conducts a search under the Fourth Amendment when it accesses historical cell phone records," or cell site location information.  *Carpenter v. United States*, 138 S. Ct. 2206, 2211–12 (2018).  Warrantless government surveillance is a far cry from the alleged disclosure of information that Plaintiffs admit millions of internet users share daily.  FAC ¶¶ 91–92.  *Facebook Internet Tracking* also concerned an entirely different scenario than Zoom's alleged conduct—that Facebook allegedly "compiled highly personalized profiles from [users'] sensitive browsing histories and habits," even "after users had logged out" of Facebook, which Facebook then "sold to advertisers

---

[6] Plaintiffs have not opposed Zoom's argument that Plaintiffs cannot state a claim for invasion of privacy based on any alleged disclosure to meeting intruders.  Mot. at 13:10-15.  And Plaintiffs' authority makes clear that their allegations would be insufficient in any case because they fail to identify any meeting during which private information was disclosed. Opp. at 6 n.3.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

**DEFENDANT ZOOM'S REPLY
ISO MOTION TO DISMISS FAC
MASTER CASE NO. 5:20-CV-02155-LHK**

1  to generate revenue." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 596, 603-04 (9th

2  Cir. 2020).  In contrast, Plaintiffs' allegation of third-party data-sharing is based on Zoom's alleged

3  transmission of non-sensitive technical device data that is widely shared by consumers through

4  countless apps every day.  Nowhere do Plaintiffs allege that Zoom (1) actively tracks their behavior

5  on third-party sites, let alone after users have logged out of Zoom, or (2) compiles and sells their

6  data to generate revenue.  Plaintiffs concede this distinction.  *See* Opp. at 9 (acknowledging that in

7  *iPhone App. Litigation*, unlike in *Facebook Internet Tracking,* plaintiffs did not "allege tracking

8  outside of active use of the defendants' services").  Plaintiffs also concede for the "benign

9  categories of data" at issue, third parties would have to use it in a particular manner to cause the

10  Plaintiffs harm.  *Id.* at 7.  The pleading standards require more than purely theoretical harm.

11  **Third**, contrary to Plaintiffs' argument, Opp. at 6 n.3, "a corporation may not pursue a

12  common law action for invasion of privacy."  *Coulter v. Bank of Am*., 28 Cal. App. 4th 923, 930

13  (1994); Mot. at 13.  With respect to the California Constitution, Plaintiffs' citations are unavailing,

14  Opp. at 6 n.3, as both pre-date *SCC Acquisitions, Inc. v. Superior Court*, 243 Cal. App. 4th 741,

15  755–56 (2015), which held that the California Constitution "protects the privacy rights of 'people'

16  only."  Thus, the institutional Plaintiffs' claims should be dismissed.

> **D.**   **Plaintiffs Fail to State a Claim for Negligence.**
>
> **1.**   **The economic loss rule bars Plaintiffs' claims.**

19  Plaintiffs' negligence claim alleges only economic harm absent personal injury or property

20  damages and thus is barred by the economic loss rule.   Plaintiffs' efforts to avoid that doctrine fail.

21  **First**, Plaintiffs invoke the independent duty exception to the economic loss rule in seeking

22  to sustain their negligence claim, with repeated (and puzzling) references to their separate invasion

23  of privacy claim.  Opp. at 11-12.  As Plaintiffs' own cited authority makes clear, Plaintiffs'

24  argument misapprehends the independent duty exception, which concerns the circumstances in

25  which tort damages are available for an alleged breach of contract.  *See R Power Biofuels, LLC v.*

26  *Chemex LLC*, No. 16-CV-00716, 2016 WL 6663002, at *10 (N.D. Cal. Nov. 11, 2016) (inquiring

27  whether "the defendant's conduct violate[d] a duty independent of the contract arising from

28  principles of tort law") (internal quotation marks and citation omitted).  Moreover, even if that

