Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Theodore Maya (SBN 223242)
*tmaya@ahdootwolfson.com*
Bradley K. King (SBN 274399)
*bking@ahdootwolfson.com*
Christopher Stiner (SBN 276033)
*cstiner@ahdootwolfson.com*
Rachel Johnson (SBN 331351)
*rjohnson@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, California 91505
Tel: (310) 474-9111
Fax: (310) 474-8585

Mark C. Molumphy (SBN 168009)
*mmolumphy@cpmlegal.com*
Joseph W. Cotchett (SBN 36324)
*jcotchett@cpmlegal.com*
Tyson Redenbarger (SBN 294424)
*tredenbarger@cpmlegal.com*
Noorjahan Rahman (SBN 330572)
*nrahman@cpmlegal.com*
Julia Peng (SBN 318396)
*jpeng@cpmlegal.com*
**COTCHETT, PITRE & McCARTHY LLP**
840 Malcolm Road, Suite 200
Burlingame, CA  94010
Telephone:      650.697.6000
Facsimile:      650.697.0577

*Interim Co-Lead Class Counsel*

**COOLEY LLP**
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
TRAVIS LEBLANC (251097)
(tleblanc@cooley.com)
KATHLEEN R. HARTNETT (314267)
(khartnett@cooley.com)
BENJAMIN H. KLEINE (257225)
(bkleine@cooley.com)
101 California Street, 5th Floor
San Francisco, California 94111-5800
Telephone:      +1 415 693 2000
Facsimile:      +1 415 693 2222

Attorneys for Defendant
ZOOM VIDEO
COMMUNICATIONS, INC.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| IN RE: ZOOM VIDEO COMMUNICATIONS, INC. PRIVACY LITIGATION | Case No. 5:20-CV-02155-LHK |
| This Document Relates To: All Actions | **JOINT STATEMENT REGARDING DISCOVERY DISPUTE** |
| | Magistrate Susan van Keulen, presiding |

The Parties submit this joint statement following the Court's entry of its Order Granting in Part and Denying in Part Zoom's Motion to Dismiss the First Amended Complaint ("FAC").  Dkt. 168 ("the MTD Order").  The Parties met and conferred but were unable to resolve this issue.  Fact discovery closes on October 29, 2021, 214 days from this filing.

## I.   PLAINTIFFS' POSITION

### A.   The Scope of Discovery Has Not Meaningfully Changed

Plaintiffs' claims largely survive the MTD Order. The Court denied Zoom's motion with respect to Plaintiffs' claims for breach of implied contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment/quasi contract, and under the UCL's unlawful and unfair prongs, and otherwise allowed amendment. (*Id*. at 40.) The explicitly surviving claims fully encompass the three original bases for liability in this case (data sharing, end-to-end encryption ("E2E") misrepresentations, and Zoombombing), and discovery on each continues to be merited. *See* Fed. R. Civ. P. 26 ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."). However, despite the Court's Order *denying* the MTD in large part, Zoom takes the unilateral position that discovery is stayed and that, somehow, Zoom is no longer obligated to produce documents or negotiate search terms. That position is unjustified and very prejudicial to Plaintiffs.

Contrary to Zoom's position, the FAC, as it currently stands, states claims based on data sharing; *i.e*., Plaintiffs' implied contract claims are premised on allegations that Plaintiffs and Zoom impliedly agreed that Zoom was obligated to take reasonable steps to secure class members' sensitive information but that, in breach of that implied contract, Zoom shared its users' data with third parties and allowed that data to be "utilized to track its users' personal data for commercial purposes." (FAC ¶¶ 225-230, 241-242.) The implied contract claims and the UCL claims also allege liability for Zoom's E2E misrepresentations. *E.g.*, Dkt. 126 (FAC) at ¶¶ 241-42 (alleging Zoom breached implied covenant of good faith by failing to maintain adequate security and proper encryption); *see also* ¶252-55 (alleging violations of the UCL relating to Zoom's failure to provide E2EE and lack of adequate security or privacy.) These implied contract and UCL claims also allege that  Zoom's inadequate security allowed Zoombombing to occur. (*Id*.) Thus, Plaintiffs'

