TINA WOLFSON (SBN 174806)
*twolfson@ahdootwolfson.com*
THEODORE MAYA (SBN 223242)
*tmaya@ahdootwolfson.com*
CHRISTOPHER STINER (SBN 276033)
*cstiner@ahdootwolfson.com*
RACHEL JOHNSON (SBN 331351)
*rjohnson@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, California 91505
Tel: (310) 474-9111

MARK C. MOLUMPHY (SBN 168009)
*mmolumphy@cpmlegal.com*
TYSON C. REDENBARGER (SBN 294424)
*tredenbarger@cpmlegal.com*
NOORJAHAN RAHMAN (SBN 330572)
*nrahman@cpmlegal.com*
JULIA Q. PENG (SBN 318396)
*jpeng@cpmlegal.com*
**COTCHETT, PITRE & MCCARTHY, LLP**
840 Malcolm Road
Burlingame, California 94010
Telephone: (650) 697-6000

*Interim Co-Lead Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ZOOM VIDEO COMMUNICATIONS, INC. PRIVACY LITIGATION <br><br> This Document Relates To: <br><br> ALL ACTIONS | CASE NO: 5:20-cv-02155-LHK <br><br> **JOINT DECLARATION OF TINA WOLFSON AND MARK C. MOLUMPHY IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT** <br><br> Hon. Lucy H. Koh <br> Courtroom: 8 <br> Date: October 21, 2021 <br> Time: 1:30 PM |

We, Tina Wolfson and Mark Molumphy, declare and state as follows:

1.      I, Tina Wolfson, am a member of the bar of the State of California, New York, and District of Columbia and duly licensed to practice before all courts of the State of California as well as other state and federal courts.  I am a partner and founding member of the law firm Ahdoot & Wolfson, PC ("AW"), established in 1998, and have litigated complex consumer and privacy class actions for over two decades.

2.      I, Mark Molumphy, am a member of the bar of the State of California and duly licensed to practice before all courts of the State of California as well as other federal courts.  I am a partner at the law firm of Cotchett, Pitre & McCarthy LLP ("CPM"), and have litigated complex consumer and privacy class actions for over two decades.

3.      We are interim co-lead counsel for the Class Representatives and the putative class. We have personal knowledge of the facts stated below and with the proceedings in this case. If called as witnesses, we would and could competently testify thereto to all facts within our personal knowledge.

4.      We respectfully submit this joint declaration in support of Plaintiffs' Motion for Preliminary Approval of Proposed Class Action Settlement ("Motion").  As discussed below, we believe the proposed settlement provides a substantial recovery in a case presenting novel and complex issues and substantial risks, and is a fair, reasonable, and adequate result for the Class.

5.      Attached hereto as Exhibit "1" is the Class Action Settlement Agreement and Release entered into between the Parties to this litigation.  The Settlement Agreement provides both a monetary payment from Zoom of $85 million and significant injunctive relief relating to Zoom's operations, its Meetings app, and privacy practices benefitting all Zoom users.

6.      At the time the Settlement Agreement was reached, we, and members of our respective firms, had a firm understanding of the risks and benefits of futher litigation.  We have been actively and personally involved in every aspect of this litigation since its inception, and (i) conducted a wide-ranging and extensive investigation into the Settlement Class's claims; (ii) filed three comprehensive consolidated complaints; (iii) successfully opposed Defendant's motions to dismiss as to certain theories of liability; (iv) engaged in a comprehensive discovery program,

JOINT DECL. OF TINA WOLFSON & MARK MOLUMPHY ISO MTN FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO: 5:20-CV-02155-LHK

1

including pursuit of document requests served on Zoom and subpoenas served on numerous third parties, extensive search term negotiations and motion practice, and review of documents produced by Zoom, third parties, and governmental sources; (v) responded to Zoom's written discovery, including over 60 document requests served on each of the Class Representatives; (vi) briefed and argued numerous motions over discovery issues before Magistrate Judge Susan van Keulen, and an appeal to this Court (Dkt. Nos. 135, 142, 150, 152, 154, 157, 164, 165, 170, 175) resulting in the production of additional documents; and (v) consulted with several experts on disputed issues, and later settlement, including technical experts on Zoom's platform, data encryption and privacy, as well as a damages experts to value the claims of the class.  Collectively, Plaintiffs' Counsel have devoted thousands of hours to litigating this case.

