EXHIBIT 1

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement Agreement and Release ("**Settlement Agreement**") is entered into by and among the following parties: (i) Caitlin Brice, Heddi N. Cundle, Angela Doyle, Isabelle Gmerek, Kristen Hartmann, Peter Hirshberg, M.F., Therese Jimenez, Lisa T. Johnston, Oak Life Church, Saint Paulus Lutheran Church, and Stacey Simins ("**Plaintiffs**"), individually and on behalf of the putative Settlement Class (as defined below), and (ii) Defendant Zoom Video Communications, Inc. ("**Zoom**" or "**Defendant**") (Plaintiffs and Defendant shall be referred to collectively as the "**Parties**," individually as a "**Party**"). This Settlement Agreement is conditioned upon and subject to approval of the Court as required by Rule 23 of the Federal Rules of Civil Procedure. The Parties hereby stipulate and agree that, in consideration of the promises and covenants set forth in this Settlement Agreement, the Action (as defined below) and all Released Claims (as defined below) shall be finally and fully settled, compromised, and released, on the following terms and conditions:

## RECITALS

A.     WHEREAS, between March 30, 2020 and June 2, 2020, the following actions were filed against Zoom in the Federal District Court for the Northern District of California alleging the same or similar operative facts: *Cullen v. Zoom Video Communications, Inc.*, No. 5:20-cv-02155-LHK; *Taylor v. Zoom Video Communications, Inc*., No. 5:20-cv-02170-LHK; *Johnston v. Zoom Video Communications, Inc*., No. 5:20-cv-02376-LHK; *Gens v. Zoom Video Communications, Inc*., No. 4:20-cv-03078-LHK; *Kondrat v. Zoom Video Communications, Inc*., No. 5:20-cv-02520-LHK; *Lawton v. Zoom Video Communications, Inc*., No. 5:20-cv-02592-LHK; *Jimenez v. Zoom Video Communications, Inc*., No. 5:20-cv-02591-LHK; *Hartmann v. Zoom Video Communications, Inc*., No. 5:20-cv-02620-LHK; *Henry v. Zoom Video Communications, Inc.*, No. 5:20-cv-02691-LHK; *Greenbaum v. Zoom Video Communications, Inc*., No. 5:20-cv-02861-LHK; *Simins v. Zoom Video Communications, Inc*., No. 5:20-cv-02893-LHK; *Buxbaum v. Zoom Video Communications, Inc.*, No. 5:20-cv-02939-LHK; *Kirpekar v. Zoom Video Communications, Inc.*, No. 5:20-cv-03042-LHK; *Saint Paulus Lutheran Church v. Zoom Video Communications, Inc*., No. 5:20-cv-03252-LHK; *Hurvitz v. Zoom Video Communications, Inc*., No. 5:20-cv-03258-LHK; *Ohweiler v. Zoom Video Communications, Inc.,* No. 5:20-cv-03281-LHK; and *Rios v. Zoom Video Communications, Inc.,* No. 5:20-cv-03670-LHK (the "**Related Actions**");

B.     WHEREAS, on May 28, June 2, and June 5, 2020, the Court ordered the Related Actions consolidated into Case No. 5:20-cv-02155-LHK, which was recaptioned *In Re: Zoom Video Communications, Inc. Privacy Litigation*, and ordered the filing of a Consolidated Amended Class Action Complaint (Dkt. Nos. 62, 67, 79) (the "**Action**");

C.     WHEREAS, on June 30, 2020, the Court appointed Tina Wolfson of Ahdoot & Wolfson, PC and Mark C. Molumphy of Cotchett, Pitre, & McCarthy LLP as interim co-lead class counsel in the Action (Dkt. No. 92);

D.     WHEREAS, the Action arises from four central theories of alleged conduct by Zoom: (1) alleged unauthorized sharing of users' information with third-parties through incorporation of software development kits (SDKs) in the Zoom application, (2) alleged unauthorized sharing of users' information with third-parties through third-party developers' development and deployment of apps that integrate with Zoom's products, (3) alleged failure to prevent unwanted meeting disruptions by

third parties, and (4) alleged misrepresentations that Zoom provided end-to-end encryption at a time when Plaintiffs alleged Zoom did not;

E.     WHEREAS, on July 30, 2020, Plaintiffs Caitlin Brice, Heddi N. Cundle, Isabelle Gmerek, Cynthia Gormezano, Kristen Hartmann, M.F. and his parent Therese Jimenez, Lisa T. Johnston, Oak Life Church, Saint Paulus Lutheran Church, and Stacey Simins filed a Consolidated Amended Class Action Complaint ("**CAC**") and alleged claims for (1) violation of the California Constitution's right to privacy, Art. 1, § 1; (2) negligence; (3) breach of implied contract; (4) breach of the implied covenant of good faith and fair dealing; (5) unjust enrichment; (6) violation of California's Unfair Competition Law ("**UCL**"), Cal. Bus. & Prof. Code § 17200, *et seq*.; (7) violation of California's Consumer Legal Remedies Act ("**CLRA**"), Cal. Civ. Code § 1750, *et seq*.; (8) violation of the Comprehensive Computer Data Access and Fraud Act ("**CDAFA**"), Cal. Penal Code § 502; and (9) fraudulent concealment, Cal. Civ. Code § 1710(3) (Dkt. No. 114);

F.     WHEREAS, on September 14, 2020, Zoom filed a motion to dismiss the CAC's allegations in their entirety for failure to allege harm traceable to Zoom and failure to state a claim (Dkt. No. 133);

G.     WHEREAS, on October 28, 2020, Plaintiffs Caitlin Brice, Heddi N. Cundle, Isabelle Gmerek, Cynthia Gormezano, Kristen Hartmann, M.F. and his parent Therese Jimenez, Lisa T. Johnston, Oak Life Church, Saint Paulus Lutheran Church, and Stacey Simins filed a First Amended Consolidated Class Action Complaint ("**FAC**"), which added three additional named plaintiffs Angela Doyle, Sharon Garcia, and Peter Hirshberg, and two additional claims for invasion of privacy under the California common law and quasi-contract (Dkt. No. 126);

H.     WHEREAS, on December 2, 2020, Zoom filed a motion to dismiss the FAC's allegations in their entirety, again, for failure to allege harm traceable to Zoom and failure to state a claim (Dkt. No. 133);

I.     WHEREAS, on December 30, 2020, Plaintiffs filed their brief in opposition to Zoom's motion to dismiss the FAC (Dkt. No. 141);

J.     WHEREAS, on March 11, 2021, the Court granted in part and denied in part Zoom's motion to dismiss the FAC, with leave to amend consistent with the Court's order (Dkt. No. 168);

K.     WHEREAS, on May 12, 2021, Plaintiffs Caitlin Brice, Heddi Cundle, Angela Doyle, Isabelle Gmerek, Kristen Hartmann, Peter Hirshberg, M.F. and his parent Therese Jimenez, Lisa T. Johnston, Oak Life Church, Saint Paulus Lutheran Church, and Stacey Simins filed a Second Amended Consolidated Class Action Complaint ("**SAC**") and alleged claims for (1) California common law invasion of privacy and violation California Constitution's right to privacy, Art. 1, § 1; (2) breach of implied contract; (3) breach of the implied covenant of good faith and fair dealing; (4) unjust enrichment/quasi-contract; (5) violation of California's UCL; and (6) violation of California's CLRA (Dkt. No. 179);

L.     WHEREAS, between September 2020 and June 2021, the Parties engaged in significant discovery into the claims and defenses, including written discovery, document productions, and motions to compel;

M.     WHEREAS, starting in November 2020, the Parties and their respective counsel have participated in extensive settlement discussions mediated by the Hon. Jay Gandhi (Ret.) of JAMS, including mediation sessions on October 30, 2020, November 13, 2020, April 21, 2021, and May 19, 2021, as well as numerous individual and joint conversations with Judge Gandhi and numerous conversations and email communications between counsel supervised by Judge Gandhi;

N.     WHEREAS, after extensive arms-length negotiations, the Parties reached an agreement in principle to settle on the terms and conditions embodied in this Settlement Agreement;

O.     WHEREAS, the Parties desire to resolve all claims that are asserted or could have been asserted in the Action relating to the allegations made therein;

P.     WHEREAS, Zoom denies that it has engaged in any wrongdoing and denies all claims asserted by Plaintiffs in the Action.  This Agreement shall in no event be construed or deemed to be evidence of or an admission, presumption or concession on the part of Zoom of any fault, liability, or wrongdoing as to any facts or claims asserted in the Action (or any infirmity in the defenses it has asserted or could assert in the Action), or any other actions or proceedings, and shall not be interpreted, construed, offered, or received in evidence or otherwise used against Zoom in any other action or proceeding, whether civil, criminal or administrative;

Q.     WHEREAS, Plaintiffs have conducted extensive discovery relating to the Action, have analyzed the legal issues in the Action, have retained and consulted with experts, have engaged in motion practice in connection with the Action, and believe that the proposed settlement with Zoom, as set forth herein, is fair, reasonable, and adequate, and in the best interests of the putative Settlement Class and that this Settlement Agreement should be approved by the Court under Rule 23(e) of the Federal Rules of Civil Procedure;

R.     WHEREAS, Plaintiffs have consulted with Zoom on prospective changes to its policies, procedures, and practices related to the allegations in the SAC, including consultation with Zoom in advance of Zoom's June 4, 2021 revisions to its Privacy Statement;

S.     WHEREAS, Zoom is entering into this Settlement Agreement to avoid the costs and uncertainties of continued litigation of the Action, and Zoom believes that the Settlement Agreement is fair, reasonable, and adequate, and that the Settlement Agreement should be approved by the Court under Rule 23(e);

T.     WHEREAS, the Settlement Agreement resolves the Action in its entirety without any admission of liability, and the Parties intend this Settlement Agreement to bind the Parties;

U.     WHEREAS, on May 1, 2020, a putative class action was filed in the Superior Court of California, County of Santa Clara under the caption *Arriaza v. Zoom Video Communications, Inc.*, No. 20CV366439 ("***Arriaza***"), alleging liability based on the same theories of alleged conduct by Zoom as alleged in this Action, and bringing claims for (1) California common law invasion of privacy and violation of the California Constitution's right to privacy, Art. 1, § 1; (2) negligence; (3) breach of the implied warranty of merchantability; (4) breach of implied contract; (5) unjust enrichment; (6) violation of California's UCL; (7) violation of California's CLRA; and (8) violation of the California Consumer Privacy Act, which action was subsequently stayed by the Santa Clara Superior Court;

V.      WHEREAS, on June 3, 2020, the Related Action *Greenbaum v. Zoom Video Communications, Inc.*, No. 5:20-cv-02861-LHK was voluntarily dismissed from the Northern District of California without prejudice (Dkt. No. 17), and refiled in the Superior Court of California, County of Santa Clara under the caption *Greenbaum v. Zoom Video Communications, Inc.*, No. 20CV366980 ("***Greenbaum***"), alleging liability based on the same theories of alleged conduct by Zoom as alleged in this Action, and bringing claims for (1) negligence; (2) violation of California's Invasion of Privacy Act, Cal. Penal Code § 630, *et seq.*; (3) violation of California's UCL; (4) violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*; (5) unjust enrichment/quasi-contract; (6) intrusion upon seclusion; (7) breach of implied contract; and (8) breach of the implied covenant of good faith and fair dealing, which action was subsequently stayed by the Santa Clara Superior Court;

W.      WHEREAS, the Parties believe that a Settlement Agreement can and should be approved to avoid the time, expense, and uncertainty of protracted litigation; and in the event that a Settlement Agreement does not receive final and binding approval from the Court or is terminated according to its terms, Plaintiffs expressly reserve the right to file for class certification and to try their case to judgment, while Zoom reserves the right to challenge class certification and reserves its other defenses; and

X.      WHEREAS, the Parties agree to stay other non-settlement related proceedings in this Action, including any further discovery or motion practice, pending final and binding approval from the Court pursuant to the Federal Rules.

## AGREEMENT

NOW THEREFORE, IT IS STIPULATED AND AGREED, subject to approval by the Court pursuant to Rule 23(e), by and among the Parties, as follows:

1.      **DEFINITIONS**.  As used herein, in addition to any definitions set forth elsewhere in this Settlement Agreement, the following terms shall have the meanings set forth below:

1.1      "**Action**" means all actions which have been filed in, transferred to, or otherwise assigned to the Court and included or consolidated in the consolidated case captioned *In re: Zoom Video Communications, Inc. Privacy Litigation*, No. 5:20-cv-02155-LHK (N.D. Cal.).

1.2      "**Additional Plaintiffs' Counsel**" means Wexler Wallace LLP, Gustafson Gluek PLLC, Tycko & Zavareei LLP, The Technology Law Group, Stueve Siegel Hanson LLP, Hartley LLP, Gutride Safier LLP, Schubert Jonckheer & Kolbe LLP, Lowey Dannenberg, P.C., Clayeo C. Arnold, A Professional Law Corp., Morgan & Morgan Complex Litigation Group, Reinhardt Wendorf & Blanchfield, Arnold Law Firm, Murphy & McGonigle, RLLP, Loevy and Loevy, Miller Advocacy Group, Clarkson Law Firm, P.C., and Law Offices of John L. Fallat.

1.3      "**Agreement**" or "**Settlement Agreement**" means this Class Action Settlement Agreement and Release.  The terms of the Settlement Agreement are set forth herein including the exhibits hereto, which are incorporated herein by reference.

1.4      "**Approved Claim(s)**" means a Settlement Claim as evidenced by a Claim Form submitted by a Settlement Class Member that (i) is timely and submitted in accordance with the

directions on the Claim Form and the terms of this Agreement; satisfies the conditions of eligibility for a Settlement Payment as set forth in this Agreement; and has been approved by the Settlement Administrator; or (ii) is otherwise accepted by the Court.

1.5 "**Claim Form**" means the form Settlement Class Members submit to make a Settlement Claim pursuant to the terms and conditions of the Settlement Agreement, substantially in the form attached hereto as Exhibit A, as approved by the Court.

1.6 "**Claimant**" means a Settlement Class Member who submits a Settlement Claim.

1.7 "**Claim Deadline**" means the date by which (a) all Claim Forms must be postmarked or submitted electronically to be considered timely.  The Claim Deadline shall be set by the Court in the Preliminary Approval Order.  The Parties will propose a Claims Deadline that is sixty (60) calendar days following the Notice Date.

1.8 "**Class Counsel**" means Tina Wolfson, Mark C. Molumphy, and their respective firms, Ahdoot & Wolfson, PC and Cotchett, Pitre, & McCarthy LLP.

1.9 "**Class Representatives**" and "**Plaintiffs**" mean Plaintiffs Caitlin Brice, Heddi N. Cundle, Angela Doyle, Isabelle Gmerek, Kristen Hartmann, Peter Hirshberg, M.F., Therese Jimenez, Lisa T. Johnston, Oak Life Church, Saint Paulus Lutheran Church, and Stacey Simins.

1.10 "**Court**" means the United States District Court for the Northern District of California.

1.11 "**Defendant**" or "**Zoom**" means Zoom Video Communications, Inc., a Delaware corporation.

1.12 "**Defendant's Counsel**" or "**Zoom's Counsel**" means Cooley LLP.

1.13 "**Effective Date**" means one business day after the latest of the following events has occurred: (i) the date upon which the time expires for filing or noticing any appeal of the Court's Final Approval Order approving the Settlement Agreement; (ii) if there is an appeal or appeals, the date of completion, in a manner that finally affirms and leaves in place the Final Approval Order without any material modification, of all proceedings arising out of the appeal or appeals (including, but not limited to, the expiration of all deadlines for motions for reconsideration or petitions for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand); or (iii) the date of final dismissal of any appeal or the final dismissal of any proceeding on certiorari.  If the Final Approval Order is set aside, materially modified, or overturned by the Court or on appeal, and is not fully reinstated on further appeal, then the Effective Date has not occurred for purposes of this section.

1.14 "**Enterprise-Level Account**" means a registered Zoom Meetings Application ("App") account that as of the Settlement Date belonged to, was controlled by, or was provisioned by a Person paying to use (or otherwise licensed by Zoom to use) the Zoom Meetings App at the "Enterprise" level of Zoom's pricing plans, as opposed to other account types, including "Basic", "Pro", or "Business" levels (*see* https://zoom.us/pricing).

1.15   "**Fee and Expense Award**" means the amount of attorneys' fees and expenses awarded to Class Counsel by the Court to be paid out of the Settlement Fund.

1.16   "**Final Approval Hearing**" means the hearing(s) before the Court where the Parties will request that the Final Approval Order be entered by the Court finally approving the Settlement as fair, reasonable and adequate, and approving the Fee and Expense Award and the Service Payments to the Class Representatives.

1.17   "**Final Approval Order**" means the order to be entered by the Court after the Final Approval Hearing, which approves the Settlement Agreement.  The Final Approval Order must be substantially similar to the form attached hereto as Exhibit B.

1.18   "**Judgment**" means the judgment to be entered by the Court.   The Judgment must be substantially similar to the form of Exhibit H.

1.19   "**Long Form Notice**" means the legal notice of the proposed Settlement terms described in Section 5.2 of this Agreement, to be provided to the Settlement Class pursuant to the terms and conditions of this Agreement.  The Long Form Notice must be substantially similar to the form attached hereto as Exhibit C.

1.20   "**Net Settlement Fund**" means the Settlement Fund, plus any interest or investment income earned on the Settlement Fund, less any Fee and Expense Award, Service Payments to the Class Representatives, Taxes and Tax Expenses, and Settlement Administration Expenses.

1.21   "**Non-Profit Residual Recipients**" means the Electronic Privacy Information Center and the Electronic Frontier Foundation, 26 U.S.C. 501(c) (3) non-profit organizations.

1.22   "**Notice(s)**" means the notices of this proposed Settlement and Final Approval Hearing to be provided to Settlement Class Members, including but not limited to the Summary Notice, Long Form Notice, Publication Notice, and Settlement Website, as described in more detail in Section 5 of this Agreement.

1.23   "**Notice Date**" means the last date on which the Notice is disseminated to the Settlement Class, which shall be 75 calendar days after the Court enters the Preliminary Approval Order.

1.24   "**Notice Plan**" means the plan described in this Agreement for disseminating Notice to the Settlement Class Members of the terms of this Agreement and the Final Approval Hearing.

1.25   "**Objection and Exclusion Deadline**" means the date by which a written objection to the Settlement or a Request for Exclusion by a person within the Settlement Class must be made.  The Objection and Exclusion Deadline shall be set by the Court in the Preliminary Approval Order.  The Parties will propose an Objection and Exclusion Deadline that is sixty (60) calendar days following the Notice Date.

1.26    "**Paid Subscription Claim(s)**" shall have the meaning as defined in Section 2.2(b).

1.27    "**Person(s)**" means any natural person, corporation, company, limited liability company, partnership, joint adventurers, firm, association, community, organization, business trust, trust, society, estate, syndicate, fiduciary, and any other group, combination, or legal entity.

1.28    "**Plaintiffs' Counsel**" means Class Counsel and those law firms appointed to the Plaintiffs' Steering Committee by the Court on June 30, 2020 (Dkt. No. 92).

1.29    "**Preliminary Approval Order**" means an order substantially in the form of Exhibit D that makes each of the rulings set forth in Section 7.1 of this Agreement.

1.30    "**Publication Notice**" means the legal notice summarizing the proposed Settlement terms to be provided to Settlement Class Members, under Section 5.1(c) of this Agreement.  The Publication Notice must be substantially similar to the form attached hereto as Exhibit E.  The dissemination of the Publication Notice will be in the form and manner described in the Declaration of Cameron R. Azari of Epiq attached hereto as Exhibit F.

1.31    "**Registered User(s)**" means any Settlement Class Member(s) who had a registered account to use the Zoom Meetings App between March 30, 2016 and the Settlement Date.

1.32    "**Released Claims**" means any and all actual or potential claims, complaints, demands, damages, debts, liabilities, proceedings, remedies, counterclaims, actions, causes of action, suits, cross claims, third party claims, contentions, allegations, assertions of wrongdoing, and any demands for injunctive relief or any other type of equitable or legal relief, whether known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent, discovered or undiscovered, brought or that could be brought against any of the Released Parties, and that are based on one or more of the same factual predicates as the Action, in any court, tribunal, forum or proceeding.

1.33    "**Released Parties**" means Zoom, and its respective present or former administrators, predecessors (including, without limitation, through acquisition of all or substantially all assets, stock, or other ownership interests), successors, assigns, parents, subsidiaries, holding companies, investors, divisions, and affiliates of any of the foregoing; and the past, present, and future principals, trustees, partners (including, without limitation, affinity, agent bank, and private label and co-brand partners), officers, directors, employees, associates, agents, representatives, consultants, independent contractors, directors, managing directors, members, attorneys, vendors, accountants, fiduciaries, financial and other advisors, investment bankers, insurers, reinsurers, employee benefit plans, underwriters, shareholders, lenders, auditors, investment advisors, assigns, representatives, heirs, executors, and administrators of any of the above.

1.34    "**Releasing Parties**" means Plaintiffs and Settlement Class Members, together with the respective present or past heirs, executors, estates, administrators, trustees, assigns, agents, consultants, independent contractors, insurers, attorneys, accountants, financial and other advisors, investment bankers, underwriters, lenders, and any other representatives of any of these persons and entities.  For minor children, "Releasing Parties" also includes their parents, guardians, guardians ad litem, and any like fiduciary.

1.35    "**Request for Exclusion**" is the written communication by a Person within the Settlement Class in which he or she requests to be excluded from the Settlement Class, as described in Section 6.2 of this Agreement.

1.36    "**Service Payment(s)**" means the amount of remuneration to be paid to the Class Representatives in recognition of their efforts on behalf of the Settlement Class, in an amount to be ordered by the Court, as set forth in Section 10.2 of this Agreement.

1.37    "**Settlement Administration Expenses**" means the expenses incurred by the Settlement Administrator in relation to this Settlement, including those arising from performing any duty or obligation created by this Settlement Agreement, providing Notice, effectuating the Notice Plan, processing claims, responding to inquiries from members of the Settlement Class, providing payment of Approved Claims, related services, and the costs of the escrow account.

1.38    "**Settlement Administrator**" means Epiq Class Action and Claims Solutions, Inc. ("Epiq"), subject to approval of the Court.

1.39    "**Settlement Claim(s)**" means a claim or request for settlement benefits, as evidenced by the Claim Form, as provided for in Section 2.2 of this Settlement Agreement.

1.40    "**Settlement Class**" means all Persons in the United States who, between March 30, 2016 and the Settlement Date, registered, used, opened, or downloaded the Zoom Meetings Application ("App") except for (i) all Persons who have only registered, used, opened, or downloaded the Zoom Meetings App through an Enterprise-Level Account or a Zoom for Government Account, (ii) Zoom and its officers and directors; and (iii) the Judge or Magistrate Judge to whom the action is assigned and any member of those Judges' staffs or immediate family members.

1.41    "**Settlement Class Member**" means a Person who falls within the definition of the Settlement Class and who does not submit a timely and valid Request for Exclusion from the Settlement Class.

1.42    "**Settlement Date**" means the date this Settlement Agreement is executed, July 30, 2021.

1.43    "**Settlement Fund**" means the non-reversionary cash fund that shall be funded by Zoom in the total amount of eighty-five million dollars ($85,000,000.00) (the "**Settlement Amount**") plus all interest earned thereon after deposit into an escrow account.

1.44    "**Settlement Website**" means the Internet website, with the following URL address, www.ZoomMeetingsClassAction.com, to be created, launched, and maintained by the Settlement Administrator, and which allows for the electronic submission of Claim Forms, and provides access to relevant case documents including the forms of Notice, information about the submission of Claim Forms, and other relevant documents (such as the operative complaint filed in the action, the Settlement Agreement, the Preliminary Approval Order, any application for the Fee and Expense Award and Service Payment, any brief filed by the Parties in support of the Settlement, and the Final Approval Order) including downloadable Claim Forms.

1.45    "**Summary Notice**" means the legal notice summarizing the proposed Settlement terms, substantially in the form attached as Exhibit G.

1.46    "**Settlement Payment**" means any payment to be made to a Settlement Class Member on Approved Claims pursuant to Sections 2.2 to 2.5 of this Agreement.

1.47    "**Unknown Claims**" means claims that could have been raised in the Action and that any or all of the Releasing Parties do not know or suspect to exist, which, if known by him or her, might affect his or her agreement to release the Released Parties or the Released Claims or might affect his or her decision to agree, object or not to object to the Settlement, or seek exclusion from the Class. Upon the Effective Date, the Releasing Parties shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits conferred by California Civil Code § 1542, and any and all provisions, rights, and benefits conferred by any law of any state, province, or territory of the United States that is similar, comparable, or equivalent to California Civil Code § 1542, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention to finally and forever settle and release the Released Claims as to the Released Parties, notwithstanding any Unknown Claims they may have, as that term is defined in this paragraph.

1.48    "**Unregistered User(s)**" means any Settlement Class Member(s) who opened, used or downloaded a Zoom Meetings App and did not have a registered account to use the Zoom Meetings App.

1.49    "**User Claim(s)**" shall have the meaning as defined in Section 2.2(c).

1.50    "**Taxes**" means all federal, state, or local taxes of any kind on any income earned by the Settlement Fund and the expenses and costs incurred in connection with the taxation of the Settlement Fund (including, without limitation, interest, penalties and the reasonable expenses of tax attorneys and accountants).  All (i) Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Parties or their counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (ii) expenses and costs incurred in connection with the operation and implementation of this Agreement (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Agreement ("**Tax Expenses**"), shall be paid out of the Settlement Fund; in all events the Released Parties and their counsel shall have no liability or responsibility for the Taxes or the Tax Expenses.  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Settlement Administrator, as instructed by Class Counsel, out of the Settlement Fund without prior order from the Court and the Settlement Administrator shall be authorized (notwithstanding anything herein to the contrary) to withhold from distribution to Settlement Class Members with Approved

Claims any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(l)(2)). The Parties hereto agree to cooperate with the Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Agreement.  For the purpose of §1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the Settlement Administrator shall be the "administrator." The Settlement Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund and the escrow account (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)).  Such returns (as well as the election described in this Agreement) shall be consistent with this section and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in this Agreement.

1.51    "**Zoom for Government Account**" means a Zoom for Government user account (see https://www.zoomgov.com/) as of the Settlement Date.

1.52    "**Zoom Meetings App**" or "**Zoom Meetings Application**" means Zoom's software and web-based application known as "Zoom Meetings" or "Zoom Cloud Meetings" as well as third-party applications built using a Zoom SDK that provide users the ability to access Zoom videoconferencing meetings.  For clarity, Zoom Meetings App does not include other Zoom products, such as Zoom Phone, Zoom Video Webinars, OnZoom, or Zoom Events.

## 2.    MONETARY RELIEF

### 2.1    <u>Settlement Fund / Escrow</u>

(a)    <u>*Deposit*</u>.  Defendant agrees to make a payment of Eighty-Five Million Dollars and No Cents ($85,000,000.00) and deposit that payment into the Settlement Fund within twenty-one (21) calendar days after the Court enters the Preliminary Approval Order.

(b)    <u>*Custody of Settlement Fund*</u>.  The Settlement Fund shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the entirety of the Settlement Fund is distributed pursuant to this Settlement Agreement or returned to Defendant in the event this Settlement Agreement is voided, terminated or cancelled.

(i)    In the event this Settlement Agreement is voided, terminated or cancelled for any reason: (i) the Settlement Administrator, Class Representatives, Class Counsel, and Plaintiffs' Counsel shall have no obligation to repay any of the Settlement Administration Expenses that have been paid or incurred in accordance with any term or condition of this Agreement or any costs or expenses incurred by Defendant in the furtherance of or related to this Agreement; (ii) any amounts remaining in the Settlement Fund, after payment of Administration Expenses paid or incurred in accordance with any term or condition of this Agreement, including all interest earned on the Settlement Fund net of any Taxes, shall be returned

to Defendant; and (iii) no other person or entity shall have any further claim whatsoever to such amounts.

(c)    *Non-Reversionary*.  This Settlement is not a reversionary settlement.  As of the Effective Date, all rights of the Defendant in or to the Settlement Fund shall be extinguished, except in the event this Settlement Agreement is voided, cancelled or terminated, as described in Section 9 of this Agreement.  In the event the Effective Date occurs, no portion of the Settlement Fund shall be returned to the Defendant.  Any residual funds remaining in the Net Settlement Fund, after any and all Settlement Administration Expenses, Taxes, Fee and Expense Award, Service Payments, and Settlement Payments, pursuant to the terms of this Agreement, have been paid (or set aside for such purposes), shall be distributed to the Non-Profit Residual Recipients in equal amounts.

(d)    *Use of the Settlement Fund*.  As further described in this Agreement, the Settlement Fund shall be used by the Settlement Administrator to pay for: (i) all Settlement Administration Expenses; (ii) any Taxes; (iii) any Service Payments; (iv) any Fee and Expense Award; and (v) Settlement Payments pursuant to the terms and conditions of Section 2 of this Agreement.

(e)    *Financial Account*.  The Settlement Fund shall be an account established and administered by the Settlement Administrator at a financial institution approved by Class Counsel and Defendant, and shall be maintained as a qualified settlement fund pursuant to Treasury Regulation § 1.468 B-1, *et seq.*

(f)    *Payment/Withdrawal Authorization*.  No amounts from the Settlement Fund may be withdrawn unless (i) expressly authorized by the Settlement Agreement or (ii) approved by the Court.  Counsel for the Parties may jointly authorize the periodic payment of actual reasonable Settlement Administration Expenses from the Settlement Fund as such expenses are invoiced without further order of the Court.  The Settlement Administrator shall provide Class Counsel and Defendant with notice of any withdrawal or other payment the Settlement Administrator proposes to make from the Settlement Fund before the Effective Date at least three (3) business days prior to making such withdrawal or payment.

(g)    *Payments to Class Members*.  The Settlement Administrator, subject to such supervision and direction of the Court and/or Class Counsel as may be necessary or as circumstances may require, shall administer and/or oversee distribution of the Settlement Fund to Settlement Class Members pursuant to this Agreement. The Settlement Administrator is responsible for communicating with Settlement Class Members regarding the distribution of the Settlement Fund and amounts paid under the Settlement.

(h)    *Treasury Regulations & Fund Investment*.  The Parties agree that the Settlement Fund is intended to be maintained as a qualified settlement fund within the meaning of Treasury Regulation § 1.468 B-1, and that the Settlement

Administrator, within the meaning of Treasury Regulation § 1.468 B-2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect of the Settlement Fund and paying from the Settlement Fund any Taxes owed with respect to the Settlement Fund. The Parties agree that the Settlement Fund shall be treated as a qualified settlement fund from the earliest date possible and agree to any relation-back election required to treat the Settlement Fund as a qualified settlement fund from the earliest date possible.  Funds may be placed in a non-interest bearing account as may be reasonably necessary during the check clearing process.  The Settlement Administrator shall provide an accounting of any and all funds in the Settlement Fund, including any interest accrued thereon and payments made pursuant to this Agreement, upon request of any of the Parties.

(i)     _Taxes_.  All Taxes relating to the Settlement Fund shall be paid out of the Settlement Fund, shall be considered a Settlement Administration Expense, and shall be timely paid by the Settlement Administrator without prior order of the Court.  Further, the Settlement Fund shall indemnify and hold harmless the Parties and their counsel for Taxes (including, without limitation, taxes payable by reason of any such indemnification payments).   The Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by any Class Representative or any Settlement Class Member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Settlement Fund.   Each Class Representative and Settlement Class Member shall be solely responsible for the federal, state, and local tax consequences to him, her or it of the receipt of funds from the Settlement Fund pursuant to this Agreement.

(j)     _Limitation of Liability_.

        (i)     Other than as set forth herein, the Parties and their counsel shall not have any responsibility for or liability whatsoever with respect to (i) any act, omission or determination of the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

        (ii)    The Settlement Administrator shall indemnify and hold Defendant, Defense Counsel, Class Counsel, the Settlement Class, and Class Representatives harmless for (i) any act or omission or determination of the Settlement Administrator, or any of Settlement Administrator's designees or agents, in connection with the Notice Plan and the

administration of the Settlement; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

(k)     The Settlement Fund represents the total extent of Zoom's monetary obligations under this Agreement, and Zoom shall not have any other monetary obligation to any other counsel, including but not limited to Additional Plaintiffs' Counsel, related to or arising out of the Action.  In no event shall Zoom's total monetary obligation with respect to this Agreement exceed or be less than Eighty-Five Million Dollars ($85,000,000.00).

## 2.2  **Settlement Claims**

(a)     All Settlement Class Members shall be entitled to submit either a Paid Subscription Claim or a User Claim, by submitting a Claim Form (to seek payment from the Settlement Fund) prior to the Claim Deadline. Each Settlement Class Member is limited to one Settlement Claim.  Settlement Class Members shall submit the Claim Form by mailing the Claim Form to the Settlement Administrator or submitting the Claim Form through the Settlement Website.  Each Settlement Class Member with an Approved Claim shall be entitled to a Settlement Payment from the Settlement Fund pursuant to the terms and conditions of Section 2 of this Agreement or as otherwise approved by the Court.

(b)     *Paid Subscription Claim*

(i)     All Settlement Class Members who paid Zoom for a Zoom Meetings App subscription between March 30, 2016 and the Settlement Date and had United States-based billing addresses will be eligible to file a Paid Subscription Claim for the greater of (a) 15% of the total amount of money they paid to Zoom for the core Zoom Meetings App subscription (i.e., not including optional add on features/support that customers may add to their subscriptions) between March 30, 2016 and the Settlement Date and (b) $25 (such claims are referred to herein as "**Paid Subscription Claim(s)**".

(c)     *User Claim*

(i)     All Settlement Class Members not eligible to submit a Paid Subscription Claim are entitled to submit a User Claim for $15 (such claims are referred to herein as "**User Claim(s)**").

2.3    **Settlement Claims Process**

(a)    The Settlement Administrator shall have the authority to determine whether a Claim Form is valid, timely, and complete. Specifically, the Settlement Administrator will determine for each Settlement Claim received whether: (1) the Claimant is a Settlement Class Member; (2) the Settlement Claim has been submitted by the Claims Deadline; (3) the Claimant has provided all information required in or with the Claim Form; and (4) the Claimant appears to meet the criteria for the type of Settlement Claim submitted (i.e. User Claim or Paid Subscription Claim).

(b)    Upon receipt of an incomplete or otherwise invalid Settlement Claim, the Settlement Administrator shall notify the Claimant of the deficiency, and the Claimant shall have fourteen (14) calendar days to cure the deficiency and resubmit the Settlement Claim.  The Settlement Administrator shall exercise reasonable discretion to determine whether the Claimant has cured the deficient Settlement Claim.  If the Claimant fails to cure the deficiency, the Settlement Administrator shall reject the Settlement Claim.  If the deficiency is not cured within fourteen (14) calendar days, then the Settlement Claim will be deemed invalid and there shall be no obligation to pay the Settlement Claim.

(c)    A Settlement Class Member may only submit one (1) Claim whether it be a Paid Subscription Claim or a User Claim.  If the Settlement Class Member has submitted more than one valid Claim, then the Claim resulting in the highest distribution shall be approved and all others shall be denied.

(d)    In the event a Settlement Class Member submits a Paid Subscription Claim that is not valid, but on the basis of the information submitted that Settlement Class Member would have a valid User Claim (and has not already submitted a User Claim), the Paid Subscription Claim shall be converted into a User Claim and deemed an Approved Claim.

2.4    **Adjustment of Settlement Payment Amounts**

(a)    If the total amount of all Settlement Payments due on Approved Claims is less than the total amount of the Net Settlement Fund, the payments to each Claimant with an Approved Claim will be increased *pro rata* in the following order and as follows:

(i)    *First*, each Paid Subscription Claim shall be increased *pro rata* up to a maximum of two times the approved amount of the claim.

(ii)   *Second*, if the Net Settlement Fund would still not be exhausted, approved User Claims shall be increased *pro rata* until the Net Settlement Fund would be used in full.

(b)     If the total amount of all Settlement Payments due on Approved Claims is more than the total amount of the Net Settlement Fund, the payments to each Claimant with an Approved Claim will be reduced *pro rata* in the following order and as follows:

(i)     *First*, if the *pro rata* reduction of the Settlement Payments to all Claimants with Approved Claims would allow Settlement Payments to be made on all Approved Claims without any claim being less than $1, all Settlement Payments shall be reduced *pro rata* until the total amount of Settlement Payments equals the Net Settlement Fund, and such claims shall be paid out at the resulting amounts.

(ii)    *Second*, if the *pro rata* reduction described in Section 2.4(b)(i) is not possible, Settlement Claims submitted by Unregistered Users will be paid nothing.

(iii)   *Third*, if the total amount of all Settlement Payments on the Approved Claims submitted by Paid Subscribers and Registered Users is less than the total amount of the Net Settlement Fund, then Section 2.4(a) shall apply to the Approved Claims submitted by Paid Subscribers and Registered Users, and such claims shall be paid out at the resulting amounts.

(iv)    *Fourth*, if the *pro rata* reduction of the Settlement Payments to all Paid Subscribers and Registered Users with Approved Claims would allow Settlement Payments to be made on all Approved Claims submitted by Paid Subscribers and Registered Users without any claim being less than $1, the Settlement Payments for Approved Claims of Paid Subscribers and Registered Users will be reduced *pro rata* until the total amount of such Settlement Payments equals the Net Settlement Fund, and such claims shall be paid out at the resulting amounts.

(v)     *Fifth*, if the *pro rata* reduction described in Section 2.4(b)(iv) is not possible, Settlement Claims submitted by Registered Users will be paid nothing.

(vi)    *Sixth*, if the total amount of all Settlement Payments on the Approved Claims submitted by Paid Subscribers is less than the total amount of the Net Settlement Fund, then Section 2.4(a) shall apply to the Approved Claims submitted by Paid Subscribers, and such claims shall be paid out at the resulting amounts.

(vii)   *Seventh*, the Settlement Payments on the Approved Claims submitted by Paid Subscribers shall be reduced *pro rata* until the total amount of such Settlement Payments equals the Net Settlement Fund, and such claims shall be paid out at the resulting amounts.

(c)     All such adjustments required by this Section 2.4 shall be performed by the Settlement Administrator.

2.5     **Payment of Settlement Claims**

(a)     Settlement Class Members shall have the option to receive any Settlement Payment due to them pursuant to the terms of this Agreement *via* digital methods (i.e. PayPal, Venmo, digital payment card, *etc.*).  In the event Claimants do not exercise this option, they will receive their given Settlement Payment *via* a physical check sent by U.S. Mail.

(b)     Within forty-five (45) calendar days after the Effective Date, or such other date as the Court may set, the Settlement Administrator shall send Settlement Payments from the Net Settlement Fund by physical check or digital payment (as described above), as elected by each Claimant with an Approved Claim.

(c)     Each payment issued to a Claimant via a physical check will state on the face of the check that it will become null and void unless cashed within ninety (90) calendar days after the date of issuance.

(d)     In the event that an electronic deposit or digital payment to a Claimant is unable to be processed, the Settlement Administrator shall attempt to contact the Claimant within thirty (30) calendar days to correct the problem.

(e)     To the extent that a check issued to a Claimant is not cashed within ninety (90) calendar days after the date of issuance or an electronic deposit is unable to be processed within ninety (90) calendar days of the first attempt, such funds shall remain in the Settlement Fund and shall be apportioned *pro rata* to Claimants with Approved Claims in a second distribution, if economically feasible (such distribution shall be *pro rata* per Claimant without regard to the type of Settlement Claim submitted). To the extent that any second distribution is not economically feasible, or second-distribution funds remain in the Settlement Fund after an additional ninety (90) calendar days, such funds shall be paid to the Non-Profit Residual Recipients in equal amounts.

3.     **INJUNCTIVE RELIEF**

3.1     Without admitting any liability or that it is required by law to do so, Zoom agrees to the following injunctive relief:

**Meeting Disruptions**

(a)     Zoom will create and maintain a dedicated portion of its website as a repository for resources to prevent and respond to meeting disruptions. This repository will provide information regarding "best practices" to protect public meetings from meeting disruptions and include user education blog posts, videos, K-12 educator resources, and other disclosures, including webpages warning of changing default security settings.  Zoom shall also provide a banner-type

notification on its website to direct users to the repository as a source of information for user options, including the location and function of the suspend feature, to address meeting disruptions.

 (i)  The head of Zoom's Trust & Safety Team, or an employee with a substantially equivalent position, will be responsible for oversight of the repository.

(b) Zoom will develop and maintain the following or substantially equivalent or better functionality:

 (i)  Allow hosts to enable waiting rooms for attendees.

 (ii)  Allow hosts to require host presence before meeting starts.

 (iii)  Allow hosts to expel a participant or all participants.

 (iv)  Allow host to suspend participant activities.

 (v)  Allow host to lock a meeting.

 (vi)  Allow host to enable/disable participants' ability to record.

 (vii)  Allow host to temporarily pause screen-sharing when a new window is opened.

 (viii)  Allow host to use a passcode to protect a meeting.

 (ix)  Allow hosts to restrict meeting participants to logged-in users through enhanced authentication options.

 (x)  Allow hosts to block users from joining from specific countries or to allow only joins from specific countries.

 (xi)  Default user setting to use randomly generated meeting IDs.

 (xii)  For K-12 and Free, enable waiting room as default setting.

 (xiii)  For K-12, enhanced configuration/controls, including screen sharing only by host by default, tools for hosts to prevent renaming by participants.

 (xiv)  For Free and Pro, enable as default "Report a User" for hosts and participants.

(c) Zoom will develop and maintain a user-support ticket system for internal tracking of, and communication with users about, reports of meeting disruption(s), overseen by the head of Zoom's Trust & Safety Team, or an employee with a substantially equivalent position, which can be cross-

referenced to reports to law enforcement where applicable, and which will record the following (or substantially equivalent or better) information to the extent provided by host and/or reasonably known:

    (i)      Date of the meeting disruption.

    (ii)     Description of the facts and circumstances related to the meeting disruption.

    (iii)    The number of meeting participants at the time the meeting disruption occurred.

    (iv)    The host's Zoom subscription type (i.e. basic, Pro single user, pro licensee, or business).

    (v)     Identifying information on the disruptor(s) (i.e. IP address, email address, device information, data server region etc.).

    (vi)    Prior disruptions associated with the meeting disruptor, if known.

    (vii)   The actions Zoom took in response to the ticket.

    (d)    Zoom will develop and maintain a documented process for communicating with law enforcement about reported meeting disruptions involving illegal content, including dedicated personnel to report serial meeting disruptors to law enforcement.

### Third-Party Integrations

    (e)    Zoom will not reintegrate the Facebook Login SDK for iOS into the Zoom-developed app known as "Zoom Meetings or "Zoom Cloud Meetings" (referred to in this Section 3 as "Zoom Meetings").

    (f)    Zoom will request that Facebook delete any U.S. user data obtained from the integration of the Facebook Login SDK for iOS with Zoom Meetings within 30 days of the date that the settlement is final and unappealable, and will request that Facebook provide written verification that it has done so.

    (g)    Zoom will not activate the Google Analytics for Firebase SDK (i.e., "firebase-analytics") in Zoom Meetings.

    (h)    Zoom will develop and maintain documented protocols and procedures for vetting the addition of third-party non-open source SDKs to be included in and utilized by Zoom Meetings, including the review of the third party's disclosures regarding the SDK's collection, storage, and/or sharing of user information.

    (i)    Zoom will develop and maintain documented protocols and procedures for admitting Marketplace Apps, including the App developer's disclosure of its privacy policy and how it will use the Zoom APIs to help ensure the App only

has access to the APIs necessary for the App's functioning.  New Apps added to the Marketplace will be subject to these protocols and procedures, as will existing Marketplace Apps when the App developers request access to new Zoom APIs.

(j)      Zoom will develop and maintain a privacy and data handling training program provided to employees, including engineers and product managers, with job duties related to SDKs and Marketplace Apps.

(k)      Zoom will require LinkedIn Sales Navigator to be approved through the currently existing Zoom Marketplace App vetting process before any re-launch.

(l)      Zoom will include a provision in its Marketplace Developer Agreement to make a violation of Zoom's Privacy Statement or other conduct that reasonably appears to violate a developer's legal obligations with respect to privacy concerns a basis for termination.

**Disclosures**

(m)      Zoom will include within its Privacy Statement a notification to users about: the collection, access, use, and sharing of user data by Zoom Meetings; the ability of Zoom's users to share user data with third parties via integration of third party software or otherwise, to record meetings, and/or to transcribe meetings; the limited circumstances under which Zoom employees can access, record, store, or utilize meeting content (such as when directed by a user or required by law); and Zoom's use of face and/or voice recognition if Zoom begins utilizing such technology (which it does not today).

(n)      Zoom will provide in-meeting notifications (or substantially equivalent or better disclosure) to make it easier for users to understand who can see, save, and share their information and content, for example, related to in-meeting chat messages and recorded meetings, and when a meeting host or another participant uses an app during a meeting as explained in https://blog.zoom.us/zoom-rolls-out-in-product-privacy-notifications/.

(o)      Zoom will update its Marketplace Apps installation webpages regarding the categories of user data accessible by such apps and maintain such information (or its substantial equivalent or better) on those webpages.  Zoom will make the nature of permissions accessed by Marketplace Apps easier to understand by clarifying the types of information that are shared with third parties in association with each permission.

(p)      Zoom will create and maintain a dedicated portion of its website with centralized information and links for parents whose children are using school-provisioned K-12 accounts.

3.2     The injunctive relief set forth in Section 3.1(a), (b), (c), (d), (h), (i), (j), (l), (m), (n), (o), and (p) shall remain in place for a period of three (3) years following the date the Court issues the Final Approval Order.

3.3     The injunctive relief set forth in Section 3.1(e), (g), and (k) shall remain in place for a period of one (1) year following the date the Court issues the Final Approval Order.

3.4     Nothing described in Section 3.1 will inhibit, prevent, or limit Zoom from making product changes, changes to its Terms of Service or Privacy Statement, changes to product names or other terminology, or other changes, from time to time, as it deems appropriate in the conduct of its business, provided that such changes are consistent with the relief described above, or to comply with the law.

3.5     The Parties agree, and hereby stipulate, that Plaintiffs and Class Counsel were a substantial and motivating factor for injunctive relief that Zoom agrees to undertake in this Section 3.1.

## 4.     SETTLEMENT ADMINISTRATION

4.1     The Settlement Administrator shall, under the supervision of the Court, administer the relief provided by this Settlement Agreement by providing Notice and processing Settlement Claims in a reasonable, cost effective, and timely manner. The Settlement Administrator shall maintain reasonably detailed records of its activities under this Agreement. The Settlement Administrator shall also provide reports and other information to the Court as the Court may require, including those set forth in the Preliminary Approval Order. Without limiting the foregoing, the Settlement Administrator shall:

(a)     Receive requests to be excluded from the Class and promptly provide Class Counsel and Defendant's Counsel copies thereof.  If the Settlement Administrator receives any exclusion forms after the deadline for the submission of such forms, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and Defendant's Counsel;

(b)     Obtain the contact information for known Settlement Class Members from Defendant;

(c)     Effectuate the Notice Plan in accordance with the procedures set forth in this Agreement;

(d)     Establish and maintain a post office box for mailed Claim Forms and Requests for Exclusions;

(e)     Establish and maintain the Settlement Website that, among other things, allows Class Members to submit Settlement Claims electronically;

(f)     Establish and maintain a toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and respond to such inquiries;

(g)     Respond to any mailed or emailed Settlement Class Member inquiries;

(h)     Process all Requests for Exclusion from the Settlement Class;

(i)     In advance of the Final Approval Hearing, prepare affidavits to submit to the Court that: (i) attest to implementation of the Notice Plan in accordance with the Preliminary Approval Order; and (ii) identify each Settlement Class Member who timely and properly provided a Request for Exclusion;

(j)     Review, determine the validity of, and process all Claim Forms submitted by Settlement Class Members, pursuant to criteria set forth in this Agreement;

(k)     Distribute the Settlement Fund in accordance with the terms and conditions of this Agreement;

(l)     Provide weekly reports and a final report to the Parties that summarize the number of Settlement Claims since the prior reporting period, the total number of Claims received to date, the number of any Settlement Claims approved and denied since the prior reporting period, the total number of Settlement Claims approved and denied to date, and other pertinent information as requested by Class Counsel and Defendant's counsel;

(m)     Maintain reasonably detailed records of its activities under this Agreement. The Settlement Administrator shall maintain all such records as required by applicable law in accordance with its business practices and such records will be made available to Class Counsel and Defendant's Counsel upon request. The Settlement Administrator shall also provide reports and other information to the Court as the Court may require.  Upon request, the Settlement Administrator shall provide Class Counsel and Defendant's Counsel with information concerning Notice, administration, and implementation of the Settlement;

(n)     Make available for inspection by Class Counsel and Defendant's Counsel the Claim Forms and any supporting documentation received by the Settlement Administrator at any time upon reasonable notice;

(o)     Cooperate with any audit by Class Counsel or Defendant's Counsel, who shall have the right but not the obligation to review, audit, and evaluate all Claim Forms for accuracy, veracity, completeness, and compliance with the terms and conditions of this Agreement; and

(p)     Perform any function related to Settlement administration at the agreed-upon instruction of both Class Counsel and Defendant's counsel, including, but not limited to, verifying that cash payments have been distributed in accordance with the terms and conditions of this Agreement.

4.2     The Settlement Administrator shall be obliged to employ reasonable procedures to screen Settlement Claims for abuse or fraud and deny Settlement Claims where there is evidence of abuse or fraud. The Settlement Administrator shall use reasonable fraud-prevention mechanisms to prevent (i) submission of Claim Forms by persons other than potential Settlement Class Members, and (ii) submission of more than one Claim Form per person.  In the event a Claim Form is submitted without a unique class member identifier the Settlement Administrator shall employ reasonable effort to ensure that the Claim is valid.

4.3     In the exercise of its duties outlined in this Agreement, the Settlement Administrator shall have the right to reasonably request additional information from the Parties or any Claimant.

4.4     Zoom shall provide to the Settlement Administrator reasonably available information needed for the Settlement Administrator to calculate Settlement Claim amounts and payments to be made to Claimants and to make a determination on whether Claimants or objectors are Settlement Class Members.

4.5     Because information about Settlement Class Members will be provided to the Settlement Administrator solely for purposes of providing the Class Notice and Settlement benefits and processing Requests for Exclusion, the Settlement Administrator will execute a confidentiality and non-disclosure agreement with Defendant, Defense Counsel, and Class Counsel and will ensure that any information provided to it by Settlement Class Members, Class Counsel, Plaintiffs' Counsel, Defense Counsel, or Defendant will be secure and used solely for the purpose of effecting this Settlement.

4.6     All costs incurred by the Settlement Administrator shall be borne by and paid by the Settlement Fund.

## 5.     NOTICE PROGRAM

5.1     **Notice**. Subject to the Court entering the Preliminary Approval Order, the Parties agree that the Settlement Class shall be provided with notice of the proposed Settlement by the following methods.

(a)     *Settlement Class Contact Information*. Within five (5) business days after the date of the Preliminary Approval Order, Defendant shall provide to the Settlement Administrator the last known e-mail addresses and billing addresses for all Persons that Zoom's records reasonably indicate are likely to be Settlement Class Members, which information shall be based on records reasonably available to Zoom (the "**Available Settlement Class Contact Information**").

(i)     *Summary Notice by Electronic Mail and Mail*. Starting no later than thirty (30) calendar days after entry of the Preliminary Approval Order, the Settlement Administrator shall begin disseminating the Summary Notice to members of the Settlement Class (who have been identified pursuant to Section 5.1(a)) as follows:

(1)     The Settlement Administrator shall email the Summary Notice to each Person for whom the Available Settlement Class Contact Information contains an email address;

(2)     The Settlement Administrator shall send the Summary Notice (in Post Card form) by U.S. mail, postage prepaid to each Person for whom the Available Settlement Class Contact Information does not contain an email address but does contain a physical mailing address;

(3)     If any Summary Notice that has been emailed is returned as undeliverable, the Settlement Administrator shall attempt two other email executions and, if unsuccessful, the Settlement Administrator will send the Summary Notice (in Post Card form) by U.S. mail, postage prepaid, to the extent a current physical mailing address is available;

(4)     For any Summary Notice that has been mailed via U.S. mail and returned by the Postal Service as undeliverable, the Settlement Administrator shall re-mail the notice to the forwarding address, if any, provided by the Postal Service on the face of the returned mail or—if no forwarding address is provided on the returned mail—to the forwarding address, if any, in the United States Postal Service's National Change of Address Database;

(5)     The Settlement Administrator shall complete dissemination of the Summary Notice by email and mail as set forth in this Section 5.1 by the Notice Date;

(6)     Neither the Parties nor the Settlement Administrator shall have any other obligation to re-email or re-mail individual notices that have been sent as provided in this Section 5.1.

(b)     _Settlement Website_.  Prior to the dissemination of any Notice, the Settlement Administrator will complete the set up the Settlement Website and post the Long Form Notice and Claim Form thereon.  The Settlement Website will also allow for electronic submission, through the website, of the Claim Form (in addition to Claim Forms being mailed to the Settlement Administrator).  The website will be active until at least ninety (90) calendar days after the Effective Date.  However, the Settlement Administrator may disable online submission of the Claim Form the day after the Claims Deadline.  The Settlement Website shall also include a toll-free telephone number, email address, and mailing address through which Settlement Class Members may contact the Settlement Administrator directly.

(c)     _Publication Notice._  The Settlement Administrator will also provide the Summary Notice in print publications and in a digital media campaign as set forth in the Declaration of Cameron R. Azari of Epiq, attached as Exhibit F, prior to the Notice Date. The Parties shall have the right to approve the content, layout, and target audience for all digital media campaign postings and advertisements, with approval not be withheld without good cause.  Any disputes will be resolved with the Hon. Jay Gandhi (Ret.) of JAMS.

5.2   **Long Form Notice.**  The Long Form Notice shall be in a form substantially similar to the document attached as Exhibit C hereto. The Long Form Notice shall (i) contain a description of the nature of the Action and the proposed Settlement, including information on the definition of the Settlement Class, the identity of members of the Settlement Class, how the proposed Settlement would

provide relief to Settlement Class Members, and other relevant information; (ii) contain a description of what claims are released under the proposed Settlement; (iii) advise the Settlement Class of the *Arriaza* and *Greenbaum* actions and that those members of the Settlement Class who do not file valid and timely exclusion requests will be releasing their claims under those actions; (iv) inform members of the Settlement Class of their right to opt out of the proposed Settlement and provide the deadlines and procedures for exercising this right; (v) inform Settlement Class Members of their right to object to the proposed Settlement, Fee and Expense Award, and/or Service Payments and to appear at the Final Approval Hearing, and provide the deadlines and procedures for exercising these rights; (vi) inform the Settlement Class that fees and expenses related to the Settlement Administrator will be deducted from the Settlement Fund, and set forth the maximum Fee and Expense Award and Service Payments to be sought; and (vii) inform and provide instruction to the Settlement Class about the process for making a Claim.

5.3     **Inquiries from the Settlement Class.**  The Settlement Administrator will establish an email account and P.O. Box to which Settlement Class Members may submit questions regarding the Settlement.  The Settlement Administrator will monitor the email account and P.O. Box and respond promptly to inquiries received from Class Members.  The Settlement Administrator will also establish and maintain a toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries and to answer the questions of Settlement Class Members who call with or otherwise communicate such inquiries.

5.4     All costs associated with providing all forms of notice, responding to inquiries from Settlement Class Members referenced in this Section 5, and performing all other of the Settlement Administrator's duties under this Agreement shall be paid out of the Settlement Fund.

5.5     The Notices and Claim Form approved by the Court may be adjusted by the Settlement Administrator in consultation and agreement with Class Counsel and Defendant's Counsel, as may be reasonable and necessary and not inconsistent with such approval.

5.6     Prior to the Final Approval Hearing, Class Counsel and Defendant's Counsel shall cause to be filed with the Court an appropriate affidavit or declaration from the Settlement Administrator with respect to complying with the Court-approved Notice program set forth in this Section 5.

5.7     Defendant will serve the notice required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, no later than ten days after this Settlement Agreement is filed with the Court.

## 6.     OBJECTIONS AND EXCLUSIONS (OPT-OUTS)

6.1     **Objections**.  Any Settlement Class Member who wishes to object to the fairness, reasonableness, or adequacy of the Settlement Agreement or the proposed Settlement, or to Class Counsel's requested Fee and Expense Award or any requested Service Payments for the Class Representatives must follow the following procedure:

(a)     Objections must be in writing and must be signed by the objector.

(b)     Objections must (a) clearly identify the case name and number (i.e., "*In re: Zoom Video Communications, Inc. Privacy Litigation*, Case No. 5:20-cv-02155-LHK), (b) be submitted only to the Court either by mailing them to the Class Action

Clerk, United States District Court for the Northern District of California, 280 South 1st Street, San Jose, CA 95113, or by filing them in person at any location of the United States District Court for the Northern District of California, and (c) be filed or postmarked on or before Objection and Exclusion Deadline.

(c)     Objections must contain (1) the objector's name, address, and email address; (2) an explanation of the basis upon which the objector claims to be a Settlement Class Member; (3) whether the objection applies only to the objector, a subset of the Settlement Class, or the entire Settlement Class; (4) all grounds for the objection, including all citations of legal authority and evidence supporting the objection; (5) the name and contact information of any and all attorneys representing, advising, or in any way assisting the objector in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection, who must enter an appearance with the Court in accordance with the Local Rules; and (6) a statement indicating whether the objector intends to appear at the Final Approval Hearing (either personally or through counsel).

6.2     **Exclusions (Opt-Outs)**. A Settlement Class Member may request to be excluded from the Settlement Class by following the following procedures:

(a)     Requests for Exclusion must be in writing and signed with a physical signature by the requestor.

(b)     Requests for Exclusion may be delivered to the Settlement Administrator by postal mail.  Requests may also be emailed to the Settlement Administrator as attachments to the email (a request for exclusion in the body of the email shall not be considered valid due to the lack of physical signature).

(c)     Requests for Exclusion must be postmarked by or emailed by the Objection and Exclusion Deadline.

(d)     Requests for Exclusion must include (1) the requestor's name, address and email address; (2) the requestor's physical signature; (3) the name and number of this Action (i.e., "*In re: Zoom Video Communications, Inc. Privacy Litigation*, Case No. 5:20-cv-02155-LHK); and (4) a statement that he or she wishes to be excluded from the Settlement Class for purposes of this Settlement. Each Request for Exclusion can only request exclusion for that one individual.

(e)     A Request for Exclusion that does not include all of this information, or that is sent to an address other than that designated in the Notice, or that is not emailed or postmarked within the time specified, shall be invalid, and the Person(s) serving such a request remain a member(s) of the Settlement Class and shall be bound as a Settlement Class Member by this Agreement, if approved.  Any member of the Settlement Class who validly elects to be excluded from this Agreement shall not: (i) be bound by any orders, the Final Approval Order, or the Judgment; (ii) be entitled to relief under this Settlement Agreement; (iii) gain

any rights by virtue of this Agreement; or (iv) be entitled to object to any aspect of this Agreement.

(f)     The Request for Exclusion must be physically signed by the Person requesting exclusion.

6.3     The Settlement Administrator shall serve on Zoom's Counsel and Class Counsel a list of all Persons in the Settlement Class who have timely and validly excluded themselves from the Settlement Class no later than ten (10) calendar days after the Objection and Exclusion Deadline.

## 7.     PRELIMINARY APPROVAL AND FINAL APPROVAL

7.1     Promptly after the execution of this Settlement Agreement, Class Counsel shall submit this Agreement together with its Exhibits to the Court and shall move the Court for preliminary approval of the settlement set forth in this Agreement by entry of a Preliminary Approval Order substantially in the form of Exhibit D, which order shall, *inter alia*,

(a)     Preliminarily approve the Settlement Agreement;

(b)     Appoint Tina Wolfson of Ahdoot & Wolfson, PC and Mark C. Molumphy of Cotchett, Pitre, & McCarthy LLP as Class Counsel;

(c)     Appoint Plaintiffs as Settlement Class representatives;

(d)     Approve the Notice Program, including the Notice Plan and forms of Notice;

(e)     Approve the Claim Form;

(f)     Approve the Claim Deadline and Objection and Exclusion Deadline;

(g)     Appoint a Settlement Administrator; and

(h)     Set a Final Approval Hearing date.

7.2     The Preliminary Approval Order shall also authorize the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications and expansions of the Settlement Agreement and its implementing documents (including all exhibits to this Agreement) so long as they are consistent in all material respects with the terms of the Final Approval Order and do not limit or impair the rights of the Settlement Class.

7.3     After Notice is given, the Parties shall request and seek to obtain from the Court a Final Approval Order, which will (among other things):

(a)     Find that the Court has personal jurisdiction over all Settlement Class Members and that the Court has subject matter jurisdiction to approve the Settlement Agreement, including all exhibits thereto;

(b)     Approve the Settlement Agreement and the proposed settlement as fair, reasonable and adequate as to, and in the best interests of, the Settlement Class

Members; direct the Parties and their counsel to implement and consummate the Agreement according to its terms and provisions; and declare the Agreement to be binding on, and have res judicata and preclusive effect in all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiffs and the Releasing Parties with respect to the Released Claims;

(c) Find that the Notice implemented pursuant to the Agreement (i) constituted the best practicable notice under the circumstances; (ii) constituted notice that is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action, the Related Actions, and the *Arriaza* and *Greenbaum* actions, their right to object to the Settlement or exclude themselves from the Settlement Class, and to appear at the Final Approval Hearing; (iii) constituted notice that failure to exclude themselves from the Settlement Class will result in a release of any of their claims under the Action, the Related Actions, and the *Arriaza* and *Greenbaum* actions; (iv) was reasonable and constituted due, adequate, and sufficient notice to all Persons entitled to receive notice; and (v) met all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and the rules of the Court;

(d) Find that the Class Representatives and Class Counsel adequately represented the Class for purposes of entering into and implementing the Settlement Agreement;

(e) Dismiss the Action on the merits and with prejudice, without fees or costs to any party except as provided in the Settlement Agreement;

(f) Incorporate the releases set forth in this Agreement, make such releases effective as of the Effective Date, and forever discharge the Released Parties from the Released Claims as set forth herein;

(g) Permanently bar and enjoin all Settlement Class Members who have not properly sought exclusion from the Settlement Class from filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in, any lawsuit or other action in any jurisdiction based on the Released Claims;

(h) Without affecting the finality of the Final Approval Order or the Judgment for purposes of appeal, retain jurisdiction as to all matters relating to administration, consummation, enforcement, and interpretation of the Settlement Agreement and the Final Approval Order, and for any other necessary purpose; and

(i) Incorporate any other provisions, as the Court deems necessary and just.

7.4     The Parties shall request that the Court schedule the Final Approval Hearing for a date that is in compliance with the provisions of 28 U.S.C. §1715(d).

7.5     The Parties shall, in good faith, cooperate, assist and undertake all reasonable actions and steps in order to accomplish these required events on the schedule set by the Court, subject to the terms of this Settlement Agreement.

## 8.    RELEASES

8.1     The obligations incurred pursuant to this Settlement Agreement shall be a full and final disposition of the Action and any and all Released Claims, as against all Released Parties.

8.2     **Settlement Class Release**.  Upon the Effective Date, the Releasing Parties, and each of them, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties, and each of them.

## 9.    TERMINATION OF THE SETTLEMENT AGREEMENT

9.1     **Right to Termination**.  Subject to this Section 9, Defendant or Plaintiffs, on behalf of the Settlement Class, shall have the right to terminate this Agreement by providing written notice of the election to do so ("**Termination Notice**") to all other Parties hereto within twenty-one (21) calendar days after any of the following events have occurred: (i) the Court's refusal to grant Preliminary Approval of this Agreement in any material respect or a ruling conditionally approving this Agreement subject to proposed changes to, or additions of, material terms (including, but not limited to, changes or additions to the Prospective Relief set forth in Section 3, the notice provisions of Section 5, and the definition of "Released Claims"); (ii) the Court's refusal to grant Final Approval of this Agreement in any material respect; (iii) the Court's refusal to enter the Final Approval Order or the Judgment in this Action in any material respect; or (iv) the date upon which the Final Approval Order or the Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court.

9.2     **Action Status if Settlement Not Approved or Otherwise Terminated.**  This Settlement Agreement is being entered into for settlement purposes only.  If the Court conditions its approval of either the Preliminary Approval Order, the Final Approval Order, or Judgment on any modifications of this Settlement Agreement that are not acceptable to all Parties, or if the Court does not approve the Settlement or enter the Final Approval Order or Judgment, or if this Settlement Agreement is terminated under Section 9.1 above, or if the Effective Date cannot occur for any reason, then this Settlement Agreement will be deemed null and void *ab initio* (except for Sections 2.1(b)(i), 2.1(e), 2.1(f), 2.1(h), 2.1(i), 2.1(j), and 9 of this Agreement).  In that event: (a) to the extent applicable, the Preliminary Approval Order, the Final Approval Order, and the Judgment, and all of its or their provisions will be vacated by its or their own terms, including, but not limited to, vacating any and all rulings regarding class certification for settlement purposes, including conditional certification of the Settlement Class, conditional appointment of Plaintiffs as Class Representatives, and conditional appointment of Plaintiffs' Counsel as Class Counsel; (b) the Settlement Agreement will be deemed null and void *ab initio* (except for Sections 2.1(b)(i), 2.1(e), 2.1(f), 2.1(h), 2.1(i), 2.1(j), and 9 of this Agreement), and the Action will revert to the status that existed before the Settlement Agreement's execution date; and (c)(i) no term or draft of this Settlement Agreement, (ii) nor any part of the Parties' settlement discussions, negotiations, or documentation (including any declaration or brief filed in support of the motion for preliminary approval or motion for final approval), (iii) nor any rulings regarding class certification for settlement purposes (including the Preliminary Approval Order and, if

applicable, the Final Approval Order, and the Judgment), will have any effect or be admissible into evidence for any purpose in the Action or any other proceeding.  If the Court does not approve the Settlement or enter the Final Approval Order and the Judgment for any reason, or if the Effective Date cannot occur for any reason, Zoom shall retain all its rights, for example, to object to the maintenance of the Action as a class action, to move for summary judgment, and to assert defenses at trial, and nothing in this Settlement Agreement or other papers or proceedings related to the Settlement shall be used as evidence or argument by any Party concerning whether the Action may properly be maintained as a class action, or for any other purpose.

9.3     **Treatment of Settlement Fund if Settlement Terminated.**  Unless otherwise ordered by the Court, in the event the Settlement Agreement is terminated for any reason, then within ten (10) business days after the Parties have provided the Court with notice that they are invoking this Section 9, the Settlement Administrator shall return the Settlement Fund (including accrued interest), less Settlement Administration Expenses, expenses and any costs which have either been disbursed or incurred, including Taxes and Tax Expenses, to Defendant pursuant to written instructions from Defendant's Counsel.  At the request of Defendant's Counsel, the Settlement Administrator or its designee shall apply for any tax refund owed on the Settlement Fund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, to Zoom.

9.4     Notwithstanding any provision of this Agreement, in the event this Agreement is not approved by any court, or terminated for any reason, or the Settlement set forth in this Agreement is declared null and void, or in the event that the Effective Date does not occur, Settlement Class Members, Plaintiffs, Plaintiffs' Counsel, and Class Counsel shall not in any way be responsible or liable for any of the Settlement Administration Expenses, or any expenses, including costs of notice and administration associated with this Settlement or this Agreement.

## 10.     SERVICE PAYMENTS AND ATTORNEYS' FEES AND EXPENSES

10.1     **Fee and Expense Award**.  Class Counsel may petition the Court for payment of Class Counsel's reasonable attorneys' fees and expenses incurred in the Action.  The amount of the Fee and Expense Award shall be determined by the Court based on petition from Class Counsel.  Class Counsel shall file any such motion for a Fee and Expense Award, along with any papers supporting the motion, with the Court on or before thirty-five (35) calendar days before the Objection and Exclusion Deadline, or as otherwise ordered by the Court.  Class Counsel's motion for a Fee and Expense Award shall be available on the Settlement Website.  Additionally, the maximum amount of attorneys' fees, costs, and expenses sought by Class Counsel shall be disclosed in the Long Form Notice.

(a)     Payment of the Fee and Expense Award shall be made from the Settlement Fund within three (3) business days after the Effective Date via wire transfer to an account or accounts designated by Class Counsel after providing necessary information for electronic transfer.

(b)     Unless otherwise ordered by the Court, Class Counsel shall have the sole and absolute discretion to allocate any approved Fee and Expense Award amongst Plaintiffs' Counsel and any other attorneys.  Defendant shall have no liability or other responsibility for allocation of any such attorneys' fees and costs.

10.2 **Service Payments**.  The Class Representatives may petition the Court for Service Payments of up to Five Thousand Dollars ($5,000) per Class Representative to be paid from the Settlement Fund, with the amount to be paid to the Class Representatives being set by the Court.  The Class Representatives shall file any motion for Service Payments along with any papers supporting the motion, with the Court on or before thirty-five (35) calendar days prior to the Objection and Exclusion Deadline.  The Class Representatives' motion for Service Payments shall be available on the Settlement Website once the Settlement Website becomes active, and the amount of Service Payments sought shall be disclosed in the Long Form Notice.

10.3 **Fee and Expense Award and Service Payments Not a Condition of Settlement**.  It is not a condition of this Settlement Agreement that any particular amount of attorneys' fees, costs, or expenses or Service Payments be approved by the Court, or that such fees, costs, expenses, or awards be approved at all.  Any order or proceeding relating to the amount of any award of attorneys' fees, costs, or expenses or Service Payments, or any appeal from any order relating thereto, or reversal or modification thereof, shall not operate to modify, terminate, or cancel this Settlement Agreement, or affect or delay the finality of the Final Approval Order and the Judgment.

## 11. ADDITIONAL PROVISIONS

11.1 **Representation and Warranties.**

(a)     Each signatory to this Agreement represents and warrants (i) that he, she, or it has all requisite power and authority to execute, deliver and perform this Agreement and to consummate the transactions contemplated herein, (ii) that the execution, delivery and performance of this Agreement and the consummation by it  of the actions contemplated herein have been duly authorized by all necessary corporate action on the part of each signatory, and (iii) that this Agreement has been duly and validly executed and delivered by each signatory, and constitutes its legal, valid and binding obligation.

11.2 **Zoom's Denial of Wrongdoing.**  Zoom denies that it committed, or attempted to commit, any violations of law with respect to its users or otherwise.  Zoom also denies that Plaintiffs and the Settlement Class have suffered any injury or damages as a result of conduct alleged in the Action.  Zoom maintains that it has meritorious defenses to all the claims alleged in the Action.  Nonetheless, Zoom believes that further litigation could be protracted, burdensome, expensive, and distracting.  Zoom has also determined that further litigation would divert resources and attention from other activities important to its business interests.  Thus, Zoom has concluded that it is desirable and beneficial to settle the Action on the terms and conditions set forth in this Settlement.

11.3 **No Tax Liability.**  Under no circumstances will Zoom or Zoom's Counsel have any liability for Taxes or Tax Expenses under the Settlement Agreement.  Plaintiffs, Plaintiffs' Counsel, Settlement Class Members, and the recipients of *cy pres* funds are responsible for any Taxes on their respective recoveries or awards.  Nothing in this Settlement Agreement, or statements made during the negotiation of its terms, shall constitute tax advice by Zoom or Zoom's Counsel.

11.4    **Change of Time Periods.**  All time periods and dates described in this Settlement Agreement are subject to the Court's approval.  These time periods and dates may be changed by the Court or by the Parties' written agreement without notice to the Settlement Class.  The Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any provisions of this Agreement.

11.5    **Real Parties in Interest.**  In executing this Settlement Agreement, the Parties warrant and represent that they, including Plaintiffs in their representative capacity on behalf of the Settlement Class, are the only Persons having any interest in the claims asserted in this Action.  Neither these claims, nor any part of these claims, have been assigned, granted, or transferred in any way to any other Person.

11.6    **Voluntary Agreement.**  The Parties executed this Settlement Agreement voluntarily and without duress or undue influence.

11.7    **Binding on Successors.**  This Settlement Agreement binds and benefits the Parties' respective successors, assigns, legatees, heirs, and personal representatives.

11.8    **Parties Represented by Counsel.**  The Parties acknowledge that: (a) they have been represented by independent counsel of their own choosing during the negotiation of this Settlement and the preparation of this Settlement Agreement; (b) they have read this Settlement Agreement and are fully aware of its contents; and (c) their respective counsel fully explained to them the Settlement Agreement and its legal effect.

11.9    **Authorization.**  Each Party warrants and represents that there are no liens or claims of lien or assignments, in law or equity, against any of the claims or causes of action released by this Settlement Agreement.

11.10    **Entire Agreement.**  This Settlement Agreement and attached exhibits contain the entire agreement between the Parties and constitute the complete, final, and exclusive embodiment of their agreement with respect to the Action.  This Settlement Agreement is executed without reliance on any promise, representation, or warranty by any Party or any Party's representative other than those expressly set forth in this Agreement and any such prior promises, representations, or warranties relating to this Action are null and void.

11.11    **Construction and Interpretation.**  Neither Party nor any of the Parties' respective attorneys will be deemed the drafter of this Settlement Agreement for purposes of interpreting any provision in this Settlement Agreement in any judicial or other proceeding that may arise between them.  This Settlement Agreement has been, and must be construed to have been, drafted by all the Parties to it, so that any rule that construes ambiguities against the drafter will have no force or effect.

11.12    **Headings and Formatting of Definitions.**  The various headings used in this Settlement Agreement are solely for the Parties' convenience and may not be used to interpret this Settlement Agreement.  Similarly, bolding and italicizing of definitional words and phrases is solely for the Parties' convenience and may not be used to interpret this Settlement Agreement.  The headings and the formatting of the text in the definitions do not define, limit, extend, or describe the Parties' intent or the scope of this Settlement Agreement.

11.13 **Exhibits.** The exhibits to this Settlement Agreement are integral parts of the Settlement Agreement and the Settlement and are incorporated into this Settlement Agreement as though fully set forth in the Settlement Agreement.

11.14 **Modifications and Amendments.** No amendment, change, or modification to this Settlement Agreement will be valid unless in writing signed by the Parties or their counsel.

11.15 **Governing Law.** This Settlement Agreement is governed by California law and must be interpreted under California law without regard to conflict-of-laws principles.

11.16 **Further Assurances.** The Parties must execute and deliver any additional papers, documents, and other assurances, and must do any other acts reasonably necessary, to perform their obligations under this Settlement Agreement and to carry out this Settlement Agreement's expressed intent.

11.17 **Agreement Constitutes a Complete Defense.** To the extent permitted by law, this Settlement Agreement may be pled as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceedings that may be instituted, prosecuted, or attempted in breach of or contrary to this Settlement Agreement.

11.18 **Execution Date.** The execution date shall be the last date when all signatories have signed the Agreement.

11.19 **Counterparts.** This Settlement Agreement may be executed in counterparts, each of which constitutes an original, but all of which together constitute one and the same instrument. Several signature pages may be collected and annexed to one or more documents to form a complete counterpart. Photocopies, facsimiles, and PDFs of executed copies of this Settlement Agreement may be treated as originals.

11.20 **Recitals.** The Recitals are incorporated by this reference and are part of the Settlement Agreement.

11.21 **Severability.** If any provision of this Settlement is declared by the Court to be invalid, void, or unenforceable, the remaining provisions of this Settlement will continue in full force and effect, unless the provision declared to be invalid, void, or unenforceable is material, at which point the Parties shall attempt to renegotiate the Settlement or, if that proves unavailing, either Party may terminate the Settlement Agreement, and such termination shall be deemed to cause no prejudice to any Party.

11.22 **Inadmissibility.** This Settlement Agreement and any evidence of proceedings or discussions related to this Settlement Agreement are inadmissible as evidence of any liability or wrongdoing whatsoever in any Court or tribunal in any state, territory, or jurisdiction. Further, neither this Settlement Agreement, nor the Settlement contemplated by it, nor any proceedings taken under it, will be construed or offered or received into evidence as an admission, concession, or presumption that class certification is appropriate, except to the extent necessary to consummate this Settlement Agreement and the binding effect of the Final Approval Order and the Judgment.

11.23   **No Waiver of Attorney-Client Privilege.**  Nothing in this Agreement, the negotiations, and the mediation relating thereto is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including without limitation the attorney-client privilege or work product immunity, by any Party.

11.24   **No Conflict Intended.**  Any inconsistency between this Settlement Agreement and the attached exhibits will be resolved in favor of this Settlement Agreement.

11.25   **Deadlines**.  If any of the dates or deadlines specified herein falls on a weekend or legal holiday, the applicable date or deadline shall fall on the next business day.  All reference to "days" in this Agreement shall refer to calendar days, unless otherwise specified.  The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

11.26   **Dollar Amounts**.  All dollar amounts are in United States dollars, unless otherwise expressly stated.

**IN WITNESS WHEREOF**, each of the Parties hereto has caused this Agreement to be executed on its behalf by its duly authorized counsel of record, all as of the day set forth below:

INTERIM CLASS COUNSEL, ON BEHALF OF THE SETTLEMENT CLASS:

Dated: July 30, 2021                    **AHDOOT & WOLFSON, PC**

By: _____
        Tina Wolfson

Dated: July 30, 2021                    **COTCHETT, PITRE & MCCARTHY LLP**

By: _____
        Mark C. Molumphy

11.23   **No Waiver of Attorney-Client Privilege.**  Nothing in this Agreement, the negotiations, and the mediation relating thereto is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including without limitation the attorney-client privilege or work product immunity, by any Party.

11.24   **No Conflict Intended.**  Any inconsistency between this Settlement Agreement and the attached exhibits will be resolved in favor of this Settlement Agreement.

11.25   **Deadlines**.  If any of the dates or deadlines specified herein falls on a weekend or legal holiday, the applicable date or deadline shall fall on the next business day.  All reference to "days" in this Agreement shall refer to calendar days, unless otherwise specified.  The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

11.26   **Dollar Amounts**.  All dollar amounts are in United States dollars, unless otherwise expressly stated.

**IN WITNESS WHEREOF**, each of the Parties hereto has caused this Agreement to be executed on its behalf by its duly authorized counsel of record, all as of the day set forth below:

INTERIM CLASS COUNSEL, ON BEHALF OF THE SETTLEMENT CLASS:

Dated: July 30, 2021                      **AHDOOT & WOLFSON, PC**

By: _____
       Tina Wolfson

Dated: July 30, 2021                      **COTCHETT, PITRE & MCCARTHY LLP**

By: _____
       Mark C. Molumphy

**COUNSEL FOR ZOOM VIDEO COMMUNICATIONS, INC.:**

Dated:  July 30, 2021

**COOLEY LLP**
Michael G. Rhodes
Travis Leblanc
Kathleen R. Hartnett
Benjamin H. Kleine

By: _____
Michael G. Rhodes

CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE 5:20-cv-02155-LHK

EXHIBIT A

## CLAIM FORM FOR ZOOM PRIVACY LITIGATION SETTLEMENT

*In re: Zoom Video Communications, Inc. Privacy Litigation*, Case No. 5:20-cv-02155

**USE THIS FORM TO MAKE A CLAIM FOR A CASH PAYMENT**

**The DEADLINE to submit this Claim Form is: [__ Days From Notice Date]**

### I.      GENERAL INSTRUCTIONS

If you registered, used, opened, or downloaded the Zoom Meetings Application—including through a mobile app, desktop program, or web portal— (referred in this document as "**Zoom Meetings**"), at any time between March 30, 2016 and July 30, 2021, and it was not through an Enterprise-Level account or Zoom for Government account, then you are a "Class Member" and entitled to make a Claim. As a Class Member:

1.  If you are or were a paid subscriber to the Zoom Meetings between March 30, 2016 and July 30, 2021, you are entitled to receive either 15% of the total you paid to Zoom between March 30, 2016 and July 30, 2021 or $25, whichever is greater.

2.  If you were not a paid subscriber between March 30, 2016 and July 30, 2021, you are entitled to receive $15.

Please note that such cash payment amounts may be increased or reduced depending on how many people submit such claims. Complete information about the Settlement and its benefits, including changes to Zoom's business practices, are available at www.ZoomMeetingsClassAction.com.

Unregistered Class Members: Please note that if you downloaded, opened or used Zoom Meetings but never registered for an account with Zoom, you must submit reasonable documentation demonstrating your use of Zoom Meetings, such as a copy of an invitation to join a Zoom meeting that shows the date and ID number of the meeting.

In order for your claim to be considered, you must timely complete this Claim Form. The Claim Form may be completed online at www.ZoomMeetingsClassAction.com or by mailing a completed Claim Form to the address below, received or postmarked before [**claim deadline**]. To ensure the accuracy and completeness of your claim, online claim submission is strongly encouraged.  If you plan to mail in a Claim Form, then please type or legibly print all requested information, in blue or black ink. Mail your completed Claim Form, including any supporting documentation, by U.S. mail to:  [**Admin Contact Info**]

### II.      CLAIMANT INFORMATION

The Settlement Administrator will use this information for all communications regarding this Claim Form and the Settlement. If this information changes prior to distribution of a cash payment, you must notify the Settlement Administrator in writing at the address above.

**Claim Number** provided on mailed or emailed Notice (if not known please answer the question in Section III)

| | | | | | | | | | | |
|--|--|--|--|--|--|--|--|--|--|--|
| | | | | | | | | | | |

First Name                                      M.I.              Last Name

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

Mailing Address, Line 1: Street Address/P.O. Box

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

Mailing Address, Line 2:

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

City:                                                    State:         Zip Code:

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐      ☐☐      ☐☐☐☐☐

Email Address

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

# If You Have Your Claim Number And Included It Above, You Do Not Need To Fill Out The Information Below Or Provide Anything Further.

## III.    IF YOU PAID FOR A ZOOM SUBSCRIPTION

☐    CHECK HERE if you paid for a Zoom Meetings subscription (other than for an Enterprise-Level or Zoom for Government account) between March 30, 2016 and July 30, 2021, and please provide the email address you used for that Zoom subscription (if different than the email address above):

E-mail address used for your Zoom subscription (required):

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

**If you completed this Section, please skip to Section VII below.**

## IV.    IF YOU HAD A REGISTERED ZOOM ACCOUNT AS OF JULY 30, 2021

☐    CHECK HERE if you had a registered Zoom Meetings account (i.e., a Zoom login and password) as of July 30, 2021 that was not for an Enterprise-Level or Zoom for Government account, and please provide the email address associated with that Zoom subscription (if different than email address above).

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

You can submit a claim under this Section even if your Zoom Meetings account was licensed under a subscription paid for by someone else, as long as it was not an Enterprise-Level or Zoom for Government account.  Only one claim can be filed per email address.

**If you completed this Section, please skip to Section VII below.**

## V.   IF YOU HAD A REGISTERED ZOOM ACCOUNT BUT NO LONGER HAD ONE AS OF JULY 30, 2021

☐   CHECK HERE if you had a registered Zoom Meetings account (i.e., a Zoom login and password) between March 30, 2016 and July 30, 2021 that was not for an Enterprise-Level or Zoom for Government account.

If you checked the box in this Section, you will need to include with this claim form a document (such as an email) that shows you had a registered Zoom Meetings account between March 30, 2016 and July 30, 2021.

You can submit a claim under this Section even if your Zoom Meetings account was licensed under a subscription paid for by someone else, as long as it was not an Enterprise-Level or Zoom for Government account. Only one claim can be filed per email address.

**If you completed this Section, please skip to Section VII below.**

## VI.   IF YOU ARE AN UNREGISTERED ZOOM USER

☐   CHECK HERE if you downloaded, opened or used the Zoom Meetings application between March 30, 2016 and July 30, 2021 and did not have a registered user account.

If you checked the box in this Section, you will need to complete **one** of the following:

1. If you joined a meeting using Zoom Meetings:

   a.   Please provide at least one date that you used Zoom: _____
   b.   Please provide at least one Meeting ID for the Zoom meeting you attended: _____
   c.   You will need to provide reasonable documentation showing the date and meeting ID of the Zoom meeting you joined.

2. If you did not join a meeting using Zoom Meetings, but you did download or open the Zoom Meetings application:

   a.   Please provide the date you downloaded or opened Zoom Meetings: _____
   b.   You will need to provide reasonable documentation showing that you downloaded or opened Zoom Meetings between March 30, 2016 and July 30, 2021.

* * *

In addition, you <u>must</u> (i) sign the attestation in Section VIII of this Claim Form; and (ii) submit reasonable documentation (with this Claim Form) demonstrating your use of the Zoom Meetings, such as a copy of an invitation to join a Zoom meeting that shows the date and ID number of the meeting.  If you do not submit such documentation or fail to sign the attestation, your claim will be denied.

## VII.   PAYMENT

You will receive an email at the email address provided in Section II above after Final Approval, prompting you to select how you'd like to be paid.  You can receive your payment via a variety of digital options such as digital debit card or PayPal, or you can elect to receive a check.

## VIII.   ATTESTATION (ONLY SIGN IF YOU FILLED OUT SECTION VI)

I, _____, declare that I downloaded, opened or used Zoom Meetings between March 30, 2016 to July 30, 2021 while not signed in.

First Name                                        M.I.          Last Name

| | | | | | | | | | | | | | | | | | | | | | | | | | | |
|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|

I declare under penalty of perjury under the laws of California and of the United States of America that the foregoing is true and correct. Executed on _____, in _____, _____.

                      [Date]                [City]           [State]

_____
[Signature]

# EXHIBIT B

1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **NORTHERN DISTRICT OF CALIFORNIA**
10                   **SAN JOSE DIVISION**
11

| | |
|---|---|
| IN RE: ZOOM VIDEO COMMUNICATIONS, INC. PRIVACY LITIGATION | CASE NO. 5:20-CV-02155-LHK |
| | **CLASS ACTION** |
| This Document Relates To: | **[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
|     ALL ACTIONS. | |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**WHEREAS**, the Court held a Final Approval Hearing to consider approval of this class action Settlement on _____, 2022.  The Court has considered the Settlement Agreement (Dkt. __), all matters submitted to it at the Final Approval Hearing, the relevant law, and all other files, records, and proceedings in this Action.

**GOOD CAUSE APPEARING, IT IS HEREBY ORDERED AS FOLLOWS:**

1.      For purposes of this Order, the Court adopts the terms and definitions set forth in the Settlement Agreement.

2.      The Court has jurisdiction over the subject matter of this Action and all matters relating to the Settlement, as well as personal jurisdiction over the Class Representatives, the Settlement Class Members, and Defendant Zoom Video Communications, Inc.

3.      The Court finds that the Notice was implemented in accordance with the Preliminary Approval Order and (a) constituted the best practicable notice under the circumstances; (b) constituted notice that is reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of the Action; their right to submit a claim; their right to object to any aspect of the Settlement and/or Class Counsel's motion for attorneys' fees and expenses and Service Payments to the Class Representatives; their right to exclude themselves from the Settlement Class; and their right to appear at the Final Approval Hearing; (c) was reasonable and constituted due, adequate, and sufficient notice to all Persons entitled to receive notice; and (d) met all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and the rules of the Court.

4.      The Court finds that, for purposes of the Settlement only, all prerequisites for maintenance of a class action set forth in Federal Rules of Civil Procedure 23(a) and (b)(3) are satisfied. The Court certifies the following Settlement Class for purposes of Settlement only:

> All Persons in the United States who, between March 30, 2016 and the Settlement Date, registered, used, opened, or downloaded the Zoom Meetings Application ("App") except for (i) all Persons who have only registered, used, opened, or downloaded the Zoom Meetings App through an Enterprise-Level Account or a Zoom for Government Account, (ii) Zoom and its officers and directors, and (iii) the Judge or Magistrate Judge to whom the action is assigned and any member of those Judges' staffs or immediate family members.

The Settlement Class shall not include Zoom users outside of the United States, its territories, and/or its possessions.

5.     Plaintiffs Caitlin Brice, Heddi N. Cundle, Angela Doyle, Isabelle Gmerek, Kristen Hartmann, Peter Hirshberg, M.F., Therese Jimenez, Lisa T. Johnston, Oak Life Church, Saint Paulus Lutheran Church, and Stacey Simins ("Class Representatives") are hereby appointed, for settlement purposes only, as representatives for the Settlement Class for purposes of Federal Rule of Civil Procedure 23.

6.     Tina Wolfson of Ahdoot & Wolfson, PC and Mark C. Molumphy of Cotchett, Pitre, & McCarthy LLP are hereby appointed as counsel for the Settlement Class pursuant to Federal Rule of Civil Procedure 23.

7.     In evaluating a proposed class action settlement under Federal Rule of Civil Procedure 23(e), the standard is whether the settlement "is fundamentally fair, adequate, and reasonable." Pursuant to Federal Rule of Civil Procedure 23(e), the Court hereby grants final approval of the Settlement and finds that the Settlement is fair, reasonable, and adequate and in the best interests of the Settlement Class Members based on the following factors, among others:

a.     There is no fraud or collusion underlying this Settlement, and it was reached as a result of extensive arm's-length negotiations, occurring over the course of several months and several mediation sessions with a respected mediator, warranting a presumption in favor of approval. *See, e.g.*, *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (presence of a neutral mediator is a factor weighing in favor of a finding of non-collusiveness).

b.     The complexity, expense, and likely duration of the litigation favor settlement—which provides meaningful benefits on a much shorter time frame than otherwise possible—on behalf of the Settlement Class Members. *See, e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 820 (9th Cir. 2012) (affirming the district court's approval of a settlement where class counsel "reasonably concluded that the immediate benefits represented by the Settlement outweighed the possibility—perhaps remote—of obtaining a better result at trial"); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class

action litigation is concerned"). Based on the stage of the proceedings—including multiple Rule 12 motions and forthcoming class certification briefing—and the amount of investigation and discovery conducted, the Parties have developed a perspective on the strengths and weaknesses of their respective cases in order to "make an informed decision about settlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)).

      c.    The support of Class Counsel and the Class Representatives, who have participated in this litigation and evaluated the proposed Settlement, also favor final approval. *See Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).

      d.    The Settlement provides meaningful relief to the Class, including cash relief, and certainly falls within the range of possible recoveries by the Settlement Class Members.

    8.    The Releases set forth in Section 8 of the Settlement Agreement are expressly incorporated herein in all respects. The Releases are effective as of the Effective Date. Accordingly, the Court orders pursuant to this Order, as of the Effective Date of the Settlement, and as provided in the Settlement Agreement, that Class Representatives and Settlement Class Members release any and all actual or potential claims, complaints, demands, damages, debts, liabilities, proceedings, remedies, counterclaims, actions, causes of action, suits, cross claims, third party claims, contentions, allegations, assertions of wrongdoing, and any demands for injunctive relief or any other type of equitable or legal relief, whether known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent, discovered or undiscovered, brought or that could be brought against any of the Released Parties, and that are based on one or more of the same factual predicates as the Action, in any court, tribunal, forum or proceeding.

    9.    The individuals identified in Exhibit A attached hereto and incorporated by this reference, submitted timely and valid Requests for Exclusion, are not releasing any claims, and are not bound by the terms of the Settlement Agreement or this Order.  These individuals shall not share in the monetary benefits of the Settlement, and this Order does not affect their legal rights to pursue any claims they may have against Zoom.

10.     The Court finds that an award of attorneys' fees and expenses in the total amount of $_____ to Class Counsel is fair and reasonable and therefore approves such award.  Class Counsel has the sole and absolute discretion to allocate this award to Plaintiffs' Counsel and any other attorneys based on each attorney's contributions to the prosecution and settlement of these Actions. No other counsel will be entitled to an independent award of attorneys' fees or expenses.

11.     The Court finds that a Service Payment in the amount of $_____ to each Class Representative is fair and reasonable and therefore approves such payment. Such amounts shall be paid to the Class Representatives pursuant to and consistent with the terms of the Settlement Agreement.

12.     The Action, including all actions consolidated into the Action, and all claims asserted in the actions, is settled and dismissed on the merits with prejudice.

13.     Consummation of the Settlement shall proceed as described in the Settlement Agreement, and the Court reserves jurisdiction over the subject matter and each Party to the Settlement with respect to the interpretation and implementation of the Settlement for all purposes, including enforcement of any of the terms thereof at the instance of any Party and resolution of any disputes that may arise relating to the implementation of the Settlement or this Order.

14.     Without affecting the finality of this Order in any way, the Court shall retain jurisdiction over this Action, the Class Representatives, members of the Settlement Class, and Zoom to enforce the terms of the Settlement, the Court's order preliminarily certifying the class (Dkt. _____), and this Order. In the event that any applications for relief are made, such applications shall be made to the Court. To avoid doubt, this Order applies to and is binding upon the Parties, the Settlement Class Members, and their respective heirs, successors, and assigns.

15.     The Settlement and this Order are not admissions of liability or fault by the Released Parties, or a finding of the validity of any claims in the Action or of any wrongdoing or violation of law by the Released Parties.  To the extent permitted by law, neither this Order, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action or proceeding to establish any liability of, or admission by, the Released Parties.  Notwithstanding the foregoing, nothing in this Order shall be interpreted to prohibit the use of this Order in a proceeding to consummate

or enforce the Settlement or this Order, or to defend against the assertion of released claims in any other proceeding, or as otherwise required by law.

**IT IS SO ORDERED.**

Dated: _____, 2021

_____

HON. LUCY H. KOH
UNITED STATES DISTRICT JUDGE

EXHIBIT C

QUESTIONS?  VISIT www.ZoomMeetingsClassAction.com or call toll-free at [number]

### LEGAL NOTICE OF CLASS ACTION SETTLEMENT

# If you used the Zoom Meetings application between March 30, 2016 and July 30, 2021, a proposed class-action settlement may affect your rights.

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

**This Notice explains important legal rights you may have.  Your legal rights are affected whether you act or do not act.  Please read this Notice carefully.**

- Plaintiffs and Class Representatives ("Plaintiffs") and Zoom Video Communications, Inc. ("Zoom") have reached a Settlement in a class action lawsuit (the "Action") entitled *In re*: *Zoom Video Communications*, *Inc. Privacy Litigation*, N.D. Cal. Master Case No. 5:20-cv-02155-LHK (the "Settlement").

- The lawsuit focuses on alleged privacy and security issues with the Zoom Meetings Application ("App").  The lawsuit alleges that Zoom: (i) shared certain information with third-parties, (ii) should have done more to prevent unwanted meeting disruptions by third parties, and (iii) advertised its Zoom Meetings App as being encrypted "end-to-end" when Plaintiffs contend it was not at that time.

- Zoom denies these allegations, denies any liability whatsoever, and believes that no member of the Settlement Class, including the Plaintiffs, has sustained any damages or injuries due to these allegations.

- The Court has not decided who is right or wrong.  Instead, both sides have agreed to a Settlement to resolve the dispute without further litigation risk and expense.

- Zoom has agreed to pay $85 million to settle the Action.  As part of the Settlement, Zoom also has agreed to make certain changes to its policies and practices that benefit Settlement Class members, pursuant to Section 3 of the Settlement Agreement available at www.ZoomMeetingsClassAction.com.

**QUESTIONS?  VISIT www.ZoomMeetingsClassAction.com or call toll-free at [number]**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | |
|---|---|---|
| **SUBMIT A CLAIM FOR A CASH PAYMENT** | You must make a claim in order to receive a cash payment. To make a claim you must submit a Claim Form by the deadline.   Claim Forms can be submitted online at www.ZoomMeetingsClassAction.com or by mail.<br><br>For detailed information about eligibility requirements and how to file a claim, see Sections 5 and 7 below. | Deadline:<br><br>[Month] [Day], [Year] |
| **EXCLUDE YOURSELF** | You can exclude yourself from the Settlement by informing the Settlement Administrator that you want to "opt-out" of the Settlement. If the Settlement is approved, this is the only option that allows you to retain your rights to sue Zoom for the claims that are released by this Settlement (see Section 15 below). If you exclude yourself, however, you will not be eligible to submit a claim form or to receive a cash payment.<br><br>For detailed information about how to exclude yourself, see Section 15 below. | Deadline:<br><br>By: [Month] [Day], [Year] |
| **OBJECT TO THE SETTLEMENT** | You may object to the Settlement by writing to the Court and informing it why you don't think the Settlement should be approved. You can also write to the Court to provide comments or reasons why you support the Settlement.<br><br>For detailed information about how to object to or comment on the Settlement, see Section 17 below. | Deadline:<br><br>By: [Month] [Day], [Year] |
| **GO TO THE "FINAL APPROVAL" HEARING** | The Court will hold a Final Approval Hearing to consider the Settlement, the request by the lawyers who brought the Action ("Class Counsel") for attorneys' fees and expenses, and Plaintiffs' request for service payments for bringing the Action.<br><br>You may, but are not required to, speak at the Final Approval Hearing about any Objection you filed.  If you intend to speak at the Final Approval Hearing, you must follow the procedures set forth in Sections 19 and 21 below when you serve your Objection. | Hearing Date:<br><br>[Month] [Day], [Year] at [Time]<br><br>*But See Important Note Below.* |
| **DO NOTHING** | If you do nothing, you will not be eligible to receive a cash payment. However, if the Settlement is approved by the Court, you will give up your rights to sue Zoom for claims that are released by this Settlement, see Section 9 below). | No deadline |

QUESTIONS?  VISIT www.ZoomMeetingsClassAction.com or call toll-free at [number]

**\*IMPORTANT NOTE: The dates and deadlines may be changed without further notice to the Settlement Class, so please check the Settlement Website, www.ZoomMeetingsClassAction.com, or the Court's Public Access to Court Electronic Records (PACER) website at https://ecf.cand.uscourts.gov to confirm that the dates have not been changed.**

These rights and options—and the deadlines to exercise them—are explained in more detail below.

The Court in charge of this Action still has to decide whether to approve the Settlement. Payments will be made if the Court approves the Settlement and after any appeals are resolved.  Please be patient.

| **WHAT THIS NOTICE CONTAINS** |
|---|

BACKGROUND INFORMATION .................................................................................4

1.   Why did I get this notice?

2.   Why is this a class action?

3.   What is this lawsuit about?

4.   Why is there a Settlement?

5.   Am I part of the Settlement Class?

THE PROPOSED SETTLEMENT ................................................................................8

6.   What relief does the Settlement provide to Settlement Class Members?

7.   How do I get a Payment?

8.   What am I giving up by staying in the Settlement Class?

9.   What happens if I do nothing at all?

10.   Will the representative plaintiffs receive any compensation for their efforts in bringing this Action?

11.   When will I get a payment if I submit an Approved Claim?

12.   Are there other related litigations against Zoom?

THE LAWYERS REPRESENTING YOU ...................................................................11

13.   Do I have a lawyer in this case?

14.   How will the lawyers be paid?

HOW TO EXCLUDE YOURSELF FROM THE SETTLEMENT ............................12

15.   How do Settlement Class Members exclude themselves from the Settlement?

16.   If I do not exclude myself, can I still sue the Zoom for the same thing later?

HOW TO OBJECT TO THE SETTLEMENT ...........................................................13

QUESTIONS?  VISIT www.ZoomMeetingsClassAction.com or call toll-free at [number]

17.    How do I tell the Court that I do not like the Settlement?

18.    What is the difference between excluding myself and objecting to the Settlement?

FINAL APPROVAL HEARING .............................................................................................14

19.    When and where will the Court decide whether to approve the Settlement?

20.    Do I have to come to the Final Approval Hearing?

21.    May I speak at the Final Approval Hearing?

GETTING MORE INFORMATION & UPDATING INFORMATION...................................15

22.    How do I get more information?

23.    What if my address or other information changes after I submit a claim form?

## BACKGROUND INFORMATION

### 1.   Why did I get this notice?

The Court authorized this Notice because you have a right to know about the proposed Settlement of certain claims against Zoom in this class action lawsuit and about your options before the Court decides whether to approve the Settlement.  If the Court approves the Settlement and after any appeals are resolved, an administrator will make the payments that the Settlement allows.  If the Court approves the Settlement and after any appeals are resolved, you will be bound by the Judgment and terms of the Settlement, unless you timely exclude yourself ("opt out") from the Settlement.

This Notice explains the Action, the Settlement, and your legal rights and options, and the deadlines for you to exercise your rights.  To obtain more information about the Settlement, including information about how you can see a copy of the Settlement Agreement (which defines certain capitalized terms used in this Notice), see Section 22 below.

### 2.   Why is this a class action?

In a class action lawsuit, one or more people or businesses called "Class Representatives" sue on behalf of others who have similar claims.  All of the people or businesses who have similar claims are a "class" or "class members" if the class is certified by the Court.  Individual class members do not have to file a lawsuit to participate in the class action settlement or be bound by the judgment in the class action.  One court resolves the issues for everyone in the class, except for those who exclude themselves from the class, as explained in Section 15 below.

### 3.   What is this lawsuit about?

This class action is called *In re*: *Zoom Video Communications, Inc. Privacy Litigation*, Case No. 5:20-cv-02155-LHK and is pending in the United States District Court for the Northern District of California.  U.S. District Court Judge Lucy H. Koh is overseeing this class action.

**QUESTIONS?  VISIT www.ZoomMeetingsClassAction.com or call toll-free at [number]**

Plaintiffs claim certain theories of alleged wrongful conduct by Zoom: (1) unauthorized sharing of users' information with third-parties through incorporation of software development kits (SDKs) in the Zoom application, (2) unauthorized sharing of users' information with third-parties through the third-party developers' employment of apps that can be installed and run on the Zoom platform (known as "marketplace apps"), (3) failure to prevent unwanted meeting disruptions by third parties, and (4) misrepresentations that Zoom provided end-to-end encryption at a time when Plaintiffs allege Zoom did not.  Plaintiffs claim that such alleged conduct violated California state and federal laws.  Zoom denies these allegations and denies any liability whatsoever.

**The issuance of this Notice is not an expression of the Court's opinion on the merit or the lack of merit of any of Plaintiffs' claims or Zoom's defenses in the lawsuit.  The Court has not decided who is right or wrong.  Instead, both sides have agreed to a Settlement to avoid the risk and cost of further litigation.**

For information about what has happened in the lawsuit to date, and about the additional litigation referenced herein, you can access the Settlement Agreement and other case documents at www.ZoomMeetingsClassAction.com.  Please also see Section 22 below for additional information about accessing case documents.

In addition, there are two other lawsuits brought against Zoom pending in other courts that involve some of the same allegations as in this Action.  These lawsuits are discussed in more detail in Section 12 below.  **If you do not exclude yourself from this Settlement, you will be releasing any claims you may have in both those related litigations.**

| 4.  Why is there a Settlement? |
|---|

The Court did not decide in favor of the Plaintiffs or Zoom.  Instead, both sides have agreed to the Settlement.  Both sides want to avoid the risk and cost of further litigation.  Plaintiffs and Class Counsel also believe that the Settlement is in the best interests of the Settlement Class.

| 5.  Am I part of the Settlement Class? |
|---|

The Court has decided that everyone who fits this description is a Settlement Class member for purposes of the proposed Settlement:

> All Persons in the United States who, between March 30, 2016 and the Settlement Date, registered, used, opened, or downloaded the Zoom Meetings Application ("App"), except for (i) all Persons who have only registered, used, opened, or downloaded the Zoom Meetings App through an Enterprise-Level Account or a Zoom for Government Account, (ii) Zoom and its officers and directors; and (iii) the Judge or Magistrate Judge to whom the action is assigned and any member of those Judges' staffs or immediate family members.

Enterprise and Government Accounts Are Excluded:  People who have only used Zoom through an Enterprise-Level Accounts or Zoom for Government Account are excluded from the proposed Settlement Class:

**QUESTIONS?  VISIT www.ZoomMeetingsClassAction.com or call toll-free at [number]**

- o An "Enterprise-Level Account" is a registered Zoom Meetings App account that as of the Settlement Date belonged to, was controlled by, or was provisioned by a Person paying to use (or otherwise licensed by Zoom to use) the Zoom Meetings App at the "Enterprise" level of Zoom's pricing plans, as opposed to other account types, including "Basic", "Pro", or "Business" levels (*see* https://zoom.us/pricing).

- o A "Zoom for Government Account" is a Zoom for Government user account (see https://www.zoomgov.com/) as of the Settlement Date.

- o This means that if the only time you have used the Zoom Meetings App was when using an Enterprise-Level Account or a Zoom for Government Account, you are excluded from the Settlement Class.

**How can I tell if I have an Enterprise-Level Account or a Zoom for Government Account paid for by someone else?**

- • To determine if you have an Enterprise-Level Account, login to your account at zoom.us then go to the "My Account" page and click on the "Account Profile" tab on the left. If "Account Type" includes the word "Enterprise," you have an Enterprise-Level Account:



- • To determine if you have a Zoom for Government Account on a Zoom desktop application, click your profile icon in the upper right corner.  If "ZOOMGOV" is displayed at the top-right, then you have a Zoom for Government Account:

**QUESTIONS?  VISIT www.ZoomMeetingsClassAction.com or call toll-free at [number]**



- To determine if you have a Zoom for Government Account on a Zoom mobile device application, click on the "Settings" tab.  If "ZOOMGOV" is displayed at the top-right, then you have a Zoom for Government Account:

QUESTIONS?  VISIT www.ZoomMeetingsClassAction.com or call toll-free at [number]



If you are still not sure if you are included in the Settlement Class, please review the detailed information contained in the Settlement Agreement, available for download at www.ZoomMeetingsClassAction.com.  You may also contact the Settlement Administrator at [email] or call toll-free at [number].

## THE PROPOSED SETTLEMENT

### 6.  What relief does the Settlement provide to Settlement Class Members?

The Settlement provides monetary payments to eligible Settlement Class Members who submit a valid Claim Form on or before [date] (see Section 7 below on how to submit a Claim Form). Without admitting liability, Zoom has also agreed to make certain changes to its policies and practices that will benefit the Settlement Class, the details of which you can review in the Settlement Agreement at Section 3, available at www.ZoomMeetingsClassAction.com.

If the Court approves the Settlement, Zoom will pay $85 million to create a Settlement Fund. The money remaining in the Settlement Fund after paying settlement administration and notice costs, the award of attorneys' fees and expenses to Class Counsel by the Court ("Fee and Expense Award"), and any Service Payments to Plaintiffs ordered by the Court, is called the

**QUESTIONS?  VISIT www.ZoomMeetingsClassAction.com or call toll-free at [number]**

"Net Settlement Fund."   The Net Settlement Fund will be distributed to Settlement Class Members who submit a valid Claim Form on or before [date].

Eligible Settlement Class Members can submit a Claim Form for the following claims:

- **Paid Subscription Claim:**  If you are a Class Member who paid for a Zoom Meetings App subscription between March 30, 2016 and July 30, 2021, you are eligible to file a claim for $25 or 15% of the money you paid to Zoom for the core App subscription (i.e., not including optional add on features/support that customers may add to their subscriptions) during that time, whichever is greater.   For example, if you spent $75 on a Zoom Meetings App subscription during the relevant time period, 15% of $75 is $11.25.  Because $11.25 is less than $25, your claim will be treated as a claim for $25.

- **User Claim:**  If you registered, used, opened, or downloaded,  the Zoom Meeting App between March 30, 2016 and July 30, 2021 and you are not eligible to submit a Paid Subscription Claim, you are eligible to file a claim for $15.

*The amount paid to each Class Member who submits a Claim will depend on (i) the number of valid claims submitted, (ii) the total costs of administering the Settlement and providing notice to the Class Members, (iii) the amount of the Fee and Expense Award, and (iv) any Service Payments to Plaintiffs approved by the Court.  No one knows in advance how much each valid claim payment will be <u>until the deadline for submitting claims passes and the Court approves the Fee and Expense Award and Service Payments</u>.*

Because many people might submit claims, it is possible that you will receive less money than what is described above.  Any reduction in how much money you might receive will be governed by the terms and conditions of the Settlement Agreement which is available at www.ZoomMeetingsClassAction.com.

### 7.  How do I get a Payment?

**To make a claim and receive a payment, you must complete and submit a Claim Form online at www.ZoomMeetingsClassAction.com by [date] or by mail postmarked by [date].**

### Read the instructions on the Claim Form carefully.

A Claim can be filed quickly and easily at www.ZoomMeetingsClassAction.com, but if you wish  to  mail  in  the  Claim  Form,  you  may  download  a  copy  at www.ZoomMeetingsClassAction.com or call toll free and request a claim form be sent to you at [toll-free number].  If you plan to mail in a Claim Form, then please type or legibly print all requested information, in blue or black ink. Mail your completed Claim Form, including any supporting documentation, by U.S. mail to:

*In Re: Zoom Video Communications, Inc. Privacy Litigation Settlement*
c/o [Settlement Administrator]

**QUESTIONS?  VISIT www.ZoomMeetingsClassAction.com or call toll-free at [number]**

[Address]
[City], [State] [ZIP Code]

If you have any questions regarding the process to submit your Claim Form, you may obtain assistance by calling toll-free   1-888-888-8888, emailing the Settlement Administrator at [email], or by writing to Settlement Administrator at the above address.

After the Settlement is approved and becomes final, if you have a valid claim (as determined by the Settlement Administrator) you will receive an email at the email address you provided in the Claim Form, prompting you to select how you'd like to be paid.  You can receive your payment via a variety of digital options such as digital debit card or PayPal, or you can elect to receive a check..

## 8.   What am I giving up by staying in the Settlement Class?

Unless you exclude yourself, you will remain in the Settlement Class.  Remaining in the Settlement Class means that you cannot sue, continue to sue, or be part of any other lawsuit against Zoom—including those in Section 12 below—that makes claims based on the facts and legal theories alleged in this case or any of the business practices Zoom adopts pursuant to the Settlement Agreement.  It also means that all of the Court's orders will apply to you and legally bind you.  The Released Claims are detailed in the Settlement Agreement available at www.ZoomMeetingsClassAction.com.

## 9.   What happens if I do nothing at all?

If you do nothing, you will remain a member of the Settlement Class and be bound by the Settlement.  However, if you were eligible to share in the Net Settlement Fund but do not submit a claim, you will not receive a payment.

## 10. Will the Plaintiffs receive any compensation for their efforts in bringing this Action?

Plaintiffs will request a Service Payment of up to $5,000 (each) for their services as Class Representatives and their efforts in bringing the Action.  The Court will make the final decision as to the amount to be paid to the Plaintiffs.

## 11. When will I get a payment if I submit an Approved Claim?

If you submit a Claim Form by [date], and the Court approves the Settlement and orders payment to Settlement Class Members, you will receive payment about [#] days after the Court grants Final Approval of the Settlement, assuming that no one files an appeal challenging the Settlement.

## 12. Are there other related litigations against Zoom?

There are two other lawsuits against Zoom that concern some of the same allegations as in this Action.

The lawsuits are pending in the Superior Court of the State of California, County of Santa Clara: *Arriaza v. Zoom Video Communications, Inc*., Case No. 20CV366439, and *Greenbaum v. Zoom Video Communications, Inc*., Case No. 20CV366980 (collectively, the "Related Litigations"). Both of those lawsuits are brought as class actions on behalf of California users of the Zoom Meetings App, although the court has not yet decided whether they can proceed as class actions. Plaintiffs in those lawsuits allege liability based on the same theories of liability as alleged in this Action.  They bring claims for (1) California common law invasion of privacy and violation of the California Constitution's right to privacy, Art. 1, § 1; (2) negligence; (3) breach of the implied warranty of merchantability; (4) breach of implied contract; (5) unjust enrichment; (6) violation of California's UCL; (7) violation of California's CLRA; and (8) violation of the California Consumer Privacy Act.  **If you are a California resident, you will be giving up any rights under those lawsuits if you do not exclude yourself from this Settlement.**

As with the claims in this Settlement, Zoom denies any liability whatsoever in the Related Litigations.  The issuance of this Notice is not an expression of the Court's opinion on the merit or the lack of merit of any of the claims in the Related Litigations.

## THE LAWYERS REPRESENTING YOU

## 13. Do I have a lawyer in this case?

The Court has appointed (1) Tina Wolfson of Ahdoot & Wolfson, PC and (2) Mark C. Molumphy of Cotchett, Pitre, & McCarthy LLP as Class Counsel.  Their contact information is:

| | |
|---|---|
| Tina Wolfson | Mark C. Molumphy |
| Ahdoot & Wolfson, PC | Cotchett, Pitre, & McCarthy LLP |
| classcounsel@zoommeetingsclassaction.com | classcounsel@zoommeetingsclassaction.com |

You do not need to hire a lawyer because Class Counsel is working on your behalf.

If you wish to pursue your own lawsuit separate from this one, or if you exclude yourself from the Settlement, these lawyers will no longer represent you.  You will need to hire a lawyer if you wish to pursue your own lawsuit against Zoom.

## 14. How will the lawyers be paid?

Class Counsel intend to seek up to 25% of the Settlement, or $21,250,000 million as attorneys' fees and up to $200,000 for reimbursement of expenses.  The Court will make the final decision as to the amounts to be paid to the Class Counsel and may award amounts different than the requested amounts.  If awarded, these amounts will be deducted from the Settlement Fund before making payments to Class Members.  You will not have to pay any fees or expenses.

QUESTIONS?  VISIT www.ZoomMeetingsClassAction.com or call toll-free at [number]

## HOW TO EXCLUDE YOURSELF FROM THE SETTLEMENT

**15. How do Class Members exclude themselves from the Settlement?**

If you are a member of the Settlement Class, do not want monetary benefits, and do not want to be legally bound by the terms of the Settlement, you must exclude yourself (or opt out) from the Settlement Class.  If you wish to participate in or receive benefits under any of the other lawsuits pending against Zoom based on the claims that will be released (see Section 12 above) in this lawsuit if the Court approves the Settlement, or if you wish to pursue your own separate lawsuit against Zoom based on the claims that will be released (see Section 8 above) in this lawsuit, you must exclude yourself from the Settlement Class.

This requires submitting a written request to the Settlement Administrator stating your intent to exclude yourself from the Settlement.  Your Request for Exclusion must include the following: (1) your name, address, and email address; (2) your physical signature; (3) the name and number of this Action (i.e., *In re*: *Zoom Video Communications, Inc. Privacy Litigation*, Master Case No. 5:20-cv-02155-LHK); and (4) a statement that you wish to be excluded from the Settlement Class for purposes of this Settlement.  Requests made on behalf of more than one Settlement Class Member are not allowed.

You must mail your Request for Exclusion to the following address:

*In Re: Zoom Video Communications, Inc. Privacy Litigation*
c/o [Settlement Administrator]
[Address]
[City], [State] [ZIP Code]

You may also email your Request for Exclusion as an attachment to an email, to the following address:  [admin email].

Requests for Exclusion must be postmarked by or emailed by [date].

If you submit a valid written request to be excluded from the Settlement Class, you will not be a part of the Settlement, you will not be eligible to make a claim for payment (as described in Section 7 above), will not be bound by the Final Order and Judgment entered in the Action, and will not be precluded from bringing any other claim against Zoom based on the conduct complained of in the Action.  If you submit both a Request for Exclusion and an Objection to the Settlement (as described in Section 17 below), your Objection will not be considered and you will be deemed to have requested exclusion from the Settlement.

**16. If I do not exclude myself, can I still sue Zoom for the same thing later?**

**No.**  Unless you exclude yourself, you give up the right to sue Zoom for any claims that are released (see Section 15 above) by the Settlement Agreement.  If you have a current lawsuit against Zoom, speak to your lawyer in that lawsuit immediately to determine whether you must exclude yourself from the Settlement Class to continue your own lawsuit against Zoom.

## HOW TO OBJECT TO THE SETTLEMENT

**17. How do I tell the Court that I do not like the Settlement?**

If you are a Settlement Class Member and have not excluded yourself from the Settlement, you can ask the Court to deny approval by filing an objection. You can't ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you must object.

Any objection to the proposed Settlement must be in writing. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney.  If you appear through your own attorney, you are responsible for hiring and paying that attorney.  All written objections and supporting papers must (a) clearly identify the case name and number (*In Re: Zoom Video Communications, Inc. Privacy Litigation*, Case No. 5:20-cv-02155-LHK), (b) be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, 280 South 1st Street, Room 2112, San Jose, CA, 95113, or by filing them in person at any location of the United States District Court for the Northern District of California, and (c) be filed or postmarked on or before [date].

Your Objection should include: (1) your name, address, and email address; (2) an explanation of the basis upon which you claim to be a Settlement Class Member; (3) whether the objection applies only to you, a subset of the Settlement Class, or the entire Settlement Class; (4) all grounds for the objection, including all citations of legal authority and evidence supporting the objection; (5) the name and contact information of any and all attorneys representing, advising, or in any way assisting you in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection, who must enter an appearance with the Court in accordance with the Local Rules; and (6) a statement indicating whether you intend to appear at the Final Approval Hearing (either personally or through attorney).

**If you do not timely make your objection, you will be deemed to have waived all objections and will not be entitled to speak at the final approval hearing.**

**18. What is the difference between excluding myself and objecting to the Settlement?**

Objecting is telling the Court that you do not like something about the Settlement while remaining in the Settlement Class and being subject to the Settlement.  You can object only if you do not exclude yourself from the Settlement Class.  Excluding yourself is telling the Court that you do not want to be part of the Settlement Class or the lawsuit as outlined in Section 15. If you exclude yourself, you are no longer a member of the Settlement Class and you do not

have a right to share in the Settlement's proceeds or to object because the Settlement no longer affects you.

## FINAL APPROVAL HEARING

### 19. When and where will the Court decide whether to approve the Settlement?

The Court has preliminarily approved the Settlement and will hold a hearing to decide whether to give final approval to the Settlement on [date/time], at the United States District Court for the Northern District of California, San Jose Division, Robert F. Peckham Federal Building & United States Courthouse, Courtroom 8, 4th Floor, 280 South 1st Street, San Jose, CA 95113. At the Final Approval Hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate to Settlement Class Members.  The Court will also consider whether to approve the requested Fee Award for Class Counsel, and service awards for Plaintiffs.  If there are objections, the Court will consider them.  The Court will listen to people who have asked to speak at the Final Approval Hearing. The Court will then issue decisions on these issues; we do not know how long those decisions will take.

Please note that the Final Approval Hearing may take place by video conference only. If this is the case, instructions on how to join the video conference for the Final Approval Hearing will be posted at www.ZoomMeetingsClassAction.com prior to the hearing.

Also please note that the date of the final approval hearing may change without further notice to the class. You should check the Settlement Website (www.ZoomMeetingsClassAction.com) or the Court's PACER site at https://ecf.cand.uscourts.gov to confirm that the date has not been changed.

### 20.  Do I have to come to the Final Approval Hearing?

No.  Class Counsel will attend the Final Approval Hearing and answer any questions the Court may have.  However, you are welcome to participate at your own expense.  If you send an Objection, you do not have to come to the Final Approval Hearing to talk about it.  As long as you submitted your written Objection by [date], in accordance with the instruction in this Notice (see Section 17 above) the Court will consider it.  You may also pay your lawyer to attend, but it is not necessary.

### 21. May I speak at the hearing?

You may ask to speak at the Final Approval Hearing.  If you wish to attend and speak at the Final Approval Hearing you are free to do so, whether or not your file an Objection, or whether you wish to comment or speak in support of the Settlement.

In order to speak at the hearing, you may request to do so at the Final Approval Hearing, or by filing a "Notice of Intention to Appear" with the Court prior to the Final Approval Hearing. Such requests must (a) clearly identify the case name and number (*In Re: Zoom Video Communications, Inc. Privacy Litigation*, Case No. 5:20-cv-02155-LHK), (b) be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, 280 South 1st Street, Room 2112, San Jose, CA, 95113, or by filing them in person at any location of the United States District Court for the Northern District

**QUESTIONS?  VISIT www.ZoomMeetingsClassAction.com or call toll-free at [number]**

of California with the Court.  You can also indicate that you wish to speak at the Final Hearing in your written objection (see Section  17 above).  If you plan to have your attorney speak for you at the hearing, your objection should also include your attorney's name, address, and phone number .

If you have submitted a Request for Exclusion from the Settlement, however, you may not speak at the Final Approval Hearing because the Settlement no longer affects you.

## GETTING MORE INFORMATION & UPDATING INFORMATION

### 22. How do I get more information?

This Notice summarizes the proposed Settlement and does not cover all of the issues and proceedings that have occurred.  For the precise terms and conditions of the Settlement, please see the Settlement Agreement, which can be found, along with other important documents and information about the current status of the case, by visiting www.ZoomMeetingsClassAction.com.  You may also contact the Settlement Administrator at [email] or toll-free at [telephone number], or Class Counsel at the email addresses provided in Section 13 above.

To see the complete file for the Action, you may access the Court docket in this case, for a fee, through the Court's PACER system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, 280 South 1st Street, Room 2112, San Jose, CA, 95113, between 9:00 a.m. and 1:00 p.m., Monday through Friday, excluding Court holidays.

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS**.

### 23. What if my address or other information changes after I submit a Claim Form?

If, after you submit a Claim Form, you change your postal or email address, it is your responsibility to inform the Settlement Administrator of your updated information.  You may do so either by mail or email at the addresses below:

*In Re: Zoom Video Communications, Inc. Privacy Litigation*
c/o [Settlement Administrator]
[Address]
[City], [State] [ZIP Code]
[email]

*************************************************************************

**PLEASE DO NOT CONTACT THE COURT REGARDING THIS NOTICE.**

**QUESTIONS?  VISIT www.ZoomMeetingsClassAction.com or call toll-free at [number]**

Dated: _____        By: _____
                                            ORDER OF THE HONORABLE LUCY H. KOH
                                            UNITED STATES DISTRICT COURT JUDGE

# EXHIBIT D

1
2
3
4
5
6
7
8 **UNITED STATES DISTRICT COURT**
9 **NORTHERN DISTRICT OF CALIFORNIA**
10 **SAN JOSE DIVISION**

| | |
|---|---|
| IN RE: ZOOM VIDEO COMMUNICATIONS, INC. PRIVACY LITIGATION | CASE NO. 5:20-CV-02155-LHK |
| | **CLASS ACTION** |
| This Document Relates To: | **[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVING FORM AND CONTENT OF CLASS NOTICE** |
| ALL ACTIONS. | |

16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**WHEREAS**, the Plaintiffs and Defendant Zoom Video Communications, Inc. ("Zoom") (together, the "Parties") in the above-described class action ("Action") have applied for an order, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, regarding certain matters in connection with a proposed settlement of the Action, in accordance with a Class Action Settlement Agreement and Release ("Settlement Agreement") entered into by the Parties on July 30, 2021, which, together with the exhibits and appendices thereto, sets forth the terms and conditions for a proposed resolution of this litigation and for its dismissal with prejudice;

**WHEREAS**, this Court has reviewed the Settlement Agreement entered into by the Parties, all exhibits thereto, the record in this case, and the Parties' arguments.

**GOOD CAUSE APPEARING, IT IS HEREBY ORDERED AS FOLLOWS:**

1.      The Court finds that the Parties have shown the Court it will likely be able to approve the proposed Settlement, as embodied in the Settlement Agreement, as being fair, reasonable and adequate under Rule 23(e) of the Federal Rules of Civil Procedure, subject to further consideration at the Final Approval Hearing to be conducted, as described in Paragraph 21 below.

2.      All terms and definitions used herein have the same meanings as set forth in the Settlement Agreement.

3.      The Court has reviewed the terms of the proposed Settlement Agreement, the exhibits and attachments thereto, Plaintiffs' motion papers and briefs, and the declaration of counsel.  Based on its review of these papers, the Court finds that the Settlement Agreement appears to be the result of serious, informed, non-collusive negotiations conducted with the assistance of former United States Magistrate Judge Honorable Jay C. Gandhi over the course of over nine months and four mediation sessions.

4.      The terms of the Settlement Agreement do not improperly grant preferential treatment to any individual or segment of the Settlement Class and fall within the range of possible approval as fair, reasonable, and adequate.

5.      The Court therefore GRANTS the preliminary approval of the Settlement Agreement and all of the terms and conditions contained therein.

**Certification for Settlement Purposes Only**

6.      The Settlement Agreement defines the Settlement Class as follows,:

> All Persons in the United States who, between March 30, 2016 and the Settlement Date, registered, used, opened, or downloaded the Zoom Meetings Application ("App"), except for (i) all Persons who have only registered, used, opened, or downloaded the Zoom Meetings App through an Enterprise-Level Account or a Zoom for Government Account, (ii) Zoom and its officers and directors, and (iii) the Judge or Magistrate Judge to whom the action is assigned and any member of those Judges' staffs or immediate family members.

7.      If the Settlement Agreement is not finally approved by this Court, or if such final approval is reversed or materially modified on appeal by any court, (a) to the extent applicable, the Preliminary Approval Order, the Final Approval Order, and the Judgment, and all of its or their provisions will be vacated by its or their own terms, including, but not limited to, vacating any and all rulings regarding class certification for settlement purposes, including conditional certification of the Settlement Class, conditional appointment of Plaintiffs as Class Representatives, and conditional appointment of Plaintiffs' Counsel as Class Counsel; (b) the Settlement Agreement will be deemed null and void *ab initio* (except for Sections 2.1(b)(i), 2.1(e), 2.1(f), 2.1(h), 2.1(i), 2.1(j), and 9 of the Settlement Agreement), and the Action will revert to the status that existed before the Settlement Agreement's execution date; and (c) (i) no term or draft of the Settlement Agreement, (ii) nor any part of the Parties' settlement discussions, negotiations, or documentation (including any declaration or brief filed in support of the motion for preliminary approval or motion for final approval), (iii) nor any rulings regarding class certification for settlement purposes (including the Preliminary Approval Order and, if applicable, the Final Approval Order and the Judgment), will have any effect or be admissible into evidence for any purpose in the Action or any other proceeding.  If the Court does not approve the Settlement or enter the Final Approval Order and the Judgment for any reason, or if the Final Settlement Date cannot occur for any reason, Zoom shall retain all its rights, for example, to object to the maintenance of the Action as a class action, to move for summary judgment, and to assert defenses at trial, and nothing in this Settlement Agreement or other papers or proceedings related to the Settlement shall be used as evidence or argument by any Party concerning whether the Action may properly be maintained as a class action, or for any other purpose.

3

[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVING FORM AND CONTENT OF CLASS NOTICE
CASE NO. 5:20-CV-02155-LHK

8.      Solely for purposes of effectuating the proposed Settlement, the Court finds, pursuant to Rule 23(e)(1), that the prerequisites for class certification under Federal Rule of Civil Procedure 23(a) are likely to be found satisfied as:  the Settlement Class is comprised of millions of individuals; there are questions of law or fact common to the Settlement Class; the Class Representatives' claims are typical of those of Settlement Class Members; and the Settlement Class Representatives will fairly and adequately protect the interests of the Settlement Class.

9.      Solely for purposes of effectuating the proposed Settlement, the Court finds, pursuant to Rule 23(e)(1), that the prerequisites for class certification under Federal Rule of Civil Procedure 23(b)(3) are likely to be found satisfied as:  the questions of law or fact common to the Settlement Class predominate over individual questions and class action litigation is superior to other available methods for the fair and efficient adjudication of this controversy.

10.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and solely for purposes of effectuating the Settlement, the Court hereby appoints as Class Representatives:  Caitlin Brice, Heddi N. Cundle, Angela Doyle, Isabelle Gmerek, Kristen Hartmann, Peter Hirshberg, M.F., Therese Jimenez, Lisa T. Johnston, Oak Life Church, Saint Paulus Lutheran Church, and Stacey Simins.

11.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and solely for purposes of effectuating the Settlement, the Court hereby appoints as Class Counsel to represent the proposed Settlement Class:  Tina Wolfson of Ahdoot & Wolfson, PC and Mark C. Molumphy of Cotchett, Pitre, & McCarthy LLP. Solely for the purposes of effectuating the Settlement, Class Counsel are authorized to act on behalf of the Class Representatives, and all other Settlement Class Members with respect to all acts or consents required by or that may be given pursuant to the Settlement Agreement, including all acts that are reasonably necessary to consummate the Settlement, subject to final approval by the Court of the Settlement.

**Administration and Notice to the Settlement Class**

12.     The Court appoints Epiq Class Action and Claims Solutions, Inc. ("Epiq") to serve as the Settlement Administrator.  Epiq shall supervise and administer the notice procedures, establish and operate the Settlement Website, administer the claims processes, distribute cash payments according

to the processes and criteria set forth in the Settlement Agreement, and perform any other duties that are reasonably necessary and/or provided for in the Settlement Agreement.

13.     All reasonable costs of notice and costs of administering the Settlement shall be paid from the Settlement Fund as contemplated by Section 2.1(d) of the Settlement Agreement.

14.     The Court approves, as to form and content, of the proposed Claim Form, Long Form Notice, Publication Notice, and Summary Notice which are attached to the Settlement Agreement as Exhibits A, C, E, and G, respectively, and finds that their dissemination substantially in the manner and form set forth in the Settlement Agreement meets the requirements of Federal Rule of Civil Procedure 23 and due process, constitutes the best notice practicable under the circumstances, and is reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Action, the effect of the proposed Settlement (including the releases contained therein), the anticipated Motion for Attorneys' Fees and Expenses and for Service Payments, and their rights to participate in, opt out of, or object to any aspect of the proposed Settlement.

15.     Within five business days after the Court approves the Motion for Preliminary Approval, Zoom shall, for the purpose of facilitating the distribution of the Summary Notice, provide the Settlement Administrator with the last known email addresses and billing addresses for all Persons that Zoom's records reasonably indicate are likely to be Settlement Class Members, which information shall be based on records reasonably available to Zoom.

16.     Pursuant to Section 5 of the Settlement Agreement, the Settlement Administrator shall complete dissemination of the Notice on or before the Notice Date, defined in the Settlement Agreement as 75 calendar days from the entry of this Preliminary Approval Order. Within 75 days after entry of this Preliminary Approval Order, the Settlement Administrator shall complete the distribution of the Summary Notice (via email) and/or Summary Notice (in postcard form) to the members of the Settlement Class, complete publication notice in print publications and in a digital campaign, establish the Settlement Website which shall contain relevant documents relating to the settlement such as the Notices, information about the submission of Claim Forms, and other relevant documents (such as the operative complaint filed in the Action, the Settlement Agreement, the Preliminary Approval Order, Claim Forms, any application for the Fee and Expense Award and Service Payment, any brief filed by

5

1  the Parties in support of the Settlement, and the Final Approval Order).

2  **Participation in the Settlement, Requests for Exclusion and Objections**

3  17.    Settlement Class Members who wish to make a Claim must do so by submitting a Claim

4  Form by the Claim Deadline, which is hereby set as 60 days following the Notice Date, in accordance

5  with the instructions contained therein.  The Settlement Administrator shall determine the eligibility of

6  Claims submitted and allocate the Settlement Funds in accordance with the Settlement Agreement.

7  18.    Settlement Class Members who wish to object to the Settlement must provide:  (1) the

8  objector's name, address, and email address; (2) an explanation of the basis upon which the objector

9  claims to be a Settlement Class Member; (3) whether the objection applies only to the objector, a subset

10  of the Settlement Class, or the entire Settlement Class; (4) all grounds for the objection, including all

11  citations of legal authority and evidence supporting the objection; (5) the name and contact information

12  of any and all attorneys representing, advising, or in any way assisting the objector in connection with

13  the preparation or submission of the objection or who may profit from the pursuit of the objection, who

14  must enter an appearance with the Court in accordance with the Local Rules; and (6) a statement

15  indicating whether the objector intends to appear at the Final Approval Hearing (either personally or

16  through counsel). Objections must (a) clearly identify the case name and number (i.e., "*In re: Zoom*

17  *Video Communications, Inc. Privacy Litigation*, Case No. 5:20-cv-02155-LHK) and (b) must be mailed

18  to the Court (or filed with the Court in person) at the following address, and received the Objection and

19  Exclusion Deadline, hereby set as _____:

| Court |
| --- |
| Class Action Clerk<br>United States District Court for the Northern District of California<br>280 South 1st Street<br>San Jose, CA 95113 |

23  19.    Any member of the Settlement Class who does not file a valid and timely written

24  objection in accordance with these procedures and the procedures detailed in the Settlement Agreement

25  Section 6.1, shall be deemed to have waived any objection, shall not be permitted to object to the

26  Settlement, and shall be precluded from seeking any review of the Settlement Agreement and/or the

27  Final Approval Order by appeal or other means.

28  20.    Any putative member of the Settlement Class who seeks to be excluded from the

6

Settlement Class must submit a Request for Exclusion, in writing, and include:  (1) the requestor's name, address and email address; (2) the requestor's physical signature; (3) the name and number of this Action (i.e., "*In re: Zoom Video Communications, Inc. Privacy Litigation*, Case No. 5:20-cv-02155-LHK"); and (4) a statement that he or she wishes to be excluded from the Settlement Class for purposes of this Settlement. Each Request for Exclusion can only request exclusion for that one individual.  The Request for Exclusion must be received by the Claims Administrator by the Objection and Exclusion Deadline, hereby set as_____:

| **Claims Administrator** |
| --- |
| *In re: Zoom Video Communications, Inc. Privacy Litigation*<br>ATTN:  Claims Administrator<br>Address<br>City State Zip |

Any member of the Settlement Class who does not file a valid and timely Request for Exclusion shall be bound by the terms of the Settlement Agreement upon entry of the Final Approval Order.

### Final Approval Hearing

21.    The Final Approval Hearing shall be held by the Court on ____, beginning at __:__ a.m., in Courtroom 8, 4th Floor, of the United States District Court for the Northern District of California, 280 South 1st Street, San Jose, CA 95113.

22.    At the Final Approval Hearing, the Court will determine whether:  (1) the requirements for certification of the Settlement Class have been met; (2) the proposed settlement of the Action on the terms set forth in the Settlement should be approved as fair, reasonable, adequate, and in the best interests of the Settlement Class Members; (3) Class Counsel's motion for a Fee and Expense Award and Service Payments should be approved; and (4) the Final Approval Order and the Judgment approving the Settlement and dismissing the Action on the merits with prejudice against the Plaintiffs and all other Settlement Class Members should be entered.

23.    The Final Approval Hearing may, without further notice to the Settlement Class Members (except those who have filed timely and valid objections and requested to speak at the Final Hearing), be continued or adjourned by order of the Court.

24.    Objections by any Settlement Class Member to (a) the certification of the Settlement

Class; (b) the Settlement; and/or (c) the entry of the Final Approval Order and Final Judgment, shall be considered by the Court at the Final Approval Hearing only if such Settlement Class Member files with the Court a notice of his or her objections, submits documentary proof that he or she is a Settlement Class Member, and states the basis for such objections.

25.     On or before _____, Class Counsel shall file all papers in support of the application for the Final Approval Order and Final Judgment. On or before _____, Class Counsel shall file all papers in support of any motion for a Fee and Expense Award and Service Payments.

26.     Objections by any Settlement Class Member to Class Counsel's motion for a Fee and Expense Award and Service Payments shall be considered by the Court at the Final Approval Hearing only if such Settlement Class Member files with the Court a notice of his or her objections, submits documentary proof that he or she is a Settlement Class Member, and states the basis for such objections, by _____.

27.     Class Counsel's motion for a Fee and Expense Award and Service Payments will be considered separately from the fairness, reasonableness, and adequacy of the Settlement.  Any appeal from any order relating solely to Class Counsel's motion for a Fee and Expense Award and Service Payments, or any reversal or modification of any such order, shall not operate to terminate, vacate, or cancel the Settlement.

28.     All proceedings and deadlines in this matter, except those necessary to implement this Order and the Settlement, are hereby stayed and suspended until further order by the Court.

29.     All Persons in the Settlement Class who do not validly opt out and exclude themselves are hereby enjoined from pursuing or prosecuting any of the Released Claims as set forth in the Settlement Agreement until further order of the Court.

30.     The Parties' Counsel are hereby authorized to utilize all reasonable procedures in connection with the administration of the Settlement which are not materially inconsistent with either this Order or the Settlement Agreement.

1   **IT IS SO ORDERED.**

2

3   Dated: _____, 2021

4                                              _____
                                               HON. LUCY H. KOH
                                               UNITED STATES DISTRICT JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT E

Publication Notice

# COURT APPROVED NOTICE OF CLASS ACTION SETTLEMENT

*In re: **Zoom Video Communications, Inc. Privacy Litigation***
*Case No. 5:20-cv-02155*

**If you used the Zoom Meetings Application between March 30, 2016 and July 30, 2021, you could be entitled to benefits, including a cash payment, under a class action settlement.**

*A federal court authorized this Notice.*

**You must file a Claim Form by [Date] to receive cash benefits from this Settlement.**

**What is this Litigation About?** A Settlement has been reached with Zoom Video Communications, Inc. ("Zoom") relating to alleged privacy and security issues with the Zoom Meetings Application ("App"). Plaintiffs allege that Zoom: (i) shared certain information with third parties, (ii) should have done more to prevent unwanted meeting disruptions by third parties, (iii) advertised its Zoom Meetings App as being encrypted "end-to-end" when Plaintiffs contend it was not at that time, and (iv) that the alleged conduct violated California state and federal laws. Zoom denies these allegations. The court has not decided who is right.

**Who is Included in the Proposed Settlement?** All Persons in the United States who have registered, used, opened, or downloaded the Zoom Meetings App *except for* (i) all Persons who have only registered, used, opened, or downloaded the Zoom Meetings App through an Enterprise-Level Account or Zoom for Government Account, (ii) Zoom and its officers and directors; and (iii) the Judge or Magistrate Judge to whom the action is assigned and, any member of those Judges' staffs or immediate family members.

**What Relief Does the Settlement Provide?** The Settlement provides money to Class Members who submit a Claim Form postmarked or submitted on www.ZoomMeetingsClassAction.com by [date]. Without admitting liability, the Settlement also requires Zoom to make certain changes to its policies and practices that will benefit Class Members. Zoom will establish an $85 million Settlement Fund. After deducting Court-approved attorneys' fees and expenses (up to $200,000), service payments for the Plaintiffs, and the costs of settlement notice and administration from the $85 million Settlement Fund, the remaining funds will be made available, if the settlement is approved, to pay Class Members' valid claims. Settlement Class members can submit one of the following types of claims:

- **Paid Subscription Claim:** If you are a Class Member who paid for a Zoom Meetings App subscription, between March 30, 2016 and July 30, 2021, you are eligible to file a claim for $25 or 15% of the money you paid to Zoom for the core subscription (i.e., not including optional add on features/support that customers may add to their subscriptions) during that time, whichever is greater. For example, if you spent $75 on a Zoom Meetings App subscription during the relevant time period, 15% of $75 is $11.25. Because $11.25 is less

1

Publication Notice

than   $25,   your   claim   will   be   treated   as   a   claim   for   $25.

- **User Claim:**  If you are not eligible for a Paid Subscription Claim and you registered, used, opened, or downloaded the Zoom Meeting App between March 30, 2016 and July 30, 2021 and you are not eligible to submit a Paid Subscription Claim, you are eligible to file a claim for $15.

Please note that these payment amounts may be reduced depending on the number of valid claims.  Final payment amounts will be calculated and distributed based on the total number of Class Members who submit valid claims.

This is only a notice of what to expect.  Nothing will happen unless the Court approves the Settlement.

**How Do I Get a Payment?**  You must submit your claim online at www.ZoomMeetingsClassAction.com or file a paper Claim Form by [Month Day, 2021].  Paper Claim Forms are available at the website or by calling the toll free number.

**Your Other Options:** If you are a Settlement Class Member and you do nothing, your rights will be affected, and you won't get a payment. If you file a Claim Form, object to the Settlement or do nothing, you are choosing to stay in the Settlement Class. You will be legally bound by all orders of the Court and you will not be able to start, continue or be part of any other lawsuit against Zoom about the allegations of the case. If you don't want to be legally bound by the Settlement or receive any benefits from it, you must exclude yourself by [Month Day, 2021]. If you do not exclude yourself, you may object to the Settlement by [Month Day, 2021].

**The Final Approval Hearing:** The Court has scheduled a hearing in this case (*In re*: *Zoom Video Communications, Inc. Privacy Litigation*, Case No. 5:20-cv-02155) for [Month Day, 2021], to consider: whether to approve the Settlement and award Service Payments, attorneys' fees and expenses costs; as well as consider any objections.  You or your attorney may attend and ask to appear at the hearing, but you are not required to do so.

**More Information:** Complete information about all of your rights and options, as well as a Claim Form, a more detailed Long Form Notice and the Settlement Agreement are available at www.ZoomMeetingsClassAction.com, by emailing [claim administrator email], or by calling toll-free [toll free number].

**IMPORTANT NOTE: The dates and deadlines may be changed without further notice to the Settlement Class, so please check the Settlement Website, www.ZoomMeetingsClassAction.com, or the Court's Public Access to Court Electronic Records ("PACER") website at https://ecf.cand.uscourts.gov to confirm that the dates have not been changed.**

This notice in only a summary. For a more detailed notice and/or the precise terms and conditions of the Settlement, please see the long form notice and/or settlement agreement available at www.ZoomMeetingsClassAction.com, by contacting class counsel at [mailing

Publication Notice

address], by accessing the Court docket in this case, for a fee, through the Court's PACER system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, 280 South 1st Street, San Jose, CA 95113, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays. You may contact the Settlement Administrator at [toll-free number] or [email address].

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.**

EXHIBIT F

TINA WOLFSON (SBN 174806)
*twolfson@ahdootwolfson.com*
THEODORE MAYA (SBN 223242)
*tmaya@ahdootwolfson.com*
CHRISTOPHER STINER (SBN 276033)
*cstiner@ahdootwolfson.com*
RACHEL JOHNSON (SBN 331351)
*rjohnson@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, California 91505
Tel: (310) 474-9111

MARK C. MOLUMPHY (SBN 168009)
*mmolumphy@cpmlegal.com*
TYSON C. REDENBARGER (SBN 294424)
*tredenbarger@cpmlegal.com*
NOORJAHAN RAHMAN (SBN 330572)
*nrahman@cpmlegal.com*
JULIA Q. PENG (SBN 318396)
*jpeng@cpmlegal.com*
**COTCHETT, PITRE & MCCARTHY, LLP**
840 Malcolm Road
Burlingame, California 94010
Telephone: (650) 697-6000

*Interim Co-Lead Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ZOOM VIDEO COMMUNICATIONS, INC. PRIVACY LITIGATION <br><br> This Document Relates To: <br><br> ALL ACTIONS | CASE NO: 5:20-cv-02155-LHK <br><br> **DECLARATION OF CAMERON R. AZARI, ESQ. ON ADEQUACY OF SETTLEMENT NOTICE PLAN AND NOTICES** <br><br> Hon.    Lucy H. Koh <br> Crtrm:  8 <br> Date:    October 21, 2021 <br> Time:   1:30 P.M. |

DECLARATION OF CAMERON R. AZARI, ESQ. ON ADEQUACY OF SETTLEMENT NOTICE PLAN AND NOTICES

I, Cameron R. Azari, Esq., hereby declare and state as follows:

1.      I am a Senior Vice President with Epiq Class Action and Claims Solutions, Inc. ("Epiq") and the Director of Legal Notice for Hilsoft Notifications ("Hilsoft"), a firm that specializes in designing, developing, analyzing, and implementing large-scale, un-biased, legal notification plans. Hilsoft is a business unit of Epiq.

2.      I am a nationally recognized expert in the field of legal notice and I have served as an expert in dozens of federal and state cases involving class action notice plans.

3.      I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto. I submit this Declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

4.      Hilsoft has been involved with some of the most complex and significant notice programs in recent history, examples of which are discussed below.  With experience in more than 500 cases, including more than 40 multi-district litigations, Hilsoft has prepared notices which have appeared in 53 languages and been distributed in almost every country, territory, and dependency in the world.  Courts have recognized and approved numerous notice plans developed by Hilsoft, and those decisions have invariably withstood appellate and collateral review.

5.      Epiq was retained to provide notice and administration services in this matter. This declaration will describe the Notice Plan developed for the proposed Settlement in this action.  As discussed below, individual notice will be emailed or mailed to the Settlement Class using Zoom Video Communication Inc.'s ("Zoom") current records, supplemented by a robust publication notice, thereby effectively reaching the vast majority, if not virtually all, of the Settlement Class with notice.

6.      The Federal Judicial Center's ("FJC") *Judges' Class Action Notice and Claims Process Checklist and Plaint Language Guide* (the "FJC Checklist") considers 70-95% reach among class members to be a "high percentage" and reasonable. The efforts proposed here are designed to reach virtually the entire Class with notice, thereby fulfilling the FJC guidelines as well as due process requirements.

DECLARATION OF CAMERON R. AZARI, ESQ. ON ADEQUACY OF SETTLEMENT NOTICE PLAN AND NOTICES

7.      I have reviewed the Class Action Settlement Agreement and Release ("Settlement Agreement") entered into between the Plaintiffs and Zoom, as well as the Long Form Notice, Summary Notice, and Claim Form, to ensure that all required information is plainly available to Settlement Class Members. Moreover, Epiq agrees to carry out the terms and conditions of the Settlement Agreement as it applies to the Settlement Administrator, as defined in therein. Draft forms of the notices and Claim Form are attached as Exhibits A, C, E, and G to the Settlement Agreement.

## RELEVANT EXPERIENCE

8.      Epiq is an industry leader in class action settlement administration, having implemented more than a thousand successful class action notice and settlement administration matters, and handled thousands of distributions in other contexts.

9.      I have served as a notice expert and have been recognized and appointed by courts to design and provide notice in several privacy related settlements and class action settlements involving similar class sizes as this action, including:

a)      *In re Takata Airbag Products Liability Litigation*, 1:15-md-02599-FAM (S.D. Fla), involved $1.49 billion in settlements with BMW, Mazda, Subaru, Toyota, Honda, Nissan, and Ford regarding Takata airbags.  The notice plans in those settlements included individual mailed notice to more than 59.6 million potential class members and extensive nationwide media via consumer publications, U.S. Territory newspapers, radio spots, internet banners, mobile banners, and behaviorally targeted digital media.  Combined, the notice plans reached more than 95% of adults aged 18+ in the U.S. who owned or leased a subject vehicle, with a frequency of 4.0 times each.

b)      *Hale v. State Farm Mutual Automobile Insurance Company, et al.*, 12-cv-00660 (S.D. Ill.), involved a $250 million settlement with approximately 4.7 million class members.  The extensive notice program provided individual notice via postcard or email to approximately 1.43 million class members and implemented a robust publication program which, combined with individual notice, reached approximately 78.8% of all U.S. adults aged 35+

DECLARATION OF CAMERON R. AZARI, ESQ. ON ADEQUACY OF SETTLEMENT NOTICE PLAN AND NOTICES

1   approximately 2.4 times each.

2          c)    *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product*

3   *Liability Litigation (Bosch Settlement)*, MDL No. 2672 (N.D. Cal.), involved a comprehensive

4   notice program that provided individual notice to more than 946,000 vehicle owners via first class

5   mail and to more than 855,000 via email.  A targeted internet campaign further enhanced the notice effort.

6          d)    *In re: Payment Card Interchange Fee and Merchant Discount Antitrust*

7   *Litigation*, MDL No. 1720 (E.D.N.Y.), involved a $6.05 billion settlement reached by Visa and

8   MasterCard in 2012 with an intensive notice program, which included over 19.8 million direct

9   mail notices to class members together with insertions in over 1,500 newspapers, consumer

10   magazines, national business publications, trade and specialty publications, and language &

11   ethnic targeted publications.  Hilsoft also implemented an extensive online notice campaign with

12   banner notices, which generated more than 770 million adult impressions, a settlement website in

13   eight languages, and acquisition of sponsored search listings to facilitate locating the website.

14   For the subsequent superseding $5.54 billion settlement reached by Visa and MasterCard in 2019,

15   Hilsoft implemented an extensive notice program, which included over 16.3 million direct mail

16   notices to class members together with over 354 print publication units and banner notices, which

17   generated more than 689 million adult impressions.

18          e)    *In Re: Premera Blue Cross Customer Data Security Breach Litigation*,

19   3:15-md-2633 (D. Ore.), involved an extensive individual notice program, which included 8.6

20   million double-postcard notices and 1.4 million email notices.  The notices informed class

21   members of a $32 million settlement for a "security incident" regarding class members' personal

22   information stored in Premera's computer network, which was compromised.  The individual

23   notice efforts reached 93.3% of the settlement class.  A settlement website, an informational

24   release, and a geo-targeted publication notice further enhanced the notice efforts.

25          f)    *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico,*

26   *on April 20, 2010*, MDL No. 2179 (E.D. La.), involved a dual landmark settlement notice

27   programs to distinct "Economic and Property Damages" and "Medical Benefits" settlement

28

DECLARATION OF CAMERON R. AZARI, ESQ. ON ADEQUACY OF SETTLEMENT NOTICE PLAN AND NOTICES

1  classes for BP's $7.8 billion settlement of claims related to the Deepwater Horizon oil spill.

2  Notice efforts included more than 7,900 television spots, 5,200 radio spots, and 5,400 print

3  insertions and reached over 95% of Gulf Coast residents.

4          g)      *In re: Checking Account Overdraft Litigation*, MDL No. 2036 (S.D. Fla.),

5  for multiple bank settlements from 2010-2020, the notice programs involved direct mail and email

6  to millions of class members, as well as publication in relevant local newspapers.  Representative

7  banks included Fifth Third Bank, National City Bank, Bank of Oklahoma, Webster Bank, Harris

8  Bank, M & I Bank, PNC Bank, Compass Bank, Commerce Bank, Citizens Bank, Great Western

9  Bank, TD Bank, BancorpSouth, Comerica Bank, Susquehanna Bank, Associated Bank, Capital

10 One, M&T Bank, Iberiabank, and Synovus are among the more than 20 banks.

11         10.     Courts have recognized our testimony as to which method of notification is

12 appropriate for a given case, and I have provided testimony on numerous occasions on whether a

13 certain method of notice represents the best notice practicable under the circumstances.  For

14 example:

15         a)      *In re: Lithium Ion Batteries Antitrust Litigation*, 4:13-md-02420, MDL No.

16 2420 (N.D. Cal.), Judge Yvonne Gonzalez Rogers stated on December 10, 2020:

> *The proposed notice plan was undertaken and carried out pursuant to this Court's preliminary approval order prior to remand, and a second notice campaign thereafter. (See Dkt. No. 2571.) The class received direct and indirect notice through several methods – email notice, mailed notice upon request, an informative settlement website, a telephone support line, and a vigorous online campaign. Digital banner advertisements were targeted specifically to settlement class members, including on Google and Yahoo's ad networks, as well as Facebook and Instagram, with over 396 million impressions delivered. Sponsored search listings were employed on Google, Yahoo and Bing, resulting in 216,477 results, with 1,845 clicks through to the settlement website. An informational released was distributed to 495 media contacts in the consumer electronics industry. The case website has continued to be maintained as a channel for communications with class members. Between February 11, 2020 and April 23, 2020, there were 207,205 unique visitors to the website. In the same period, the toll-free telephone number available to class members received 515 calls.*

26         b)      *Lusnak v. Bank of America, N.A.*, CV 14-1855 (C.D. Cal.), Judge George

27 H. Wu stated on August 10, 2020:

28

DECLARATION OF CAMERON R. AZARI, ESQ. ON ADEQUACY OF SETTLEMENT NOTICE PLAN AND NOTICES

> *The Court finds that the Notice program for disseminating notice to the Settlement Class, provided for in the Settlement Agreement and previously approved and directed by the Court, has been implemented by the Settlement Administrator and the Parties. The Court finds that such Notice program, including the approved forms of notice: (a) constituted the best notice that is practicable under the circumstances; (b) included direct individual notice to all Settlement Class Members who could be identified through reasonable effort; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the nature of the Lawsuit, the definition of the Settlement Class certified, the class claims and issues, the opportunity to enter an appearance through an attorney if the member so desires; the opportunity, the time, and manner for requesting exclusion from the Settlement Class, and the binding effect of a class judgment; (d) constituted due, adequate and sufficient notice to all persons entitled to notice; and (e) met all applicable requirements of Federal Rule of Civil Procedure 23, due process under the U.S. Constitution, and any other applicable law.*

c)      *Cook, et al. v. South Carolina Public Service Authority, et al.*, 2019-CP-23-6675 (Ct. of Com. Pleas. 13th Jud. Cir. S.C.), Judge Jean Hoefer Toal stated on July 31, 2020:

> *Notice was sent to more than 1.65 million Class members, published in newspapers whose collective circulation covers the entirety of the State, and supplemented with internet banner ads totaling approximately 12.3 million impressions. The notices directed Class members to the settlement website and toll-free line for additional inquiries and further information. After this extensive notice campaign, only 78 individuals (0.0047%) have opted-out, and only nine (0.00054%) have objected. The Court finds this response to be overwhelmingly favorable.*

d)      *Waldrup v Countrywide Financial Corporation, et al.*, 2:13-cv-08833 (C.D. Cal.), Judge Christina A. Snyder stated on July 16, 2020:

> *The Court finds that mailed and publication notice previously given to Class Members in the Action was the best notice practicable under the circumstances, and satisfies the requirements of due process and FED. R. CIV. P. 23. The Court further finds that, because (a) adequate notice has been provided to all Class Members and (b) all Class Members have been given the opportunity to object to, and/or request exclusion from, the Settlement, it has jurisdiction over all Class Members. The Court further finds that all requirements of statute (including but not limited to 28 U.S.C. § 1715), rule, and state and federal constitutions necessary to effectuate this Settlement have been met and satisfied.*

e)      *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720 (E.D.N.Y.) Judge Margo K. Brodie stated on December 13, 2019:

DECLARATION OF CAMERON R. AZARI, ESQ. ON ADEQUACY OF SETTLEMENT NOTICE PLAN AND NOTICES

*The notice and exclusion procedures provided to the Rule 23(b)(3) Settlement Class, including but not limited to the methods of identifying and notifying members of the Rule 23(b)(3) Settlement Class, were fair, adequate, and sufficient, constituted the best practicable notice under the circumstances, and were reasonably calculated to apprise members of the Rule 23(b)(3) Settlement Class of the Action, the terms of the Superseding Settlement Agreement, and their objection rights, and to apprise members of the Rule 23(b)(3) Settlement Class of their exclusion rights, and fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, any other applicable laws or rules of the Court, and due process.*

      f)     *In re: Takata Airbag Products Liability Litigation (Ford),* MDL No. 2599

(S.D. Fla.), Judge Federico A. Moreno stated on December 20, 2018:

*The record shows and the Court finds that the Class Notice has been given to the Class in the manner approved by the Court in its Preliminary Approval Order. The Court finds that such Class Notice: .(i) is reasonable and constitutes the best practicable notice to Class Members under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and the terms of the Settlement Agreement, their right to exclude themselves from the Class or to object to all or any part of the Settlement Agreement, their right to appear at the Fairness Hearing (either on their own or through counsel hired at their own expense) and the binding effect of the orders and Final Order and Final Judgment in the Action, whether favorable or unfavorable, on all persons and entities who or which do not exclude themselves from the Class; (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) fully satisfied the requirements of the United States Constitution (including the Due Process Clause), FED. R. Civ. P. 23 and any other applicable law as well as complying with the Federal Judicial Center's illustrative class action notices.*

      g)     *Hale v. State Farm Mutual Automobile Insurance Company, et al.,* 3:12-cv-

00660-DRH-SCW (S.D. Ill.), Judge Herndon stated on December 16, 2018:

*The Class here is estimated to include approximately 4.7 million members. Approximately 1.43 million of them received individual postcard or email notice of the terms of the proposed Settlement, and the rest were notified via a robust publication program "estimated to reach 78.8% of all U.S. Adults Aged 35+ approximately 2.4 times." Doc. 966-2 ¶¶ 26, 41. The Court previously approved the notice plan (Doc. 947), and now, having carefully reviewed the declaration of the Notice Administrator (Doc. 966-2), concludes that it was fully and properly executed, and reflected "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." See Fed. R. Civ. P. 23(c)(2)(B). The Court further concludes that CAFA notice was properly effectuated to the attorneys general and insurance commissioners of all 50 states and District of Columbia.*

DECLARATION OF CAMERON R. AZARI, ESQ. ON ADEQUACY OF SETTLEMENT NOTICE PLAN AND NOTICES

h)      *Vergara, et al., v. Uber Technologies, Inc.,* 1:15-CV-06972 (N.D. Ill.), Judge Thomas M. Durkin stated on March 1, 2018:

> The Court finds that the Notice Plan set forth in Section IX of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to the Settlement Classes of the pendency of this case, certification of the Settlement Classes for settlement purposes only, the terms of the Settlement Agreement, and the Final Approval Hearing, and satisfies the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law. Further, the Court finds that Defendant has timely satisfied the notice requirements of 28 U.S.C. Section 1715.

i)      *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation* (Bosch Settlement), MDL No. 2672 (N.D. Cal.), Judge Charles R. Breyer stated on May 17, 2017:

> The Court is satisfied that the Notice Program was reasonably calculated to notify Class Members of the proposed Settlement. The Notice "apprise[d] interested parties of the pendency of the action and afford[ed] them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Indeed, the Notice Administrator reports that the notice delivery rate of 97.04% "exceed[ed] the expected range and is indicative of the extensive address updating and re-mailing protocols used." (Dkt. No. 3188-2 ¶ 24.).

j)      *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,* MDL No. 2179 (E.D. La.), Judge Carl J. Barbier stated on January 11, 2013:

> The Court finds that the Class Notice and Class Notice Plan satisfied and continue to satisfy the applicable requirements of Federal Rule of Civil Procedure 23(c)(2)(b) and 23(e), the Class Action Fairness Act (28 U.S.C. § 1711 et seq.), and the Due Process Clause of the United States Constitution (U.S. Const., amend. V), constituting the best notice that is practicable under the circumstances of this litigation.

> The notice program surpassed the requirements of Due Process, Rule 23, and CAFA. Based on the factual elements of the Notice Program as detailed below, the Notice Program surpassed all of the requirements of Due Process, Rule 23, and CAFA.

> The media notice effort alone reached an estimated 95% of adults in the Gulf region an average of 10.3 times each, and an estimated 83% of all adults in the United States an average of 4 times each. These figures do not include notice efforts that cannot be measured, such as advertisements in trade publications and sponsored search engine listings. The Notice

8

DECLARATION OF CAMERON R. AZARI, ESQ. ON ADEQUACY OF SETTLEMENT NOTICE PLAN AND NOTICES

*Program fairly and adequately covered and notified the class without excluding any demographic group or geographic area, and it exceeded the reach percentage achieved in most other court-approved notice programs.*

11.   In addition, Epiq has handled numerous cases in the N.D. Cal. including:

- *Larkin v. GoPro, Inc., et al.*, No. 4:16-cv-00654;

- *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, No. 3:15-md-02672;

- *Gary Hefler, et al. v. Wells Fargo & Co. et al.*, No. 4:16-cv-05479;

- *In re: SanDisk LLC Securities Litigation*, No. 3:15-cv-01455;

- *Bulette v. Western Dental Services, Inc.*, No. 3:19-cv-00612;

- *Coffeng V. Volkswagenwerk Aktiengesellschaft et al.*, No. 3:17-cv-01825;

- *In Re K12 Inc. Securities Litigation*, No. 4:16-cv-04069;

- *Izor v. Abacus Data Systems Inc.*, No. 4:19-cv-01057;

- *O'Connor Et Al V. Uber Technologies, Inc .et al*, No. 3:13-cv-03826;

- *Naiman V. Total Merchant Services, Inc.*, No. 4:17-cv-03806;

- *Elder v. Hilton Worldwide Holdings, Inc. et al*, No. 3:16-cv-00278;

- *Casey Roberts v. Zuora, Inc et al.*, No. 3:19-cv-03422;

- *Richards et al. v. Chime Financial, Inc. et al.*, No. 4:19-cv-06864;

- *Yamagata et al. v. Reckitt Benckiser LLC*, No. 3:17-cv-03529;

- *In re Tezos Securities Litigation*, No. 3:17-cv-06779;

- *McKinney-Drobins v. Massage Envy*, No. 3:16-cv-06450;

- *Grace v. Apple Inc.*, No. 5:17-cv-00551;

- *Pennington, et al. v. TetraTech, et al.*, No. 3:18-cv-05330; and

- *In re HP Printer Firmware Update Litigation*, No. 5:16-cv-05820.

12.   Additional courts have approved the adequacy of our notice efforts, as described in Hilsoft's curriculum vitae included as **Attachment 1**.

13.   In forming my opinions regarding notice in this action, I have drawn from my extensive class action case experience, as well as my educational and related work experiences. I

1    am an active member of the Oregon State Bar, having received my Bachelor of Science from

2    Willamette University and my Juris Doctor from Northwestern School of Law at Lewis and Clark

3    College.  I have served as the Director of Legal Notice for Hilsoft since 2008 and have overseen

4    the detailed planning of virtually all of our court-approved notice programs during that time.

5    Before assuming my current role with Hilsoft, I served in a similar role as Director of Epiq Legal

6    Noticing (previously called Huntington Legal Advertising).

7         14.    Overall, I have over 21 years of experience in the design and implementation of

8    legal notification and claims administration programs, having been personally involved in well

9    over one hundred successful notice programs.

10                              **NOTICE PLAN SUMMARY**

11        15.    In the proposed Settlement, Class Members include all Persons in the United States

12   who registered, used, opened, or downloaded the Zoom Meetings Application ("App"), between

13   March 30, 2016 and July 30, 2021, except for (i) all Persons who have only registered, used,

14   opened, or downloaded the Zoom Meetings App through an Enterprise-Level Account or a Zoom

15   for Government Account, (ii) Zoom and its officers and directors; and (iii) the Judge or Magistrate

16   Judge to whom the action is assigned and any member of those Judges' staffs or immediate family

17   members.

18                        *Individual Notice – Mail and Email*

19        16.    The Settlement Agreement provides that Zoom will provide Epiq with a list of

20   individuals for whom Zoom's records reasonably indicate are likely to be Settlement Class

21   Members, and for whom Zoom has names and email addresses based on available records.  Zoom

22   will also provide billing addresses if such addresses exist in its reasonably accessible records.  In

23   addition, for Settlement Class Members who are paid subscribers, Zoom will provide the total

24   amount paid to Zoom for core Zoom Meetings subscriptions (between March 30, 2016 and July

25   30, 2021) by each such Settlement Class Member.  The proposed Notice Plan provides that

26   Summary Notice will be sent via email ("Email Notice") to all of the available email addresses for

27   Settlement Class Members.  Summary Notice will also be mailed in Postcard form ("Postcard

28

DECLARATION OF CAMERON R. AZARI, ESQ. ON ADEQUACY OF SETTLEMENT NOTICE PLAN AND
NOTICES

Notice") to all undeliverable email addresses or to whom an email address has not been provided, and for which Zoom has provided a physical mailing address. All Email and Postcard Notices will also include a unique identifying number for each identified Settlement Class Member to allow for more secure online claim processing and the efficient processing of returned paper Claim Forms.

17.    Industry standard best practices will be followed for the Email Notice efforts. The Email Notice will be drafted in such a way that the subject line, the sender, and the body of the message overcome SPAM filters and ensure readership to the fullest extent reasonably practicable. The Email Notice will use an embedded html text format. This format will provide easy to read text without graphics, images and other elements that would increase the likelihood that the message could be blocked by Internet Service Providers (ISPs) and/or SPAM filters. The Email Notices will be sent from an IP address known to major email providers as one not used to send bulk "SPAM" or "junk" email blasts. Each Email Notice will be transmitted with a digital signature to the header and content of the Email Notice, which will allow ISPs to programmatically authenticate that the Email Notices are from our authorized mail servers. Each Email Notice will be transmitted with a unique message identifier. If an item is returned as undeliverable, commonly referred to as a "bounce," the reason is noted. For any Email Notice for which a bounce code is received indicating that the message was undeliverable, for reasons such as an inactive or disabled account, the recipient's mailbox was full, technical auto-replies, etc., at least two additional attempts will be made to deliver the Notice by email. The Email Notice will include an embedded link to the case website. By clicking the link, recipients will be able to easily access information about the case.

18.    The Summary Notice will also be sent as a Postcard Notice to all potential Settlement Class Members with an associated physical address for whom an email address could not be located and for those with an undeliverable email after several attempts. The Postcard Notice will be sent via USPS first class mail. The Postcard Notice clearly and concisely summarizes the case and the legal rights of the Settlement Class Members. The Postcard Notice will also direct the recipients to a Settlement Website where they can access additional information. Prior to initiating

11

the Postcard Notice, Hilsoft will run the Class Notice List through the National Change of Address ("NCOA") database maintained by the USPS to ensure Class Member address information is up-to-date and accurately formatted for mailing.[1] In addition, the addresses will be certified via the Coding Accuracy Support System (CASS) to ensure the quality of the zip code, and will be verified through Delivery Point Validation (DPV) to verify the accuracy of the addresses. Should NCOA provide a more current mailing address for a class member, Epiq will update the address accordingly. Postcard Notices returned as undeliverable will be re-mailed to any new address available through USPS information, for example, to the address provided by the USPS on returned pieces for which the automatic forwarding order has expired, but which is still during the period in which the USPS returns the piece with the address indicated, or to better addresses that may be found using a third-party lookup service. Upon successfully locating better addresses, Postcard Notices will be promptly re-mailed.

### Media Plan

### CLRA Publication Notice

19.     As this matter includes claims under the California Consumer Legal Remedies Act ("CLRA"), the notice provision of Government Code section 6064 applies.   It provides that "[p]ublication of notice pursuant to this section shall be once a week for four successive weeks. Four publications in a newspaper regularly published once a week or oftener, with at least five days intervening between the respective publication dates not counting such publication dates, are sufficient." Cal. Gov't Code § 6064.  In order to satisfy this notice provision, the Notice Program includes four insertions over four weeks in the "San Francisco" edition of *USA Today*.

### Internet Notice Campaign

20.     Epiq will conduct an internet advertisement publication notice program, which will

---

[1] The NOCA database is maintained by the USPS and consists of approximately 160 million permanent change-of-address (COA) records consisting of names and addresses of individuals, families, and businesses who have filed a change-of-address with the Postal Service™. The address information is maintained on the database for 48 months and reduces undeliverable mail by providing the most current address information, including standardized and delivery point coded addresses, for matches made to the NCOA file for individual, family, and business moves.

be approved by the Parties and the Court. The internet advertisement publication notice will begin no later than 30 calendar days after the entry of the Preliminary Approval Order and will run for approximately 45 days.  Internet advertising has become a standard component in legal notice programs.  The Internet has proven to be an efficient and cost-effective method to target and provide measurable reach of persons covered by a settlement.  According to MRI-Simmons data[2], over 89% of all adults are online.

21.    The Notice Program includes targeted advertising on selected advertising networks, which will be targeted to Settlement Class Members.  The advertisements will link directly to the Settlement Website, thereby allowing visitors easy access to relevant information and documents.  The advertisements will use language from the Notice headline, which will allow users to identify themselves as potential Class Members.  As an additional way to draw the interest of Class Members, and to be consistent with FJC recommendations that a picture or graphic may help class members self-identify, the advertisements will prominently feature high-resolution picture(s).  The advertisements will be placed across nationwide online advertising networks. Advertisements will also be placed on social media websites such *Facebook* and *Instagram*.  The internet advertising campaign will run for approximately 45 days.[3]

22.    Throughout the Notice Plan, we will continuously monitor the effectiveness of the Plan and, in consultation with counsel, will make cost-effective adjustments as appropriate to

---

[2] MRI-Simmons is a leading source of publication readership and product usage data for the communications industry. MRI-Simmons is the new name for the joint venture of GfK Mediamark Research & Intelligence, LLC ("MRI") and Simmons Market Research. MRI-Simmons offers comprehensive demographic, lifestyle, product usage and exposure to all forms of advertising media collected from a single sample. As the leading U.S. supplier of multimedia audience research, the company provides information to magazines, televisions, radio, Internet, and other media, leading national advertisers, and over 450 advertising agencies—including 90 of the top 100 in the United States.  MRI-Simmons's national syndicated data is widely used by companies as the basis for the majority of the media and marketing plans that are written for advertised brands in the United States.

[3] The third-party ad management platform, ClickCease, will be used to audit any digital Banner Notice ad placements.  This type of platform tracks all Banner Notice ad clicks to provide real-time ad monitoring, fraud traffic analysis, blocks clicks from fraudulent sources, and quarantines dangerous IP addresses.  This helps reduce wasted, fraudulent or otherwise invalid traffic (*e.g.*, ads being seen by 'bots' or non-humans, ads not being viewable, etc.).

DECLARATION OF CAMERON R. AZARI, ESQ. ON ADEQUACY OF SETTLEMENT NOTICE PLAN AND NOTICES

maximize reach.

### *Internet Sponsored Search Listings*

23.     To facilitate locating the case website, sponsored search listings will be acquired online through highly-visited internet search engines such as *Google*, *Yahoo!*, and *Bing*.  When search-engine visitors search on common keyword combinations to identify the Settlement, the sponsored search listing generally will be displayed at the top of the page prior to the search results or in the upper right-hand column of the web-browser screen.  A list of keywords will be developed in conjunction with counsel and could include such terms as "Zoom Class Action" and/or "Zoom Settlement," among others.

### *Settlement Website*

24.     Epiq will create and maintain a dedicated Settlement Website with an easy to remember domain name: www.ZoomMeetingsClassAction.com. The website address will be included in the Notices and all internet advertisements and will link directly to the Settlement Website. Relevant documents, including the Long Form Notice, the Claim Form, the Settlement Agreement, the Preliminary Approval Order entered by the Court, and the operative complaint, will be posted on the Settlement Website, so Class Members may review and download them. The Motions in support of the Settlement, a Fee and Expense Award, and Service Payments will be posted to the Settlement Website as they become available.   The Settlement Website will prominently feature all deadlines and dates, and provide instruction for attendance at hearings, if such hearings are by video conference. The Settlement Website will also provide the ability to file an online Claim Form, and will include relevant dates, answers to frequently asked questions, instructions for how Settlement Class Members may opt-out (request exclusion) from or object to the Settlement Agreement, contact information for the Settlement Administrator, and other case-related information.

### *Toll-Free Number*

25.     A toll-free number will be established for the Settlement. Callers will be able to hear an introductory message. Callers will also have the option to learn more about the Settlement

DECLARATION OF CAMERON R. AZARI, ESQ. ON ADEQUACY OF SETTLEMENT NOTICE PLAN AND NOTICES

1   in the form of recorded answers to frequently asked questions. The toll-free telephone number will

2   be prominently displayed in the Notice documents as well.  The automated phone system will be

3   available 24 hours per day, 7 days per week.

4                                              *Notice Content*

5          26.    I helped draft and design the Long Form Notice, Summary Notice, Publication

Notice, and Claim Form attached as exhibits to the Settlement Agreement.  The forms are designed

to be "noticed," reviewed, and—by presenting the information in plain language—understood by

Settlement Class Members. The design of the Notices follows the principles embodied in the

Federal Judicial Center's illustrative "model" notices posted at www.fjc.gov. Many courts, and the

FJC itself, have approved notices that we have written and designed in a similar fashion. The

Notices contain substantial, albeit easy-to-read, summaries of all of the key information about

Settlement Class Members' rights and options. Consistent with our normal practice, all notice

documents will undergo a final edit prior to actual mailing and publication for grammatical errors

and accuracy.

15         27.    The Long Form Notice will provide substantial information to Settlement Class

Members. The Long Form Notice will include (i) details regarding the Settlement Class Members'

ability to request exclusion from, opt-out, object to, or otherwise comment on the Settlement

Agreement, (ii) instructions on how to submit a Claim Form, (iii) the deadline to submit Claim

Forms, and (iv) the date, time, and location of the Fairness Hearing, among other information.

20                                          *Distribution Options*

21         28.    The Settlement provides Class Members the option of filing a Claim for cash. The

Email Notice will link directly to the claim filing portal on the Settlement Website, where Class

Members can file an online claim for the cash benefit offered under the Settlement. The Postcard

Notice will contain a detailed summary of the relevant information about the Settlement, including

a link to the Settlement Website where Class Members can file a claim.

26

27

28

---
15

DECLARATION OF CAMERON R. AZARI, ESQ. ON ADEQUACY OF SETTLEMENT NOTICE PLAN AND
NOTICES

29.    After the Settlement receives Final Approval, an email will be sent to Settlement Class Members who filed a valid claim.  The email will provide Settlement Class Members with the option to select to receive their payment digitally (such as Venmo, Paypal, Digital Mastercard or other options).  Settlement Class Members can also elect to receive a traditional paper check. An example of a digital payment screen used on another recent matter is as follows (the options here would include a physical check, Venmo and potentially others):



The option of receiving a digital payment has become more commonplace in class action settlement administration.  Beyond meeting the expectations of many Settlement Class Members that digital payments should be an option, they have the added benefit of being less expensive to administer (because of no postage or potential for check reissue requests), leaving more of the Net Settlement Fund available to distribute to the Settlement Class. Also, digital payments can be made more quickly – and directly to whatever option Settlement Class Members may select.

## CONCLUSION

30.    The above-described notice program is designed to reach virtually the entire Settlement Class and provide them with information necessary to understand their rights and options.

31.    It is my opinion, based on my expertise and experience and that of my team, that this method of focused notice dissemination provides effective notice in this Action, will provide the best notice that is practicable, adheres to Fed. R. Civ. P. 23, follows the guidance set forth in the Manual for Complex Litigation 4th Ed., the Federal Judicial Council, and the Northern

DECLARATION OF CAMERON R. AZARI, ESQ. ON ADEQUACY OF SETTLEMENT NOTICE PLAN AND NOTICES

District's Procedural Guidance for Class Action Settlements, and exceeds the requirements of due process, including its "desire to actually inform" requirement.

32. Epiq estimates that the total notice and administration costs, subject to various other assumptions (such as the number of online vs. paper Claim Forms submitted, number of claims without unique ID claim numbers that require validation, requests for digital payment vs. physical check, etc.) will be approximately $2,835,000 for up to 5,295,000 claims, $4,035,000 for up to 8,825,000 claims, and $6,586,000 for up to 17,650,000 claims.

33. Epiq has also been retained to provide the requisite notice to governmental agencies required pursuant to the Class Action Fairness Act, and will provide a declaration attesting to the completion of such notice.

34. At the conclusion of the Notice Plan, I will provide a final report to the Court verifying its implementation.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 30th day of July 2021,

_____
Cameron R. Azari, Esq.

---

DECLARATION OF CAMERON R. AZARI, ESQ. ON ADEQUACY OF SETTLEMENT NOTICE PLAN AND NOTICES

# HILSOFT
# NOTIFICATIONS

Hilsoft Notifications ("Hilsoft") is a leading provider of legal notice services for large-scale class action and bankruptcy matters.  We specialize in providing quality, expert, and notice plan development – designing notice programs that satisfy due process requirements and withstand judicial scrutiny.  Hilsoft is a business unit of Epiq Class Action & Claims Solutions, Inc. ("Epiq").  Hilsoft has been retained by defendants or plaintiffs for more than 500 cases, including more than 40 MDL cases, with notices appearing in more than 53 languages and in almost every country, territory and dependency in the world.  For more than 25 years, Hilsoft's notice plans have been approved and upheld by courts. Case examples include:

➢ Hilsoft designed and implemented monumental notice campaigns to notify current or former owners or lessees of certain BMW, Mazda, Subaru, Toyota, Honda, Nissan, and Ford vehicles as part of $1.49 billion in settlements regarding Takata airbags.  The Notice Plans included individual mailed notice to more than 59.6 million potential class members and notice via consumer publications, U.S. Territory newspapers, radio, internet banners, mobile banners, and other behaviorally targeted digital media.  Combined, the Notice Plans reached more than 95% of adults aged 18+ in the U.S. who owned or leased a subject vehicle with a frequency of 4.0 times each.  *In re: Takata Airbag Products Liability Litigation* **(OEMS – BMW, Mazda, Subaru, Toyota, Honda, Nissan and Ford)**, MDL No. 2599 (S.D. Fla.).

➢ For a landmark $6.05 billion settlement reached by Visa and MasterCard in 2012, Hilsoft implemented an intensive notice program, which included over 19.8 million direct mail notices to class members together with insertions in over 1,500 newspapers, consumer magazines, national business publications, trade and specialty publications, and language & ethnic targeted publications.  Hilsoft also implemented an extensive online notice campaign with banner notices, which generated more than 770 million adult impressions, a settlement website in eight languages, and acquisition of sponsored search listings to facilitate locating the website.  For the subsequent, superseding $5.54 billion settlement reached by Visa and MasterCard in 2019, Hilsoft implemented an extensive notice program, which included over 16.3 million direct mail notices to class members together with over 354 print publication insertions and banner notices, which generated more than 689 million adult impressions.  *In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,* 05-MD-1720, MDL No. 1720 (E.D.N.Y.).

➢ For a $250 million settlement with approximately 4.7 million class members, Hilsoft designed and implemented a notice program with individual notice via postcard or email to approximately 1.43 million class members and a robust publication program, which combined, reached approximately 78.8% of all U.S. adults aged 35+ approximately 2.4 times each.  *Hale v. State Farm Mutual Automobile Insurance Company, et al.,* 12-cv-00660 (S.D. Ill.).

➢ Hilsoft designed and implemented an extensive individual notice program, which included 8.6 million double-postcard notices and 1.4 million email notices.  The notices informed class members of a $32 million settlement for a "security incident" regarding class members' personal information stored in Premera's computer network, which was compromised.  The individual notice efforts reached 93.3% of the settlement class.  A settlement website, an informational release, and a geo-targeted publication notice further enhanced the notice efforts.  *In re: Premera Blue Cross Customer Data Security Breach Litigation*, 3:15-md-2633 (D. Ore.).

➢ Hilsoft provided notice for the $113 million lithium-ion batteries antitrust litigation settlements, which included individual notice via email to millions of class members, banner and social media ads, an informational release, and a settlement website.  *In re: Lithium Ion Batteries Antitrust Litigation*, 4:13-md-02420, MDL No. 2420 (N.D. Cal.).

➢ Hilsoft designed a notice program that included extensive data acquisition and mailed notice to inform owners and lessees of specific models of Mercedes-Benz vehicles.  The notice program reached approximately 96.5% of all class members.  *Callaway v. Mercedes-Benz USA, LLC*, 8:14-cv-02011 (C.D. Cal.).

➢ Hilsoft provided notice for a $520 million settlement, which involved utility customers (residential, commercial, industrial, etc.) who paid utility bills. The notice program included individual notice to more than 1.6 million known class members by postal mail or email and a supplemental publication notice in local newspapers, banner notices, and a settlement website. The individual notice efforts alone reached more than 98.6% of the class. ***Cook, et al. v. South Carolina Public Service Authority, et al.***, 2019-CP-23-6675 (Ct. of Com. Pleas. 13th Jud. Cir. S.C.).

➢ For a $20 million TCPA settlement that involved Uber, Hilsoft created a notice program, which resulted in notice via mail or email to more than 6.9 million identifiable class members. The combined measurable notice effort reached approximately 90.6% of the settlement class with direct mail and email, newspaper and internet banner ads. ***Vergara, et al., v. Uber Technologies, Inc.***, 1:15-CV-06972 (N.D. Ill.).

➢ A comprehensive notice program within the *Volkswagen Emissions Litigation* that provided individual notice to more than 946,000 vehicle owners via first class mail and to more than 855,000 vehicle owners via email. A targeted internet campaign further enhanced the notice effort. ***In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch Settlement)***, MDL No. 2672 (N.D. Cal.).

➢ Hilsoft designed and implemented a comprehensive notice plan, which included individual notice via an oversized postcard notice to more than 740,000 class members as well as email notice to class members. Combined the individual notice efforts delivered notice to approximately 98% of the class. Supplemental newspaper notice in four large-circulation newspapers and a settlement website further expanded the notice efforts. ***Lusnak v. Bank of America, N.A.***, CV 14-1855 (C.D. Cal.).

➢ Hilsoft provided notice for both the class certification and the settlement phases of the case. The individual notice efforts included sending postcard notices to more than 2.3 million class members, which reached 96% of the class. Publication notice in a national newspaper, targeted internet banner notices and a settlement website further extended the reach of the notice plan. ***Waldrup v. Countrywide Financial Corporation, et al.***, 2:13-cv-08833 (C.D. Cal.).

➢ An extensive notice effort regarding asbestos personal injury claims and rights as to Debtors' Joint Plan of Reorganization and Disclosure Statement that was designed and implemented by Hilsoft. The notice program included nationwide consumer print publications, trade and union labor publications, internet banner advertising, an informational release, and a website. ***In re: Kaiser Gypsum Company, Inc., el al.***, 16-31602 (Bankr. W.D. N.C.).

➢ Hilsoft designed and implemented an extensive settlement notice plan for a class period spanning more than 40 years for smokers of light cigarettes. The notice plan delivered a measured reach of approximately 87.8% of Arkansas adults 25+ with a frequency of 8.9 times and approximately 91.1% of Arkansas adults 55+ with a frequency of 10.8 times. Hispanic newspaper notice, an informational release, radio public service announcements ("PSAs"), sponsored search listings and a case website further enhanced reach. ***Miner v. Philip Morris USA, Inc.***, 60CV03-4661 (Ark. Cir. Ct.).

➢ A large asbestos bar date notice effort, which included individual notice, national consumer publications, hundreds of local and national newspapers, Spanish newspapers, union labor publications, and digital media to reach the target audience. ***In re: Energy Future Holdings Corp., et al.***, 14-10979 (Bankr. D. Del.).

➢ Overdraft fee class actions have been brought against nearly every major U.S. commercial bank. For related settlements from 2010-2020, Hilsoft has developed programs that integrate individual notice, and in some cases paid media efforts. Fifth Third Bank, National City Bank, Bank of Oklahoma, Webster Bank, Harris Bank, M& I Bank, PNC Bank, Compass Bank, Commerce Bank, Citizens Bank, Great Western Bank, TD Bank, BancorpSouth, Comerica Bank, Susquehanna Bank, Associated Bank, Capital One, M&T Bank, Iberiabank and Synovus are among the more than 20 banks that have retained Epiq (Hilsoft). ***In re: Checking Account Overdraft Litigation***, MDL No. 2036 (S.D. Fla.).

➢ For one of the largest and most complex class action case in Canadian history, Hilsoft designed and implemented groundbreaking notice to disparate, remote indigenous people in the multi-billion-dollar settlement. ***In re: Residential Schools Class Action Litigation***, 00-CV-192059 CPA (Ont. Super. Ct.).



➢ BP's $7.8 billion settlement related to the Deepwater Horizon oil spill emerged from possibly the most complex class action case in U.S. history. Hilsoft drafted and opined on all forms of notice. The 2012 dual notice program to "Economic and Property Damages" and "Medical Benefits" settlement classes designed by Hilsoft reached at least 95% Gulf Coast region adults via more than 7,900 television spots, 5,200 radio spots, 5,400 print insertions in newspapers, consumer publications, and trade journals, digital media, and individual notice. Subsequently, Hilsoft designed and implemented one of the largest claim deadline notice campaigns ever implemented, which resulted in a combined measurable paid print, television, radio and internet effort, which reached in excess of 90% of adults aged 18+ in the 26 identified DMAs covering the Gulf Coast Areas an average of 5.5 times each. *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179 (E.D. La.).

➢ Extensive point of sale notice program of a settlement, which provided payments of up to $100,000 related to Chinese drywall – 100 million notices distributed to Lowe's purchasers during a six-week period. *Vereen v. Lowe's Home Centers*, SU10-CV-2267B (Ga. Super. Ct.).

### LEGAL NOTICING EXPERTS

#### *Cameron Azari, Esq., Epiq Senior Vice President, Hilsoft Director of Legal Notice*

Cameron Azari, Esq. has more than 21 years of experience in the design and implementation of legal notice and claims administration programs. He is a nationally recognized expert in the creation of class action notification campaigns in compliance with Fed R. Civ. P. 23(c)(2) (d)(2) and (e) and similar state class action statutes. Cameron has been responsible for hundreds of legal notice and advertising programs. During his career, he has been involved in an array of high profile class action matters, including *In re: Takata Airbag Products Liability Litigation, In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (MasterCard & Visa), In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch Settlement), In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010, In re: Checking Account Overdraft Litigation, and In re: Residential Schools Class Action Litigation.* He is an active author and speaker on a broad range of legal notice and class action topics ranging from FRCP Rule 23 to email noticing, response rates, and optimizing settlement effectiveness. Cameron is an active member of the Oregon State Bar. He received his B.S. from Willamette University and his J.D. from Northwestern School of Law at Lewis and Clark College. Cameron can be reached at caza@legalnotice.com.

#### *Lauran Schultz, Epiq Managing Director*

Lauran Schultz consults with Hilsoft clients on complex noticing issues. Lauran has more than 20 years of experience as a professional in the marketing and advertising field, specializing in legal notice and class action administration since 2005. High profile actions he has been involved in include companies such as BP, Bank of America, Fifth Third Bank, Symantec Corporation, Lowe's Home Centers, First Health, Apple, TJX, CNA and Carrier Corporation. Prior to joining Epiq in 2005, Lauran was a Senior Vice President of Marketing at National City Bank in Cleveland, Ohio. Lauran's education includes advanced study in political science at the University of Wisconsin-Madison along with a Ford Foundation fellowship from the Social Science Research Council and American Council of Learned Societies. Lauran can be reached at lschultz@hilsoft.com.

#### *Kyle Bingham, Manager of Strategic Communications*

Kyle Bingham has 15 years of experience in the advertising industry. At Hilsoft and Epiq, Kyle is responsible for overseeing the research, planning, and execution of advertising campaigns for legal notice programs including class action, bankruptcy and other legal cases. Kyle has been involved in the design and implementation of numerous legal notice campaigns, including *In re: Takata Airbag Products Liability Litigation, In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch), In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (MasterCard & Visa), In re: Energy Future Holdings Corp., et al. (Asbestos Claims Bar Notice), In re: Residential Schools Class Action Litigation, Hale v. State Farm Mutual Automobile Insurance Company,* and *In re: Checking Account Overdraft Litigation.* Prior to joining Epiq and Hilsoft, Kyle worked at Wieden+Kennedy for seven years, an industry-leading advertising agency where he planned and purchased print, digital and broadcast media, and presented strategy and media campaigns to clients for multi-million dollar branding campaigns and regional direct response initiatives. He received his B.A. from Willamette University. Kyle can be reached at kbingham@epiqglobal.com.



### ARTICLES AND PRESENTATIONS

➢ **Cameron Azari** Speaker, "Virtual Global Class Actions Symposium 2020, Class Actions Case Management Panel." November 18, 2020.

➢ **Cameron Azari** Speaker, "Consumers and Class Action Notices: An FTC Workshop." Federal Trade Commission, Washington, DC, October 29, 2019.

➢ **Cameron Azari** Speaker, "The New Outlook for Automotive Class Action Litigation: Coattails, Recalls, and Loss of Value/Diminution Cases." ACI's Automotive Product Liability Litigation Conference." American Conference Institute, Chicago, IL, July 18, 2019.

➢ **Cameron Azari** Moderator, "Prepare for the Future of Automotive Class Actions." Bloomberg Next, Webinar-CLE, November 6, 2018.

➢ **Cameron Azari** Speaker, "The Battleground for Class Certification: Plaintiff and Defense Burdens, Commonality Requirements and Ascertainability." 30th National Forum on Consumer Finance Class Actions and Government Enforcement, Chicago, IL, July 17, 2018.

➢ **Cameron Azari** Speaker, "Recent Developments in Class Action Notice and Claims Administration." PLI's Class Action Litigation 2018 Conference, New York, NY, June 21, 2018.

➢ **Cameron Azari** Speaker, "One Class Action or 50? Choice of Law Considerations as Potential Impediment to Nationwide Class Action Settlements." 5th Annual Western Regional CLE Program on Class Actions and Mass Torts. Clyde & Co LLP, San Francisco, CA, June 22, 2018.

➢ **Cameron Azari** Co-Author, *A Practical Guide to Chapter 11 Bankruptcy Publication Notice*. E-book, published, May 2017.

➢ **Cameron Azari** Featured Speaker, "Proposed Changes to Rule 23 Notice and Scrutiny of Claim Filing Rates," DC Consumer Class Action Lawyers Luncheon, December 6, 2016.

➢ **Cameron Azari** Speaker, "Recent Developments in Consumer Class Action Notice and Claims Administration." Berman DeValerio Litigation Group, San Francisco, CA, June 8, 2016.

➢ **Cameron Azari** Speaker, "2016 Cybersecurity & Privacy Summit. Moving From 'Issue Spotting' To Implementing a Mature Risk Management Model." King & Spalding, Atlanta, GA, April 25, 2016.

➢ **Cameron Azari** Speaker, "Live Cyber Incident Simulation Exercise." Advisen's Cyber Risk Insights Conference, London, UK, February 10, 2015.

➢ **Cameron Azari** Speaker, "Pitfalls of Class Action Notice and Claims Administration." PLI's Class Action Litigation 2014 Conference, New York, NY, July 9, 2014.

➢ **Cameron Azari** Co-Author, "What You Need to Know About Frequency Capping In Online Class Action Notice Programs." *Class Action Litigation Report*, June 2014.

➢ **Cameron Azari** Speaker, "Class Settlement Update – Legal Notice and Court Expectations." PLI's 19th Annual Consumer Financial Services Institute Conference, New York, NY, April 7-8, 2014 and Chicago, IL, April 28-29, 2014.

➢ **Cameron Azari** Speaker, "Legal Notice in Consumer Finance Settlements - Recent Developments." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 29-30, 2014.

➢ **Cameron Azari** Speaker, "Legal Notice in Building Products Cases." HarrisMartin's Construction Product Litigation Conference, Miami, FL, October 25, 2013.



➢ **Cameron Azari** Co-Author, "Class Action Legal Noticing: Plain Language Revisited." *Law360*, April 2013.

➢ **Cameron Azari** Speaker, "Legal Notice in Consumer Finance Settlements Getting your Settlement Approved." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 31-February 1, 2013.

➢ **Cameron Azari** Speaker, "Perspectives from Class Action Claims Administrators: Email Notices and Response Rates." CLE International's 8th Annual Class Actions Conference, Los Angeles, CA, May 17-18, 2012.

➢ **Cameron Azari** Speaker, "Class Action Litigation Trends: A Look into New Cases, Theories of Liability & Updates on the Cases to Watch." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 26-27, 2012.

➢ **Lauran Schultz** Speaker, "Legal Notice Best Practices: Building a Workable Settlement Structure." CLE International's 7th Annual Class Action Conference, San Francisco, CA, May 2011.

➢ **Cameron Azari** Speaker, "Data Breaches Involving Consumer Financial Information: Litigation Exposures and Settlement Considerations." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 2011.

➢ **Cameron Azari** Speaker, "Notice in Consumer Class Actions: Adequacy, Efficiency and Best Practices." CLE International's 5th Annual Class Action Conference: Prosecuting and Defending Complex Litigation, San Francisco, CA, 2009.

➢ **Lauran Schultz** Speaker, "Efficiency and Adequacy Considerations in Class Action Media Notice Programs." Chicago Bar Association, Chicago, IL, 2009.

➢ **Cameron Azari** Author, "Clearing the Five Hurdles of Email - Delivery of Class Action Legal Notices." *Thomson Reuters Class Action Litigation Reporter*, June 2008.

➢ **Cameron Azari** Speaker, "Planning for a Smooth Settlement." ACI: Class Action Defense – Complex Settlement Administration for the Class Action Litigator, Phoenix, AZ, 2007.

➢ **Cameron Azari** Speaker, "Structuring a Litigation Settlement." CLE International's 3rd Annual Conference on Class Actions, Los Angeles, CA, 2007.

➢ **Cameron Azari** Speaker, "Noticing and Response Rates in Class Action Settlements" – Class Action Bar Gathering, Vancouver, British Columbia, 2007.

➢ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Skadden Arps Slate Meagher & Flom, LLP, New York, NY, 2006.

➢ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Bridgeport Continuing Legal Education, Class Action and the UCL, San Diego, CA, 2006.

➢ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Stoel Rives litigation group, Portland, OR / Seattle, WA / Boise, ID / Salt Lake City, UT, 2005.

➢ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Stroock & Stroock & Lavan Litigation Group, Los Angeles, CA, 2005.

➢ **Cameron Azari** Author, "Twice the Notice or No Settlement." Current Developments – Issue II, August 2003.

➢ **Cameron Azari** Speaker, "A Scientific Approach to Legal Notice Communication" – Weil Gotshal litigation group, New York, NY, 2003.



## JUDICIAL COMMENTS

**Judge Anne-Christine Massullo,** *Morris v. Provident Credit Union* (June 23, 2021) CGC-19-581616, Sup. Ct. Cal. Cty. of San Fran.:

> The Notice approved by this Court was distributed to the Classes in substantial compliance with this Court's Order Certifying Classes for Settlement Purposes and Granting Preliminary Approval of Class Settlement ("Preliminary Approval Order"), and the Agreement.  The Notice met the requirements of due process and California Rules of Court, rules 3.766 and 3.769(f).  The notice to the Classes was adequate.

**Judge Esther Salas,** *Sager, et al. v. Volkswagen Group of America, Inc., et al.* (June 22, 2021) 18-cv-13556 (D.N.J.):

> The Court further finds and concludes that Class Notice was properly and timely disseminated to the Settlement Class in accordance with the Class Notice Plan set forth in the Settlement Agreement and the Preliminary Approval Order (Dkt. No. 69). The Class Notice Plan and its implementation in this case fully satisfy Rule 23, the requirements of due process and constitute the best notice practicable under the circumstances.

**Judge Josephine L. Staton,** *In re: Hyundai and Kia Engine Litigation and Flaherty v. Hyundai Motor Company, Inc., et al.* (June 10, 2021) 8:17-CV-00838 & 18-cv-02223 (C.D. Cal.):

> The Class Notice was disseminated in accordance with the procedures required by the Court's Orders … in accordance with applicable law, and satisfied the requirements of Rule 23(e) and due process and constituted the best notice practicable for the reasons discussed in the Preliminary Approval Order and Final Approval Order.

**Judge Harvey Schlesinger,** *In re: Disposable Contact Lens Antitrust Litigation* (ABB Concise Optical Group, LLC) (May 31, 2021) 3:15-md-02626 (M.D. Fla.):

> The Court finds that the dissemination of the Notice: (a) was implemented in accordance with the Preliminary Approval Order; (b) constitutes the best notice practicable under the circumstances; (c) constitutes notice that was reasonably calculated, under the circumstances, to apprise the Settlement Class of (i) the pendency of the Action; (ii) the effect of the Settlement Agreement (including the Releases to be provided thereunder); (iii) Class Counsel's possible motion for an award of attorneys' fees and reimbursement of expenses; (iv) the right to object to any aspect of the Settlement Agreement, the Plan of Distribution, and/or Class Counsel's motion for attorneys' fees and reimbursement of expenses; (v) the right to opt out of the Settlement Class; (vi) the right to appear at the Fairness Hearing; and (vii) the fact that Plaintiffs may receive incentive awards; (d) constitutes due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the Settlement Agreement; and (e) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and the United States Constitution (including the Due Process Clause).

**Judge Haywood S. Gilliam, Jr.** *Richards, et al. v. Chime Financial, Inc.* (May 24, 2021) 4:19-cv-06864 (N.D. Cal.):

> The Court finds that the notice and notice plan previously approved by the Court was implemented and complies with Rule 23(c)(2)(B)… The Court ordered that the third-party settlement administrator send class notice via email based on a class list Defendant provided… Epiq Class Action & Claims Solutions, Inc., the third-party settlement administrator, represents that class notice was provided as directed… Epiq received a total of 527,505 records for potential Class Members, including their email addresses…. If the receiving email server could not deliver the message, a "bounce code" was returned to Epiq indicating that the message was undeliverable…. Epiq made two additional attempts to deliver the email notice… As of Mach 1, 2021, a total of 495,006 email notices were delivered, and 32,499 remained undeliverable… In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the Class Members.

**Judge Henry Edward Autrey,** *Pearlstone v. Wal-Mart Stores, Inc.* (Apr. 22, 2021) 4:17-cv-02856 (C.D. Cal.):

> The Court finds that adequate notice was given to all Settlement Class Members pursuant to the terms of the Parties' Settlement Agreement and the Preliminary Approval Order. The Court has further determined that the Notice Plan fully and accurately informed Settlement Class Members of all material elements of the Settlement, constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule 23(c)(2) and 23(e)(1), applicable law, and the Due Process Clause of the United States Constitution.



**Judge Lucy H. Koh,** *Grace v. Apple, Inc.* (Mar. 31, 2021) 17-CV-00551 (N.D. Cal.):

> *Federal Rule of Civil Procedure 23(c)(2)(B) requires that the settling parties provide class members with "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." The Court finds that the Notice Plan, which was direct notice sent to 99.8% of the Settlement Class via email and U.S. Mail, has been implemented in compliance with this Court's Order (ECF No. 426) and complies with Rule 23(c)(2)(B).*

**Judge Gary A. Fenner,** *In re: Pre-Filled Propane Tank Antitrust Litigation* (Mar. 30, 2021) MDL No. 2567, 14-2567 (W.D. Mo.):

> *Based upon the Declaration of Cameron Azari, on behalf of Epiq, the Administrator appointed by the Court, the Court finds that the Notice Program has been properly implemented. That Declaration shows that there have been no requests for exclusion from the Settlement, and no objections to the Settlement. Finally, the Declaration reflects that AmeriGas has given appropriate notice of this settlement to the Attorney General of the United States and the appropriate State officials under the Class Action Fairness Act, 28 U.S.C. § 1715, and no objections have been received from any of them.*

**Judge Richard Seeborg,** *Bautista v. Valero Marketing and Supply Company* (Mar. 17, 2021) 3:15-cv-05557 (N.D. Cal.):

> *The Notice given to the Settlement Class in accordance with the Notice Order was the best notice practicable under the circumstances of these proceedings and of the matters set forth therein, including the proposed Settlement set forth in the Settlement Agreement, to all Persons entitled to such notice, and said notice fully satisfied the requirements of Fed. R. Civ. P. 23 and due process.*

**Judge James D. Peterson,** *Fox, et al. v. Iowa Health System d.b.a. UnityPoint Health* (Mar. 4, 2021) 18-cv-327 (W.D. Wis.):

> *The approved Notice plan provided for direct mail notice to all class members at their last known address according to UnityPoint's records, as updated by the administrator through the U.S. Postal Service. For postcards returned undeliverable, the administrator tried to find updated addresses for those class members. The administrator maintained the Settlement website and made Spanish versions of the Long Form Notice and Claim Form available upon request. The administrator also maintained a toll-free telephone line which provides class members detailed information about the settlement and allows individuals to request a claim form be mailed to them.*

> *The Court finds that this Notice (i) constituted the best notice practicable under the circumstances; (ii) was reasonably calculated, under the circumstances, to apprise Settlement Class members of the Settlement, the effect of the Settlement (including the release therein), and their right to object to the terms of the settlement and appear at the Final Approval Hearing; (iii) constituted due and sufficient notice of the Settlement to all reasonably identifiable persons entitled to receive such notice; (iv) satisfied the requirements of due process, Federal Rule of Civil Procedure 23(e)(1) and the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and all applicable laws and rules.*

**Judge Larry A. Burns,** *Trujillo, et al. v. Ametek, Inc., et al.* (Mar. 3, 2021) 3:15-cv-01394 (S.D. Cal.):

> *The Class has received the best practicable notice under the circumstances of this case. The Parties' selection and retention of Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the Claims Administrator was reasonable and appropriate. Based on the Declaration of Cameron Azari of Epiq, the Court finds that the Settlement Notices were published to the Class Members in the form and manner approved by the Court in its Preliminary Approval Order. See Dkt. 181-6. The Settlement Notices provided fair, effective, and the best practicable notice to the Class of the Settlement's terms. The Settlement Notices informed the Class of Plaintiffs' intent to seek attorneys' fees, costs, and incentive payments, set forth the date, time, and place of the Fairness Hearing, and explained Class Members' rights to object to the Settlement or Fee Motion and to appear at the Fairness Hearing… The Settlement Notices fully satisfied all notice requirements under the law, including the Federal Rules of Civil Procedure, the requirements of the California Legal Remedies Act, Cal. Civ. Code § 1781, and all due process rights under the U.S. Constitution and California Constitutions.*



**Judge Sherri A. Lydon,** *Fitzhenry v. Independent Home Products, LLC* (Mar. 2, 2021) 2:19-cv-02993 (D.S.C.):

> *Notice was provided to Class Members in compliance with Section VI of the Settlement Agreement, due process, and Rule 23 of the Federal Rules of Civil Procedure. The notice: (i) fully and accurately informed Settlement Class Members about the lawsuit and settlement; (ii) provided sufficient information so that Settlement Class Members could decide whether to accept the benefits offered, opt-out and pursue their own remedies, or object to the settlement; (iii) provided procedures for Class Members to file written objections to the proposed settlement, to appear at the hearing, and to state objections to the proposed settlement; and (iv) provided the time, date, and place of the final fairness hearing.*

**Judge James V. Selna,** *Alvarez v. Sirius XM Radio Inc.* (Feb. 9, 2021) 2:18-cv-8605 (C.D. Cal.):

> *The Court finds that the dissemination of the Notices attached as Exhibits to the Settlement Agreement: (a) was implemented in accordance with the Notice Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of (i) the pendency of the Action; (ii) their right to submit a claim (where applicable) by submitting a Claim Form; (iii) their right to exclude themselves from the Settlement Class; (iv) the effect of the proposed Settlement (including the Releases to be provided thereunder); (v) Named Plaintiffs' application for the payment of Service Awards; (vi) Class Counsel's motion for an award an attorneys' fees and expenses; (vii) their right to object to any aspect of the Settlement, and/or Class Counsel's motion for attorneys' fees and expenses (including a Service Award to the Named Plaintiffs and Mr. Wright); and (viii) their right to appear at the Final Approval Hearing; (d) constituted due, adequate, and sufficient notice to all Persons entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Constitution of the United States (including the Due Process Clause), and all other applicable laws and rules.*

**Judge Jon S .Tigar,** *Elder v. Hilton Worldwide Holdings, Inc.* (Feb. 4, 2021) 16-cv-00278 (N.D. Cal.):

> *"Epiq implemented the notice plan precisely as set out in the Settlement Agreement and as ordered by the Court." ECF No. 162 at 9-10. Epiq sent initial notice by email to 8,777 Class Members and by U.S. Mail to the remaining 1,244 Class members. Id. at 10. The Notice informed Class Members about all aspects of the Settlement, the date and time of the fairness hearing, and the process for objections. ECF No. 155 at 28-37. Epiq then mailed notice to the 2,696 Class Members whose emails were returned as undeliverable. Id. "Of the 10,021 Class Members identified from Defendants' records, Epiq was unable to deliver the notice to only 35 Class Members. Accordingly, the reach of the notice is 99.65%." Id. (citation omitted). Epiq also created and maintained a settlement website and a toll-free hotline that Class Members could call if they had questions about the settlement. Id.*

> *The Court finds that the parties have complied with the Court's preliminary approval order and, because the notice plan complied with Rule 23, have provided adequate notice to class members.*

**Judge Michael W. Jones,** *Wallace, et al, v. Monier Lifetile LLC, et al.* (Jan. 15, 2021) SCV-16410 (Sup. Ct. Cal.):

> *The Court also finds that the Class Notice and notice process were implemented in accordance with the Preliminary Approval Order, providing the best practicable notice under the circumstances.*

**Judge Kristi K. DuBose,** *Drazen v. GoDaddy.com, LLC* and *Bennett v. GoDaddy.com, LLC* (Dec. 23, 2020) 1:19-cv-00563 (S.D. Ala.):

> *The Court finds that the Notice and the claims procedures actually implemented satisfy due process, meet the requirements of Rule 23(e)(1), and the Notice constitutes the best notice practicable under the circumstances.*

**Judge Haywood S. Gilliam, Jr.,** *Izor v. Abacus Data Systems, Inc.* (Dec. 21, 2020) 19-cv-01057 (N.D. Cal.):

> *The Court finds that the notice plan previously approved by the Court was implemented and that the notice thus satisfied Rule 23(c)(2)(B). [T]he Court finds that the parties have sufficiently provided the best practicable notice to the class members.*



**Judge Christopher C. Conner,** *AI's Discount Plumbing, et al. v. Viega, LLC* (Dec. 18, 2020) 19-cv-00159 (M.D. Pa.):

> The Court finds that the notice and notice plan previously approved by the Court was implemented and complies with Fed. R. Civ. P. 23(c)(2)(B) and due process. Specifically, the Court ordered that the third-party Settlement Administrator, Epiq, send class notice via email, U.S. mail, by publication in two recognized industry magazines, Plumber and PHC News, in both their print and online digital forms, and to implement a digital media campaign. (ECF 99). Epiq represents that class notice was provided as directed. See Declaration of Cameron R. Azari, ¶¶ 12-15 (ECF 104-13).

**Judge Naomi Reice Buchwald,** *In re: Libor-Based Financial Instruments Antitrust Litigation* (Dec. 16, 2020) MDL No. 2262 1:11-md-2262 (S.D.N.Y.):

> Upon review of the record, the Court hereby finds that the forms and methods of notifying the members of the Settlement Classes and their terms and conditions have met the requirements of the United States Constitution (including the Due Process Clause), Rule 23 of the Federal Rules of Civil Procedure, and all other applicable law and rules; constituted the best notice practicable under the circumstances; and constituted due and sufficient notice to all members of the Settlement Classes of these proceedings and the matters set forth herein, including the Settlements, the Plan of Allocation and the Fairness Hearing. Therefore, the Class Notice is finally approved.

**Judge Larry A. Burns,** *Cox, et al. Ametek, Inc., et al.* (Dec 15, 2020) 3:17-cv-00597 (S.D. Cal.):

> The Class has received the best practicable notice under the circumstances of this case. The Parties' selection and retention of Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the Claims Administrator was reasonable and appropriate. Based on the Declaration of Cameron Azari of Epiq, the Court finds that the Settlement Notices were published to the Class Members in the form and manner approved by the Court in its Preliminary Approval Order. See Dkt. 129-6. The Settlement Notices provided fair, effective, and the best practicable notice to the Class of the Settlement's terms. The Settlement Notices informed the Class of Plaintiffs' intent to seek attorneys' fees, costs, and incentive payments, set forth the date, time, and place of the Fairness Hearing, and explained Class Members' rights to object to the Settlement or Fee Motion and to appear at the Fairness Hearing… The Settlement Notices fully satisfied all notice requirements under the law, including the Federal Rules of Civil Procedure, the requirements of the California Legal Remedies Act, Cal. Civ. Code § 1781, and all due process rights under the U.S. Constitution and California Constitutions.

**Judge Timothy J. Sullivan,** *Robinson v. Nationstar Mortgage LLC* (Dec. 11, 2020) 8:14-cv-03667 (D. Md.):

> The Class Notice provided to the Settlement Class conforms with the requirements of Fed. Rule Civ. Proc. 23, the United States Constitution, and any other applicable law, and constitutes the best notice practicable under the circumstances, by providing individual notice to all Settlement Class Members who could be identified through reasonable effort, and by providing due and adequate notice of the proceedings and of the matters set forth therein to the other Settlement Class Members. The Class Notice fully satisfied the requirements of Due Process.

**Judge Yvonne Gonzalez Rogers,** *In re: Lithium Ion Batteries Antitrust Litigation* (Dec. 10, 2020) 4:13-md-02420, MDL No. 2420 (N.D. Cal.):

> The proposed notice plan was undertaken and carried out pursuant to this Court's preliminary approval order prior to remand, and a second notice campaign thereafter. (See Dkt. No. 2571.) The class received direct and indirect notice through several methods – email notice, mailed notice upon request, an informative settlement website, a telephone support line, and a vigorous online campaign. Digital banner advertisements were targeted specifically to settlement class members, including on Google and Yahoo's ad networks, as well as Facebook and Instagram, with over 396 million impressions delivered. Sponsored search listings were employed on Google, Yahoo and Bing, resulting in 216,477 results, with 1,845 clicks through to the settlement website. An informational released was distributed to 495 media contacts in the consumer electronics industry. The case website has continued to be maintained as a channel for communications with class members. Between February 11, 2020 and April 23, 2020, there were 207,205 unique visitors to the website. In the same period, the toll-free telephone number available to class members received 515 calls.



**Judge Katherine A. Bacal, *Garvin v. San Diego Unified Port District*** (Nov. 20, 2020) 37-2020-00015064 (Sup. Ct. Cal.):

> Notice was provided to Class Members in compliance with the Settlement Agreement, California Code of Civil Procedure §382 and California Rules of Court 3.766 and 3.769, the California and United States Constitutions, and any other applicable law, and constitutes the best notice practicable under the circumstances, by providing notice to all individual Class Members who could be identified through reasonable effort, and by providing due and adequate notice of the proceedings and of the matters set forth therein to the other Class Members. The Notice fully satisfied the requirements of due process.

**Judge Catherine D. Perry, *Pirozzi, et al. v. Massage Envy Franchising, LLC*** (Nov. 13, 2020) 4:19-cv-807 (E.D. Mo.):

> The COURT hereby finds that the CLASS NOTICE given to the CLASS: (i) fairly and accurately described the ACTION and the proposed SETTLEMENT; (ii) provided sufficient information so that the CLASS MEMBERS were able to decide whether to accept the benefits offered by the SETTLEMENT, exclude themselves from the SETTLEMENT, or object to the SETTLEMENT; (iii) adequately described the time and manner by which CLASS MEMBERS could submit a CLAIM under the SETTLEMENT, exclude themselves from the SETTLEMENT and/or appear at the FINAL APPROVAL HEARING; and (iv) provided the date, time, and place of the FINAL APPROVAL HEARING. The COURT hereby finds that the CLASS NOTICE was the best notice practicable under the circumstances, constituted a reasonable manner of notice to all class members who would be bound by the SETTLEMENT, and complied fully with Federal Rule of Civil Procedure Rule 23, due process, and all other applicable laws.

**Judge Robert E. Payne, *Skochin, et al. v. Genworth Life Insurance Company, et al.*** (Nov. 12, 2020) 3:19-cv-00049 (E.D. Vir.):

> For the reasons set forth in the Court's Memorandum Opinion addressing objections to the Settlement Agreement, . . . the plan to disseminate the Class Notice and Publication Notice, which the Court previously approved, has been implemented and satisfied the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process.

**Judge Jeff Carpenter, *Eastwood Construction LLC, et al. v. City of Monroe*** (Oct. 27, 2020) 18-cvs-2692 and ***The Estate of Donald Alan Plyler Sr., et al. v. City of Monroe*** (Oct. 27, 2020) 19-cvs-1825 (Sup. Ct. N.C.):

> Therefore, the Court GRANTS the Final Approval Motion, CERTIFIES the class as defined below for settlement purposes only, APPROVES the Settlement, and GRANTS the Fee Motion…
> The Settlement Agreement and the Settlement Notice are found to be fair, reasonable, adequate, and in the best interests of the Settlement Class, and are hereby approved pursuant to North Carolina Rule of Civil Procedure 23. The Parties are hereby authorized and directed to comply with and to consummate the Settlement Agreement in accordance with the terms and provisions set forth in the Settlement Agreement, and the Clerk of the Court is directed to enter and docket this Order and Final Judgement in the Actions.

**Judge M. James Lorenz, *Walters, et al. v. Target Corp.*** (Oct. 26, 2020) 3:16-cv-1678 (S.D. Cal.):

> The Court has determined that the Class Notices given to Settlement Class members fully and accurately informed Settlement Class members of all material elements of the proposed Settlement and constituted valid, due, and sufficient notice to Settlement Class members consistent with all applicable requirements. The Court further finds that the Notice Program satisfies due process and has been fully implemented.

**Judge Maren E. Nelson, *Harris, et al. v. Farmers Insurance Exchange and Mid Century Insurance Company*** (Oct. 26, 2020) BC 579498 (Sup. Ct Cal.):

> Distribution of Notice directed to the Settlement Class Members as set forth in the Settlement has been completed in conformity with the Preliminary Approval Order, including individual notice to all Settlement Class members who could be identified through reasonable effort, and the best notice practicable under the circumstances. The Notice, which reached 99.9% of all Settlement Class Members, provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed Settlement, to all persons entitled to Notice, and the Notice and its distribution fully satisfied the requirements of due process.



**Judge Vera M. Scanlon,** *Lashambae v. Capital One Bank, N.A.* (Oct. 21, 2020) 1:17-cv-06406 (E.D.N.Y.):

> *The Class Notice, as amended, contained all of the necessary elements, including the class definition, the identifies of the named Parties and their counsel, a summary of the terms of the proposed Settlement, information regarding the manner in which objections may be submitted, information regarding the opt-out procedures and deadlines, and the date and location of the Final Approval Hearing. Notice was successfully delivered to approximately 98.7% of the Settlement Class and only 78 individual Settlement Class Members did not receive notice by email or first class mail.*

> *Having reviewed the content of the Class Notice, as amended, and the manner in which the Class Notice was disseminated, this Court finds that the Class Notice, as amended, satisfied the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and all other applicable law and rules. The Class Notice, as amended, provided to the Settlement Class in accordance with the Preliminary Approval Order was the best notice practicable under the circumstances and provided this Court with jurisdiction over the absent Settlement Class Members. See Fed. R. Civ. P. 23(c)(2)(B).*

**Chancellor Walter L. Evans,** *K.B., by and through her natural parent, Jennifer Qassis, and Lillian Knox-Bender v. Methodist Healthcare - Memphis Hospitals* (Oct. 14, 2020) CH-13-04871-1 (30th Jud. Dist. Tenn.):

> *Based upon the filings and the record as a whole, the Court finds and determines that dissemination of the Class Notice as set forth herein complies with Tenn. R. Civ. P. 23.03(3) and 23.05 and (i) constitutes the best practicable notice under the circumstances, (ii) was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of Class Settlement, their rights to object to the proposed Settlement, (iii) was reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice, (iv) meets all applicable requirements of Due Process; (v) and properly provides notice of the attorney's fees that Class Counsel shall seek in this action. As a result, the Court finds that Class Members were properly notified of their rights, received full Due Process . . . .*

**Judge Sara L. Ellis,** *Nelson v. Roadrunner Transportation Systems, Inc.* (Sept. 15, 2020) 1:18-cv-07400 (N.D. Ill.):

> *Notice of the Final Approval Hearing, the proposed motion for attorneys' fees, costs, and expenses, and the proposed Service Award payment to Plaintiff have been provided to Settlement Class Members as directed by this Court's Orders,*

> *The Court finds that such Notice as therein ordered, constitutes the best possible notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Settlement Class Members in compliance with the requirements of Federal Rule of Civil Procedure 23(c)(2)(B).*

**Judge George H. Wu,** *Lusnak v. Bank of America, N.A.* (Aug. 10, 2020) CV 14-1855 (C.D. Cal.):

> *The Court finds that the Notice program for disseminating notice to the Settlement Class, provided for in the Settlement Agreement and previously approved and directed by the Court, has been implemented by the Settlement Administrator and the Parties. The Court finds that such Notice program, including the approved forms of notice: (a) constituted the best notice that is practicable under the circumstances; (b) included direct individual notice to all Settlement Class Members who could be identified through reasonable effort; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the nature of the Lawsuit, the definition of the Settlement Class certified, the class claims and issues, the opportunity to enter an appearance through an attorney if the member so desires; the opportunity, the time, and manner for requesting exclusion from the Settlement Class, and the binding effect of a class judgment; (d) constituted due, adequate and sufficient notice to all persons entitled to notice; and (e) met all applicable requirements of Federal Rule of Civil Procedure 23, due process under the U.S. Constitution, and any other applicable law.*

**Judge James Lawrence King,** *Dasher v. RBC Bank (USA) predecessor in interest to PNC Bank, N.A.* (Aug. 10, 2020) 1:10-cv-22190 (S.D. Fla.) as part of *In re: Checking Account Overdraft Litigation* MDL No. 2036 (S.D. Fla.):

> *The Court finds that the members of the Settlement Class were provided with the best practicable notice; the notice was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Shutts, 472 U.S. at 812 (quoting Mullane, 339 U.S. at 314-15). This Settlement was widely publicized, and any member of the Settlement Class who wished to express comments or objections had ample opportunity and means to do so.*



**Judge Jeffrey S. Ross,** *Lehman v. Transbay Joint Powers Authority, et al.* (Aug. 7, 2020) CGC-16-553758 (Sup. Ct. Cal.):

> The Notice approved by this Court was distributed to the Settlement Class Members in compliance with this Court's Order Granting Preliminary Approval of Class Action Settlement, dated May 8, 2020. The Notice provided to the Settlement Class Members met the requirements of due process and constituted the best notice practicable in the circumstances. Based on evidence and other material submitted in conjunction with the final approval hearing, notice to the class was adequate.

**Judge Jean Hoefer Toal,** *Cook, et al. v. South Carolina Public Service Authority, et al.* (July 31, 2020) 2019-CP-23-6675 (Ct. of Com. Pleas. 13th Jud. Cir. S.C.):

> Notice was sent to more than 1.65 million Class members, published in newspapers whose collective circulation covers the entirety of the State, and supplemented with internet banner ads totaling approximately 12.3 million impressions. The notices directed Class members to the settlement website and toll-free line for additional inquiries and further information. After this extensive notice campaign, only 78 individuals (0.0047%) have opted-out, and only nine (0.00054%) have objected. The Court finds this response to be overwhelmingly favorable.

**Judge Peter J. Messitte,** *Jackson, et al. v. Viking Group, Inc., et al.* (July 28, 2020) 8:18-cv-02356 (D. Md.):

> [T]he Court finds, that the Notice Plan has been implemented in the manner approved by the Court in its Preliminary Approval Order as amended. The Court finds that the Notice Plan: (i) constitutes the best notice practicable to the Settlement Class under the circumstances; (ii) was reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of this Lawsuit and the terms of the Settlement, their right to exclude themselves from the Settlement, or to object to any part of the Settlement, their right to appear at the Final Approval Hearing (either on their own or through counsel hired at their own expense), and the binding effect of the Final Approval Order and the Final Judgment, whether favorable or unfavorable, on all Persons who do not exclude themselves from the Settlement Class, (iii) due, adequate, and sufficient notice to all Persons entitled to receive notice; and (iv) notice that fully satisfies the requirements of the United States Constitution (including the Due Process Clause), Fed. R. Civ. P. 23, and any other applicable law.

**Judge Michael P. Shea,** *Grayson, et al. v. General Electric Company* (July 27, 2020) 3:13-cv-01799 (D. Conn.):

> Pursuant to the Preliminary Approval Order, the Settlement Notice was mailed, emailed and disseminated by the other means described in the Settlement Agreement to the Class Members. This Court finds that this notice procedure was (i) the best practicable notice; (ii) reasonably calculated, under the circumstances, to apprise the Class Members of the pendency of the Civil Action and of their right to object to or exclude themselves from the proposed Settlement; and (iii) reasonable and constitutes due, adequate, and sufficient notice to all entities and persons entitled to receive notice.

**Judge Gerald J. Pappert,** *Rose v. The Travelers Home and Marine Insurance Company, et al.* (July 20, 2020) 19-cv-00977 (E.D. Pa.):

> The Class Notice . . . has been given to the Settlement Class in the manner approved by the Court in its Preliminary Approval Order. Such Class Notice (i) constituted the best notice practicable to the Settlement Class under the circumstances; (ii) was reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency and nature of this Action, the definition of the Settlement Class, the terms of the Settlement Agreement, the rights of the Settlement Class to exclude themselves from the settlement or to object to any part of the settlement, the rights of the Settlement Class to appear at the Final Approval Hearing (either on their own or through counsel hired at their own expense), and the binding effect of the Settlement Agreement on all persons who do not exclude themselves from the Settlement Class, (iii) provided due, adequate, and sufficient notice to the Settlement Class; and (iv) fully satisfied all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the due process requirements of the United States Constitution.

**Judge Christina A. Snyder,** *Waldrup v. Countrywide Financial Corporation, et al.* (July 16, 2020) 2:13-cv-08833 (C.D. Cal.):

> The Court finds that mailed and publication notice previously given to Class Members in the Action was the best notice practicable under the circumstances, and satisfies the requirements of due process and FED. R. CIV. P. 23. The Court further finds that, because (a) adequate notice has been provided to all Class Members



*and (b) all Class Members have been given the opportunity to object to, and/or request exclusion from, the Settlement, it has jurisdiction over all Class Members. The Court further finds that all requirements of statute (including but not limited to 28 U.S.C. § 1715), rule, and state and federal constitutions necessary to effectuate this Settlement have been met and satisfied.*

**Judge James Donato, *Coffeng, et al. v. Volkswagen Group of America, Inc.*** (June 10, 2020) 17-cv-01825 (N.D. Cal.):

*The Court finds that, as demonstrated by the Declaration and Supplemental Declaration of Cameron Azari, and counsel's submissions, Notice to the Settlement Class was timely and properly effectuated in accordance with FED. R. CIV. P. 23(e) and the approved Notice Plan set forth in the Court's Preliminary Approval Order. The Court finds that said Notice constitutes the best notice practicable under the circumstances, and satisfies all requirements of Rule 23(e) and due process.*

**Judge Michael W. Fitzgerald*, Behfarin v. Pruco Life Insurance Company, et al.*** (June 3, 2020) 17-cv-05290 (C.D. Cal.):

*The Court finds that the requirements of Rule 23 of the Federal Rule of Civil Procedure and other laws and rules applicable to final settlement approval of class actions have been satisfied . . . .*

*This Court finds that the Claims Administrator caused notice to be disseminated to the Class in accordance with the plan to disseminate Notice outlined in the Settlement Agreement and the Preliminary Approval Order, and that Notice was given in an adequate and sufficient manner and complies with Due Process and Fed. R. Civ. P. 23.*

**Judge Nancy J. Rosenstengel, *First Impressions Salon, Inc., et al. v. National Milk Producers Federation, et al.*** (Apr. 27, 2020) 3:13-cv-00454 (S.D. Ill.):

*The Court finds that the Notice given to the Class Members was completed as approved by this Court and complied in all respects with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process. The settlement Notice Plan was modeled on and supplements the previous court-approved plan and, having been completed, constitutes the best notice practicable under the circumstances. In making this determination, the Court finds that the Notice provided Class members due and adequate notice of the Settlement, the Settlement Agreement, the Plan of Distribution, these proceedings, and the rights of Class members to opt-out of the Class and/or object to Final Approval of the Settlement, as well as Plaintiffs' Motion requesting attorney fees, costs, and Class Representative service awards.*

**Judge Harvey Schlesinger, *In re: Disposable Contact Lens Antitrust Litigation* (CooperVision, Inc.)** (Mar. 4, 2020) 3:15-md-02626 (M.D. Fla.):

*The Court finds that the dissemination of the Notice: (a) was implemented in accordance with the Preliminary Approval Orders; (b) constitutes the best notice practicable under the circumstances; (c) constitutes notice that was reasonably calculated, under the circumstances, to apprise the Settlement Classes of (i) the pendency of the Action; (ii) the effect of the Settlement Agreements (including the Releases to the provided thereunder); (iii) Class Counsel's possible motion for an award of attorneys' fees and reimbursement of expenses; (iv) the right to object to any aspect of the Settlement Agreements, the Plan of Distribution, and/or Class Counsel's motion for attorneys' fees and reimbursement of expenses; (v) the right to opt out of the Settlement Classes; (vi) the right to appear at the Fairness Hearing; and (vii) the fact that Plaintiffs may receive incentive awards; (d) constitutes due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the Settlement Agreement and (e) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and the United States Constitution (including the Due Process Clause).*

**Judge Amos L. Mazzant, *Stone, et al. v. Porcelana Corona De Mexico, S.A. DE C.V f/k/a Sanitarios Lamosa S.A. DE C.V. a/k/a Vortens*** (Mar. 3, 2020) 4:17-cv-00001 (E.D. Tex.):

*The Court has reviewed the Notice Plan and its implementation and efficacy, and finds that it constituted the best notice practicable under the circumstances and was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action and their right to object to the proposed settlement in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution and Rules 23(c) and (e) of the Federal Rules of Civil Procedure.*

*In addition, Class Notice clearly and concisely stated in plain, easily understood language: (i) the nature of the action; (ii) the definition of the certified Equitable Relief Settlement Class; (iii) the claims and issues of the*



*Equitable Relief Settlement Class; (iv) that a Settlement Class Member may enter an appearance through an attorney if the member so desires; (v) the binding effect of a class judgment on members under Fed. R. Civ. P. 23(c)(3).*

**Judge Michael H. Simon,** *In re: Premera Blue Cross Customer Data Security Breach Litigation* (Mar. 2, 2020) 3:15-md-2633 (D. Ore.):

*The Court confirms that the form and content of the Summary Notice, Long Form Notice, Publication Notice, and Claim Form, and the procedure set forth in the Settlement for providing notice of the Settlement to the Class, were in full compliance with the notice requirements of Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e), fully, fairly, accurately, and adequately advised members of the Class of their rights under the Settlement, provided the best notice practicable under the circumstances, fully satisfied the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure, and afforded Class Members with adequate time and opportunity to file objections to the Settlement and attorney's fee motion, submit Requests for Exclusion, and submit Claim Forms to the Settlement Administrator.*

**Judge Maxine M. Chesney,** *McKinney-Drobnis, et al. v. Massage Envy Franchising* (Mar. 2, 2020) 3:16-cv-6450 (N.D. Cal.):

*The COURT hereby finds that the individual direct CLASS NOTICE given to the CLASS via email or First Class U.S. Mail (i) fairly and accurately described the ACTION and the proposed SETTLEMENT; (ii) provided sufficient information so that the CLASS MEMBERS were able to decide whether to accept the benefits offered by the SETTLEMENT, exclude themselves from the SETTLEMENT, or object to the SETTLEMENT; (iii) adequately described the manner in which CLASS MEMBERS could submit a VOUCHER REQUEST under the SETTLEMENT, exclude themselves from the SETTLEMENT, or object to the SETTLEMENT and/or appear at the FINAL APPROVAL HEARING; and (iv) provided the date, time, and place of the FINAL APPROVAL HEARING. The COURT hereby finds that the CLASS NOTICE was the best notice practicable under the circumstances and complied fully with Federal Rule of Civil Procedure Rule 23, due process, and all other applicable laws.*

**Judge Harry D. Leinenweber,** *Albrecht v. Oasis Power, LLC d/b/a Oasis Energy* (Feb. 6, 2020) 1:18-cv-1061 (N.D. Ill.):

*The Court finds that the distribution of the Class Notice, as provided for in the Settlement Agreement, (i) constituted the best practicable notice under the circumstances to Settlement Class Members, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of, among other things, the pendency of the Action, the nature and terms of the proposed Settlement, their right to object or to exclude themselves from the proposed Settlement, and their right to appear at the Final Approval Hearing, (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice, and (iv) complied fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law.*

*The Court finds that the Class Notice and methodology set forth in the Settlement Agreement, the Preliminary Approval Order, and this Final Approval Order (i) constitute the most effective and practicable notice of the Final Approval Order, the relief available to Settlement Class Members pursuant to the Final Approval Order, and applicable time periods; (ii) constitute due, adequate, and sufficient notice for all other purposes to all Settlement Class Members; and (iii) comply fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable laws.*

**Judge Robert Scola, Jr.,** *Wilson, et al. v. Volkswagen Group of America, Inc., et al.* (Jan. 28, 2020) 17-cv-23033 (S.D. Fla.):

*The Court finds that the Class Notice, in the form approved by the Court, was properly disseminated to the Settlement Class pursuant to the Notice Plan and constituted the best practicable notice under the circumstances. The forms and methods of the Notice Plan approved by the Court met all applicable requirements of the Federal Rules of Civil Procedure, the United States Code, the United States Constitution (including the Due Process Clause), and any other applicable law.*

**Judge Michael Davis,** *Garcia v. Target Corporation* (Jan. 27, 2020) 16-cv-02574 (D. Minn.):

*The Court finds that the Notice Plan set forth in Section 4 of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to the Settlement Class of the pendency of this case, certification of the Settlement Class for settlement purposes only, the terms of the Settlement Agreement, and the Final*



*Approval Hearing, and satisfies the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law.*

**Judge Bruce Howe Hendricks,** *In re: TD Bank, N.A. Debit Card Overdraft Fee Litigation* (Jan. 9, 2020) MDL No. 2613, 6:15-MN-02613 (D.S.C.):

*The Classes have been notified of the settlement pursuant to the plan approved by the Court. After having reviewed the Declaration of Cameron R. Azari (ECF No. 220-1) and the Supplemental Declaration of Cameron R. Azari (ECF No. 225-1), the Court hereby finds that notice was accomplished in accordance with the Court's directives. The Court further finds that the notice program constituted the best practicable notice to the Settlement Classes under the circumstances and fully satisfies the requirements of due process and Federal Rule 23.*

**Judge Margo K. Brodie,** *In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* (Dec. 13, 2019) MDL No. 1720, 05-md-1720 (E.D.N.Y.):

*The notice and exclusion procedures provided to the Rule 23(b)(3) Settlement Class, including but not limited to the methods of identifying and notifying members of the Rule 23(b)(3) Settlement Class, were fair, adequate, and sufficient, constituted the best practicable notice under the circumstances, and were reasonably calculated to apprise members of the Rule 23(b)(3) Settlement Class of the Action, the terms of the Superseding Settlement Agreement, and their objection rights, and to apprise members of the Rule 23(b)(3) Settlement Class of their exclusion rights, and fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, any other applicable laws or rules of the Court, and due process.*

**Judge Steven Logan,** *Knapper v. Cox Communications, Inc.* (Dec. 13, 2019) 2:17-cv-00913 (D. Ariz.):

*The Court finds that the form and method for notifying the class members of the settlement and its terms and conditions was in conformity with this Court's Preliminary Approval Order (Doc. 120). The Court further finds that the notice satisfied due process principles and the requirements of Federal Rule of Civil Procedure 23(c), and the Plaintiff chose the best practicable notice under the circumstances. The Court further finds that the notice was clearly designed to advise the class members of their rights.*

**Judge Manish Shah,** *Prather v. Wells Fargo Bank, N.A.* (Dec. 10, 2019) 1:17-cv-00481 (N.D. Ill.):

*The Court finds that the Notice Plan set forth in Section VIII of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to the Settlement Class of the pendency of this case, certification of the Settlement Class for settlement purposes only, the terms of the Settlement Agreement, and the Final Approval Hearing, and satisfies the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law.*

**Judge Liam O'Grady,** *Liggio v. Apple Federal Credit Union* (Dec. 6, 2019) 1:18-cv-01059 (E.D. Vir.):

*The Court finds that the manner and form of notice (the "Notice Plan") as provided for in the this Court's July 2, 2019 Order granting preliminary approval of class settlement, and as set forth in the Parties' Settlement Agreement was provided to Settlement Class Members by the Settlement Administrator. . . The Notice Plan was reasonably calculated to give actual notice to Settlement Class Members of the right to receive benefits from the Settlement, and to be excluded from or object to the Settlement. The Notice Plan met the requirements of Rule 23(c)(2)(B) and due process and constituted the best notice practicable under the circumstances.*

**Judge Brian McDonald,** *Armon, et al. v. Washington State University* (Nov. 8, 2019) 17-2-23244-1 (consolidated with 17-2-25052-0) (Sup. Ct. Wash.):

*The Court finds that the Notice Program, as set forth in the Settlement and effectuated pursuant to the Preliminary Approval Order, satisfied CR 23(c)(2), was the best Notice practicable under the circumstances, was reasonably calculated to provide-and did provide-due and sufficient Notice to the Settlement Class of the pendency of the Litigation; certification of the Settlement Class for settlement purposes only; the existence and terms of the Settlement; the identity of Class Counsel and appropriate information about Class Counsel's then-forthcoming application for attorneys' fees and incentive awards to the Class Representatives; appropriate information about how to participate in the Settlement; Settlement Class Members' right to exclude themselves; their right to object to the Settlement and to appear at the Final Approval Hearing, through counsel if they desired; and appropriate*



*instructions as to how to obtain additional information regarding this Litigation and the Settlement. In addition, pursuant to CR 23(c)(2)(B), the Notice properly informed Settlement Class Members that any Settlement Class Member who failed to opt-out would be prohibited from bringing a lawsuit against Defendant based on or related to any of the claims asserted by Plaintiffs, and it satisfied the other requirements of the Civil Rules.*

**Judge Andrew J. Guilford,** ***In re: Wells Fargo Collateral Protection Insurance Litigation*** (Nov. 4, 2019) 8:17-ml-02797 (C.D. Cal.):

*Epiq Class Action & Claims Solutions, Inc. ("Epiq"), the parties' settlement administrator, was able to deliver the court-approved notice materials to all class members, including 2,254,411 notice packets and 1,019,408 summary notices.*

**Judge Paul L. Maloney,** ***Burch v. Whirlpool Corporation*** (Oct. 16, 2019) 1:17-cv-00018 (W.D. Mich.):

*[T]he Court hereby finds and concludes that members of the Settlement Class have been provided the best notice practicable of the Settlement and that such notice satisfies all requirements of federal and applicable state laws and due process.*

**Judge Gene E.K. Pratter,** ***Tashica Fulton-Green, et al. v. Accolade, Inc.*** (Sept. 24, 2019) 2:18-cv-00274 (E.D. Pa.):

*The Court finds that such Notice as therein ordered, constitutes the best possible notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Settlement Class Members in compliance with the requirements of Federal Rule of Civil Procedure 23(c)(2)(B).*

**Judge Edwin Torres,** ***Burrow, et al. v. Forjas Taurus S.A., et al.*** (Sept. 6, 2019) 1:16-cv-21606 (S.D. Fla.):

*Because the Parties complied with the agreed-to notice provisions as preliminarily approved by this Court, and given that there are no developments or changes in the facts to alter the Court's previous conclusion, the Court finds that the notice provided in this case satisfied the requirements of due process and of Rule 23(c)(2)(B).*

**Judge Amos L. Mazzant,** ***Fessler v. Porcelana Corona De Mexico, S.A. DE C.V f/k/a Sanitarios Lamosa S.A. DE C.V. a/k/a Vortens*** (Aug. 30, 2019) 4:19-cv-00248 (E.D. Tex.):

*The Court has reviewed the Notice Plan and its implementation and efficacy, and finds that it constituted the best notice practicable under the circumstances and was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action and their right to object to the proposed settlement or opt out of the Settlement Class in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution and Rules 23(c) and (e) of the Federal Rules of Civil Procedure.*

*In addition, Class Notice clearly and concisely stated in plain, easily understood language: (i) the nature of the action; (ii) the definition of the certified 2011 Settlement Class; (iii) the claims and issues of the 2011 Settlement Class; (iv) that a Settlement Class Member may enter an appearance through an attorney if the member so desires; (v) that the Court will exclude from the Settlement Class any member who requests exclusions; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Fed. R. Civ. P. 23(c)(3).*

**Judge Karon Owen Bowdre,** ***In re: Community Health Systems, Inc. Customer Data Security Breach Litigation*** (Aug. 22, 2019) MDL No. 2595, 2:15-cv-222 (N.D. Ala.):

*The court finds that the Notice Program: (1) satisfied the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process; (2) was the best practicable notice under the circumstances; (3) reasonably apprised Settlement Class members of the pendency of the Action and their right to object to the settlement or opt-out of the Settlement Class; and (4) was reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notice. Approximately 90% of the 6,081,189 individuals identified as Settlement Class members received the Initial Postcard Notice of this Settlement Action.*

*The court further finds, pursuant to Fed. R. Civ. P. 23(c)(2)(B), that the Class Notice adequately informed Settlement Class members of their rights with respect to this action.*



**Judge Christina A. Snyder,** *Zaklit, et al. v. Nationstar Mortgage LLC, et al.* (Aug. 21, 2019) 5:15-cv-02190 (C.D. Cal.):

*The Class Notice provided to the Settlement Class conforms with the requirements of Fed. Rule Civ. Proc. 23, the California and United States Constitutions, and any other applicable law, and constitutes the best notice practicable under the circumstances, by providing individual notice to all Settlement Class Members who could be identified through reasonable effort, and by providing due and adequate notice of the proceedings and of the matters set forth therein to the other Settlement Class Members. The notice fully satisfied the requirements of Due Process. No Settlement Class Members have objected to the terms of the Settlement.*

**Judge Brian M. Cogan,** *Luib v. Henkel Consumer Goods Inc.* (Aug. 19, 2019) 1:17-cv-03021 (E.D.N.Y.):

*The Court finds that the Notice Plan, set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order: (i) was the best notice practicable under the circumstances; (ii) was reasonably calculated to provide, and did provide, due and sufficient notice to the Settlement Class regarding the existence and nature of the Action, certification of the Settlement Class for settlement purposes only, the existence and terms of the Settlement Agreement, and the rights of Settlement Class members to exclude themselves from the Settlement Agreement, to object and appear at the Final Approval Hearing, and to receive benefits under the Settlement Agreement; and (iii) satisfied the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and all other applicable law.*

**Judge Yvonne Gonzalez Rogers,** *In re: Lithium Ion Batteries Antitrust Litigation* (Aug. 16, 2019) 4:13-md-02420 MDL No. 2420 (N.D. Cal.):

*The proposed notice plan was undertaken and carried out pursuant to this Court's preliminary approval order. [T]he notice program reached approximately 87 percent of adults who purchased portable computers, power tools, camcorders, or replacement batteries, and these class members were notified an average of 3.5 times each. As a result of Plaintiffs' notice efforts, in total, 1,025,449 class members have submitted claims. That includes 51,961 new claims, and 973,488 claims filed under the prior settlements.*

**Judge Jon Tigar,** *McKnight, et al. v. Uber Technologies, Inc., et al.* (Aug. 13, 2019) 3:14-cv-05615 (N.D. Cal.):

*The settlement administrator, Epiq Systems, Inc., carried out the notice procedures as outlined in the preliminary approval. ECF No. 162 at 17-18. Notices were mailed to over 22 million class members with a success rate of over 90%. Id. at 17. Epiq also created a website, banner ads, and a toll free number. Id. at 17-18. Epiq estimates that it reached through mail and other formats 94.3% of class members. ECF No. 164 ¶ 28.  In light of these actions, and the Court's prior order granting preliminary approval, the Court finds that the parties have provided adequate notice to class members.*

**Judge Gary W.B. Chang,** *Robinson v. First Hawaiian Bank* (Aug. 8, 2019) 17-1-0167-01 (Cir. Ct. of First Cir. Haw.):

*This Court determines that the Notice Program satisfies all of the due process requirements for a class action settlement.*

**Judge Karin Crump,** *Hyder, et al. v. Consumers County Mutual Insurance Company* (July 30, 2019) D-1-GN-16-000596 (D. Ct. of Travis County Tex.):

*Due and adequate Notice of the pendency of this Action and of this Settlement has been provided to members of the Settlement Class, and this Court hereby finds that the Notice Plan described in the Preliminary Approval Order and completed by Defendant complied fully with the requirements of due process, the Texas Rules of Civil Procedure, and the requirements of due process under the Texas and United States Constitutions, and any other applicable laws.*

**Judge Wendy Bettlestone,** *Underwood v. Kohl's Department Stores, Inc., et al.* (July 24, 2019) 2:15-cv-00730 (E.D. Pa.):

*The Notice, the contents of which were previously approved by the Court, was disseminated in accordance with the procedures required by the Court's Preliminary Approval Order in accordance with applicable law.*



**Judge Andrew G. Ceresia, J.S.C.,** *Denier, et al. v. Taconic Biosciences, Inc.* (July 15, 2019) 00255851 (Sup Ct. N.Y.):

> *The Court finds that such Notice as therein ordered, constitutes the best possible notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Settlement Class Members in compliance with the requirements of the CPLR.*

**Judge Vince G. Chhabria,** *Parsons v. Kimpton Hotel & Restaurant Group, LLC* (July 11, 2019) 3:16-cv-05387 (N.D. Cal.):

> *Pursuant to the Preliminary Approval Order, the notice documents were sent to Settlement Class Members by email or by first-class mail, and further notice was achieved via publication in People magazine, internet banner notices, and internet sponsored search listings. The Court finds that the manner and form of notice (the "Notice Program") set forth in the Settlement Agreement was provided to Settlement Class Members. The Court finds that the Notice Program, as implemented, was the best practicable under the circumstances. The Notice Program was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, class certification, the terms of the Settlement, and their rights to opt-out of the Settlement Class and object to the Settlement, Class Counsel's fee request, and the request for Service Award for Plaintiff. The Notice and Notice Program constituted sufficient notice to all persons entitled to notice. The Notice and Notice Program satisfy all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.*

**Judge Daniel J. Buckley,** *Adlouni v. UCLA Health Systems Auxiliary, et al.* (June 28, 2019) BC589243 (Sup. Ct. Cal.):

> *The Court finds that the notice to the Settlement Class pursuant to the Preliminary Approval Order was appropriate, adequate, and sufficient, and constituted the best notice practicable under the circumstances to all Persons within the definition of the Settlement Class to apprise interested parties of the pendency of the Action, the nature of the claims, the definition of the Settlement Class, and the opportunity to exclude themselves from the Settlement Class or present objections to the settlement. The notice fully complied with the requirements of due process and all applicable statutes and laws and with the California Rules of Court.*

**Judge John C. Hayes III,** *Lightsey, et al. v. South Carolina Electric & Gas Company, a Wholly Owned Subsidiary of SCANA, et al.* (June 11, 2019) 2017-CP-25-335 (Ct. of Com. Pleas., S.C.):

> *These multiple efforts at notification far exceed the due process requirement that the class representative provide the best practical notice. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140 (1974); Hospitality Mgmt. Assoc., Inc. v. Shell Oil, Inc., 356 S.C. 644, 591 S.E.2d 611 (2004). Following this extensive notice campaign reaching over 1.6 million potential class member accounts, Class counsel have received just two objections to the settlement and only 24 opt outs.*

**Judge Stephen K. Bushong,** *Scharfstein v. BP West Coast Products, LLC* (June 4, 2019) 1112-17046 (Ore. Cir., County of Multnomah):

> *The Court finds that the Notice Plan was effected in accordance with the Preliminary Approval and Notice Order, dated March 26, 2019, was made pursuant to ORCP 32 D, and fully met the requirements of the Oregon Rules of Civil Procedure, due process, the United States Constitution, the Oregon Constitution, and any other applicable law.*

**Judge Cynthia Bashant,** *Lloyd, et al. v. Navy Federal Credit Union* (May 28, 2019) 17-cv-1280 (S.D. Cal.):

> *This Court previously reviewed, and conditionally approved Plaintiffs' class notices subject to certain amendments. The Court affirms once more that notice was adequate.*

**Judge Robert W. Gettleman,** *Cowen v. Lenny & Larry's Inc.* (May 2, 2019) 1:17-cv-01530 (N.D. Ill.):

> *Notice to the Settlement Class and other potentially interested parties has been provided in accordance with the elements specified by the Court in the preliminary approval order. Adequate notice of the amended settlement and the final approval hearing has also been given. Such notice informed the Settlement Class members of all material elements of the proposed Settlement and of their opportunity to object or comment thereon or to exclude themselves from the Settlement; provided Settlement Class Members adequate instructions and a means to obtain additional information; was adequate notice under the circumstances; was valid, due, and sufficient notice to all Settlement Class [M]embers; and complied fully with the laws of the State of Illinois, Federal Rules of Civil Procedure, the United States Constitution, due process, and other applicable law.*



**Judge Edward J. Davila,** *In re: HP Printer Firmware Update Litigation* (Apr. 25, 2019) 5:16-cv-05820 (N.D. Cal.):

> Due and adequate notice has been given of the Settlement as required by the Preliminary Approval Order. The Court finds that notice of this Settlement was given to Class Members in accordance with the Preliminary Approval Order and constituted the best notice practicable of the proceedings and matters set forth therein, including the Settlement, to all Persons entitled to such notice, and that this notice satisfied the requirements of Federal Rule of Civil Procedure 23 and of due process.

**Judge Claudia Wilken,** *Naiman v. Total Merchant Services, Inc., et al.* (Apr. 16, 2019) 4:17-cv-03806 (N.D. Cal.):

> The Court also finds that the notice program satisfied the requirements of Federal Rule of Civil Procedure 23 and due process. The notice approved by the Court and disseminated by Epiq constituted the best practicable method for informing the class about the Final Settlement Agreement and relevant aspects of the litigation.

**Judge Paul Gardephe,** *37 Besen Parkway, LLC v. John Hancock Life Insurance Company (U.S.A.)* (Mar. 31, 2019) 15-cv-9924 (S.D.N.Y.):

> The Notice given to Class Members complied in all respects with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process and provided due and adequate notice to the Class.

**Judge Alison J. Nathan,** *Pantelyat, et al. v. Bank of America, N.A., et al.* (Jan. 31, 2019) 16-cv-08964 (S.D.N.Y.):

> The Class Notice provided to the Settlement Class in accordance with the Preliminary Approval Order was the best notice practicable under the circumstances, and constituted due and sufficient notice of the proceedings and matters set forth therein, to all persons entitled to notice. The notice fully satisfied the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and all other applicable law and rules.

**Judge Kenneth M. Hoyt,** *Al's Pals Pet Card, LLC, et al. v. Woodforest National Bank, N.A., et al.* (Jan. 30, 2019) 4:17-cv-3852 (S.D. Tex.):

> [T]he Court finds that the class has been notified of the Settlement pursuant to the plan approved by the Court. The Court further finds that the notice program constituted the best practicable notice to the class under the circumstances and fully satisfies the requirements of due process, including Fed. R. Civ. P. 23(e)(1) and 28 U.S.C. § 1715.

**Judge Robert M. Dow, Jr.,** *In re: Dealer Management Systems Antitrust Litigation* (Jan. 23, 2019) MDL No. 2817, 18-cv-00864 (N.D. Ill.):

> The Court finds that the Settlement Administrator fully complied with the Preliminary Approval Order and that the form and manner of providing notice to the Dealership Class of the proposed Settlement with Reynolds was the best notice practicable under the circumstances, including individual notice to all members of the Dealership Class who could be identified through the exercise of reasonable effort. The Court further finds that the notice program provided due and adequate notice of these proceedings and of the matters set forth therein, including the terms of the Agreement, to all parties entitled to such notice and fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1715(b), and constitutional due process.

**Judge Federico A. Moreno,** *In re: Takata Airbag Products Liability Litigation* (Ford) (Dec. 20, 2018) MDL No. 2599 (S.D. Fla.):

> The record shows and the Court finds that the Class Notice has been given to the Class in the manner approved by the Court in its Preliminary Approval Order. The Court finds that such Class Notice: .(i) is reasonable and constitutes the best practicable notice to Class Members under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and the terms of the Settlement Agreement, their right to exclude themselves from the Class or to object to all or any part of the Settlement Agreement, their right to appear at the Fairness Hearing (either on their own or through counsel hired at their own expense) and the binding effect of the orders and Final Order and Final Judgment in the Action, whether favorable or unfavorable, on all persons and entities who or which do not exclude themselves from the Class; (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) fully satisfied the requirements of the United States



*Constitution (including the Due Process Clause), FED. R. Civ. P. 23 and any other applicable law as well as complying with the Federal Judicial Center's illustrative class action notices.*

**Judge Herndon,** *Hale v. State Farm Mutual Automobile Insurance Company, et al.* (Dec. 16, 2018) 3:12-cv-00660 (S.D. Ill.):

*The Class here is estimated to include approximately 4.7 million members. Approximately 1.43 million of them received individual postcard or email notice of the terms of the proposed Settlement, and the rest were notified via a robust publication program "estimated to reach 78.8% of all U.S. Adults Aged 35+ approximately 2.4 times." Doc. 966-2 ¶¶ 26, 41. The Court previously approved the notice plan (Doc. 947), and now, having carefully reviewed the declaration of the Notice Administrator (Doc. 966-2), concludes that it was fully and properly executed, and reflected "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." See Fed. R. Civ. P. 23(c)(2)(B). The Court further concludes that CAFA notice was properly effectuated to the attorneys general and insurance commissioners of all 50 states and District of Columbia.*

**Judge Jesse M. Furman,** *Alaska Electrical Pension Fund, et al. v. Bank of America, N.A., et al.* (Nov. 13, 2018) 14-cv-7126 (S.D.N.Y.):

*The mailing and distribution of the Notice to all members of the Settlement Class who could be identified through reasonable effort, the publication of the Summary Notice, and the other Notice efforts described in the Motion for Final Approval, as provided for in the Court's June 26, 2018 Preliminary Approval Order, satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, constitute the best notice practicable under the circumstances, and constitute due and sufficient notice to all Persons entitled to notice.*

**Judge William L. Campbell, Jr.,** *Ajose, et al. v. Interline Brands, Inc.* (Oct. 23, 2018) 3:14-cv-01707 (M.D. Tenn.):

*The Court finds that the Notice Plan, as approved by the Preliminary Approval Order: (i) satisfied the requirements of Rule 23(c)(3) and due process; (ii) was reasonable and the best practicable notice under the circumstances; (iii) reasonably apprised the Settlement Class of the pendency of the action, the terms of the Agreement, their right to object to the proposed settlement or opt out of the Settlement Class, the right to appear at the Final Fairness Hearing, and the Claims Process; and (iv) was reasonable and constituted due, adequate, and sufficient notice to all those entitled to receive notice.*

**Judge Joseph C. Spero,** *Abante Rooter and Plumbing v. Pivotal Payments Inc., d/b/a/ Capital Processing Network and CPN* (Oct. 15, 2018) 3:16-cv-05486 (N.D. Cal.):

*[T]the Court finds that notice to the class of the settlement complied with Rule 23(c)(3) and (e) and due process. Rule 23(e)(1) states that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement, voluntary dismissal, or compromise. Class members are entitled to the "best notice that is practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. Fed. R. Civ. P. 23(c)(2)(B)…The notice program included notice sent by first class mail to 1,750,564 class members and reached approximately 95.2% of the class.*

**Judge Marcia G. Cooke,** *Dipuglia v. US Coachways, Inc.* (*Sept. 28, 2018*) 1:17-cv-23006 (S.D. Fla.):

*The Settlement Class Notice Program was the best notice practicable under the circumstances. The Notice Program provided due and adequate notice of the Case 1:17-cv-23006-MGC Document 66 Entered on FLSD Docket 09/28/2018 Page 3 of 7 4 proceedings and of the matters set forth therein, including the proposed settlement set forth in the Agreement, to all persons entitled to such notice and said notice fully satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, which include the requirement of due process.*

**Judge Beth Labson Freeman,** *Gergetz v. Telenav, Inc.* (Sept. 27, 2018) 5:16-cv-04261 (N.D. Cal.):

*The Court finds that the Notice and Notice Plan implemented pursuant to the Settlement Agreement, which consists of individual notice sent via first-class U.S. Mail postcard, notice provided via email, and the posting of relevant Settlement documents on the Settlement Website, has been successfully implemented and was the best notice practicable under the circumstances and: (1) constituted notice that was reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action, their right to object to or to exclude themselves from the Settlement Agreement, and their right to appear at the Final Approval Hearing; (2) was reasonable and constituted due, adequate, and sufficient notice to all persons*



*entitled to receive notice; and (3) met all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause, and the Rules of this Court.*

**Judge M. James Lorenz,** *Farrell v. Bank of America, N.A.* (Aug. 31, 2018) 3:16-cv-00492 (S.D. Cal.):

*The Court therefore finds that the Class Notices given to Settlement Class members adequately informed Settlement Class members of all material elements of the proposed Settlement and constituted valid, due, and sufficient notice to Settlement Class members. The Court further finds that the Notice Program satisfies due process and has been fully implemented.*

**Judge Dean D. Pregerson,** *Falco, et al. v. Nissan North America, Inc., et al.* (July 16, 2018) 2:13-cv-00686 (C.D. Cal.):

*Notice to the Settlement Class as required by Rule 23(e) of the Federal Rules of Civil Procedure has been provided in accordance with the Court's Preliminary Approval Order, and such Notice by first-class mail was given in an adequate and sufficient manner, and constitutes the best notice practicable under the circumstances, and satisfies all requirements of Rule 23(e) and due process.*

**Judge Lynn Adelman,** *In re: Windsor Wood Clad Window Product Liability Litigation* (July 16, 2018) MDL No. 2688, 16-md-02688 (E.D. Wis.):

*The Court finds that the Notice Program was appropriately administered, and was the best practicable notice to the Class under the circumstances, satisfying the requirements of Rule 23 and due process. The Notice Program, constitutes due, adequate, and sufficient notice to all persons, entities, and/or organizations entitled to receive notice; fully satisfied the requirements of the Constitution of the United States (including the Due Process Clause), Rule 23 of the Federal Rules of Civil Procedure, and any other applicable law; and is based on the Federal Judicial Center's illustrative class action notices.*

**Judge Stephen K. Bushong,** *Surrett, et al. v. Western Culinary Institute, et al.* (June 18, 2018) 0803-03530 (Ore. Cir. County of Multnomah):

*This Court finds that the distribution of the Notice of Settlement was effected in accordance with the Preliminary Approval/Notice Order, dated February 9, 2018, was made pursuant to ORCP 32 D, and fully met the requirements of the Oregon Rules of Civil Procedure, due process, the United States Constitution, the Oregon Constitution, and any other applicable law.*

**Judge Jesse M. Furman,** *Alaska Electrical Pension Fund, et al. v. Bank of America, N.A., et al.* (June 1, 2018) 14-cv-7126 (S.D.N.Y.):

*The mailing of the Notice to all members of the Settlement Class who could be identified through reasonable effort, the publication of the Summary Notice, and the other Notice distribution efforts described in the Motion for Final Approval, as provided for in the Court's October 24, 2017 Order Providing for Notice to the Settlement Class and Preliminarily Approving the Plan of Distribution, satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, constitute the best notice practicable under the circumstances, and constitute due and sufficient notice to all Persons entitled to notice.*

**Judge Brad Seligman,** *Larson v. John Hancock Life Insurance Company (U.S.A.)* (May 8, 2018) RG16813803 (Sup. Ct. Cal.):

*The Court finds that the Class Notice and dissemination of the Class Notice as carried out by the Settlement Administrator complied with the Court's order granting preliminary approval and all applicable requirements of law, including, but not limited to California Rules of Court, rule 3.769(f) and the Constitutional requirements of due process, and constituted the best notice practicable under the circumstances and sufficient notice to all persons entitled to notice of the Settlement.*

*[T]he dissemination of the Class Notice constituted the best notice practicable because it included mailing individual notice to all Settlement Class Members who are reasonably identifiable using the same method used to inform class members of certification of the class, following a National Change of Address search and run through the LexisNexis Deceased Database.*



**Judge Federico A. Moreno,** ***Masson v. Tallahassee Dodge Chrysler Jeep, LLC*** (May 8, 2018) 17-cv-22967 (S.D. Fla.):

> *The Settlement Class Notice Program was the best notice practicable under the circumstances. The Notice Program provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed settlement set forth in the Agreement, to all persons entitled to such notice and said notice fully satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, which include the requirement of due process.*

**Chancellor Russell T. Perkins,** ***Morton v. GreenBank*** (Apr. 18, 2018) 11-135-IV (20th Jud. Dist. Tenn.):

> *The Notice Program as provided or in the Agreement and the Preliminary Amended Approval Order constituted the best notice practicable under the circumstances, including individual notice to all Settlement Class members who could be identified through reasonable effort. The Notice Plan fully satisfied the requirements of Tennessee Rule of Civil Procedure 23.03, due process and any other applicable law.*

**Judge James V. Selna,** ***Callaway v. Mercedes-Benz USA, LLC*** (Mar. 8, 2018) 8:14-cv-02011 (C.D. Cal.):

> *The Court finds that the notice given to the Class was the best notice practicable under the circumstances of this case, and that the notice complied with the requirements of Federal Rule of Civil Procedure 23 and due process.*

> *The notice given by the Class Administrator constituted due and sufficient notice to the Settlement Class, and adequately informed members of the Settlement Class of their right to exclude themselves from the Settlement Class so as not to be bound by the terms of the Settlement Agreement and how to object to the Settlement.*

> *The Court has considered and rejected the objection . . . [regarding] the adequacy of the notice plan. The notice given provided ample information regarding the case. Class members also had the ability to seek additional information from the settlement website, from Class Counsel or from the Class Administrator*

**Judge Thomas M. Durkin,** ***Vergara, et al., v. Uber Technologies, Inc.*** (Mar. 1, 2018) 1:15-cv-06972 (N.D. Ill.):

> *The Court finds that the Notice Plan set forth in Section IX of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to the Settlement Classes of the pendency of this case, certification of the Settlement Classes for settlement purposes only, the terms of the Settlement Agreement, and the Final Approval Hearing, and satisfies the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law. Further, the Court finds that Defendant has timely satisfied the notice requirements of 28 U.S.C. Section 1715.*

**Judge Federico A. Moreno,** ***In re: Takata Airbag Products Liability Litigation*** **(Honda & Nissan)** (Feb. 28, 2018) MDL No. 2599 (S.D. Fla.):

> *The Court finds that the Class Notice has been given to the Class in the manner approved by the Court in its Preliminary Approval Order. The Court finds that such Class Notice: (i) is reasonable and constitutes the best practicable notice to Class Members under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and the terms of the Settlement Agreement, their right to exclude themselves from the Class or to object to all or any part of the Settlement Agreement, their right to appear at the Fairness Hearing (either on their own or through counsel hired at their own expense) and the binding effect of the orders and Final Order and Final Judgment in the Action, whether favorable or unfavorable, on all persons and entities who or which do not exclude themselves from the Class; (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) fully satisfied the requirements of the United States Constitution (including the Due Process Clause), FED R. CIV. R. 23 and any other applicable law as well as complying with the Federal Judicial Center's illustrative class action notices.*

**Judge Susan O. Hickey,** ***Larey v. Allstate Property and Casualty Insurance Company*** (Feb. 9, 2018) 4:14-cv-04008 (W.D. Kan.):

> *Based on the Court's review of the evidence submitted and argument of counsel, the Court finds and concludes that the Class Notice and Claim Form was mailed to potential Class Members in accordance with the provisions of the Preliminary Approval Order, and together with the Publication Notice, the automated toll-free telephone number, and the settlement website: (i) constituted, under the circumstances, the most effective and practicable notice of the pendency of the Lawsuit, this Stipulation, and the Final Approval*



*Hearing to all Class Members who could be identified through reasonable effort; and (ii) met all requirements of the Federal Rules of Civil Procedure, the requirements of due process under the United States Constitution, and the requirements of any other applicable rules or law.*

**Judge Muriel D. Hughes,** *Glaske v. Independent Bank Corporation* (Jan. 11, 2018) 13-009983 (Cir. Ct. Mich.):

*The Court-approved Notice Plan satisfied due process requirements . . . The notice, among other things, was calculated to reach Settlement Class Members because it was sent to their last known email or mail address in the Bank's files.*

**Judge Naomi Reice Buchwald,** *Orlander v. Staples, Inc.* (Dec. 13, 2017) 13-CV-0703 (S.D.N.Y.):

*The Notice of Class Action Settlement ("Notice") was given to all Class Members who could be identified with reasonable effort in accordance with the terms of the Settlement Agreement and Preliminary Approval Order. The form and method of notifying the Class of the pendency of the Action as a class action and the terms and conditions of the proposed Settlement met the requirements of Federal Rule of Civil Procedure 23 and the Constitution of the United States (including the Due Process Clause); and any other applicable law, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.*

**Judge Lisa Godbey Wood,** *T.A.N. v. PNI Digital Media, Inc.* (Dec. 1, 2017) 2:16-cv-132 (S.D. Ga.):

*Notice to the Settlement Class Members required by Rule 23 has been provided as directed by this Court in the Preliminary Approval Order, and such notice constituted the best notice practicable, including, but not limited to, the forms of notice and methods of identifying and providing notice to the Settlement Class Members, and satisfied the requirements of Rule 23 and due process, and all other applicable laws.*

**Judge Robin L. Rosenberg,** *Gottlieb v. Citgo Petroleum Corporation* (Nov. 29, 2017) 9:16-cv-81911 (S.D. Fla):

*The Settlement Class Notice Program was the best notice practicable under the circumstances. The Notice Program provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed settlement set forth in the Settlement Agreement, to all persons entitled to such notice and said notice fully satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, which include the requirement of due process.*

**Judge Donald M. Middlebrooks,** *Mahoney v. TT of Pine Ridge, Inc.* (Nov. 20, 2017) 9:17-cv-80029 (S.D. Fla.):

*Based on the Settlement Agreement, Order Granting Preliminary Approval of Class Action Settlement Agreement, and upon the Declaration of Cameron Azari, Esq. (DE 61-1), the Court finds that Class Notice provided to the Settlement Class was the best notice practicable under the circumstances, and that it satisfied the requirements of due process and Federal Rule of Civil Procedure 23(e)(1).*

**Judge Gerald Austin McHugh,** *Sobiech v. U.S. Gas & Electric, Inc., i/t/d/b/a Pennsylvania Gas & Electric, et al.* (Nov. 8, 2017) 2:14-cv-04464 (E.D. Pa.):

*Notice has been provided to the Settlement Class of the pendency of this Action, the conditional certification of the Settlement Class for purposes of this Settlement, and the preliminary approval of the Settlement Agreement and the Settlement contemplated thereby. The Court finds that the notice provided was the best notice practicable under the circumstances to all persons entitled to such notice and fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process.*

**Judge Federico A. Moreno,** *In re: Takata Airbag Products Liability Litigation* (BMW, Mazda, Toyota, & Subaru) (Nov. 1, 2017) MDL No. 2599 (S.D. Fla.):

*[T]he Court finds that the Class Notice has been given to the Class in the manner approved in the Preliminary Approval Order. The Class Notice: (i) is reasonable and constitutes the best practicable notice to Class Members under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and of the terms of the Settlement Agreement, their right to exclude themselves from the Class or to object to all or any part of the Settlement Agreement, their right to appear at the Fairness Hearing (either on their own or through counsel hired at their own expense), and the binding effect of the orders and Final Order and Final Judgment in the Action, whether*



*favorable or unfavorable, on all persons and entities who or which do not exclude themselves from the Class; (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) fully satisfied the requirements of the United States Constitution (including the Due Process Clause), Federal Rule of Civil Procedure 23 and any other applicable law as well as complying with the Federal Judicial Center's illustrative class action notices.*

**Judge Charles R. Breyer,** *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation* (May 17, 2017) MDL No. 2672 (N.D. Cal.):

*The Court is satisfied that the Notice Program was reasonably calculated to notify Class Members of the proposed Settlement. The Notice "apprise[d] interested parties of the pendency of the action and afford[ed] them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Indeed, the Notice Administrator reports that the notice delivery rate of 97.04% "exceed[ed] the expected range and is indicative of the extensive address updating and re-mailing protocols used." (Dkt. No. 3188-2 ¶ 24.)*

**Judge Rebecca Brett Nightingale,** *Ratzlaff, et al. v. BOKF, NA d/b/a Bank of Oklahoma, et al.* (May 15, 2017) CJ-2015-00859 (Dist. Ct. Okla.):

*The Court-approved Notice Plan satisfies Oklahoma law because it is "reasonable" (12 O.S. § 2023(E)(I)) and it satisfies due process requirements because it was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Shutts, 472 U.S. at 812 (quoting Mullane, 339 U.S. at 314-15).*

**Judge Joseph F. Bataillon,** *Klug v. Watts Regulator Company* (Apr. 13, 2017) No. 8:15-cv-00061 (D. Neb.):

*The court finds that the notice to the Settlement Class of the pendency of the Class Action and of this settlement, as provided by the Settlement Agreement and by the Preliminary Approval Order dated December 7, 2017, constituted the best notice practicable under the circumstances to all persons and entities within the definition of the Settlement Class, and fully complied with the requirements of Federal Rules of Civil Procedure Rule 23 and due process. Due and sufficient proof of the execution of the Notice Plan as outlined in the Preliminary Approval Order has been filed.*

**Judge Yvonne Gonzalez Rogers,** *Bias v. Wells Fargo & Company, et al.* (Apr. 13, 2017) 4:12-cv-00664 (N.D. Cal.):

*The form, content, and method of dissemination of Notice of Settlement given to the Settlement Class was adequate and reasonable and constituted the best notice practicable under the circumstances, including both individual notice to all Settlement Class Members who could be identified through reasonable effort and publication notice.*

*Notice of Settlement, as given, complied with the requirements of Rule 23 of the Federal Rules of Civil Procedure, satisfied the requirements of due process, and constituted due and sufficient notice of the matters set forth herein.*

*Notice of the Settlement was provided to the appropriate regulators pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(c)(1).*

**Judge Carlos Murguia,** *Whitton v. Deffenbaugh Industries, Inc., et al.* (Dec. 14, 2016) 2:12-cv-02247 and *Gary, LLC v. Deffenbaugh Industries, Inc., et al.* 2:13-cv-02634 (D. Kan.):

*The Court determines that the Notice Plan as implemented was reasonably calculated to provide the best notice practicable under the circumstances and contained all required information for members of the proposed Settlement Class to act to protect their interests. The Court also finds that Class Members were provided an adequate period of time to receive Notice and respond accordingly.*

**Judge Yvette Kane,** *In re: Shop-Vac Marketing and Sales Practices Litigation* (Dec. 9, 2016) MDL No. 2380 (M.D. Pa.):

*The Court hereby finds and concludes that members of the Settlement Class have been provided the best notice practicable of the Settlement and that such notice satisfies all requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and all other applicable laws.*



**Judge Timothy D. Fox,** *Miner v. Philip Morris USA, Inc.* (Nov. 21, 2016) 60CV03-4661 (Ark. Cir. Ct.):

> The Court finds that the Settlement Notice provided to potential members of the Class constituted the best and most practicable notice under the circumstances, thereby complying fully with due process and Rule 23 of the Arkansas Rules of Civil Procedure.

**Judge Eileen Bransten,** *In re: HSBC Bank USA, N.A.,* **as part of** *In re: Checking Account Overdraft Litigation* (Oct. 13, 2016) 650562/2011 (Sup. Ct. N.Y.):

> This Court finds that the Notice Program and the Notice provided to Settlement Class members fully satisfied the requirements of constitutional due process, the N.Y. C.P.L.R., and any other applicable laws, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all persons entitled thereto.

**Judge Jerome B. Simandle,** *In re: Caterpillar, Inc. C13 and C15 Engine Products Liability Litigation* (Sept. 20, 2016) MDL No. 2540 (D.N.J.):

> The Court hereby finds that the Notice provided to the Settlement Class constituted the best notice practicable under the circumstances. Said Notice provided due and adequate notice of these proceedings and the matters set forth herein, including the terms of the Settlement Agreement, to all persons entitled to such notice, and said notice fully satisfied the requirements of Fed. R. Civ. P. 23, requirements of due process and any other applicable law.

**Judge Marcia G. Cooke,** *Chimeno-Buzzi v. Hollister Co. and Abercrombie & Fitch Co.* (Apr. 11, 2016) 14-23120 (S.D. Fla.):

> Pursuant to the Court's Preliminary Approval Order, the Settlement Administrator, Epiq Systems, Inc. [Hilsoft Notifications], has complied with the approved notice process as confirmed in its Declaration filed with the Court on March 23, 2016.  The Court finds that the notice process was designed to advise Class Members of their rights.  The form and method for notifying Class Members of the settlement and its terms and conditions was in conformity with this Court's Preliminary Approval Order, constituted the best notice practicable under the circumstances, and satisfied the requirements of Federal Rule of Civil Procedure 23(c)(2)(B), the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, and due process under the United States Constitution and other applicable laws.

**Judge Yvonne Gonzalez Rogers,** *In re: Lithium Ion Batteries Antitrust Litigation* (Mar. 22, 2016) 4:13-md-02420 MDL No. 2420 (N.D. Cal.):

> From what I could tell, I liked your approach and the way you did it. I get a lot of these notices that I think are all legalese and no one can really understand them. Yours was not that way.

**Judge Christopher S. Sontchi,** *In re: Energy Future Holdings Corp, et al.* (July 30, 2015) 14-10979 (Bankr. D. Del.):

> Notice of the Asbestos Bar Date as set forth in this Asbestos Bar Date Order and in the manner set forth herein constitutes adequate and sufficient notice of the Asbestos Bar Date and satisfies the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

**Judge David C. Norton,** *In re: MI Windows and Doors Inc. Products Liability Litigation* (July 22, 2015) MDL No. 2333, 2:12-mn-00001 (D.S.C.):

> The court finds that the Notice Plan, as described in the Settlement and related declarations, has been faithfully carried out and constituted the best practicable notice to Class Members under the circumstances of this Action, and was reasonable and constituted due, adequate, and sufficient notice to all Persons entitled to be provided with Notice.

> The court also finds that the Notice Plan was reasonably calculated, under the circumstances, to apprise Class Members of: (1) the pendency of this class action; (2) their right to exclude themselves from the Settlement Class and the proposed Settlement; (3) their right to object to any aspect of the proposed Settlement (including final certification of the Settlement Class, the fairness, reasonableness, or adequacy of the proposed Settlement, the adequacy of the Settlement Class's representation by Named Plaintiffs or Class Counsel, or the award of attorney's and representative fees); (4) their right to appear at the fairness hearing (either on their own or through counsel hired at their own expense); and (5) the binding and



*preclusive effect of the orders and Final Order and Judgment in this Action, whether favorable or unfavorable, on all Persons who do not request exclusion from the Settlement Class. As such, the court finds that the Notice fully satisfied the requirements of the Federal Rules of Civil Procedure, including Federal Rule of Civil Procedure 23(c)(2) and (e), the United States Constitution (including the Due Process Clause), the rules of this court, and any other applicable law, and provided sufficient notice to bind all Class Members, regardless of whether a particular Class Member received actual notice.*

**Judge Robert W. Gettleman,** ***Adkins, et al. v. Nestlé Purina PetCare Company, et al.*** (June 23, 2015) 1:12-cv-02871 (N.D. Ill.):

*Notice to the Settlement Class and other potentially interested parties has been provided in accordance with the notice requirements specified by the Court in the Preliminary Approval Order. Such notice fully and accurately informed the Settlement Class members of all material elements of the proposed Settlement and of their opportunity to object or comment thereon or to exclude themselves from the Settlement; provided Settlement Class Members adequate instructions and a variety of means to obtain additional information; was the best notice practicable under the circumstances; was valid, due, and sufficient notice to all Settlement Class members; and complied fully with the laws of the State of Illinois, Federal Rules of Civil Procedure, the United States Constitution, due process, and other applicable law.*

**Judge James Lawrence King,** ***Steen v. Capital One, N.A.*** (May 22, 2015) 2:10-cv-01505 (E.D. La.) and 1:10-cv-22058 (S.D. Fla.) as part of ***In re: Checking Account Overdraft Litigation***, MDL No. 2036 (S.D. Fla.):

*The Court finds that the Settlement Class Members were provided with the best practicable notice; the notice was reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Shutts, 472 U.S. at 812 (quoting Mullane, 339 U.S. at 314-15). This Settlement with Capital One was widely publicized, and any Settlement Class Member who wished to express comments or objections had ample opportunity and means to do so. Azari Decl. ¶¶ 30-39.*

**Judge Rya W. Zobel,** ***Gulbankian et al. v. MW Manufacturers, Inc.*** (Dec. 29, 2014) 1:10-cv-10392 (D. Mass.):

*This Court finds that the Class Notice was provided to the Settlement Class consistent with the Preliminary Approval Order and that it was the best notice practicable and fully satisfied the requirements of the Federal Rules of Civil Procedure, due process, and applicable law. The Court finds that the Notice Plan that was implemented by the Claims Administrator satisfies the requirements of FED. R. CIV. P. 23, 28 U.S.C. § 1715, and Due Process, and is the best notice practicable under the circumstances. The Notice Plan constituted due and sufficient notice of the Settlement, the Final Approval Hearing, and the other matters referred to in the notices. Proof of the giving of such notices has been filed with the Court via the Azari Declaration and its exhibits.*

**Judge Edward J. Davila,** ***Rose v. Bank of America Corporation, et al.*** (Aug. 29, 2014) 5:11-cv-02390 and 5:12-cv-0400 (N.D. Cal.):

*The Court finds that the notice was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of this action, all material elements of the Settlement, the opportunity for Settlement Class Members to exclude themselves from, object to, or comment on the settlement and to appear at the final approval hearing. The notice was the best notice practicable under the circumstances, satisfying the requirements of Rule 23(c)(2)(B); provided notice in a reasonable manner to all class members, satisfying Rule 23(e)(1)(B); was adequate and sufficient notice to all Class Members; and, complied fully with the laws of the United States and of the Federal Rules of Civil Procedure, due process and any other applicable rules of court.*

**Judge James A. Robertson, II,** ***Wong, et al. v. Alacer Corp.*** (June 27, 2014) CGC-12-519221 (Sup. Ct. Cal.):

*Notice to the Settlement Class has been provided in accordance with the Preliminary Approval Order. Based on the Declaration of Cameron Azari dated March 7, 2014, such Class Notice has been provided in an adequate and sufficient manner, constitutes the best notice practicable under the circumstances and satisfies the requirements of California Civil Code Section 1781, California Civil Code of Civil Procedure Section 382, Rules 3.766 of the California Rules of Court, and due process.*



**Judge John Gleeson,** *In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* (Dec. 13, 2013) MDL No. 1720, 05-md-01720 (E.D.N.Y.):

> *The Class Administrator notified class members of the terms of the proposed settlement through a mailed notice and publication campaign that included more than 20 million mailings and publication in more than 400 publications.  The notice here meets the requirements of due process and notice standards…  The objectors' complaints provide no reason to conclude that the purposes and requirements of a notice to a class were not met here.*

**Judge Lance M. Africk,** *Evans, et al. v. TIN, Inc., et al.* (July 7, 2013) 2:11-cv-02067 (E.D. La.):

> *The Court finds that the dissemination of the Class Notice… as described in Notice Agent Lauran Schultz's Declaration: (a) constituted the best practicable notice to Class Members under the circumstances; (b) constituted notice that was reasonably calculated, under the circumstances…; (c) constituted notice that was reasonable, due, adequate, and sufficient; and (d) constituted notice that fully satisfied all applicable legal requirements, including Rules 23(c)(2)(B) and (e)(1) of the Federal Rules of Civil Procedure, the United States Constitution (including Due Process Clause), the Rules of this Court, and any other applicable law, as well as complied with the Federal Judicial Center's illustrative class action notices.*

**Judge Edward M. Chen,** *Marolda v. Symantec Corporation* (Apr. 5, 2013) 3:08-cv-05701 (N.D. Cal.):

> *Approximately 3.9 million notices were delivered by email to class members, but only a very small percentage objected or opted out . . .  The Court . . . concludes that notice of settlement to the class was adequate and satisfied all requirements of Federal Rule of Civil Procedure 23(e) and due process.  Class members received direct notice by email, and additional notice was given by publication in numerous widely circulated publications as well as in numerous targeted publications.  These were the best practicable means of informing class members of their rights and of the settlement's terms.*

**Judge Ann D. Montgomery,** *In re: Zurn Pex Plumbing Products Liability Litigation* (Feb. 27, 2013) MDL No. 1958, 08-md-1958 (D. Minn.):

> *The parties retained Hilsoft Notifications ("Hilsoft"), an experienced class-notice consultant, to design and carry out the notice plan.  The form and content of the notices provided to the class were direct, understandable, and consistent with the "plain language" principles advanced by the Federal Judicial Center.*

> *The notice plan's multi-faceted approach to providing notice to settlement class members whose identity is not known to the settling parties constitutes "the best notice [\*26] that is practicable under the circumstances" consistent with Rule 23(c)(2)(B).*

**Magistrate Judge Stewart,** *Gessele, et al. v. Jack in the Box, Inc.* (Jan. 28, 2013) 3:10-cv-960 (D. Ore.):

> *Moreover, plaintiffs have submitted [a] declaration from Cameron Azari (docket #129), a nationally recognized notice expert, who attests that fashioning an effective joint notice is not unworkable or unduly confusing.  Azari also provides a detailed analysis of how he would approach fashioning an effective notice in this case.*

**Judge Carl J. Barbier,** *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 (Medical Benefits Settlement)* (Jan. 11, 2013) MDL No. 2179 (E.D. La.):

> *Through August 9, 2012, 366,242 individual notices had been sent to potential [Medical Benefits] Settlement Class Members by postal mail and 56,136 individual notices had been e-mailed.  Only 10,700 mailings—or 3.3%—were known to be undeliverable.  (Azari Decl. ¶¶ 8, 9.)  Notice was also provided through an extensive schedule of local newspaper, radio, television and Internet placements, well-read consumer magazines, a national daily business newspaper, highly-trafficked websites, and Sunday local newspapers (via newspaper supplements).  Notice was also provided in non-measured trade, business and specialty publications, African-American, Vietnamese, and Spanish language publications, and Cajun radio programming.  The combined measurable paid print, television, radio, and Internet effort reached an estimated 95% of adults aged 18+ in the Gulf Coast region an average of 10.3 times each, and an estimated 83% of all adults in the United States aged 18+ an average of 4 times each.  (Id. ¶¶ 8, 10.)  All notice documents were designed to be clear, substantive, and informative.  (Id. ¶ 5.)*



*The Court received no objections to the scope or content of the [Medical Benefits] Notice Program.  (Azari Supp. Decl. ¶ 12.)  The Court finds that the Notice and Notice Plan as implemented satisfied the best notice practicable standard of Rule 23(c) and, in accordance with Rule 23(e)(1), provided notice in a reasonable manner to Class Members who would be bound by the Settlement, including individual notice to all Class Members who could be identified through reasonable effort.  Likewise, the Notice and Notice Plan satisfied the requirements of Due Process.  The Court also finds the Notice and Notice Plan satisfied the requirements of CAFA.*

**Judge Carl J. Barbier,** *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 (Economic and Property Damages Settlement)* (Dec. 21, 2012) MDL No. 2179 (E.D. La.):

*The Court finds that the Class Notice and Class Notice Plan satisfied and continue to satisfy the applicable requirements of Federal Rule of Civil Procedure 23(c)(2)(b) and 23(e), the Class Action Fairness Act (28 U.S.C. § 1711 et seq.), and the Due Process Clause of the United States Constitution (U.S. Const., amend. V), constituting the best notice that is practicable under the circumstances of this litigation.  The notice program surpassed the requirements of Due Process, Rule 23, and CAFA.  Based on the factual elements of the Notice Program as detailed below, the Notice Program surpassed all of the requirements of Due Process, Rule 23, and CAFA.*

*The Notice Program, as duly implemented, surpasses other notice programs that Hilsoft Notifications has designed and executed with court approval.  The Notice Program included notification to known or potential Class Members via postal mail and e-mail; an extensive schedule of local newspaper, radio, television and Internet placements, well-read consumer magazines, a national daily business newspaper, and Sunday local newspapers.  Notice placements also appeared in non-measured trade, business, and specialty publications, African-American, Vietnamese, and Spanish language publications, and Cajun radio programming.  The Notice Program met the objective of reaching the greatest possible number of class members and providing them with every reasonable opportunity to understand their legal rights.  See Azari Decl. ¶¶ 8, 15, 68.  The Notice Program was substantially completed on July 15, 2012, allowing class members adequate time to make decisions before the opt-out and objections deadlines.*

*The media notice effort alone reached an estimated 95% of adults in the Gulf region an average of 10.3 times each, and an estimated 83% of all adults in the United States an average of 4 times each.  These figures do not include notice efforts that cannot be measured, such as advertisements in trade publications and sponsored search engine listings.  The Notice Program fairly and adequately covered and notified the class without excluding any demographic group or geographic area, and it exceeded the reach percentage achieved in most other court-approved notice programs.*

**Judge Alonzo Harris,** *Opelousas General Hospital Authority, A Public Trust, D/B/A Opelousas General Health System and Arklamiss Surgery Center, L.L.C. v. FairPay Solutions, Inc.* (Aug. 17, 2012) 12-C-1599 (27th Jud. D. Ct. La.):

*Notice given to Class Members and all other interested parties pursuant to this Court's order of April 18, 2012, was reasonably calculated to apprise interested parties of the pendency of the action, the certification of the Class as Defined for settlement purposes only, the terms of the Settlement Agreement, Class Members rights to be represented by private counsel, at their own costs, and Class Members rights to appear in Court to have their objections heard, and to afford persons or entities within the Class Definition an opportunity to exclude themselves from the Class.  Such notice complied with all requirements of the federal and state constitutions, including the Due Process Clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Class as Defined.*

**Judge James Lawrence King,** *Sachar v. Iberiabank Corporation* (Apr. 26, 2012) as part of *In re: Checking Account Overdraft* MDL No. 2036 (S.D. Fla):

*The Court finds that the Notice previously approved was fully and properly effectuated and was sufficient to satisfy the requirements of due process because it described "the substantive claims . . . [and] contained information reasonably necessary to [allow Settlement Class Members to] make a decision to remain a class member and be bound by the final judgment."  In re: Nissan Motor Corp. Antitrust Litig., 552 F.2d 1088, 1104-05 (5th Cir. 1977).  The Notice, among other things, defined the Settlement Class, described the release as well as the amount and method and manner of proposed distribution of the Settlement proceeds, and informed Settlement Class Members of their rights to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing.  The Notice also informed Settlement Class*



*Members that a class judgment would bind them unless they opted out, and told them where they could obtain more information, such as access to a full copy of the Agreement. Further, the Notice described in summary form the fact that Class Counsel would be seeking attorneys' fees of up to 30 percent of the Settlement. Settlement Class Members were provided with the best practicable notice "reasonably calculated, under [the] circumstances, to apprise them of the pendency of the action and afford them an opportunity to present their objections." Mullane, 339 U.S. at 314. The content of the Notice fully complied with the requirements of Rule 23.*

**Judge Bobby Peters,** *Vereen v. Lowe's Home Centers* (Apr. 13, 2012) SU10-cv-2267B (Ga. Super. Ct.):

*The Court finds that the Notice and the Notice Plan was fulfilled, in accordance with the terms of the Settlement Agreement, the Amendment, and this Court's Preliminary Approval Order and that this Notice and Notice Plan constituted the best practicable notice to Class Members under the circumstances of this action, constituted due and sufficient Notice of the proposed Settlement to all persons entitled to participate in the proposed Settlement, and was in full compliance with Ga. Code Ann § 9-11-23 and the constitutional requirements of due process. Extensive notice was provided to the class, including point of sale notification, publication notice and notice by first-class mail for certain potential Class Members.*

*The affidavit of the notice expert conclusively supports this Court's finding that the notice program was adequate, appropriate, and comported with Georgia Code Ann. § 9-11-23(b)(2), the Due Process Clause of the Constitution, and the guidance for effective notice articulate in the FJC's Manual for Complex Litigation, 4th.*

**Judge Lee Rosenthal,** *In re: Heartland Payment Systems, Inc. Customer Data Security Breach Litigation* (Mar. 2, 2012) MDL No. 2046 (S.D. Tex.):

*The notice that has been given clearly complies with Rule 23(e)(1)'s reasonableness requirement… Hilsoft Notifications analyzed the notice plan after its implementation and conservatively estimated that notice reached 81.4 percent of the class members. (Docket Entry No. 106, ¶ 32). Both the summary notice and the detailed notice provided the information reasonably necessary for the presumptive class members to determine whether to object to the proposed settlement. See Katrina Canal Breaches, 628 F.3d at 197. Both the summary notice and the detailed notice "were written in easy-to-understand plain English." In re: Black Farmers Discrimination Litig., — F. Supp. 2d —, 2011 WL 5117058, at *23 (D.D.C. 2011); accord AGGREGATE LITIGATION § 3.04(c).15 The notice provided "satisf[ies] the broad reasonableness standards imposed by due process" and Rule 23. Katrina Canal Breaches, 628 F.3d at 197.*

**Judge John D. Bates,** *Trombley v. National City Bank* (Dec. 1, 2011) 1:10-cv-00232 (D.D.C.) as part of *In re: Checking Account Overdraft Litigation* MDL No. 2036 (S.D. Fla.):

*The form, content, and method of dissemination of Notice given to the Settlement Class were in full compliance with the Court's January 11, 2011 Order, the requirements of Fed. R. Civ. P. 23(e), and due process. The notice was adequate and reasonable, and constituted the best notice practicable under the circumstances. In addition, adequate notice of the proceedings and an opportunity to participate in the final fairness hearing were provided to the Settlement Class.*

**Judge Robert M. Dow, Jr.,** *Schulte v. Fifth Third Bank* (July 29, 2011) 1:09-cv-06655 (N.D. Ill.):

*The Court has reviewed the content of all of the various notices, as well as the manner in which Notice was disseminated, and concludes that the Notice given to the Class fully complied with Federal Rule of Civil Procedure 23, as it was the best notice practicable, satisfied all constitutional due process concerns, and provided the Court with jurisdiction over the absent Class Members.*

**Judge Ellis J. Daigle,** *Williams v. Hammerman & Gainer Inc.* (June 30, 2011) 11-C-3187-B (27th Jud. D. Ct. La.):

*Notices given to Settlement Class members and all other interested parties throughout this proceeding with respect to the certification of the Settlement Class, the proposed settlement, and all related procedures and hearings—including, without limitation, the notice to putative Settlement Class members and others more fully described in this Court's order of 30th day of March 2011 were reasonably calculated under all the circumstances and have been sufficient, as to form, content, and manner of dissemination, to apprise interested parties and members of the Settlement Class of the pendency of the action, the certification of the Settlement Class, the Settlement Agreement and its contents, Settlement Class members' right to be represented by private counsel, at their own cost, and Settlement Class members' right to appear in Court*



*to have their objections heard, and to afford Settlement Class members an opportunity to exclude themselves from the Settlement Class. Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedures, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Settlement Class.*

**Judge Stefan R. Underhill, *Mathena v. Webster Bank, N.A.*** (Mar. 24, 2011) 3:10-cv-01448 (D. Conn.) as part of ***In re: Checking Account Overdraft Litigation*** MDL No. 2036 (S.D. Fla.):

*The form, content, and method of dissemination of Notice given to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances.  The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all persons entitled to such notice, and said notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.*

**Judge Ted Stewart, *Miller v. Basic Research, LLC*** (Sept. 2, 2010) 2:07-cv-00871 (D. Utah):

*Plaintiffs state that they have hired a firm specializing in designing and implementing large scale, unbiased, legal notification plans.  Plaintiffs represent to the Court that such notice will include: 1) individual notice by electronic mail and/or first-class mail sent to all reasonably identifiable Class members; 2) nationwide paid media notice through a combination of print publications, including newspapers, consumer magazines, newspaper supplements and the Internet; 3) a neutral, Court-approved, informational press release; 4) a neutral, Court-approved Internet website; and 5) a toll-free telephone number.  Similar mixed media plans have been approved by other district courts post class certification.  The Court finds this plan is sufficient to meet the notice requirement.*

**Judge Sara Loi, *Pavlov v. Continental Casualty Co.*** (Oct. 7, 2009) 5:07-cv-2580 (N.D. Ohio):

*As previously set forth in this Memorandum Opinion, the elaborate notice program contained in the Settlement Agreement provides for notice through a variety of means, including direct mail to each class member, notice to the United States Attorney General and each State, a toll free number, and a website designed to provide information about the settlement and instructions on submitting claims.  With a 99.9% effective rate, the Court finds that the notice program constituted the "best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and clearly satisfies the requirements of Rule 23(c)(2)(B).*

**Judge James Robertson, *In re: Department of Veterans Affairs (VA) Data Theft Litigation*** (Sept. 23, 2009) MDL No. 1796 (D.D.C.):

*The Notice Plan, as implemented, satisfied the requirements of due process and was the best notice practicable under the circumstances.  The Notice Plan was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the action, the terms of the Settlement, and their right to appear, object to or exclude themselves from the Settlement.  Further, the notice was reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notice.*

## LEGAL NOTICE CASES

Hilsoft has served as a notice expert for planning, implementation and/or analysis in the following partial list of cases:

| | |
|---|---|
| ***Yamagata et al. v. Reckitt Benckiser LLC*** | N.D. Cal., No. 3:17-cv-03529 |
| ***Thompson et al. v. Community Bank, N.A.*** **(Overdraft)** | N.D.N.Y., No. 8:19-cv-0919 |
| ***Silveira v. M&T Bank*** | C.D. Cal., No. 2:19-cv-06958 |
| ***In re Toll Roads Litigation; Borsuk et al. v. Foothill/Eastern Transportation Corridor Agency, et al.*** **(OCTA Settlement)** | C.D. Cal., No. 8:16-cv-00262 |
| ***In Re: Toll Roads Litigation*** **(3M/TCA Settlement)** | C.D. Cal., No. 8:16-cv-00262 |



| | |
|---|---|
| *Pearlstone v. Wal-Mart Stores, Inc.* (Sales Tax) | C.D. Cal., No. 4:17-cv-02856 |
| *Zanca, et al. v. Epic Games, Inc.* (Fortnite or Rocket League Video Games) | Sup Ct. Wake Cnty., N.C., No. 21-CVS-534 |
| *In re: Flint Water Cases* | E.D. Mich., No. 5:16-cv-10444 |
| *Kukorinis, et al. v. Walmart, Inc.* | S.D. Fla., No. 1:19-cv-20592 |
| *Grace v. Apple, Inc.* | N.D. Cal., No. 17-CV-00551 |
| *Alvarez v. Sirius XM Radio Inc.* | C.D. Cal., No. 2:18-cv-8605 |
| *In re: Pre-Filled Propane Tank Antitrust Litigation* | W.D. Mo., No. MDL No. 2567, No. 14-2567 |
| *In re: Disposable Contact Lens Antitrust Litigation* (ABB Concise Optical Group, LLC) | M.D. Fla., No. 3:15-md-02626 |
| *Bally v. State Farm Insurance Company* | N.D. Cal., No. 3:18-cv-04954 |
| *Morris v. Provident Credit Union* (Overdraft) | Sup. Ct. Cal. Cty. of San Fran., No. CGC-19-581616 |
| *Pennington v. Tetra Tech, Inc. et al.* | N.D. Cal., No. 3:18-cv-05330 |
| *Maldonado et al. v. Apple Inc, et al.* | N.D. Cal., No. 3:16-cv-04067 |
| *UFCW & Employers Benefit Trust v. Sutter Health, et al.* | Sup. Ct. of Cal., Cnty of San Fran., No. CGC 14-538451 Consolidated with CGC-18-565398 |
| *Fitzhenry v. Independent Home Products, LLC* (TCPA) | D.S.C., No. 2:19-cv-02993 |
| *In re: Hyundai and Kia Engine Litigation and Flaherty v. Hyundai Motor Company, Inc., et al.* | C.D. Cal., Nos. 8:17-CV-00838 & 18-cv-02223 |
| *Sager, et al. v. Volkswagen Group of America, Inc., et al.* | D.N.J., No. 18-cv-13556 |
| *Bautista v. Valero Marketing and Supply Company* | N.D. Cal., No. 3:15-cv-05557 |
| *Snee Farm Lakes Homeowner's Association Inc. v. The Commissioners of Public Works for the Town of Mount Pleasant d/b/a Mount Pleasant Waterworks* | Ct. of Com. Pleas., S.C., No. 2018-CP-10-2764 |
| *Richards, et al. v. Chime Financial, Inc.* | N.D. Cal., No. 4:19-cv-06864 |
| *In re: Health Insurance Innovations Securities Litigation* | M.D. Fla., No. 8:17-cv-02186 |
| *Fox, et al. v. Iowa Health System d.b.a. UnityPoint Health* (Data Breach) | W.D. Wis., No. 18-cv-327 |
| *Smith v. Costa Del Mar, Inc.* | M.D. Fla., No. 3:18-cv-1011 |
| *Al's Discount Plumbing, et al. v. Viega, LLC* (Building Products) | M.D. Pa., No. 19-cv-00159 |
| *The Weinstein Company Holdings, LLC* | Bankr. D. Del., No. 18-10601 |
| *Rose v. The Travelers Home and Marine Insurance Company, et al.* | E.D. Pa., No. 19-cv-00977 |
| *Paris et al. v. Progressive American Insurance Company, et al.* | S.D. Fla., No. 19-cv-21761 |
| *Chinitz v. Intero Real Estate Services* | N.D. Cal., No. 5:18-cv-05623 |
| *Eastwood Construction LLC, et al. v. City of Monroe The Estate of Donald Alan Plyler Sr., et al. v. City of Monroe* | Sup. Ct. N.C., Nos. 18-CVS-2692 & 19-CVS-1825 |

| | |
|---|---|
| *Garvin v. San Diego Unified Port District* | Sup. Ct. Cal., No. 37-2020-00015064 |
| *Consumer Financial Protection Bureau v. Siringoringo Law Firm* | C.D. Cal., No. 8:14-cv-01155 |
| *Robinson v. Nationstar Mortgage LLC* | D. Md., No. 8:14-cv-03667 |
| *Drazen v. GoDaddy.com, LLC* and *Bennett v. GoDaddy.com, LLC* (TCPA) | S.D. Ala., No. 1:19-cv-00563 |
| *In re: Libor-Based Financial Instruments Antitrust Litigation* | S.D.N.Y., MDL No. 2262, No. 1:11-md-2262 |
| *Izor v. Abacus Data Systems, Inc.* (TCPA) | N.D. Cal., No. 19-cv-01057 |
| *Cook, et al. v. South Carolina Public Service Authority, et al.* | Ct. of Com. Pleas. 13th Jud. Cir. S.C., No. 2019-CP-23-6675 |
| *K.B., by and through her natural parent, Jennifer Qassis, and Lillian Knox-Bender v. Methodist Healthcare - Memphis Hospitals* | 30th Jud. Dist. Tenn., No. CH-13-04871-1 |
| *In re: Roman Catholic Diocese of Harrisburg* | Bank. Ct. M.D. Pa., No. 1:20-bk-00599 |
| *Denier, et al. v. Taconic Biosciences, Inc.* | Sup Ct. N.Y., No. 00255851 |
| *Robinson v. First Hawaiian Bank* (Overdraft) | Cir. Ct. of First Cir. Haw., No. 17-1-0167-01 |
| *Burch v. Whirlpool Corporation* | W.D. Mich., No. 1:17-cv-00018 |
| *Armon, et al. v. Washington State University* (Data Breach) | Sup. Ct. Wash., No. 17-2-23244-1 consolidated with No. 17-2-25052-0 |
| *Wilson, et al. v. Volkswagen Group of America, Inc., et al.* | S.D. Fla., No. 17-cv-23033 |
| *Prather v. Wells Fargo Bank, N.A.* (TCPA) | N.D. Ill., No. 1:17-cv-00481 |
| *In re: Wells Fargo Collateral Protection Insurance Litigation* | C.D. Cal., No. 8:17-ml-02797 |
| *Ciuffitelli, et al. v. Deloitte & Touche LLP, et al.* | D. Ore., No. 3:16-cv-00580 |
| *Coffeng, et al. v. Volkswagen Group of America, Inc.* | N.D. Cal., No. 17-cv-01825 |
| *In re: Disposable Contact Lens Antitrust Litigation* (CooperVision, Inc.) | M.D. Fla., No. 3:15-md-02626 |
| *Audet, et al. v. Garza, et al.* | D. Conn., No. 3:16-cv-00940 |
| *Hyder, et al. v. Consumers County Mutual Insurance Company* | D. Ct. of Travis County Tex., No. D-1-GN-16-000596 |
| *Fessler v. Porcelana Corona De Mexico, S.A. DE C.V f/k/a Sanitarios Lamosa S.A. DE C.V. a/k/a Vortens* | E.D. Tex., No. 4:19-cv-00248 |
| *In re: TD Bank, N.A. Debit Card Overdraft Fee Litigation* | D.S.C., MDL No. 2613, No. 6:15-MN-02613 |
| *Liggio v. Apple Federal Credit Union* | E.D. Vir., No. 1:18-cv-01059 |
| *Garcia v. Target Corporation* (TCPA) | D. Minn., No. 16-cv-02574 |
| *Albrecht v. Oasis Power, LLC d/b/a Oasis Energy* | N.D. Ill., No. 1:18-cv-1061 |
| *McKinney-Drobnis, et al. v. Massage Envy Franchising* | N.D. Cal., No. 3:16-cv-6450 |



| | |
|---|---|
| *In re: Optical Disk Drive Products Antitrust Litigation* | N.D. Cal., MDL No. 2143, No. 3:10-md-2143 |
| *Stone, et al. v. Porcelana Corona De Mexico, S.A. DE C.V f/k/a Sanitarios Lamosa S.A. DE C.V. a/k/a Vortens* | E.D. Tex., No. 4:17-cv-00001 |
| *In re: Kaiser Gypsum Company, Inc., el al.* **(Asbestos)** | Bankr. W.D. N.C., No. 16-31602 |
| *Kuss v. American HomePatient, Inc., et al.* **(Data Breach)** | M.D. Fla., No. 8:18-cv-2348 |
| *Lusnak v. Bank of America, N.A.* | C.D. Cal., No. 14-cv-1855 |
| *In re: Premera Blue Cross Customer Data Security Breach Litigation* | D. Ore., No. 3:15-md-2633 |
| *Elder v. Hilton Worldwide Holdings, Inc.* **(Hotel Stay Promotion)** | N.D. Cal., No. 16-cv-00278 |
| *Grayson, et al. v. General Electric Company* **(Microwaves)** | D. Conn., No. 3:13-cv-01799 |
| *Harris, et al. v. Farmers Insurance Exchange and Mid Century Insurance Company* | Sup. Ct Cal., No. BC 579498 |
| *Lashambae v. Capital One Bank, N.A.* **(Overdraft)** | E.D.N.Y., No. 1:17-cv-06406 |
| *Trujillo, et al. v. Ametek, Inc., et al.* **(Toxic Leak)** | S.D. Cal., No.3:15-cv-01394 |
| *Cox, et al. v. Ametek, Inc., et al.* **(Toxic Leak)** | S.D. Cal., No. 3:17-cv-00597 |
| *Pirozzi, et al. v. Massage Envy Franchising, LLC* | E.D. Mo., No. 4:19-CV-807 |
| *Lehman v. Transbay Joint Powers Authority, et al.* **(Millennium Tower)** | Sup. Ct. Cal., No. GCG-16-553758 |
| *In re: FCA US LLC Monostable Electronic Gearshift Litigation* | E.D. Mich., MDL No. 2744 & No. 16-md-02744 |
| *Dasher v. RBC Bank (USA) predecessor in interest to PNC Bank, N.A., as part of In re: Checking Account Overdraft* | S.D. Fla., No. 1:10-CV-22190, as part of MDL No. 2036 |
| *Behfarin v. Pruco Life Insurance Company, et al.* | C.D. Cal., No. 17-cv-05290 |
| *In re: Renovate America Finance Cases* | Sup. Ct, Cal., County of Riverside, No. RICJCCP4940 |
| *Nelson v. Roadrunner Transportation Systems, Inc.* **(Data Breach)** | N.D. Ill., No. 1:18-cv-07400 |
| *Skochin, et al. v. Genworth Life Insurance Company, et al.* | E.D. Vir., No. 3:19-cv-00049 |
| *Walters, et al. v. Target Corp.* **(Overdraft)** | S.D. Cal., No. 3:16-cv-1678 |
| *Jackson, et al. v. Viking Group, Inc., et al.* | D. Md., No. 8:18-cv-02356 |
| *Waldrup v. Countrywide Financial Corporation, et al.* | C.D. Cal., No. 2:13-cv-08833 |
| *Burrow, et al. v. Forjas Taurus S.A., et al.* | S.D. Fla., No. 1:16-cv-21606 |
| *Henrikson v. Samsung Electronics Canada Inc.* | Ontario Sup. Ct., No. 2762-16cp |
| *In re: Comcast Corp. Set-Top Cable Television Box Antitrust Litigation* | E.D. Pa., No. 2:09-md-02034 |
| *Lightsey, et al. v. South Carolina Electric & Gas Company, a Wholly Owned Subsidiary of SCANA, et al.* | Ct. of Com. Pleas., S.C., No. 2017-CP-25-335 |



| | |
|---|---|
| *Rabin v. HP Canada Co., et al.* | Quebec Ct., Dist. of Montreal, No. 500-06-000813-168 |
| *McIntosh v. Takata Corporation, et al.; Vitoratos, et al. v. Takata Corporation, et al.; and Hall v. Takata Corporation, et al.* | Ontario Sup Ct., No. CV-16-543833-00CP; Quebec Sup. Ct of Justice, No. 500-06-000723-144; & Court of Queen's Bench for Saskatchewan, No. QBG. 1284 or 2015 |
| *Di Filippo v. The Bank of Nova Scotia, et al.* (Gold Market Instrument) | Ontario Sup. Ct., No. CV-15-543005-00CP & No. CV-16-551067-00CP |
| *Adlouni v. UCLA Health Systems Auxiliary, et al.* | Sup. Ct. Cal., No. BC589243 |
| *Lloyd, et al. v. Navy Federal Credit Union* | S.D. Cal., No. 17-cv-1280 |
| *Luib v. Henkel Consumer Goods Inc.* | E.D.N.Y., No. 1:17-cv-03021 |
| *Zaklit, et al. v. Nationstar Mortgage LLC, et al.* (TCPA) | C.D. Cal., No. 5:15-cv-02190 |
| *In re: HP Printer Firmware Update Litigation* | N.D. Cal., No. 5:16-cv-05820 |
| *In re: Dealer Management Systems Antitrust Litigation* | N.D. Ill., MDL No. 2817, No. 18-cv-00864 |
| *Mosser v. TD Bank, N.A.* and *Mazzada, et al. v. TD Bank, N.A.*, as part of *In re: Checking Account Overdraft* | E.D. Pa., No. 2:10-cv-00731, S.D. Fla., No. 10-cv-21386 and S.D. Fla., No. 1:10-cv-21870, as part of S.D. Fla., MDL 2036 |
| *Naiman v. Total Merchant Services, Inc., et al.* (TCPA) | N.D. Cal., No. 4:17-cv-03806 |
| *In re: Valley Anesthesiology Consultants, Inc. Data Breach Litigation* | Sup. Ct. Cal., No. CV2016-013446 |
| *Parsons v. Kimpton Hotel & Restaurant Group, LLC* (Data Breach) | N.D. Cal., No. 3:16-cv-05387 |
| *Stahl v. Bank of the West* | Sup. Ct. Cal., No. BC673397 |
| *37 Besen Parkway, LLC v. John Hancock Life Insurance Company (U.S.A.)* | S.D.N.Y., No. 15-cv-9924 |
| *Tashica Fulton-Green, et al. v. Accolade, Inc.* | E.D. Pa., No. 2:18-cv-00274 |
| *In re: Community Health Systems, Inc. Customer Data Security Breach Litigation* | N.D. Ala., MDL No. 2595, No. 2:15-CV-222 |
| *Al's Pals Pet Card, LLC, et al. v. Woodforest National Bank, N.A., et al.* | S.D. Tex., No. 4:17-cv-3852 |
| *Cowen v. Lenny & Larry's Inc.* | N.D. Ill., No. 1:17-cv-01530 |
| *Martin v. Trott* (MI - Foreclosure) | E.D. Mich., No. 2:15-cv-12838 |
| *Knapper v. Cox Communications, Inc.* (TCPA) | D. Ariz., No. 2:17-cv-00913 |
| *Dipuglia v. US Coachways, Inc.* (TCPA) | S.D. Fla., No. 1:17-cv-23006 |
| *Abante Rooter and Plumbing v. Pivotal Payments Inc., d/b/a/ Capital Processing Network and CPN* (TCPA) | N.D. Cal., No. 3:16-cv-05486 |
| *First Impressions Salon, Inc., et al. v. National Milk Producers Federation, et al.* | S.D. Ill., No. 3:13-cv-00454 |
| *Raffin v. Medicredit, Inc., et al.* | C.D. Cal., No. 15-cv-4912 |

| | |
|---|---|
| *Gergetz v. Telenav, Inc.* **(TCPA)** | N.D. Cal., No. 5:16-cv-04261 |
| *Ajose, et al. v. Interline Brands Inc.* **(Plumbing Fixtures)** | M.D. Tenn., No. 3:14-cv-01707 |
| *Underwood v. Kohl's Department Stores, Inc., et al.* | E.D. Pa., No. 2:15-cv-00730 |
| *Surrett, et al. v. Western Culinary Institute, et al.* | Ore. Cir., County of Multnomah, No. 0803-03530 |
| *Vergara, et al., v. Uber Technologies, Inc.* **(TCPA)** | N.D. Ill., No. 1:15-CV-06972 |
| *Watson v. Bank of America Corporation, et al.; Bancroft-Snell et al. v. Visa Canada Corporation, et al.; Bakopanos v. Visa Canada Corporation, et al.; Macaronies Hair Club and Laser Center Inc. operating as Fuze Salon v. BofA Canada Bank, et al.; Hello Baby Equipment Inc. v. BofA Canada Bank and others (Visa and Mastercard Canadian Interchange Fees)* | Sup. Ct. of B.C., No. VLC-S-S-112003; Ontario Sup. Ct., No. CV-11-426591; Sup. Ct. of Quebec, No. 500-06-00549-101; Ct. of QB of Alberta, No. 1203-18531; Ct. of QB of Saskatchewan, No. 133 of 2013 |
| *In re: Takata Airbag Products Liability Litigation* **(OEMs – BMW, Mazda, Subaru, and Toyota)** | S.D. Fla., MDL No. 2599 |
| *In re: Takata Airbag Products Liability Litigation* **(OEMs – Honda and Nissan)** | S.D. Fla., MDL No. 2599 |
| *In re: Takata Airbag Products Liability Litigation* **(OEM – Ford)** | S.D. Fla., MDL No. 2599 |
| *Poseidon Concepts Corp., et al.* **(Canadian Securities Litigation)** | Ct. of QB of Alberta, No. 1301-04364 |
| *Callaway v. Mercedes-Benz USA, LLC* **(Seat Heaters)** | C.D. Cal., No. 8:14-cv-02011 |
| *Hale v. State Farm Mutual Automobile Insurance Company, et al.* | S.D. Ill., No. 3:12-cv-0660 |
| *Farrell v. Bank of America, N.A.* **(Overdraft)** | S.D. Cal., No. 3:16-cv-00492 |
| *In re: Windsor Wood Clad Window Products Liability Litigation* | E.D. Wis., MDL No. 2688, No. 16-MD-02688 |
| *Wallace, et al, v. Monier Lifetile LLC, et al.* | Sup. Ct. Cal., No. SCV-16410 |
| *In re: Parking Heaters Antitrust Litigation* | E.D.N.Y., No. 15-MC-0940 |
| *Pantelyat, et al. v. Bank of America, N.A., et al.* **(Overdraft / Uber)** | S.D.N.Y., No. 16-cv-08964 |
| *Falco et al. v. Nissan North America, Inc., et al.* **(Engine – CA & WA)** | C.D. Cal., No. 2:13-cv-00686 |
| *Alaska Electrical Pension Fund, et al. v. Bank of America N.A., et al.* **(ISDAfix Instruments)** | S.D.N.Y., No. 14-cv-7126 |
| *Larson v. John Hancock Life Insurance Company (U.S.A.)* | Sup. Ct. Cal., No. RG16813803 |
| *Larey v. Allstate Property and Casualty Insurance Company* | W.D. Kan., No. 4:14-cv-04008 |
| *Orlander v. Staples, Inc.* | S.D.N.Y., No. 13-cv-0703 |
| *Masson v. Tallahassee Dodge Chrysler Jeep, LLC* **(TCPA)** | S.D. Fla., No. 1:17-cv-22967 |
| *Gordon, et al. v. Amadeus IT Group, S.A., et al.* | S.D.N.Y., No. 1:15-cv-05457 |
| *Alexander M. Rattner v. Tribe App., Inc., and Kenneth Horsley v. Tribe App., Inc.* | S.D. Fla., Nos. 1:17-cv-21344 & 1:14-cv-2311 |

| | |
|---|---|
| *Sobiech v. U.S. Gas & Electric, Inc., i/t/d/b/a Pennsylvania Gas & Electric, et al.* | E.D. Pa., No. 2:14-cv-04464 |
| *Mahoney v. TT of Pine Ridge, Inc.* | S.D. Fla., No. 9:17-cv-80029 |
| *Ma, et al. v. Harmless Harvest Inc.* (Coconut Water) | E.D.N.Y., No. 2:16-cv-07102 |
| *Reilly v. Chipotle Mexican Grill, Inc.* | S.D. Fla., No. 1:15-cv-23425 |
| *The Financial Oversight and Management Board for Puerto Rico as representative of Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy)* | D. Puerto Rico, No. 17-04780 |
| *In re: Syngenta Litigation* | 4th Jud. Dist. Minn., No. 27-CV-15-3785 |
| *T.A.N. v. PNI Digital Media, Inc.* | S.D. Ga., No. 2:16-cv-132 |
| *Lewis v. Flue-Cured Tobacco Cooperative Stabilization Corporation (n/k/a United States Tobacco Cooperative, Inc.)* | N.C. Gen. Ct of Justice, Sup. Ct. Div., No. 05 CVS 188, No. 05 CVS 1938 |
| *McKnight, et al. v. Uber Technologies, Inc., et al.* | N.D. Cal., No. 14-cv-05615 |
| *Gottlieb v. Citgo Petroleum Corporation* (TCPA) | S.D. Fla., No. 9:16-cv-81911 |
| *Farnham v. Caribou Coffee Company, Inc.* (TCPA) | W.D. Wis., No. 16-cv-00295 |
| *Jacobs, et al. v. Huntington Bancshares Inc., et al.* (FirstMerit Overdraft Fees) | Ohio C.P., No. 11CV000090 |
| *Morton v. Greenbank* (Overdraft Fees) | 20th Jud. Dist. Tenn., No. 11-135-IV |
| *Ratzlaff, et al. v. BOKF, NA d/b/a Bank of Oklahoma, et al.* (Overdraft Fees) | Dist. Ct. Okla., No. CJ-2015-00859 |
| *Klug v. Watts Regulator Company* (Product Liability) | D. Neb., No. 8:15-cv-00061 |
| *Bias v. Wells Fargo & Company, et al.* (Broker's Price Opinions) | N.D. Cal., No. 4:12-cv-00664 |
| *Greater Chautauqua Federal Credit Union v. Kmart Corp., et al.* (Data Breach) | N.D. Ill., No. 1:15-cv-02228 |
| *Hawkins v. First Tennessee Bank, N.A., et al.* (Overdraft Fees) | 13th Jud. Cir. Tenn., No. CT-004085-11 |
| *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation* (Bosch Settlement) | N.D. Cal., MDL No. 2672 |
| *In re: HSBC Bank USA, N.A.* | Sup. Ct. N.Y., No. 650562/11 |
| *Glaske v. Independent Bank Corporation* (Overdraft Fees) | Cir. Ct. Mich., No. 13-009983 |
| *MSPA Claims 1, LLC v. IDS Property Casualty Insurance Company* | 11th Jud. Cir. Fla, No. 15-27940-CA-21 |
| *In re: Lithium Ion Batteries Antitrust Litigation* | N.D. Cal., MDL No. 2420, No. 4:13-MD-02420 |
| *Chimeno-Buzzi v. Hollister Co. and Abercrombie & Fitch Co.* | S.D. Fla., No. 14-cv-23120 |
| *Small v. BOKF, N.A.* | D. Colo., No. 13-cv-01125 |
| *Forgione v. Webster Bank N.A.* (Overdraft Fees) | Sup. Ct. Conn., No. X10-UWY-CV-12-6015956-S |



| | |
|---|---|
| *Swift v. BancorpSouth Bank*, as part of *In re: Checking Account Overdraft* | N.D. Fla., No. 1:10-cv-00090, as part of S.D. Fla, MDL No. 2036 |
| *Whitton v. Deffenbaugh Industries, Inc., et al.*<br>*Gary, LLC v. Deffenbaugh Industries, Inc., et al.* | D. Kan., No. 2:12-cv-02247<br>D. Kan., No. 2:13-cv-02634 |
| *In re: Citrus Canker Litigation* | 11th Jud. Cir., Fla., No. 03-8255 CA 13 |
| *In re: Caterpillar, Inc. C13 and C15 Engine Products Liability Litigation* | D.N.J., MDL No. 2540 |
| *In re: Shop-Vac Marketing and Sales Practices Litigation* | M.D. Pa., MDL No. 2380 |
| *Opelousas General Hospital Authority, A Public Trust, D/B/A Opelousas General Health System and Arklamiss Surgery Center, L.L.C. v. FairPay Solutions, Inc.* | 27th Jud. D. Ct. La., No. 12-C-1599 |
| *Opelousas General Hospital Authority v. PPO Plus, L.L.C., et al.* | 27th Jud. D. Ct. La., No. 13-C-5380 |
| *Russell Minoru Ono v. Head Racquet Sports USA* | C.D. Cal., No. 2:13-cv-04222 |
| *Kerry T. Thibodeaux, M.D. (A Professional Medical Corporation) v. American Lifecare, Inc.* | 27th Jud. D. Ct. La., No. 13-C-3212 |
| *Gattinella v. Michael Kors (USA), Inc., et al.* | S.D.N.Y., No. 14-cv-5731 |
| *In re: Energy Future Holdings Corp., et al.* (Asbestos Claims Bar Notice) | Bankr. D. Del., No. 14-10979 |
| *Dorothy Williams d/b/a Dot's Restaurant v. Waste Away Group, Inc.* | Cir. Ct., Lawrence Cnty, Ala., No. 42-cv-2012- 900001.00 |
| *Kota of Sarasota, Inc. v. Waste Management Inc. of Florida* | 12th Jud. Cir. Ct., Sarasota Cnty, Fla., No. 2011-CA-008020NC |
| *Steen v. Capital One, N.A.*, as part of *In re: Checking Account Overdraft* | E.D. La., No. 2:10-cv-01505 and 1:10-cv-22058, as part of S.D. Fla., MDL No. 2036 |
| *Childs, et al. v. Synovus Bank, et al.*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *In re: MI Windows and Doors Inc. Products Liability Litigation* (Building Products) | D.S.C., MDL No. 2333 |
| *Given v. Manufacturers and Traders Trust Company a/k/a M&T Bank*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *Scharfstein v. BP West Coast Products, LLC* | Ore. Cir., County of Multnomah, No. 1112-17046 |
| *Adkins, et al. v. Nestlé Purina PetCare Company, et al.* | N.D. Ill., No. 1:12-cv-02871 |
| *Smith v. City of New Orleans* | Civil D. Ct., Parish of Orleans, La., No. 2005-05453 |
| *Hawthorne v. Umpqua Bank* (Overdraft Fees) | N.D. Cal., No. 11-cv-06700 |
| *Gulbankian, et al. v. MW Manufacturers, Inc.* | D. Mass., No. 1:10-cv-10392 |
| *Costello v. NBT Bank* (Overdraft Fees) | Sup. Ct. Del Cnty, N.Y., No. 2011-1037 |
| *In re American Express Anti-Steering Rules Antitrust Litigation (II) (Italian Colors Restaurant)* | E.D.N.Y., MDL No. 2221, No. 11-MD-2221 |



| | |
|---|---|
| *Wong, et al. v. Alacer Corp.* (Emergen-C) | Sup. Ct. Cal., No. CGC-12-519221 |
| *Mello et al. v. Susquehanna Bank*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *In re: Plasma-Derivative Protein Therapies Antitrust Litigation* | N.D. Ill., No. 09-CV-7666 |
| *Simpson v. Citizens Bank* (Overdraft Fees) | E.D. Mich., No. 2:12-cv-10267 |
| *George Raymond Williams, M.D., Orthopedic Surgery, a Professional Medical, LLC, et al. v. Bestcomp, Inc., et al.* | 27th Jud. D. Ct. La., No. 09-C-5242-B |
| *Simmons v. Comerica Bank, N.A.*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *McGann, et al., v. Schnuck Markets, Inc.* (Data Breach) | Mo. Cir. Ct., No. 1322-CC00800 |
| *Rose v. Bank of America Corporation, et al.* (TCPA) | N.D. Cal., Nos. 5:11-cv-02390 & 5:12-cv-0400 |
| *Johnson v. Community Bank, N.A., et al.* (Overdraft Fees) | M.D. Pa., No. 3:12-cv-01405 |
| *National Trucking Financial Reclamation Services, LLC, et al. v. Pilot Corporation, et al.* | E.D. Ark., No. 4:13-cv-00250 |
| *Price v. BP Products North America* | N.D. Ill., No. 12-cv-06799 |
| *Yarger v. ING Bank* | D. Del., No. 11-154-LPS |
| *Glube, et al. v. Pella Corporation, et al.* (Building Products) | Ont. Super. Ct., No. CV-11-4322294-00CP |
| *Fontaine v. Attorney General of Canada* (Mistassini Hostels Residential Schools) | Qué. Super. Ct., No. 500-06-000293-056 & No. 550-06-000021-056 |
| *Miner v. Philip Morris Companies, Inc., et al.* (Light Cigarettes) | Ark. Cir. Ct., No. 60CV03-4661 |
| *Williams v. SIF Consultants of Louisiana, Inc., et al.* | 27th Jud. D. Ct. La., No. 09-C-5244-C |
| *Opelousas General Hospital Authority v. Qmedtrix Systems, Inc.* | 27th Jud. D. Ct. La., No. 12-C-1599-C |
| *Evans, et al. v. TIN, Inc., et al.* (Environmental) | E.D. La., No. 2:11-cv-02067 |
| *Anderson v. Compass Bank*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *Casayuran v. PNC Bank*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *Eno v. M & I Marshall & Ilsley Bank* as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *Blahut v. Harris, N.A.*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *In re: Zurn Pex Plumbing Products Liability Litigation* | D. Minn., MDL No. 1958, No. 08-md-1958 |
| *Saltzman v. Pella Corporation* (Building Products) | N.D. Ill., No. 06-cv-4481 |
| *In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* (Mastercard & Visa) | E.D.N.Y., MDL No. 1720, No. 05-MD-1720 |
| *RBS v. Citizens Financial Group, Inc.*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |



| | |
|---|---|
| *Gessele, et al. v. Jack in the Box, Inc.* | D. Ore., No. 3:10-cv-960 |
| *Vodanovich v. Boh Brothers Construction* (Hurricane Katrina Levee Breaches) | E.D. La., No. 05-cv-4191 |
| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* (Medical Benefits Settlement) | E.D. La., MDL No. 2179 |
| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* (Economic & Property Damages Settlement) | E.D. La., MDL No. 2179 |
| *Marolda v. Symantec Corporation* (Software Upgrades) | N.D. Cal., No. 3:08-cv-05701 |
| *Opelousas General Hospital Authority v. FairPay Solutions* | 27th Jud. D. Ct. La., No. 12-C-1599-C |
| *Fontaine v. Attorney General of Canada* (Stirland Lake and Cristal Lake Residential Schools) | Ont. Super. Ct., No. 00-CV-192059 CP |
| *Nelson v. Rabobank, N.A.* (Overdraft Fees) | Sup. Ct. Cal., No. RIC 1101391 |
| *Case v. Bank of Oklahoma*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *Harris v. Associated Bank*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *Wolfgeher v. Commerce Bank*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *McKinley v. Great Western Bank*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *Lawson v. BancorpSouth* (Overdraft Fees) | W.D. Ark., No. 1:12cv1016 |
| *LaCour v. Whitney Bank* (Overdraft Fees) | M.D. Fla., No. 8:11cv1896 |
| *Sachar v. Iberiabank Corporation*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *Williams v. S.I.F. Consultants* (CorVel Corporation) | 27th Jud. D. Ct. La., No. 09-C-5244-C |
| *Gwiazdowski v. County of Chester* (Prisoner Strip Search) | E.D. Pa., No. 2:08cv4463 |
| *Williams v. Hammerman & Gainer, Inc.* (SIF Consultants) | 27th Jud. D. Ct. La., No. 11-C-3187-B |
| *Williams v. Hammerman & Gainer, Inc.* (Risk Management) | 27th Jud. D. Ct. La., No. 11-C-3187-B |
| *Williams v. Hammerman & Gainer, Inc.* (Hammerman) | 27th Jud. D. Ct. La., No. 11-C-3187-B |
| *Gunderson v. F.A. Richard & Assocs., Inc.* (First Health) | 14th Jud. D. Ct. La., No. 2004-002417 |
| *Delandro v. County of Allegheny* (Prisoner Strip Search) | W.D. Pa., No. 2:06-cv-00927 |
| *Mathena v. Webster Bank, N.A.*, as part of *In re: Checking Account Overdraft* | D. Conn, No. 3:10-cv-01448, as part of S.D. Fla., MDL No. 2036 |
| *Vereen v. Lowe's Home Centers* (Defective Drywall) | Ga. Super. Ct., No. SU10-CV-2267B |
| *Trombley v. National City Bank*, as part of *In re: Checking Account Overdraft* | D.D.C., No. 1:10-CV-00232, as part of S.D. Fla., MDL No. 2036 |



| | |
|---|---|
| ***Schulte v. Fifth Third Bank*** **(Overdraft Fees)** | N.D. Ill., No. 1:09-cv-06655 |
| ***Satterfield v. Simon & Schuster, Inc.*** **(Text Messaging)** | N.D. Cal., No. 06-CV-2893 |
| ***In re: Heartland Data Payment System Inc. Customer Data Security Breach Litigation*** | S.D. Tex., MDL No. 2046 |
| ***Coyle v. Hornell Brewing Co.*** **(Arizona Iced Tea)** | D.N.J., No. 08-CV-2797 |
| ***Holk v. Snapple Beverage Corporation*** | D.N.J., No.  3:07-CV-03018 |
| ***Weiner v. Snapple Beverage Corporation*** | S.D.N.Y., No. 07-CV-08742 |
| ***Gunderson v. F.A. Richard & Assocs., Inc.*** **(Cambridge)** | 14th Jud. D. Ct. La., No. 2004-002417 |
| ***Miller v. Basic Research, LLC*** **(Weight-loss Supplement)** | D. Utah, No. 2:07-cv-00871 |
| ***In re: Countrywide Customer Data Breach Litigation*** | W.D. Ky., MDL No. 1998 |
| ***Boone v. City of Philadelphia*** **(Prisoner Strip Search)** | E.D. Pa., No. 05-CV-1851 |
| ***Little v. Kia Motors America, Inc.*** **(Braking Systems)** | N.J. Super. Ct., No. UNN-L-0800-01 |
| ***Opelousas Trust Authority v. Summit Consulting*** | 27th Jud. D. Ct. La., No. 07-C-3737-B |
| ***Steele v. Pergo*** **(Flooring Products)** | D. Ore., No. 07-CV-01493 |
| ***Pavlov v. Continental Casualty Co.*** **(Long Term Care Insurance)** | N.D. Ohio, No. 5:07-cv-2580 |
| ***Dolen v. ABN AMRO Bank N.V.*** **(Callable CD's)** | Ill. Cir. Ct., Nos. 01-L-454 & 01-L-493 |
| ***In re: Department of Veterans Affairs (VA) Data Theft Litigation*** | D.D.C., MDL No. 1796 |
| ***In re: Katrina Canal Breaches Consolidated Litigation*** | E.D. La., No. 05-4182 |

Hilsoft-cv-146



EXHIBIT G

Summary Notice - Email

To: _____
Re: Class Action Notice: Settlement of *In re: Zoom Video Communications, Inc. Privacy Litigation*

## **COURT APPROVED NOTICE OF CLASS ACTION SETTLEMENT**

*In re*: *Zoom Video Communications, Inc. Privacy Litigation*
*Case No. 5:20-cv-02155*

**If you used the Zoom Meetings Application between March 30, 2016 and July 30, 2021, you could be entitled to benefits, including a cash payment, under a class action settlement.**

*A federal court authorized this Notice.  This is **not** a solicitation from a lawyer.*

**You must file a Claim Form by [Date] to receive cash benefits from this Settlement.  To file a Claim Form, click here [hyperlink].  YOUR CLAIM NUMBER IS: ___.**

**What is this Litigation About?** A Settlement has been reached with Zoom Video Communications, Inc. ("Zoom") relating to alleged privacy and security issues with the Zoom Meetings Application ("App"). Plaintiffs allege that Zoom: (i) shared certain information with third parties, (ii) should have done more to prevent unwanted meeting disruptions by third parties, (iii) advertised its Zoom Meetings App as being encrypted "end-to-end" when Plaintiffs contend it was not at that time, and (iv) that the alleged conduct violated California state and federal laws. Zoom denies these allegations. The court has not decided who is right.

**Who is Included in the Proposed Settlement?** All Persons in the United States who have registered, used, opened, or downloaded the Zoom Meetings App, *except for* (i) all Persons who have only registered, used, opened, or downloaded the Zoom Meetings App through an Enterprise-Level Account or Zoom for Government Account, (ii) Zoom and its officers and directors; and (iii) the Judge or Magistrate Judge to whom the action is assigned and, any member of those Judges' staffs or immediate family members.

**What Relief Does the Settlement Provide?** The Settlement provides money to Class Members who submit a Claim Form postmarked or submitted on www.ZoomMeetingsClassAction.com by [date].  Without admitting liability, the Settlement also requires Zoom to make certain changes to its policies and practices that will benefit Class Members. Zoom will establish an $85 million Settlement Fund. After deducting Court-approved attorneys' fees and expenses (up to $_____), service payments for the Plaintiffs, and the costs of settlement notice and administration from the $85 million Settlement Fund, the remaining funds will be made available, if the settlement is approved, to pay Class Members' valid claims.  Settlement Class members can submit one of the following types of claims:

- **Paid Subscription Claim:**  If you are a Class Member who paid for a Zoom Meetings App subscription, between March 30, 2016 and July 30, 2021, you are eligible to file a claim for

Summary Notice - Email

$25 or 15% of the money you paid to Zoom for the core subscription (i.e., not including optional add on features/support that customers may add to their subscriptions) during that time, whichever is greater. For example, if you spent $75 on a Zoom Meetings App subscription during the relevant time period, 15% of $75 is $11.25. Because $11.25 is less than $25, your claim will be treated as a claim for $25.

- **User Claim:** If you are not eligible for a Paid Subscription Claim and you registered, used, opened, or downloaded the Zoom Meeting App between March 30, 2016 and July 30, 2021 and you are not eligible to submit a Paid Subscription Claim, you are eligible to file a claim for $15.

Please note that these payment amounts may be reduced depending on the number of valid claims. Final payment amounts will be calculated and distributed based on the total number of Class Members who submit valid claims.

This is only a notice of what to expect. Nothing will happen unless the Court approves the Settlement.

**How Do I Get a Payment?** You must submit your claim online at www.ZoomMeetingsClassAction.com or file a paper Claim Form by [Date]. Paper Claim Forms are available at the website or by calling the toll free number.

**Your Other Options:** If you do nothing, your rights will be affected, and you won't get a payment. If you file a Claim Form, object to the Settlement or do nothing, you are choosing to stay in the Settlement Class. You will be legally bound by all orders of the Court and you will not be able to start, continue or be part of any other lawsuit against Zoom about the allegations of the case. If you don't want to be legally bound by the Settlement or receive any benefits from it, you must exclude yourself by [date]. If you do not exclude yourself, you may object to the Settlement by [date].

**The Final Approval Hearing:** The Court has scheduled a hearing in this case (*In re*: *Zoom Video Communications, Inc. Privacy Litigation*, Case No. 5:20-cv-02155) for [Date], to consider: whether to approve the Settlement and award Service Payments, attorneys' fees and expenses costs; as well as consider any objections. You or your attorney may attend and ask to appear at the hearing, but you are not required to do so.

**More Information:** Complete information about all of your rights and options, as well as a Claim Form, a more detailed Long Form Notice and the Settlement Agreement are available at www.ZoomMeetingsClassAction.com, by emailing [claim administrator email], or by calling toll-free [toll free number].

**IMPORTANT NOTE: The dates and deadlines may be changed without further notice to the Settlement Class, so please check the Settlement Website, www.ZoomMeetingsClassAction.com, or the Court's Public Access to Court Electronic Records ("PACER") website at https://ecf.cand.uscourts.gov to confirm that the dates have not been changed.**

Summary Notice - Email

This notice in only a summary. For a more detailed notice or the precise terms and conditions of the settlement, please see the long form notice or Settlement Agreement available at www.ZoomMeetingsClassAction.com, by contacting class counsel at [mailing address], by accessing the Court docket in this case, for a fee, through the Court's PACER system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, 280 South 1st Street, San Jose, CA 95113, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays. You may also contact the Settlement Administrator at [toll free number] or [email address].

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.**

Summary Notice - Postcard

Front Side

# COURT APPROVED NOTICE OF CLASS ACTION SETTLEMENT

***In re*: *Zoom Video Communications, Inc. Privacy Litigation***
***Case No. 5:20-cv-02155***

**If you used the Zoom Meetings Application between March 30, 2016 and July 30, 2021, you could be entitled to benefits, including a cash payment, under a class action settlement.**

*A federal court authorized this Notice.  This is <u>not</u> a solicitation from a lawyer.*

**You must file a Claim Form by [Date] to receive cash benefits from this Settlement.  YOUR CLAIM NUMBER IS:  ___.**

Reverse Side

**What is this Litigation About?** A Settlement has been reached with Zoom Video Communications, Inc. ("Zoom") relating to alleged privacy and security issues with the Zoom Meetings Application ("App"). Plaintiffs allege that Zoom: (i) shared certain information with third parties, (ii) should have done more to prevent unwanted meeting disruptions by third parties, (iii) advertised its Zoom Meetings App as being encrypted "end-to-end" when Plaintiffs contend it was not at that time, and (iv) that the alleged conduct violated California state and federal laws. Zoom denies these allegations. The court has not decided who is right.

**Who is Included in the Settlement?** All Persons in the United States who have registered, used, opened, or downloaded the Zoom Meetings App, other than through an Enterprise-Level Account or Zoom for Government Account, between March 30, 2016 and July 30, 2021. According to Zoom's records, you may be a Settlement Class Member.

**What Relief Does the Settlement Provide?** An $85 million Settlement Fund will be set up to pay valid claims (after deducting Court-approved attorneys' fees and expenses (up to 25% of the Settlement Fund), Plaintiffs' Service Payments, and notice and administration costs). Zoom is making changes to its policies and practices that will benefit Settlement Class Members. Settlement Class Members can submit one of the following claim types:

- **<u>Paid Subscription Claim</u>:** If you paid for a Zoom Meetings App subscription, between March 30, 2016 and July 30, 2021, you can file a claim for $25 or 15% of the money you paid to Zoom for the core subscription, whichever is greater (this does <u>not</u> include optional add on features/support that can be added to subscriptions).  For example, if you spent $75 on a subscription during the relevant time period, 15% of $75 is $11.25.  Since $11.25 is less than $25, your claim will be for $25.

1

- **<u>User Claim</u>:** If you are not eligible for a Paid Subscription Claim and you registered, used, opened, or downloaded the Zoom Meeting App between March 30, 2016 and July 30, 2021, you can file a claim for $15 (you are <u>not</u> eligible to submit a Paid Subscription Claim).

These payment amounts may be reduced depending on the number of valid claims. Nothing will happen unless the Court approves the Settlement.

**How Do I Get a Payment?**  You must submit your claim online at www.ZoomMeetingsClassAction.com or file a paper Claim Form by [Month Day, 2021].  Paper Claim Forms are available at the website or by calling the toll free number.

**Are There Other Options?**  If you do not want to be legally bound by the Settlement, you must exclude yourself by **Month Day, 2021**.  If you do not exclude yourself, you will release your claims against Zoom about all the allegations in case.  You may object to the Settlement by **Month Day, 2021**. The Long Form Notice available on the website explains how to exclude yourself or object.  The Court will hold a Final Approval Hearing on Month Day, 2021 to consider whether to approve the Settlement and award Service Payments, attorneys' fees and expenses costs; and consider any objections.  You or your attorney may attend and ask to appear at the hearing, but you are not required to do so.

**www.ZoomMeetingsClassAction.com**     **1-8XX-XXX-XXXX**

EXHIBIT H

1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**NORTHERN DISTRICT OF CALIFORNIA**

10

**SAN JOSE DIVISION**

11
12
13

IN RE: ZOOM VIDEO
COMMUNICATIONS, INC. PRIVACY
LITIGATION

CASE NO. 5:20-cv-02155-LHK

**CLASS ACTION**

**[PROPOSED] JUDGMENT**

14

This Document Relates To:

15

    ALL ACTIONS.

16
17

    On [date], the Court [granted] Plaintiffs' motion for final approval and [granted] Plaintiffs'

18

motion for a Fee and Expense Award and Service Payments. ECF No. __. Judgment is entered. The

19

Clerk shall close this file.

20

**IT IS SO ORDERED.**

21
22

Dated:

                       _____

23

                       Hon. Lucy H. Koh
                       United States District Judge

24
25
26
27
28