1  MARK C. MOLUMPHY (SBN 168009)
   *mmolumphy@cpmlegal.com*
2  TYSON C. REDENBARGER (SBN 294424)
   *tredenbarger@cpmlegal.com*
3  JULIA Q. PENG (SBN 318396)
   *jpeng@cpmlegal.com*
4  ELLE LEWIS (SBN 238329)
   *elewis@cpmlegal.com*
5  **COTCHETT, PITRE & MCCARTHY, LLP**
6  840 Malcolm Road, Suite 200
   Burlingame, California 94010
7  Tel: (650) 697-6000

8
   TINA WOLFSON (SBN 174806)
9  *twolfson@ahdootwolfson.com*
   ROBERT R. AHDOOT (SBN 172098)
10 *rahdoot@ahdootwolfson.com*
   THEODORE MAYA (SBN 223242)
11 *tmaya@ahdootwolfson.com*
   BRADLEY K. KING (SBN 274399)
12 *bking@ahdootwolfson.com*
   CHRISTOPHER STINER (SBN 276033)
13 *cstiner@ahdootwolfson.com*
   **AHDOOT & WOLFSON, PC**
14 2600 West Olive Avenue, Suite 500
   Burbank, California 91505
15 Tel: (310) 474-9111
16

17 *Interim Co-Lead Class Counsel for the Settlement Class*

18              **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
19

20 IN RE: ZOOM VIDEO COMMUNICATIONS,        CASE NO: 3:20-cv-02155-LB
   INC. PRIVACY LITIGATION
21                                            **PLAINTIFFS' NOTICE OF MOTION**
   This Document Relates To:                  **AND MOTION FOR FINAL APPROVAL**
22                                            **OF SETTLEMENT; MEMORANDUM OF**
       ALL ACTIONS                            **POINTS AND AUTHORITIES IN**
23                                            **SUPPORT THEREOF**

24                                            Judge:      Hon. Laurel Beeler
                                              Courtroom:  B-15th floor
25                                            Date:       April 7, 2022
                                              Time:       9:30 a.m.
26

27

28

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 7, 2022 at 9:30 a.m. in Courtroom B of the United States District Court for the Northern District of California, San Francisco Courthouse, 15th Floor, 450 Golden Gate Ave., San Francisco, CA 94102, the Honorable Laurel Beeler, presiding, Plaintiffs[1] will and hereby do move for an Order:

    (i)     Granting final certification of the Settlement Class under Federal Rules of Civil Procedure ("Rule") 23(a) and 23(b)(3);

    (ii)    Granting final approval of the proposed Settlement reached between Plaintiffs and Defendant Zoom Video Communications, Inc., under Rule 23(e);

    (iii)   Finding that notice has been conducted in accordance with the Court-approved notice plan and comports with due process and Rule 23; and

    (iv)   Dismissing with prejudice Plaintiffs' and Settlement Class Members' claims against Defendant Zoom Video Communications, Inc.

    The hearing will be held via Zoom.  The Settlement Class Members and the general public can access or attend the hearing using the following credentials:

https://cand-uscourts.zoomgov.com/j/1614698626?pwd=eXlQRThFajBjT0tieVBaYWpjMjFodz09

Webinar ID: 161 469 8626; Password: 546984

    Plaintiffs' motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the Joint Declaration of Mark C. Molumphy and Tina Wolfson in Support of Plaintiffs' Motion For (1) Final Approval of Settlement; and (2) Motion for Award of Attorneys' Fees, Expenses, and Service Payments ("Joint Decl.") and all exhibits attached thereto, the Declaration of Cameron R. Azari on Implementation and Adequacy of Settlement Notice Plan and Notices ("Azari Decl.")  all exhibits attached thereto, the Declaration of Jay C. Gandhi in Support of Settlement ("Gandhi Declaration"), the pleadings and records on file in this

---

[1]  Unless otherwise defined herein, capitalized words and terms shall have the same meaning as ascribed to them in the Class Action Settlement Agreement and Release ("Settlement Agreement"). Dkt. No. 191-1.

Action, and other such matters and argument as the Court may consider at the hearing of this motion.

### STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the Court should grant final certification of the Settlement Class under Rules 23(a) and 23(b)(3);

2.      Whether the Court should grant final approval of the Settlement;

3.      Whether the plan of allocation is fair, reasonable, and adequate; and

4.      Whether the Court should enter judgment of dismissal of Plaintiffs' and Settlement Class Members' claims against Defendant Zoom Video Communications, Inc.

Respectfully submitted,

Dated: January 28, 2022              */s/ Mark C. Molumphy*
                                                Mark C. Molumphy

                                                MARK C. MOLUMPHY (SBN 168009)
                                                *mmolumphy@cpmlegal.com*
                                                TYSON C. REDENBARGER (SBN 294424)
                                                *tredenbarger@cpmlegal.com*
                                                JULIA Q. PENG (SBN 318396)
                                                *jpeng@cpmlegal.com*
                                                ELLE LEWIS (SBN 238329)
                                                *elewis@cpmlegal.com*
                                                **COTCHETT, PITRE & MCCARTHY, LLP**
                                                840 Malcolm Road
                                                Burlingame, California 94010
                                                Tel: (650) 697-6000

Dated: January 28, 2022              */s/ Tina Wolfson*
                                                Tina Wolfson

                                                TINA WOLFSON (SBN 174806)
                                                *twolfson@ahdootwolfson.com*
                                                ROBERT R. AHDOOT (SBN 172098)
                                                *rahdoot@ahdootwolfson.com*
                                                THEODORE MAYA (SBN 223242)
                                                *tmaya@ahdootwolfson.com*
                                                BRADLEY K. KING (SBN 274399)
                                                *bking@ahdootwolfson.com*
                                                CHRISTOPHER STINER (SBN 276033)
                                                *cstiner@ahdootwolfson.com*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, California 91505
Tel: (310) 474-9111

*Interim Co-Lead Class Counsel for*
*the Settlement Class*

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ......................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED.............................................................. 2

MEMORANDUM OF POINTS AND AUTHORITIES................................................. 1

I.       INTRODUCTION..................................................................................... 1

II.      BACKGROUND ....................................................................................... 1

         A.      The Litigation and Class Counsel's Efforts on Behalf of the Class ........................ 2

         B.      Settlement Negotiations and Mediation................................................. 4

III.     THE PROPOSED SETTLEMENT ......................................................... 6

         A.      The Settlement Class and Release ......................................................... 6

         B.      The Settlement's Monetary Benefits ..................................................... 6

         C.      Injunctive Relief...................................................................................... 7

         D.      Preliminary Approval ............................................................................. 7

         E.      Notice to the Class .................................................................................. 8

         F.      Class Response......................................................................................... 8

         G.      Epiq's Data Security Efforts for the Settlement Class Member's Information ........ 9

IV.      ARGUMENT ........................................................................................... 10

         A.      Legal Standards for Final Approval...................................................... 10

         B.      The Court Should Certify the Settlement Class .................................. 10

         C.      The Court Should Grant Final Approval of the Settlement ................ 12

                 i.       The Proposed Settlement Provides a Substantial Recovery Given the Risks
                          and Benefits of Continued Litigation...................................................... 12

ii.    The Stage of the Proceedings and the Discovery Completed Support the Settlement ................................................... 16

iii.   The Proposed Settlement is the Product of a Mediator's Proposal and is Supported by Experienced Counsel .......................................... 17

D.    The Proposed Plan of Allocation is Fair, Reasonable, and Adequate ................... 18

E.    The Proposed Attorney Fee Award is Reasonable ................................. 19

F.    The Class Members' Positive Reaction Favors Final Approval ........................... 19

G.    The Court-Approved Notice Program Satisfies Due Process and Adequately Provided Notice to Class Members ......................................................... 20

i.    The Approved Notice Plan was Implemented ............................................ 20

ii.    The Notice Program Satisfies Due Process ................................. 21

**V.    CONCLUSION ...................................................................... 23**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adoma v. Univ. of Phoenix Inc.*,
  913 F. Supp. 2d 964 (E.D. Cal. 2012)........................................................ 10

*In re Banner Health Data Breach Litigation*,
  No. 2:16-cv-02696-PHX (D. Ariz. Dec. 5, 2019), Dkt. No. 170..................... 4

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) .......................................................... 21, 23

*Campbell v. Facebook Inc.*,
  No. 13-CV-05996-PJH, 2017 WL 3581179 (N.D. Cal. Aug. 18, 2017), *aff'd*,
  951 F.3d 1106 (9th Cir. 2020) ................................................................. 15

