MARK C. MOLUMPHY (SBN 168009)
*mmolumphy@cpmlegal.com*
TYSON REDENBARGER (SBN 294424)
*tredenbarger@cpmlegal.com*
JULIA PENG (SBN 318396)
*jpeng@cpmlegal.com*
ELLE LEWIS (SBN 238329)
*elewis@cpmlegal.com*
**COTCHETT, PITRE & McCARTHY LLP**
840 Malcolm Road, Suite 200
Burlingame, CA  94010
Tel: (650) 697-6000

TINA WOLFSON (SBN 174806)
*twolfson@ahdootwolfson.com*
ROBERT AHDOOT (SBN 172098)
*rahdoot@ahdootwolfson.com*
THEODORE MAYA (SBN 223242)
*tmaya@ahdootwolfson.com*
BRADLEY K. KING (SBN 274399)
*bking@ahdootwolfson.com*
CHRISTOPHER STINER (SBN 276033)
*cstiner@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Tel: (310) 474-9111

*Interim Co-Lead Class Counsel for the Settlement Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE ZOOM VIDEO COMMUNICATIONS, INC. PRIVACY LITIGATION<br><br>This Document Relates To:<br><br>    ALL ACTIONS | CASE NO. 3:20-cv-02155-LB<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE PAYMENTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:        Hon. Laurel Beeler<br>Courtroom:  B-15th floor<br>Date:          April 7, 2022<br>Time:          9:30 a.m. |

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on April 7, 2022, at 9:30 a.m., in Courtroom B of the United States District Court for the Northern District of California, San Francisco Courthouse, 15th Floor, 450 Golden Gate Ave., San Francisco, CA 94102, the Honorable Magistrate Judge Laurel Beeler presiding, Plaintiffs will and hereby move for an order pursuant to Rules 23(h)(1) and 54(d)(2) of the Federal Rules of Civil Procedure ("Rule") awarding: (i) Attorneys' Fees to Class Counsel in the amount of $21,250,000, which is 25% of the $85,000,000 non-reversionary Settlement Fund; (ii) unreimbursed expenses totaling $130,842.24 that Class Counsel reasonably and necessarily incurred in furtherance of the prosecution of this Action; and (iii) Service Payments of $5,000 for each of the twelve Plaintiffs.[1]  The hearing will be held via Zoom.  Settlement Class Members and the general public can access or attend the hearing using the following credentials:

https://cand-uscourts.zoomgov.com/j/1614698626?pwd=eXlQRThFajBjT0tieVBaYWpjMjFodz09

Webinar ID: 161 469 8626; Password: 546984

This motion is based upon this Motion, the Memorandum of Points and Authorities, the accompanying Joint Declaration of Mark C. Molumphy and Tina Wolfson in Support of Plaintiffs' Motion for 1) Final Approval of Class Action Settlement; and 2) Motion for Award of Attorneys' Fees, Expenses, and Service Payments ("Joint Decl.") and all exhibits attached thereto, the Declaration of Cameron R. Azari on Implementation and Adequacy of Settlement Notice Plan and Notices ("Azari Decl.") and all exhibits attached thereto, the pleadings on file in this Action, and other such matters and argument as the Court may consider at the hearing on this motion.

### STATEMENT OF ISSUES TO BE DECIDED

1.     Whether the Court should award $21,250,000, which is 25% of the $85,000,000 non-reversionary Settlement Fund, to Class Counsel as attorneys' fees;

---

[1]  Unless otherwise defined herein, capitalized words and terms shall have the same meaning as ascribed to them in the Class Action Settlement Agreement and Release ("Settlement Agreement"). Dkt. No. 191-1.

2.      Whether the Court should award $130,842.24 in unreimbursed expenses that Class Counsel reasonably and necessarily incurred in furtherance of the Action; and

3.      Whether the Court should award Service Payments of $5,000 to each of the twelve Plaintiffs for their time and effort in pursuing this Action.

Respectfully submitted,

DATED:  January 28, 2022

 /s/  Mark C. Molumphy
      Mark C. Molumphy

MARK C. MOLUMPHY (SBN 168009)
*mmolumphy@cpmlegal.com*
TYSON REDENBARGER (SBN 294424)
*tredenbarger@cpmlegal.com*
JULIA PENG (SBN 318396)
*jpeng@cpmlegal.com*
ELLE LEWIS (SBN 238329)
*elewis@cpmlegal.com*
**COTCHETT, PITRE & McCARTHY LLP**
840 Malcolm Road, Suite 200
Burlingame, CA  94010
Tel: (650) 697-6000

DATED:  January 28, 2022

 /s/  Tina Wolfson
      Tina Wolfson

TINA WOLFSON (SBN 174806)
*twolfson@ahdootwolfson.com*
ROBERT AHDOOT (SBN 172098)
*rahdoot@ahdootwolfson.com*
THEODORE MAYA (SBN 223242)
*tmaya@ahdootwolfson.com*
BRADLEY K. KING (SBN 274399)
*bking@ahdootwolfson.com*
CHRISTOPHER STINER (SBN 276033)
*cstiner@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Tel: (310) 474-9111

*Interim Co-Lead Class Counsel for
the Settlement Class*

# TABLE OF CONTENTS

Page

I.    INTRODUCTION...................................................................................1

    A.    Background of the Litigation ...............................................1

    B.    Requested Award ................................................................4

II.   THE COURT SHOULD AWARD ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES ADVANCED FOR THE BENEFIT OF THE CLASS ......................5

    A.    Class Counsel Should Be Awarded Attorneys' Fees from the Common Fund ........5

    B.    The Court Should Use the Percentage of the Fund Method To Calculate Reasonable Attorneys' Fees...........................................6

    C.    The Requested Fee Award is Reasonable ...........................7

        i.    Class Counsel Achieved an Exceptional Result for the Class ....................8

        ii.   There Was Substantial Risk in this Litigation ...............9

        iii.  The Settlement Required Skill and High-Quality Work...........................12

        iv.   Class Counsel Worked for Years on a Full Contingency Basis.................13

        v.    The Award Requested is on Par with Awards in Similar Cases ................14

III.  A LODESTAR CROSS-CHECK CONFIRMS THE REASONABLENESS OF THE REQUESTED FEES ...............................................................................15

    A.    The Number of Hours Devoted to the Case was Reasonable ................16

    B.    The Hourly Rates are Reasonable......................................16

    C.    The Multiplier Is Justified Given the Results Obtained, the Complexity of the Issues, and the Contingent Nature of the Representation ........................18

IV.   CLASS COUNSEL SHOULD BE REIMBURSEd FOR THEIR REASONABLE LITIGATION EXPENSES ...................................................................19

V.    THE REACTION OF THE SETTLEMENT CLASS IS OVERWHELMINGLY POSITIVE ................................................................................................19

VI.   THE REQUESTED CLASS REPRESENTATIVE SERVICE PAYMENTS ARE REASONABLE AND JUSTIFIED ............................................................20

VII.  CONCLUSION .....................................................................................21

# TABLE OF AUTHORITIES

Page

**Cases**

*Allagas v. BP Solar Int'l, Inc.*,
   No. 3:14-cv-00560-SI (EDL), 2016 WL 9114162 (N.D. Cal. Dec. 22, 2016) ........................ 21

*In re Am. Apparel, Inc. S'holder Litig.*,
   No. CV-1006352-MMM, 2014 WL 10212865 (C.D. Cal. July 28, 2014) ............................ 13

*In re Anthem, Inc. Data Breach Litig.*,
   No. 15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ........................ 15, 17

*In re Apple Inc. Device Performance Litig.*,
   386 F. Supp. 3d 1155 (N.D. Cal. 2019) ................................................................ 12

*Barbosa v. Cargill Meat Solutions Corp.*,
   297 F.R.D. 431 (E.D. Cal. 2013) ......................................................................... 13

*Barnes v. The Equinox Grp., Inc.*,
   No. C 10-3586-LB, 2013 WL 3988804 (N.D. Cal. Aug. 2, 2013) ........................................ 6, 7

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015) ........................................................................ 14

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ....................................................................................... 5

