MARK C. MOLUMPHY (SBN 168009)
mmolumphy@cpmlegal.com
TYSON REDENBARGER (SBN 294424)
tredenbarger@cpmlegal.com
JULIA PENG (SBN 318396)
jpeng@cpmlegal.com
ELLE LEWIS (SBN 238329)
elewis@cpmlegal.com
**COTCHETT, PITRE & McCARTHY LLP**
840 Malcolm Road, Suite 200
Burlingame, CA  94010
Tel: (650) 697-6000

TINA WOLFSON (SBN 174806)
twolfson@ahdootwolfson.com
ROBERT R. AHDOOT (SBN 172098)
rahdoot@ahdootwolfson.com
THEODORE MAYA (SBN 223242)
tmaya@ahdootwolfson.com
BRADLEY K. KING (SBN 274399)
bking@ahdootwolfson.com
CHRISTOPHER STINER (SBN 276033)
cstiner@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Tel: (310) 474-9111

*Interim Co-Lead Class Counsel for the Settlement Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE ZOOM VIDEO COMMUNICATIONS, INC. PRIVACY LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | CASE NO. 3:20-cv-02155-LB<br><br>**JOINT DECLARATION OF MARK C. MOLUMPHY AND TINA WOLFSON IN SUPPORT OF PLAINTIFFS' MOTION FOR (1) FINAL APPROVAL OF SETTLEMENT; AND (2) MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, AND SERVICE PAYMENTS**<br><br>Judge:        Hon. Laurel Beeler<br>Courtroom:  B-15th floor<br>Date:          April 7, 2022<br>Time:         9:30 a.m. |

## TABLE OF CONTENTS

I. OVERVIEW OF THE LITIGATION AND DESCRIPTION OF WORK PERFORMED ................................................................................................. 3

    A.    The Complaints and Motions to Dismiss ................................................................. 3

    B.    Discovery Efforts and Related Motion Practice ...................................................... 6

        i.    December 2020 Dispute Regarding the Protective Order ............................ 7

        ii.    February 2021 Dispute Regarding the Scope of Discovery ......................... 8

        iii.    March 2021 Dispute Regarding Zoom's Request to Stay Discovery .......... 9

    C.    Class Counsel's Document Collection, Production, and Deposition Efforts .......... 9

    D.    Nonparty Discovery ............................................................................................... 11

II. THE SETTLEMENT PROCESS ................................................................................... 11

    A.    Negotiations and Mediation ................................................................................... 11

    B.    The Court Grants Preliminary Approval of the Settlement .................................. 13

III. ATTORNEYS' FEES, LITIGATION EXPENSES, AND SERVICE PAYMENTS .. 14

    A.    Attorneys' Fees Incurred by Class Counsel and Plaintiffs' Steering Committee ... 14

    B.    Unreimbursed Costs and Litigation Expenses ....................................................... 17

    C.    Service Payments to Plaintiffs ............................................................................... 17

We, Mark C. Molumphy and Tina Wolfson, declare and state as follows:

1. I, Mark C. Molumphy, am a member of the bar of the State of California and duly licensed to practice before all courts of the State of California as well as other federal courts. I am a partner at the law firm of Cotchett, Pitre & McCarthy LLP ("CPM"), and have litigated complex consumer and privacy class actions for over two decades.

2. I, Tina Wolfson, am a member of the bar of the State of California, New York, and District of Columbia and duly licensed to practice before all courts of the State of California as well as other state and federal courts. I am a partner and founding member of the law firm Ahdoot & Wolfson, PC ("AW"), established in 1998, and have litigated complex consumer and privacy class actions for over two decades.

3. We are Class Counsel for the Plaintiffs and the Settlement Class.[1] We have personal knowledge of the facts stated below and with the proceedings in this case. If called as witnesses, we would and could competently testify to all facts within our personal knowledge.

4. We respectfully submit this joint declaration in support of Plaintiffs' Motion for Final Approval of the Settlement (the "Final Approval Motion"), and the entry of the [Proposed] Order Granting Final Approval of the Class Action Settlement, and Final Certification of the Settlement Class.

5. We also submit this declaration in support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Payments (the "Fees Motion").

6. The Settlement achieved in this litigation is the product of the initiative, investigations, and hard work of skilled counsel. Based on our experience and knowledge regarding the factual and legal issues in this matter, and given the substantial benefits provided by the Settlement, it is our opinion that the proposed Settlement in this matter is fair, reasonable, and adequate, and is in the best interests of the Settlement Class Members.

