## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE:  ZOOM VIDEO   ) Case No. 3:20-cv-02155-LHK
COMMUNICATIONS INC.,  )
PRIVACY LITIGATION.   )

## **<u>OBJECTIONS TO THE SETTLEMENT AGREEMENT</u>**

Sammy Rodgers and Alvery Neace, objectors, by and through J. Allen Roth, Esq., their undersigned counsel *pending pro hac vice*, hereby object to the Settlement Agreement:

## **Introduction**

Objectors herein are Sammy Rodgers and Alvery Neace, individuals who are class members because they downloaded, opened, and/or used the Zoom application, but did not participate in a conference. Objectors have been unable to lodge a claim online or via paper form because of the impossible requirement listed on the form that they upload or include documentary evidence.[1]

Class actions are commonplace in the Northern District of California. This District maintains experience in overseeing complicated litigation. However, in these actions, the administration of the settlement and claims process leaves much to be desired.  Settlements are routinely approved with

---

[1] There exists no document that would logically show that in 2016 or 2017, the objectors "downloaded" the software, merely "opened it," or "used it" by stepping into someone's conference to merely waive hello.

*carte blanche* being provided to the Settlement or Claim Administrators and little oversight by the Court.  In practically every case, simple due process requirements and compliance with ordinarily fiduciary and escheat practices are tossed aside through tricky terms within the settlement agreement.

This case appears no different.   Class Counsel proposes the same lackadaisical administration of the claims, objection, and opt out provisions that are the *status quo*.  For the reasons set forth below, the objectors believe that this Court must take the necessary actions to regain control of this litigation and implement fair procedures for the millions of class members.

## I.   When courts administer nationwide class actions with a settlement providing small amounts, accommodations must be made for objectors to utilize counsel of their choice without the need for formal *pro hac vice* requirements.

*Pro hac vice* status serves a purpose for regulating counsel that desire to bring or defend a case in a foreign district.  In the present case, however, several million class members have been dragged before this Court far from their homes to litigate a snap settlement that will bar them from suing the defendant even for unknown claims, see Section 1.47 of the Settlement Agreement.

Obviously, most claimants do not reside in the Northern District of California and plaintiffs merely chose the forum because of this Court's ability to handle complex litigation.  Nevertheless, this is no different than a

multi-district litigation where class members reside in districts throughout the United States and every class member should be able to easily participate.

Despite knowing this case involves millions of members, this Court and the class representatives failed to provide a simple solution for objectors to submit their comments using counsel local or familiar to them. On the contrary, this Court requires counsel to petition for admission *pro hac vice* just to file objections and comments on behalf of class members. To avoid objections being heard, Class Counsel actually opposed the undersigned's administrative motion to waive the requirement that all out of jurisdiction counsel appear *pro hac vice*, and the Magistrate Judge agreed only to waive the fees for filing such a motion. Bear in mind that counsel's motion was not to waive the requirements for him or his objectors, but for <u>any and all</u> objectors that wish to appear via counsel without onerous and docket clogging requirements in a case of this size. Simply put, this Court needs to hear from the class members to make a fairness determination.

To require objectors' counsel to spend the time obtaining a certified copy of his good standing certificate, which in Pennsylvania costs $25.00 and takes about two weeks to obtain by mail, and to spend the time to petition for admission *pro hac vice*, discourages objections from class members. After all, this is a settlement of about $15 to $25. In this type of case, the

requirements for *pro hac vice* status are outdated and violative of due process.

This district entered blanket orders in other class action cases, *see*, e.g., *Lithium Ion Batteries Antitrust Litigation,* No. 4:13-cv-00801, Entry 5 (N.D. Cal. Mar. 4, 2013)("... attorneys admitted to practice and in good standing in any United States District Court are admitted pro hac vice in [this] litigation. Association of local counsel is not required").  These same provisions are generically adopted by local rule or initial case management order for nationwide cases.  *See* Eastern District of Louisiana *FAQs* (same language);" [2] *Nixon v. Generali U.S. Branch*, 1:2020cv10779 (S.D.N.Y. DEc. 23, 2020), entry 39 (same); *In re:  Ethicon Pelvic Repair System Products Liability Litigation*, MDL 2327 (S.D.W.V. 2015)(same).

