1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                SAN JOSE DIVISION

4

5   IN RE: ZOOM VIDEO        )  C-20-02155 LHK
    COMMUNICATIONS, INC. PRIVACY  )
6   LITIGATION.              )  SAN JOSE, CALIFORNIA
                              )
7   _____ )  OCTOBER 21, 2021
                              )
8   THIS DOCUMENT RELATES TO ALL  )  PAGES 1-34
    ACTIONS.                )
9                                )
    _____ )
10

11

12             TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE LUCY H. KOH
13            UNITED STATES DISTRICT JUDGE

14

15  A P P E A R A N C E S:

16  FOR THE PLAINTIFFS:   AHDOOT & WOLFSON
                      BY:  TINA WOLFSON
17                   2600 WEST OLIVE AVENUE, SUITE 500
                   BURBANK, CALIFORNIA  91505
18
                   COTCHETT, PITRE & MCCARTHY LLP
19                 BY:  MARK C. MOLUMPHY
                   840 MALCOLM ROAD, SUITE 200
20                 BURLINGAME, CALIFORNIA  94010

21

22       APPEARANCES CONTINUED ON THE NEXT PAGE

23  OFFICIAL COURT REPORTER:   LEE-ANNE SHORTRIDGE, CSR, CRR
                          CERTIFICATE NUMBER 9595
24

25      PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
         TRANSCRIPT PRODUCED WITH COMPUTER

1

2       APPEARANCES (CONTINUED)

3       FOR PLAINTIFF RIOS:     LAW OFFICES OF JOHN L. FALLAT
                                BY:  JOHN L. FALLAT
4                               68 MITCHELL BOULEVARD, SUITE 135
                                SAN RAFAEL, CALIFORNIA  94903

5

6       FOR THE DEFENDANTS:     COOLEY LLP
                                BY:  BENJAMIN H. KLEINE
7                               101 CALIFORNIA STREET, 5TH FLOOR
                                SAN FRANCISCO, CALIFORNIA  94111

8

9       ALSO PRESENT:           TYSON REDENBARGER
                                NOORJAHAN RAHMAN
10                              JULIA PENG

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1    SAN JOSE, CALIFORNIA                    OCTOBER 21, 2021

2                    P R O C E E D I N G S

3        (COURT CONVENED AT 1:35 P.M.)

