1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| IN RE: ZOOM VIDEO COMMUNICATIONS, INC. PRIVACY LITIGATION | Case No. 20-cv-02155-LB |
| | **FINAL APPROVAL ORDER** |
| | Re: ECF Nos. 216, 217 |
| This Document Relates To: ALL ACTIONS. | |

**INTRODUCTION**

This is a consumer-privacy class action against Zoom Video Communications. The plaintiffs allege that Zoom improperly shared their data through third-party software from companies such as Facebook and Google, claimed to have end-to-end encryption when it did not, and failed to prevent "Zoombombing" (disruptions of Zoom meetings by third-party actors).[1] The parties settled the case, and the court granted the plaintiffs' motion for preliminary approval of the settlement.[2] The plaintiffs moved for final approval of the settlement and for attorney's fees, expenses, and service

---

[1] Second Am. Compl. (SAC) – ECF No. 179 at 3–5 (¶¶ 4–9); Mot. – ECF No. 216 at 12. Record citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

[2] Mot. for Prelim. Approval – ECF No. 190; Settlement Agreement, Ex. 1 to Wolfson & Molumphy Decl. – ECF No. 191-1 at 2–36; Order – ECF No. 204.

payments.[3] The court held a fairness hearing on April 21, 2022. The court finds the settlement fair, adequate, and reasonable and approves the final settlement, including the fees, costs, and service payments.

STATEMENT

## 1. The Lawsuit

In early 2020, consumers dramatically increased their use of Zoom in response to the COVID-19 pandemic. Between March and May 2020, fourteen class-action complaints were filed in the Northern District of California challenging Zoom's alleged violations of its customers' data privacy and security.[4] The court consolidated the cases and appointed Tina Wolfson of Ahdoot & Wolfson and Mark Molumphy of Cotchett, Pitre & McCarthy as Interim Co-Lead Counsel. Rachele Byrde of Wolf Haldenstein, Albert Chang of Bottini & Bottini, and Eric Gibbs of the Gibbs Law Group were appointed to the Plaintiffs' Steering Committee.[5]

Following the plaintiffs' filing a consolidated amended complaint and Zoom's motion to dismiss, the parties stipulated to the plaintiffs' filing a First Amended Consolidated Class Action Complaint. Zoom moved to dismiss the complaint, and the court granted the motion in part, dismissing (with leave to amend) the claims involving (1) Zoombombing (to the extent that the claims challenged the harmfulness of third-party content or derived from Zoom's status as a publisher/speaker of the content), (2) invasion of privacy under California law, (3) negligence, (4) California's Comprehensive Data Access and Fraud Act (CDAFA), and (5) fraud under California's Unfair Competition Law (UCL), California's Consumer Legal Remedies Act (CLRA), and Cal. Civ. Code § 1710(3) (fraudulent concealment).[6] On May 12, 2021, the plaintiffs then filed the operative Second Amended Complaint (SAC) with six claims (eliminating the

---

[3] Mot. – ECF No. 216; Mot. for Attorney's Fees – ECF No. 217.

[4] Mot. – ECF No. 216 at 12; Settlement Agreement, Ex. 1 to Wolfson & Molumphy Decl. – ECF No. 191-1 at 2 (¶ A).

[5] Mot. – ECF No. 216 at 12; Settlement Agreement, Ex. 1 to Wolfson & Molumphy Decl. – ECF No. 191-1 at 2 (¶¶ B–C); Orders – ECF Nos. 62, 92.

[6] Mot. – ECF No. 216 at 12–13; Consolidated Am. Compl. – ECF No. 114; Mot. to Dismiss – ECF No. 120; First Am. Compl. – ECF No. 126; Mot. to Dismiss – ECF No. 134; Order – ECF No. 168.

previously dismissed claims of negligence and a violation of the CDAFA and eliminating two named plaintiffs). The claims are (1) invasion of privacy, (2) breach of implied contract, (3) breach of the implied covenant of good faith and fair dealing, (4) unjust enrichment; (5) a violation of the UCL, and (6) a violation of the CLRA.[7]

The parties engaged in extensive discovery, including written discovery (interrogatories and document requests). Class counsel issued subpoenas to third parties. The parties exchanged additional discovery as part of their settlement discussions.[8] The plaintiffs learned through these efforts that Zoom "collected approximately $1.07 billion in Zoom Meetings subscriptions from Settlement Class Members," and the plaintiffs consulted with damages experts regarding the adequacy of the settlement in light of that revenue.[9]

The parties participated in extensive, arms-length settlement negotiations over many months, including four mediations and many additional discussions facilitated by the Honorable Jay C. Gandhi (Ret.), a former magistrate judge and a respected mediator with significant class-action and data-privacy experience. The parties began mediation in November 2020, exchanged information to prepare for the mediation (in addition to the discovery), and reached agreement on some key terms in April 2021, after both parties accepted a double-blind mediator's proposal. Negotiations and mediation continued until the Settlement Agreement was executed on July 30, 2021. This process was complex "due to the unique nature of the claims, the novel technology involved, and the monetary and injunctive relief [the] Plaintiffs were seeking."[10]

After the parties finalized their settlement agreement, the court granted the plaintiffs' unopposed motion for preliminary approval.[11] The plaintiffs moved for final approval of the

---

[7] Mot. – ECF No. 216 at 14; SAC – ECF No. 179 at 57–66 (¶¶ 209–69).

