1   J. Allen Roth, Esq. (PA 30347)
    *Pro Hac Vice*
2   805 Alexandria Street S.
    Latrobe PA  15650
3   (724) 686-8003
    office@jarothlaw.com
4
    COUNSEL FOR OBJECTORS
5   SAMMY RODGERS AND ALVERY NEACE

6   Ari Y. Brown, Esq. (WSBA 29570)
    *Pro Hac Vice*
7   3909 47th Ave. S.
    Seattle WA  98118
8   (206) 412-9320
    abrownesq@gmail.com
9
    John E. Giust, Esq.
10  9625 Black Mountain Rd. #205
    San Diego, CA  92126
11  (619) 993-1656
    john@giustlaw.com
12
    COUNSEL FOR OBJECTOR JUDITH C. COHEN
13

14              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
15                **SAN FRANCISCO DIVISION**

16

17  *IN RE: ZOOM VIDEO COMMUNICATIONS*      Master Case No. 3:20-cv-02155-LB
    *INC. PRIVACY LITIGATION*,
18

19                                          **REPLY IN SUPPORT OF MOTION
                                            FOR ATTORNEYS' FEES AND
20  This Document Relates To:              INCENTIVE AWARD FOR
         All Actions                        OBJECTORS SAMMY RODGERS,
21                                          ALVERY NEACE, AND JUDITH
                                            COHEN PURSUANT TO FED. R. Cv. P.
22                                          23(H).**

23                                          Hon. Laurel Beeler
                                            Courtroom: B-15
24                                          Date:    February 2, 2023
                                            Time:    9:30 a.m.
25

26

27

28

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

**I.  INTRODUCTION**

All parties and all objectors reached arm's length agreements with respect to modifications to the settlement and final approval in this case. During the course of the negotiations, counsel for objectors disclosed their hours and negotiated the maximum attorney fees down to the exact dollar. The figures were based on hours counsel had worked and, unlike Plaintiffs' Class Counsel, Objectors' Counsel agreed not to seek any multiplier on their lodestar. Class Counsel now impugns the very settlement agreements that they entered. Class Counsel's opposition asks this Court to go outside any duties to protect the class and to apply double standards in service of Class Counsel's attorney's fees.

**II.  ARGUMENT**

### A.  The Class received substantial benefits from the Objectors' work.

As this Court knows, this case involves flaws to Zoom's security that enabled third parties to access video conferences that the participants believed to be private.  Objector Cohen identified a different effect this had on professionals obligated to maintain confidentiality and ultimately alleviated a risk to such professionals going forward by narrowing the scope of the release. Objectors Neace and Rogers identified procedural flaws and ultimately secured modifications to the administrative process that will substantially improve the distribution of the settlement.

#### 1.  The modification of Zoom's release is material.

Under the terms of the original settlement, doctors, therapists, lawyers, and other professionals who used Zoom in confidential sessions that, this case alleges, were not in keeping with the confidentiality agreements they had with their respective clients, could not implead Zoom for contribution or indemnification if faced with a lawsuit from a client– even if the professional never heard of the Zoom class action.  From the outset, Cohen identified the increased risk of lawsuits from current or former clients based on alleged breaches of confidentiality clauses. See, Reply in Support of Objection, ECF No. 236 at 2-3. Because of Cohen's persistence to raise this issue and to pursue her appeal, the parties agreed to modify the scope of the release in the settlement to assure that if a professional faced a suit from a current or former client based on Zoom's security

1  shortcomings, the professional would not be precluded from seeking Zoom's contribution or

2  participation in the professional's defense.

3          This modification is material.  There are thousands, if not millions, of professionals whose

4  contractual confidentiality guarantees were arguably compromised or breached and who could face

5  future claims. Given the disparity in access to factual information, such professionals would be in

6  poor position to defend against such claims. A modification that ensures that Zoom is no longer

7  immune from participating in defense of such suits cannot be considered "trivial" or a

8  "technicality." Courts have repeatedly recognized a narrowing of a defendant's release to constitute

9  a material benefit to the class.  See, e.g.,  *Marshall v. Northrop Grumman Corp.*, No. 2:16-CV-

10 06794-AB-JCX, 2020 WL 5668963, at *4 (C.D. Cal. Sept. 18, 2020); *Hendricks v. Starkist*, No.