Cooley LLP
Attorneys at Law
San Francisco

6

**Defendant Zoom's Reply
ISO Motion to Dismiss FAC
Master Case No. 5:20-cv-02155-LHK**

exception were to have any bearing on this case, it applies only where the tortious conduct pled in addition to the contract is intentional in nature.  *See id.* (explaining that the exception may apply in cases of "fraud or conversion," "deceit or undue coercion," or "knowing that such a breach will cause severe, unmitigable harm in the form of mental anguish, personal hardship, or substantial consequential damages").   None of those circumstances are pled or at issue here, and the independent duty exception has no application here.  *See, e.g.*, *Castillo v. Seagate Tech., LLC*, No. 16-cv-01958, 2016 WL 9280242, at \*5-6 (N.D. Cal. Sept. 14, 2016) (concluding privacy-based negligence claim was barred by economic loss doctrine).

*Second*, Plaintiffs have also failed to show that the "special relationship" exception to the economic loss rule applies.  Plaintiffs do not respond to the dispositive cases holding that it is not appropriate to find a special relationship in "everyday consumer transactions."  *See* Mot. at 14. And Plaintiffs' sole authority in support of a special relationship, *In re Yahoo! Inc. Customer Data Security Breach Litigation*, 313 F. Supp. 3d 1113 (N.D. Cal. 2018), does not apply here.  In *Yahoo!*, the Court found a special relationship in part because plaintiffs alleged that Yahoo! knew it had inadequate data security, failed to promptly notify plaintiffs of a data breach, and consciously concealed its knowledge and failure of its security from Plaintiffs.  *Id.* at 1133.  Here, by contrast, Zoom informed users of the alleged issues as they arose and has already largely addressed the issues about which Plaintiffs complain.  *See, e.g.*, FAC ¶ 5 (noting that Zoom promptly addressed the Facebook SDK with its users and ultimately removed the Facebook SDK from its iOS client).[7]

### 2.    Plaintiffs have failed to plead the elements of negligence.

Plaintiffs fail to sufficiently plead the elements of negligence: duty, breach, causation, and resulting damages; among other things, Zoom does not have a duty to warn of its users' behavior.

*First*, Plaintiffs contradict their own FAC in arguing  that Zoom breached a duty it allegedly owed to Plaintiffs by failing to prevent third parties from accessing their data without consent.[8]

---

[7] Plaintiffs also assert the economic loss rule does not apply because they suffered personal injury, *see* Opp. at 11, but they fail to explain how that is so.  If Plaintiffs are referring to their emotional distress allegations, those claims fail for different reasons.  *See infra*, n.11.

[8] Plaintiffs have abandoned their allegation that Zoom breached its duty by "failing to implement and maintain reasonable security protections and protocols[.]"  FAC ¶ 216; *see* Opp. at 14 (arguing

Cooley LLP
Attorneys at Law
San Francisco

7

Defendant Zoom's Reply
ISO Motion to Dismiss FAC
Master Case No. 5:20-cv-02155-LHK

The FAC pleads that Zoom intentionally shared data, not that it was shared as the result of an allegedly negligent lack of oversight.  *Compare* FAC ¶ 216 (alleging Zoom "*knowingly* shar[ed] and/or s[old] customers' personal data to third parties . . . Facebook and LinkedIn"), *with* Opp. at 14 (arguing Zoom "lack[ed] [] oversight in allowing users' information to be collected by Facebook" and "fail[ed] to vet or test third party software prior to implementation").  Plaintiffs cannot have it both ways.  Plaintiffs' argument that Zoom is liable for "a total lack of oversight in allowing users' information to be collected by Facebook," Opp. at 14, is not grounded in the FAC, which instead alleges that the Facebook SDK is a common "software development tool[]" used by "app developers[.]"  FAC ¶¶ 76-77.  Plaintiffs cannot amend their FAC through their Opposition.  *See Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1145 (N.D. Cal. 2010) (it "is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss.").  Moreover, Plaintiffs' changed approach demonstrates that their mere assertion that Zoom breached its duty to protect their personal information by using the Facebook SDK "is a conclusory statement and is therefore insufficient to establish the 'breach' element[.]"  *Sanchez v. Lending Tree LLC*, No. 10CV1593, 2010 WL 3983390, at *2 (S.D. Cal. Oct. 12, 2010); Mot. at 15-16.