1

Zoombombing claims remain very much in the case despite the Court's ruling that Zoom is immune from liability for the content of such Zoombombing. (*See* MTD Order at 40.) Accordingly, the surviving claims encompass data sharing, E2E misrepresentations, and Zoombombing, and discovery on each issue continues to be merited, regardless of whether Plaintiffs amend.

Moreover, assuming Plaintiffs amend their complaint to cure pleading deficiencies, each of the three theories will continue to be discoverable in this case. For example, in the MTD Order, the Court recognized that former Plaintiff Gormezano's allegations were sufficient to state a claim for invasion of privacy. (MTD Order at 21-22, 28.) If Plaintiffs amend to include data sharing allegations similar to those the Court found sufficient with respect to Ms. Gormezano, for other Plaintiffs, data sharing issues will continue to be discoverable on this basis. Accordingly, while the scope of permissible discovery remains unchanged by the MTD Order, any forthcoming amendment will also allow such discovery. Thus there is no reason to withhold any discovery.

### B.     Zoom Cannot Invoke the MTD Order to Avoid Responding to Discovery and Refusing to Provide Hit Count Reports on Search Terms

At this time, Zoom has stopped producing documents and commits only to "evaluate the date of [its] next production as we continue to confer regarding discovery scope in light of the MTD order." Furthermore, Zoom refuses to produce hit count reports regarding proposed search terms. Plaintiffs request that the Court order Zoom to comply on both points.

Plaintiffs are severely prejudiced by Zoom's refusal to produce documents and provide hit count reports on relevant search terms. Zoom's unilateral decision to stay discovery pending the filing of a Second Amended Complaint (and possible motion practice on that complaint) greatly prejudices Plaintiffs ability to move this case forward and prepare a motion for class certification, currently due June 25. (Dkt. 162.) Zoom previously indicated that it was prepared to produce additional documents on March 19, 2021, which it has withheld given the MTD Order. The Court should order Zoom to continue producing documents without limitation.

Concerning search terms: The parties agreed, in the ESI protocol, to "meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery." Understanding the number of hits will guide the discussion

as to what is or is not an appropriate search term. *See Markson v. CRST Int'l, Inc.,* No. EDCV171261FMOSPX, 2019 WL 7905896, at *5 (C.D. Cal. Dec. 16, 2019) ("[P]laintiffs have been well justified in demanding a hit report prior to meeting and conferring about the disputed terms."); *Vasudevan Software, Inc. v. Microstrategy Inc.*, No. 11-CV-06637-RS-PSG, 2012 WL 5637611, at *5 (N.D. Cal. Nov. 15, 2012) (ordering hit count and stating that "the right way to resolve such a [search term] dispute is to consider the yield against the purported need. But the inquiry is difficult when neither party has provided particularly helpful details about the potential yield from [proposed] search terms").

Plaintiffs proposed 117 search terms related to the claims in this case. Over several hours of telephonic meet and confer, Plaintiffs explained the relevance of each term. Zoom refused to provide hit counts on all but two terms. Plaintiffs respectfully request that the Court order Zoom to provide a hit count report showing (a) total hits across all documents currently in Zoom's Relativity database, and (b) total unique hits, as to each proposed search term.  To be clear, this request is not burdensome. Plaintiffs are not requesting Zoom to run the search terms and produce documents. Rather Plaintiffs request that Zoom provide a hit count report so Plaintiffs and Zoom can continue meeting and conferring on relevance and burden with this necessary information.