7.     We agreed to recommed to the Class Representatives to settle the Action, on terms and conditions of the Settlement, after considering: (i) the substantial monetary and prospective non-monetary benefits that Class Members will receive from the resolution of the Action; (ii) the substantial risks of continued litigation, including informed consideration of the strengths and weaknesses of their claims and defenses; and (iii) the desirability of permitting the Settlement to be consummated as provided by the terms of the Settlement.

8.     The Settlement Agreement was reached after extensive mediation efforts, lasting nine months.  The settlement discussions were overseen by Judge Jay C. Gandhi (Ret.), a former U.S. Magistrate Judge and respected mediator with JAMS.

9.     Prior to mediation, the Parties exchanged and vetted information to prepare for and facilitate productive mediation sessions. Before any terms were negotiated, the Plaintiffs had a thorough understanding of the composition of the Settlement Class, the nature of Zoom's anticipated defenses on the merits,  the likely nature of arguments that would be advanced at class certification, summary judgment, and trial, and the complex technical issues surrounding the claims and defenses, and potential injunctive relief, which Plaintiffs' counsel reviewed and analyzed with their consulting experts.

10.     The Parties commenced mediation in early November 2020. Although progress was made during these early sessions, the case did not settle at that time, and the Parties continued negotiations with Judge Gandhi, along with concurrent discovery efforts.

11.     These negotiations were extensive, at arms-length, and spanned over the course of nine months. They included four formal mediation sessions and numerous additional discussions facilitated by Judge Gandhi. Judge Gandhi remained highly involved throughout the lengthy negotiation process.

12.     During the mediation process, Class Counsel continued to receive additional information from Zoom and through its own independent investigations. Plaintiffs learned that Enterprise-Level and Government Account users are factually differently positioned than those of ordinary consumers because they negotiate the terms of their contracts with Zoom individually to their specific needs, often with the help of sophisticated IT departments, and do not purchase their products "off the shelf."

13.     While the Parties reached agreement on certain key terms of the Settlement in early April, 2021, and reported this to the Court on April 7, 2021 (Dkt. No. 176), the Parties had yet to reach agreement on many other key terms, including injunctive relief, and continued to negotiate these issues through additional mediation sessions.

14.     Ultimately, with the participation of prominent data privacy experts, and after participating in numerous video and phone conferences with Zoom's counsel and Zoom in-house counsel, Plaintiffs successfully negotiated significant injunctive relief in addition to monetary relief.  These injunctive relief negotiations, which extended for months, included several iterations and revisions of written proposals and counter-proposals, discussions with Zoom's in-house counsel, consultation with experts, and an additional day of mediation with Judge Gandhi.

15.     Subsequently, the Parties negotiated the details of a fair and workable distribution plan over the course of many days. Numerous drafts and redlines of the Settlement Agreement and its many exhibits were exchanged, followed by lengthy discussions between the Parties and negotiations about myriad issues.

16.     The Parties also collaborated on the logistics and substance of the notice and administration of the Settlement. Plaintiffs' Counsel spent numerous hours obtaining and negotiating bids from three well-established and experienced class action administration firms. Epiq was selected after a competitive bidding process during which Class Counsel considered proposals from two other potential administrators.  Class Counsel previously worked with Epiq, the two other bidders, as wells as other professional administrators.

17.     In Class Counsel's experience, the estimated costs for settlement notice and administration, set forth in the concurrently filed Declaration of Cameron R. Azari, are reasonable and competitive.

18.     Proposed Class Representatives have been dedicated and active participants in this litigation.  They assisted in the investigation of the facts, participated in the plaintiff vetting process implemented by their respective counsel and Class Counsel, reviewed and approved the various complaints, participated in discovery, and kept in close contact with counsel to monitor the progress of the litigation and the Settlement negotiations.