*Churchill Vill., LLC v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ................................................................... 19

*In re Citric Acid Antitrust Litig.*,
  145 F. Supp. 2d 1152 (N.D.Cal. 2001) ..................................................... 18

*Custom LED, LLC v. eBay, Inc.*,
  No. 12-cv-00350-JST, 2014 WL 2916871 (N.D. Cal. June 24, 2014) ............. 13

*Ebarle v. Lifelock, Inc.*,
  No. 15-cv-00258-HSG, 2016 WL 234364 (N.D. Cal. Jan. 20, 2016) .............. 17

*Ellis v. Naval Air Rework Facility*,
  87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ............. 17

*In Re Experian Data Breach Litig.*,
  No. 8:15-cv-01592 (C.D. Cal. Nov. 12, 2018), Dkt. No. 286-1 ...................... 4

*In re Fleet/Norstar Sec. Litig.*,
  935 F. Supp. 99 (D.R.I. 1996)................................................................... 19

*Four in One Co. v. S.K. Foods, L.P.*,
  No. 2:08-CV-3017-KJM, 2014 WL 4078232 (E.D. Cal. Aug. 14, 2014) .......... 18

*In re Google LLC St. View Elec. Commc'ns Litig.*,
  No. 10-MD-02184-CRB, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) ........... 15

*In re Google Plus Profile Litig.*,
  No. 5:18-cv-06164-EJD, 2021 WL 242887 (N.D. Cal. Jan. 25, 2021) ............. 15

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ............................................................. 20, 21

*In re LDK Solar Sec. Litig.*,
   No. C 07-5182 WHA, 2010 WL 3001384 (N.D. Cal. July 29, 2010) ................................ 13, 14

*In re Linkedin User Priv. Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) ......................................................... 15

*In re Magsafe Apple Power Adapter Litig.*,
   No. 5:091- cv-01911-EJD, 2015 WL 428105 (N.D. Cal. Jan. 30, 2015) ................................ 23

*McCrary v. Elations Co.*,
   No. EDCV 13-0242 JGB, 2016 WL 769703 (C.D. Cal. Feb. 25, 2016) ................................ 23

*McDonald, et al., v Kiloo ApS et al.*,
   No. 3:17-cv-04344-JD (N.D. Cal. Aug. 5, 2020), Dkt. No. 363............................. 4, 15

*Mullins v. Direct Digit., LLC*,
   795 F.3d 654 (7th Cir. 2015) ............................................................. 21

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ......................................................... 19

*Noll v. eBay*,
   309 F.R.D. 593 (N.D. Cal. 2015) ......................................................... 11

*Officers for Just. v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ............................................................. 20

*In re OmniVision Techs, Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................... 13, 18

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ............................................................. 12, 22

*In re Portal Software, Inc. Securities Litigation*,
   No. C-03-5138-VRW, 2007 WL 4171201 (N.D. Cal., Nov. 26, 2007).................................. 16

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
   No. 3:15-MD-2633, 2019 WL 3410382 (D. Or. July 29, 2019)..................................... 4

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ............................................................. 20, 21

*Russell v. Kohl's Dep't Stores, Inc.*,
   No. ED CV 15-1143 RGK, 2016 WL 6694958 (C.D. Cal. Apr. 11, 2016)............................. 23

*Spann v. JC Penney Corp.*,
   314 F.R.D. 312 (C.D. Cal. 2016) ......................................................... 12, 17

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ......................................................................................... 14

*In re Veritas Software Corp. Sec. Litig.*,
    No. C-03-0283-MMC, 2005 WL 3096079 (N.D. Cal. Nov. 15, 2005) *vacated*
    *in part*, 496 F.3d 962 (9th Cir. 2007) ................................................................... 13

*Villegas v. J.P. Morgan Chase & Co.*,
    No. CV 09-00261-SBA, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ............... 18

*In re Vizio, Inc., Consumer Priv. Litig.*,
    No. 8:16-ML-02693-JLS, 2019 WL 12966638 (C.D. Cal. July 31, 2019).............. 15

*Wang v. Chinese Daily News, Inc.*,
    737 F.3d 538 (9th Cir. 2013) ................................................................................ 10

*Williamson v. McAfee, Inc.*,
    No. 5:14-cv-00158-EJD, 2016 WL 4524307 (N.D. Cal. Aug. 30, 2016)................ 23

**Statutes**

California Civil Code § 1710(3) ..................................................................................... 3

California's Comprehensive Data Access and Fraud Act............................................ 3, 4

Consumer Legal Remedies Act ................................................................................. 3, 14

Unfair Competition Law ........................................................................................... 3, 14

**RULES**

L.R 5-1(i)(3)................................................................................................................. 25

**Fed. R. Civ. P. 23**

Rule 23 ..............................................................................................................*passim*

Rule 23(a) ................................................................................................................... 10

Rule 23(a)(1) .............................................................................................................. 11

Rule 23(a)(2) .............................................................................................................. 11

Rule 23(a)(3) .............................................................................................................. 11

Rule 23(a)(4) .............................................................................................................. 11

Rule 23(b) ............................................................................................................. 10, 11

Rule 23(b)(3)................................................................................................ 10, 11, 12, 20

Rule 23(b)(3)(C)-(D) ..................................................................................... 12

Rule 23(c)(2)(B) .................................................................................... 8, 21, 22

Rule 23(c)(2)(B): (1) .................................................................................... 21

Rule 23(e) ..................................................................................................... 12

Rule 23(e)(1) ....................................................................................... 20, 21, 22

Rule 23(e)(2) ...................................................................................... 10, 12

Rule 23(e)(2)(C) ........................................................................................ 19

Rule 23(e)(5) ............................................................................................. 22

Rule 23(h)(1) ............................................................................................. 22

**Other Authorities**

Albert Conte & Herbert Newberg, Newberg On Class Actions §§ 11.22, *et seq.* 4th
    ed. 2002) ............................................................................................... 10

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.**     <u>**INTRODUCTION**</u>

3

4

5

6

7

8

9

10

After a year and a half of hard-fought and contentious litigation, and months of concurrent settlement negotiations, the Parties have agreed to settle Plaintiffs' claims against Zoom Video Communications, Inc. ("Zoom") on a nationwide, class basis.   The Settlement Agreement ("Settlement") establishes a non-reversionary cash fund of $85 million to pay valid claims, notice and administration costs, Service Payments to Plaintiffs, and any attorneys' fees and costs awarded by the Court.  The Settlement also provides comprehensive injunctive relief designed to address the issues on which Plaintiffs' claims are based.  In sum, the Settlement provides an outstanding set of benefits to Settlement Class Members and merits final approval.

11

12

13

14

15

16

17

18

19

The Settlement is the product of well-informed, arm's-length settlement negotiations—including four mediation sessions and extensive further negotiations between experienced counsel facilitated by the Honorable Jay C. Gandhi (Ret.) of JAMS—that spanned over nine months.  It arrived at a critical juncture in the litigation, after extensive motion practice and discovery, but before the Plaintiffs and Settlement Class Members must face the risks of class certification and summary judgment proceedings.  The Settlement presents an excellent recovery and delivers tangible and immediate benefits to the Settlement Class, particularly considering the substantial risks protracted litigation would present.  For these reasons, Judge Koh granted preliminary approval after thoroughly vetting the Settlement.

20

21

22

23

Notice was disseminated to over 150 million Settlement Class Members in accordance with the Preliminary Approval Order.  The response of the Class is overwhelmingly positive so far, with only 148 requests for exclusions and 1 objection as of the filing of this Motion.  The Court should grant final approval.

24

**II.**     <u>**BACKGROUND**</u>

25

26

27

28

Plaintiffs litigated this case diligently, through co-lead counsel Cotchett, Pitre & McCarthy, LLP and Ahdoot & Wolfson, PC (collectively, "Class Counsel"), by: (i) conducting a wide-ranging investigation into the Settlement Class's claims; (ii) filing three comprehensive consolidated complaints in this action (not including the earlier complaints filed in certain Plaintiffs' initial

actions preceding consolidation); (iii) successfully opposing Zoom's motion to dismiss as to key theories of liability; (iv) engaging in comprehensive discovery, including motion practice before Magistrate Judge Susan van Keulen; (v) consulting with experts; (vi) preparing for class certification briefing; (vii) engaging in mediation with Zoom, including the exchange of significant information in connection with such mediation, and many other tasks. As a result, Plaintiffs and Class Counsel had a thorough understanding of the relative strengths and weaknesses of the claims asserted at the time the Settlement was reached.