*Bower v. Cycle Gear, Inc.*,
   No. 14-CV-02712-HSG, 2016 WL 4439875 (N.D. Cal. Aug. 23, 2016) ................................ 11

*Campbell v. Facebook Inc.*,
   No. 13-CV-05996-PJH, 2017 WL 3581179 (N.D. Cal. Aug. 18, 2017), *aff'd*,
   951 F.3d 1106 (9th Cir. 2020) ............................................................................. 10

*In re Capacitors Antitrust Litig.*,
   No. 3:17-md-02801-JD, 2018 WL 4790575 (N.D. Cal. Sept. 21, 2018).......................... 16

*Ching v. Siemens Indus. Inc.*,
   No. 11-cv-04838-MEJ, 2014 WL 2926210 (N.D. Cal. June 27, 2014)................................ 14

*Craft v. County of San Bernardino*,
   624 F. Supp. 2d 1113 (C.D. Cal. 2008) ................................................................ 18

*Cuviello v. Feld Entm't, Inc.*,
   No. 13-cv-04951-BLF, 2015 WL 154197 (N.D. Cal. Jan. 12, 2015) ................................ 18

*Destefano v. Zynga, Inc.*,
   No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ................................ 7, 11

*Dickey v. Advanced Micro Devices, Inc.*,
   No. 15-cv-04922-HSG, 2020 WL 870928 (N.D. Cal. Feb. 21, 2020) .................................... 17

*Dugan v. Lloyds TSB Bank, PLC*,
   No. C 12-02537-WHA, 2014 WL 1647652 (N.D. Cal. Apr. 24, 2014) .................................. 15

*Eashoo v. Iovate Health Sciences U.S.A., Inc.*,
   No. CV-01726-BRO, 2016 WL 6205785 (C.D. Cal. Apr. 5, 2016) ..................................... 9, 10

*In re Experian Data Breach Litig.*,
   No. SACV 15-01592 AG, 2017 WL 4325583 (C.D. Cal. May 18, 2017) ............................. 12

*Fischel v. Equitable Life Assurance Soc'y*,
   307 F.3d 997 (9th Cir. 2002) .................................................................................................. 17

*Fowler v. Wells Fargo Bank, N.A.*,
   No. 17-CV-02092-HSG, 2019 WL 330910 (N.D. Cal. Jan. 25, 2019) .................................. 17

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
   806 F.3d 125 (3d Cir. 2015) ................................................................................................... 12

*In re Google LLC St. View Elec. Commc'ns Litig.*,
   No. 10-MD-02184-CRB, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) .............................. 10

*In re Google Plus Profile Litig.*,
   No. 5:18-CV-06164-EJD, 2021 WL 242887 (N.D. Cal. Jan. 25, 2021) ................................ 14

*Gutierrez v. Wells Fargo Bank, N.A.*,
   No. C 07-05923 WHA, 2015 WL 2438274 (N.D. Cal. May 21, 2015) .................................. 18

*Hanlon v. Chrysler Group, Inc.*,
   150 F.3d 1011 (9th Cir. 1998) .................................................................................................. 7

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ...................................................................................................... 19

*Harrison v. Bank of Am. Corp.*,
   No. 19-CV-00316-LB, 2021 WL 5507175 (N.D. Cal. Nov. 24, 2021) ........................... *passim*

*In re Heritage Bond Litig*,
   No. 02-ML-1475-DT, 2005 WL 1594389 (C.D. Cal. June 10, 2005) .................................... 13

*Jarrell v. Amerigas Propane, Inc.*,
   No. 16-CV-01481-JST, 2018 WL 1640055 (N.D. Cal. Apr. 5, 2018) ................................... 15

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*,
   No. 16-CV-03698-NC, 2018 WL 2183253 (N.D. Cal. May 11, 2018) ................................. 20

*Kang v. Wells Fargo Bank, N.A.*,
No. 17-CV-06220-BLF, 2021 WL 5826230 (N.D. Cal. Dec. 8, 2021) ................................... 17

*Ketchum v. Moses*,
24 Cal. 4th 1122 (2001) ............................................................................... 18

*Knight v. Red Door Salons, Inc.*,
No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ............................................. 5, 6

*In re Korean Air Lines Co., Ltd. Antitrust Litig.*,
No. CV 07-05107-SJO, 2013 WL 7985367 (C.D. Cal. Dec. 23, 2013) ............................. 6, 7

*Ladore v. Ecolab, Inc.*,
No. CV 11-9386-FMO, 2013 WL 12246339 (C.D. Cal. Nov. 12, 2013) ................................ 14

*In re LendingClub Sec. Litig.*,
No. C 16-02627 WHA, 2018 WL 4586669 (N.D. Cal. Sept. 24, 2018) .................................. 19

*In re: Lenovo Adware Litig.*,
No. 15-MD-02624-RMW, 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) .................. 12, 13, 20

*In re Lidoderm Antitrust Litig.*,
No. 14-MD-02521-WHO, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ............................ 17

*In re Linkedin User Priv. Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015) ....................................................................... 14

*McDonald, et al. v. Kiloo A/S, et al.*,
No. 3:17-cv-04344-JD (N.D. Cal. Apr. 12, 2021), Dkt. No. 406 ........................................ 11

*In re Media Vision Tech. Sec. Litig.*,
913 F. Supp. 1362 (N.D. Cal. 1995) ..................................................................... 19

*Moreyra v. Fresenius Med. Care Holdings, Inc.*,
No. SACV-10-517-JVS, 2013 WL 12248139 (C.D. Cal. Aug. 7, 2013) ................................ 12

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Antitrust Litig.*,
768 F. App'x 651 (9th Cir. 2019) ....................................................................... 18

*In re Nexus 6P Prod. Liab. Litig.*,
No. 17-CV-02185-BLF, 2019 WL 6622842 (N.D. Cal. Nov. 12, 2019) ........................ 14, 15

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) .......................................................... 7, 8, 12, 13

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ........................................................................... 20

*Open Source Sec. v. Perens*,
803 F. App'x 73 (9th Cir. 2020) ........................................................................ 18

*Patel v. Trans Union, LLC*,
  No. 14-CV-00522-LB, 2018 WL 1258194 (N.D. Cal. Mar. 11, 2018) .................................. 15

*Pennsylvania v. Delaware Valley Citizens' Council*,
  483 U.S. 711 (1987) .................................................................................................... 17

*In re Portal Software, Inc. Sec. Litig.*,
  No. C 03-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) ................................... 21

*Powers v. Eichen*,
  229 F.3d 1249 (9th Cir. 2000) ....................................................................................... 7

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
  296 F. Supp. 3d 1230 (D. Or. 2017) ............................................................................. 12

*Roberti v. OSI Sys., Inc.*,
  No. CV13-09174 MWF, 2015 WL 8329916 (C.D. Cal. Dec. 8, 2015) .................................. 11

*Russell v. United States*,
  No. C 09-03239 WHA, 2013 WL 3988778 (N.D. Cal. Aug. 2, 2013) ................................... 5

*Stanger v. China Elec. Motor, Inc.*,
  812 F.3d 734 (9th Cir. 2016) ........................................................................................ 17

*Steiner v. Am. Broad. Co.*,
  248 F. App'x 780 (9th Cir. 2007) ................................................................................. 18

*Tait v. BSH Home Appliances Corp.*,
  No. SACV 10-0711-DOC, 2015 WL 4537463 (C.D. Cal. July 27, 2015) ............................. 6

*Thomas v. MagnaChip Semiconductor Corp.*,
  No. 14-CV-01160-JST, 2018 WL 2234598 (N.D. Cal. May 15, 2018) ........................... 7, 19

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ................................................................................................ 10

*In re Toys R Us-Del., Inc. – Fair and Accurate Credit Transactions Act (FACTA)
  Litig.*,
  295 F.R.D. 438 (C.D. Cal. 2014) .................................................................................. 16

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ............................................................................. *passim*

*In re Vizio, Inc., Consumer Priv. Litig.*,
  238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........................................................................ 12