---

[1] Unless otherwise defined herein, capitalized words and terms shall have the same meaning as ascribed to them in the Class Action Settlement Agreement and Release ("Settlement Agreement"). Dkt. No. 191-1.

## I. OVERVIEW OF THE LITIGATION AND DESCRIPTION OF WORK PERFORMED

7.     After a year and a half of hard-fought and contentious litigation, the Parties reached an agreement to resolve Settlement Class Members' claims against Defendant, Zoom Video Communications, Inc. ("Zoom"), pursuant to the Class Action Settlement Agreement and Release ("Settlement Agreement") filed on July 31, 2021.  Dkt. No. 190-1.  The Settlement was reached only after extensive arm's-length negotiations between experienced counsel, including four mediation sessions and additional negotiations thereafter facilitated by respected mediator, Judge Jay C. Gandhi (Ret.).  The Settlement provides both monetary and injunctive relief:  Zoom will pay $85 million and make meaningful changes relating to its operations, its Meetings app, and its privacy practices.

8.     The Settlement was a result of a significant amount of work performed by Class Counsel, as further described below.

### A.     The Complaints and Motions to Dismiss

9.     In early 2020, usage of Zoom's video conferencing services increased dramatically in response to the COVID-19 pandemic.  Shortly thereafter, it was discovered that Zoom's claim to have end-to-end encryption was not accurate.  In addition, it appeared that Zoom was improperly sharing its users' data without notice or consent through the use of third party software integrations from companies such as Facebook and Google.  Moreover, Zoom meetings became the target of "Zoombombings"—*i.e.*, unwanted and unauthorized interruptions of video-conferences hosted over Zoom.  Often, the Zoombombings were intentional and malicious in nature, intending to shock and horrify the meeting participants.

10.     Between March and May 2020, fourteen separate class action complaints were filed against Zoom alleging various state and federal claims for misrepresentations and violations of Zoom customers' security and privacy.  Dkt. No. 62.

11.     On May 28, 2020, the Court issued an order consolidating the actions, and on June 30, 2020, appointed Tina Wolfson of Ahdoot & Wolfson, and Mark C. Molumphy of Cotchett, Pitre & McCarthy as Interim Co-Lead Counsel.  Dkt. No. 62 at 7; Dkt. No. 92 at 2.  The Court appointed Rachele R. Byrd of Wolf Haldenstein Adler Freeman & Herz LLP, Albert Y. Chang of Bottini &

Bottini, Inc., and Eric H. Gibbs of the Gibbs Law Group LLP to the Plaintiffs' Steering Committee ("PSC"). *Id.*

12. Class Counsel expended significant effort from the inception of pre-suit investigation to the filing of their respective underlying complaints to obtain and analyze all publicly available information and reports concerning Zoom's alleged conduct, as well as investigate and document the applicable personal experiences of dozens of class members.

13. Class Counsel conducted a thorough investigation to develop the theories of liability and determine the facts that formed the basis of the allegations against Zoom. The research included a review of information Zoom made publicly available on digital privacy, data security, and unauthorized intrusions into video conferences, as well as other investigations into Zoom itself and similar services' practices. Class Counsel reviewed numerous scholarly and technical publications regarding cybersecurity best practices applicable to this case, as well as all aspects of consumer data collection and sharing, including dark patterns, co-mingling, anonymization and de-anonymization, and data monetization. Additionally, Class Counsel consulted with technical forensic experts as well as privacy damages experts to form potential theories of liability as well as damage theories. Class Counsel also conducted in-house forensics on various devices to ascertain Zoom's consumer data collection practices during different periods of time. The pre-suit investigation also included interviews with hundreds of class members regarding their experiences using Zoom. Class Counsel, along with the PSC, vetted numerous class members to select the best class representatives.

14. On July 30, 2020, Class Counsel filed a Consolidated Amended Class Action Complaint ("CAC"). Dkt. No. 114. The CAC was the result of considerable amount of work. Class Counsel spent substantial time researching both legal and factual issues to determine applicable facts, the extent of Plaintiffs' legal allegations, and the causes of action to allege against Zoom.

15. The CAC alleged nine causes of actions: violations of invasion of privacy and violations of the California Constitution, negligence, breach of implied contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, violation of the Unfair Competition Law

("UCL"), violation of the California Consumers Legal Remedies Act ("CLRA"), violation of the Comprehensive Computer Data Access and Fraud Act ("CDAFA"), and deceit by concealment.