Ideally, this type of provision should exist for all class actions by local rule in this district considering the mass number of cases that this Court administers.  By not having issued a scheduling order allowing the class members to appear by counsel without burdensome procedures that cost more than the objectors will receive through their claim– and with class counsel opposing easy access by objectors to this Court– an abuse of discretion occurred that should prevent approval of the Settlement Agreement as fair.  The settlement and fairness proceeding should not be

[2] *See* https://www.laed.uscourts.gov/case-information/mdl-mass-class-action/mdl-faq

heard until this Court enters an Order for all legal counsel to be able to file

objections for class members without having to spend time complying with

*pro hac vice* provisions in a $15 to $25 case.

For this reason alone, the period to object must be extended and notice

provided that class members' legal counsel do not need to petition for

admission *pro hac vice*.

## II.     The Claims Filing Deadline and Opt Out Deadline Must be a Date After this Court Approves the Final Terms of the Settlement and Administration of the Case

Bad habits persist in class action administration when nobody brings

them to the attention of the Court.  One of the bad habits involves deadlines

that are convenient to Class Counsel and inconvenient to the class members

they purport to represent.

In this case, both the claims filing deadline and the opt out deadline

occurs prior to this Court approving the fairness of the settlement agreement

and terms of administering the claims process. However, through the

objection process, the settlement and administration terms may be modified,

even if only slightly.  That modification, however, may constitute the reason a

claimant chooses to either opt out or stay within a class.  As an example, if

the objectors' issue about having to provide documentation to prove they

"downloaded" or "opened"the software is sustained, the objectors would file a

claim.  On the other hand, since they cannot file a claim due to the impossible

requirements, they would have to opt out and sue to be paid.   They should

not have to choose at this time without knowing the final terms and the

opinion of this Court as to fairness.  Moreover, if this Court agrees that the

documentation requirement for people who simply downloaded or opened a

program in 2016 or 2017 is absurd and impossible to comply with, the claims

period has already passed, creating a legal circle.  If this Court finds that a

person must prove they opened a file in 2017, as objectors cannot do so, they

would want to opt out at that point since they could not complete the process.

        Even if the settlement and administration of the case does not change,

this Court's opinion could inform a lay person who might want to file a claim

but is not entirely happy with the settlement that it is indeed fair.

        There exists no valid reason to require opt out and filing claims prior to

the approval of the terms of the settlement.

        It is hornbook law that "due process requires that class members be

given notice and an opportunity to be heard." *Phillips Petroleum Co. v.

Shutts*, 472 U.S. 797, 812 (1985).  In this case, forcing class members  to opt

out prior to knowing what the final court-approved terms of the settlement

and the administration of the settlement are violates due process and

fundamental fairness.  Objectors should know whether they can submit a

claim without documentary evidence before they have to decide to opt out.

To cure this, the claims and opt-out deadline should be extended to ninety (90) days from the time this Court approves the final terms of the settlement.  Moreover, that should be the rule, not the exception when dealing with cases like this.

## III.   The Notice of Settlement did not warn the public that it unfairly waived "unknown" claims.

A problematic and unconscionable term within the Settlement Agreement is Section 1.14, which waives "Unknown Claims" and specifically disavows California Civil Code Section 1542 and similar laws enacted by other states.   Class action members who do not file a claim, opt out, or even know about this case should not and cannot be bound by this type of broad, sweeping waiver of "Unknown Claims."  Perhaps a person that knows about the action, files a claim, and receives a monetary payment could waive unknown claims intelligently because they are receiving something, but a person that does not participate in this case, probably because he does not know what is at stake, cannot lose rights and causes of action based on unknown facts, which is why California enacted Section 1542.