4            THE COURT:  GOOD AFTERNOON, WELCOME.

5            THE CLERK:  CALLING CASE 20-2155, IN RE: ZOOM VIDEO

6    COMMUNICATIONS, INC., PRIVACY LITIGATION.

7        COUNSEL, PLEASE STATE YOUR APPEARANCES.  THANK YOU.

8            MS. WOLFSON:  GOOD AFTERNOON, YOUR HONOR.

9        TINA WOLFSON OF AHDOOT & WOLFSON ON BEHALF OF THE

10   PLAINTIFFS.

11           MR. MOLUMPHY:  GOOD AFTERNOON, YOUR HONOR.

12       MARK MOLUMPHY, COTCHETT, PITRE & MCCARTHY, FOR THE

13   PLAINTIFFS.

14           MR. KLEINE:  GOOD AFTERNOON, YOUR HONOR.

15       BENJAMIN KLEINE FROM COOLEY LLP ON BEHALF OF DEFENDANT

16   ZOOM.

17           MR. FALLAT:  GOOD AFTERNOON, YOUR HONOR.

18       JOHN FALLAT ON BEHALF OF PLAINTIFF MR. RIOS, PART OF THE

19   CONSOLIDATED ACTIONS.

20           THE COURT:  OKAY.  GOOD AFTERNOON.  WELCOME TO

21   EVERYONE.  PLEASE TAKE A SEAT.

22       AND FOR COUNSEL, DO WHATEVER IS MOST COMFORTABLE FOR YOU.

23   IF YOU WANT TO SIT AT THE TABLE, YOU CAN DO THAT.  IF YOU WOULD

24   LIKE TO STAND AND COME TO THE PODIUM, YOU'RE WELCOME TO DO

25   THAT, TOO.  I DEFER TO WHATEVER IS MOST COMFORTABLE FOR YOU.
```

1          SO LET ME ASK A FEW QUESTIONS ABOUT YOUR AGREEMENT.

2          SO HOW DID THE PLAINTIFFS CALCULATE THE CLASS SIZE TO BE

3    221.7 MILLION?  I KNOW ZOOM SAYS IT HAS CONTACT INFORMATION FOR

4    160 MILLION, SO HOW DID YOU GET THAT EXTRA 61.7 MILLION FOLKS?

5          MS. WOLFSON:  YOUR HONOR, THAT'S AN EDUCATED GUESS

6    BASED ON THE TOTAL U.S. POPULATION.  IT'S ABOUT TWO-THIRDS OF

7    THE TOTAL U.S. POPULATION.

8          THE COURT:  I SEE.  AND IS THAT SOMETHING THAT YOUR

9    EXPERT GAVE INPUT ON?  OR THIS IS JUST YOUR BEST ESTIMATE?

10          MS. WOLFSON:  IT'S OUR BEST ESTIMATE, YOUR HONOR.

11    THE UNREGISTERED USERS SUBCLASS IS QUITE DIFFICULT TO ESTIMATE

12    ANY BETTER THAN THAT.

13          THE COURT:  OKAY.  AND WHAT'S YOUR SENSE -- YOU'RE

14    EXCLUDING THE GOVERNMENT ACCOUNT USERS, AS WELL AS THE

15    ENTERPRISE LEVEL USERS.

16          DO YOU THINK THAT THERE'S JUST TOO MANY INDIVIDUALIZED

17    INQUIRIES BECAUSE THEY NEGOTIATE THEIR SERVICES AND THEIR

18    CONTRACTS WITH ZOOM DIRECTLY?  WAS IT A -- A CLASS

19    CERTIFICATION ISSUE THAT YOU WERE CONCERNED ABOUT?

20          OR YOU THINK THEY DON'T HAVE CLAIMS BECAUSE THEY HAVEN'T

21    EXPERIENCED THE SAME THINGS AS THE OTHER USERS?  WHAT'S YOUR

22    SENSE?

23          MS. WOLFSON:  WELL, I THINK THE ISSUES ARE

24    INTERTWINED BETWEEN THE TWO CHOICES YOU JUST GAVE US, YOUR

25    HONOR.

1            SO BECAUSE TYPICALLY THESE ARE MORE SOPHISTICATED PLAYERS

2     WHO HAVE I.T. DEPARTMENTS NEGOTIATING CUSTOMIZED CONTRACTS,

3     IT'S REALLY NOT IN THE NATURE OF THE CLASS MEMBERS THAT WE

4     REPRESENT.

5            BUT IT ALSO GOES TO THE QUALITY OF THE CLAIMS, THE PRIVACY

6     CLAIMS, FOR EXAMPLE, AND EACH OF THE ENCRYPTION CLAIMS.

7            SO THAT WAS THE REASON FOR THE EXCLUSION.

8            THE COURT:  I SEE.  I SEE.  SO YOU'RE NOT EXPECTING,

9     LIKE, A SUBSEQUENT LAWSUIT REPRESENTING THOSE PARTICULAR

10    CATEGORIES OF ENTITIES OR PEOPLE?

11           MS. WOLFSON:  WE DON'T EXPECT TO BRING ANY MORE

12    LAWSUITS.

13           THE COURT:  OKAY.

14           MS. WOLFSON:  AND JUST TO BE CLEAR, THOSE -- THOSE

15    INDIVIDUALS, COMPANIES, ARE NOT RELEASING ANY CLAIMS.

16           THE COURT:  RIGHT.  THAT'S WHY I WAS WONDERING

17    WHETHER THERE WAS GOING TO BE SOME FOLLOW-ON RELATED LITIGATION

18    BY ANYONE ELSE.  BUT YOU'RE SAYING NO.

19           I MEAN, IT SOUNDS -- MY SENSE, FROM READING WHAT YOU SAID,

20    IS THAT THEY COULD HAVE A CLASS CERTIFICATION ISSUE IF THEY

21    HAVE THESE CUSTOMIZED ARRANGEMENTS WITH ZOOM.

22           MS. WOLFSON:  WE THINK BOTH, YEAH.

23           THE COURT:  OKAY.

24           MS. WOLFSON:  WE THINK BOTH THE MERITS OF ANY

25    PARTICULAR CLAIM, AS WELL AS CLASS CERTIFICATION, PRESENTS A

1    BIGGER CHALLENGE FOR THOSE ENTITIES.

2         THE COURT:  OKAY.  NOW, YOU HAD TWO DIFFERENT

3    EXPECTED PARTICIPATION RATES IN YOUR DOCUMENTS, AND I JUST

4    DIDN'T KNOW IF ONE WAS A TYPO OR WHETHER THERE MIGHT BE SOME

5    DIFFERENCE.

6         SO IN YOUR MOTION ON -- OKAY.  SO ON PAGE 21, IT SAYS THE

7    PAID SUBSCRIPTION CLAIMS RATE IS LIKELY TO BE BETWEEN 3 AND 5

8    PERCENT.  BUT THEN ON AN EARLIER PAGE, IT SAYS IT'S GOING TO BE

9    1 TO 5 PERCENT.

10        SO I WAS JUST WONDERING WHETHER THAT WAS A TYPO OR WHETHER

11   YOU HAD A MORE REFINED SENSE.  WHAT DO YOU THINK?

12        SO I'M JUST LOOKING AT -- PAGE 15 OF YOUR MOTION SAYS THAT

13   THE PARTICIPATION RATE IS GOING TO BE BETWEEN 1 AND 5 PERCENT

14   FOR PAID SUBSCRIBERS.  THAT'S ON LINE 15.

15        MS. WOLFSON:  UH-HUH.

16        THE COURT:  BUT THEN ON PAGE 21, LINE 10, YOU SAID,

17   NO, THE PAID SUBSCRIPTION CLAIMS RATE IS GOING TO BE 3 TO 5

18   PERCENT.  SO I WAS JUST WONDERING WHY THERE WAS A DIFFERENCE,

19   OR WAS THAT A TYPO?

20        MS. WOLFSON:  SORRY, YOUR HONOR.  WHAT WAS THE NUMBER

21   FOR THE SECOND REFERENCE?

22        THE COURT:  SO THE SECOND REFERENCE SAYS IT'S GOING

23   TO BE BETWEEN 3 AND 5 PERCENT.

24        MS. WOLFSON:  RIGHT.  AND WHERE IS THAT?

25        THE COURT:  THAT'S ON PAGE 21, LINE 10, ON ECF

1      NUMBER 190; WHEREAS ON PAGE 15, ECF 190, ON LINE 15 IT SAYS THE

2      PAID SUBSCRIBER CLAIMS RATE IS GOING TO BE BETWEEN 1 AND 5

3      PERCENT.

4           I WAS JUST CURIOUS WHETHER THAT WAS A TYPO IN ONE OF THEM

5      OR WHETHER --

6                MS. WOLFSON:  YEAH, IT'S A TYPO.

7                THE COURT:  OKAY.

8                MS. WOLFSON:  THE 3 PERCENT IS A TYPO, YOUR HONOR.

9                THE COURT:  OKAY.  SO THAT SHOULD BE 1 PERCENT.

10     OKAY.  ALL RIGHT.

11          AND YOU'RE JUST BASING THAT ON PRIOR, PRIOR PRIVACY CASES?

12     IS THAT RIGHT?

13               MS. WOLFSON:  THAT'S RIGHT, YOUR HONOR.

14               THE COURT:  OKAY.  SO WHAT -- I NORMALLY LIKE PEOPLE

15     TO SORT OF WALK ME THROUGH THE RECOVERY, BUT LET'S GET TO THAT

16     LATER.

17          WHAT IS LIKELY TO HAPPEN WITH THE TWO STAYED STATE COURT

18     ACTIONS?  I ASSUME THEY'RE STAYED PENDING THIS CASE'S

19     RESOLUTION OF THIS SETTLEMENT.  IS THAT RIGHT?

20               MS. WOLFSON:  YES, YOUR HONOR.

21          AND WE HAVE BEEN IN COOPERATIVE CONTACT WITH PLAINTIFFS'

22     LAWYERS FOR ONE OF THE CASES, AND THEY WILL BE SUBSUMED IN THIS

23     LAWSUIT.  SO ESSENTIALLY --

24               THE COURT:  I SEE.

25               MS. WOLFSON:  -- IF YOUR HONOR GRANTS PRELIMINARY AND

1       THEN FINAL APPROVAL, THOSE LAWSUITS WILL GO AWAY.

2               THE COURT:  OKAY.  NOW, I THOUGHT IT WAS

3       INTERESTING -- YOU KNOW, I ONLY APPROVED, IN THIS CASE, YOU

4       KNOW, THE TWO INTERIM CO-LEAD COUNSEL, AND THEN THREE LAW FIRMS

5       FOR THE STEERING COMMITTEE.  BUT I SAW IN THE SETTLEMENT YOU

6       HAVE A LOT OF OTHER LAW FIRMS DEFINED HERE IN THE DEFINITION,

7       THE ADDITIONAL PLAINTIFFS' COUNSEL.  ARE THEIR FEES INCLUDED IN

8       YOUR LODESTAR?

9               MS. WOLFSON:  NO, YOUR HONOR.  ONLY THE LEAD COUNSEL

10      AND STEERING COMMITTEE'S FEES ARE INCLUDED IN THE LODESTAR.

11              THE COURT:  OKAY.  I SEE.  OKAY.

12          SO WHY ARE THESE OTHER ADDITIONAL PLAINTIFFS' COUNSEL

13      BEING DEFINED IN YOUR SETTLEMENT AGREEMENT?

14              MR. KLEINE:  YOUR HONOR -- SORRY, YOUR HONOR.