[8] Mot. – ECF No. 216 at 14; Molumphy & Wolfson Decl. – ECF No. 218 at 7–13 (¶¶ 24–45).

[9] Mot. – ECF No. 216 at 23; Molumphy & Wolfson Decl. – ECF No. 218 at 11 (¶ 39).

[10] Mot. – ECF No. 216 at 14–15; Molumphy & Wolfson Decl. – ECF No. 218 at 12–14 (¶¶ 43–49); Gandhi Decl. – ECF No. 216-1.

[11] Order – ECF No. 204.

United States District Court
Northern District of California

1    settlement, attorney's fees and costs for Class Counsel, and Service Awards for the Class

2    Representatives.[12] The court held a fairness hearing on April 21, 2022.

3

4    **2.  Proposed Settlement**

5        All defined terms in this Final Approval Order have the same meaning as in the Settlement

6    Agreement.

7        **2.1    Settlement Class**

8        The parties agreed to the following class definition for settlement purposes only:

9        "Settlement Class" means all Persons in the United States who, between March 30,
         2016 and the Settlement Date, registered, used, opened, or downloaded the Zoom
10       Meetings Application ("App") except for (i) all Persons who have only registered,
         used, opened, or downloaded the Zoom Meetings App through an Enterprise-Level
11       Account or a Zoom for Government Account, (ii) Zoom and its officers and
         directors; and (iii) the Judge or Magistrate Judge to whom the action is assigned
12       and any member of those Judges' staffs or immediate family members.[13]

13   The "Settlement Date" is July 30, 2021.[14] An "Enterprise-Level Account" is one "that as of the

14   Settlement Date belonged to, was controlled by, or was provisioned by a Person paying to use (or

15   otherwise licensed by Zoom to use) the Zoom Meetings App at the 'Enterprise' level of Zoom's

16   pricing plans."[15]

17       There are approximately 150 million Settlement Class Members.[16] The Settlement

18   Administrator received 2,242 requests for exclusion.[17] Nine objections to the settlement were filed

19   with the court.[18]

20

21

22

23   ─────────────────

     [12] Mot. – ECF No. 216; Mot. for Attorney's Fees – ECF No. 217.

24   [13] Settlement Agreement, Ex. 1 to Wolfson & Molumphy Decl. – ECF No. 191-1 at 9 (¶ 1.40).

25   [14] *Id.* (¶ 1.42).

     [15] *Id.* at 6 (¶ 1.14).

26   [16] Mot. – ECF No. 216 at 11; Molumphy & Wolfson Decl. – ECF No. 218 at 15 (¶ 52).

27   [17] Azari Second Suppl. Decl. – ECF No. 237-1 at 2 (¶ 3); Exclusion Report, Ex. 1 to *id.* – ECF No.
     237-1 at 6–60.

28   [18] Objs. – ECF Nos. 206–08, 220, 224–25, 227–28, 232.

United States District Court
Northern District of California

### 2.2    Settlement Benefits

The settlement contains monetary and injunctive relief. The monetary Settlement Amount is $85,000,000, and the Net Settlement Fund — the fund recovered by the Settlement Class — will be a lesser amount after the following deductions: (1) any Fee and Expense Award approved by the court (the plaintiffs moved for $21,250,000 in fees and $130,842.24 in expenses); (2) any Service Payments approved by the court (the plaintiffs moved for $5,000 per plaintiff); (3) Taxes and Tax Expenses; and (4) Settlement Administration Expenses (estimated at $2,833,000).[19]

Settlement Class Members who submit a Claim Form will be entitled to individual payment. Individual payment amounts will depend on whether the Settlement Class Member paid for a Zoom Meetings subscription. Those who did can submit a Paid Subscription Claim and will receive the greater of $25 or 15% of the amount paid. Those who did not pay for a subscription can submit a User Claim and will receive $15. These amounts can be adjusted up or down depending on claim volume and the amount of deductions from the Settlement Amount.[20] As of March 14, 2022, the Settlement Administrator anticipated that adjustment is likely, such that those who submit Paid Subscription Claims will receive the greater of $50 or 30% of the amount paid (an average of $95), and those who submit User Claims will receive $29.[21]

Settlement Class Members will have the option to receive Settlement Payments via digital methods; otherwise, they will receive a check. The checks and digital payments will be good for 90 days.[22]

The Settlement Administrator has "authority to determine whether a Claim Form is valid, timely, and complete." Those submitting Settlement Claims will have an opportunity to cure any

---

[19] Mot. – ECF No. 216 at 16; Mot. for Attorney's Fees – ECF No. 217 at 2; Wolfson & Molumphy Decl. – ECF No. 191 at 7 (¶ 26); Settlement Agreement, Ex. 1 to *id.* – ECF No. 191-1 at 7 (¶¶ 1.15, 1.20), 9 (¶¶ 1.36, 1.43), 11–14 (¶ 2.1), 30–31 (¶¶ 10.1–10.3).

[20] Mot. – ECF No. 216 at 16; Settlement Agreement, Ex. 1 to Wolfson & Molumphy Decl. – ECF No. 191-1 at 14–17 (¶¶ 2.2, 2.4).

[21] Reply – ECF No. 231 at 8; Azari Suppl. Decl. – ECF No. 231-1 at 11 (¶ 25).