11 13-CV-00729, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) (awarding objectors' fees who

12 ensured that the final agreement's release was narrowly tailored to encompass only the claims at

13 issue, preserving potential future causes of action; *Kurihara v. Best Buy Co.*, No. C-06-1884, 2010

14 WL 11575583 (N.D. Cal. June 7, 2010) (awarding objectors' fees upon finding that an objector

15 conferred a substantial benefit on the class by clarifying the scope of the release to ensure that only

16 specific claims were released and that others were protected from release); *In re Sony PS3 "Other*

17 *OS" Litigation*, No. 10-CV-01811, 2018 WL 2763337 (N.D. Cal. June 8, 2018) (awarding fees to

18 objector who identified and modified an overbroad release of claims).

19              **2.      The modifications to the administrative process are material.**

20         Alvery Neace and Sammy Rodgers raised various procedural matters that are fundamentally

21 flawed in many class actions because of boilerplate language and an inability of settlement

22 administrators to evolve their policies to assure payments reach the claimant.  As an example, in

23 this case where a claimant will receive less than $30, previously claimants had to jump through

24 hoops to figure out how to update their mailing address or email for digital payments.  Because of

25 the objections and appeal of Rodgers and Neace, the settlement administrator changed the website

26 to make it visible and easy for a person to update their contact information.  As to payments by

27 check, Rodgers' and Neace's objections, caused the settlement administrator to create a plan to

28 search relevant databases and to notify such class members before simply allowing their payments

REPLY IN SUPPORT OF MOTIONS FOR ATTORNEYS'
FEES AND INCENTIVE AWARD FOR OBJECTORS
PURSUANT TO FED. R. CV. P. 23(H)

to disappear. Finally, the objection caused the settlement administrator to extend the expiry date on checks and to send checks in business size envelopes rather than junk-mail looking tear-offs. These matters are important because many digital payments in this type of litigation are never claimed. See e.g., *Edwards v. Milk Producers*, Case 4:11-cv-04766 (N.D. Cal.), Entry 543-1, at 3, (noting "[s]urprisingly, the take rate here … was only 32%."); *Transpacific Passenger Air Transportation Antitrust*, 3:07cv05634 (N.D. Cal.), Entry 1347-1, at 2, (finding that of 44,893 checks mailed, 16,216 were not cashed by the recipient); *In re: Optical Disk Drive Products Antitrust*, 3:10-md-2143 (N.D. Cal.), Entry 3107, at 3 (finding that of 465,012 approved payments, 196,206 digital payments went unclaimed and 46,176 digital payments were returned). In other words, the same old methods are producing flawed results. The modifications Rodgers and Neace secured will go a long way to improving those results.

### 3.    Class Counsel previously represented that the modifications Constitute material benefits to the Class.

Perhaps the most striking aspect of Class Counsel's gainsay of results the Objectors secured is that it is the opposite of what the same attorneys told this Court less than a month earlier. On December 14, 2022, two of the same attorneys who now seek to minimize the modifications to the class settlement told this Court that "[b]oth settlements [with the respective objectors] thus benefit the settlement class, which supports their approval." Motion for Approval of Settlements, ECF No. 260, at 6-7. Moreover, Class Counsel then correctly noted that any service awards to Objectors or fee and expense awards to their counsel "will not adversely impact the Settlement Class as these payments will be drawn solely from the prior Fee and Expense Award." *Id*.

Without additional evidence and without basis, Class Counsel reverses their representations as to the materiality of the changes. Class Counsel now describes the revisions to the scope of the release as "narrow" and the risks the revisions addressed as "remote." Class Counsel present no evidence to support these pronouncements and their reversal from their position a month ago.

Class Counsel also impugns modifications the Objectors secured by suggesting they improperly settled their objections—claiming that "Rodgers/Neace did not obtain any relief related to the lion's share of their objections" and that "Cohen did not provide the primary relief sought in

1   her objection, *i.e.*, the creation of a business 'subclass' and reallocation of settlement funds to that

2   subclass." *See* Entry 266, pages 6-7.

3        Class Counsel ignores the fact that Objectors made compromises, just as Class Counsel did

4   when deciding to settle the litigation with Zoom. Class counsel cannot seriously contend that the

5   $30 each *responding* class member stands to recover[1] constitutes the full relief Plaintiffs sought at

6   the outset of the case. Objectors continue to believe that notwithstanding the raw dollar amount,

7   Class Counsel failed to obtain a great settlement from Zoom but determined that pursuing every

8   filed objection would have required an entire do-over of the litigation including additional notice

9   to prospective class members, new claim forms, and likely additional claims.