**Second,** Plaintiffs' failure to warn argument is contrary to settled authority that websites do not have a duty to warn of their users' behaviors.  *See* Mot. at 15 n.11 (collecting cases).  *Doe v. Internet Brands*, 824 F.3d 846 (9th Cir. 2016), does not help Plaintiffs.  While that case declined to apply Section 230 to bar a failure to warn claim that concerned *offline* behavior, *id.* at 850,[9] the district court on remand dismissed the claim anyway because there was no duty to warn, *see* No. CV 12-3626, 2016 U.S. Dist. Lexis 192144, at *12 (C.D. Cal. Nov. 14, 2016).  Accordingly,

---

only that Zoom breached a duty to prevent the alleged data sharing through third party integrations like the Facebook SDK).

[9] Plaintiffs confuse the Ninth Circuit's holding in *Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016), which addressed the application of Section 230 only, without a holding on the merits of the failure to warn claim.  *See* Opp. at 14-15; *see also Internet Brands*, 824 F.3d at 854 ("We express no opinion on the viability of the failure to warn allegations on the merits.").  And Plaintiffs do not address Zoom's argument that the Ninth Circuit's holding in *Internet Brands* does not extend to failure to warn claims based on *online* behavior. *See Internet Brands, Inc.*, 824 F.3d at 851-52 (emphasizing that claim did not arise from online behavior); *see, e.g.*, *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 588-91 (S.D.N.Y. 2018), *aff'd* 765 F. App'x 586 (2d Cir. 2019) (failure to warn about user-generated content claim was barred by Section 230).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

**DEFENDANT ZOOM'S REPLY
ISO MOTION TO DISMISS FAC
MASTER CASE NO. 5:20-CV-02155-LHK**

Plaintiffs offer no reason why this Court should not conclude, as other courts have, that Plaintiffs' failure to warn claim fails because Zoom does not have a duty to warn of its users' behavior. *See, e.g.*, *Dyroff v. Ultimate Software Grp., Inc.*, No. 17-cv-05359, 2017 WL 5665670, at *14-15 (N.D. Cal. Nov. 26, 2017), *aff'd*, 934 F.3d 1093 (9th Cir. 2010).

Rather than confront the contrary authority, Plaintiffs attempt to recharacterize the present case as a "product liability defect" case. Opp. at 15-16. That suggestion is contradicted by the FAC and Opposition, which allege and argue that Zoom failed to warn of "known offenders" and not any purported product defect. *See* Opp. at 15; FAC ¶ 217. Accordingly, this case is controlled by the well-established precedent that holds that there is no duty to warn of third-party behavior absent a special relationship. *See Tarasoff v. Regents of Univ. of Cal.*, 17 Cal. 3d 425, 435 (1976). Because Plaintiffs have not even attempted to argue that such a special relationship exists here, Mot. at 15, Plaintiffs' failure to warn claim should be dismissed with prejudice.

**Finally,** Plaintiffs have still failed to identify any cognizable injury to support their negligence claim. Plaintiffs again conflate their invasion of privacy claim and their negligence claim in a misguided attempt to show that they suffered damage. *See* Opp. at 16. But Plaintiffs cite no case holding that a Plaintiff has pleaded the injury element of a privacy-inspired negligence claim simply because the claim appeals to the concept of privacy.[10] To the contrary, courts routinely dismiss privacy-inspired negligence claims for failure to plead an "appreciable, nonspeculative, present injury," as such injury is an essential element of a negligence claim. *Aas v. Super Ct.*, 24 Cal. 4th 627, 646 (2000); *see, e.g.*, *Low*, 900 F. Supp. 2d at 1032 (dismissing negligence claim based on disclosure of data as plaintiffs failed to allege an injury).