## II.    ZOOM'S POSITION

The entire premise of Plaintiffs' submission is deeply misleading:  Zoom has not taken the position that discovery is stayed or stopped responding to discovery following the Court's Motion to Dismiss Order on March 11, 2021 (ECF No. 168) ("MTD Order").  Following the MTD Order, Zoom served substantive objections to Plaintiffs' second set of interrogatories on March 15, made a document production on March 26, has been actively meeting and conferring regarding Plaintiffs' other outstanding requests, and is continuing to collect and review documents in anticipation of potential future document productions.  However, significant questions exist as to what—if any— of the factual predicates in Plaintiffs' FAC remain at issue in the wake of the MTD Order.

Plaintiffs' discovery requests were already vastly overbroad and disproportionate before the MTD Order.  Now, those overbroad requests are even further removed from the case, given that Plaintiffs' core theories have largely been dismissed.  Because Plaintiffs continue to insist that the

1   scope of the case (and thus discovery) is exactly the same as before the MTD Order, and due to the

2   need for clarity regarding the ultimate scope of the case in order to conduct discovery, Zoom is

3   filing a scheduling motion and a discovery stay motion with Judge Koh to stay discovery pending

4   the Court's resolution of Zoom's motion to dismiss the forthcoming Second Amended Complaint.

5       Zoom respectfully requests that Your Honor defer ruling on this Joint Statement until Judge

6   Koh resolves the scheduling and stay issues that Zoom is presenting to the Court.  Moreover, Zoom

7   respectfully submits that issues concerning discovery scope should be presented by Plaintiffs in the

8   context of specific discovery disputes rather than, as here, non-specific briefing about case scope.

9       ***The MTD Order***.  Contrary to Plaintiffs' description, the MTD Order did not "deny[] in

10  large part" Zoom's motion to dismiss the First Amended Complaint ("FAC").  Rather, it dismissed

11  ***five*** of Plaintiffs' nine causes of action in full, leaving only implied contract and three related claims

12  (implied covenant, unjust enrichment, and the UCL "unlawful" prong), the UCL "unfair prong,"

13  and any meeting-disruption-based claim not premised on the alleged harmfulness of third-party

14  content and Zoom's role as a publisher.  *See* ECF No. 166 at 40.  It also largely rejected each of

15  Plaintiffs' core theories, holding:  (1) that meeting disruption claims cannot be content-based

16  (whereas Plaintiffs' entire theory thus far has been that meeting disruptions are harmful due to their

17  content), *id.* at 19; (2) that for each of the three third-party integrations actually pleaded (Facebook

18  SDK, Firebase Analytics SDK, LinkedIn Sales Navigator), no Plaintiff had sufficiently alleged

19  harm, *id.* at 21-24; and (3) that Plaintiffs' allegations that Zoom misrepresented its encryption

20  capabilities failed to satisfy the heightened pleading standard of Rule 9(b), *id.* at 34-37.

21      After the MTD Order, Zoom has sought to meet and confer in good faith about the scope of

22  discovery, guided by the well-established rule that discovery may not proceed on dismissed claims

23  or theories.  *See, e.g.*, *Mujica v. AirScan Inc.*, 771 F.3d 580, 593 & n.7 (9th Cir. 2014) (courts do

24  not "retain discretion to permit discovery whenever a plaintiff has failed to satisfy Rule 8's

25  plausibility standard").  Yet Plaintiffs self-servingly insist that what remains of the FAC supports

26  the ***entire*** scope of discovery previously sought on their three core theories.  In taking this position,

27  Plaintiffs ignore that the MTD Order dismissed five of their nine causes of action, and in doing so,

28  rejected the core allegations that underpinned Plaintiffs' three theories.  (*See* MTD Order at 19, 24,

36-37).  The claims that remain, as currently pleaded, cannot support Plaintiffs' three core theories for the reasons noted above.  In a transparent attempt to fish for overbroad and disproportionate discovery, Plaintiffs are trying to shoehorn these insufficient and thus dismissed theories into what little remains of their surviving claims.  This is not allowed.  *See Mujica*, 771 F.3d at 593 & n.7.