19.     Based on our experience, we believe the Settlement is fair, reasonable, and adequate. We further believe that given the substantial risks of this ligation, the Settlement is in the best interests of the Class.

20.     Based on consultation with damage experts, the Settlement's monetary benefit, including the proposed plan to distribute 15% of total core subscription payments (or $25, whichever is greater), provides a substantial recovery—particularly considering the risks of this case.  For example, the alleged end-to-end encryption misrepresentations concern only one feature of the Zoom services among the numerous benefits that Paid Subscribers received.  Moreover, the proposed payment of $15 to Class Members who never paid for Zoom is within the ballpark of what consumers may be willing to receive in exchange for the type of data the SAC alleges Zoom disclosed.  The total monetary recovery of $85 million also represents a significant percentage of the Class' potential damages were they to prevail at trial, taking into account the limited theories of recovery that were allowed to proceed following motions to dismiss, based primarily on implied

1   contract claims, and taking into account the significant risks of no recovery in the event a class was

2   not certified or the Class did not prevail at trial on their claims.

3       21.     In preparing a plan of distribution, we worked with our damages expert and took

4   into account the strength of claims of paid and unpaid subscribers to Zoom services.  We anticipate

5   that a greater percentage of Paid Subscription Claims will be submitted compared to User Claims,

6   because the Settlement Payment amount for Paid Subscription Claims is likely to be higher than for

7   User Claims. Data provided by Zoom indicates that, on average, Class Members who paid for a

8   subscription to Zoom paid approximately $250 during the Class Period.  The proposed distribution

9   of 15% of this amount represents, on average, about $37.50 per Paid Subscriber, though persons

10  will be entitled to more or less based on the amounts they paid and total number of claims submitted.

11      22.     While it is inherently difficult to predict claims rates with precision, based on the

12  substantial recovery, comparable settlements, and the ubiquity of Zoom's platform, Plaintiffs

13  expect the claims rate for Paid Subscription Claims will be between 1% and 5% and the claims rate

14  for non-paying User Claims will be between 1% and 2%.

15      23.     We based these assumptions on claims rates in a number of privacy and consumer

16  class action settlements, including: *In re Google Plus Profile Litig.*, No. 5:18-cv-06164 (N.D. Cal.)

17  (1.13% claims rate); *In re LinkedIn User Privacy Litig.*, No. 5:12-cv-03088 (N.D. Cal.) (0.70%

18  claims rate); *In re Vizio, Inc. Consumer Privacy Litig.*, No. 8:16-ml-02693 (C.D. Cal.) (3.2% claims

19  rate); *In re Experian Data Breach Litig.*, No. 8:15-cv-01592 (C.D. Cal.) (2% claims rate); *In re*

20  *Anthem, Inc. Data Breach Litig.*, No. 5:15-md-02617 (N.D. Cal.) (1.8% claims rate).

21      24.     Even assuming claims reach the high end of both estimates listed above, the recovery

22  will still be substantial. At a 5% Paid Subscription Claims rate and 2% User Claims rate

23  (approximately 276,000 paid and 4.32 million unpaid claims), paid subscribers would receive, on

24  average, approximately $34, and non paying users would receive approximately $11.  At slightly

25  lower claims rates (3% Paid Subscriber Claims and 2% User Claims; approximately 165,000 and

26  4.32 million claims, respectively), the recovery would be approximately $35 (on average) for paid

27  subscribers and $12 for non-paying users.

28

---

25.     These estimates are based on conservative class size of 221.7 million – likely higher than the true number.  Zoom disclosed that the number of class members who are eligible Paid Subscription Claims and User Claims, and for which they have contact information, is approximately 160 million collectively.  Approximately 5.5 million of this 160 million population are paid subscribers eligible to submit a Paid Subscription Claim.  However, the Settlement Class, as defined, includes those who used Zoom but did not register with Zoom or pay for an account. Zoom states that it has no reliable data with which to reliably estimate the the size of this part of the Settlement Class. A class consisting of 221.7 million members, in our opinion, is a conservative amount upon which to base these Settlement Payment estimates.