A.    **The Litigation and Class Counsel's Efforts on Behalf of the Class**

In early 2020, usage of Zoom's video conferencing services increased dramatically in response to the COVID-19 pandemic. *See* Dkt. No. 179, Second Amended Consolidated Class Action ("SAC") ¶ 75. With this increased usage came increased media and press scrutiny of Zoom. Shortly thereafter, reports contended that Zoom claimed to have end-to-end encryption, when in fact Zoom did not offer true end-to-end encryption. *Id.* ¶¶ 160-73. Plaintiffs alleged that Zoom improperly shared its users' data without notice or consent through the use of third party software integrations from companies such as Facebook (*id.* ¶¶ 76-89) and Google (*id.* ¶¶ 109-14). Additionally, Zoom meetings became the target of "Zoombombings"—i.e., unwanted and unauthorized interruptions of Zoom meetings by third-party actors, which Plaintiffs alleged caused numerous problems and disruptions for Zoom and its users. *Id.* ¶¶ 174-80.

Between March and May 2020, 14 class action complaints were filed against Zoom alleging various state and federal claims for misrepresentations and violations of Zoom customers' security and privacy. On May 28, 2020, Judge Koh issued an order consolidating the actions, and on June 30, 2020, appointed Tina Wolfson of Ahdoot & Wolfson, PC and Mark C. Molumphy of Cotchett, Pitre & McCarthy LLP as Interim Co-Lead Counsel. Dkt. No. 62 at 7; Dkt. No. 92 at 2. Rachele R. Byrd of Wolf Haldenstein Adler Freeman & Herz LLP, Albert Y. Chang of Bottini & Bottini, Inc., and Eric H. Gibbs of the Gibbs Law Group LLP were appointed to the Plaintiffs' Steering Committee. *Id.*

On July 30, 2020, Class Counsel filed a Consolidated Amended Complaint ("CAC"). Dkt. No. 114. On September 14, 2020, Zoom filed a motion to dismiss the CAC. Dkt. No. 120. On

October 14, 2020, the Parties filed a joint stipulation whereby Zoom agreed to withdraw its motion to dismiss, Plaintiffs agreed to file an amended complaint, and the Parties set the briefing schedule for Zoom's motion to dismiss Plaintiffs' amended complaint.  Dkt. No. 123.  The Court granted the joint stipulation on October 24, 2020.  Dkt No. 125.

On October 28, 2020, Plaintiffs filed their First Amended Consolidated Class Action Complaint ("FAC"), Dkt No. 126, which (1) added three California plaintiffs—Ms. Angela Doyle, Ms. Sharon Garcia, and Mr. Peter Hirshberg; (2) alleged in greater detail the harms Plaintiffs experienced as a result of Zoom's various alleged violations; (3) alleged additional facts regarding Zoom's alleged failure to warn; and (4) clarified Plaintiffs' position that Zoom's disclosures to third parties are not limited to just the Facebook software development kit ("SDK"), LinkedIn Navigator, or Google Firebase Analytics. Zoom filed its Motion to Dismiss the First Amended Consolidated Class Action Complaint ("MTD") on December 2, 2020.  Dkt. No. 134.

On March 11, 2021, Judge Koh issued an Order Granting in Part and Denying in Part Zoom's Motion to Dismiss ("MTD Order").  Dkt. No. 168.  The Court dismissed the following claims with leave to amend:

- All "Zoombombing" claims to the extent they (1) challenge the harmfulness of content provided by another; and (2) derive from Zoom's status or conduct as a publisher or speaker of that content.

- Count 1: Invasion of privacy under California Law.

- Count 2: Negligence.

- Count 8: California's Comprehensive Data Access and Fraud Act ("CDAFA").

- Counts 6, 7, and 9: Unfair Competition Law ("UCL") claim under the "fraudulent" prong; Consumer Legal Remedies Act ("CLRA"); and California Civil Code § 1710(3) fraudulent concealment.

The Court denied the motion to dismiss as to the following:

- All "Zoombombing" claims to the extent they do not either (1) challenge the harmfulness of content provided by another; or (2) derive from Zoom's status or conduct as a publisher or speaker of that content.

- Count 3: Implied contract.

- Count 4: Implied covenant of good faith and fair dealing.

- Count 6: UCL claims under the "unlawful" and "unfair" prongs.

- Count 5: Unjust enrichment/quasi contract.

*Id.* at 40.

On May 12, 2021, Plaintiffs filed the SAC, which responded to the MTD Order by bolstering the allegations supporting claims that the Court dismissed.   The SAC omits the previously asserted negligence and CDAFA claims, as well as two Plaintiffs who had been named in the FAC.

The Parties engaged in extensive discovery.  *See* Joint Decl. ¶¶ 24-42.  Class Counsel served interrogatories and document requests and obtained written responses and document production from Zoom.  *Id.* ¶ 36.  Zoom also served written discovery, including 60 document requests on each of the Plaintiffs, who provided complete written responses and documents.  *Id.* ¶ 37.  The Parties litigated three discovery motions before Magistrate Judge Susan van Keulen, and an appeal to Judge Koh.  *Id.* ¶¶ 26-35.  The Parties exchanged numerous additional documents and information in connection with the ongoing mediation and settlement discussions.  *Id.* ¶ 45.  Class Counsel also issued over a dozen subpoenas to third parties.  *Id.* ¶ 40.  Plaintiffs had sufficient information to evaluate the claims and negotiate a fair settlement.  *Id.* ¶ 42.

## B.   Settlement Negotiations and Mediation

The Parties engaged in extensive, arms-length negotiations over the course of many months, including four mediation sessions and numerous additional discussions facilitated by Judge Jay C. Gandhi, a former U.S. Magistrate Judge and respected mediator.  *Id.* ¶ 43.  Judge Gandhi has extensive experience in class action litigation, both from his time as a Magistrate Judge in the Central District of California and as a result of mediating many class actions, including multiple data privacy cases where a settlement was reached and subsequently approved.[2]  Judge Gandhi remained highly involved throughout the lengthy negotiation process.  *Id.*

Ahead of the Parties' mediation sessions, the Parties exchanged and vetted information to prepare for and facilitate productive mediation sessions, in addition to extensive information

---

[2] *See, e.g., In Re Experian Data Breach Litig.,* No. 8:15-cv-01592 (C.D. Cal. Nov. 12, 2018), Dkt. No. 286-1 at 7; *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-MD-2633, 2019 WL 3410382, at *1 (D. Or. July 29, 2019); *In re Banner Health Data Breach Litigation*, No. 2:16-cv-02696-PHX (D. Ariz. Dec. 5, 2019), Dkt. No. 170, at 6; *McDonald, et al., v Kiloo ApS et al.,* No. 3:17-cv-04344-JD (N.D. Cal. Aug. 5, 2020), Dkt. No. 363, at 2-3, 13; *see also* https://www.jamsadr.com/gandhi/ (last visited July 30, 2021).

already gleaned through discovery.  *Id.* ¶ 45.  Before any terms were negotiated, the Plaintiffs had a thorough understanding of the composition of the Settlement Class, the nature of Zoom's anticipated defenses on the merits, the likely nature of arguments that would be advanced at class certification, summary judgment, and trial, and the complex technical issues surrounding the claims and defenses, and potential injunctive relief, which Plaintiffs' counsel reviewed and analyzed with their consulting experts.  *Id.* ¶ 44.

With Judge Gandhi's guidance, the Parties commenced mediation in early November 2020, with both sides represented by experienced counsel who fought hard for their clients.  *Id.* ¶ 46. Although progress was made, the case did not settle at that time, and the Parties continued extensive negotiations with Judge Gandhi's assistance.  *Id.*  The Parties reached agreement on certain key terms in early April 2021, and reported this to the Court on April 7, 2021.  Dkt. No. 176.  However, the Parties had yet to reach agreement on many other key terms, and continued to negotiate these issues through additional mediation sessions.  Joint Decl. ¶ 46.  The Parties also participated in numerous video and phone conferences between counsel during which Plaintiffs successfully negotiated the significant injunctive relief promised by the Settlement, in addition to monetary relief.  *Id.* ¶¶ 46-47.  The injunctive relief negotiations extended for weeks, including several iterations and revisions of written proposals and counter-proposals, discussions with Zoom's in-house counsel, consultation with experts, and mediation with Judge Gandhi.  *Id.* ¶ 47. Subsequently, the Parties spent significant time negotiating the details of a fair and workable distribution plan.  *Id.* ¶ 49.  Numerous drafts and redlines of the Settlement Agreement and its many exhibits were exchanged, followed by lengthy discussions between the Parties and negotiations about myriad issues.  *Id*.