*In re: Vizio, Inc., Consumer Privacy Litigation*,
  8:16-ml-02693-JLS-KES (C.D. Cal. July 31, 2017) ......................................................... 14

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
  No. 2672 CRB, 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ......................................... 18

*Wallace v. Countrywide Home Loans, Inc.*,
  No. SACV-08-1463 JLS, 2015 WL 13284517 (C.D. Cal. Apr. 17, 2015) ............................ 12

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ............................................................................................ 14

*Weeks v. Kellogg Co.*,
  No. CV-09-8102-MMM, 2013 WL 6531177 (C.D. Cal. Nov. 23, 2013) ............................ 15

*Williams v. MGM-Pathe Commc'ns Co.*,
  129 F.3d 1026 (9th Cir. 1997) ............................................................................................. 7

*Williamson v. McAfee, Inc.*,
  No. 5:14-cv-00158-EJD, 2017 WL 6033070 (N.D. Cal. Feb. 3, 2017) ............................... 6

*Williamson v. Microsemi Corp.*,
  No. 5:14-CV-01827-LHK, 2015 WL 13650045 (N.D. Cal. Feb. 19, 2015) .......................... 5

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020) .............................. 17

*In re Yahoo! Inc. S'holder Derivative Litig.*,
  153 F. Supp. 3d 1107 (N.D. Cal. 2015) ............................................................................. 12

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Class Counsel respectfully move the Court for an attorneys' fee award of 25% of the $85,000,000 non-reversionary Settlement Fund that Zoom Video Communications, Inc. ("Zoom") has agreed to pay to settle this hard-fought litigation.  The amount sought is reasonable given the substantial work performed in the case, the significant recovery obtained for the Settlement Class, including $85 million in cash, as well as more than sixteen key injunctive relief terms that address the claims asserted in this case, i.e., that Zoom lacked true end-to-end encryption, that Zoom shared user data without consent, and that Zoom failed to prevent or properly warn users of Zoombombing.  Under Ninth Circuit and other relevant authorities, the fee award of 25% is fair and reasonable given the tremendous results achieved in the case.  Moreover, the amount requested is also appropriate under the lodestar/multiplier cross-check as the total lodestar of $6,703,688 is reasonable in light of Class Counsel's efforts, and the multiplier of 3.17 is within the range of multipliers approved by courts and further warranted given the quality of the Settlement.

As a result of the Settlement, Settlement Class Members who paid for Zoom's flagship "Meetings" app (between March 30, 2016 and July 30, 2021), have the right to submit a Claim to receive the higher of $25 or 15% of the total amount they paid for their core Zoom Meetings subscription.  Settlement Class Members who did not pay for a subscription (and used Zoom anytime between March 30, 2016 and July 30, 2021), have the right to submit a Claim to receive $15.  Pursuant to the terms of the Settlement, all Claims may be increased or decreased depending on the volume of Claims submitted.  At this stage of the Claims process, it appears that all Settlement Class Members who submit a valid Claim will see an increase of these amounts.

Class Counsel also respectfully request reimbursement of their reasonable expenses in the total amount of $130,842.24 and for the Court to award Service Payments of $5,000 to each of the twelve Plaintiffs for their time and efforts in this successful Action.

### A.   Background of the Litigation

After a year and a half of hard-fought and contentious litigation, the Parties reached an agreement to resolve the Settlement Class Members' claims against Zoom pursuant to the terms

and conditions of the Settlement Agreement.  *See* Settlement Agreement ("SA"), Dkt. No. 191-1. The Settlement was reached after extensive arm's-length negotiations between experienced counsel, including multiple mediation sessions and additional negotiations facilitated by a highly respected mediator, Judge Jay C. Gandhi (Ret.), motion practice, contentious discovery practice, analysis of voluminous information, and consultation with experts.  The Settlement Agreement provides both monetary and injunctive relief:  Zoom will pay $85 million in cash and make meaningful changes relating to its operations, its Meetings app, and its privacy practices.

During the course of the litigation, Mark C. Molumphy of Cotchett, Pitre & McCarthy and Tina Wolfson of Ahdoot & Wolfson (collectively "Class Counsel") performed a significant amount of work, including:

- Conducting a thorough investigation of the Action to develop the theories of liability and determine the facts that formed the basis of the allegations against Zoom.  The research included a review of publicly available information on Zoom's digital privacy and data security practices and unauthorized intrusions into video conferences, as well as numerous scholarly and technical publications regarding cybersecurity best practices applicable to this case, as well as all aspects of consumer data collection and sharing, including dark patterns, co-mingling, anonymization and de-anonymization, and data monetization. Additionally, Class Counsel consulted with technical forensic experts as well as privacy damages experts to form potential theories of liability as well as damage theories.  Class counsel also conducted in-house forensics on various devices to ascertain Zoom's consumer data collection practices during different periods of time.  The pre-suit investigation also included interviews with hundreds of class members regarding their experiences using Zoom;

- Drafting and extensively researching the initial complaints filed by Class Counsel's clients and the three subsequent consolidated complaints which detailed Zoom's various violations, including but not limited to, Zoom's liability related to meeting intrusions, invasion of privacy rights, sharing of user data without consent, implied contract and implied covenant of good faith and fair dealing, unlawful and unfair prongs under the UCL, identifying and describing the claims of Plaintiffs on behalf of the Settlement Class;

- Successfully opposing Zoom's motion to dismiss and evidentiary submission, and conducting exhaustive legal research, much of which was new law, including legal theories surrounding the collection, co-mingling, and sharing of consumer information by technical applications on various consumer devices, cybersecurity liability, and online content publisher immunity;

- Engaging in a comprehensive discovery program, including pursuing documents from Zoom, serving subpoenas on over a dozen third parties, consultations with experts regarding appropriate search terms, extensive search term negotiations and motion practice, and

review of tens of thousands of pages of documents produced by Zoom, and additional documents from third parties and governmental sources;

• Contending with near-constant discovery disputes, requiring weekly discussions and lengthy meet and confer calls with opposing counsel;

• Briefing and arguing several discovery motions before Magistrate Judge Susan van Keulen and Judge Lucy Koh resulting in orders that required Zoom to review and produce hundreds of thousands of documents (Dkt. Nos. 165, 174, 175);

• Responding to Zoom's 60 written discovery requests to each of the 14 Plaintiffs, conducting extensive meet and confers, and reviewing and producing thousands of documents on behalf of Plaintiffs;

• Negotiating at length an ESI protocol, protective order, and search terms and custodians, including briefing disputes over the scope of discovery in the case and appropriate search terms given the claims in the case;

• Consulting with technical experts on various issues relevant to the Action prior to and during the course of the litigation, as well as during settlement negotiations, including the injunctive relief relating to data encryption and privacy improvements. Class Counsel also consulted with a damages expert to value the claims of the Settlement Class;

• Engaging in nine months of settlement negotiations, including four formal mediation sessions and numerous additional discussions;

• Participating in extended injunctive relief negotiations, spanning several months, resulting in over sixteen significant, meaningful changes to Zoom's policies, business, and products which greatly benefits the Settlement Class Members;

• Obtaining several competitive bids for the class notice and claims administration, and negotiating every aspect of said programs and costs to ensure the best practicable and most cost-efficient settlement notice and administration program;

• Collaborating with class action notice experts to create and oversee one of the largest class notice programs in class action history, with notice sent to more than 150 million Settlement Class Members, including reminder emails and postcards, a social media program, and internet advertising;

• Documenting the Settlement with Zoom and briefing the preliminary approval and final approval motions, as well as preparing for and attending the hearings on the motion;

• Overseeing the notice and claims administration process; and

• Coordinating with plaintiffs' counsel in concurrent state cases to ensure efficient and effective litigation against Zoom.

*See* Joint Decl. ¶¶ 9-49.

All told, Class Counsel devoted thousands of hours and advanced significant out-of-pocket expenses to develop and prosecute the Action and negotiate a favorable Settlement for the Settlement Class.  A more detailed account of the litigation and the work performed in this case is provided in the concurrently filed Plaintiffs' Motion for Final Approval of Settlement, the concurrently filed Joint Declaration, and the billing summaries provided to the Court.