16. On September 14, 2020, Zoom moved to dismiss the CAC. Dkt. No. 120. On October 14, 2020, after extensive meet and confer efforts, the Parties filed a Joint Stipulation with Proposed Order to Allow Plaintiffs to File a First Amended Consolidated Class Action Complaint. Dkt. No. 123.

17. On October 28, 2020, Class Counsel filed the First Amended Consolidated Class Action Complaint ("FAC"). Dkt. No. 126. The FAC (1) added three California plaintiffs; (2) alleged in greater detail the harms Plaintiffs experienced as a result of Zoom's various violations; (3) alleged additional facts regarding Zoom's failure to warn its users; and (4) clarified Plaintiffs' position that Zoom's disclosures to third parties are not limited to just the Facebook software development kit ("SDK"), LinkedIn Navigator, or Google Firebase Analytics.

18. On December 2, 2020, Zoom moved to dismiss the FAC. Dkt. No. 134. In preparing Plaintiffs' opposition to this motion to dismiss, Class Counsel conducted comprehensive research and related factual investigation to rebut Zoom's arguments and the evidence Zoom requested the Court judicially notice. This legal research was particulary labor-intensive as it involved new and dynamic areas of the law regarding liability for collecting, co-mingling, and sharing of consumer information by technical applications on various consumer devices, cybersecurity liability, and online content publisher immunity. After these extensive efforts, Plaintiffs filed their opposition to the motion. Dkt. No. 141.

19. On March 11, 2020, the Court granted in part and denied in part Zoom's motion to dismiss the FAC. Dkt. No. 168.

20. The Court dismissed the following claims with leave to amend:

- "Zoombombing" claims to the extent they (1) challenge the harmfulness of content provided by another; and (2) derive from Zoom's status or conduct as a publisher or speaker of that content.

- Count 1: Invasion of privacy under California Law.

- Count 2: Negligence.

- Count 8: California's Comprehensive Data Access and Fraud Act ("CDAFA").

- Counts 6, 7, and 9: Unfair Competition Law ("UCL") claim under the "fraudulent" prong; Consumer Legal Remedies Act ("CLRA"); and California Civil Code § 1710(3) fraudulent concealment.

21. The Court denied the motion to dismiss on the following claims:

- "Zoombombing" claims to the extent they do not either (1) challenge the harmfulness of content provided by another; or (2) derive from Zoom's status or conduct as a publisher or speaker of that content.

- Count 3: Implied contract.

- Count 4: Implied covenant of good faith and fair dealing.

- Count 5: Unjust enrichment/quasi contract.

- Count 6: UCL claims under the "unlawful" and "unfair" prongs.

22. On May 12, 2021, Class Counsel filed the operative Second Amended Consolidated Class Action Complaint ("SAC"). Dkt. No. 179. This amended pleading again involved considerable factual investigation and legal research to address the aspects of Zoom's motion to dismiss that were granted by the Court. The SAC responded to the Motion to Dismiss Order by bolstering the allegations with detail as to when the Plaintiffs used the Meetings app, on what devices, their frequent geographical locations when using the Meetings app, and the private nature of the Plaintiffs' Zoom meetings. *Id.* The SAC alleged six causes of actions and omitted the previously asserted claims for negligence, fraud, and violations of the CDAFA.

23. Thus, Class Counsel drafted and conducted extensive research to draft the initial and three subsequent consolidated complaints which detailed Zoom's various violations, including but not limited to, Zoom's liability related to meeting intrusions, invasion of privacy rights, sharing of user data without consent, implied contract and implied covenant of good faith and fair dealing, unlawful and unfair prongs under the UCL, and identifying and describing the claims of Plaintiffs on behalf of the Settlement Class. Class Counsel also successfully opposed Zoom's motion to dismiss and evidentiary submission, which included exhaustive legal research, much of which was with regard to new and dynamic areas of the law.

### B. Discovery Efforts and Related Motion Practice

24. Class Counsel engaged in a comprehensive discovery program, including pursuing documents from Zoom, serving subpoenas on numerous third parties, consultation with experts

regarding appropriate search terms, extensive search term negotiations and motion practice, and reviewing of documents produced by Zoom, third parties, and governmental sources. This process forced Class Counsel to contend with near-constant discovery disputes, requiring weekly discussions and lengthy meet and confer calls with opposing counsel.