More disturbing, the published Notice of Settlement that Class Counsel emailed and mailed to potential class members does not mention that a person who neither files a claim nor opts out waives "Unknown Claims." Rather, it simply states that, "If you do nothing, you will not be eligible to

receive a cash payment. However, if the Settlement is approved by the Court, you will give up your rights to sue Zoom for claims that are released by this Settlement." A person receiving this notice would not think they are giving up rights to Zoom for "Unknown Claims." Rather, a person would logically expect that a non-response would only waive claims specifically explained and described in the notice, which are, "Plaintiffs claim certain theories of alleged wrongful conduct by Zoom: (1) unauthorized sharing of users' information with third parties through incorporation of software development kits (SDKs) in the Zoom application, (2) unauthorized sharing of users' information with third parties through the third-party developers' employment of apps that can be installed and run on the Zoom platform (known as "marketplace apps"), (3) failure to prevent unwanted meeting disruptions by third parties, and (4) misrepresentations that Zoom provided end-to-end encryption at a time when Plaintiffs allege Zoom did not. Plaintiffs claim that such alleged conduct violated California state and federal laws."

Because the notice to class members did not describe or warn that non-participation would release "Unknown Claims," this Court cannot approve the Settlement Agreement. The Court should require the removal of the "Unknown Claims" provisions. In the alternative, this Court must require Class Counsel to provide notice to potential class members that they

will be waiving "Unknown Claims" if they do not file a claim or opt out.

**IV.    The Printable Claim Form and Online Claim Form inappropriately requires claimants that logically would have no documentation to upload or attach non-existent evidence.**

In this case, "All Settlement Class Members not eligible to submit a Paid Subscription Claim are **<u>entitled</u>** to submit a User Claim for $15)." *See* section 2.2(c) of the Settlement Agreement.   Section 1.40 defines the Settlement Class to be:  "all Persons in the United States who, between March 30, 2016, and the Settlement date, **registered, used, opened, or downloaded** the Zoom Meeting Application… ."

Notwithstanding that the Settlement Agreement does not describe any documentary requirements for submitting a claim, both the printable and the online version of the claim form require the claimant to submit "reasonable documentation."   However, objectors are perplexed:  What type of documentation exists if they merely "used, opened, or downloaded the Zoom Meeting Application?"  There would be no documentation.  As far as users who registered the software, the defendant itself would have that list.  However, any person who downloaded the software, opened it, or merely used it would have nothing– especially from 2016 or 2017.

If Class Counsel is insinuating that people will simply invent a claim that they "used, opened, or downloaded the Zoom Meeting Application," they

could have a paragraph on the claim for the claimant to explain what they precisely did.  The claimant could write, "In 2016, I downloaded Zoom, but I did not run it.  I no longer have the machine."  However, there would not exist documentation for a person who merely "used, opened, or downloaded" the application.  No rational person would keep a screenshot of the icon on their screen for 6 years.

The prejudice is overwhelming.  The claims administrator has sent bulk emails to known users begging them to file claims because of a poor response rate and advising that they would receive "substantially more" than $15:  "This is a reminder of the Notice you received on **November 29, 2021**, regarding the Zoom Class Action Settlement. . .   While the actual payment amount will depend on the total number of valid claims that are filed, at the current rate of claims, *users who submit claims are estimated to receive substantially more than $15*."

The lack of responses to the burdensome claim form that requires users to upload an impossibility:  Documentation providing they "used, opened, or downloaded the Zoom Meeting Application" caused the low number of claims.

For this reason, the claim form needs to be modified forthwith to eliminate the documentation requirement for users who merely "used, opened, or downloaded" the application.

If Class Counsel expects people to submit documentation, such as an

affidavit, objectors are making it clear that only a few might since they are promised "substantially more" as a result of the low number of claims.   Class Counsel needs to explain why they are requiring non-existent documentation considering the low number of claims.

Class Counsel, when responding to this objection, should be required to advise the Court not of the number of claims received, but a breakdown of how many claimants uploaded documentation under Section VI(2) of the Claim Form.  The number will be extremely low since documentation would not exist for this type of claimant and, as a result, they have no way to file a claim.

For this reason, the Court must require Class Counsel to modify the claim forms to eliminate the requirement of documentary evidence for class members that merely "downloaded" or "opened" the application and to, instead, provide a fill in space to allow the claimant to certify how they are eligible.  Affected class members should have ninety (90) days to file a claim without documentary evidence.

## V.     There Exists no Review Procedure if the Claims Administrator Denies a Claim.

Section 2.3(a) provides the Settlement Administrator with full, unfettered authority as to which claims to approve and which to deny. However, there exists neither clear information as to the qualifications of the

person making this decision nor what criteria will be used.  There exists no method for a claimant who has their claim denied to appeal it, seek reconsideration, or petition this Court.