15              THE COURT:  GO AHEAD, PLEASE.

16              MR. KLEINE:  YEAH, IF I MAY?

17          WE ASKED -- WE INCLUDED THE ADDITIONAL PLAINTIFFS'

18      COUNSEL, AND I BELIEVE THE ONLY REFERENCE TO IT IS IN THE

19      SECTION THAT TALKS ABOUT HOW ZOOM WILL OWE NO FURTHER FEES OR

20      COSTS TO ANY OTHER COUNSEL, INCLUDING ADDITIONAL PLAINTIFFS'

21      COUNSEL.

22              THE COURT:  I SEE.

23              MR. KLEINE:  AND IT'S JUST TO PROTECT ZOOM IN THIS

24      CASE, THAT THESE LAW FIRMS ARE NOT GOING TO COME AFTER ZOOM FOR

25      ADDITIONAL MONEY.

1          THE COURT:  I SEE.  ALL RIGHT.  THANK YOU FOR

2     CLARIFYING THAT.

3          LET ME ASK, I ASSUME THE PLAINTIFFS' TECHNICAL EXPERT IS

4     THE ONE WHO SUGGESTED A LOT OF THIS INJUNCTIVE RELIEF.  IS THAT

5     RIGHT?  LIKE THE SPECIFIC -- I MEAN, OBVIOUSLY IT'S IN A MORE

6     GENERAL FORM, OR GENERAL LANGUAGE FOR SECURITY PURPOSES.

7          BUT DID YOU GET TECHNICAL EXPERTISE IN SORT OF WHAT TO

8     SUGGEST AND WHAT TO REQUEST IN THE FORM OF INJUNCTIVE RELIEF?

9          MS. WOLFSON:  WE DID, YOUR HONOR.

10          THE COURT:  OKAY.  ALL RIGHT.

11          NOW, WHAT WAS THE DECISION -- SOME OF THE SHARING OF DATA

12     WITH THIRD PARTIES, THAT INJUNCTIVE RELIEF ONLY LASTS A YEAR,

13     WHEREAS THE OTHER INJUNCTIVE RELIEF LASTS THREE YEARS.

14          WHAT WAS YOUR THINKING ON THAT?  WAS THAT JUST, LIKE,

15     ZOOM'S ECONOMICS REQUIRED THE SHARING OF THE DATA WITH FACEBOOK

16     AND GOOGLE ANALYTICS AND LINKEDIN AND WHATNOT?  OR WHAT WAS

17     YOUR SENSE?

18          MR. KLEINE:  YOUR HONOR, THE INJUNCTIVE RELIEF THAT

19     LASTS FOR THREE YEARS --

20          THE COURT:  YEAH.

21          MR. KLEINE:  -- WILL COVER THE THIRD PARTY SHARING

22     CLAIMS IN THE SENSE THAT ZOOM IS AGREEING TO FIX ITS

23     REPRESENTATIONS.

24          AS PART OF THE NEGOTIATED PACKAGE, WE SAID, OKAY, WE WILL

25     REMOVE THE FACEBOOK SDK FROM THE APP FOR A PERIOD OF A YEAR.

1    WE'RE NOT GOING TO BE TIED -- WE DON'T KNOW WHERE THE PRODUCT

2    IS GOING TO HEAD IN THE FUTURE AND WE DON'T WANT ZOOM TO HAVE

3    ITS HANDS TIED IF IN THE FUTURE IT WANTS TO REINTEGRATE SOME OF

4    THESE PRODUCTS.

5         BUT IT NEEDS TO COMPLY WITH THE NOTICE PROVISIONS AND IT

6    NEEDS TO BE IN THE, FOR EXAMPLE, IN THE PRIVACY POLICY THAT

7    THAT SHARING IS OCCURRING.

8         THE COURT:  I SEE.  SO YOUR -- YOUR SENSE IS AS LONG

9    AS THE PRIVACY STATEMENT SAYS ZOOM HAS THE ABILITY TO SHARE

10   USER DATA WITH THIRD PARTIES VIA INTEGRATION OF THIRD PARTY

11   SOFTWARE, THAT THAT'S SUFFICIENT?

12        MR. KLEINE:  CORRECT, YOUR HONOR.

13        THE COURT:  WHEN ARE THESE DISCLOSURES GOING TO GO

14   ONLINE?

15        MR. KLEINE:  THEY ARE LIVE TODAY, YOUR HONOR.

16        THE COURT:  OH, THEY ARE?

17        MR. KLEINE:  THEY'RE LIVE TODAY AS OF THE BEGINNING

18   OF JUNE, JUNE 4TH, I BELIEVE.

19        THE COURT:  OKAY.  I GUESS THE QUESTION -- I'M

20   LOOKING AT 3.3 OF THE SETTLEMENT AGREEMENT.  IT SAYS THE

21   INJUNCTIVE RELIEF THAT'S SET FORTH IN E, G, AND K, WHICH IS THE

22   SHARING OF THE INFORMATION WITH FACEBOOK, GOOGLE ANALYTICS, AND

23   LINKEDIN, ONLY LASTS A YEAR.

24        AND SO I GUESS I WAS -- I'D LIKE TO HEAR FROM THE

25   PLAINTIFFS.  IS THIS JUST, YOU KNOW, ZOOM, FOR ITS OWN

1    ECONOMICS, NEEDS TO HAVE THIS DATA SHARING WITH THIRD PARTIES?

2    OR WHAT -- WHY IS THIS RELIEF ONLY A YEAR, WHICH IS, YOU KNOW,

3    RELATIVELY SHORT?  I MEAN, I DEFINITELY, IN THESE PRIVACY

4    CASES, SEE A LOT OF THE INJUNCTIVE RELIEF BEING TIME LIMITED,

5    BUT ONE YEAR SEEMS SHORT TO ME.

6         WHAT WAS YOUR THINKING OR SENSE ON THIS?

7              MS. WOLFSON:  WELL, YOUR HONOR, AS EVERY TERM OF THE

8    SETTLEMENT AGREEMENT, IT WAS HOTLY CONTESTED AND ZEALOUSLY

9    NEGOTIATED.

10        OUR THINKING WAS THAT WE COULD LIVE WITH IT AS LONG AS THE

11   DISCLOSURE IS ROBUST, AND THAT WAS DEFINITELY PART OF THE

12   INJUNCTIVE RELIEF PACKAGE.

13        AND I SHOULD MENTION THAT THE DISCLOSURE DOESN'T JUST GO

14   TO WHAT THE SDK'S DO, BUT ALSO WHAT MARKETPLACE APPS DO, AND

15   THERE'S A WHOLE SECTION OF ZOOM'S WEBSITE NOW DEDICATED TO THE

16   PRIVACY DISCLOSURES WHERE YOU CAN ACTUALLY GO ON THE PARTICULAR

17   MARKETPLACE APPS AND IF YOU HOVER OVER IT, IT HAS A LOT OF

18   DETAILS ABOUT WHAT TYPE OF INFORMATION IS BEING SHARED.

19             THE COURT:  OKAY.  WHAT ABOUT -- SINCE YOU'RE GOING

20   TO BE DOING CLASS PAYMENTS ONLINE, I'M REALLY INTERESTED IN

21   WHAT KIND OF, YOU KNOW, DATA SECURITY, PRIVACY SAFEGUARDS THE

22   CLAIMS ADMINISTRATOR WILL USE WITH THAT INFORMATION.

23   SIMILARLY, HOW LONG THEY'RE GOING TO RETAIN THE DATA FOR CLASS

24   MEMBERS.

25             I ASSUME YOU'RE GOING TO GET THEIR BANKING AND FINANCIAL

1    INFORMATION IF YOU'RE GOING TO PAY THEM ONLINE, AND WHAT THE

2    USES OF THAT DATA IS.  WHEN CAN I GET THAT?

3         I WOULD -- YOU KNOW, AND PERHAPS THIS IS MORE FOR A FINAL

4    APPROVAL, BUT I'M -- I'M INTERESTED IN IT FOR PRELIMINARY

5    APPROVAL.  IF YOU'RE GOING TO HAVE MILLIONS OF PEOPLE'S, YOU

6    KNOW, BANK ACCOUNT INFORMATION, I WANT TO MAKE SURE THAT WE DO

7    NOT BECOME THE NEXT DATA BREACH CASE IN A PRIVACY CASE, WHICH

8    WOULD BE VERY EMBARRASSING AND BAD.

9         SO -- AND WOULD HURT PARTICIPATION OF, YOU KNOW, CLASS

10   MEMBERS IN FUTURE CASES.

11        SO WHAT KIND OF -- HAVE YOU TALKED ABOUT THIS WITH EPIC?

12   I DON'T KNOW IF IT'S EPIC -- IT WOULD BE EPIC WHO WOULD BE THE

13   HOLDER OF THIS INFORMATION; RIGHT?

14             MS. WOLFSON:  RIGHT.

15             THE COURT:  SO WHAT -- HAVE YOU TALKED TO THEM ABOUT,

16   YOU KNOW, HOW LONG ARE THEY GOING TO RETAIN IT?  THEY SHOULD

17   ONLY RETAIN IT FOR THIS CASE AND, YOU KNOW, ONCE ANY APPEALS

18   ARE RESOLVED AND THE FINAL DISTRIBUTIONS HAVE BEEN MADE, THEY

19   SHOULD NOT KEEP THAT DATA.

20        SO TELL ME WHAT YOUR THOUGHTS ARE ON SECURITY AND PRIVACY.

21             MS. WOLFSON:  SURE, YOUR HONOR.  THIS IS A VERY

22   IMPORTANT ISSUE, OBVIOUSLY, ESPECIALLY IN A CASE LIKE THIS.

23             THE COURT:  YES.

24             MS. WOLFSON:  EPIC IS A PUBLICLY TRADED COMPANY THAT

25   IS, YOU KNOW, IN THE BUSINESS OF HANDLING THESE KINDS OF

1    PAYMENTS.

2              THE COURT:  UM-HUM.

3              MS. WOLFSON:  SO THEY COMPLY WITH ALL THE APPLICABLE

4    REGULATIONS.

5         THERE'S ALSO A NON-DISCLOSURE AGREEMENT --

6              THE COURT:  UM-HUM.

7              MS. WOLFSON:  -- THAT IS SIGNED BETWEEN ZOOM, EPIC,

8    AND PLAINTIFFS' LAWYERS.  WE ACTUALLY DON'T GET TO SEE THE

9    DATA.

10             THE COURT:  UM-HUM.

11             MS. WOLFSON:  THE DATA IS GOING DIRECTLY FROM ZOOM TO

12   EPIC.

13             THE COURT:  UM-HUM.

14             MS. WOLFSON:  AND THERE'S ALL KINDS OF PROCEDURES

15   THAT THEY MUST COMPLY WITH TO MAKE SURE THAT --

16             THE COURT:  ALL RIGHT.  WELL, I WOULD JUST WANT TO

17   MAKE SURE THAT --

18             MS. WOLFSON:  WE'RE HAPPY TO --

19             THE COURT:  YEAH, I WOULD WANT TO MAKE SURE AND -- I

20   WOULD JUST WANT TO MAKE SURE THAT THERE IS SOME FOLLOW-UP TO

21   MAKE SURE THAT EPIC IS ENGAGING IN BEST PRACTICES ON DATA

22   SECURITY AND DATA PRIVACY, AS WELL AS, YOU KNOW, DISCLOSURE OF

23   USE AND RETENTION.

24        I THINK THIS IS A VERY IMPORTANT ISSUE FOR ALL CLASS

25   ACTIONS AND IT'S SOMETHING THAT, YOU KNOW, WE HAVEN'T, AS A