[22] Settlement Agreement, Ex. 1 to Wolfson & Molumphy Decl. – ECF No. 191-1 at 17 (¶ 2.5).

United States District Court
Northern District of California

deficiencies identified by the Settlement Administrator.[23] Furthermore, "[t]he Settlement Administrator shall be obliged to employ reasonable procedures to screen Settlement Claims for abuse or fraud."[24]

The Settlement Amount is non-reversionary.[25] Uncashed checks and unactivated digital payments will be distributed as follows. If economically feasible, they will be distributed to Settlement Class Members on a pro rata basis "without regard to the type of Settlement Claim submitted." Otherwise, they will go to "the Non-Profit Residual Recipients in equal amounts."[26] The Non-Profit Residual Recipients are the Electronic Privacy Information Center and the Electronic Frontier Foundation, "two Section 501(c)(3) non-profit organizations whose work relates directly to the subject matter of the Action and benefits Settlement Class Members."[27]

The Settlement Agreement also provides for injunctive relief, including "over a dozen major changes to [Zoom's] practices, designed to improve meeting security, bolster privacy disclosures, and safeguard consumer data."[28] The injunctive relief will remain in place for one to three years, depending on the provision.[29] The parties "stipulate[d] that Plaintiffs and Class Counsel were a substantial and motivating factor for [the] injunctive relief."[30]

### 2.3    Release Provisions

The Settlement Agreement releases all claims under federal or state law "that are based on one or more of the same factual predicates as the Action."[31] The release extends to "Unknown Claims"

---

[23] *Id.* at 15 (¶ 2.3).

[24] *Id.* at 22 (¶ 4.2).

[25] *Id.* at 12 (¶ 2.1(c)).

[26] *Id.* at 17 (¶ 2.5(e)).

[27] *Id.* at 7 (¶ 1.21); Mot. – ECF No. 216 at 16.

[28] Mot. – ECF No. 216 at 17; Settlement Agreement, Ex. 1 to Wolfson & Molumphy Decl. – ECF No. 191-1 at 17–20 (¶ 3.1).

[29] Settlement Agreement, Ex. 1 to Wolfson & Molumphy Decl. – ECF No. 191-1 at 21 (¶¶ 3.2–3.3).

[30] *Id.* (¶ 3.5).

[31] *Id.* at 8 (¶¶ 1.32–1.34), 29 (¶ 8).

United States District Court
Northern District of California

of this sort, and the Releasing Parties waive their rights under California Civil Code § 1542 and similar state laws.[32]

### 2.4    Administration

The court appointed Epiq Class Action and Claims Solutions as the Settlement Administrator.[33] The administration procedures — including the notice program and procedures for exclusions and objections — were set forth in the Settlement Agreement.[34]

Epiq complied with these procedures. Between November 19, 2021, and January 3, 2022, notice was sent to 158,203,160 class members by email (including reminder emails to those who did not submit a claim form) and 189,003 by mail. Of the emailed notices, 14,303,749 were undeliverable, and of that group, Epiq mailed notice to 296,592 class members for whom a physical address was available. Of the mailed notices, efforts were made to ensure address accuracy and currency, and as of March 10, 2022, 11,543 were undeliverable.[35] In total, as of March 10, 2022, notice was accomplished for 144,242,901 class members, or 91% of the total.[36] Additional notice efforts were made by newspaper (to comply with the California Consumers Legal Remedies Act), social media, sponsored search, an informational release, and a Settlement Website.[37]

Epiq and Class Counsel also complied with the court's prior request that best practices related to the security of class member data be implemented.[38]

As of March 10, 2022, Epiq had received 1,454,796 Claim Forms.[39] Thus, the claim participation rate was about one percent. Starting on February 1, 2022, reminder notices were sent

---

[32] *Id.* at 10 (¶ 1.47).

[33] Order – ECF No. 204 at 4–5 (¶ 12).

[34] Settlement Agreement, Ex. 1 to Wolfson & Molumphy Decl. – ECF No. 191-1 at 21–27 (¶¶ 4–6).

[35] Azari Decl. – ECF No. 219 at 3 (¶¶ 7–8), 6–9 (¶¶ 17–24); Azari Suppl. Decl. – ECF No. 231-1 at 4 (¶ 11).

[36] Azari Suppl. Decl. – ECF No. 231-1 at 4 (¶ 12).

[37] Azari Decl. – ECF No. 219 at 9–13 (¶¶ 27–42).

[38] *Id.* at 4–6 (¶¶ 10–16); Mot. – ECF No. 216 at 19–20.

[39] Azari Suppl. Decl. – ECF No. 231-1 at 11 (¶ 25).

1    for claim stimulation purposes; in total, 143,225,659 Reminder Email Notices and 453,574

2    Reminder Postcard Notices were sent.[40]

3

4                                          **ANALYSIS**

5    **1.  Jurisdiction**

6         The court has diversity jurisdiction under the Class Action Fairness Act. *See* 28 U.S.C.

7    1332(d)(2).