10       The concessions Objectors each secured speak to the respective flaws they each identified

11  at the outset. While the modification may not constitute all the relief they hoped for, Objectors

12  made decisions to secure the relief they considered most important. As the Ninth Circuit has noted,

13  settlements need not secure all the relief one desires in order to be compensable. Although a court

14  should not award fees for "hours that are excessive, redundant, or otherwise unnecessary, … a

15  district court is not precluded from compensating attorneys for time spent negotiating unsuccessful

16  settlements" *McKnight v. Hinojosa*, 54 F.4th 1069, 1077 (9th Cir. 2022) citing *Hensley v.

17  Eckerhart*, 461 U.S. 424, 434–35, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Objectors and their

18  counsel should not be punished for agreeing to compromise their claims.

19       **B.    Class Counsel asks the Court to impose an inconsistent standard on Objectors'
              petitions for fees and incentive awards.**

20

21       As the Court, and all parties previously recognized, fees for objector counsel should be

22  evaluated "on the same equitable principles as [fees for] class counsel." *Rodriguez v. Disner*, 688

23  F.3d 645, 658 (9th Cir. 2012). Nevertheless, Class Counsel asks the Court to impose far more

24  rigorous scrutiny to Objectors' request for fees cumulatively totaling $125,900 and for incentive

25  awards of $1,000 than it imposed to approve Class Counsel's 21.25 million dollar fee and $5,000

26  incentive payments. Not only do Objectors seek no multipliers on lodestar, their requests are

27  ─────────────
    [1] While Class Counsel tout that over 1,450,000 claims were filed, this constitutes less than one-
    percent (1%) of the more than 158 million eligible class members. Even with such an apathetic
28  rate of participation, users will receive less than $30. More than 99% of identified class members
    did not file timely claims and will not recover anything from this settlement.

REPLY IN SUPPORT OF MOTIONS FOR ATTORNEYS'
FEES AND INCENTIVE AWARD FOR OBJECTORS
PURSUANT TO FED. R. CV. P. 23(H)

1    supported by declarations and more detailed time records than Class Counsel offered in support of

2    their fee request. The records indicate the extent to which Objectors' Counsel worked efficiently,

3    avoided duplicative work, and did not include the work of staff. And notwithstanding the need for

4    this reply and what appears to be a contested hearing to follow, Objectors' attorneys have also not

5    included any time spent since December, 2022.

6          In evaluating a fee request, the Court indeed has a duty to act as a fiduciary for the

7    beneficiaries of the common fund and to weigh the appropriate interests of the beneficiaries in light

8    of the efforts of counsel on their behalf. See, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 251

9    (1985); *Strong v. BellSouth Telecommunications, Inc*., 137 F.3d 844, 849 (5th Cir. 1998), citing *In

10   re General Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 820 (3d

11   Cir.1995) (noting the need for courts to examine attorneys' fees to guard against the public

12   perception that attorneys exploit the class action device to obtain large fees at the expense of the

13   class). The purpose of the Court's scrutiny, however, is far different in this petition as ***all*** service

14   payments, attorney's fees, and costs the Court approves will be paid from the Court's prior award

15   of attorney's fees to Class Counsel and will not reduce the sum available to the class by a penny.

16   Class Counsel's objection to the Objectors' service award and fee requests is not in service of the

17   Class but only of Class Counsel's fees. The Court should decline to impose the double standard

18   Class Counsel now demands.

19                    **1.    Objectors fairly and thoroughly itemized their fees.**

20         In this case, Class Counsel sought and received over 21 million dollars based on generalized

21   summary records that did not fully itemize the work they did and from which the Court could not

22   determine whether work was duplicative or necessary.  Class Counsel did not obtain the broad and

23   sweeping declaration of unlawfulness or the full injunctions they sought, yet they did not separate

24   the work they did on claims in their Complaint that they did not settle.  They made no effort to cut

25   out time they spent having to amend their Complaint to cure defects pointed out by Zoom or other

26   matters.