Further, aside from contending (wrongly) that Plaintiff Oak Life has organizational standing to pursue an emotional distress claim,[11] Plaintiffs do not dispute that all other Plaintiffs' allegations

---

[10] The cited portion of *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019), is inapposite here, as it discusses a breach of contract claim. *Cf.* Opp. at 16. And in any event, unlike that case, Plaintiffs have failed to allege any negligent mishandling of consumer information. *See supra* II.D.2.

[11] Plaintiffs note that Plaintiff Oak Life hired trauma counsellors to support its congregants after an alleged meeting disruption, but Plaintiffs fail to explain how this constitutes the necessary diversion of resources from its core mission—"serving the marginalized and underserved in the community," "many of whom [are] trauma survivors[.]" FAC ¶¶ 39, 41. *See La Asociacion De Trabajadores*

1    of emotional distress are conclusory and insufficient to sustain their negligence claim.  Mot. at 16-

2    17.   Instead, in apparent recognition that Plaintiffs have failed to allege any "appreciable,

3    nonspeculative, present injury" (emotional or otherwise), *Aas*, 24 Cal. 4th at 646, Plaintiffs argue

4    that this Court should save its adjudication of damages for the fact stage.  *See* Opp. at 16.   That

5    argument ignores that injury is an element of any negligence claim, and that courts routinely dismiss

6    negligence claims for failure to plead such injury.  *See* Mot. at 16-17 (collecting cases).

### E.    Plaintiffs Cannot State a Claim for Breach of an Implied Contract.

8            Zoom's Motion establishes that Plaintiffs may not maintain an implied contract claim

9    because an express written agreement—Zoom's terms of service ("TOS")—already governs the

10   scope of Plaintiffs' contract claims.  Mot. at 17-18.  Plaintiffs' efforts to avoid this outcome fail.

11          In arguing that the existence of an implied contract is inappropriate for determination on a

12   motion to dismiss, Opp. at 16, Plaintiffs ignore the authority rejecting such an argument where, as

13   here, there is an express contract between the parties (*i.e.*, the TOS) that includes either an

14   integration clause or that pertains directly to the subject matter of the claim.  Mot. at 18.  None of

15   Plaintiffs' cited authorities addresses this scenario.  Nor do Plaintiffs acknowledge or address the

16   effect of the TOS and its integration clause on their implied contract claims.

17          Rather than confront the TOS and its coverage of the claims at issue, Plaintiffs seek to avoid

18   application of the TOS by denying that Plaintiffs agreed to the TOS.  Opp. at 17-18.  This approach

19   deviates from the FAC, which recognized the TOS as binding, but disputed their applicability to

20   the claims at issue.  *See* FAC ¶ 228 (alleging an implied contract "separate and apart from Zoom's

21   terms of service").  Plaintiffs also falsely state that "Zoom has not submitted any evidence that

22   Plaintiffs agreed to the TOS."  Opp. at 17.  Zoom's Motion explained, by reference to a declaration

23   describing Zoom's sign-up flow, the TOS necessarily binds Plaintiffs who, other than M.F., each

24   allege to be a registered Zoom user.  FAC ¶¶ 17-59; Mot. at 17-18; *see also* ECF No. 121-1 ¶ 4 ("An

25   individual cannot register for [a Zoom] account without . . . agreeing to the Terms of Service.").