*Plaintiffs' Unreasonable Requests.*  Notwithstanding the MTD Order, Plaintiffs not only continue to insist that *all* of their prior discovery requests remain valid but have propounded additional overbroad requests.  For example, *since the MTD Order*, Plaintiffs have (1) sought to add *47* topics to a Rule 30(b)(6) deposition in addition to the 23 that Zoom agreed to before the MTD Order; (2) sought to add over *30* additional custodians (in addition to over 100 additional search terms) to Zoom's pre-MTD Order custodial production; (3) subpoenaed Facebook, Google, and Otter.ai for documents (and have pressed forward on their existing subpoena to Trust Arc) even though there are presently no actionable claims related to those entities; and (4) propounded 14 new interrogatories on issues currently dismissed (or never in) this case.  This approach of fishing for information to assist in amending a complaint is precisely what *Mujica* prohibits.

*Hit Count Reports.*  Plaintiffs mention the issue of search term hit count reports but do not properly present the hit count dispute for resolution:  they do not include the proposed terms or any justification other than a claimed general right to hit count reports regardless of relevance, which does not exist.  Unlike in *Markson v. CRST Int'l, Inc.*, 2019 WL 7905896 (C.D. Cal. Dec. 16, 2019), the ESI protocol in this case does not require exchanging search terms and hit reports.  Moreover, Plaintiffs continue to insist on hit count reports for all of the over 100 pre-MTD Order search terms they have proposed (in addition to the 27 terms Zoom already was running).  These search terms seek irrelevant information and were significantly overbroad before the MTD Order.  During the meet and confer process, Zoom provided a detailed explanation about the irrelevance of the terms or their prior resolution by the Court (for example, encryption search terms, scope of third-party integration discovery)—arguments that Plaintiffs have not responded to.  Prior to the MTD Order, Zoom was willing to run hit count reports on two additional terms, but both are meeting-disruption related terms that are no longer relevant to issues remaining in the case.  To the extent that Plaintiffs are seeking relief regarding hit count reports, the Court should deny Plaintiffs' request.

1

2                                                      Respectfully submitted,

3    Dated: 3/29/2020                                  */s/ Tyson Redenbarger*

4                                                      Tyson Redenbarger
                                                       *Tredenbarger@cpmlegal.com*
5                                                      COTCHETT, PITRE & MCCARTHY, LLP
                                                       840 Malcolm Road, Suite 200
6                                                      Burlingame, CA 94010
                                                       Tel: (650) 697-6000
7                                                      Fax: (650) 697-0577

8
                                                       Tina Wolfson
9                                                      *twolfson@ahdootwolfson.com*
                                                       AHDOOT & WOLFSON, PC
10                                                     2600 West Olive Avenue, Suite 500
                                                       Burbank, California 91505
11                                                     Tel: (310) 474-9111
                                                       Fax: (310) 474-8585
12

13                                                     *Interim Co-Lead Counsel for Plaintiffs*

14

15   Dated: 3/29/2020                                  */s/ Kathleen Hartnett*
                                                       Kathleen R. Hartnett
16                                                     (khartnett@cooley.com)

17                                                     COOLEY LLP
                                                       101 California Street, 5th Floor
18                                                     San Francisco, California 94111-5800
                                                       Telephone: +1 415 693 2000
19                                                     Facsimile: +1 415 693 2222

20
                                                       *Counsel for Defendant Zoom Video*
21                                                        *Communications, Inc.*

22

23

24

25

26

27

28

1

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

2

I, Tyson C. Redenbarger, attest that concurrence in the filing of this document has been

3

obtained from the other signatory.  I declare under penalty of perjury under the laws of the United

4

States of America that the foregoing is true and correct.

5

Executed this 29th day of March 2021, at Burlingame, California.

6

7

8

*/s/ Tyson C. Redenbarger*

9

Tyson C. Redenbarger

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7