26.     These estimates are also based on Zoom's disclosure that it collected approximately $1.379 billion in Zoom Meetings Subscriptions from the roughly 5.5 million Class Members who paid for the subscription.  The estimates also take into account potential reductions from the Settlement Fund for any fees, expenses or service awards approved by the Court.  Epiq estimates that its Settlement Administration Expenses will be approximately $2.833 million, which would be be deducted from the Settlement Fund prior to distributing the Net Settlement Fund.

27.     Class Counsel intends to seek attorneys' fees up to 25% of the Settlement Fund, or $21.25 million.  As of July 29, 2021, Class Counsel and Executive Committee members incurred approximately $ 5.51 million in lodestar for the work performed.  Class Counsel's request for a fee up to 25% of the Class Settlement Amount represents a multiplier of 3.86 on the current lodestar. The Settlement is also a global resolution of litigation pending in California state court, and counsel in that action have agreed to the settlement terms and not to separately seek and fees or expenses in the California state litigation.

28.     Class Counsel also intend to seek reimbursement for expenses incurred in this litigation, not to exceed $200,000; to date they have expended approximately $145,000, and expect to incur additional expenses prior to the Final Approval Motion.  These expenses include, among others, expert fees, court fees, service of process, consultant fees, mediation costs, online legal and factual research, travel costs, reproduction costs, document review database expenses, ESI vendor expenses (who assisted with collection of certain data from Plaintiffs during discovery), and

messenger, courier, and overnight mail expenses. These expenses were critical to Class Counsel's success in achieving this Settlement, and are reasonable.

29.     Class Counsel submits that the settlements in *In re: Apple Inc. Device Performance Litigation*, No. 5:18-md-02827-EJD (N.D. Cal.), and *In re: Vizio, Inc., Consumer Privacy Litigation*, No. 8:16-ml-02693-JLS-KES (C.D. Cal.), provide useful comparisons to this Settlement:

| | *In re: Apple Inc. Device Performance Litig.,* No. 5:18-md-02827-EJD (N.D. Cal.) | *In re: Vizio, Inc., Consumer Privacy Litig.* No. 8:16-ml-02693-JLS-KES (C.D. Cal.) |
|---|---|---|
| **Settlement Fund** | $310 million | $17 million |
| **Number of Class Members** | 106,200,853 | 16 million devices |
| **Number of Class Members Notice Was Sent** | ~93,198,046 | 7,828,308 |
| **Methods of Notice** | Direct email notices; settlement-specific website; postcard notices; dedicated email address; toll-free information line; earned media | Direct display on TVs; email notice; digital media campaign; nationwide press release; settlement website |
| **Claim Forms Submitted (Number and %)** | ~3,403,419 (3.2%) | 511,562 (3.2%) |
| **Avg. Recovery** | Approx. $91.03 | $18/device |
| **Amounts Distributed to Cy Pres Recipients** | N/A | $71,634.38 (pending approval) |
| **Administrative Costs** | $7,248,749.18 (appeal pending, subject to change) | $200,000 estimated total, $122,823 incurred as of Dec. 2019 |
| **Attorneys' Fees and Costs** | $80.6 million/$995,244.93 (appealed) | $5,610,000 and $181,808.59 |

We declare under penalty of perjury that the foregoing is true and correct.  Executed under the penalty of perjury that the foregoing is true and correct.

Executed on this 30th day of July, 2021, by Mark C. Molumphy in Burlingame, California Tina Wolfson in Los Angeles, California.

/s/ Mark C. Molumphy                              /s/ Tina Wolfson
Mark C. Molumphy                                  Tina Wolfson

1

**SIGNATURE ATTESTATION**

2          I am the ECF User whose identification and password are being used to file the foregoing

3  Notice of Motion and Motion for Preliminary Approval of Proposed Class Action Settlement;

4  Memorandum of Points and Authorities in Support Thereof.  Pursuant to L.R 5-1(i)(3) regarding

5  signatures, I, Tina Wolfson attest that concurrence in the filing of this document has been obtained.

6  DATED: July 31, 2021                               _/s/ Tina Wolfson_____
                                                         Tina Wolfson
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28