The Parties also agreed on the logistics and substance of the notice plan.  *Id.* ¶ 48.  Plaintiffs' counsel spent numerous hours obtaining and negotiating bids from three well-established, experienced, and highly regarded class action notice and administration firms.  *Id.*  As a result, Plaintiffs maximized the amount that would be available to the Settlement Class for payment of claims, by minimizing the notice and administration costs, while ensuring that the notice and administration plan complied with all federal rules and guidelines and due process requirements.

### III.     THE PROPOSED SETTLEMENT

#### A.     The Settlement Class and Release

The proposed Settlement Class is defined as follows:

> [A]ll Persons in the United States who, between March 30, 2016 and the Settlement Date, registered, used, opened, or downloaded the Zoom Meetings Application ("App") except for (i) all Persons who have only registered, used, opened, or downloaded the Zoom Meetings App through an Enterprise-Level Account or a Zoom for Government Account, (ii) Zoom and its officers and directors; and (iii) the Judge or Magistrate Judge to whom the action is assigned and any member of those Judges' staffs or immediate family members.

Settlement Agreement ("SA"), Dkt. No. 191-1, ¶ 1.40.

In exchange for the Settlement's benefits, Settlement Class Members will release any claims against Zoom based on one or more of the same factual predicates alleged in the action.  *Id.* ¶¶ 1.32-1.34, 2-3.

#### B.     The Settlement's Monetary Benefits

The Settlement provides for a non-reversionary cash fund of $85 million.  SA, Dkt. No. 191-1 ¶ 2.1. All Settlement Class Members are eligible for payment, regardless of whether they paid for a Zoom account.  Settlement Class Members who paid for an account will be eligible to file a claim for 15% of the money they paid to Zoom for their core Zoom Meetings subscription during that time or $25, whichever is greater ("Paid Subscription Claim").  *Id.* ¶ 2.2(b).  Settlement Class Members who are not eligible to submit a Paid Subscription Claim may make a claim for $15 ("User Claim").  *Id.* ¶ 2.2(c).  These amounts may be adjusted, up or down, depending on claim volume, the amount of any Fee and Expense Award, Service Payments to Plaintiffs, Taxes and Tax Expenses, and Settlement Administration Expenses.  *Id.* ¶¶ 1.20, 2.4.  The Settlement is designed so that any residual funds are distributed to Settlement Class Members if economically feasible.  *Id.* ¶ 2.5(e).  If not feasible, however, any residual funds will be distributed to the Electronic Frontier Foundation and the Electronic Privacy Information Center, two Section 501(c)(3) non-profit organizations whose work relates directly to the subject matter of the Action and benefits Settlement Class Members.  SA, Dkt. No. 191-1 ¶¶ 1.21, 2.1(c), 2.5(e).

**C.    Injunctive Relief**

Zoom has agreed to over a dozen major changes to its practices, designed to improve meeting security, bolster privacy disclosures, and safeguard consumer data. *Id.* ¶ 3. For example, Zoom agreed to provide in-meeting notifications to make it easier for users to understand who can see, save, and share Zoom users' information and content by alerting users when a meeting host or another participant uses a third-party application during a meeting. *Id.* ¶ 3.1(n). Separately, Zoom must ensure that its privacy statement discloses the ability of Zoom users to share other user's data with third parties via integrations third party software, or otherwise to record meetings, and/or to transcribe meetings. *Id.* ¶ 3.1(m). The Settlement also requires Zoom to (i) not reintegrate the Facebook SDK for iOS into Zoom meetings for a year and will request that Facebook delete any U.S. user data obtained from the SDK (*id.* ¶ 3.1(e),(f)); (ii) develop and maintain, for at least three years, documented protocols and procedures for admitting third-party applications for dissemination to users through Zoom's "Marketplace" (*id.* ¶ 3.1(i)); (iii) develop and maintain a user-support ticket system for internal tracking of, and communication with users about reports of meeting disruptions (*id.* ¶ 3.1(c)); (iv) develop and maintain a documented process for communication with law enforcement about meeting disruptions involving illegal content, including dedicated personnel to report serial meeting disrupters to law enforcement (*id.*); (v) develop and maintain security features such as waiting rooms for attendees, the suspend meeting activities button, and blocking of users from specific countries for a minimum of three years (*id.* ¶¶ 3.1(b), 3.2). The Settlement also requires Zoom to better educate users about the security features available to protect meeting security and privacy, through dedicated space on the Zoom website and banner-type notifications. *Id.* ¶ 3.1(a). Zoom's website will also have centralized information and links for parents whose children are using school-provisioned K-12 accounts. *Id.* ¶ 3.1(p).

**D.    Preliminary Approval**

On July 31, 2021, Plaintiffs filed their motion for preliminary approval of the Settlement. Dkt. No. 190. The Parties attended the preliminary approval hearing in person on October 21, 2021. Dkt. No. 201. On October 21, 2021, the Court granted Plaintiffs' motion for preliminary approval,

1   provisionally certified the nationwide Settlement Class, and directed notice to be issued to the

2   Settlement Class pursuant to the Settlement and preliminary approval order (the "Preliminary

3   Approval Order").  Dkt. No. 204.

4         **E.**      <u>**Notice to the Class**</u>

5          Notice was successfully disseminated to the Settlement Class by Court-approved Settlement

6   Administrator, Epiq Class Action and Claims Solutions, Inc. ("Epiq").  *See* Declaration of Cameron

7   R. Azari on Implementation and Adequacy of Settlement Notice Plan and Notices ("Azari Decl.")

8   ¶¶ 5-6.  The Settlement Administrator completed distribution of the notices to the Settlement Class,

9   in compliance with the Preliminary Approval Order, including (1) direct email and/or postcard

10  notices, (2) a case-specific website, and (3) a case-specific toll-free number.  *Id.*; *see also* SA, Dkt.

11  No. 191-1 § 5.1.  The multipart notice program was designed to, and did, provide the "best notice

12  that is practicable under the circumstances."  *See* Fed. R. Civ. P. 23(c)(2)(B); Azari Decl. ¶ 7.

13         The notice program succeeded.  Between November 19, 2021, through January 3, 2022,

14  158,203,160 class notices were emailed to Settlement Class Members with only 14,303,749

15  undeliverable.  Azari Decl. ¶¶ 19, 21.  485,595 class notices were mailed to Settlement Class

16  Members with only 9,756 undeliverable.  *Id.* ¶¶ 22. 25.  In total, 91% of the notice provided to

17  Settlement Class Members were delivered.  *Id.* ¶ 26.  In addition, as of January 26, 2022, there have

18  been over been 2,343,799 visitors, and 3,818 calls to the toll-free information line, further

19  demonstrating the success of the notice program.  *Id.* ¶¶ 42-43.  There has been extensive media

20  coverage of the Settlement, with information on how to submit a claim, adding to the overall

21  likelihood that Settlement Class Members were provided notice.  *Id.* ¶¶ 38-39.  Additionally, the

22  Parties are providing a reminder email notice to all Settlement Class Members who were previously

23  sent an Email Notice that was deliverable, and who have not already submitted claims or opt-out

24  requests.  *Id.* ¶ 48.  The Parties will provide reminder postcard notices to all Settlement Class

25  Members who were previously sent a Postcard Notice that was deliverable, and who have not

26  already submitted claims or opt-out requests.  *Id.*

27        **F.**      <u>**Class Response**</u>

28         The deadline to submit claims, opt outs, and any objections to the Settlement is March 5,

2022.  As of January 26, 2022, 689,586 valid claims had been submitted, and the Parties expect the number of claims submitted to increase through the remainder of the claims period.[3]  *Id.* ¶¶ 47-48. Conversely, only one objection to the Settlement or requested award of attorneys' fees and expenses has been filed with the Court—representing just 0.0001% of the Settlement Class—and only 148 have requested to opt out of the Settlement.  *Id.* ¶ 46.