**B.**   **Requested Award**

Given these achievements after years of hard-fought litigation on challenging legal and factual grounds, and the lengthy and complex settlement process, Class Counsel respectfully move for an order granting: (1) Attorneys' Fees in the amount of $21.25 million, which is 25% of the non-reversionary Settlement Fund of $85 million; (2) reimbursement of $130,842.24 in litigation expenses that were reasonably and necessarily incurred in prosecuting this Action; and (3) Service Payments of $5,000 for each of the twelve Plaintiffs, totaling $60,000.

The requested fee amount is fair and reasonable in light of the recovery, the expeditious prosecution of this Action, the challenges Plaintiffs faced in this consumer class action, the risk to Class Counsel in representing Plaintiffs on a contingent basis, and the prevailing attorneys' fee jurisprudence in this District and Circuit.  As the Court is aware, consumer class actions are risky, and data privacy claims are difficult to value.  Zoom is represented by a top-tier national law firm that vigorously defended Zoom throughout the litigation.  Nevertheless, Plaintiffs withstood a motion to dismiss, prevailed in extensive discovery motion practice, and negotiated meaningful recovery for the class during protracted, and ofter contentious, settlement discussions.  Joint Decl. ¶¶ 9-49.

These results are impressive considering that there was no guarantee that Plaintiffs would have succeeded at class certification, summary judgment, or at trial.  *Id.* ¶ 44.  Despite such risk, Class Counsel committed a substantial amount of time and resources to this Action without any certainty of recovery.  *Id.* ¶ 55.  In the end, Class Counsel's vigorous prosecution of this Action led to a laudable result for Settlement Class Members, which supports the request for a 25% fee award. A lodestar cross-check also supports the reasonableness of the requested fee, which represents a multiplier of 3.17 on the total lodestar of $6,703,688.

Plaintiffs also respectfully request that the Court award Service Payments of $5,000 to each of the twelve Plaintiffs, in recognition of their significant time and effort in pursuing the litigation and assisting with discovery in order to obtain a positive outcome for the Settlement Class. *Id.* ¶ 69.

For the reasons articulated below, the requested fee and expense award, and service payments are fair and reasonable and should be approved.

## II. THE COURT SHOULD AWARD ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES ADVANCED FOR THE BENEFIT OF THE CLASS

### A. Class Counsel Should Be Awarded Attorneys' Fees from the Common Fund

Class Counsel negotiated a resolution that provides a common fund with a non-reversionary Settlement Fund of $85 million and injunctive relief for members of the Settlement Class. Accordingly, Class Counsel respectfully submit that an award of attorneys' fees in the amount of $21.25 million, or 25% of the Settlement Fund, is fair and reasonable.

"This Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "When counsel's efforts result in the creation of a common fund that benefits a class, counsel have an equitable right to be compensated from that fund as a whole." *Williamson v. Microsemi Corp.*, No. 5:14-CV-01827-LHK, 2015 WL 13650045, at *1 (N.D. Cal. Feb. 19, 2015). "It is well established that a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *5 (N.D. Cal. Feb. 2, 2009) (internal quotation marks and citation omitted). "When counsel recovers a common fund that confers a 'substantial benefit' on a class of beneficiaries, counsel is 'entitled to recover their attorney's fees from the fund.'" *Harrison v. Bank of Am. Corp.*, No. 19-CV-00316-LB, 2021 WL 5507175, at *8 (N.D. Cal. Nov. 24, 2021) (citing *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002)). In granting fees, "a court must ensure that attorney's fees and costs awarded to class counsel are 'fair, reasonable and adequate.'" *Russell*

1   *v. United States*, No. C 09-03239 WHA, 2013 WL 3988778, at *3 (N.D. Cal. Aug. 2, 2013) (citing

2   *Staton v. Boeing Co.*, 327 F.3d 938, 963–64 (9th Cir.2003)).

3       **B.    The Court Should Use the Percentage of the Fund Method To Calculate**

4            **Reasonable Attorneys' Fees**

5       The percentage-of-the-fund method is the best method to determine the reasonableness of

6   attorney's fees requested here.   Under Ninth Circuit law, "the district court has discretion in

7   common fund cases to choose either the percentage-of-the-fund or the lodestar method." *Vizcaino*

8   *v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *see also Williamson v. McAfee, Inc.*, No.

9   5:14-cv-00158-EJD, 2017 WL 6033070, at *1 (N.D. Cal. Feb. 3, 2017).   However, "despite this

10  discretion, use of the percentage method in common fund cases appears to be dominant." *Knight*,

11  2009 WL 248367, at *5.   "The use of the percentage-of-the-fund method in common-fund cases is

12  the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to

13  focus on a showing that a fund conferring benefits on a class was created through the efforts of

14  plaintiffs' counsel." *In re Korean Air Lines Co., Ltd. Antitrust Litig.*, No. CV 07-05107-SJO, 2013

15  WL 7985367, at *1 (C.D. Cal. Dec. 23, 2013).

16      Courts prefer the percentage method because it confers "significant benefits … including

17  consistency with contingency fee calculations in the private market, aligning the lawyers' interests

18  with achieving the highest award for the class members, and reducing the burden on the courts that

19  a complex lodestar calculation requires." *Tait v. BSH Home Appliances Corp.*, No. SACV 10-

20  0711-DOC, 2015 WL 4537463, at *11 (C.D. Cal. July 27, 2015).   By contrast, in a common fund

21  case, the "lodestar method does not necessarily achieve the stated purposes of proportionality,

22  predictability and protection of the class and can encourage unjustified work and protracting the

23  litigation." *Barnes v. The Equinox Grp., Inc.*, No. C 10-3586-LB, 2013 WL 3988804, at *3 (N.D.

24  Cal. Aug. 2, 2013).

25      The nature of this action warrants application of the percentage-of-the-fund approach, the

26  principal, and "prevailing practice in the Ninth Circuit," to determine the reasonableness of Class

27  Counsel's fee request. *Korean Air Lines*, 2013 WL 7985367, at *1.   As the Court determined in

28  *Barnes*, "the percentage-of-the-fund method is appropriate where—as here—the amount of the

settlement is fixed without any reversionary payment to the defendant." *Id.*, 2013 WL 3988804, at *3. The courts in this Circuit have similarly held that where the "benefit to the class is easily quantified in common-fund settlements," district courts may "award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2018 WL 2234598, at *3 (N.D. Cal. May 15, 2018) (citing *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)).

Here, Class Counsel seek a percentage from the non-reversionary Settlement Fund of $85 million, and the amount is fixed and easily quantifiable. Additionally, the percentage method is appropriate given Class Counsel's efficient litigation of this case. *Barnes*, 2013 WL 3988804, at *3. These factors weigh in favor of employing the percentage of the fund method. *See also Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016) ("Because this case involves a common settlement fund with an easily quantifiable benefit to the Class, the Court will primarily determine attorneys' fees using the percentage method . . .").

## C.   The Requested Fee Award is Reasonable

In applying the percentage of the fund method, the Ninth Circuit has established 25% as a benchmark for attorneys' fee awards. *See Harrison*, 2021 WL 5507175, at *8; *Vizcaino*, 290 F.3d at 1047; *Powers v. Eichen*, 229 F.3d 1249, 1257 (9th Cir. 2000); *Hanlon v. Chrysler Group, Inc.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997). Even though the Ninth Circuit has established the 25% benchmark, "in most common fund cases, the award exceeds that benchmark." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008). "Where a court adopts the percentage method, absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%." *Id.* at 1048 (internal quotation marks and citations omitted).

The Ninth Circuit has identified several factors a court should consider to determine whether to award or adjust a fee award from the benchmark: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *See Vizcaino*,

290 F.3d at 1048–50.  Here, although Class Counsel request benchmark fees of 25%, an analysis of the *Vizcaino* factors confirms that the request is appropriate.