25. Class Counsel dedicated substantial time and effort drafting discovery, consulting with technical experts regarding appropriate discovery requests, negotiating at length an ESI protocol, custodians and search terms, reviewing written responses, attempting to resolve disputes through extensive meet and confer efforts, and appearing multiple times before the Court with the disputes that could not be resolved. Plaintiffs filed a series of discovery motions with Magistrate Judge Susan van Keulen (who served as the discovery Judge (Dkt. No. 15)), and with Judge Koh. As explained below, each motion required hours of preparation, consultation with experts, seemingly endless meet and confers, drafting of joint submission letters, oral argument, and in many instances, supplemental briefing.

        **i.**    **December 2020 Dispute Regarding the Protective Order**

26. In preparation for the production of substantive discovery responses, the Parties deadlocked on certain provisions included in the proposed Protective Order and the Federal Rule of Evidence 502(d) Order.

27. After numerous meet and confers, Plaintiffs and Zoom filed joint briefing concerning two issues. First, Plaintiffs opposed Zoom's request to include more stringent patent provisions in the Protective Order, given that this case was not a patent case. The second issue related to Zoom's request that it be permitted to clawback any privileged document, at any time, while Plaintiffs argued that a clawback should be made within 30 days of production of the document. Dkt. No. 135.

28. Judge van Keulen requested that the Parties submit a single word document of the protective order and a single word document of the Federal Rule of Evidence 502(d) Order, indicating the proposed competing languages. Dkt. No. 136. The Parties continued to meet and confer on these joint submissions. Based on the Parties' submissions, on December 16, 2020, Judge van Keulen issued the operative Protective Order (Dkt. No. 139) and Federal Rule of Evidence

502(d) Order. Dkt. No. 140.

29. On December 30, 2020, Class Counsel appealed to Judge Koh for relief from Judge van Keulen's order adopting Zoom's proposed Protective Order language, which included stringent provisions normally included in patent cases only. Dkt. No. 142. A full round of briefing ensued. *See* Dkt. Nos. 142, 144, 146. On January 26, 2021, the Court upheld Judge van Keulen's Order. Dkt. No. 148.

### ii.   February 2021 Dispute Regarding the Scope of Discovery

30. As the battle waged on the provisions within the Protective Order and Federal Rule of Evidence 502(d) Order, the Parties were also mired in document production discussions in response to Plaintiffs' requests for documents. Despite several meet and confers, the Parties were at an impasse on the scope of discovery and document production deadlines. The Parties were further deadlocked over the relevancy of certain requests, search terms, and custodians. Together, the Parties spent days conferring and negotiating over each one of the 67 Requests.

31. On February 5, 2021, the Parties filed a second joint discovery letter brief regarding Zoom's objections and responses to Plaintiffs' Requests for Production of Documents. Dkt. No. 150. Class Counsel submitted a joint chart detailing the positions of the Parties for each of Plaintiffs' 67 document requests.

32. On February 9, 2021, Judge van Keulen issued an order providing guidance on the disputed discovery categories. Dkt. No. 152. In response to the order, the Parties engaged in additional meet and confers. On February 16, 2021, the Parties appeared and engaged in lengthy argument before the Court. Dkt. No. 152. On the same day, Judge van Keulen issued a second order regarding the disagreement, narrowing the scope of discovery and partially resolving the Parties' disputes. Dkt. No. 154. The Court also required the Parties to continue to meet and confer on the discovery as narrowed by the Court. Class Counsel promptly engaged Zoom in further meet and confers and successfully resolved most of the remaining issues.

33. On February 18, 2021, Class Counsel filed a Supplemental Joint Statement Regarding Discovery Dispute to address the last unresolved discovery issues. Dkt. No. 157. Zoom represented that it was reviewing thousands of documents, including over 125,000 documents

related to encryption only. *Id*. at 4. On February 23, 2021, the Parties again appeared before Judge van Keulen. Dkt. No. 164. Judge van Keulen issued the Order Regarding Supplemental Joint Statement Regarding Discovery Dispute on the two remaining discovery disputes, requiring Zoom to review and produce the encryption related documents to Plaintiffs – which included the 125,000 documents Zoom had agreed to review and produce (Dkt. No. 157), plus another almost 100,000 documents identified based on Plaintiffs' search terms. Dkt. No. 165.