This leads to serious questions:

1.  What is the experience and education requirements of the persons making the determination to deny a claim?

2. Are denials automatically reviewed by a superior or can the claimant at least petition a supervisor?  If so, what is the process?

3. What reasons exist for denial of a non-duplicate claim?

4. In a case where privacy issues are at play, are claims denied simply because a person invokes their right to use a VPN or proxy service?

5. Are persons in apartment buildings discriminated against because multiple persons with the same base address may be filing a claim?

6. Are claims considered duplicate if family members file individual claims who live in the same household?  If so, is there something in the settlement agreement that limits one claim per household?

As stated, this Court needs to take control over the administration of this settlement.  Any denial of a claim should be appealable to a supervisor at the Settlement Administrator and then, if the claimant is still dissatisfied, he should be able to petition this Court for a summary ruling to determine the validity of the denial.  A one page form for this process should exist.  This Court also needs to set parameters for denying a claim, not allow Epiq to impose their arbitrary and fluctuating procedures.

**VI.    Section 2.5(e) of the Settlement Agreement creates administrative problems that must be addressed.**

Section 2.5(e) reverts uncashed and non-received payments back to the settlement fund for additional distributions.  However, in prior cases, Epiq did not notify claimants if their checks were returned by the postal service or if they were not cashed.  Yet, the Settlement Administrator could do so since email addresses are provided, but they do not.  Settlement administrators, particularly Epiq, rarely notify claimants before checks are sent.  Sometimes they post a notice on the website, but for $15, claimants are simply not going to visit the page every week to see when the payments are coming.

Unfortunately, many settlement administrators have been using "junk mail" tear apart check mailers that people often throw away.  At a minimum, the check should be required to be sent in a normal business (#10) envelope that does not appear to be junk mail or advertising.  Additionally, the settlement administrator should notify claimants by email ten days before their checks are sent.  Finally, if a claimant's check is returned to the Settlement Administrator, Epiq should send an email to the claimant advising them how to have the check reissued.

Most recently, in *Edwards v. National Milk Producers*, 11cv4766 (N.D. Cal. 2022), only around thirty-percent of payments were cashed.  While the Settlement Administrator did provide notice prior to payment, unlike most

cases, the passage of time reduced the number of people able to receive their payments.  This situation can be reduced through better controls as described here.

Therefore, this Court should require the Settlement Administrator to email claimants ten (10) days before checks are mailed and notify claimants if their check is returned by the post office.

## VII.    Ninety (90) days is not sufficient time to cash a check and this Court must address the time for "check reissue" expiration.

While it may appear reasonable at first blush, because the passage of time between when the claimants have to submit their claims (now) and when the payments will be made if an appeal is taken, many claimants will move and change their address. Some might move twice.  Presently, persons with mail forwarding are experiencing lengthy delays when receiving mail forwarded by the post office.  Sometimes the forwarding process takes two months.

It is a well known fact that banks consider a check to be stale after six months, not three.  There exists no reason for the Settlement Administrator to try to cancel claimants' funds so quickly.  On the contrary, considering the low number of people that actually cash the checks, Class Counsel should desire sufficient time to resolve uncashed checks.  A more prudent plan would be for the check to be valid for six months, but after three months to send an

email to any claimant who did not cash their check.

Another thing not addressed in the settlement agreement is check reissues.  This occurs where a claimant contacts the Settlement Administrator to obtain a new check.  Epiq and other Settlement Administrators have been issuing the second check with a short thirty (30) day expiration.  Nothing in this settlement agreement authorizes this short period of time.  If a person maintains a mail forwarding order, that check will not be received in time for cashing.

Therefore, this Court should require any initial check to be valid for at least six months.  Any supplemental check should be valid for at least 90 days.


**VIII.    Sections 2.5(e) of the settlement violates public policy and escheat laws.**

Section 2.5(e) of the settlement provides that a claimant that does cash his check or process his electronic payment reverts to the settlement fund and is then distributed to other claimants.  This procedure violates public policy and state escheat laws.