```
 1    COURT, BEEN PAYING ATTENTION TO PROBABLY AS MUCH AS WE SHOULD,

 2    AND I THINK FROM NOW ON, WE SHOULD BE ASKING THOSE QUESTIONS

 3    SINCE THERE HAVE BEEN A NUMBER OF DATA BREACHES OF THESE CLAIMS

 4    ADMINISTRATORS.  IT'S REALLY TIME FOR US ALL TO BE MORE

 5    CAREFUL.

 6              MR. MOLUMPHY:  YOUR HONOR --

 7              THE COURT:  SO WHAT CAN YOU -- WHAT KIND OF

 8    ASSURANCES CAN YOU GIVE ME?  I WOULD -- I WOULD -- AND

 9    OBVIOUSLY THIS MAY HAVE TO BE SEALED.  I DON'T WANT THIS TO

10    BECOME PUBLIC AND THEN MAKE ANYONE MORE VULNERABLE OR MAKE

11    THEIR INFORMATION MORE VULNERABLE.

12        BUT I WOULD LIKE TO ASK YOU, AS INTERIM CO-LEAD COUNSEL,

13    TO TALK TO EPIC AND ENGAGE WITH THEM AND MAKE SURE THAT BEST

14    PRACTICES WITH REGARD TO SECURITY AND PRIVACY ARE BEING

15    IMPLEMENTED HERE.

16              MR. MOLUMPHY:  YOUR HONOR, MAY I BRIEFLY RESPOND?

17              THE COURT:  YES.

18              MR. MOLUMPHY:  MARK MOLUMPHY.

19        SO WE AGREE, AND WE WERE FAMILIAR WITH THOSE INSTANCES

20    WHEN WE MADE THE -- WE ACTUALLY WENT THROUGH A BIDDING PROCESS

21    WITH SEVERAL FIRMS, AND THAT WAS AT THE TOP OF OUR LIST, HOW

22    ARE YOU GOING TO HANDLE THIS INFORMATION?

23        AND WE ASSURED OURSELVES, AND WE WALKED THROUGH THEIR

24    PROCESSES FOR MAINTENANCE AND PROTECTION OF THE INFORMATION, TO

25    MAKE SURE THEY'RE COMPLYING, MAKE SURE IT WAS PROPERLY
```

1   SEGREGATED WITHIN EPIC, AND THAT IT WAS RETURNED BACK TO ZOOM

2   AND, TO THE EXTENT USED, DISPOSED OF COMPLETELY AT THE END OF

3   THIS CASE.

4        SO WE'D BE HAPPY TO PROVIDE THAT UNDER SEAL.  WE DO HAVE

5   AN AGREEMENT WITH THEM THAT COVERS THIS, BUT THIS WAS AT THE

6   TOP OF OUR LIST AND I WANT TO ASSURE THE COURT THAT WHEN WE

7   ACTUALLY INTERVIEWED THE CANDIDATES, THAT THEY WERE GOING TO

8   PROTECT THIS INFORMATION.

9        THE COURT:  AND DO YOU HAVE -- THANK YOU FOR THAT.

10  DO YOU HAVE RESTRICTIONS ON HOW EPIC CAN USE IT?

11       MR. MOLUMPHY:  WE DO.

12       THE COURT:  OKAY, GOOD.  BECAUSE I -- I'M CONCERNED

13  THAT I -- I'VE HEARD THAT SOMETIMES CLAIMS ADMINISTRATORS, THEY

14  KEEP THE DATA, THEY USE THE DATA TO MAKE PITCHES TO GET FUTURE

15  WORK, BECAUSE THEN IT'S THIS TREMENDOUS DATABASE THAT THEY

16  HAVE, AND I JUST DON'T THINK THAT'S A USE THAT THESE CLASS

17  MEMBERS HAVE CONSENTED TO.  SO -- ALL RIGHT.

18       WELL, WHY DON'T WE DO THIS:  I AM GOING TO --

19  MR. MOLUMPHY'S REPRESENTATION THAT YOU MADE INQUIRIES INTO THIS

20  AND GOT ASSURANCES, I'M GOING TO ASSUME THAT, AS PRIVACY

21  LAWYERS, YOU ALL MADE SURE THAT, YOU KNOW, IN CONSULTATION WITH

22  YOUR EXPERTS, THAT THE SECURITY AND PRIVACY SAFEGUARDS WERE

23  SUFFICIENT.  BUT PERHAPS AT FINAL APPROVAL, YOU CAN PROVIDE

24  MORE INFORMATION ON THAT SCORE.

25       MR. MOLUMPHY:  WE WILL, YOUR HONOR.

1          THE COURT:  OKAY?  AND IF YOU NEED TO SEAL IT, JUST

2     FILE AN ADMINISTRATIVE MOTION TO SEAL THAT.

3          MR. MOLUMPHY:  THANK YOU.

4          THE COURT:  ALL RIGHT.  I HAVE A FEW MORE QUESTIONS

5     AND THEN I'M GOING TO PROBABLY LET YOU ALL GO.

6          SO YOU ARE GOING TO -- IT LOOKS LIKE -- I MEAN, I WOULD

7     ASSUME, FOR ZOOM CUSTOMERS, MOST USERS, YOU HAVE THEIR EMAIL

8     ADDRESS SINCE THEY'RE PARTICIPATING IN THESE VIDEO CONFERENCES

9     THROUGH EMAIL.

10         WHY ARE THE SETTLEMENT ADMINISTRATION COSTS SO HIGH WHEN

11    THE VAST MAJORITY OF PEOPLE ARE GOING TO BE RECEIVING NOTICE

12    ONLINE?  AND PRESUMABLY A LOT OF PEOPLE MAY OPT TO BE PAID

13    ONLINE, SO WE DON'T HAVE THE SAME PRINTING COSTS, STAMP -- THE

14    STAMPS TEND TO BE THE MOST EXPENSIVE, YOU KNOW, EXPENSE.

15         SO WHY IS IT SO BIG IN THIS CASE?

16         MR. MOLUMPHY:  YOU ARE CORRECT, THE MAILING COSTS IN

17    THIS TYPE OF A DISTRIBUTION ARE ALWAYS -- OR NOTICE IS ALWAYS

18    THE HIGHEST COST, AND SO THAT'S ONE OF THE COSTS THAT WE TRIED

19    TO REDUCE HERE.  WE'RE ONLY MAILING IF THE EMAIL DOESN'T WORK

20    AND WE HAVE MAILING ADDRESSES.

21         SO THE MAJORITY OF THE COSTS AND, FRANKLY, THE RANGE THAT

22    WE'VE GIVEN YOUR HONOR IS ACCOUNTING FOR WHAT WE BELIEVE TO BE

23    A POTENTIALLY HIGHER CLAIMS RATE, BUT WE WANTED TO BE SAFE.

24         BUT MOST OF THE COSTS HERE ARE BASED UPON THE

25    DISTRIBUTION, NOT SO MUCH THE NOTICE.  THERE IS SIGNIFICANT

1    NOTICE COSTS, BUT PRIMARILY IT'S DISTRIBUTION.

2         AND WHILE IT IS -- WE'RE TRYING TO MAKE IT AN ELECTRONIC

3    DISTRIBUTION WHERE WE'RE GIVING CLASS MEMBERS THE OPTION TO

4    CHECK BOXES, SUCH AS A VENMO OR DIRECT PAYMENT TO THEIR BANK

5    ACCOUNT, SOMETHING EASY FOR THEM AND EASY TO UNDERSTAND, THERE

6    WILL BE, WE ANTICIPATE, THE POSSIBILITY THAT WE'LL HAVE TO MAIL

7    CHECKS.  SO I THINK SOME OF THE COSTS ACCOUNT FOR THAT.

8         WE'RE SHOOTING EVERYTHING POSSIBLE TO MAKE IT AT THE VERY

9    LOW END OF THE RANGE, BUT WITH A 200 MILLION POTENTIAL CLASS

10   SIZE AND, YOU KNOW, CLAIMS RATES EVEN AT 5 PERCENT, IT'S A

11   LARGE NUMBER OF PEOPLE.

12        AND I THINK --

13             THE COURT:  UM-HUM.

14             MR. MOLUMPHY:  -- WE DID MAKE, LIKE I SAID, A BIDDING

15   PROCESS.  WE RECEIVED DIFFERENT RANGES.  THEY WERE ALL VERY

16   COMPARABLE, BUT THESE WERE THE LOW END OF THE -- AND THESE WERE

17   THE BIGGEST CLASS ADMINISTRATOR COMPANIES.

18        SO WE THINK WE'RE CONFIDENT THAT THESE ARE REASONABLE

19   EXPENSES.  WE RECOGNIZE THAT THEY'RE, YOU KNOW, HIGH, IN THE

20   MILLIONS OF DOLLARS.  BUT, YOU KNOW, WE'RE GOING TO DO

21   EVERYTHING WE CAN TO KEEP THEM AT THE LOW END OF THE RANGE.

22        BUT PART OF THAT IS BASED UPON HOW MANY PEOPLE MAKE

23   CLAIMS.

24             THE COURT:  UM-HUM.  SO WHAT IS THE ACTUAL NUMBER OF

25   CLAIMS YOU'RE EXPECTING?  WHAT'S THE RANGE?