8

9    **2.  Certification of Settlement Class**

10        The court reviews the propriety of class certification under Federal Rule of Civil Procedure

11   23(a) and (b). When parties enter into a settlement before the court certifies a class, the court

12   "must pay 'undiluted, even heightened, attention' to class certification requirements" because the

13   court will not have the opportunity to adjust the class based on information revealed at trial. *Staton*

14   *v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003) (quoting *Amchem Prods., Inc. v. Windsor*, 521

15   U.S. 591, 620 (1997)); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

16        Class certification requires the following: (1) the class is so numerous that joinder of all

17   members individually is "impracticable"; (2) there are questions of law or fact common to the

18   class; (3) the claims or defenses of the class representatives are typical of the claims or defenses of

19   the class; and (4) the person representing the class will fairly and adequately protect the interests

20   of all class members. Fed. R. Civ. P. 23(a); *Staton*, 327 F.3d at 953. Also, the common questions of

21   law or fact must predominate over any questions affecting only individual class members, and the

22   class action must be superior to other available methods for fairly and efficiently adjudicating the

23   controversy. Fed. R. Civ. P. 23(b)(3).

24        The court finds (for settlement purposes only) that the proposed settlement class meets the

25   Rule 23(a) prerequisites of numerosity, commonality, typicality, and adequacy. Also, under Rule

26

27

28   ---
     [40] *Id.* at 9 (¶¶ 21–22); Azari Decl. – ECF No. 219 at 14–15 (¶ 48).

*United States District Court*
*Northern District of California*

1   23(b)(3) (and for settlement purposes only), common questions predominate over any questions

2   affecting only individual members, and a class action is superior to other available methods.

3   First, with over 150 million members, the class is so numerous that joinder of all members is

4   impracticable.

5   Second, there are questions of law and fact common to the class. The case is about Zoom's data

6   privacy and security, and common questions include whether Zoom made uniform

7   misrepresentations and had uniformly deficient practices in those areas, thereby causing the same

8   alleged injury to all class members. Thus, the claims depend on common contentions, the

9   determination of which "will resolve an issue that is central to the validity of each one of the claims

10  in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Betorina v. Randstad US,*

11  *L.P.*, No. 15-cv-03646-EMC, 2017 WL 1278758, at *4 (N.D. Cal. Apr. 6, 2017). Furthermore, these

12  common questions predominate over any questions affecting only individual members.

13  Third, the claims of the representative parties are typical of the claims of the class. The

14  representative parties and all class members allege consumer-privacy violations based on similar

15  facts. All representatives possessed the same interest and suffered the same injury as the rest of the

16  class. *See Betorina*, 2017 WL 1278758, at *4.

17  Fourth, the representative parties will fairly and adequately protect the interests of the class.

18  Two factors are relevant to the adequacy determination: (1) whether the named plaintiffs and their

19  counsel have potential conflicts with the other class members; and (2) whether counsel chosen by

20  the representative party is qualified, experienced, and able to vigorously conduct the litigation. *In*

21  *re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019) (citing *Hanlon*, 150 F.3d

22  at 1020). Here, the named plaintiffs have shared claims and interests with the class (and no

23  conflicts of interest), and they retained qualified and competent counsel who have prosecuted the

24  case vigorously. *See id.*; *Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands,*

25  *Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1021–22.

26  Finally, a class action is superior to other available methods for fairly and efficiently

27  adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

28

United States District Court
Northern District of California

1   In sum, the prerequisites of Rule 23(a) and (b)(3) are met. The court certifies the class under

2   Rule 23(b)(3) for settlement purposes only.

3

4   **3.  Approval of Settlement**

5   A court may approve a proposed class-action settlement only "after a hearing and only on

6   finding that it is fair, reasonable, and adequate after considering whether":

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

16  Fed. R. Civ. P. 23(e)(2). These factors "are substantially similar to those articulated" in *Hanlon*,

17  150 F. 3d at 1027. *Student A v. Berkeley Unified Sch. Dist.*, No. 17-cv-02510-JST, 2021 WL

18  6332353, at *2 n.2 (N.D. Cal. July 8, 2021).

19  In *Hanlon*, the Ninth Circuit identified factors relevant to assessing a settlement proposal: (1)

20  the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further

21  litigation; (3) the risk of maintaining class-action status throughout trial; (4) the amount offered in

22  settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the

23  experience and views of counsel; (7) the presence of a government participant; and (8) the reaction

24  of class members to the proposed settlement. 150 F.3d at 1026.

25  When parties "negotiate a settlement agreement before the class has been certified, settlement

26  approval requires a higher standard of fairness and a more probing inquiry than may normally be

27  required under Rule 23(e)." *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019)

28  (cleaned up). "Specifically, such settlement agreements must withstand an even higher level of

United States District Court
Northern District of California

scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Id*. at 1048–49 (cleaned up).

The court has evaluated the proposed settlement agreement for overall fairness under the *Hanlon* factors and concludes that it is free of collusion and approval is appropriate.