27         Objectors' counsel provided this Court with time sheets that show the actual time they

28   worked on the case and describe what they did.  The issues raised by Objectors are overlapping to

REPLY IN SUPPORT OF MOTIONS FOR ATTORNEYS'
FEES AND INCENTIVE AWARD FOR OBJECTORS
PURSUANT TO FED. R. CV. P. 23(H)

their counsel.  The primary points of research for Rodgers and Neace involved general fairness requirements and the oversight obligations of the courts, not what the website needed to contain. Cohen's objection focused on settlement fairness when a group of persons could be subject to an extreme result by being bound to the agreement.  Obviously, by reinstating the ability of class members to seek indemnification for Zoom's privacy violations, the need to carve out the subclass became moot.  Therefore, most of the research and work are indeed attributable in some way to the objections that were settled.

### 2.   Class Counsel Received 317% of their Lodestar while Complaining that Objectors Seek Only their Actual Lodestar

In this case, Class Counsel received millions of dollars in attorney fees, amounting to thousands of dollars per hour, and an admitted of 317% of their Lodestar. *See* Entry 217, page 18. However, they complain that Objectors "now ask the Court to approve fees representing 100% of their lodestar."  *See* Entry 266, page 4. In other words, Objectors' counsel simply seek compensation for the actual time they worked without any form of multiplier.

Moreover, as noted in Objector Cohen's opening brief, Objectors' attorneys are billing at rates that are lower than attorneys with similar experience among the Class Counsel firms. Class Counsel's resistance is simply petty. To illustrate, after applying the multiplier they claimed, a senior attorney at Cotchett Pitre is securing payment at a rate of over $2,690 per hour, while a relatively junior attorney 8 years in practice has returned $2,140 per hour.  Each of the attorneys representing the objectors has more than 20 years' experience in complex litigation and is asking to be compensated at a rate $650 or $600 per hour for contingent fee work where payment was not (and is not) guaranteed.

Finally, as noted in Objector Cohen's opening brief, as of December 27, 2022 her counsel's lodestar and costs exceeded the amount she is requesting in fees by more than $2,500, and has increased due to replying to Class Counsel's surprise response. Objectors' counsel nonetheless limited their request to the amounts agreed upon.

### 3.   The Objectors Should Receive an Incentive Award

Again, Class Counsel had no issue with the small $1,000 incentive award counsel

negotiated, and assuming good faith, Objectors believed Class Counsel had none.  Now, in response, Class Counsel complains that neither Rodgers nor Neace filed an affidavit and states that Cohen "failed to describe any efforts or time spend on this case, much less tied to the settlement relief." *See* Entry 266, page 10.

First, Class Counsel is simply incorrect. The Declaration that counsel for Rodgers and Neace filed at Entry 263-1, page 3, outlines the objectors' work.  As to Cohen, the Declaration of Ari Brown, Entry 262-1, page 3, makes it clear that the objections came about from the Objector's questions about how the settlement affected her. The time records attached to the declaration indicate no fewer than 16 meetings or conversations over the course of a year that Ms. Cohen had with her counsel. See, *Id*. Ex. A. When coupled with the unrecorded time she spent reviewing and compiling documents herself, a $1,000 service award amounts to far less than the normal rate at which her time is compensated.

The second problem is that Class Counsel again asks the Court to impose a double standard. Class counsel did not file declarations from the Plaintiffs in this case outlining their efforts or time. The only discussion of the time and efforts the class representative devoted is from a "Joint Declaration" from Class Counsel that states in general terms that the Plaintiffs spent "many hours" reviewing pleadings, communicating with Class Counsel, and other tasks, and concludes that "all the Plaintiffs were instrumental in the success of this case." *See* ECF No. 218, ¶¶ 69-70.

To be clear, none of the objections in this case are boilerplate—they address specific problems the settlement had. The issues are novel, not having been raised before.  The Objectors are not nominees, but are people who raised issues with the case and worked with legal counsel to address the problems. Yet now Class Counsel seeks to fault the individual objectors and asks the Court to deprive them of the negotiated $1,000 Objector Incentive payment.

**C.    Class Counsel's belated objections indicate bad faith**

**1.    Objectors' fees and incentive awards were negotiated**

In good faith, the Objectors agreed to provisions in their agreement with Class Counsel to allow the settlement to stand even if this Court denied attorney fees.  The Objectors obviously believed the case should not be tied up if members of the class action or this Court had some valid

1    objection to the payment of fees to counsel for the Objectors.  Objectors did not agree to this

2    provision because some dispute existed as to the anticipated fees.

3              The plain language of the agreement demonstrates that the Objectors fully disclosed their

4    anticipated fees and time spent on the case to Class Counsel.  The figures to which counsel agreed

5    are not rounded caps but include specific enumerated figures based on actual hours of work.