26   That declaration, coupled with Plaintiffs' allegation that they registered for Zoom's services,

27

28   *De Lake Forest ("ATLF") v. City of Lake Forest*, No. SA CV 07-250, 2008 WL 11411732, at *6
     (C.D. Cal. Aug. 18, 2008), *aff'd sub nom.,* 624 F.3d 1083 (9th Cir. 2010) (no organizational
     standing where plaintiff's alleged diversion of resources "are directly in line with its mission").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10                                                    DEFENDANT ZOOM'S REPLY
                                                     ISO MOTION TO DISMISS FAC
                                                     MASTER CASE NO. 5:20-CV-02155-LHK

establishes that Plaintiffs entered into a binding contract with Zoom, thus negating their implied contract claim.  *See, e.g.*, *Nevarez v. Forty Niners Football Co.*, No. 16-cv-07013, 2017 WL 3492110, at *8-9 (N.D. Cal. Aug. 15, 2017) (holding that signing-in and signing-up for a service with similar assent language and flow bound the parties to the linked terms).

### F.      Plaintiffs' Claim for Breach of the Implied Covenant Fails.

Claims for breach of the implied covenant of good faith and fair dealing cannot be duplicative of breach of contract claims, Mot. at 18-19, and yet the allegations supporting Plaintiffs' breach of implied contract and implied covenant claims are based on the same conduct.  *Compare* FAC ¶¶ 230, 233 *with* FAC ¶¶ 241-242.  The implied covenant claim should be dismissed.

Plaintiffs seek to avoid this dispositive law by now claiming that Zoom acted in "bad faith" to frustrate Plaintiffs' receipt of their contract benefits.  Opp. at 19.  But the Opposition relies on argument and legal theories not alleged in their pleading.  *See* FAC ¶¶ 239-243 (alleging breach of implied covenant claim with no allegations of bad faith).  Plaintiffs may not seek to salvage their implied covenant claim this way.  *Tietsworth*, 720 F. Supp. 2d at 1145.

### G.      Plaintiffs Fail to State a Claim for Violation of CDAFA.

Rather than refute the multiple reasons Zoom argued Plaintiffs' CDAFA claim must be dismissed, Plaintiffs simply repeat the FAC's conclusory allegations, Opp. at 25, which are patently insufficient.  *See* Mot. at 19-20.  Plaintiffs also do not even attempt to distinguish Zoom's cited authority or raise any of their own.  Instead, Plaintiffs resort to baseless attacks against Zoom, labeling the Company's software a "computer contaminant."  Opp. at 25.  Zoom's videoconferencing platform is used by millions of consumers and institutions around the world, including this Court.  It is plainly not a "virus," "worm," or "malware."  *See* Cal. Pen. Code § 502(b)(12)) and *iPhone Application Litig.*, 2011 WL 4403963, at *12–13.

Plaintiffs also unsuccessfully attempt to shoehorn the FAC's allegations into the entirely different fact pattern presented in *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020).  Opp. at 24-25.  This attempt fails.  *Facebook Internet Tracking* did not address, as here, whether plaintiffs had sufficiently alleged a CDAFA claim under Rule 12(b)(6), but addressed whether an unjust enrichment theory of economic injury could sufficiently confer standing for

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

**DEFENDANT ZOOM'S REPLY
ISO MOTION TO DISMISS FAC
MASTER CASE NO. 5:20-CV-02155-LHK**

1    plaintiffs to bring a CDAFA claim under Rule 12(b)(1).  *Id.* at 599-601.  Moreover, plaintiffs in

2    *Facebook Internet Tracking* alleged that Facebook directly collects "users' browsing histories when

3    they visit third-party websites [even when they are not logged into Facebook], and then compiles

4    these browsing histories into personal profiles which are sold to advertisers to generate revenue."

5    *Id.* at 596.  There are no such allegations against Zoom.  *See supra* § II.C.  Plaintiffs have not (and

6    cannot) allege that Zoom generates revenue by compiling and selling its users' data to advertisers.