### G.   Epiq's Data Security Efforts for the Settlement Class Member's Information

As part of the class action administrator vetting and bidding process, Class Counsel had already discussed at length with Epiq their thorough and rigorous practices and policies to ensure security and privacy of Settlement Class Member data.  Pursuant to the Court's direction at the October 21, 2021, preliminary approval hearing, Class Counsel re-engaged with Epiq to re-confirm that Epiq implemented such best practices.  *Id.* ¶ 10.  Zoom, Plaintiffs and Epiq entered into a non-disclosure agreement that covered Zoom's transfer of information about members of the Settlement Class directly to Epiq.  *Id.*  Zoom provided the data for the Settlement Class directly to Epiq via a secure file transfer.  *Id.*  ¶ 11.  Epiq will not use this data provided by Zoom or information provided by members of the Settlement Class for any other purpose than the administration of the Settlement in this Action.  *Id.*

Epiq stores Settlement Class Member data in world class data centers defended by multi-layered, physical access security including formal ID and prior approval before access is granted, CCTV, alarms, biometric devices, and security guards, 24 hours per day, 7 days per week.  *Id.* ¶ 13. Epiq utilizes industry-leading firewalls and intrusion prevention systems to protect and monitor Epiq's network perimeter with regular vulnerability scans and penetration tests.  *Id.* ¶ 12.  Epiq deploys best-in-class endpoint detection, response, and anti-virus solutions on its endpoints and servers.  *Id.*  Strong authentication mechanisms and multi-factor authentication are required for access to Epiq's systems.  *Id.*  Epiq will retain Settlement Class information only for the pendency

---

[3] The Class Member responses are provided as of January 26, 2022, pursuant to the Court's Procedural Guidance for Class Actions. Plaintiffs will provide an update on any later responses in a supplemental filing after the March 5, 2022 objection / opt-out / claims deadlines and before the April 7, 2022 Final Approval Hearing.

1  of this case, until the resolution of any appeals and final distributions have been made.  *Id.* ¶ 16.

2  Epiq's protections meet the requirements for the best practices for data security in the industry.

3  **IV.   <u>ARGUMENT</u>**

4  **A.   <u>Legal Standards for Final Approval</u>**

5  Final approval is a multi-step inquiry: first, the Court must certify the proposed settlement

6  class; second, it must determine that the settlement proposal is "fair, reasonable, and adequate;" and

7  third, it must assess whether notice has been provided in a manner consistent with Rule 23 and due

8  process.  Fed. R. Civ. P. 23(e)(2); *Adoma v. Univ. of Phoenix Inc.*, 913 F. Supp. 2d 964, 972 (E.D.

9  Cal. 2012).  These procedures safeguard class members' due process rights and enable the Court to

10  fulfill its role as the guardian of class interests.[4]  The Settlement satisfies each of these requirements.

11  **B.   <u>The Court Should Certify the Settlement Class</u>**

12  Class certification under Rule 23 is a two-step process.  First, the plaintiff must demonstrate

13  that numerosity, commonality, typicality, and adequacy are met.  Fed. R. Civ P. 23(a).  "Class

14  certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule

15  23(a) has been satisfied."  *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013)

16  (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)).  A plaintiff must then establish

17  that one of the bases for certification in Rule 23(b) is met.  Here, Plaintiffs must demonstrate that

18  "questions of law or fact common to Class Members predominate over any questions affecting only

19  individual members, and . . . [that] a class action is superior to other available methods for fairly

20  and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

21  On October 21, 2021, the Court preliminarily approved the following Settlement Class

22  definition:

23  All Persons in the United States who, between March 30, 2016 and the Settlement
24  Date, registered, used, opened, or downloaded the Zoom Meetings Application
    ("App"), except for (i) all Persons who have only registered, used, opened, or
25  downloaded the Zoom Meetings App through an Enterprise-Level Account or a
    Zoom for Government Account, (ii) Zoom and its officers and directors, and (iii)

26

27

28  [4]  *See* 4 Albert Conte & Herbert Newberg, Newberg On Class Actions §§ 11.22, *et seq.* 4th ed.
    2002).

the Judge or Magistrate Judge to whom the action is assigned and any member of those Judges' staffs or immediate family members.

Preliminary Approval Order ¶ 6; SA, Dkt. No. 191-1 § 1.40.

Nothing has occurred that would change the Court's previous determination that Plaintiffs have satisfied the requirements under Rule 23. First, pursuant to Rule 23(a)(1), there can be no doubt that numerosity is satisfied as it is undisputed that the class consists of hundreds of millions of persons who have purchased and/or used the Zoom application.

Second, pursuant to Rule 23(a)(2), there are questions of law or fact common to the Settlement Class, including whether Zoom made uniform misrepresentations concerning the privacy and security of its services. Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Each Plaintiff alleges that he or she "used Zoom's services in reliance on Zoom's promises that (a) Zoom does not sell users' data; (b) Zoom takes privacy seriously and adequately protects users' personal information; and (c) Zoom's videoconferences are secured with end-to-end encryption and are protected by passwords and other security measures." SAC ¶¶ 19, 25, 28, 30, 33, 38, 46, 50, 53, 58, 62. Plaintiffs' and the Settlement Class Members' claims arise from the same nucleus of facts, pertain to a common defendant, and are based on the same legal theories. Plaintiffs are typical of other Settlement Class Members. Finally, under Rule 23(a)(4), Plaintiffs and their counsel do not have any conflicts of interest with other Settlement Class Members and have demonstrated their commitment to prosecute the action vigorously on behalf of the class.

The requirements under Rule 23(b) are also satisfied. Plaintiffs seek certification under Rule 23(b)(3), which provides that a class action can be maintained where: (1) the questions of law and fact common to members of the class predominate over any questions affecting only individuals; and (2) the class action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy. *Noll v. eBay*, 309 F.R.D. 593, 604 (N.D. Cal. 2015). Here, every Plaintiff alleged that they were subjected to the same representations and/or conduct concerning privacy and security that caused harm to each Settlement Class Member. These common questions can be resolved for all members of the proposed Settlement Class in a single adjudication. In addition, the class action mechanism is superior for resolving this matter given the

1    very large size of the proposed class weighed against the expense and burden of individual actions.[5]

2    Because Plaintiffs satisfy the Rule 23 requirements, the Court should grant final certification of the

3    Settlement Class.

4    **C.    The Court Should Grant Final Approval of the Settlement**

5    Rule 23(e) requires the district court to determine whether a proposed settlement is "fair,

6    reasonable, and adequate." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir.

7    2015).   To assess the fairness of a class settlement, Ninth Circuit courts consider a number of

8    factors, including: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and

9    likely duration of future litigation; (3) the risk of maintaining class action status throughout the

10   trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of

11   the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental

12   participant; and (8) the reaction of class members to the proposed settlement.   *Id.*   (quoting

13   *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

14   Judge Koh previously determined that the Settlement satisfies each of the requirements of

15   Rule 23(e)(2).   *See* Preliminary Approval Order ¶¶ 1, 8, 9. There is no reason to depart from the

16   Court's preliminary conclusion that the proposed Settlement is fair, adequate, and reasonable.

17   **i.    The Proposed Settlement Provides a Substantial Recovery Given the Risks and Benefits of Continued Litigation**

18   Plaintiffs' allegations centered on three main theories of harm: 1) misrepresentations

19   concerning end-to-end encryption ("E2EE"); 2) unauthorized sharing of user information with third

20   parties; and 3) failure to prevent meeting disruptions.

21   Zoom collected approximately $1.07 billion in Zoom Meetings subscriptions from Settlement

22   Class Members who paid for a subscription. Joint Decl. ¶ 39.   The time period during which this

23   revenue was collected includes when Zoom claims to have corrected its alleged E2EE

24

25   ---

26   [5]  "[I]n the context of settlement, the other requirements of Rule 23(b)(3) such as 'the desirability or undesirability of concentrating the litigation of the claims in the particular forum' and 'the likely difficulties in managing a class action[,]' *see* Fed. R. Civ. P. 23(b)(3)(C)-(D), 'are rendered moot and are irrelevant.'"   *Spann v. JC Penney Corp.*, 314 F.R.D. 312, 323 (C.D. Cal. 2016) (quoting *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 444 (E.D. Cal. 2013); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

27

28

misrepresentations (in April 2020) as well as when it allegedly implemented a new E2EE solution for Zoom Meetings (October 14, 2020, after its acquisition of Keybase[6]).  Nevertheless, the Settlement Fund amount of $85 million represents approximately 8% of the maximum total revenues collected from Settlement Class Members who paid for a subscription and is reasonable in light of the significant risks of litigation.  Joint Decl. ¶ 39.   Lower percentages of maximum potential recoveries have been approved.  *Custom LED, LLC v. eBay, Inc.*, No. 12-cv-00350-JST, 2014 WL 2916871, at *4 (N.D. Cal. June 24, 2014) ("[C]ourts have held that a recovery of only 3% of the maximum potential recovery is fair and reasonable when the plaintiffs face a real possibility of recovering nothing absent the settlement."); *In re OmniVision Techs, Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (6% of potential damages); *In re LDK Solar Sec. Litig.*, No. C 07-5182 WHA, 2010 WL 3001384, at *2 (N.D. Cal. July 29, 2010) (5% of potential damages); *In re Veritas Software Corp. Sec. Litig.*, No. C-03-0283-MMC, 2005 WL 3096079, at *5 (N.D. Cal. Nov. 15, 2005), *vacated in part*, 496 F.3d 962 (9th Cir. 2007) (observing that, from 1991 to 2003, the median percentage of losses paid in settlement ranged from 2.7% to 7.2%), *vacated in part on other grounds*, 496 F.3d 962 (9th Cir. 2007).