### i.  Class Counsel Achieved an Exceptional Result for the Class

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award."  *Omnivision*, 559 F. Supp. 2d at 1046.  Here, the overall result and the benefit to the Settlement Class, warrants an award of the benchmark 25% fees for Class Counsel.  The Settlement Fund amount of $85 million is an excellent result – it represents approximately 8% of the total revenues collected based on the allegedly unlawful practices, and is reasonable in light of the significant risks of litigation.  Joint Decl. ¶ 39.

All Settlement Class Members are eligible to make claims for cash.  Paid subscribers (other than Enterprise-Level or Government Accounts) will be eligible to receive 15% of the money they paid to Zoom for their core Zoom Meetings subscription between March 30, 2016 and the Settlement Date (July 30, 2021), or $25, whichever amount is greater ("Paid Subscription Claim").  SA, Dkt. No. 191-1 ¶ 2.2(b).  Class Members not eligible to submit a Paid Subscription Claim— those who did not pay for the Zoom Meetings App—are eligible to make a "User Claim" for $15.  *Id.* ¶ 2.2(c).

Based on consultation with damage experts, the Settlement's monetary benefit provides a substantial recovery—particularly considering the risks of this case.  For example, the 15% recovery is significant considering the alleged end-to-end encryption misrepresentations concern just one feature of Zoom services among the numerous benefits that Paid Subscribers received.  Moreover, the proposed payment of $15 to Settlement Class Members who never paid for Zoom is within the ballpark of what consumers may be willing to receive in exchange for the type of data the Second Amended Consolidated Complaint ("SAC") alleges Zoom disclosed.  *See* SAC, Dkt. No. 179; Joint Decl. ¶ 39.  The total monetary recovery of $85 million also represents a significant percentage of the Class' potential damages were they to prevail at trial, taking into account the limited theories of recovery that were allowed to proceed following motions to dismiss, based primarily on implied contract claims, and taking into account the significant risks of no recovery in the event a class was not certified or the Class did not prevail at trial on their claims.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ii. There Was Substantial Risk in this Litigation

The risk associated with litigation is a key consideration in determining whether a requested fee award is reasonable.  *Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant circumstance" in applying the percentage of the fund method); *see Eashoo v. Iovate Health Sciences U.S.A., Inc.*, No. CV-01726-BRO, 2016 WL 6205785, at *9 (C.D. Cal. Apr. 5, 2016) (internal quotation marks and citation omitted) ("The risk that further litigation might result in no recovery is a significant factor in assessing the fairness and reasonableness of an award of attorneys' fees.").

Here, Class Counsel faced numerous hurdles throughout the litigation that could have substantially narrowed or precluded any recovery in this case.  Class Counsel assumed the risk of challenging Zoom, a well-resourced defendant that would have continued to vigorously defend its business practices had the litigation gone forward.  Zoom contested its liability from the very beginning, asserting that Plaintiffs had failed to adequately allege any viable claims, filing multiple motions to dismiss, and seeking to drastically limit the scope of the case after the Court's Motion to Dismiss ("MTD") Order.  Joint Decl. ¶ 55.  Indeed, it was only through Class Counsels' ingenuity and diligence that Plaintiffs successfully defended Zoom's motion to stay discovery and obtained two orders requiring Zoom to review and produce hundreds of thousands of documents.  *Id.*

The MTD Order illustrates the substantial risk that Plaintiffs would not be able to recover anything through continued litigation.  For example, the Court dismissed Plaintiffs' claims to the extent that they derive from Zoom's status as a publisher or speaker, and to the extent that the claims are not content-neutral.  Dkt. No. 168 at 17-18.  The Court concluded that "Section 230(c)(1) mostly immunizes Zoom from Plaintiffs' Zoombombing claims here" (*id.* at 18) and that the "bulk of Plaintiffs' Zoombombing claims lie against the 'Zoombombers' who shared heinous content, not Zoom itself.  Zoom merely 'provid[ed] neutral tools for navigating' its service." *Id.* at 19. According to the Court, Plaintiffs' criticism of Zoom's default features, for example, amount to claims based on Zoom's failure to "edit or block user content," which is activity immunized by Section 230.  *Id.*  Thus, the Court dismissed Plaintiffs' negligence cause of action, as it pertained

to emotional distress caused by Zoombombing.[2]   The Court maintained, however, Plaintiffs' breach of implied contract claim, through which Plaintiffs allege they did not obtain the benefit of their bargain in sharing their data with Zoom in exchange for a secure videoconferencing service.  *Id*. at 27; SAC, Dkt. No. 179 ¶¶ 217-31.

With respect to the end-to-end encryption misrepresentation claims, the Court dismissed Plaintiffs' fraud-based misrepresentation claims under the UCL and CLRA in its MTD Order, but it denied dismissal of the non-fraud allegations.  Dkt. No. 168 at 34-37.  Although Plaintiffs' claims based on Zoom's end-to-end encryption misrepresentations survived, Plaintiffs later would be required to demonstrate that these misrepresentations were material and consistent in order to certify them.  *See, e.g.*, *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009).

The Court also dismissed Plaintiffs' invasion of privacy claim, concluding Plaintiffs failed to plead Zoom shared *their* personal data through the Facebook SDK, through Zoom's android application, or through the LinkedIn Sales Navigator.  Dkt. No. 168 at 20.  The Court required Plaintiffs to show "what information, precisely [certain] third parties have obtained," (*id*. at 23, citation omitted), and held that failure to allege detailed information, such as versions of the Zoom application and the operating systems used, rendered Plaintiff's allegations inadequately pled.  *Id*. In response, the SAC provided further allegations regarding the dates and times Plaintiffs first downloaded and used the Zoom application, and on their devices.  SAC, Dkt. No. 179 ¶¶ 17-61; Joint Decl. ¶ 22.   While Plaintiffs are confident that the amendments cured any pleading defects, and that they would ultimately prove their case, the issues outlined by the Court would continue to present challenges going forward, including at summary judgment.

Privacy damages are particularly uncertain and numerous privacy class actions have been settled for non-monetary relief only.  *See, e.g., Campbell v. Facebook Inc.*, No. 13-CV-05996-PJH, 2017 WL 3581179, at *8 (N.D. Cal. Aug. 18, 2017) (granting final approval of declaratory and injunctive relief settlement in litigation alleging Facebook engaged in user privacy violations), *aff'd*, 951 F.3d 1106 (9th Cir. 2020); *In re Google LLC St. View Elec. Commc'ns Litig.*, No. 10-

---

[2]  The Court also held the economic loss rule barred the negligence claim.  Dkt. No. 168 at 24.

MD-02184-CRB, 2020 WL 1288377, at *16 (N.D. Cal. Mar. 18, 2020) (granting final approval of settlement providing class with injunctive relief and creating a non-distributable *cy pres* settlement fund in litigation alleging Google violated privacy by illegally gathering Wi-Fi network data); *McDonald, et al. v. Kiloo A/S, et al.*, No. 3:17-cv-04344-JD (N.D. Cal. Apr. 12, 2021), Dkt. No. 406 (granting final approval of 16 injunctive relief-only settlements in related privacy class actions accusing defendants of violating child privacy protection laws by collecting and selling PII of children).

Although Plaintiffs firmly believe their liability case is strong and that class certification is warranted, it is uncertain whether the Court ultimately would grant certification, deny a motion for summary judgment filed by Zoom, or ever find that Plaintiffs are entitled to damages. Even if Plaintiffs obtained class certification, successfully opposed a motion for summary judgment, and subsequently proved liability at trial, they still would face the significant risk of recovering nothing because the facts and amount of damages were uncertain. And even if Plaintiffs were to have successfully obtained class certification, there is no assurance that Plaintiffs would have secured a victory at trial and maintained it on appeal.

Given the anticipated disputes that would inevitably lie ahead, including class certification and summary judgment, and given Zoom's vigorous arguments as to the merits, it is not an overstatement to say that the Plaintiffs faced significant risk. Importantly, even if anything were recovered, it would take years to secure, as Zoom undoubtedly would appeal any adverse judgment. In comparison, the Settlement provides a guaranteed, immediate, and substantial cash recovery of $85 million, plus significant injunctive relief.