### iii. March 2021 Dispute Regarding Zoom's Request to Stay Discovery

34. After the Court granted in part and denied in part Zoom's motion to dismiss (Dkt. No. 168), Zoom reversed its position after its months-long discovery discussions with Class Counsel, halted its planned production of the documents identified in Judge van Keulen's order, terminated discussion on identifying the bulk of documents that still needed to be produced, and insisted that it no longer had to comply with the previously agreed upon scope of production. Zoom also refused to provide hit count reports on relevant search terms. Plaintiffs immediately contacted Zoom to discuss. Despite meeting and conferring, the Parties were unable to reach a resolution. On March 29, 2021, the Parties submitted a third Joint Statement Regarding Discovery Dispute, wherein Plaintiffs argued that the scope of discovery had not changed following the Motion to Dismiss Order, and that Zoom could not unilaterally cease participating in discovery. Dkt. No. 170.

35. In addition to its submission before Judge van Keulen, on March 30, 2021, Zoom filed a Motion to Stay Discovery before the Court (Dkt. No. 172), which Class Counsel opposed. Dkt. No. 173. Three days after Plaintiffs filed their opposition, Judge Koh denied Zoom's motion. Dkt. No. 174. Judge van Keulen similarly disagreed that discovery should be stayed, or narrowed, and ordered Zoom to resume document production "without limitation." Dkt. No. 175 at 1.

### C. Class Counsel's Document Collection, Production, and Deposition Efforts

36. Class Counsel served written discovery on Zoom including 67 document requests and several sets of interrogatories, totaling 47 interrogatories. In response, Zoom produced and Plaintiffs reviewed tens of thounsands of pages of documents. Zoom's responses to Plaintiffs' interrogatories were also subject to much contention, however the Parties reached the Settlement before those disputes matured into motion practice.

37.     In addition, Zoom served written discovery and document requests on each of the 14 Plaintiffs who were named in the FAC, including 60 document requests for each Plaintiff. Class Counsel met and conferred with Zoom several times on search terms and to narrow the scope of Zoom's requests. On behalf of all 14 Plaintiffs, Class Counsel provided objections and responses to Zoom's requests for admission, interrogatories, and requests for production of documents, for a total of 523 written responses. Class Counsel also collected and reviewed Plaintiffs' documents and ultimately produced thousands of pages of documents on behalf of the Plaintiffs. Responding to written discovery requests, collecting documents from 14 Plaintiffs, and then producing voluminous responses and materials to Zoom involved a significant amount of work.

38.     In addition to written discovery, Class Counsel sought testimonial evidence from Zoom under Federal Rule of Civil Procedure 30(b)(6), identifying 65 topics for inquiry after consultation with experts. The parties engaged in numerous meet and confer conferences on Plaintiffs' proposed deposition topics and related document requests. Class Counsel also began preparing for the depositions of four Zoom employees.

39.     Through its discovery efforts and consultation with experts, Class Counsel learned many key facts, including the following:

   a.     Zoom collected approximately $1.07 billion in Zoom Meetings subscriptions from Settlement Class Members who paid for a subscription. The Settlement Fund amount of $85 million, therefore, represents approximately 8% of the total revenues collected.

   b.     The time period during which this revenue was collected includes the period when Zoom claims to have corrected its alleged E2EE misrepresentations (in April 2020), as well as the period when it implemented a new E2EE solution for Zoom Meetings.

   c.     Based on consultation with damage experts, Class Counsel determined that a resolution returning 15% of a Paid Subscribers' total core subscription would be an excellent result, particularly when considering the risks of litigation and the inherent difficulty in apportioning the value of E2EE to Paid Subscribers amongst other features of the Zoom service. Class Counsel, in consultation with their experts, also determined that a resolution returning $15 to Settlement Class Members who never paid for Zoom was also within the ballpark of what

consumers may be willing to receive in exchange for the type of data the SAC alleges Zoom disclosed.

   d. On average, Settlement Class Members who are Paid Subscribers paid approximately $306.66 to Zoom, and a return of 15% of this amount is approximately $46.00.

### D. Nonparty Discovery

40. Plaintiffs investigated non-parties with discoverable information and issued over a dozen subpoenas to third parties. The targeted non-parties were (1) companies providing integrations to the Zoom Meetings app (services that enhanced the Zoom Meetings experience, *i.e.*, live transcription of a Zoom meeting); (2) companies offering cybersecurity services to Zoom; (3) companies helping Zoom with privacy compliance; and (4) companies that were known to have internally evaluated Zoom's security. After issuing the subpoenas and analyzing the responses and objections, Class Counsel engaged in meet and confer with non-parties to ascertain potentially responsive documents, and additional meet and confer with Zoom to determine whether the requested documents were accessible from Zoom.

41. Class Counsel also made several Freedom of Information Act requests to the Federal Trade Commission ("FTC") seeking relevant information pertaining to Plaintiffs' theories of liability including consumer complaints. Class Counsel reviewed the productions received from the FTC.