When a contract violates public policy, it is void ab initio and will be treated as though no contract ever existed. *Paul Revere Life Ins. Co. v. Fima,* 105 F.3d 490, 492 (9th Cir.1997)*; see also* BLACK'S LAW DICTIONARY 1574

(8th ed. 2004) (entry under "void ab initio") ("A contract is *void ab initio* if it seriously offends law or public policy, in contrast to a contract that is merely voidable at the election of one party to the contract.").

In this case, claimants already began filing their claims.  Objections will be filed to this Court's settlement and the provisions may be changed or an appeal could be taken.  The appeals could last up to eighteen months, or longer.  Claimants' email addresses change, they move, and their electronic accounts are sometimes closed.  Under the provisions of Section 2.5(e), these claimants could lose money that they timely claimed and that belongs to them simply because the claims administrator does not desire to comply with the laws of the claimant's states.  The provisions of Section 2.5(e) brazenly seek judicial permission to ignore the law and fiduciary requirements of these provisions.

Attached at Table I is a list of escheat laws that must be complied with for the settlement not to offend public policy.

Therefore, this Court should require modification of the Settlement Agreement to comply with escheat and unclaimed property laws.

## IX. An Easy Form to Change the Claimant's Address Must be Provided on the Class Action Website

Strangely, the websites for most class actions administered in the Northern District of California do not include an easy form for claimants to

use to change their address.  The sole exception appears to be *In re: CRT*

*Antitrust Litigation*, MDL 1917 (N.D. Cal.) where a form was placed, albeit

one that is clunky at best.  Objectors are perplexed that the Settlement

Administrators decide to make it difficult for Class Members to provide this

information to them.

Claimants are required to send an unsecure email to the Settlement

Administrator with their new address or payment information.  Sometimes

the claimants receive a response, sometimes they do not.  There exists no

receipt or ticket number for this process.  This is one of the reasons claimants

do not bother updating their address in a $15 to $25 settlement and why

there is a high rate of return.  It actually costs more money for the

Settlement Administrator to have to deal with check reissues than it would to

have the change of address widget on the website.  The simple widget should

be on the website that allows claimants to enter their new information,

whether it be an address for a check, or an updated Paypal or other electronic

payment information.  The form should provide the claimant with some

acknowledgement number.

## X.   Conclusion

Based on the above, objectors Sammy Rodgers and Alvery Neace hereby request that this Court deny approval of the Settlement Agreement unless the problems addressed herein are solved.

Respectfully submitted,

_/s J. Allen Roth_
J. Allen Roth, Esq. (PA ID 30347)
805 S. Alexandria Street
Latrobe PA  15650
(724) 686-8003
office@jarothlaw.com

COUNSEL FOR OBJECTORS
SAMMY RODGERS AND ALVERY
NEACE _pending pro hac vice_

TABLE I

| State | Statutory Citation for Unclaimed Property | Statutory Citation for General Presumption of Abandoned Property | Statutory Citation for Escheat Provisions |
|---|---|---|---|
| Alabama | Ala Code §35-12-70 et seq. | Ala Code §35-12-72 | Ala Code §43-6-2 et seq. |
| Alaska | Alaska Stat. §34.45.010 et seq. | Alaska Stat. §34.45.110 | Alaska Stat. §13.12.105 |
| Arizona | Ariz. Rev. Stat. Ann. §44-301 et seq. | Ariz. Rev. Stat. Ann. §44-302 | Ariz. Rev. Stat. Ann. §14-2105 |
| Arkansas | Ark. Stat. Ann. §18-28-201 et seq. | Ark. Stat. Ann. §18-28-202 | Ark. Stat. Ann. §28-13-101 et seq. |
| California | Cal. Civ. Proc. Code §1500 et seq. | Cal. Civ. Proc. Code §1511 et seq. | Cal. Civ. Proc. Code §1410 et seq. and §1440 et seq. |
| Colorado | Colo. Rev. Stat. §38-13-101 et seq. | Colo. Rev. Stat. §38-13-103 | Colo. Rev. Stat. §15-12-914 |