```
1              MR. MOLUMPHY:  WE'VE GIVEN YOU A COUPLE RANGES, BUT I
2      THINK, BASED UPON OUR EXPERIENCE, FOR EXAMPLE, MOST RECENTLY WE
3      HAD IN APPLE, I THINK, GIVEN THE PAYMENTS THAT ARE BEING MADE
4      TO THE PAID SUBSCRIBERS, WE EXPECT THOSE TO BE HIGHER THAN
5      THOSE WHO WERE UNPAID.
6          WE'RE THINKING APPROXIMATELY, YOU KNOW, BASED UPON PRIOR
7      HISTORY, AROUND 5 PERCENT.  AND IT COULD BE LOWER, BUT IT COULD
8      BE HIGHER.  BUT WE'RE THINKING THE 5 PERCENT IS PROBABLY THE
9      MOST REASONABLE RANGE FOR THE PAID SUBSCRIBERS.
10             THE COURT:  UM-HUM.
11             MS. WOLFSON:  THERE'S --
12             THE COURT:  SO WHAT'S 5 PERCENT OF 5.5 MILLION?
13     YOU'LL HAVE TO DO THE MATH FOR ME.
14             MR. MOLUMPHY:  YEAH, THE ACTUAL NUMBER THAT WE HAVE,
15     SINCE WE FILED OUR MOTION, IS CLOSER TO 3.85 MILLION FOR PAID
16     SUBSCRIBERS.
17             THE COURT:  OH, IT'S MUCH SMALLER.
18             MR. MOLUMPHY:  IT IS SMALLER.  ZOOM HAS BEEN WORKING
19     TO GET US THAT INFORMATION, BUT THAT'S AS OF THIS WEEK, AND --
20             THE COURT:  IS THAT BECAUSE THERE WERE DUPLICATES, OR
21     WHAT?
22             MR. KLEINE:  YOUR HONOR, IF I MAY?  THE NUMBER OF
23     PAID SUBSCRIBERS IS ACTUALLY 3.48 MILLION.
24             THE COURT:  OH.
25             MR. KLEINE:  AND THE -- IN THE PROCESS OF THE
```

1       SETTLEMENT NEGOTIATIONS, WHICH WERE EXTENSIVE, WE GAVE

2       PLAINTIFFS, YOU KNOW, JUST A WHOLE BUNCH OF DIFFERENT DATA

3       POINTS, AND IN THAT -- TO GET THOSE PIECES OF DATA TO

4       PLAINTIFFS QUICKLY, WE USED CERTAIN PROXIES TO TRY TO COME UP

5       WITH EASIER WAYS TO SLICE THE DATA AND GET NUMBERS OUT QUICKLY.

6            IN THE LAST MONTH AND A HALF, OUR INTERNAL DATA SCIENCE

7       TEAM HAS SPENT JUST AN ENORMOUS AMOUNT OF TIME TRYING TO FIGURE

8       OUT HOW TO ACTUALLY RUN THE EXACT QUERY NEEDED, AND IN THAT

9       PROCESS, FOR SOME REASON, ABOUT 2 MILLION ACCOUNTS FELL OUT,

10      AND IT MAY BE THAT THE PROXY WE WERE USING WAS JUST NOT

11      PERFECT, AND IT MAY BE THAT THERE WERE JUST ERRORS IN THE

12      ORIGINAL QUERY.

13           BUT WE'RE QUITE CERTAIN NOW THAT THIS IS THE ACTUAL

14      NUMBER.

15              THE COURT:  OKAY.

16              MR. KLEINE:  WE'VE RUN IT THROUGH JUST DIFFERENT

17      CHECKS JUST TO MAKE SURE THAT THAT'S -- THAT EVERYTHING WAS

18      DONE PROPERLY HERE.

19              THE COURT:  I SEE.

20              MR. KLEINE:  SO IT'S 3,481,174 ACCOUNTS UNDER THE

21      PAID SUBSCRIBER PIECE OF IT.

22              THE COURT:  3,040,000 -- 480,174?

23              MR. KLEINE:  481,174.

24              THE COURT:  OH, OKAY.

25              MR. KLEINE:  THE REGISTERED USER PIECE OF IT, OR CUT

1    AT IT, WAS MUCH CLOSER.  THE ACTUAL NUMBER IS 165,660,662

2    USERS.

3         AND JUST BECAUSE IT'S IN PLAINTIFF'S BRIEF, JUST TO GIVE

4    YOU THE UPDATED REVENUE NUMBER, THE AMOUNT OF MONEY THAT THE

5    PAID SUBSCRIBERS, THE 3.48 MILLION PAID SUBSCRIBERS PAID TO

6    ZOOM FOR THE CORE MEETING PRODUCT BETWEEN MARCH 30TH, 2016 AND

7    JULY 30TH, 2021 IS $1.072 BILLION.

8         AND SO THAT BRINGS THE AVERAGE AMOUNT OF MONEY PAID BY A

9    PAID SUBSCRIBER IN THAT RELEVANT PERIOD TO $308.

10             THE COURT:  I SEE.  ALL RIGHT, THANK YOU.

11             MR. MOLUMPHY:  SO I APOLOGIZE, I TRANSPOSED MY 8 AND

12   5 THERE, YOUR HONOR.

13        BUT I THINK YOUR QUESTION WAS HOW MANY PEOPLE THAT WOULD

14   REPRESENT.

15             THE COURT:  RIGHT.

16             MR. MOLUMPHY:  SO USING THOSE NUMBERS AT 5 PERCENT,

17   IT'S ABOUT 175,000.  AND EVEN IF WE ASSUME 10 PERCENT MADE

18   CLAIMS, THAT'S ABOUT 350,000.

19        UNDER BOTH SCENARIOS, THEY WOULD STILL GET A SIGNIFICANT

20   RECOVERY AT THE 15 PERCENT OF PAID SUBSCRIPTION FEE FORMULA.

21             THE COURT:  UM-HUM.

22             MR. MOLUMPHY:  SOMEWHERE BETWEEN $35 AND $45 ON

23   AVERAGE.

24             THE COURT:  AND THE -- REMIND ME HOW IT'S -- IT'S

25   EITHER OR $25?  IS IT WHICHEVER IS GREATER?

1          MR. MOLUMPHY:  CORRECT.

2          THE COURT:  OKAY.  AND YOU JUST TOOK THE NET -- THE

3     GROSS SETTLEMENT FUND, DEDUCTED THE MAX YOU'RE GOING TO REQUEST

4     FOR ATTORNEYS' FEES, EXPENSES, AND PLAINTIFF INCENTIVE AWARDS,

5     AND THEN DIVIDED IT BY THE NUMBER OF CLAIMS?  IS THAT HOW YOU

6     GOT THOSE NUMBERS?

7          MR. MOLUMPHY:  THAT'S CORRECT.  OBVIOUSLY IF YOUR

8     HONOR DOES NOT AWARD THE FULL AMOUNT, THE CLASS WILL GET MORE.

9          THE COURT:  RIGHT.  NOW, WHAT ABOUT FOR THE -- HOW

10    DID YOU DO THE CALCULATION FOR THE NON-PAID JUST, YOU KNOW,

11    CLAIM USERS?  THE USER CLAIMS?  HOW DID YOU CALCULATE HOW THEY

12    WERE GOING TO GET IN TERMS OF RECOVERY, OR WHAT THEY WERE GOING

13    TO GET IN TERMS OF RECOVERY?

14         MR. MOLUMPHY:  THAT WAS MORE DIFFICULT, BUT UNDER OUR

15    PLAN OF ALLOCATION, OBVIOUSLY WE PRIORITIZED PEOPLE THAT PAID

16    OUT OF POCKET FOR THE SERVICE.

17         THE COURT:  UM-HUM.

18         MR. MOLUMPHY:  WE DID BELIEVE THAT PEOPLE THAT DIDN'T

19    PAY HAD VALID CLAIMS.  IT WOULD BE OBVIOUSLY MORE DIFFICULT,

20    HAD THIS CASE GONE TO TRIAL, TO QUANTIFY THAT.

21         BUT, YOU KNOW, BASED UPON USING A SIMILAR FORMULA, BASED

22    UPON THEIR LENGTH THAT THEY'VE BEEN REGISTERED USERS, FOR

23    EXAMPLE, AND USING THAT AS A PROXY FOR HOW LONG THEY'VE BEEN

24    USING THE PRODUCT, WE BELIEVED THAT THEY SHOULD RECEIVE A

25    PAYMENT, NOT JUST INJUNCTIVE RELIEF, IF MONEY WAS AVAILABLE.

1    SO WE SET THAT AMOUNT BELOW THE MINIMUM THRESHOLD

2   AVAILABLE TO PAID SUBSCRIBERS, AND THAT'S HOW WE SET THE $15

3   AMOUNT.

4        THE COURT:  SO I AM EXPECTING THAT WE MAY GET A

5   NUMBER OF E-MAILED EXCLUSIONS THAT DON'T HAVE THE PHYSICAL