First, the settlement provides good value and is fair. Zoom "collected approximately $1.07 billion in Zoom Meetings subscriptions from Settlement Class Members," meaning that the Settlement Amount "represents approximately 8% of the maximum total revenues collected from Settlement Class Members" (and during this time period, Zoom was correcting errors and implementing solutions).[41] The plaintiffs cite cases in which courts granted final approval at equivalent or lower recovery rates.[42] Furthermore, the individual recoveries are reasonable. Paid subscribers can recover 15% of the amount they paid to Zoom, in line with the fact that the Zoom services at issue in this case are just a fraction of the services offered by Zoom. And the $15 recoverable by non-paid subscribers "is within the ballpark of what consumers may be willing to receive in exchange for the type of data the SAC alleges Zoom disclosed."[43] A settlement now also results in money paid now, while litigation results in delay and expense. Privacy damages are uncertain.[44]

The settlement's injunctive relief offers significant further value. It consists of "over a dozen major changes to [Zoom's] practices, designed to improve meeting security, bolster privacy disclosures, and safeguard consumer data."[45] And as the plaintiffs point out, "numerous privacy class actions have been settled for non-monetary relief."[46]

Second, the value of the settlement is significant compared to the litigation risks and uncertainties. The plaintiffs recognize that liability and recovery are not certain, because "[e]ven if

---

[41] Mot. – ECF No. 216 at 22–23; Molumphy & Wolfson Decl. – ECF No. 218 at 11 (¶ 39).

[42] Mot. – ECF No. 216 at 23 (collecting cases).

[43] *Id.*; Molumphy & Wolfson Decl. – ECF No. 218 at 11 (¶ 39).

[44] Mot. – ECF No. 216 at 25 (collecting cases).

[45] *Id.* at 17; Settlement Agreement, Ex. 1 to Wolfson & Molumphy Decl. – ECF No. 191-1 at 17–20 (¶ 3.1).

[46] Mot. – ECF No. 216 at 25 (collecting cases).

United States District Court
Northern District of California

[they] obtained class certification, successfully opposed a motion for summary judgment, and subsequently proved liability at trial, they still would face the significant risk of recovering nothing" because damages in privacy cases are highly uncertain.[47] Additional risk was demonstrated by the court's prior dismissal without prejudice of some of the plaintiff's claims.[48] The settlement allows both parties to avoid contested litigation that would be costly and protracted.[49]

Third, a class action allows class members — who otherwise would not pursue their claims individually because costs would exceed recoveries — to obtain relief.

Fourth, the settlement is the product of serious, non-collusive, arm's-length negotiations and was reached after extensive mediation with an experienced mediator with subject-matter expertise.

Finally, the reaction of the class is favorable. There are relatively few opt-outs (2,242) and objections (nine). A court "may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Ching v. Siemens Indus.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *6 (N.D. Cal. June 27, 2014); *cf. Staton*, 327 F.3d at 959 (court should consider "reaction of the class members to the proposed settlement").

Of the nine objections, some objectors lack standing to object or submitted untimely objections, and the others put forward unavailing arguments.

Four objections — from Ed Takken, Patricia Meyers, Sammy Rodgers and Alvery Neace, and Cody Powers — can be stricken.[50] For one thing, the objections from Sammy Rodgers, Alvery Neace, and Cody Powers were untimely because they were filed after the Objection and Exclusion Deadline of March 5, 2022.[51] Also, these objectors lack standing to object because they did not provide "an explanation of the basis upon which [they] claim[] to be a Settlement Class Member,"

---

[47] *Id.* at 25–26.

[48] *Id.* at 23–25.

[49] *Id.* at 26.

[50] Objs. – ECF Nos. 207, 224, 228, 232; Reply in Supp. of Obj. – ECF No. 240.

[51] Order – ECF No. 204 at 6 (¶¶ 18–19); Settlement Agreement, Ex. 1 to Wolfson & Molumphy Decl. – ECF No. 191-1 at 26 (¶ 6.1(b)).

United States District Court
Northern District of California

as required by the Settlement Agreement and the court's preliminary-approval order.[52] *In re Apple Inc. Sec. Litig.*, No. 5:06-cv-05208-JF (HRL), 2011 WL 1877988, at *3 n.4 (N.D. Cal. May 17, 2011) (objector lacks standing to object where "he did not provide evidence to show that he is a class member as required by this Court's order"); *Glasser v. Volkswagen of Am., Inc.*, 645 F.3d 1084, 1088 (9th Cir. 2011) (objector must be an aggrieved class member to have standing to object).

Furthermore, any claim that it is impossible to provide documentation of Zoom use lacks merit; the Settlement Administrator "has received more than 27,497 claims from unregistered Zoom user Claimants" and has "accepted a wide array of documentation submitted with such Claims."[53] The Claim Form itself provides an example of such documentation: "a copy of an invitation to join a Zoom meeting that shows the date and ID number of the meeting."[54] And the Settlement Agreement requires the Settlement Administrator "to employ reasonable procedures to screen Settlement Claims for abuse or fraud."[55] The claims screening process was reasonable. *See In re Hyundai and Kia*, 926 F.3d at 568 (district court did not abuse its discretion "in finding that some sort of claims process is necessary in order to verify" claims) (cleaned up).

Three objections — from Peter Matthies, Joseph Lofthouse, and Better World Properties — asserted that Zoom has done nothing wrong and the settlement is mainly about Class Counsel getting paid.[56] But Zoom has voluntarily settled this case, even without admitting wrongdoing or liability.[57] Also, the settlement is the product of non-collusive negotiations. These objectors did not put forward legally sufficient bases to reject the settlement. In any case, they lack standing to object because they are not aggrieved by the settlement. *Glasser*, 645 F.3d at 1088 (class member "lacks standing" to challenge settlement unless proposed change would "actually benefit" her).