6    Moreover, as part of the negotiation and in order to reach an agreement, Objectors' Counsel

7    specifically agreed that their fee request would be based on their lodestar and that they would not

8    seek any multiplier—which are not uncommon in awards to objectors' counsel who secure both

9    monetary and non-monetary revisions to class settlements. See e.g., *Eubank v. Pella Corp.*, No. 06-

10   CV-4481, 2019 WL 1227832, at *8-9 (N.D. Ill. Mar. 15, 2019) (noting "the need to reward

11   objectors, both as compensation for their labors and to incentivize future representations of

12   objectors despite financial disincentives to do so" and awarding objectors' counsel a multiplier of

13   6 times their lodestar); *In re Optical Disk Drive Prod. Antitrust Litig.*, No. 10-MD-02143-RS, 2021

14   WL 4124159, at *2 (N.D. Cal. Sept. 9, 2021) (awarding objector's counsel multiplier of 3).

15             Objectors would have thought Class Counsel would have resolved or at least mentioned any

16   dispute or concerns about the amount of fees, or the nominal $1000 incentive award, prior to

17   entering an agreement. Instead, Class Counsel remained quiet and waited until this Court approved

18   the settlement to reverse their field and level attacks.

19                     **2.    The size of Objectors' fee requests resulted from Class Counsel's**
                             **conduct**
20

21             Class Counsel complains that the requested fees are too high in light of the revisions they

     now gainsay. Objectors' Counsel do not disagree that these revisions could have been accomplished
22

23   more efficiently. Each of the Objectors identified and objected to specific shortcomings in the

     original settlement. Had Class Counsel engaged with the Objectors in good faith at the outset, or
24

25   even at all, the parties could have reached agreements to remedy the shortcomings in the settlement

     months ago. Whether due to pride, an inability to entertain the notion that they may have missed
26

27

28

issues, or a personal animus to the objectors or their attorneys,[2] Class Counsel refused to engage with the Objectors for months. See Supplemental Declaration of Ari Brown; Supplemental Declaration of J. Allen Roth. Class Counsel only engaged in any discussions whatsoever as the deadline for Objectors' opening appellant briefs were approaching, and then only through an intermediary. *Id*. Respectfully, this settlement would have had its flaws remedied and been improved far sooner and less expensively with just a bit less hubris.

Notwithstanding, the time sheets show that most of the time spent involved research, discussions with clients, brief preparation, and negotiations. Class Counsel's cry that time should have been somehow segregated and that Objectors should not seek compensation for some of the attorneys' time is nonsensical and again, somewhat hypocritical. Each of the two sets of objectors had specific bases for their objections that they pursued throughout and that were the subject of the negotiations that resulted in the modifications secured. While Objectors may have envisioned different remedies at the outset, they did not abandon any claims or causes of action. By way of comparison, the litigation here involved a motion to dismiss in which the Court dismissed six of Plaintiffs' ten claims with leave to amend. There is no indication that Class Counsel wrote off the time originally spent on claims that were dismissed.

## III.   CONCLUSION

For the reasons discussed above, this Court should grant the motions filed by the Objectors for their reasonable attorney fees and award a $1,000 incentive payment to each Objector.

Dated: January 18, 2023

---

[2] While the gratuitous aspersions Class Counsel cast on Objectors' attorneys are one thing, Class Counsel should remember that the objectors are still members of the Class and, as such, individuals Class Counsel purport to represent.

REPLY IN SUPPORT OF MOTIONS FOR ATTORNEYS'
FEES AND INCENTIVE AWARD FOR OBJECTORS
PURSUANT TO FED. R. CV. P. 23(H)

Respectfully submitted,

_____/s/_____
J. Allen Roth, Esq. (PA 30347)
*Pro Hac Vice*
805 Alexandria Street S.
Latrobe PA  15650
(724) 686-8003
office@jarothlaw.com

COUNSEL FOR OBJECTORS
SAMMY RODGERS AND ALVERY NEACE

_____/s/_____
Ari Y. Brown, Esq. (WSBA 29570)
*Pro Hac Vice*
3909 47th Ave. S.
Seattle WA  98118
(206) 412-9320
abrownesq@gmail.com

_____/s/_____
John E. Giust, Esq.
9625 Black Mountain Rd. #205
San Diego, CA  92126
(619) 993-1656
john@giustlaw.com

COUNSEL FOR OBJECTOR JUDITH C.
COHEN