7    **H.      Plaintiffs' Fraud-Based Claims Fail (UCL, CLRA, Fraudulent Concealment).**

8        **1.      Plaintiffs fail to plead fraud with particularity under Rule 9(b).**

9        Plaintiffs' Opposition does not dispute that Rule 9(b) requires pleading specific descriptions

10   of "the who what when and how" of the misconduct charged.  Opp. at 20:28-21:1.  Nor do they

11   show that the FAC meets these requirements, as they largely (and improperly) rely on generalized

12   string cites to paragraphs in the FAC, rather than identifying the specifics required by Rule 9(b).

13   Plaintiffs also gloss over the FAC's key shortcoming on this issue: which, if any, of Zoom's alleged

14   misrepresentations or omissions the individual Plaintiffs actually *saw* and *relied* on.  Opp. at 20-

15   21.  Plaintiffs' failure to plead these allegations is fatally insufficient.  Mot. at 20-22.

16       **First**, named plaintiffs must allege *who* actually saw *what* misrepresentations/omissions

17   and *when* and *where* they saw them.  Mot. at 21:4-14.  But Plaintiffs' Opposition does not identify

18   a single such allegation in the FAC.  *See* Opp. at 20-21 (citing FAC ¶¶ 74, 77-86, 107-110, 124-

19   126, 129-143, 163-168, 170-171, 181).  Instead, Plaintiffs attempt to avoid this black-letter law by

20   arguing, incorrectly, that they must only "identify[] the statements on Zoom's website and privacy

21   policy that are reasonably likely to mislead."  Opp. at 20:17-24.  Even Plaintiffs' own cited

22   authority, however, dispels any such argument and instead mandates that where, as here, a

23   misrepresentations/omissions claim is tied to particular statements, Opp. at 20-21, a plaintiff's

24   allegations must be "sufficiently specific as to *when* and *where*" defendant made them to her.  *Ehret*

25   *v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1129 (N.D. Cal. 2014) (plaintiff satisfied Rule 9(b) by

26   alleging (1) on what date she used Uber's services, (2) what alleged misrepresentations by Uber

27   she saw before doing so, and (3) where Uber made the alleged misrepresentations) (emphasis

28   added); *see also Philips v. Ford Motor Co.*, No. 14-CV-02989, 2015 WL 4111448, at *12 (N.D.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

**DEFENDANT ZOOM'S REPLY
ISO MOTION TO DISMISS FAC
MASTER CASE NO. 5:20-CV-02155-LHK**

Cal. July 7, 2015) (similar; citing *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009)).  The FAC does not come close to meeting this standard.

**Second**, Plaintiffs' Opposition tacitly concedes that the only "reliance" pled in the FAC is the bare legal conclusion that Plaintiffs "would not have purchased Zoom but for the alleged misrepresentations."[12]  Opp. at 21.  Not only do these boilerplate, conclusory allegations contradict Plaintiffs' pleading that they had no choice but to use Zoom, Mot. at 21 (citing FAC ¶¶ 15, 145), but they are themselves deficient under Rule 9(b).  Relevant case law requires that Plaintiffs allege specific statements that they actually saw and relied on.  *See* Mot. at 21 (citing, *inter alia*, *Gitson v. Trader Joe's Co.*, No. 13-cv-01333, 2014 WL 1048640, at *8 (N.D. Cal. Mar. 14, 2014)).

**Third**, Rule 9(b) requires Plaintiffs to identify how and why the alleged misrepresentations/omissions were false as to them, Mot. at 21, but Plaintiffs' Opposition admits that they have not done so.  Opp. at 21-22.  And Plaintiffs' attempt to distinguish the authority cited by Zoom for this proposition, without raising any authority of their own, fails.[13]