Furthermore, the individual recoveries offered by the Settlement are reasonable.  Based on consultation with damage experts, 15% of total core subscription is excellent considering that the E2EE representation was but one feature of the Zoom services among the numerous service benefits that the Paid Subscribers did receive.  Joint Decl. ¶ 39.  And $15 for Settlement Class Members who never paid for Zoom is within the ballpark of what consumers may be willing to receive in exchange for the type of data the SAC alleges Zoom disclosed.  *Id.*  Both the total amount and the proposed allocation of the Settlement are reasonable in light of the substantial risks of litigation.

The Court's Motion to Dismiss Order illustrates the substantial risk that Plaintiffs would

---

[6]  *See* Max Krohn, *Zoom Rolling Out End-to-End Encryption Offering*, Zoom Blog, (Oct. 14, 2020), available at https://blog.zoom.us/zoom-rolling-out-end-to-end-encryption-offering/; Eric S. Yuan, *Zoom Acquires Keybase and Announces Goal of Developing the Most Broadly Used Enterprise End-to-End Encryption Offering*, Zoom Blog, (May 7, 2020), available at https://blog.zoom.us/zoom-acquires-keybase-and-announces-goal-of-developing-the-most-broadly-used-enterprise-end-to-end-encryption-offering/

not be able to recover anything through continued litigation.  For example, the Court dismissed Plaintiffs' claims to the extent that they derive from Zoom's status as a publisher or speaker, and to the extent that the claims are not content-neutral.  Dkt. No. 168 ("MTD Order"), at 17-18.  The Court concluded that "Section 230(c)(1) mostly immunizes Zoom from Plaintiffs' Zoombombing claims here" (*id*. at 18) and that the "bulk of Plaintiffs' Zoombombing claims lie against the 'Zoombombers' who shared heinous content, not Zoom itself.  Zoom merely 'provid[ed] neutral tools for navigating' its service" (*id*. at 19).  According to the Court, Plaintiffs' criticism of Zoom's default features, for example, amount to claims based on Zoom's failure to "edit or block user content," which is activity immunized by Section 230.  *Id*.  Thus, the Court dismissed Plaintiffs' negligence cause of action, as it pertained to emotional distress caused by Zoombombing.[7]  The Court maintained, however, Plaintiffs' breach of implied contract claim, through which they allege they did not obtain the benefit of their bargain in sharing their data with Zoom in exchange for a secure videoconferencing service.  *Id*. at 27; SAC ¶¶ 217-31.

With respect to the E2EE misrepresentation claims, the Court dismissed Plaintiffs' fraud-based misrepresentation claims under the UCL and CLRA in its MTD Order, but it denied dismissal of the non-fraud allegations.  MTD Order at 34-37.  Though Plaintiffs' claims based on Zoom's E2EE misrepresentations survived, Plaintiffs would be required to demonstrate that these misrepresentations were material and consistent at class certification.  *See, e.g.*, *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009).

The Court dismissed Plaintiffs' invasion of privacy claim, concluding Plaintiffs failed to plead Zoom shared *their* personal data through the Facebook SDK, through Zoom's Android application, or through the LinkedIn Sales Navigator.  MTD Order at 20.  The Court required Plaintiffs to show "what information, precisely [certain] third parties have obtained," *Id*. at 23 (citation omitted), and held that failure to allege information such as versions of the Zoom application and operating systems rendered Plaintiffs' allegations inadequately pled.  *Id*.  In response, the SAC provided further allegations regarding the dates and times Plaintiffs first

---

[7]  The Court also held the economic loss rule barred the negligence claim.  MTD Order at 24.

1   downloaded and used the Zoom application, and on their devices.  SAC ¶¶ 17-61.  While Plaintiffs

2   are confident that the amendments cured any pleading defects, and that they would ultimately prove

3   their case, the issues outlined by the Court would continue to present challenges going forward,

4   including at summary judgment.

5          Although Plaintiffs firmly believe their liability case is strong and that class certification is

6   warranted, it is uncertain whether the Court ultimately would grant certification, deny a motion for

7   summary judgment filed by Zoom, or ever find that Plaintiffs are entitled to damages.  Even if

8   Plaintiffs obtained class certification, successfully opposed a motion for summary judgment, and

9   subsequently proved liability at trial, they still would face the significant risk of recovering nothing

10  for the Settlement Class Members because the facts and amount of damages are uncertain.

11         Privacy damages are particularly uncertain and numerous privacy class actions have been

12  settled for non-monetary relief.  *See, e.g., Campbell v. Facebook Inc.*, No. 13-CV-05996-PJH, 2017

13  WL 3581179, at *8 (N.D. Cal. Aug. 18, 2017) (granting final approval of declaratory and injunctive

14  relief settlement in litigation alleging Facebook engaged in user privacy violations), *aff'd*, 951 F.3d

15  1106 (9th Cir. 2020); *In re Google LLC St. View Elec. Commc'ns Litig.*, No. 10-MD-02184-CRB,

16  2020 WL 1288377, at *16 (N.D. Cal. Mar. 18, 2020) (granting final approval of settlement

17  providing class with injunctive relief and creating a non-distributable *cy pres* settlement fund in

18  litigation alleging Google violated privacy by illegally gathering Wi-Fi network data); *McDonald,*

19  *et al. v. Kiloo A/S, et al.*, No. 3:17-cv-04344-JD (N.D. Cal. Apr. 12, 2021), Dkt. No. 406 (granting

20  final approval of 16 injunctive relief-only settlements in related privacy class actions accusing

21  defendants of violating child privacy protection laws by collecting and selling PII of children).

22  The Settlement here compares favorably to these and other class action settlements alleging

23  violations of privacy and security.  *See e.g., In re Google Plus Profile Litig.*, No. 5:18-cv-06164-

24  EJD, 2021 WL 242887, at *1 (N.D. Cal. Jan. 25, 2021) (settlement fund of $7.5 million for 161

25  million Google+ users whose personal information was exposed); *In re Vizio, Inc., Consumer*

26  *Priv. Litig.*, No. 8:16-ML-02693-JLS, 2019 WL 12966638, at *2 (C.D. Cal. July 31, 2019)

27  (settlement fund of $17 million for 16 million potential claimants for unauthorized collection and

28  disclosure of information from customers' VIZIO smart TVs, including IP addresses and device

identifiers); *In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 582 (N.D. Cal. 2015) (settlement fund of $1.25 million for claims related to approximately 6.4 million LinkedIn users' stolen account passwords who were influenced by LinkedIn's statements concerning security and paid for premium subscriptions).  Furthermore, Plaintiffs successfully obtained substantive and meaningful injunctive relief.

Given the anticipated disputes that would inevitably lie ahead, including class certification and summary judgment, and given Defendant's vigorous arguments as to the merits, it is not an overstatement to say that the Plaintiffs faced significant risk.  And, even if Plaintiffs successfully proved their case at trial, the amount of recovery, if any, could vary widely depending on other factors, including the Court's discretion.  Importantly, even if anything were recovered, it would take years to secure, as Zoom undoubtedly would appeal any adverse judgment.  In comparison, the Settlement provides a guaranteed, immediate, and substantial cash recovery of $85 million, plus significant and meaningful injunctive relief.