The risk of little or no recovery weighs in favor of the requested fee award. As courts in the Ninth Circuit have concluded, there are considerable risks related to obtaining class certification, surviving summary judgment, prevailing at trial, and "withstanding a potential appeal." *See Bower v. Cycle Gear, Inc*., No. 14-CV-02712-HSG, 2016 WL 4439875, at *7 (N.D. Cal. Aug. 23, 2016); *see also Destefano*, 2016 WL 537946, at *17 (noting the "substantial" risk associated with "obtaining [and maintaining] class certification"); *Roberti v. OSI Sys., Inc.*, No. CV13-09174 MWF (MRWx), 2015 WL 8329916, at *6 (C.D. Cal. Dec. 8, 2015) (the defendant's "vigorous opposition"

1  represented a "substantial" risk weighing in favor of the requested attorney's fees).

2  **iii.  The Settlement Required Skill and High-Quality Work**

3  Class Counsel's experience and the skill they brought to bear in this case also favor the fee

4  award.  Together, Class Counsel have litigated complex consumer and privacy class actions for

5  over four decades.  Joint Decl. ¶¶ 1-2.  Class Counsel have significant expertise in high-profile

6  privacy cases and consumer class actions.  *See, e.g.,* privacy cases (*In re Experian Data Breach*

7  *Litig.*, No. SACV 15-01592 AG, 2017 WL 4325583 (C.D. Cal. May 18, 2017); *In re Premera Blue*

8  *Cross Customer Data Sec. Breach Litig.*, 296 F. Supp. 3d 1230 (D. Or. 2017); *In re Google Inc.*

9  *Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125 (3d Cir. 2015); *In re Vizio, Inc., Consumer*

10  *Priv. Litig.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017); *In re: Lenovo Adware Litig.*, No. 15-MD-

11  02624-RMW, 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016)) and other types of class actions arising

12  out of technological vulnerabilities (*In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d

13  1155 (N.D. Cal. 2019); *In re Yahoo! Inc. S'holder Derivative Litig.,* 153 F. Supp. 3d 1107 (N.D.

14  Cal. 2015).

15  The quality of Class Counsel's representation is reflected in the work they performed

16  throughout the case and, ultimately, in the favorable Settlement for the Settlement Class.  "The

17  prosecution and management of a complex national class action requires unique legal skills and

18  abilities."  *Omnivision*, 559 F. Supp. 2d at 1047.  *See also Moreyra v. Fresenius Med. Care*

19  *Holdings, Inc.*, No. SACV-10-517-JVS, 2013 WL 12248139, at *3 (C.D. Cal. Aug. 7, 2013) (noting

20  that the result is "[t]he single clearest factor reflecting the quality of class counsels' services")

21  (quoting *In re Heritage Bond Litig*, No. 02-ML-1475-DT, 2005 WL 1594389, at *12 (C.D. Cal.

22  June 10, 2005)); *see Wallace v. Countrywide Home Loans, Inc.*, No. SACV-08-1463 JLS, 2015 WL

23  13284517, at *9 (C.D. Cal. Apr. 17, 2015) (noting customary factors reflecting counsel's skill such

24  as developing the facts and legal claims, conducting discovery, reviewing documents, retaining

25  experts, motion practice, and negotiating and drafting the settlement).

26  As discussed above, "[t]he settlement was not reached lightly," as Zoom's aggressive

27  defense required significant skill and experience to effectively navigate.  Over the course of nearly

28  two years, Class Counsel aggressively pursued discovery, resulting in the review and analysis of

thousands of pages of internal documents from Zoom.  Joint Decl. ¶ 36.  All this effort put Class Counsel in the best possible position to negotiate a favorable resolution for the class.  *Id*. ¶ 44. *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013) (class counsel used their "specialized skill" in the particular area of law which represented an asset to class members and weighed in favor of the fee request); *Omnivision*, 559 F. Supp. 2d at 1047 (that Plaintiffs' case withstood a motion to dismiss, "despite other weaknesses, is some testament to Lead Counsel's skill.  This factor also supports the requested fee."); *Heritage Bond*, 2005 WL 1594403, at *19 (fact investigation, detailed complaints, extensive motion practice, review of numerous documents, and demonstrated class counsel's legal skills); *Lenovo*, 2019 WL 1791420, at *8 (noting favorable result given that the case had "been actively litigated for the past four years, and required complex legal and factual research and analysis by Class Counsel").

The quality of opposing counsel should also be considered when evaluating the performance of Class Counsel.  *See In re Am. Apparel, Inc. S'holder Litig.*, No. CV-1006352-MMM, 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014) ("In addition to the difficulty of the legal and factual issues raised, the court should also consider the quality of opposing counsel as a measure of the skill required to litigate the case successfully.") (citing *Wing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997)).  Zoom was represented in this case by Cooley, LLP, a highly respected national law firm with significant resources and substantial experience defending privacy cases and consumer class actions.  This factor, therefore, weighs in favor of the requested fee award.  *See Heritage Bond*, 2005 WL 1594403, at *20 ("There is also no dispute that the plaintiffs in this litigation were opposed by highly skilled and respected counsel with well-deserved local and nationwide reputations for vigorous advocacy in the defense of their clients.").

### iv.   Class Counsel Worked for Years on a Full Contingency Basis

Class Counsel took this matter on a contingency basis and advanced all necessary professional time and expenses for nearly two years.  Joint Decl. ¶¶ 55-67.  In common fund cases, "attorneys whose compensation depends on their winning the case must make up in compensation in the cases they win for the lack of compensation in the cases they lose."  *Vizcaino*, 290 F.3d at 1051.  "When counsel takes cases on a contingency fee basis, and litigation is protracted, the risk

of non-payment after years of litigation justifies a significant fee award." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015). "This substantial outlay, when there is a risk that none of it will be recovered, further supports the award of the requested fees." *In re Nexus 6P Prod. Liab. Litig.,* No. 17-CV-02185-BLF, 2019 WL 6622842, at *13 (N.D. Cal. Nov. 12, 2019) (quoting *Omnivision*, 559 F. Supp. 2d at 1047). "Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work." *Ching v. Siemens Indus. Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014); *see also In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases."). "A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services." *Ladore v. Ecolab, Inc.*, No. CV 11-9386-FMO, 2013 WL 12246339, at *11 (C.D. Cal. Nov. 12, 2013).

### v.   The Award Requested is on Par with Awards in Similar Cases

The Settlement here compares favorably to other class action settlements alleging violations of privacy and security. *See, e.g.*, *In re Google Plus Profile Litig.*, No. 5:18-CV-06164-EJD, 2021 WL 242887 (N.D. Cal. Jan. 25, 2021) (settlement fund of $7.5 million for 161 million Google+ users whose personal information was exposed); *In re: Vizio, Inc., Consumer Privacy Litigation*, 8:16-ml-02693-JLS-KES (C.D. Cal. July 31, 2017) (settlement fund of $17 million for 16 million potential claimants for unauthorized collection and disclosure of information from customers' VIZIO smart TVs, including IP addresses and device identifiers); *In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 582 (N.D. Cal. 2015) (settlement fund of $1.25 million for claims related to approximately 6.4 million LinkedIn users' stolen account passwords who were influenced by LinkedIn's statements concerning security and paid for premium subscriptions). Furthermore, Plaintiffs successfully obtained substantive and meaningful injunctive relief.

In comparable technology cases, courts in this district have awarded fees above the 25%

benchmark.  Specifically, in a case involving Google and Hauwei's joint venture to develop and sell the "Nexus 6P" smartphone, Judge Freeman concluded that "Plaintiffs' request for a 30% fee falls within the usual range of common fund cases."  *Nexus 6P*, 2019 WL 6622842, at *13.  Judge William Alsup has held that a 35% fee was reasonable in an action alleging consumer protection claims.  *Dugan v. Lloyds TSB Bank, PLC*, No. C 12-02537-WHA, 2014 WL 1647652, at *3 (N.D. Cal. Apr. 24, 2014).  Judge Koh has held that "a percentage of 27% should be applied to the $115 million Settlement Fund" in a data breach case.  *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *16 (N.D. Cal. Aug. 17, 2018).  The Court awarded one-third of the settlement fund in a consumer class action matter involving erroneous information on credit reports.  *Patel v. Trans Union, LLC*, No. 14-CV-00522-LB, 2018 WL 1258194, at *5 (N.D. Cal. Mar. 11, 2018).  Accordingly, Class Counsels' request for 25% of the Settlement Fund is well within the range of fees awarded in other cases, obtaining similarly exceptional results.