42. Through the life of the case, Class Counsel continued its discovery and investigation efforts with a comprehensive plan that incorporated expert consultation and technical research. These efforts served multiple purposes to benefit the prosecution of the class action against Zoom: to prepare for potential amendments of the pleadings, to anticipate merits and damages-related issues, assist with discovery dispute, and to address complex issues pertaining to injunctive relief and administration of a potential settlement.

## II. THE SETTLEMENT PROCESS

### A. Negotiations and Mediation

43. The Parties engaged in extensive negotiations over the course of many months, including four formal mediation sessions and numerous additional discussions facilitated by the

Honorable Jay C. Gandhi (Ret.), a former United States Magistrate Judge in the Central District of California and a highly respected mediator with JAMS. Judge Gandhi has extensive experience in class action litigation, both from his time as a Magistrate Judge, and as a mediator of many class actions, including multiple data privacy cases where a settlement was reached and subsequently approved. Judge Gandhi remained highly involved throughout the lengthy negotiation process.

44.  Class Counsel had a thorough understanding of the composition of the Settlement Class, the nature of Zoom's anticipated defenses on the merits, the likely nature of arguments that would be advanced at class certification, summary judgment, and trial, and the complex technical issues surrounding the claims and defenses, and potential injunctive relief.

45.  Before the mediation sessions, the Parties exchanged and vetted information to prepare for and facilitate productive mediation discussion, in addition to the extensive information already gleaned through discovery. The Parties engaged in mediation-related discovery which included Class Counsel working closely with Plaintiffs to obtain information requested by Zoom.

46.  The mediation sessions with Judge Gandhi were particularly complex due to the unique nature of the claims, the novel technology involved, and the monetary and injunctive relief Plaintiffs were seeking. The Parties conducted extensive negotiation sessions after each mediation, almost all of them with the assistance and oversight of Judge Gandhi. The Parties commenced mediation in early November 2020. Although progress was made, the case did not settle at that time, and the Parties continued extensive negotiations with Judge Gandhi's assistance. After several months of intense discussions, during which several critical motions were decided, in April 2021, Judge Gandhi presented an $85 million non-reversionary fund through a double-blind mediator's proposal to the Parties, and both Parties accepted. It took several more months of negotiations, before the final terms, including injunctive relief and many other key terms, were hammered out.

47.  With the participation of prominent data privacy experts, and after engaging in numerous video and phone conferences with Zoom's counsel and Zoom in-house counsel, Plaintiffs successfully negotiated significant injunctive relief in addition to the monetary relief. These injunctive relief negotiations, which extended for months, included several iterations and revisions

of written proposals and counter-proposals, discussions with Zoom's in-house counsel, consultation with experts, and additional mediation with Judge Gandhi.

48. Documenting the Settlement was also incredibly labor-intensive, as the Parties extensively negotiated each aspect of the Settlement Agreement and its many exhibits. This process included negotiations regarding the logistics and substance of the notice plan, and Class Counsel spent numerous hours obtaining and negotiating bids from three well-established, experienced, and highly regarded class action notice and administration firms.

49. After the Parties decided to seek designation of Epiq as the Settlement Administrator, Class Counsel spent significant time negotiating the specific terms of their engagement, as well as parameters of the security regarding and restrictions on the use of Settlement Class Member data. Several drafts and redlines of the Settlement Agreement and its many exhibits were exchanged, followed by lengthy discussions and negotiations between the Parties. In addition, Class Counsel collaborated with notice experts at Epiq to create and oversee one of the largest class notice programs in class action history, with notice sent to more than 150 million Settlement Class Members.

### B. The Court Grants Preliminary Approval of the Settlement

50. On July 31, 2021, Plaintiffs filed their motion for preliminary approval of the Settlement. Dkt. No. 190. The Parties attended the in-person preliminary approval hearing on October 21, 2021, where the Court thoroughly vetted the details of the settlement and proposed notice program. Judge Koh praised the notices to Settlement Class Members for being "clear and concise" and "really user friendly" at the Preliminary Approval Hearing. Satisfied with the robustness of the settlement and proposed notice program, that same day, the Court granted Plaintiffs' motion for preliminary approval, provisionally certified the nationwide Settlement Class, and directed notice to be issued to the Settlement Class Members pursuant to the Settlement and preliminary approval motion. Dkt. No. 204.