| | | | |
|---|---|---|---|
| Connecticut | Conn. Gen. Stat. §3-56a et seq. | Conn. Gen. Stat. §3-57a – §3-64a | Conn. Gen. Stat. §3-63a |
| Delaware | Del. Code Ann. tit. 12, §1130 et seq. | Del. Code Ann. tit. 12, §1170 | Del. Code Ann. tit. 12, §1101 et seq. |
| District of Columbia | D.C. Code Ann. §41-101 et seq. | D.C. Code Ann. §41-103 | D.C. Code Ann. §19-701 |
| Florida | Fla. Stat. §717.001 et seq. | Fla. Stat. §717.102 | Fla. Stat. §716.01 et seq. |
| Georgia | Ga. Code §44-12-190 et seq. | Ga. Code §44-12-193 – §44-12-209 | Ga. Code §52-3-50 et seq. |
| Guam | | | Guam Code Ann. tit. 15, §1201 et seq. |
| Hawaii | Hawaii Rev. Stat. §523A-1 et seq. | Hawaii Rev. Stat. §523A-3 | Hawaii Rev. Stat. §532-14 |
| Idaho | Idaho Code §14-501 et seq. | Idaho Code §14-502 | Idaho Code §14-113 |
| Illinois | Ill. Rev. Stat. ch. 765, §1026/15-101 et | Ill. Rev. Stat. ch. 765, §1026/15-201 | Ill. Rev. Stat. ch. 755, §20/0.01 et |

| | | | |
|---|---|---|---|
| | seq. | | seq. |
| Indiana | Ind. Code §32-34-1-1 et seq. | Ind. Code §32-34-1-20 | Ind. Code §29-1-17-12 |
| Iowa | Iowa Code §556.1 et seq. | Iowa Code §556.2 – 556.9 | Iowa Code §633.543 et seq. |
| Kansas | Kan. Stat. Ann. §58-3934 et seq. | Kan. Stat. Ann. §58-3935 | Kan. Stat. Ann. §59-901 et seq. |
| Kentucky | Ky. Rev. Stat. §393A.010 et seq. | Ky. Rev. Stat. §393A.040 et seq. | Ky. Rev. Stat. §393.010 et seq. |
| Louisiana | La. Rev. Stat. Ann. §9:151 et seq. | La. Rev. Stat. Ann. §9:154 | La. Civil Code Art. 902 |
| Maine | Me. Rev. Stat. Ann. tit. 33, §1951 et seq. | Me. Rev. Stat. Ann. tit. 33, §1953 | Me. Rev. Stat. Ann. tit. 18A, §2-105 |
| Maryland | Md. Commercial Law Ann. §17-101 | Md. Commercial Law Ann. §17-301 – 17-308 | Md. Estates and Trusts §3-105 |
| Massachusetts | Mass. Gen. Laws. Ann. ch. 200A, §1 et seq. | Mass. Gen. Laws. Ann. ch. 200A, §1A – 6C | Mass. Gen. Laws. Ann. ch. 200A, §1 et seq. |
| Michigan | Mich. Comp. Laws §567.221 | Mich. Comp. Laws §567.223 – §567.237 | Mich. Comp. Laws §700.2105 |

| | | | |
|---|---|---|---|
| | et seq. | | |
| Minnesota | Minn. Stat. §345.01 et seq. | Minn. Stat. §345.31 – §345.39 | Minn. Stat. §524.2-105 |
| Mississippi | Miss. Code Ann. §89-12-1 et seq. | Miss. Code Ann. §89-12-5 – §89-12-19 | Miss. Code Ann. §89-11-1 et seq. |
| Missouri | Mo. Rev. Stat. §447.010 et seq. | Mo. Rev. Stat. §447.505 – §447.536 | Mo. Rev. Stat. §470.010 et seq. |
| Montana | Mont. Code Ann. §70-9-801 et seq. | Mont. Code Ann. §70-9-803 | Mont. Code Ann. §72-14-101 et seq. |
| Nebraska | Neb. Rev. Stat. §69-1301 et seq. | Neb. Rev. Stat. §69-1302 – §69-1309 | Neb. Rev. Stat. §30-2305 |
| Nevada | Nev. Rev. Stat. §120A.010 et seq. | Nev. Rev. Stat. §120A.500 | Nev. Rev. Stat. §154.010 et seq. |
| New Hampshire | N.H. Rev. Stat. Ann. §471:C-1 et seq. | N.H. Rev. Stat. Ann. §471:C-2 – 471:C-18 | N.H. Rev. Stat. Ann. §561:10 |
| New Jersey | N.J. Rev. Stat. §46:30B-1 et seq. | N.J. Rev. Stat. §46:30B-7 | N.J. Rev. Stat. §3B:22-25 et seq. |
| New Mexico | N.M. Stat. Ann. §7-8A-1 et seq. | N.M. Stat. Ann. §7-8A-2 | N.M. Stat. Ann. §45-2-105 |