6   SIGNATURES, AND IT SOUNDS LIKE THE WAY YOUR DOCUMENTS ARE

7   DRAFTED, YOU'RE JUST GOING TO IGNORE THOSE.  IS THAT RIGHT?

8        MS. WOLFSON:  YOUR HONOR, THE SETTLEMENT AGREEMENT

9   DOES REQUIRE A SIGNATURE, AND WE HAVE GOOD REASONS FOR THAT.

10  IT'S TO PREVENT FRAUD AND IT'S TO PREVENT ABROGATION OF CLAIMS.

11       THERE ARE SOME ATTORNEYS WHO MAY TRY TO FILE OBJECTIONS ON

12  BEHALF OF HUNDREDS OR HUNDREDS OF THOUSANDS OF PEOPLE, AND WE

13  WANT TO VERIFY THAT EACH AND EVERY CLASS MEMBER IS INFORMED AND

14  CONSENTS TO BEING EXCLUDED.

15       THE COURT:  UM-HUM.  I'M JUST WONDERING IF, IN SOME

16  OF THESE NOTICES, THAT SHOULD BE MADE A LITTLE BIT MORE

17  PROMINENT SO PEOPLE UNDERSTAND.  BECAUSE WHEN YOU SAY YOU CAN

18  EMAIL IT, I THINK NO ONE IS GOING TO THINK, OH, I HAVE TO

19  CREATE A PDF OF MY SIGNATURE AND EMAIL THE PDF OF MY SIGNATURE.

20  THAT'S LIKE AN EXTRA HURDLE THAT MOST PEOPLE, WHEN THEY'RE TOLD

21  THEY CAN EMAIL SOMETHING, DON'T REALLY ENVISION AND MAY NOT,

22  FRANKLY, HAVE THE CAPACITY TO DO.

23       YOU KNOW, IF YOU'RE A PRIVATE INDIVIDUAL USING ZOOM, YOU

24  PROBABLY WON'T HAVE A SCANNER TO CREATE THE PDF OR AN ONLINE

25  SIGNATURE, ELECTRONIC SIGNATURE.

1      SO I'M WONDERING IF PERHAPS THAT SHOULD BE A LITTLE BIT

2   MORE PROMINENT, BECAUSE I WOULD HATE TO GET TO FINAL APPROVAL

3   AND GET A VAST NUMBER OF EXCLUSIONS THAT WE JUST HAVE TO IGNORE

4   BECAUSE PEOPLE DIDN'T UNDERSTAND THE REQUIREMENT.

5      NOW, I DIDN'T KNOW, IF YOU MAKE ANY CHANGES TO THESE

6   NOTICES, DOES THAT REQUIRE AMENDMENT OF THE AGREEMENT, OR NOT?

7   THE AGREEMENT DOES SEEM TO SAY THAT IT'S CONTINGENT ON THESE

8   EXACT DOCUMENTS BEING USED, BUT YOU CAN CLARIFY THAT FOR ME.

9      MR. MOLUMPHY:  I THINK IT'S -- FROM THE PLAINTIFFS'

10   PERSPECTIVE, ON THINGS SUCH AS WHAT YOU JUST DESCRIBED, WOULD

11   NOT BE A MATERIAL CHANGE REQUIRING CHANGES TO THE AGREEMENT.

12      BUT THERE IS A PROVISION GIVING ZOOM AND GIVING BOTH

13   PARTIES THE RIGHT TO PULL OUT IF THERE ARE CHANGES TO THESE

14   TYPES OF DOCUMENTS.  I DON'T THINK THIS WOULD BE THAT TYPE OF

15   CHANGE, THOUGH.

16      THE COURT:  OKAY.  BUT IS THIS A CHANGE THAT REQUIRES

17   AN AMENDMENT TO THE AGREEMENT IN WRITING?  OR NOT?

18      MR. KLEINE:  WE DON'T BELIEVE SO, YOUR HONOR.

19      THE COURT:  OKAY.  BUT I DON'T SEE ANY SORT OF

20   MATERIALITY LANGUAGE IN HERE LIKE YOU JUST SAID.  BUT, YOU

21   KNOW, I COULD BE -- YOU ALL ARE MUCH MORE FAMILIAR WITH THESE

22   DOCUMENTS THAN I AM.

23      MR. MOLUMPHY:  MY SENSE -- MY RECOLLECTION OF THE

24   AGREEMENT IS SIMILAR TO ZOOM'S COUNSEL'S, THAT IT WOULD NOT

25   REQUIRE ANY TYPE OF AN AMENDMENT TO THE AGREEMENT.

1          THE COURT:  OKAY.  I MEAN, ONE OPTION, JUST ON THE

2     EXCLUSION, IS YOU COULD JUST BOLD -- I MEAN, YOU ALREADY HAVE

3     IT IN THE NOTICES.  YOU JUST COULD BOLD THE PHYSICAL SIGNATURE.

4     I MEAN, THAT WOULD BE ONE OPTION.

5          I AM, YOU KNOW, LIKELY TO APPROVE THIS AND I DON'T WANT TO

6     DO ANYTHING -- I DON'T THINK IT'S WORTH UPSETTING THE ENTIRE

7     AGREEMENT FOR THIS POINT.

8          I JUST DO THINK IT'S AWKWARD TO GET TO FINAL APPROVAL AND

9     HAVE A LARGE NUMBER OF EXCLUSIONS THAT WE JUST DISREGARD.

10     THAT'S AN AWKWARD SITUATION WHICH I'D LIKE TO AVOID IF

11     POSSIBLE.

12          SO I WOULD ASK THAT YOU CONSIDER PERHAPS -- YOU KNOW,

13     PERHAPS BOLDING WHERE YOU -- WHERE YOU LIST OUT THE

14     REQUIREMENTS, YOU KNOW, BOLDING THAT THE PHYSICAL SIGNATURE IS

15     A REQUIREMENT TO BE EXCLUDED.

16          WHY ARE THE SHORT FORM NOTICES, THE SUMMARY NOTICES

17     DIFFERENT FOR EMAIL VERSUS PUBLICATION OR POSTCARD?  WHY ARE

18     THEY DIFFERENT?

19          MR. KLEINE:  YOUR HONOR --

20          THE COURT:  WHY NOT USE THE SAME ONE FOR ALL OF THEM?

21          MR. KLEINE:  YOUR HONOR, IF I MAY STEP BACK TO THE

22     PRIOR POINT?  IT'S ACTUALLY PARAGRAPH 7.2 OF THE SETTLEMENT

23     AGREEMENT THAT PROVIDES THE PARTIES THE ABILITY TO MAKE THE --

24     MAKE NON-MATERIAL CHANGES TO THE NOTICE DOCUMENTS.

25          THE COURT:  OKAY.  YOU SAID 7 --

1              MR. KLEINE:  7.2.

2              THE COURT:  WHAT PAGE IS THAT ON, PLEASE?

3              MR. KLEINE:  OH, I HAVE IT IN MY WORD --

4              THE COURT:  OKAY.  YOU KNOW WHAT?  I HAVE IT.  I HAVE

5    IT.  IT'S ON PAGE 26.  THE PRELIMINARY APPROVAL SHALL AUTHORIZE

6    THE PARTIES, WITHOUT FURTHER APPROVAL FROM THE COURT, TO AGREE

7    TO AND ADOPT SUCH AMENDMENTS, NOTIFICATIONS -- OH, OKAY.  GOOD.

8    THAT CREATES THE FLEXIBILITY TO MAKE ANY CHANGES.  THANK YOU.

9         AND THAT HAS THE MATERIALITY LANGUAGE, SO THANK YOU.

10        OKAY.  THANK YOU FOR POINTING THAT PROVISION OUT.

11        SO LET ME HEAR, WHY ARE THE SUMMARY NOTICES DIFFERENT?

12   WHY NOT JUST USE THE SAME THING?

13             MR. KLEINE:  I BELIEVE THAT IN THE PROCESS OF RUNNING

14   THE DOCUMENTS BY EPIC, EPIC SAID THAT WE NEEDED TO MAKE SOME

15   CHANGES SO THAT THE PUBLICATION NOTICE WILL FIT.

16             MR. MOLUMPHY:  THERE WAS A SPACING ISSUE.

17             MR. KLEINE:  A SPACING ISSUE, EXACTLY.

18             MR. MOLUMPHY:  THE ACTUAL TEXT IS VERY, VERY, VERY

19   SIMILAR.  THERE MIGHT BE A FEW SENTENCES THAT ARE CONDENSED,

20   BUT IT WAS A SPACING ISSUE THAT THEY HELPED US WITH, AND THIS

21   WAS AT THEIR SUGGESTION, TO FIT WITHIN THEIR POSTCARD.

22             THE COURT:  OKAY.  THE POSTCARD NOTICE DIRECTS PEOPLE

23   TO THE LONG FORM NOTICE, AND THE OTHERS DON'T FROM WHAT I -- I

24   GUESS IT REFERS TO THE -- IT REFERS THE READER TO THE

25   SETTLEMENT WEBSITE, WHICH I ASSUME WOULD HAVE IT, SO IT DOES.

1       I'M LOOKING AT THE PUBLICATION NOTICE.  IT DOES SAY YOU