---

[52] Settlement Agreement, Ex. 1 to Wolfson & Molumphy Decl. – ECF No. 191-1 at 26 (¶ 6.1(c)); Order – ECF No. 204 at 6 (¶¶ 18–19).

[53] Azari Suppl. Decl. – ECF No. 231-1 at 6 (¶ 19(b)).

[54] Claim Form, Ex. A to Settlement Agreement – ECF No. 191-1 at 38.

[55] Settlement Agreement, Ex. 1 to Wolfson & Molumphy Decl. – ECF No. 191-1 at 22 (¶ 4.2).

[56] Objs. – ECF Nos. 206, 208, 225.

[57] Settlement Agreement, Ex. 1 to Wolfson & Molumphy Decl. – ECF No. 191-1 at 4 (¶ P).

The final objections were from Melody Rodgers and Judith Cohen. Ms. Cohen, a mental-health counselor, argued for a subclass for those who used Zoom "as part of a business that was legally or contractually required to maintain client confidentiality as part of the services the business provided."[58] Ms. Rodgers, a member of an organization called the "Save Our Children Truth Commission," argued that the individual payment amounts are inadequate for people like her who held sensitive Zoom meetings and were victimized by Zoombombing.[59]

Ms. Cohen and Ms. Rodgers do not have claims that differ from other class members. The recovery is for Zoom users not receiving the benefit of their bargain with Zoom, not for distress caused by Zoombombing or special harm arising from a duty to maintain client confidentiality. The settlement compensates Zoom users for the consideration (either subscription payments or access to their personal data) that they would not have otherwise given to Zoom.[60] Indeed, the court dismissed the plaintiffs' negligence cause of action, as it pertained to emotional distress caused by Zoombombing.[61] As explained above, the recoveries here are adequate to justify approval. And even if "the settlement could have been better," it can still be "fair, reasonable [and] adequate," because "[s]ettlement is the offspring of compromise." *Hanlon*, 150 F.3d at 1027.

Finally, some of the objectors asserted a low claim-participation rate (one percent) caused by deficiencies in administration of the settlement, such as email notices being redirected by spam filters and the difficulty of obtaining suitable documentation to prove class membership.[62] But the Settlement Administrator followed "industry standard best practices . . . for the Email Notice program specifically designed to avoid and overcome SPAM filters."[63] Moreover, it cannot reasonably be said that the notice program was deficient; the Settlement Administrator "sent over 300 million emails, and over 900,000 postcards to Settlement Class Members," and its "media

---

[58] Obj. – ECF No. 227; Reply in Supp. of Obj. – ECF No. 236.

[59] Obj. – ECF No. 220.

[60] SAC – ECF No. 179 at 59 (¶ 218).

[61] Order – ECF No. 168 at 19, 40.

[62] Reply in Supp. of Obj. – ECF No. 240 at 2, 8.

[63] Azari Second Suppl. Decl. – ECF No. 237-1 at 2–3 (¶¶ 5–6).

campaign delivered more than 461 million targeted impressions."[64] And as explained above, the documentation requirements were reasonable. The settlement is also non-reversionary, mitigating any risk that the one percent claim participation rate was intentionally engineered. *See Roes, 1-2*, 944 F.3d at 1058 ("[A]llowing unclaimed funds to revert to defendants . . . creates an incentive for defendants to ensure as low a claims rate as possible so as to maximize the funds that will revert."). In any case, the Ninth Circuit has "approved class action settlements where less than five percent of class members file claims." *In re Hyundai & Kia*, 926 F.3d at 568 (cleaned up); *see also Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*, No. 3:16-cv-05486-JCS, 2018 WL 8949777, at *4 (N.D. Cal. Oct. 15, 2018) (approving a settlement with a two percent claim-participation rate).

The court has also considered the Rule 23(e)(2) factors and finds that they support approval of the settlement.

In sum, viewed as a whole, the proposed settlement is sufficiently "fair, adequate, and reasonable" to warrant approval. *See Officers for Just. v. Civ. Serv. Comm'n of City and Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

### 4. Appointment of Class Representative, Class Counsel, and Claims Administrator

The court confirms its appointment of the Class Representatives for settlement purposes only: Caitlin Brice, Heddi N. Cundle, Angela Doyle, Isabelle Gmerek, Kristen Hartmann, Peter Hirshberg, M.F., Therese Jimenez, Lisa T. Johnston, Oak Life Church, Saint Paulus Lutheran Church, and Stacey Simins.[65] They have claims that are typical of members of the class generally, and they are adequate representatives of the other members of the proposed class.[66]

The court also confirms its appointment of Class Counsel for settlement purposes only: Tina Wolfson of Ahdoot & Wolfson, and Mark C. Molumphy of Cotchett, Pitre, & McCarthy LLP.[67]

---

[64] Reply – ECF No. 231 at 6.

[65] Order – ECF No. 204 at 4 (¶ 10).

[66] SAC – ECF No. 179 at 7–20 (¶¶ 17–62).

[67] Order – ECF No. 204 at 4 (¶ 11).