### 2.    Plaintiffs improperly bring a CLRA claim for damages.

Plaintiffs do not contest that Plaintiffs Gmerek, Johnston, M.F., Jimenez, Cundle, Brice, Gormezano, Saint Paulus, Oak Life, and Simins's CLRA claims must be dismissed because they are not consumers as defined by the statute.  Mot. at 22-23; Opp. at 22.  Moreover, Plaintiffs do not dispute that the CLRA damages claims of the remaining Plaintiffs—Hartmann, Hirschberg, Garcia, and Doyle—must be dismissed if the Court finds they did not provide the required pre-suit notice to Zoom.  Mot. at 23-24; Opp. at 22.  Plaintiffs have provided no basis for believing that "Plaintiffs' counsel served Zoom" with such notice, and Zoom is aware of none.  Opp. at 22.  Plaintiffs' CLRA

---

[12] And while Plaintiffs claim to have relied on purported end-to-end encryption statements allegedly contained "in [Zoom's] application," such as the "green lock" symbol, they do not allege that they saw those statements, or when they saw them, let alone *prior to* purchase or use of Zoom's services. FAC ¶¶ 19, 166; Opp. at 2:5-7.  This is fatal.  *See, e.g.*, *Arroyo v. Chattem, Inc.*, 926 F. Supp. 2d 1070, 1080 (N.D. Cal. 2012) (dismissing fraud claims because the plaintiff failed to plead facts about actually reading the alleged misrepresentation and relying on it *prior to purchase*).  Nor could Plaintiffs, as representations in the Zoom product are never viewed by the consumer prior to use or purchase and therefore could not be relied upon in making the use or purchase decision.

[13] Like the plaintiff in *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012), Plaintiffs allege only that "other users' private information" was subject to disclosure—not *theirs. See supra* Section II.C.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFENDANT ZOOM'S REPLY
ISO MOTION TO DISMISS FAC
MASTER CASE NO. 5:20-CV-02155-LHK

1 damages claim thus should be dismissed with prejudice. Mot. at 23 (citing cases).

2         **3.**       **The non-purchasing Plaintiffs may not bring UCL claims.**

3       The non-purchasing Plaintiffs—Gmerek, Johnston, M.F., Jimenez, Cundle, Brice, and

4 Gormezano[14]—offer no viable theory of "lost money or property" for standing under the UCL.

5 First, Zoom has found no court that recognized a lost benefit of the bargain theory as a UCL injury

6 for users of a free service. Mot. at 23. Second, personal information does not constitute money or

7 property under the UCL. *Id.* Plaintiffs' Opposition seeks to avoid this conclusion by asserting that

8 the non-purchasing Plaintiffs may maintain a UCL claim by alleging to have instead "overpaid a

9 third party due to [Zoom's] unfair conduct," such as a therapy session "expected to be private."

10 Opp. at 22-23. But this argument likewise fails, including because it simply is not alleged anywhere

11 in the FAC.[15] Plaintiffs' unpleaded assertions in their Opposition cannot demonstrate the standing

12 required to save their UCL claim. *See Tietsworth*, 720 F. Supp. 2d at 1145.

13         **4.**       **Plaintiffs fail to state a claim under UCL's unlawful and unfair prongs.**

14       **No "Unlawful" Conduct:** Zoom's Motion set forth in detail why Plaintiffs have failed to

15 plead each statutory violation they allege. Mot. at 24. In response, Plaintiffs follow the same

16 approach as their FAC: asserting that statutes were violated with no allegation about how. Opp. at

17 23. Such conclusions devoid of any analysis cannot state a claim for relief. *See Baba v. Hewlett-*

18 *Packard Co.*, No. C 09-05946, 2010 WL 2486353, at *6 (N.D. Cal. June 16, 2010) ("[i]f plaintiffs

19 wish to base a UCL 'unlawfulness' claim on any one statute," they must "plead with particularity

---

[14] Plaintiffs argue that Ms. Gormezano is not a free Zoom user because she allegedly paid for a Zoom Pro Account, but the FAC alleges that it was Gormezano's physical therapy clinic that purchased Zoom's services, and not her. FAC ¶ 50.