### ii.   The Stage of the Proceedings and the Discovery Completed Support the Settlement

In a class action setting, courts also look for indications that the parties carefully investigated the claims before reaching a resolution, including propounding and reviewing discovery.  *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 09-00261 SBA, 2016 WL 6248426, at *14 (N.D. Cal. Oct. 25, 2016) ("extensive review of discovery materials indicates [Plaintiffs have] sufficient information to make an informed decision about the Settlement.  As such, this factor favors approving the Settlement."); *see also In re Portal Software, Inc. Securities Litigation*, No. C-03-5138-VRW, 2007 WL 4171201, at *4 (N.D. Cal., Nov. 26, 2007).

As discussed above, Class Counsel engaged in extensive investigation, research, and analysis of the Settlement Class's claims, which resulted in the Court upholding, in part, the FAC.  Class Counsel aggressively pursued discovery through multiple requests for production of documents and interrogatories, intensive meet and confers, and discovery motion practice before Magistrate Judge Susan van Keulen and Judge Koh.  Dkt. Nos. 135, 142, 152, 154, 170.  Zoom

produced tens of thousands of pages of fact-related material for review.  In addition, Class Counsel consulted with experts, subpoenaed documents from over a dozen non-parties, and thereafter engaged in multiple discussions concerning the subpoenas with both the non-parties and Zoom. This discovery allowed Plaintiffs to adequately evaluate the merits of their claims.

### iii.    The Proposed Settlement is the Product of a Mediator's Proposal and is Supported by Experienced Counsel

Courts recognize that the opinion of experienced counsel supporting settlement after arm's-length negotiations is entitled to considerable weight.  *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.").  *Spann*, 314 F.R.D. at 323-24.  Courts also recognize that agreements based upon a mediator's proposal demonstrate non-collusive conduct.  *See, e.g.*, *Ebarle v. Lifelock, Inc.*, No. 15-cv-00258-HSG, 2016 WL 234364, at *6 (N.D. Cal. Jan. 20, 2016) (finding that acceptance of a mediator's proposal following mediation sessions "strongly suggests the absence of collusion or bad faith"); *Spann*, 314 F.R.D. at 324 (same).

Class Counsel conducted an extensive investigation into the alleged claims, diligently prosecuted the case, and faced an aggressive and steadfast defense mounted by a premier firm. Class Counsel also engaged in rigorous negotiations with defense counsel, and fully considered and evaluated the fairness of the Settlement.  The Parties' protracted and hard-fought negotiations included the determined assistance of an experienced mediator.  At Judge Gandhi's direction, the Parties submitted comprehensive mediation briefs and supplemental statements.  Joint Decl. ¶ 45. After submitting their statements, the Parties attended four mediations.  *Id.* ¶ 43. They gave detailed and thoughtful presentations of their respective cases, and Judge Gandhi provided reasonable assessments of the strengths and weaknesses of each side's position.  *See* Gandhi Declaration ¶¶ 12-19.  It was only after several months of intense discussions, and a double-blind mediator's proposal, that the Parties ultimately reached an agreement.  *Id.* ¶ 15.  Even after agreement on the most salient terms was reached, additional months of further negotiations and the mediator's intervention were required.  *Id.*

Additionally, throughout the Action and settlement negotiations, Zoom has been zealously represented by Cooley LLP, their advocacy being no less rigorous than Class Counsel's. Because the Settlement is the product of serious, informed, and non-collusive negotiations among experienced counsel and the product of a mediator's proposal, it merits final approval. *See Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261-SBA, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (noting that private mediation "tends to support the conclusion that the settlement process was not collusive").

### D.    The Proposed Plan of Allocation is Fair, Reasonable, and Adequate

"Approval of a plan for the allocation of a class settlement fund is governed by the same legal standards that are applicable to approval of the settlement; the distribution plan must be 'fair, reasonable and adequate.'" *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D.Cal. 2001) (citations omitted). When allocating funds, "[i]t is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045-46 (N.D. Cal. 2008) (citations omitted) (approving securities class action settlement allocation on a "per-share basis"); *Four in One Co. v. S.K. Foods, L.P.*, No. 2:08-CV-3017 KJM EFC, 2014 WL 4078232, at * 15 (E.D. Cal. Aug. 14, 2014) (approving "plan of allocation providing for a pro rata distribution of the net settlement fund based on verified claimants' volume of qualifying purchases" as "fair, adequate, and reasonable").

All Settlement Class Members are eligible to make claims for cash from the $85 million Settlement Fund. Paid subscribers (other than Enterprise-Level or Government Accounts) will be eligible to claim 15% of the money they paid to Zoom for their core Zoom Meetings subscription between March 30, 2016 and the Settlement Date (July 30, 2021), or $25, whichever amount is greater ("Paid Subscription Claim"). SA, Dkt. No. 191-1 ¶ 2.2(b). Settlement Class Members not eligible to submit a Paid Subscription Claim—those who did not pay for the Zoom Meetings App—are eligible to make a User Claim for $15. *Id.* ¶ 2.2(c).

Settlement Class Members must submit a Claim Form (either online or through the mail) to receive funds. SA, Dkt. No. 191-1 ¶ 2.2. The Claim Form is simple and easy to complete. Those with unique claim numbers (provided on the Summary Notice sent directly to Settlement Class

Members) need only provide their names, mailing address, email and claim number.  Azari Decl. ¶¶ 17-26, Exhibit 4.  Those without claim numbers may also file a claim by providing either an email associated with a Zoom account, a Zoom account number, or failing that, documentation and an attestation demonstrating that they are a Settlement Class Member.  *Id.*, Exhibit 4.  The Settlement Administrator will administer the entire process, including validating the claims and calculating the Settlement Payment amounts in accordance with the Settlement Agreement.  SA, Dkt. No. 191-1 ¶¶ 2.3, 2.5.

### E.      The Proposed Attorney Fee Award is Reasonable

The terms of any proposed attorneys' fees award, including the timing of payment is a factor requiring analysis under Rule 23(e)(2)(C).  As set forth in Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Payments, filed concurrently, Class Counsel seeks attorneys' fees up to 25% of the $85 million Settlement Fund, or $21.25 million, plus out-of-pocket expenses of $130,842.24. Plaintiffs incorporate by reference all arguments in the Motion for Attorneys' Fees, Expenses, and Service Payments filed concurrently herewith.

### F.      The Class Members' Positive Reaction Favors Final Approval

The Court should consider the reaction of class members to the proposed settlement when determining the Settlement's fairness.  *Churchill Vill.*, 361 F.3d at 575.  "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (collecting cases); *see also In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99, 107 (D.R.I. 1996).  While the notice program reached over 143 million Zoom users, as of January 26, 2022, only 148 requests for exclusion were received and only one filed an objection to the Settlement, an extraordinarily low number, representing just 0.0001% of the Settlement Class.  Azari Decl. ¶ 46.  The objection and exclusion deadline is March 5, 2022.

The sole objector, Peter Matthies (Dkt. No. 206) argues that Zoom has done nothing wrong. Mr. Matthies argues that Class Counsel is seeking 20 million in attorneys' fees from an organization that has "helped millions of people," leaving "$15 to $25 dollars as s (sic) settlement."  This

objection does not provide legal authority or support for its position and illustrates the uncertainty of litigation and the inherent risks to the Settlement Class in how a trier-of-fact would view the underlying conduct.

Joseph Lofthouse (Dkt. No. 208) filed a letter with the Court stating, "I reject being included in this class or settlement."  Pursuant to his request, Mr. Lofthouse has been included as an opt-out.  The third of the three letters submitted to the Court was sent to verify that the email notice received was legitimate and not a scam.  *See* Letter from Ed Takken, Dkt. No. 207.  Neither of these letters challenge the terms of the Settlement at all.

### G.   The Court-Approved Notice Program Satisfies Due Process and Adequately Provided Notice to Class Members

Before final approval of a class action settlement, the Court must find that class members were notified in a reasonable manner.  Fed. R. Civ. P. 23(e)(1).  When a settlement class is certified under Rule 23(b)(3), class members must receive "the best notice that is practicable under the circumstances."  Fed. R. Civ. P. 23(b)(3).  The notice program cannot "systematically leave any group without notice."  *Officers for Just. v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982).  Settlement notice must describe "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Lane v. Facebook, Inc*., 696 F.3d 811, 826 (9th Cir. 2012).  The notice plan must ultimately comport with due process requirements. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009).   Here, the Court-approved notice plan implemented by the Parties and the Settlement Administrator comports with due process and was the best practicable means under the circumstances.  *See generally* Azari Decl. ¶¶ 4-6.  In fact, Judge Koh praised the notices to Settlement Class Members for being "clear and concise" and "really user friendly" at the Preliminary Approval Hearing.  Joint Decl. ¶ 50.

#### i.   The Approved Notice Plan was Implemented

The notice program proposed by Plaintiffs in their motion for preliminary approval of the Settlement (Dkt. Nos. 190-194) and approved by the Court in the Preliminary Approval Order (Dkt. No. 204) includes direct notice emailed and/or mailed to Settlement Class Members, and has been

1   fully implemented by Epiq, the Settlement Administrator.  The Parties estimate that direct notice

2   has been sent to over 91% of the class.  Azari Decl. ¶ 26.

3          As set forth in the Azari Declaration, Epiq has (i) emailed 158,203,160 copies of the notice

4   to potential Settlement Class Members, (ii) mailed 485,595 copies of the notice to potential

5   Settlement Class Members, and (iii) created and managed the Settlement Website,

6   www.ZoomMeetingsClassAction.com.  *Id*. ¶¶ 19, 22, 40.  The Settlement Website provides

7   information to potential Settlement Class Members about the litigation and the Settlement, contains

8   links to important settlement documents, and allows Settlement Class Members to file claims

9   electronically.  Settlement Class Members are also provided an automated toll-free line, available

10  24 hours a day, 7 days a week, providing answers to their questions.  *Id*. ¶ 43.  To date, there have

11  been almost 2.5 million visitors to the Settlement Website and almost 4,000 calls to the toll-free

12  line. *Id.* ¶¶ 42, 44.

13          ii.    **The Notice Program Satisfies Due Process**

14          Under Rule 23(c)(2)(B), settlement notice must be "the best notice that is practicable under

15  the circumstances, including individual notice to all members who can be identified through

16  reasonable effort."  *See* Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in a reasonable

17  manner to all class members who would be bound by the propos[ed settlement].").  Notice "must

18  generally describe[] the terms of the settlement in sufficient detail to alert those with adverse

19  viewpoints to investigate and to come forward and be heard."  *Lane*, 696 F.3d at 826 (citation

20  omitted).

21          Due process requires the best notice that is practicable under the circumstances.  *See*

22  *Rodriguez*, 563 F.3d at 963.  It does not require actual notice to each and every class member.

23  *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) ("neither Rule 23 nor the Due

24  Process Clause requires actual notice to each individual class member").  Courts recognize that "it

25  might be impossible to identify some class members for purposes of actual notice."  *Mullins v.*

26  *Direct Digit., LLC*, 795 F.3d 654, 665 (7th Cir. 2015).

27          Here, the notices include all the information required under Rule 23(c)(2)(B): (1) the nature,

28  history, and status of the Action; (2) the definition of the Settlement Class and who is excluded

from it; (3) the reasons the Parties propose the Settlement; (4) the amount of the Settlement Fund; (5) the estimated payment per individual; (6) the Settlement Class's claims and issues; (7) the Parties' disagreement over damages and liability; (8) the amount of Service Payment for Plaintiffs; (9) the plan for allocating the Settlement proceeds to the Settlement Class; and (10) the date, time, and place of the Final Hearing.  *See* Azari Decl., Exhibits 1-11.  The Class Notice satisfies the requirements of Rule 23(h)(1), as it notifies Settlement Class Members that Class Counsel will apply to the Court for attorneys' fees and costs as a percentage of the Settlement Fund and its impact on Settlement Class Members.  *Id.*, Exhibit 4.  The Class Notice complies with Rule 23(e)(5) in that it discusses the rights Settlement Class Members have concerning the Settlement.  *Id.*  The Class Notice includes information on a Settlement Class Member's right to: (1) request exclusion and the manner for submitting such a request; (2) object to the Settlement, or any aspect thereof, and the manner for filing and serving an objection; and (3) participate in the Settlement and instructions on how to complete and submit a Claim Form to the Settlement Administrator.  *Id.*  The Notice also provides contact information for Class Counsel, as well as the postal address for the Court.  *Id.*  The Notice further conveys all information necessary for Settlement Class Members to make informed decisions relating to the Settlement, and all information called for under the Northern District guidelines.  *Id.*

The direct notice procedure and the information posted on the Settlement Website meet the requirements under Rules 23(c)(2)(B) and 23(e)(1) and are consistent with the Northern District's Procedural Guidance.  Specifically, Zoom provided the Settlement Administrator with the email address of record for all registered user members of the Settlement Class, as well as available mailing addresses.  Azari Decl. ¶ 18.  Emails of the Summary Notice were sent by the Settlement Administrator to those whose email addresses were valid; otherwise, the Settlement Administrator mailed a copy of the Summary Notice to that Settlement Class Member, where a physical mailing address was available.  *Id.* ¶¶ 17-18.  A copy of the Class Notice, together with the Claim Form and various Court orders and other filings, has been posted and available for download on the Settlement Website.  *Id.* ¶ 40.  The Settlement administrator successfully reached over 143 million people. Class Counsel also engaged in a media campaign that received 280,171,492 views.  *Id.* ¶ 34.  The

1   Settlement Website has received almost 2.5 million visitors.  *Id.* ¶ 42.  As the Court found in its

2   Preliminary Approval Order, this notice plan was the best practicable notice.

3   The notice program implemented above satisfies due process.  *See, e.g.*, *Online DVDRental*,

4   779 F.3d at 941, 946 (notice was first emailed to 35 million class members and then sent via U.S.

5   mail to over 9 million class members whose email addresses generated bounce-back messages);

6   *McCrary v. Elations Co.*, No. EDCV 13-0242 JGB, 2016 WL 769703, at *7 (C.D. Cal. Feb. 25,

7   2016) (notice was sent via U.S. mail and email); *Briseno*, 844 F.3d at 1129 ("[N]otice by publication

8   . . . on a website . . . is sufficient to satisfy due process.").  Indeed, Judge Beeler has previously

9   approved similar notice programs whereby emails were the primary notice vehicle, *In re Magsafe*

10  *Apple Power Adapter Litig.*, No. 5:091- cv-01911-EJD, 2015 WL 428105, at *10 (N.D. Cal. Jan.

11  30, 2015) (emails sent to over 5 million class members), and courts routinely find that comparable

12  notice procedures meet the requirements of due process and Rule 23.  *Williamson v. McAfee, Inc.*,

13  No. 5:14-cv-00158-EJD, 2016 WL 4524307, at *7-8 (N.D. Cal. Aug. 30, 2016); *Russell v. Kohl's*

14  *Dep't Stores, Inc.*, No. ED CV 15-1143 RGK, 2016 WL 6694958, at *5 (C.D. Cal. Apr. 11, 2016).

15  **V.   CONCLUSION**

16  For the reasons discussed herein, Plaintiffs respectfully request that the Motion be granted.

17  Respectfully submitted,

18  Dated: January 28, 2022          */s/ Mark C. Molumphy*

19  Mark C. Molumphy

20  MARK C. MOLUMPHY (SBN 168009)

21  *mmolumphy@cpmlegal.com*
    TYSON C. REDENBARGER (SBN 294424)

22  *tredenbarger@cpmlegal.com*
    JULIA Q. PENG (SBN 318396)

23  *jpeng@cpmlegal.com*
    ELLE LEWIS (SBN 238329)

24  *elewis@cpmlegal.com*
    **COTCHETT, PITRE & MCCARTHY, LLP**

25  840 Malcolm Road

26  Burlingame, California 94010
    Tel: (650) 697-6000

27

28  Dated: January 28, 2022          */s/ Tina Wolfson*

Tina Wolfson

TINA WOLFSON (SBN 174806)
*twolfson@ahdootwolfson.com*
ROBERT R. AHDOOT (SBN 172098)
*rahdoot@ahdootwolfson.com*
THEODORE MAYA (SBN 223242)
*tmaya@ahdootwolfson.com*
BRADLEY K. KING (SBN 274399)
*bking@ahdootwolfson.com*
CHRISTOPHER STINER (SBN 276033)
*cstiner@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, California 91505
Tel: (310) 474-9111

*Interim Co-Lead Class Counsel for the
Settlement Class*

1

## SIGNATURE ATTESTATION

2          I am the ECF User whose identification and password are being used to file the foregoing

3   Notice of Motion and Motion for Final Approval of Proposed Class Action Settlement;

4   Memorandum of Points and Authorities in Support Thereof.  Pursuant to L.R 5-1(i)(3) regarding

5   signatures, I, Mark C. Molumphy attest that concurrence in the filing of this document has been

6   obtained.

7   DATED: January 28, 2022                    _/s/ Mark C. Molumphy_____
                                               Mark C. Molumphy
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28