## III.    A LODESTAR CROSS-CHECK CONFIRMS THE REASONABLENESS OF THE REQUESTED FEES

If the court applies the percentage method, then it typically calculates the lodestar as a "cross-check to assess the reasonableness of the percentage award."  *See, e.g., Weeks v. Kellogg Co.*, No. CV-09-8102-MMM, 2013 WL 6531177, at *25 (C.D. Cal. Nov. 23, 2013); *See Vizcaino*, 290 F.3d at 1050 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award.").  Under a lodestar cross-check, "the lodestar ... is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate."  *Harrison*, 2021 WL 5507175, at *8 (citations omitted).  The "court has broad discretion in setting the reasonable hourly rates used in the lodestar calculation" and "can rely on its own experience."  *Harrison*, 2021 WL 5507175, at *9 (internal quotation marks and citations omitted).

In performing the cross-check, however, "the determination of fees should not result in a second major litigation," and "trial courts need not, and indeed should not, become green-eyeshade accountants.  The essential goal ... is to do rough justice, not to achieve auditing perfection."  *Jarrell v. Amerigas Propane, Inc.*, No. 16-CV-01481-JST, 2018 WL 1640055, at *4 (N.D. Cal. Apr. 5,

2018) (citations omitted); *see also In re Capacitors Antitrust Litig.*, No. 3:17-md-02801-JD, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) (the cross-check does not require "mathematical precision nor bean-counting") (citation omitted); *In re Toys R Us-Del., Inc. – Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 460 (C.D. Cal. 2014) ("In cases where courts apply the percentage method to calculate fees, they should use a rough calculation of the lodestar as a cross-check to assess the reasonableness of the percentage award.").

## A.    The Number of Hours Devoted to the Case was Reasonable

Pursuant to the Court's initial appointment order, Class Counsel and Plaintiffs' Steering Committee ("PSC") maintained contemporaneous time records.  Class Counsel collected and audited all reported time on a regular basis.  As reflected in these reports, Class Counsel performed a significant amount of work in this Action, including preparing the consolidated complaints after comprehensive legal, factual and technical research, opposing dispositive motions, consulting with experts to improve Zoom's Meetings app and transparency to Settlement Class Members, engaging in extensive formal, hard-fought discovery, and participating in mediation and settlement negotiations.  Joint Decl. ¶¶ 53-57.  Moreover, Class Counsel closely monitored the work and assignments of members of the PSC to ensure fairness and order, as well as to minimize any work duplication.  *Id.*  In total, following the respective appointment of lead counsel, Class Counsel collectively devoted 9,993 hours on this matter through December 31, 2021.  *Id.* at ¶ 59.  This lodestar also does not include any time spent by counsel in the California state court action, which will be dismissed as part of this global resolution, and fees paid solely from any award made in this Action to Class Counsel.  Including California state counsel's collective lodestar of $416,742.00, the requested fee award would result in a multiplier of 2.98.  *Id.*  In light of the needs of the case and the amount and quality of attorney work performed, the amount of hours spent is reasonable. *Id.* at ¶¶ 53-57.

## B.    The Hourly Rates are Reasonable

As the Supreme Court has stated, "[w]hen plaintiffs' entitlement to attorney's fees depends on success, their lawyers are not paid until a favorable decision finally eventuates, which may be years later….  Meanwhile, their expenses of doing business continue and must be met."

1  *Pennsylvania v. Delaware Valley Citizens' Council*, 483 U.S. 711, 716 (1987) (citations omitted).

2  Accordingly, "[a]ttorneys in common fund cases must be compensated for any delay in payment."

3  *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 740 (9th Cir. 2016) (quoting *Fischel v. Equitable*

4  *Life Assur. Society of U.S.*, 307 F.3d 997, 1010 (9th Cir. 2002)).   As the Ninth Circuit in *Washington*

5  *Public Power* provides, "[f]ull compensation requires charging current rates [for attorneys still at

6  the firm] for all work done during the litigation, or by using historical rates [for those who left the

7  firm prior to the filing of the fee petition] enhanced by an interest factor."   *Id.*, 307 F.3d at 1305.

8  *See also Harrison*, 2021 WL 5507175, at *9.

9        The reasonable hourly rate is "the rate prevailing in the community for similar work

10  performed by attorneys of comparable skill, experience, and reputation."   *Fowler v. Wells Fargo*

11  *Bank, N.A.*, No. 17-CV-02092-HSG, 2019 WL 330910, at *6 (N.D. Cal. Jan. 25, 2019).   Judge Koh

12  has held that the hourly reasonable rate is between $400.00 to $970.00 for partners, $185.00 to

13  $850.00 for non-partner attorneys, including senior attorneys, of counsel, and associates, and

14  $95.00 to $440.00 for paralegals, law clerks, and litigation support staff.   *In re Anthem, Inc. Data*

15  *Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *16 (N.D. Cal. Aug. 17, 2018)).   *See*

16  *also, e.g., In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL

17  4212811, at *26 (N.D. Cal. July 22, 2020) ($450 to $900 for partners, $160 to $850 for non-partner

18  attorneys, including of counsel, associates, and staff/project attorneys, and $50 to $380 for

19  paralegals).   Other courts in the Northern District have similarly found Class Counsel's rates

20  reasonable.   *See, e.g., Dickey v. Advanced Micro Devices, Inc.*, No. 15-cv-04922-HSG, 2020 WL

21  870928, at *8 (N.D. Cal. Feb. 21, 2020) (rates between $275 and $1,000 for attorneys found

22  reasonable); *In re Lidoderm Antitrust Litig.,* No. 14-MD-02521-WHO, 2018 WL 4620695, at *2

23  (N.D. Cal. Sept. 20, 2018) (rates between $300 and $1,050 for attorneys found reasonable); *Kang*

24  *v. Wells Fargo Bank, N.A.*, No. 17-CV-06220-BLF, 2021 WL 5826230, at *17 (N.D. Cal. Dec. 8,

25  2021) (reasonable for class counsel to request rates of $325-$950).

26        Here, Class Counsel's rates, as well as the rates of all members of the PSC, are in line with

27  the rates that have been recently awarded to similarly experienced counsel in this District.   Joint

28  Decl. ¶¶ 61-62 (Class Counsel's billing ranges were $675.00 to $950.00 for partners, $415.00 to

$640.00 for non-partner attorneys, including of counsel, and associates, and $150.00 to $440.00 for paralegals, law clerks, and litigation support staff).  *Id*. ¶ 62.  *See also Cuviello v. Feld Entm't, Inc*., No. 13-cv-04951-BLF, 2015 WL 154197, at *2–3 (N.D. Cal. Jan. 12, 2015) ("court has broad discretion in setting the reasonable hourly rates used in the lodestar calculation"); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) (court can rely on its own experience); *accord Open Source Sec. v. Perens*, 803 F. App'x 73, 77 (9th Cir. 2020).

### C.   The Multiplier is Justified Given the Results Obtained, the Complexity of the Issues, and the Contingent Nature of the Representation

Based on Class Counsel's collective hours spent, and their reasonable and customary hourly rates, they have a combined lodestar of $6,703,688.  Joint Decl. ¶ 59.  Thus, the requested award of fees of $21.25 million represents a multiplier of 3.17.  *Id*.  If the California state counsel's collective lodestar of $416,742.00 was included, the requested fee award would result in a multiplier of 2.98. *Id*.

Such multipliers are well within the range of multipliers that the Courts in the Ninth Circuit and elsewhere regularly approve.  *See Vizcaino*, 290 F.3d at 1051, & Appendix (approving multiplier of 3.65 and citing cases with multipliers as high as 19.6); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig*., No. 2672 CRB, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) ("'Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation.'") (quoting *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298-99 (N.D. Cal. 1995)); *Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2015 WL 2438274, *7 (N.D. Cal. May 21, 2015) (Judge Alsup applied a 5.5 multiplier to lead counsel's lodestar based on "the fine results achieved on behalf of the class, the risk of non-payment [lead counsel] accepted, the superior quality of their efforts, and the delay in payment.); *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Antitrust Litig.*, 768 F. App'x 651, 653 (9th Cir. 2019) (approving 3.66 multiplier in $200 million settlement); *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (even a multiplier of 6.85 was "well within the range of multipliers that courts have allowed"); *Craft v. County of San Bernardino,* 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (upholding 25% of the fund award resulting in a multiplier of approximately 5.2, and

citing cases in support.)

Here, given the extensive effort required, the Settlement's excellent results, in the face of the risks presented and the complexity of the issues this litigation entailed, the lodestar cross-check and multiplier are appropriate. Moreover, the multiplier is well within the range of multipliers that courts approve.

## IV.   CLASS COUNSEL SHOULD BE REIMBURSED FOR THEIR REASONABLE LITIGATION EXPENSES

An attorney is also entitled to recover as part of the award of attorney's fees "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotations omitted). The expenses incurred were reasonable and necessary for prosecuting this case and courts have frequently found such expenses to be recoverable. *See, e.g.*, *In re LendingClub Sec. Litig.*, No. C 16-02627 WHA, 2018 WL 4586669, at *3 (N.D. Cal. Sept. 24, 2018) (expenses such as expert and consultant fees, court fees, travel and lodging costs, legal research fees, and copying expenses were reasonable and recoverable); *Thomas*, 2018 WL 2234598, at *4 (granting requests for costs consisting of "court fees, online research fees, postage and copying, travel costs, electronic discovery expenses, deposition costs, mediation charges, and travel costs"). "Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit[.]" *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) (citation omitted).

Here, Class Counsel have incurred $130,842.24 in unreimbursed litigation expenses, including costs advanced in connection with consultants, legal research, court reporting services, copying and mailing, and other customary litigation expenses. Joint Decl. ¶ 66. The expenses for which Class Counsel seek reimbursement were reasonably necessary for the continued prosecution and resolution of this litigation and were incurred for the benefit of the Settlement Class Members with no guarantee that they would be reimbursed. They are reasonable in amount and the Court should approve their reimbursement.

## V.   THE REACTION OF THE SETTLEMENT CLASS IS OVERWHELMINGLY POSITIVE

The reaction of the Settlement Class has been very favorable to date.  The notice program reached over 143 million Zoom users, as of January 26, 2022.  Azari Decl. ¶ 47.  Only one objection concerning the Settlement has been submitted to the Court.  Dkt. No 206.  With respect to attorney's fees, the objection merely claims the amount requested is too high without providing any meaningful reasoning.  *Id.*  The objection does not take issue with the request for reimbursement of expenses or the Service Payments requests.  *Id.*  The minimal objections, representing 0.0001% of the Settlement Class, and the overall favorable reaction to the Settlement, greatly weigh in favor of granting the requests.

## VI.   THE REQUESTED CLASS REPRESENTATIVE SERVICE PAYMENTS ARE REASONABLE AND JUSTIFIED

Service payments are "intended to compensate class representatives for work undertaken on behalf of a class" and "are fairly typical in class action cases."  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (internal quotation marks and citation omitted).  "In this district, a $5,000 incentive award is presumptively reasonable."  *Harrison*, 2021 WL 5507175, at *7.  Here, Class Counsel request Service Payments of $5,000 for each of the twelve Plaintiffs in this Action.  The request is in-line with the "presumptively reasonable" incentive payment.  *Id.*

In considering whether to make a service payment, courts consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, … and the amount of time and effort the plaintiff expended in pursuing the litigation."  *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, No. 16-CV-03698-NC, 2018 WL 2183253, at *8 (N.D. Cal. May 11, 2018) (alterations and citation omitted); *Lenovo*, 2019 WL 1791420, at *9-10 (same).  Here, Plaintiffs were willing to step forward to represent and protect the interests of the Settlement Class by spending over a year prosecuting this Action, including many hours reviewing pleadings, communicating regularly with Class Counsel, responding to requests for information for settlement discussions or discovery requests, and reviewing and producing documents.  Plaintiffs were instrumental in the drafting of the SAC, making themselves available, including weekends, for extensive discussions with Class Counsel and reviewing the consolidated complaints before filing.  Plaintiffs worked closely with Class Counsel, through the holidays in 2020, to provide

1  responses to Zoom's requests for production of documents, interrogatories, and requests for

2  admission. Plaintiffs further engaged in several rounds of document collection, including working

3  with a third-party vendor for document collection, sometimes lasting hours and spanning multiple

4  sessions. Joint Decl. ¶ 69.

5     Courts have awarded service payments for similar work on behalf of the class and time

6  commitments. Moreover, Plaintiffs seek only $60,000, or 0.07%, of the $85 million Settlement

7  Fund. This amount is reasonable considering how small the award is in relation to the full amount

8  of the Settlement Fund. Finally, the Settlement does not improperly grant preferential treatment to

9  Plaintiffs or segments of the Settlement Class. *In re Portal Software, Inc. Sec. Litig.*, No. C 03-

10 5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007). Because Plaintiffs' Service

11 Payment request "is in line with precedent," *Allagas v. BP Solar Int'l, Inc.*, No. 3:14-cv-00560-SI

12 (EDL), 2016 WL 9114162, at *4 (N.D. Cal. Dec. 22, 2016) (citations omitted), the Court should

13 therefore grant Service Payments to each of the twelve Plaintiffs.

14 **VII.   CONCLUSION**

15    As stated above, Class Counsel devoted thousands of hours to the litigation, including

16 substantial time spent before they were appointed as Co-Lead Counsel. As a result of their hard

17 work and vigorous prosecution, they successfully negotiated an extremely favorable settlement

18 including both an $85 million non-reversionary cash fund and over sixteen substantive and

19 meaningful injunctive relief terms. Based on these circumstances, and consistent with the factors

20 applied by federal courts, including in the Northern District of California, Class Counsel

21 respectfully request that the Court issue an order awarding $21.25 million in attorneys' fees,

22 approving reimbursement of $130,842.24 in advanced litigation expenses, and awarding Services

23 Payments of $5,000 to each of the twelve Plaintiffs.

24
25 DATED:  January 28, 2022

   Respectfully submitted,

    /s/ *Mark C. Molumphy*
26   Mark C. Molumphy

27   MARK C. MOLUMPHY (SBN 168009)
     *mmolumphy@cpmlegal.com*
28   TYSON C. REDENBARGER (SBN 294424)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*tredenbarger@cpmlegal.com*
JULIA Q. PENG (SBN 318396)
*jpeng@cpmlegal.com*
ELLE LEWIS (SBN 238329)
*elewis@cpmlegal.com*
**COTCHETT, PITRE & MCCARTHY, LLP**
840 Malcolm Road
Burlingame, California 94010
Tel: (650) 697-6000

DATED:   January 28, 2022           */s/ Tina Wolfson*
                                        Tina Wolfson

TINA WOLFSON (SBN 174806)
*twolfson@ahdootwolfson.com*
ROBERT AHDOOT (SBN 172098)
*rahdoot@ahdootwolfson.com*
THEODORE MAYA (SBN 223242)
*tmaya@ahdootwolfson.com*
BRADLEY K. KING (SBN 274399)
*bking@ahdootwolfson.com*
CHRISTOPHER STINER (SBN 276033)
*cstiner@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Tel: (310) 474-9111

*Interim Co-Lead Class Counsel for
the Settlement Class*

1

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

2       I, Mark C. Molumphy, attest that concurrence in the filing of this document has been

3   obtained from the other signatory.  I declare under penalty of perjury under the laws of the United

4   States of America that the foregoing is true and correct.

5       Executed this 28th day of January 2022, at Burlingame, California.

6

7                                              _/s/ Mark C. Molumphy_____

8                                              Mark C. Molumphy

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28