51. As part of the class action administrator vetting and bidding process, Class Counsel had already discussed at length with Epiq their thorough and rigorous practices and policies to ensure security and privacy of Settlement Class Member data. Pursuant to the Court's direction at

the October 21, 2021, preliminary approval hearing, Class Counsel re-engaged with Epiq to re-confirm that Epiq implemented such best practices.

52. Thereafter, Class Counsel worked with Epiq and Zoom to ensure that the Settlement Website and Notice forms were prepared correctly, that Notice was disseminated within the time frame established by the Preliminary Approval Order, responded to numerous Settlement Class Member inquiries, vetted financial institutions in which the Settlement Fund was to be deposited, monitored the claims, oversaw the reminder email process, and generally ensured that the administration of the Settlement was performed in a timely and correct manner. With a Settlement Class of over 150 million individuals, Class Counsel were, and remain today, in frequent contact with Settlement Class Members to respond to their inquiries and assist in the claims process.

## III. ATTORNEYS' FEES, LITIGATION EXPENSES, AND SERVICE PAYMENTS

### A. Attorneys' Fees Incurred by Class Counsel and Plaintiffs' Steering Committee

53. Class Counsel's efforts in this case, including over 9,993 hours of work in the face of vigorous opposition from Zoom, have resulted in a Class Settlement of $85 million and important injunctive relief including platform enhancements, privacy enhancements and disclosures, and internal tracking and reporting functions, that will provide important protections for Settlement Class Members going forward.

54. Class Counsel made every effort to litigate this complex case efficiently and effectively. Most of the work on the case (8,473 hours) was performed by attorneys and staff at CPM and AW, overseen by Mark Molumphy and Tina Wolfson, who were appointed Co-Lead Counsel by the Court. Attorneys from the PSC firms, Wolf Haldenstein Adler Freeman & Herz LLP, Bottini & Bottini, Inc., and Gibbs Law Group LLP, collectively together contributed 1,520 hours.

55. Class Counsel worked on a fully contingent basis and assumed the risk of challenging Zoom, a well-resourced defendant represented by experienced counsel, that would have continued to vigorously defend its business practices had the litigation gone forward. Zoom contested its liability from the very beginning, filing multiple motions to dismiss and asserting that

Plaintiffs had failed to adequately allege any viable claims. Indeed, it was only through Class Counsels' diligence and skill that Plaintiffs successfully defeated Zoom's motions to dismiss and then to stay discovery. The successful result was all the more remarkable given the complex and novel claims in this case.

56. Class Counsel have substantial expertise in consumer class actions. The quality of their representation is reflected in the work they performed throughout the case and, ultimately, in the favorable Settlement for the Settlement Class. Over the course of several years, Class Counsel advanced the litigation in the face of multiple motions to dismiss, discovery disputes, and other roadblocks.

57. As described above, Class Counsel performed a significant amount of work in this Action, including researching and preparing the consolidated complaints, defending against dispositive and discovery motions, and consulting with experts to improve the privacy and security of Zoom's Meetings app. Moreover, Class Counsel engaged in extensive, hard-fought discovery, and participated in numerous mediation and settlement negotiations. Class Counsel closely monitored the work and assignments of members of the PSC to ensure fairness and order, as well as to minimize any work duplication.

58. Class Counsel request an award of **$21.25 million in attorneys' fees**, which represents 25% of the $85 million Settlement Fund.

59. The reasonableness of the proposed percentage fee award is supported by a cross-check against the total lodestar of Plaintiffs' Counsel. Plaintiffs' Counsel have collectively devoted 9,993 hours to litigating this case, from inception through December 31, 2021, with a collective lodestar of $6,703,688. Thus, the requested fee award of $21.25 million represents a multiplier of 3.17. This lodestar does not include any time devoted to the Motion for Final Approval or the Motion for Attorneys' Fees, Expenses, and Service Payments. By the Final Approval Hearing on April 7, 2022, Class Counsel's reasonable lodestar will have increased due to the time spent briefing and arguing final approval and overseeing the notice and claims process. This lodestar also does not include any time spent by counsel in the California state court action, which will be dismissed as part of this global resolution, and fees paid solely from any award made in this Action to Class

Counsel. Including California state counsel's collective lodestar of $416,742.00 would result in a total lodestar of $7,120,430 and a multiplier of 2.98.

60. As confirmed in the respective declarations from each of the firms involved in this Action, the hourly rates used to determine lodestar represent Class Counsel's customary professional rates. Pursuant to the Court's Order Appointing Interim Co-Lead Class Counsel and Plaintiffs' Steering Committee (Dkt. No. 92), Class Counsel audited and reviewed the hours submitted by the PSC on a monthly basis in accordance with Plaintiffs' Time and Expense Reporting Protocol ("Protocol") hereto attached as **Exhibit 1**.

61. Attached hereto as **Exhibits 2-7** are true and correct copies of declarations from the lead partners working on the Action from both Class Counsel, the three PSC firms, and the two California state counsel firms, including charts illustrating their respective lodestar, broken down by professionals and the Protocol's billing categories, along with expenses, and each firm's resume.

62. Class Counsel's hourly rates are fully commensurate with the hourly rates of other nationally prominent firms performing similar work for both plaintiffs and defendants. Here, Class Counsel's billing ranges were $675.00 to $950.00 for partners, $415.00 to $640.00 for non-partner attorneys, including of counsel, and associates, and $150.00 to $440.00 for paralegals, law clerks, and litigation support staff. *See* **Exhibits 2-6**. After considering all of these data points, we have determined that the rates are reasonable for each of the professionals who worked on this matter.

63. Because of our class action practice, we keep current on federal and California state law developments on the subject of attorneys' fees (AW is headquartered in Los Angeles and also maintains offices in New York and Philadelphia; CPM is headquartered in Burlingame, and also maintains offices in New York, Los Angeles and Seattle). Accordingly, Class Counsel is familiar with the prevailing market rates for leading attorneys in California who litigate complex class actions.

64. AW and CPM periodically establish hourly rates for the firms' billing personnel. AW and CPM establish their rates based on a number of factors, including prevailing market rates for attorneys and law firms in the Los Angeles and San Francisco areas, respectively,

that have attorneys and staff of comparable skill, experience, and qualifications.

65. Moreover, the rates requested by Class Counsel are the same rates standardly charged to our hourly billing clients, and in line with the non-contingent market rates charged by attorneys of reasonably comparable experience, skill, and reputation for reasonably comparable services and supported by surveys of legal rates.

### B.  Unreimbursed Costs and Litigation Expenses

66. Class Counsel have collectively incurred $130,842.24 in unreimbursed litigation expenses from inception to December 31, 2021, in connection with the prosecution of this Action. This amount is supported by each firm's separate declaration. *See* **Exhibit E** to **Ex. 2**; **Exhibit D** to **Exs. 3-6**. The costs advanced included expenses for mediations, expert consultants, legal research, court reporting services, copying and mailing, and other customary litigation expenses. As confirmed in the respective firm declarations, these expenses are based on the books and records of the firms and represent an accurate recordation of costs and expenses incurred in connection with this Action. *Id*.

67. These expenses were advanced by Plaintiffs' Counsel on a contingent basis, including their contributions to a litigation fund, which were used to finance the joint prosecution of this litigation. The total amount of unreimbursed expenses sought by Class Counsel excludes the unused funds currently remaining in the litigation fund. *See* **Exhibit D** to **Ex. 2**, Declaration of Mark C. Molumphy in Support of Plaintiffs' Motion for Final Approval, and for Attorneys' Fees, Expenses, and Service Payments.

### C.  Service Payments to Plaintiffs

68. The twelve Plaintiffs named in the SAC request Service Payments of $5,000 each. This is, at most, only $60,000 (0.07%) of the $85 million Class Settlement Amount.

69. Plaintiffs spent over a year prosecuting this Action, and have spent many hours reviewing pleadings, communicating regularly with Class Counsel, responding to requests for information for settlement discussions or discovery requests, and reviewing and producing documents. Plaintiffs were instrumental in the drafting of the SAC, making themselves available, including weekends, for extensive discussions with Class Counsel and reviewing the SAC before

filing. Plaintiffs worked closely with Class Counsel to provide responses to Zoom's requests for production of documents, interrogatories, and requests for admission. Plaintiffs further engaged in several rounds of document collection, including working with a third-party vendor for document collection, sometimes lasting hours and spanning multiple sessions.

70. All the Plaintiffs were instrumental in the success of this case, and the service awards requested are warranted, given the considerable settlement they each helped achieve for the benefit of Settlement Class Members.

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 28th day of January 2022 in Burbank, and Burlingame, California.

| /s/ *Tina Wolfson* | /s/ *Mark C. Molumphy* |
|---|---|
| Tina Wolfson | Mark C. Molumphy |

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Mark C. Molumphy, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 28th day of January, 2022, at Burlingame, California.

*/s/ Mark C. Molumphy*
Mark C. Molumphy