| | | | |
|---|---|---|---|
| New York | N.Y. Abandoned Property Law §101 et seq. | N.Y. Abandoned Property Law §300 – §1317 | N.Y. Abandoned Property Law §200 et seq. |
| North Carolina | N.C. Gen. Stat. §116B-51 et seq. | N.C. Gen. Stat. §116B-53 | N.C. Gen. Stat. §116B-1 et seq. |
| North Dakota | N.D. Cent. Code §47-30.1-01 et seq. | N.D. Cent. Code §47-30.1-02 | N.D. Cent. Code §30.1-04-05 |
| Ohio | Ohio Rev. Code Ann. §169.01 et seq. | Ohio Rev. Code Ann. §169.02 | Ohio Rev. Code Ann. §2105.07 |
| Oklahoma | Okla. Stat. tit. 60, §651 et seq. | Okla. Stat. tit. 60, §651.1 – §659 | Okla. Stat. tit. 87, §271 et seq. |
| Oregon | Or. Rev. Stat. §98.005 et seq. | Or. Rev. Stat. §98.308 – §98.342 | Or. Rev. Stat. §112.055 |
| Pennsylvania | Pa. Stat. tit. 72, §1301.1 et seq. | Pa. Stat. tit. 72, §1301.2 – §1301.10 | Pa. Stat. tit. 27, §11 et seq. |
| Puerto Rico | P.R. Code tit. 7, §2101 et seq. | P.R. Code tit. 7, §2103 | P.R. Code tit. 7, §2104 |
| Rhode Island | R.I. Gen. Laws §33-21-1 et seq. R.I. Gen. Laws §33-21.1-1 et seq. | R.I. Gen. Laws §33-21.1-2 | R.I. Gen. Laws §33-21.1-1 et seq. |

| South Carolina | S.C. Code Ann. §27-18-10 et seq. | S.C. Code Ann. §27-18-30 – §27-18-175 | S.C. Code Ann. §27-19-10 et seq. |
|---|---|---|---|
| South Dakota | S.D. Codified Laws Ann. §43-41B-1 et seq. | S.D. Codified Laws Ann. §43-41B-2 | S.D. Codified Laws Ann. §29A-2-105 |
| Tennessee | Tenn. Code Ann. §66-29-101 et seq. | Tenn. Code Ann. §66-29-104 – §66-29-112 | Tenn. Code Ann. §31-6-101 et seq. |
| Texas | Tex. Property Code Ann. §72.001 et seq. | Tex. Property Code Ann. §72.101<br><br>Tex. Property Code Ann. §73.101 | Tex. Property Code Ann. §71.001 et seq. |
| Utah | Utah Code Ann. §67-4a-101 et seq. | Utah Code Ann. §67-4a-201 | Utah Code Ann. §75-2-105 |
| Vermont | Vt. Stat. Ann. tit. 27, §1241 et seq. | Vt. Stat. Ann. tit. 27, §1242 | Vt. Stat. Ann. tit. 14, §681 et seq. |
| Virginia | Va. Code §55.1-2500 et seq. | Va. Code §55.1-2501 | Va. Code §55.1-2400 et seq. |
| Virgin Islands | V.I. Code §28, §651 et seq. | V.I. Code §28, §653 | V.I. Code §15, §121 et seq. |

| Washington | Wash. Rev. Code §63.29.010 et seq. | Wash. Rev. Code §63.29.20 | Wash. Rev. Code §11.08.101 et seq. |
|---|---|---|---|
| West Virginia | W. Va. Code §36-8-1 et seq. | W. Va. Code §36-8-2 | W. Va. Code §42-1-3c |
| Wisconsin | Wis. Stat. §177.01 et seq. | Wis. Stat. §177.02 | Wis. Stat. §863.39 |