2  CAN SEE THE DETAILED LONG FORM NOTICE.  LOOKING AT THE EMAIL,

3  IT DOES DIRECT THAT.  I'LL DISREGARD THAT.

4       OKAY.  SO LET ME GET TO -- LET ME GET TO ATTORNEYS' FEES.

5       SO HOW MANY PLAINTIFFS' COUNSEL ARE HERE TODAY?  HOW MANY

6  ARE BILLING?  SO ARE SOME OF THE PEOPLE IN THE AUDIENCE FROM

7  YOUR FIRMS?  HOW MANY ARE FROM YOUR FIRMS?

8          MR. MOLUMPHY:  YES.  THERE ARE THREE OTHER ATTORNEYS

9  FROM THE COTCHETT FIRM THAT ARE HERE, AND NONE OF THEM WOULD BE

10  BILLING FOR THIS APPEARANCE AS THEY ARE HERE BECAUSE THEY'VE

11  WORKED TIRELESSLY OVER THE LAST 18 MONTHS AND THEY WANTED TO

12  SEE THE HEARING.

13          THE COURT:  OKAY.  ALL RIGHT.  WELL, I -- AS YOU

14  KNOW, I'M A STICKLER ON THE FEES AND I -- AND I ALWAYS FEEL

15  UNCOMFORTABLE WHEN THE PAYING CLIENT HAS ONE LAWYER AND THE

16  PLAINTIFFS HAVE WHAT LOOKS LIKE SIX.

17       I DON'T KNOW IF THE GENTLEMAN IN THE BACK IS BILLING.  I

18  COULDN'T TELL.  YOU'RE FROM THE CONSOLIDATED CASE, SO I'M NOT

19  SURE WHICH --

20          MR. FALLAT:  JOHN FALLAT FOR VICTOR RIOS.

21       I'VE PUT IN A CERTAIN AMOUNT OF WORK ON THIS CASE AND I

22  WAS JUST CURIOUS TO SEE HOW THE DAY WAS GOING TO GO.

23          THE COURT:  OKAY.  ALL RIGHT.  WELL, I WOULD -- I

24  APPRECIATE -- SO THERE ARE ONLY GOING TO BE TWO LAWYERS BILLING

25  FOR THIS HEARING?

1          MR. MOLUMPHY:  YES, YOUR HONOR.

2          THE COURT:  OKAY.  THANK YOU.

3       BECAUSE I DON'T THINK -- I VIEW MYSELF AS THE SORT OF

4    PERSON WHO'S SUPPOSED TO BE WATCHING OUT FOR THE ABSENT CLASS

5    MEMBERS WHO ARE NOT HERE TO PUSH BACK ON ANY FEE REQUESTS, AND

6    I DON'T THINK THAT DEFENDANTS SHOULD HAVE ONE LAWYER AND THE

7    PLAINTIFFS SHOULD HAVE SIX.  SO THANK YOU FOR NOT HAVING FOUR

8    OF THE SIX LAWYERS BILLING TODAY.

9       I WOULD JUST ALSO ASK TO BE EFFICIENT BECAUSE, AS YOU'VE

10   SEEN PROBABLY IN MY, YOU KNOW, YAHOO DATA BREACH ATTORNEYS'

11   FEES ORDER, SOMETIMES TO GET THE LODESTAR UP, ESPECIALLY AFTER

12   THERE'S ALREADY BEEN A SETTLEMENT, YOU HAVE PARTNERS WHO ARE

13   BILLING $900 AN HOUR DOING WORK THAT PARALEGALS OR JUNIOR

14   ASSOCIATES OR EVEN THE CLAIMS ADMINISTRATOR SHOULD DO, AND IF

15   YOU LOOK AT MY YAHOO DATA BREACH ORDER, I STRUCK THOSE FEE

16   REQUESTS.

17      SO I WOULD JUST ASK THAT YOU PLEASE CONTINUE TO TRY TO BE

18   AS EFFICIENT AND REASONABLE AS POSSIBLE WITH THE BILLING NOW

19   THROUGH THE END OF THE CASE AND NOT TRY TO ARTIFICIALLY

20   INCREASE THAT NUMBER.

21      I WILL NOT REIMBURSE, AS YOU CAN SEE FROM THAT ORDER, I

22   WILL NOT REIMBURSE PEOPLE AT $900 AN HOUR TO DO WHAT THE CLAIMS

23   ADMINISTRATOR SHOULD BE DOING, OR WHAT A PARALEGAL OR A JUNIOR

24   ASSOCIATE SHOULD BE DOING.  SO PLEASE BE REASONABLE AND

25   EFFICIENT WITH THE BILLING NOW THROUGH THE END OF THE CASE.

1          WHAT DATE DO YOU WANT -- I AM GOING TO APPROVE THIS, THIS

2     SETTLEMENT PRELIMINARILY.  WHAT DATE DO YOU WANT FOR THE FINAL

3     APPROVAL HEARING?

4          MS. WOLFSON:  YOUR HONOR, THE EARLIEST -- ASSUMING

5     YOU ISSUED AN ORDER TODAY --

6          THE COURT:  OKAY.

7          MS. WOLFSON:  -- THE EARLIEST DAY THAT WE COULD HAVE

8     THE FINAL APPROVAL HEARING IS APRIL 6TH --

9          THE COURT:  APRIL 6TH, OKAY.

10         MS. WOLFSON:  -- 2022.

11         THE COURT:  OKAY.  AND WOULD THAT -- THAT WOULD GIVE

12    ENOUGH TIME FOR THE CLASS TO HAVE 35 DAYS FROM THE FILING OF

13    THE FINAL APPROVAL MOTION AND THE ATTORNEYS' FEES MOTION TO

14    FILE ANY OBJECTIONS OR OPT OUT OR SUBMIT THEIR CLAIM FORMS;

15    RIGHT?

16         MS. WOLFSON:  YES.

17         THE COURT:  OKAY, PERFECT.  THEN WHY DON'T WE -- I

18    WILL TRY TO FILE THE ORDER APPROVING TODAY SO THAT WE CAN KEEP

19    THAT APRIL 6TH DATE, AND I WILL HOLD THAT APRIL 6TH DATE.

20    WE'LL DO IT AT 1:30 P.M.

21         THE CLERK:  YOUR HONOR, APRIL 6TH IS A WEDNESDAY.

22         THE COURT:  OH, SORRY.  CAN WE DO THE 7TH?  BECAUSE I

23    DO THESE ON WEDNESDAYS.

24         MS. WOLFSON:  OF COURSE.

25         MR. MOLUMPHY:  THANK YOU.

1          THE COURT:  SO LET'S DO THURSDAY, APRIL 7TH.

2          AND I DO WANT TO SAY, I APPRECIATE -- I FELT THAT YOUR

3     NOTICES WERE REALLY USER FRIENDLY, TRIED TO BE VERY CLEAR AND

4     CONCISE.  I REALLY APPRECIATED THAT, AND I COULD TELL THAT YOU

5     ALL WERE BEING VERY DILIGENT ABOUT COMPLYING WITH THE

6     PROCEDURAL GUIDANCE THAT THE NORTHERN DISTRICT HAS, SO I REALLY

7     APPRECIATED THAT AS WELL.

8          MS. WOLFSON:  THANK YOU, YOUR HONOR.

9          THE COURT:  SO THANK YOU.

10         OKAY.  I DON'T HAVE ANY MORE QUESTIONS.  I DON'T KNOW IF

11    YOU ALL WANTED TO SAY ANYTHING ELSE.

12         AND I DO APPRECIATE ALL THE LAWYERS WHO HAVE WORKED ON THE

13    CASE, AND I'M GLAD YOU'RE ABLE TO BE HERE TO SEE IT TO ITS

14    FRUITION, AT LEAST PRELIMINARILY.

15         BUT I STILL DO APPRECIATE YOU NOT BILLING AS WELL.

16         OKAY.  ANYTHING ELSE FOR TODAY?

17         MR. KLEINE:  YOUR HONOR, THE ONLY OTHER THING -- I

18    THINK THE ONLY THING THAT WE WOULD RAISE, AND WE'VE DISCUSSED

19    THIS BEFORE THE HEARING --

20         THE COURT:  YEAH.

21         MR. KLEINE:  -- IS WE NOTICED IN FINAL PREPARATION

22    FOR THE HEARING THAT THE CLAIM FORM, IN THE OPENING PARAGRAPH

23    OF THE CLAIM FORM, IT JUST SAYS THAT IF YOU REGISTERED, USED,

24    OPENED, OR DOWNLOADED THE ZOOM MEETINGS APPLICATION, YOU CAN

25    FILE A CLAIM, AND IT HAS A DATE RANGE.

1      BUT IT DOESN'T SPECIFY THAT YOU NEED TO BE IN THE

2  UNITED STATES, AND SO WE WOULD ASK, IF IT'S OKAY WITH YOU, CAN

3  WE SUBMIT A REVISED CLAIM FORM SO THAT THAT CAN BE PART OF THE

4  SETTLEMENT AGREEMENT?

5          THE COURT:  YES, THAT'S FINE.  AND I ASSUME THE

6  PLAINTIFFS HAVE NO OBJECTION TO THAT CHANGE.

7          MS. WOLFSON:  WE AGREE, YOUR HONOR.

8          THE COURT:  OKAY.  HOW QUICKLY CAN YOU FILE THAT IF

9  YOU WANT ME TO APPROVE THIS TODAY?

10          MR. KLEINE:  I THINK WE CAN PROBABLY GET IT ON FILE

11  TODAY.

12          THE COURT:  ALL RIGHT.  GET IT ON FILE TODAY AND THEN

13  WE'LL SEE -- YOU KNOW, I DID HAVE ONE OTHER QUESTION.

14      ON YOUR LONG FORM NOTICE -- SO USUALLY THERE IS A --

15  THERE'S JUST A STATEMENT THAT THE FINAL APPROVAL HEARING DATE

16  CAN BE CHANGED WITHOUT FURTHER NOTICE TO THE CLASS AND THAT THE

17  CLASS SHOULD LOOK ON THE COURT'S DOCKET OR THE SETTLEMENT

18  WEBSITE TO GET CONFIRMATION OF THE HEARING DATE.

19      BUT YOU HAVE A REALLY BROAD DISCLAIMER OF DEADLINES.  I'M

20  LOOKING ON PAGE 3 OF YOUR LONG FORM NOTICE.  THAT SEEMED A

21  LITTLE UNUSUAL TO ME.  I DON'T QUITE THINK I'VE SEEN THAT

22  BEFORE.

23      WHY DID YOU INCLUDE THAT?  IT JUST SAYS, AT THE TOP OF THE

24  PAGE, ECF NUMBER 191-1, "THE DATES AND DEADLINES MAY BE CHANGED

25  WITHOUT FURTHER NOTICE TO THE SETTLEMENT CLASS."

1 THAT SEEMED QUITE BROAD TO JUST -- I MEAN, IF YOU ARE A

2 CLASS MEMBER WHO'S TRYING TO MEET THESE DEADLINES, IT MIGHT BE

3 A LITTLE BIT NERVE-RACKING TO KNOW THAT ANYTHING CAN BE CHANGED

4 AT ANY TIME WITHOUT NOTICE TO YOU.

5 DO WE NEED SOMETHING THAT, THAT BROAD?

6 MS. WOLFSON:  WELL, I THINK THE INTENT HERE, YOUR

7 HONOR -- FIRST OF ALL, ALL THE CHANGES WOULD APPEAR ON THE

8 WEBSITE.

9 THE COURT:  UM-HUM.

10 MS. WOLFSON:  THAT WAS THE INTENT.

11 THE COURT:  UM-HUM.

12 MS. WOLFSON:  AND IT'S ACTUALLY TO HELP CLASS

13 MEMBERS.  SOMETIMES OBJECTORS COME TO COURT, THEY HAVEN'T MET

14 THE DEADLINES, AND THE COURTS PROVIDE THEM ADDITIONAL TIME,

15 WHICH THEN MOVES THE PRELIMINARY HEARING.

16 THE COURT:  HMM.

17 MS. WOLFSON:  I THINK THE INTENT HERE WAS TO BE ABLE

18 TO HAVE THE FLEXIBILITY TO ADJUST THOSE DATES IF THE COURT WERE

19 SO INCLINED.

20 THE COURT:  HMM.  WELL, I MEAN, THE ONLY DATE THAT

21 I'M USED TO SEEING BEING LEFT FLEXIBLE IS THE FINAL APPROVAL

22 HEARING DATE, WHICH, YOU KNOW, WITH COVID AND WHATNOT, I HAVE

23 HAD IT CHANGE IN AT LEAST ONE CLASS ACTION.

24 BUT I -- YOU KNOW, ABSENT, YOU KNOW, SOME UNFORESEEN

25 CIRCUMSTANCE, I REALLY HOPE THE EXCLUSION AND OBJECTION

1      DEADLINE DOESN'T CHANGE, AND I REALLY HOPE THE CLAIM FORM

2      DEADLINE DOESN'T CHANGE, AND I WOULD HATE TO -- BUT IF YOU

3      THINK THAT'S HELPFUL, THAT'S FINE TO LEAVE IT IN.  MAYBE DON'T

4      BOLD IT.

5          I JUST DON'T KNOW IF I WANT, YOU KNOW, TO -- IT'S SO RARE.

6      I DON'T -- I CAN'T EVEN RECALL MANY INSTANCES WHERE WE'VE

7      CHANGED THE EXCLUSION AND -- I MEAN, I HAVE BEEN MORE GENEROUS

8      AT FINAL APPROVAL IN ALLOWING ONES THAT ARE DEFECTIVE IN SOME

9      WAY TO STILL BE CONSIDERED, SO IF THAT'S WHAT YOU'RE -- BUT I

10     WOULD HATE FOR PEOPLE TO RELY ON THAT, THAT THEY'RE GOING TO

11     GET AN AUTOMATIC EXEMPTION FROM ANY DEADLINE -- I DIDN'T THINK

12     THAT'S WHAT YOU'RE TALKING ABOUT, THE SORT OF EXEMPTIONS THAT

13     COME AT THE FINAL APPROVAL HEARING FOR DEFECTIVE OPT OUTS,

14     RIGHT?

15         I THINK THIS, YOU'RE THINKING, LIKE, YOU KNOW, THERE'S --

16     LET'S SAY THERE'S A PANDEMIC OR SOMETHING AND THE DEADLINE HAS

17     TO CHANGE BECAUSE THE CLAIMS ADMINISTRATOR IS SHELTERING IN

18     PLACE AND CAN'T GET IN.  I'M ASSUMING THAT'S MORE WHAT YOU'RE

19     REFERRING TO.  RIGHT?

20         MS. WOLFSON:  YES.

21         MR. MOLUMPHY:  THAT'S RIGHT.

22         THE COURT:  OKAY.  IT'S OKAY.  I MEAN, LET'S HOPE

23     WE'RE BEYOND THAT KIND OF, YOU KNOW, PANDEMIC EMERGENCY.  BUT,

24     OKAY.  IT'S OKAY TO PUT THAT IN THERE.

25         ALL RIGHT.  SO WHERE IS THE CHANGE, MR. KLEINE, YOU WANTED

1    TO MAKE?  WAS IT ON THE LONG FORM OR -- ON THE CLAIM FORM;

2    RIGHT?

3              MR. KLEINE:  THE CLAIM FORM, THAT'S RIGHT, YOUR

4    HONOR.

5              THE COURT:  OKAY.  SO I HAVE THE CLAIM FORM IN HERE

6    SOMEWHERE, AND WHAT DID YOU -- WHAT DID YOU WANT?  LET'S SEE.

7              MR. KLEINE:  IT'S JUST TO ADD -- IN THE OPENING

8    PARAGRAPH, IT WOULD BE TO ADD THAT YOU NEED TO BE IN THE

9    UNITED STATES.

10        SO I GUESS WE WOULD ADD IN THAT "IF YOU ARE IN THE

11   UNITED STATES AND YOU REGISTERED, USED, OPENED, OR DOWNLOADED

12   THE ZOOM MEETINGS APPLICATION" JUST TO CONFORM IT TO THE CLASS

13   DEFINITION.

14             THE COURT:  THAT'S FINE.  CAN YOU FILE THAT TODAY SO

15   I CAN GET THIS FILED TODAY?

16             MR. KLEINE:  YES, YOUR HONOR.

17             THE COURT:  ALL RIGHT.  THEN I'M GOING TO LET YOU GO

18   SO YOU CAN GO QUICKLY TO YOUR OFFICE AND GET THAT FILED.

19        OKAY.  I DON'T HAVE ANY MORE QUESTIONS.

20        DOES ANYONE TO WANT MAKE ANY MORE STATEMENTS?

21             MS. WOLFSON:  JUST THANK YOU, YOUR HONOR, FOR THE

22   OPPORTUNITY TO BE HERE IN PERSON.  IT'S ACTUALLY MY FIRST IN

23   PERSON COURT APPEARANCE SINCE COVID AND IT'S VERY NICE TO SEE

24   YOU.  AND WE APPRECIATE YOUR TIME AND ATTENTION TO THIS MATTER.

25             THE COURT:  WELL, IT'S VERY NICE TO SEE EVERYBODY AS

1      WELL.

2            SO STAY HEALTHY, AND WE'LL SEE YOU AT THE FINAL APPROVAL.

3            TAKE CARE.

4            THANK YOU, ALL.

5                MR. KLEINE:  THANK YOU, YOUR HONOR.

6                MS. WOLFSON:  THANK YOU, YOUR HONOR.

7                THE CLERK:  THANK YOU.  WE'RE IN RECESS.

8            (THE PROCEEDINGS WERE CONCLUDED AT 2:18 P.M.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                      CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16    _____
      LEE-ANNE SHORTRIDGE, CSR, CRR
17    CERTIFICATE NUMBER 9595

18              DATED:  OCTOBER 26, 2021

19

20

21

22

23

24

25