1   *See* Fed. R. Civ. P. 23(a) & (g)(1). They have the requisite qualifications, experience, and

2   expertise in prosecuting class actions.[68]

3

4   **5.   Class Notice**

5       As described above, the Settlement Administrator provided notice to the class in the form the

6   court approved previously. The notice met all legal prerequisites: it was the best notice practicable,

7   satisfied the requirements of Rule 23(c)(2), adequately advised class members of their rights under

8   the settlement agreement, met the requirements of due process, and complied with the court's

9   order regarding court notice. The forms of notice fairly, plainly, accurately, and reasonably

10  provided class members with all required information, including (among other things): (1) a

11  summary of the lawsuit and claims asserted; (2) a clear definition of the class; (3) a description of

12  the material terms of the settlement, including the estimated payment; (4) a disclosure of the

13  release of claims should class members not opt out; (5) an explanation of class members' opt-out

14  and objection rights, a date by which they must opt out or object, and information about how to do

15  so; (6) the date, time, and location of the final fairness hearing; and (7) the identity of class

16  counsel and the provisions for attorney's fees, costs, and class-representative service awards.[69]

17

18  **6.   Compliance with Class Action Fairness Act**

19      On behalf of Zoom, Epiq provided notice of the settlement and other information showing

20  compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, to the appropriate

21  federal and state officials on August 10, 2021.[70] The court's final approval hearing is more than 90

22  days after service as required by 28 U.S.C. § 1715.

23

24

25  _____

26  [68] Cotchett, Pitre, & McCarthy Firm Resume, Ex. E to Molumphy Decl. – ECF No. 218-2 at 15–79;
    Ahdoot & Wolfson Firm Resume, Ex. D to Wolfson Decl. – ECF No. 218-3 at 13–21.

27  [69] Azari Decl. – ECF No. 219 at 3 (¶¶ 7–8), 6–13 (¶¶ 17–42), 15–17 (¶¶ 50–56); Notices of Settlement,
    Exs. 2–11 to *id.* – ECF No. 219 at 31–95.

28  [70] Azari Decl. – ECF No. 219 at 4 (¶ 9); Fiereck Decl., Ex. 1 to *id.* – ECF No. 219 at 19–30.

United States District Court
Northern District of California

**7.  Attorney's Fees and Costs**

Class Counsel moved for $21,250,000 in fees (25 percent of the Settlement Amount) and $130,842.24 in costs.[71] The court awards both amounts.

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

The court must ensure that the award is reasonable. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). The court is not bound by the parties' settlement agreement as to the amount of fees. *Id.* at 941–43. The court must review fee awards with special rigor:

> Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber-stamp approval, even in the absence of objections, is improper.

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (cleaned up).

When counsel recovers a common fund that confers a "substantial benefit" on a class of beneficiaries, counsel is "entitled to recover their attorney's fees from the fund." *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). In common-fund cases, courts may calculate a fee award under either the "lodestar" or "percentage of the fund" method. *Id.*; *Hanlon*, 150 F.3d at 1029.

The "percentage of the fund" method is typically used. The Ninth Circuit has established a "benchmark" that fees should equal twenty-five percent of the settlement, although courts diverge from the benchmark based on factors that include "the results obtained, risk undertaken by counsel, complexity of the issues, length of the professional relationship, the market rate, and awards in similar cases." *Morales v. Stevco, Inc.*, No. CIV-F-09-0704-AWI-JLT, 2013 WL 1222058, at *2 (E.D. Cal. Mar. 25, 2013); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming thirty-three-percent fee award); *Pac. Enters.*, 47 F.3d at 379 (same).

When determining the value of a settlement, courts consider the monetary and non-monetary benefits that the settlement confers. *See, e.g.*, *Staton*, 327 F.3d at 972–74; *Pokorny v. Quixtar, Inc.*,

---

[71] Mot. for Attorney's Fees – ECF No. 217 at 2.

No. C-07-0201-SC, 2013 WL 3790896, at *1 (N.D. Cal. July 18, 2013) ("The court may properly consider the value of injunctive relief obtained as a result of settlement in determining the appropriate fee."); *In re Netflix Priv. Litig.*, No. 5:11-cv-00379-EJD, 2013 WL 1120801, at *7 (N.D. Cal. Mar. 18, 2013) (settlement value "includes the size of the cash distribution, the *cy pres* method of distribution, and the injunctive relief").

Finally, Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits made available to class members rather than the actual amount ultimately claimed. *Young v. Polo Retail, LLC*, No. C-02-4546-VRW, 2007 WL 951821, at *8 (N.D. Cal. Mar. 28, 2007) ("district court abused its discretion in basing attorney fee award on actual distribution to class" instead of amount made available) (citing *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997)).

If the court applies the percentage method, it then typically calculates the lodestar as a "cross-check to assess the reasonableness of the percentage award." *See, e.g.*, *Weeks v. Kellogg Co.*, No. CV-09-8102-MMM-RZx, 2013 WL 6531177, at *25 (C.D. Cal. Nov. 23, 2013); *see also Serrano v. Priest*, 20 Cal. 3d 25, 48–49 (1977); *Fed-Mart Corp. v. Pell Enters.*, 111 Cal. App. 3d 215, 226–27 (1980). "The lodestar . . . is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000). "Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Id.*; *accord Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503–06 (2016) (holding, under California law, that "the percentage method to calculate [attorney's] fee in a common fund case" is appropriate and the trial court has "discretion to conduct a lodestar cross-check on a percentage fee").

Based on counsel's declarations and the results they achieved in this litigation, the requested fees are reasonable and appropriate as a percentage of the common fund, supported by a lodestar cross-check (with the plaintiff's suggested multiplier). Counsel obtained excellent benefits for the class, both monetary and injunctive (in an area of law in which purely injunctive relief is common),

and there were significant risks involved with the litigation.[72]

As for the lodestar cross-check, the billing rates are normal and customary for timekeepers with similar qualifications and experience in the relevant market. *Cuviello v. Feld Ent., Inc.*, No. 13-cv-04951-BLF, 2015 WL 154197, at *2 (N.D. Cal. Jan. 12, 2015) ("The Court has broad discretion in setting the reasonable hourly rates used in the lodestar calculation."); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) (court can rely on its own experience); *accord Open Source Sec. v. Perens*, 803 F. App'x 73, 77 (9th Cir. 2020). Counsel also submitted a sufficient breakdown of the attorneys' hours to reach a conclusion about the lodestar and the positive multiplier.[73] The modest multiplier falls within the range of multipliers that courts approve. *Vizcaino*, 290 F.3d at 1051 n.6 ("Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.") (cleaned up). The court grants Class Counsel's request for fees of twenty-five percent of the Settlement Amount, in line with the Ninth Circuit's benchmark and the awards in similar cases.[74]

Class Counsel has the sole and absolute discretion to allocate this award to Plaintiffs' Counsel and any other attorneys based on each attorney's contributions to the prosecution and settlement of these Actions.[75]

Class Counsel also are entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 20 (9th Cir. 1994) (attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable costs in class action settlement). Costs compensable include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

---

[72] Mot. for Attorney's Fees – ECF No. 217 at 14–28; Molumphy & Wolfson Decl. – ECF No. 218 at 15–16 (¶¶ 53–58).

[73] Molumphy & Wolfson Decl. – ECF No. 218 at 16–18 (¶¶ 59–65); Billing Records & Firm Resumes, Exs. 1–7 to *id.* – ECF Nos. 218-1 to -7.

[74] Mot. for Attorney's Fees – ECF No. 217 at 23–24 (collecting cases).

[75] Proposed Order – ECF No. 238 at 9 (¶ 11).

The record establishes sufficiently the reasonableness of the requested costs.[76] The court approves the requested amount of $130,842.24.

### 8. Service Payments

The plaintiffs moved for Service Payments of $5,000 for each of the class representatives.[77] The court grants the motion.

District courts must evaluate proposed awards individually, using relevant factors that include "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977 (cleaned up). "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (cleaned up). The Ninth Circuit has "noted that in some cases incentive awards may be proper but [has] cautioned that awarding them should not become routine practice." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (discussing *Staton*, 327 F.3d at 975–78). District courts "must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Id.* at 1164; *cf. Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266–67 (N.D. Cal. 2015) (collecting cases recognizing that in this district, a $5,000 award is presumptively reasonable).

The record establishes sufficiently the efforts of the Class Representatives.[78] The court approves awards of $5,000 for each.

---

[76] Mot. for Attorney's Fees – ECF No. 217 at 28; Molumphy & Wolfson Decl. – ECF No. 218 at 18 (¶¶ 66–67); Reply in Supp. of Mot. for Attorney's Fees – ECF No. 237 at 2 (no objections to the requested expenses were filed).

[77] Mot. for Attorney's Fees – ECF No. 217 at 2.

[78] *Id.* at 29–30; Molumphy & Wolfson Decl. – ECF No. 218 at 18–19 (¶¶ 69–70); Reply in Supp. of Mot. for Attorney's Fees – ECF No. 237 at 2 (no objections to the requested Service Payments were filed).

**9.  Ancillary Items**

The Releases set forth in paragraph 8 of the Settlement Agreement are expressly incorporated herein in all respects. Accordingly, the Court orders pursuant to this Order, as of the Effective Date of the Settlement, and as provided in the Settlement Agreement, that Class Representatives and Settlement Class Members fully, finally, and forever release the Released Claims against the Released Parties.[79]

The 2,242 individuals who submitted timely and valid Requests for Exclusion are not Settlement Class Members, are not releasing any claims, and are not bound by the terms of the Settlement Agreement or this order.[80] The list of these individuals is incorporated by this reference.[81]

The Action, all actions consolidated into the Action, and all claims asserted in the actions, are settled and dismissed on the merits with prejudice.[82] But "[w]ithout affecting the finality of the Final Approval Order or the Judgment for purposes of appeal," the court will retain jurisdiction to enforce the Settlement Agreement's terms and resolve any disputes that arise relating to implementation.[83]

The injunctive relief provided for in paragraph three of the Settlement Agreement shall be implemented by Zoom.[84]

## CONCLUSION

The court approves the class-action settlement, including the fees and costs.

**IT IS SO ORDERED.**

---

[79] Proposed Order – ECF No. 238 at 5 (¶ 8).

[80] *Id.* (¶ 9).

[81] Exclusion Report, Ex. 1 to Azari Second Suppl. Decl. – ECF No. 237-1 at 6–60.

[82] Proposed Order – ECF No. 238 at 10 (¶ 13).

[83] *Id.* (¶ 14); Settlement Agreement, Ex. 1 to Wolfson & Molumphy Decl. – ECF No. 191-1 at 28 (¶ 7.3(h)).

[84] Proposed Order – ECF No. 238 at 10–13 (¶¶ 15–17).

Dated: April 21, 2022

_____

LAUREL BEELER
United States Magistrate Judge