[15] Moreover, Plaintiffs' cited authority makes clear that to allege a UCL claim based on alleged overpayment to third parties, the "loss of money" sufficient to create standing is the increased purchase price attributable to the actions or statements by the defendant. *See, e.g.*, *Aron v. U-Haul Co. of Cal.*, 143 Cal. App. 4th 796, 803, 805 (2006) (finding economic injury because "U-Haul's scheduled fees and practices forced customers to either" overpay third parties for "excess fuel in order to avoid [U-Haul's] fueling fees or be charged such fees."). Nowhere here however does Gormezano, or any other Plaintiff, allege that the price they paid (if any) for a third-party service was the result of Zoom's alleged misrepresentations/omissions. Nor does she allege that the price of her therapy sessions differed depending on whether her personal information was disclosed. Rather, presumably, Gormezano's psychologist chose what price to charge based on his or her training, specialization, and reputation.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFENDANT ZOOM'S REPLY
ISO MOTION TO DISMISS FAC
MASTER CASE NO. 5:20-CV-02155-LHK

1    how the facts of this case pertain to [those] specific statute[s].").  Plaintiffs cite *In re Anthem, Inc.*

2    *Data Breach Litig.*, 162 F. Supp. 3d 953 (N.D. Cal. 2016) in incorrectly claiming that Zoom's

3    argument "overstates the pleading requirements for the UCL's unlawful prong."  Opp. at 23.  To

4    the contrary, *Anthem* required that the complaint "identif[y] specific provisions of" the underlying

5    laws "allegedly violated."  *Anthem*, 162 F. Supp. 3d at 989.  Plaintiffs' laundry list fails to do so

6    here.  *See* Mot. at 24.

7         **No "Unfair" Conduct:** Plaintiffs' UCL unfair prong claim fails under either possible test:

8    (1) "tethering," because nowhere in the FAC or Opposition do Plaintiffs link any particular conduct

9    by Zoom to "specific constitutional, statutory, or regulatory provisions," and (2) "balancing,"

10   because Plaintiffs have not established that Zoom's conduct was "immoral, unethical, oppressive,

11   unscrupulous or substantially injurious to consumers," ***and that*** the harm outweighs the utility of

12   Zoom's conduct.  *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1145-46 (N.D. Cal. 2013); Mot.

13   at 24-25.  The absence of any harm attributable to Zoom, Mot. at 8-10, also precludes this claim.

14        **I.    Plaintiffs' Unjust Enrichment Claim Fails.**

15        As Plaintiffs' recognize, their unjust enrichment allegations are derivative of their UCL and

16   CLRA claims seeking restitution.  Opp. at 24; Mot. at 25.  Plaintiffs cite *Astiana v. Hain Celestial*

17   *Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) for the proposition that "[a] party may set out two

18   or more statements of a claim or defense alternatively[.]"  Opp. at 24.  Zoom does not argue

19   otherwise.  However, because Plaintiffs' UCL and CLRA claims must be dismissed, their derivative

20   unjust enrichment allegations must as well.  *See Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d

21   964, 975 (N.D. Cal. 2008) ("since plaintiff's [UCL and CLRA] claims have been dismissed,

22   plaintiff has no basis for its unjust enrichment claim").  Further, Plaintiffs do not dispute, and thus

23   concede, that they cannot maintain a quasi-contract claim where, as here, an express contract exists.

24   Mot. at 25; Opp. at 24.

25   **III.   CONCLUSION**

26        For the reasons set forth above and in Zoom's opening brief, Zoom respectfully requests

27   that this Court dismiss the FAC in its entirety with prejudice.

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Dated: January 21, 2021                              COOLEY LLP

                                                     BY: _Michael G. Rhodes_
                                                          Michael G. Rhodes (116127)

                                                     Attorneys for Defendant
                                                     ZOOM VIDEO COMMUNICATIONS, INC.

242643631

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO